# EXHIBIT 1

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | |
|---|---|
| Koninklijke Philips N.V. _____ <br> *Plaintiff* <br> v. <br> Quectel Wireless Solutions Co. Ltd., et al. _____ <br> *Defendant* | ) ) ) ) ) ) ) Civil Action No.   20-cv-1707 and 20-cv-1710 |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Eagle Electronics, Inc. d/b/a Eagle Wireless
c/o The Company Corporation, 251 Little Falls Drive, Wilmington, DE 19808

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Attachment A.

| Place: <br> Veritext Legal Solutions, 1100 Superior Avenue, Suite 1820, Cleveland, Ohio 44114 | Date and Time: <br> 01/16/2026 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/30/2025

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ <br> *Signature of Clerk or Deputy Clerk* | | /s/ Kevin M. Littman <br> _____ <br> *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Koninklijke Philips N.V. _____ , who issues or requests this subpoena, are:

Kevin M. Littman, Esq., Foley & Lardner LLP, 111 Huntington Avenue, Boston, MA 02199; klittman@foley.com; 617-342-4020

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  20-cv-1707 and 20-cv-1710

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KONINKLIJKE PHILIPS N.V.,

    Plaintiff,

  vs.

QUECTEL WIRELESS SOLUTIONS CO. LTD., (C.A. No. 20-CV-1707-CFC),

    Defendant.

  AND

KONINKLIJKE PHILIPS N.V.,

    Plaintiff,

  vs.

QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. (C.A. No. 20-cv-1710-CFC)

    Defendants.

C.A. No. 20-cv-1707-CFC

AND

C.A. No. 20-cv-1710-CFC

**JURY TRIAL DEMANDED**

## ATTACHMENT A TO SUBPOENA TO EAGLE ELECTRONICS INC.

Pursuant to Federal Rule of Civil Procedure 45, Eagle Electronics Inc. ("Eagle"). (also referred to herein by "You(r))," is hereby requested to produce the following Documents (as defined herein) within Your possession, custody or control.

1.   **Time for Response.** The document production is due by the date indicated on the subpoena. Please contact Kevin Littman (klittman@foley.com; 617.342.4020) to discuss any reasonable requests for extensions of time.

2.    **Discussion of Questions/Objections.** If you have any concerns about, or initial objections to, the subpoena, please contact Kevin Littman (klittman@foley.com; 617.342.4020). Koninklijke Philips N.V. ("Philips") is amenable to engaging with you discuss the reasons why the documents herein are being requested, and to address any reasonable concerns to simplify your response to the subpoena.

3.    **Possession, Custody or Control.** These requests seek materials within Your possession, custody or control. If You are not in possession, custody or control of given materials that are asked for in the below requests, please respond stating so.

4.    **Form of Production.** Philips requests that responsive documents be produced in native format electronically to their counsel at Foley & Lardner LLP – Kevin Littmann (klittman@foley.com) – by email, FTP, or file sharing service. The team at Foley & Lardner LLP can provide assistance with any electronic delivery. If it is more convenient for You to place the documents on a physical hard drive and deliver that, you may send such hard drive to: Foley & Lardner LLP, 111 Huntington Ave Suite 2500, Boston, MA 02199. Please keep all files in their original native format. Please make PDF copies of all responsive hardcopy documents and include them in a separate labeled folder on the hard drive. If You have any technical or processing concerns, please contact  Kevin Littman (klittman@foley.com; 617.342.4020), so that we can arrive at a solution. If You would like to make a more formal production with Bates numbering, etc., please let our team know and coordinate with them before undertaking the effort.

5.    **Confidentiality**. Under protective orders in these cases, dated September 23, 2025, which are attached hereto, the Court has ordered that sensitive documents may be produced on a confidential basis in this litigation. In particular, if You designate a document as

2

"Highly Confidential – Attorneys' Eyes Only" then only outside counsel will see the documents, and may not share their content with clients (subject to any successful future challenge that the document did not merit confidential protection). Because the Court has already ordered this protection, do not redact or omit any documents on the grounds of confidentiality – the point of the Court's orders on confidentiality to allow documents to be securely produced, and to be unredacted. Similarly, source code may be produced pursuant to various provisions of the protective orders, including paragraph 10 of each.

6. **Maintenance of Litigation Hold / Thorough Search.** You are under an ongoing obligation to preserve all documents within your possession, custody or control that bear any relationship to the claims in this case. These include documents that may be in the possession of a third party, but that are Your property, or that the third party must provide to You upon demand. You are required to undertake a thorough inspection of all records within its possession, custody or control for documents that may be responsive to the Requests herein.

7. **Production in Both Cases.** You are being requested to provide the same requested documents in both of the above-mentioned matters: *Koninklijke Philips N.V. v. Quectel Wireless Solutions Co. Ltd.*, Case No. 20-cv-1707 and *Koninklijke Philips N.V. v. Quectel Wireless Solutions Co. Ltd.* et. al, Case No. 20-cv-1710.

## DEFINITIONS

The following definitions are applicable to these requests for production:

8. The terms "you," "your," or "Eagle," means Eagle Electronics Inc., and any and all of its subsidiaries, parents, affiliates, divisions, successors, or predecessors, or any other person or entity acting in whole or in part in concert with any of the foregoing.

9. The term "Philips" means Koninklijke Philips N.V.

3

10.     The term "Quectel" means Quectel Wireless Solutions Co., Ltd., and any and all of its subsidiaries, parents, affiliates, divisions, successors, or predecessors.

11.     The term "Wireless Mobility" shall mean the Wireless Mobility company that Eagle acquired, as detailed in Exhibit 1. This includes any and all of Wireless Mobility's subsidiaries, parents, affiliates, divisions, successors, or predecessors.

12.     The term "Acquisition" shall refer to the acquisition between Wireless Mobility and Eagle, as detailed in Exhibit 1.

13.     The term "Asserted Patents" refers to the patents asserted in the above-captioned matters and includes United States Patent Nos. 9,178,577 ("'577 Patent"), 9,635,599 ("'599 Patent"), 7,089,028 ("'028 Patent"), 9,195,216 ("'216 Patent"), 7,831,271 ("'271 Patent") and 7,944,935 ("'935 Patent") issued and any other applications in the chain of priority leading to the '599, '577, '028, '216, '271 and '935  Patents.

14.     The term "Eagle Product(s)" mean those cellular communication modules that are manufactured, sold, offered for sale, used, and/or imported by or for Eagle that are capable of operating in whole or in part in conformance with the UMTS and/or LTE (also known as 3G and/or 4G) standards,  including but not limited to all versions  of Eagle's I4915Q-NA, I4915Q-AF, I491-NAXDGB, I4916Q-GL, I491-NAX, I490-M3, I490-M1, I425-GLGD, I491-NAXD, I425-GLGA, I421-GLGD, I421-GLGA, and the like.

15.     "Lawsuits," "Litigations," "Matters," or "Cases" means the civil actions captioned *Koninklijke Philips N.V. v. Quectel Wireless Solutions Co. Ltd.*, Case No. 20-cv-1707 and *Koninklijke Philips N.V. v. Quectel Wireless Solutions Co. Ltd. et. al*, Case No. 20-cv-1710.

16.     The term "communication" means all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, transmissions of facts, interviews, correspondence,

4

consultations, negotiations, agreements, understandings, meetings, presentations, letters, notes, telegrams, advertisements, emails, texts, social media posts, and all other documents evidencing any verbal or nonverbal interaction between persons and/or entities.

17.     The term "document" is used herein in its broadest sense under Federal Rule of Civil Procedure 45 and applicable case law and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind (including audio and video recordings), and all other data compilations from which information can be obtained that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced or stored (including without limitation computer programs and files containing any requested information), including, but not limited to, information recorded on paper (e.g., memoranda; letters; drawings; specifications; handwritten notes), information recorded electronically (e.g., in emails; on computer servers, hard drives, disks or tapes; on audio disks or tapes), information recorded photographically, and any recording or writing as these terms are defined in Federal Rule of Evidence 1001. Any document bearing marks, including without limitation initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

18.     The terms "referring," "relating to," "relate(s) to," "reflecting," or "concerning" mean, in addition to their customary and usual meanings, making reference to, pertaining to, alluding to, concerning, connected with, commenting on, regarding, mentioning, discussing, representing, embodying, illustrating, describing, reflecting, supporting, negating, rebutting, contradicting, evidencing, constituting, or logically or factually connected with the matter described in the requests for production in question.

19. The terms "and" and "or," when used herein, shall be construed conjunctively or disjunctively as necessary to bring within the scope of the subject request all responses that might otherwise be construed to be outside of its scope.

20. The use of the singular form of any word included the plural and vice versa.

21. In the event any response or document is withheld on a claim of attorney-client privilege, attorney work-product immunity, or any other privilege from disclosure, identify: (a) the date of the information; (b) the source of the information; (c) the names and addresses of all persons to whom that information was disclosed; and (d) the general subject matter of the information. To the extent such information is contained within a document for which a claim of privilege has been made, you must provide a privileged document list in a timely manner.

22. If there are no documents or things responsive to a particular Request, you should so state in writing. If any responsive document has been lost or destroyed, identify: (a) the author; (b) the date of loss or destruction; (c) the reason for loss or destruction; (d) the identity of those directing the destruction, if any; and (e) the substance of the document.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** All documents relating to and communications with Quectel concerning the sales of IoT modules, the sharing of technology relating to IoT modules, the sales of Quectel modules in the United States or the onshoring of Quectel's technology in the United States.

**REQUEST NO. 2:** Documents sufficient to show Your relationship with Quectel, including, but not limited to, all documents showing any overlap in management of Quectel and Eagle, overlap of board members of Quectel and Eagle, or any other documents relating to or concerning the role of any Quectel employee in Eagle or any company affiliated with Eagle.

**REQUEST NO. 3:**    Documents sufficient to show all source code shared between You and Quectel including the source code itself and all documents concerning the functionality of source code shared between You and Quectel.

**REQUEST NO. 4:**    All agreements between You and Quectel.

**REQUEST NO. 5:**    All agreements between You and Wireless Mobility.

**REQUEST NO. 6:**    All documents or communications between You and Quectel, related to Philips, any of the Asserted Patents, or the Lawsuits.

**REQUEST NO. 7:**    Documents sufficient to show Your first knowledge of the Asserted Patents.

**REQUEST NO. 8:**    All Documents related to the acquisition of Wireless Mobility, as detailed in Exhibit 1.

**REQUEST NO. 9:**    Documents sufficient to identify the entities involved in the manufacture of any Eagle Product, and, separately for each such entity, documents identifying the entity's role in the manufacture of such product, including the location at which the activity is performed.

**REQUEST NO. 10:**    Documents sufficient to show quarterly and annual sales of the Eagle Products, including (a) the number of units sold in the United States, net of product returns; (b) the gross revenue from those sales; (c) the gross profit from those sales; (d) the net operating profit from those sales; and (e) the category and amount of each deduction required to reconcile total revenue and net profit and net operating profit.

**REQUEST NO. 11:**    All documents concerning the conformance of any Eagle Products to any section of 3GPP Technical Specification Number 36.201, 36.211, 36.212, 36.213, 36.300, 36.306, 36.321, or 36.331, including all documents concerning testing performed (by anyone)

7

relating to the conformance to any section of the above technical specifications or the corresponding ETSI versions of the above technical specifications.

**REQUEST NO. 12:** All documents concerning the conformance of any Eagle Products to any section of 3GPP Technical Specification Number 23.002, 25.101, 25.201, 25.211, 25.212, 25.213, 25.214 or 25.331, including all documents concerning testing performed (by anyone) relating to the conformance to any section of the above technical specifications or the corresponding ETSI versions of the above technical specifications.

**REQUEST NO. 13:** Documents describing the technical features of all Eagle Products relating to the conformance of any Eagle Product to 3GPP and/or ETSI standards.

**REQUEST NO. 14:** Two samples of each IoT modules of Eagle sold or to be sold in the United States, including the accompanying evaluation board used to test each Eagle IoT module.

**REQUEST NO. 15:** All documents concerning the industry organization certification of any product sold or offered for sale by Eagle including, but not limited to, all communications with Eagle, PTCRB, CTIA or Global Certification Forum ("GCF") concerning certification of any Eagle modules, all test reports and other documents received from PTCRB, CTIA or GCF concerning module testing or other documents available to Quectel through any PTCRB, CTIA or GCF portal concerning module testing (including test reports), and all documents concerning the modular certification of any Eagle product based upon the previous certification of any other Quectel product.  (*See* eagle_white_paper_device_certifications_april_2025%20(1).pdf, available on https://techship.com/product/eagle-i4916qgllg-n03-sgnsa-lte-cat-1bis-lga/?variant=001&tab=certifications&page=1 (noting that "the Eagle module is certified as a

8

variant of the Quectel module" which "provides significant leverage for streamlined delta evaluations and reduced test scope")).

# EXHIBIT 1

Case 1:20-cv-01710-CFC-CJB Document 126-1 Filed 12/31/25 Page 16 of 84 PageID #: 3243



Home > News and events > Eagle Electronics acquires Wireless Mobility, relaunches as Eagle Wireless

Eagle Electronics, backed by The O.H.I.O. Fund and Asymmetric Capital Partners, today announces the acquisition of Wireless Mobility.

The combined company, renamed Eagle Wireless, appoints Norbert Muhrer as CEO and TJ Dembinski as President, as well as expands Board with leading national security and connectivity experts.

**Cleveland, Ohio – December 17th, 2025** – Eagle Electronics announces the acquisition of Wireless Mobility and rebrands as Eagle Wireless. The combined company will be the defining Western module vendor serving both the automotive and IoT markets at scale with equally strong US and international presences.

This strategic combination comes as new U.S. regulations, including the Connected Vehicles Rule, create opportunities in the market requiring a cyber-secure and resilient supply chain, accelerating demand for secure, trusted, Western connectivity providers.

On Day 1, Eagle Wireless, which has domestic manufacturing in Solon, Ohio, will have a global R&D presence with team members across North America, Europe, and APAC. The business plans to more than double the team over the next 12 months to support rapidly expanding customer demand from OEMs, Tier 1s, and IoT solution providers.

Norbert Muhrer, CEO of Eagle Wireless, says of the opportunity, "I am thrilled about running Eagle Wireless with a highly competent and motivated team to create the new industry leader in an increasingly geopolitically sensitive market. The demand is staggering and it needs a company that is equally well positioned in the US and internationally in R&D and supply chain. Trust, competence, and customer proximity combined with a will to succeed is what defines Eagle Wireless. We have only one target: satisfy the customer and be their partner of choice."

**The Only Western Vendor Focused on Both Automotive and IoT Modules**

Automotive and IoT customers increasingly require long-life, secure, and reliable cellular modules that can be deployed globally under tightening regulatory and cybersecurity standards.

While several Western players focus on either automotive or IoT, Eagle Wireless is the only Western module vendor purpose-built to serve both.

**Leadership and Governance Built for Scale**

As part of the transaction, Norbert Muhrer will join the company and the Board as Chief Executive Officer. Muhrer previously helped scale three market-leading module businesses over the last 25 years, bringing deep experience in building global product portfolios, supply chains, and customer relationships in both automotive and IoT.

TJ Dembinski, Co-founder and current CEO of Eagle Electronics, will stay on the Board and become Co-Founder and President, continuing to lead the company with a focus on the United States.

Mark Kvamme will continue in his role as Co-Founder and Executive Chairman, working closely with Muhrer and Dembinski.

The Board of Directors will be further strengthened with the additions of:

- Dawn Meyerriecks, former Head of Science and Technology at the CIA, bringing expertise at the intersection of national security, advanced technology, and trusted supply chains.
- Martin McCourt, a software security and IOT veteran, having acquired Cinterion Wireless Modules while at Gemalto and then contributing to the success at Sierra Wireless as an Independent Board Member.

Of the deal, TJ Dembinski, Co-Founder & President, says, "From the moment we started Eagle, we were building for scale. This announcement is the culmination of a lot of hard work. This is a great deal for the market and our customers; we now have the engineering resources to serve customer's needs and management that has built and seen scale in the IoT and Automotive businesses before."

Mark Kvamme, Co-Founder & Chairman, speaks of what this means for the market more broadly. "When we started this company, we knew there was a need for a US-focused module vendor. The more time we've spent in the market, the more we've realized that customer's needs are global. Eagle Wireless now has a global presence to capitalize on this major market opportunity, and The O.H.I.O. Fund is excited to support the business as it expands not just from module production, but to full Telematic Control Unit (TCU) production."

**A Strategic Response to Regulatory and Geopolitical Shifts**

Regulation such as the Connected Vehicles Rule, which dictates the hardware and software that is sold into the U.S. automotive

market, is reshaping global supply chains for connectivity and connected devices. OEMs and enterprises are now urgently seeking trusted, Western-controlled module partners to de-risk their platforms.

Eagle Wireless is directly aligned with this shift:

- Western ownership and governance, with leadership and board members steeped in national security, telecommunications, and global module businesses.
- Focused on compliance and security, with design, engineering, and supply chain strategies built to meet evolving U.S. and allied-country standards.
- Built for scale, with capital, talent, and technology designed to support global customers over the full lifecycle of their products.

Bernie Moreno, US Senator from Ohio, commented on Eagle, "Hearing the news of Eagle Wireless is exciting. It is a big deal to know that a company with commitments to the State of Ohio has global ambitions. This is what intentional US policy can do: continue to create new, category-defining business that are US-based and globally ambitious."

Jon Husted, US Senator from Ohio, adds, "I was at Eagle's manufacturing launch event in Solon over the summer and I've continued to follow the company's developments. The progress is remarkable and will benefit the state of Ohio. I look forward to continuing to watch this business grow and invest in domestic production."

**Customer Impact Across Automotive and IoT**

With the acquisition of Wireless Mobility, Eagle Wireless will offer an expanded portfolio of cellular modules (4G, 5G, LPWA, and beyond), a strong global presence, and integration services tailored for both the automotive and IoT segments.

This will allow customers to standardize on a single Western module partner across product needs and have confidence in a partner that is aligned with U.S. and allied Western regulatory requirements.

"AT&T Connected Solutions is committed to delivering secure, scalable connectivity for automotive and IoT customers. Eagle Wireless' commitment to domestic manufacturing in Ohio along with their global R&D strength aligns with our mission to drive innovation and reliability," said Cameron Coursey, Vice President of AT&T Connected Solutions. "Together, we'll help OEMs and solution providers accelerate connected product development and deployment with robust performance, security, and seamless integration."

Neil Cawse, CEO of Geotab, explains why Geotab is working with Eagle, "To support our scaling operations, Geotab has selected Eagle Wireless as our trusted, U.S.-based cellular module and manufacturing partner. This collaboration is built on shared standards, ensuring compliance with stringent U.S. regulatory and IP protection requirements. Eagle Wireless delivers the superior quality control and oversight necessary to uphold the reliability our customers expect."

**About Eagle Wireless**

Eagle Wireless is a US-owned module company dedicated to providing secure, reliable, and scalable cellular, GNSS and Shortrange modules for automotive and IoT applications. Eagle Wireless offers a comprehensive portfolio of modules and software that power connected vehicles, industrial equipment, smart devices, and critical infrastructure around the world in a cyber-secure and supply-chain resilient environment.

With a rapidly growing team of engineers and industry veterans, Eagle Wireless is focused on building the defining Western module vendor for OEMs, Tier 1 suppliers, and IoT innovators navigating a new era of regulatory, cybersecurity, and supply chain requirements.

For more information, reach out at **contact@eaglewireless.com.**

← Back to News and events



Wireless Mobility™ 2025. All rights reserved.

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Delaware

| | | |
|---|---|---|
| Koninklijke Philips N.V. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   20-cv-1707 and 20-cv-1710 |
| Quectel Wireless Solutions Co. Ltd., et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Eagle Electronics, Inc. d/b/a Eagle Wireless
c/o The Company Corporation, 251 Little Falls Drive, Wilmington, DE 19808

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment Ex. B.

| Place: Veritext Legal Solutions, 1100 Superior Avenue, Suite 1820, Cleveland, Ohio 44114 | Date and Time:<br><br>01/23/2026 9:00 am |
|---|---|

The deposition will be recorded by this method:   Court reporter and video.

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/30/2025

| CLERK OF COURT | |
|---|---|
| | OR |
| _____ | /s/ Kevin M. Littman |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Koninklijke Philips N.V. _____, who issues or requests this subpoena, are:
Kevin M. Littman, Esq., Foley & Lardner LLP, 111 Huntington Avenue, Boston, MA 02199; klittman@foley.com; 617-342-4020

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 20-cv-1707 and 20-cv-1710

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V., | |
| Plaintiff, | C.A. No. 20-cv-1707-CFC |
| vs. | AND |
| QUECTEL WIRELESS SOLUTIONS CO. LTD., (C.A. No. 20-CV-1707-CFC), | C.A. No. 20-cv-1710-CFC |
| Defendant. | |
| AND | **JURY TRIAL DEMANDED** |
| KONINKLIJKE PHILIPS N.V., | |
| Plaintiff, | |
| vs. | |
| QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. (C.A. No. 20-cv-1710-CFC) | |
| Defendants. | |

## ATTACHMENT B TO SUBPOENA TO EAGLE ELECTRONICS INC.

You are requested to appear at the time, date, and place set forth above to testify at a deposition to be taken in this civil action. You must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on Your behalf about the topics.

Your obligation to provide the information sought by the deposition topics is continuing, and should You discover new information responsive to the topics after the deposition, You are

obligated to supplement Your responses as appropriate to the full extent provided for by the Federal Rules of Civil Procedure or any other applicable law.

## DEFINITIONS

The following definitions are applicable to these deposition topics:

1. The terms "you," "your," or "Eagle," means Eagle Electronics Inc., and any and all of its subsidiaries, parents, affiliates, divisions, successors, or predecessors, or any other person or entity acting in whole or in part in concert with any of the foregoing.

2. The term "Philips" means Koninklijke Philips N.V.

3. The term "Quectel" means Quectel Wireless Solutions Co., Ltd., and any and all of its subsidiaries, parents, affiliates, divisions, successors, or predecessors.

4. The term "Wireless Mobility" shall mean the Wireless Mobility company that Eagle acquired, as detailed in Exhibit 1. This includes any and all of Wireless Mobility's subsidiaries, parents, affiliates, divisions, successors, or predecessors.

5. The term "Acquisition" shall refer to the acquisition between Wireless Mobility and Eagle, as detailed in Exhibit 1.

6. The term "Asserted Patents" refers to the patents asserted in the above-captioned matters and includes United States Patent Nos. 9,178,577 ("'577 Patent"), 9,635,599 ("'599 Patent"), 7,089,028 ("'028 Patent"), 9,195,216 ("'216 Patent"), 7,831,271 ("'271 Patent") and 7,944,935 ("'935 Patent") issued and any other applications in the chain of priority leading to the '599, '577, '028, '216, '271 and '935  Patents.

7. The term "Eagle Product(s)" mean those cellular communication modules that are manufactured, sold, offered for sale, used, and/or imported by or for Eagle that are capable of operating in whole or in part in conformance with the UMTS and/or LTE (also known as 3G

2

and/or 4G) standards,  including but not limited to all versions  of Eagle's I4915Q-NA, I4915Q-AF, I491-NAXDGB, I4916Q-GL, I491-NAX, I490-M3, I490-M1, I425-GLGD, I491-NAXD, I425-GLGA, I421-GLGD, I421-GLGA, and the like.

8. "Lawsuits," "Litigations," "Matters," or "Cases" means the civil actions captioned *Koninklijke Philips N.V. v. Quectel Wireless Solutions Co. Ltd.*, Case No. 20-cv-1707 and *Koninklijke Philips N.V. v. Quectel Wireless Solutions Co. Ltd. et. al*, Case No. 20-cv-1710.

9. The term "communication" means all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, transmissions of facts, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, presentations, letters, notes, telegrams, advertisements, emails, texts, social media posts, and all other documents evidencing any verbal or nonverbal interaction between persons and/or entities.

10. The term "document" is used herein in its broadest sense under Federal Rule of Civil Procedure 45 and applicable case law and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind (including audio and video recordings), and all other data compilations from which information can be obtained that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced or stored (including without limitation computer programs and files containing any requested information), including, but not limited to, information recorded on paper (e.g., memoranda; letters; drawings; specifications; handwritten notes), information recorded electronically (e.g., in emails; on computer servers, hard drives, disks or tapes; on audio disks or tapes), information recorded photographically, and any recording or writing as these terms are defined in Federal Rule of Evidence 1001. Any document

3

bearing marks, including without limitation initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

11.     The terms "referring," "relating to," "relate(s) to," "reflecting," or "concerning" mean, in addition to their customary and usual meanings, making reference to, pertaining to, alluding to, concerning, connected with, commenting on, regarding, mentioning, discussing, representing, embodying, illustrating, describing, reflecting, supporting, negating, rebutting, contradicting, evidencing, constituting, or logically or factually connected with the matter described in the requests for production in question.

12.     The terms "and" and "or," when used herein, shall be construed conjunctively or disjunctively as necessary to bring within the scope of the subject request all responses that might otherwise be construed to be outside of its scope.

13.     The use of the singular form of any word included the plural and vice versa.

14.     If you believe that any document or testimony or any portion of any document or testimony is confidential, you may designate the document or testimony as confidential and request confidential treatment.

## DEPOSITION TOPICS

**TOPIC NO 1:**     Documents relating to and communications with Quectel concerning the sales of IoT modules, the sharing of technology relating to IoT modules, the sales of Quectel modules in the United States or the onshoring of Quectel's technology in the United States.

**TOPIC NO 2:**     Your relationship with Quectel, including, but not limited to, all documents showing any overlap in management of Quectel and Eagle, overlap of board members

4

of Quectel and Eagle, or any other documents relating to or concerning the role of any Quectel employee in Eagle or any company affiliated with Eagle.

**TOPIC NO 3:**     All source code shared between You and Quectel including the source code itself and all documents concerning the functionality of source code shared between You and Quectel.

**TOPIC NO 4:**     All agreements between You and Quectel.

**TOPIC NO 5:**     All agreements between You and Wireless Mobility.

**TOPIC NO 6:**     All documents or communications between You and Quectel, related to Philips, any of the Asserted Patents, or the Lawsuits.

**TOPIC NO 7:**     Your first knowledge of the Asserted Patents.

**TOPIC NO 8:**     Your acquisition of Wireless Mobility, as detailed in Exhibit 1.

**TOPIC NO 9:**     The entities involved in the manufacture of any Eagle Product, and, including the entity's role in the manufacture of such product as well as the location at which the activity is performed.

**TOPIC NO 10:**     The quarterly and annual sales of the Eagle Products, including (a) the number of units sold in the United States, net of product returns; (b) the gross revenue from those sales; (c) the gross profit from those sales; (d) the net operating profit from those sales; and (e) the category and amount of each deduction required to reconcile total revenue and net profit and net operating profit.

**TOPIC NO 11:**     The conformance of any Eagle Products to any section of 3GPP Technical Specification Number 36.201, 36.211, 36.212, 36.213, 36.300, 36.306, 36.321, or 36.331, including all documents concerning testing performed (by anyone) relating to the

5

conformance to any section of the above technical specifications or the corresponding ETSI versions of the above technical specifications.

**TOPIC NO 12:** The conformance of any Eagle Products to any section of 3GPP Technical Specification Number 23.002, 25.101, 25.201, 25.211, 25.212, 25.213, 25.214 or 25.331, including all documents concerning testing performed (by anyone) relating to the conformance to any section of the above technical specifications or the corresponding ETSI versions of the above technical specifications.

**TOPIC NO 13:** The technical features of all Eagle Products relating to the conformance of any Eagle Product to 3GPP and/or ETSI standards.

**TOPIC NO 14:** IoT modules of Eagle's sold or to be sold in the United States, including the accompanying evaluation board used to test each Eagle IoT module.

**TOPIC NO 15:** The industry organization certification of any product sold or offered for sale by Eagle including, but not limited to, all communications with Eagle, PTCRB, CTIA or Global Certification Forum ("GCF") concerning certification of any Eagle modules, all test reports and other documents received from PTCRB, CTIA or GCF concerning module testing or other documents available to Quectel through any PTCRB, CTIA or GCF portal concerning module testing (including test reports), and all documents concerning the modular certification of any Eagle product based upon the previous certification of any other Quectel product. (See eagle_white_paper_device_certifications_april_2025%20(1).pdf, available on https://techship.com/product/eagle-i4916qgllg-n03-sgnsa-lte-cat-1bis-lga/?variant=001&tab=certifications&page=1 (noting that "the Eagle module is certified as a variant of the Quectel module" which "provides significant leverage for streamlined delta evaluations and reduced test scope")).

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KONINKLIJKE PHILIPS N.V.,

        Plaintiff,

vs.

QUECTEL WIRELESS SOLUTIONS
CO. LTD.,

        Defendant.

C.A. No. 20-cv-1707-CFC

**JURY TRIAL DEMANDED**

## [PROPOSED] PROTECTIVE ORDER

WHEREAS, Plaintiff Koninklijke Philips N. V. ("Philips") and Defendant

Quectel Wireless Solutions Co. Ltd. ("Quectel"), in the above-captioned action,

hereafter collectively referred to as "'the Parties," believe that certain information

that is or will be encompassed by discovery demands by the Parties involves the

production or disclosure of trade secrets, confidential business information, or

other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in

accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED

that:

1. Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL" or, depending on the level of protection as set forth below, "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE." The words "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL -SOURCE CODE" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the words "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as

2

"CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY."

2. Any document produced before issuance of this Order with the designation "confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order and any such documents produced with the designation "Confidential—Outside Attorneys' Eyes Only" or the like shall receive the same treatment as if designated "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3. With respect to documents, information, or material designated "CONFIDENTIAL," "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" or HIGHLY CONFIDENTIAL – SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY," and "HIGHLY CONFIDENTIAL – SOURCE CODE" individually and collectively.

3

pleadings and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.      A designation of Protected Material (i.e., "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY") may be made at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s) as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information, or material derived from or based thereon.

5.      "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written

4

consent of the designating Party, upon order of the Court, or as set forth in

paragraph 13 herein:

a. Outside counsel of record in this Action for the Parties.

b. Employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action.

c. (c) Up to and including two (2) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that any Party may in good faith request the other Party's consent to designate one or more additional representatives, the other Party shall not unreasonably withhold such consent, and the requesting Party may seek leave of Court to designate such additional representative(s) if the requesting Party believes the other Party has unreasonably withheld such consent. Before access is given, the representative who is proposed to be given access to CONFIDENTIAL information shall complete the Undertaking attached as Appendix B hereto, which shall be served upon the producing Party. The procedure concerning timing and objections in paragraph 5(d) shall be followed.

d. Outside consultants or experts retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties or of an affiliate of a Party hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert, including a list of other cases in which the individual has provided a report or testified (at trial or deposition) and a list of companies that the individual has been employed by or provided consulting services pertaining to the field of the invention of the patent(s)-in-suit or the products accused of infringement within the last four years and a brief description of the subject matter of the consultancy or employment, at least ten (10) days before access to the Protected Material is to be given to that consultant or expert to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use

5

good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of receipt of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order.

e.   Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action.

f.   The Court and its personnel.

6.   A Party shall designate documents, information, or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information, or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material.

7.   Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except

6

as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY."

9. For Protected Material designated CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-b) and (d-f); provided, however, that the designating Party shall accommodate reasonable requests to provide summary information to in-house counsel who exercise no competitive decision-making authority on behalf of the client and reasonably require access to such information. Only individuals listed in paragraphs 5(a-b) and (d-f) shall have access to material designated HIGHLY CONFIDENTIAL – SOURCE CODE.

10. To the extent production of Source Code becomes necessary in this case, the following additional provisions shall apply:

    a. Absent agreement by the producing party, access to Source Code shall be provided on no more than two, for both C.A. No. 20-cv-1707 CFC

and C.A. No. 20-cv-1710-CFC, "stand-alone" computer(s) (i.e., the computer(s) may not be linked to any network, including a local area network ("LAN"), an intranet, or the Internet, and may not be connected to any printer or storage device other than the internal hard disk drive of the computer). The stand-alone computer(s) shall be kept in a secure location at the offices of the producing Party's outside litigation counsel, or at such other location as the producing Party and receiving Party mutually agree. If the producing Party objects to a particular location for the review of Source Code, the producing Party and the receiving Party agree to meet and confer in good faith regarding such objection and present the dispute to the Court if they are not able to reach agreement. The stand-alone secure computer(s) may be password protected and shall have the Source Code stored on a hard drive of the computer(s). The producing Party shall produce Source Code in computer searchable format on the stand-alone computer(s). The stand-alone computer(s) shall, at the receiving Party 's request, include reasonable analysis tools and translation software appropriate for the type of Source Code and language of any comments except that the receiving Party cannot use any compilers, interpreters, or simulators in connection with the Source Code absent

8

consent of the producing Party.  The receiving Party shall be responsible for providing the tools, licenses to the tools and/or software that it wishes to use to the producing Party at least seven (7) days in advance of the inspection at its own expense so that the producing Party may install such tools and software on the stand-alone computer. If the producing Party objects to particular software tools or software proposed by the receiving Party, the producing Party and receiving Party agree to meet and confer regarding such objection and to present the dispute to the Court if they are not able to reach agreement.

b. The receiving Party may request paper copies of no more than thirty (30) consecutive pages of Source Code for a total of not more than five hundred (500) pages that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purpose of reviewing the Source Code other than electronically as set forth in paragraph (b) in the first instance. Should the receiving Party believe that more than thirty consecutive pages or more than five hundred total pages of Source Code are needed, the receiving Party will explain the need for additional pages to the Producing Party in

writing and the parties will meet and confer in good faith in an effort to resolve the issue. The producing Party shall provide all such Source Code in paper form, including bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE."

c. The receiving Party shall provide at least three (3) business days' notice to access the Source Code and shall identify all persons, including members of the receiving Party's Outside Counsel of Record, who will review a producing Party's Source Code on behalf of a receiving Party at that inspection. The receiving Party shall have access to the stand-alone secure computer(s) only during business hours, which for purposes of this paragraph shall be 9:00 a.m. through 6:00 p.m. local time at the reviewing location. Access to the stand-alone computer shall be limited to experts retained by the receiving party and two (2) outside counsel representing the receiving party, all of whom have been approved under the protective order in place. The parties are to cooperate in good faith such that maintaining the Source Code at the offices of the producing Party's outside litigation counsel shall not unreasonably hinder the receiving Party's ability to efficiently conduct the prosecution or defense in this case. Proper identification of all Source Code reviewers shall be provided prior to

10

any access to the stand-alone secure computer. All persons who will review Source Code on behalf of a receiving Party shall be identified in writing to the producing Party at least five (5) business days in advance of the first time that such person reviews such Source Code. The producing Party shall provide these individuals with information explaining how to start, log on to, and operate the stand-alone computer in order to access the produced Source Code on the stand-alone secure computer(s). For subsequent reviews taking place on non-consecutive business days by such persons, the receiving Party shall give at least three (3) business days' notice to the producing Party of such review. The parties agree to cooperate in good faith and to make reasonable efforts to accommodate requests for access outside of normal business hours when such access is necessary.

d. Unless otherwise agreed in advance by the parties in writing, following each inspection, the receiving Party's Outside Counsel and/or experts shall remove all notes, documents, and all other materials from the room that may contain work product and/or attorney client privileged information.

e. The receiving Party shall maintain all paper copies of any portions of

11

the Source Code provided by the producing Party in a secured, locked area. The receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition must not be given to or left with a court reporter or any other unauthorized individual. The receiving Party shall only include such excerpts as are necessary for the purposes of deciding the issue for which such part of the Source Code is being used. All materials containing Source Code that are filed with the court shall be filed under seal. A receiving Party who intends to file Source Code with the Court shall use reasonable efforts to keep to a minimum the amount of Source Code included in any such filing.

11.     Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege,

doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party. The recipient(s) shall delete all electronic copies of such documents, information, or other material, and certify that they have done so within ten (10) days of receiving the notice of the inadvertently produced documents, information, or other material.

12.    There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard

13

all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

13.    If a Party learns that, by inadvertence or otherwise, it has disclosed Designated Material to any person or in any circumstance not authorized under this Protective Order, the Party must immediately (a) notify in writing the Party that designated the Designated Material, (b) use its best efforts to retrieve all copies of the Designated Material, and (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order.

14.    Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating Party; (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director, or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this

14

Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

15. Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY.

16. Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court. The filing Party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing. Exhibits to a filing shall conform to the labeling requirements set forth in

this Order. If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

17.     The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

18.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

19.    Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

20.    Each designated party representative to whom information designated as CONFIDENTIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix B.

21.    To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

17

22.     To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" in accordance with this Order.

23.     Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

24.     The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information, or material hereunder shall in no way

18

constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

25.    Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

26.    Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

27.    Nothing in this Order shall be construed to affect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

28.    Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL

19

to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

29. Other Proceedings. By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that the information may be relevant and subject to disclosure in another case. Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated as confidential pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

30. Deposition Hour Counting. Non-expert witnesses who are witnesses in both C.A. No. 20-cv-1707 CFC and C.A. No. 20-cv-1710-CFC shall be deposed one time, with the hours counting towards the parties' allotments in both matters under Section 9(e)(1) of the scheduling order. Additionally, for depositions in which an interpreter is used, for purposes of counting allocated deposition hours pursuant to Section 9(e)(1) of the scheduling order, a multiplier of 1.5 shall be applied to the allocated deposition time (i.e., each minute shall count as $^2/_3$ a minute of deposition time). For expert witnesses, the assumption will be one deposition per report per case.

31.    Documents, information, or material produced or disclosed by Philips or Quectel in C.A. No. 20-cv-1707 CFC will be considered to have been also produced or disclosed in C.A. No. 20-cv-1710-CFC and vice versa, and subject to the protective orders in each case.

/s/ *Adam W. Poff*

Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Young Conaway Stargatt & Taylor, LLP
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com

*Attorneys for Plaintiff Koninklijke Philips N.V*

/s/ *Warren K. Mabey*

Warren K. Mabey, Jr.
AnnaMartina Tyreus Hufnal
Fish & Richardson, P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 652-5070
mabey@fr.com
hufnal@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
Fish & Richardson, P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
(617) 542-5070
ranks@fr.com

Thomas H. Reger II (*pro hac vice*)
Fish & Richardson, P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
reger@fr.com

Bryan J. Cannon (*pro hac vice*)
Fish & Richardson, P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
(202) 783-5070
cannon@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherin Reardon  (*pro hac vice*)
Fish & Richardson, P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
(404) 892-5005

|  | jarvis@fr.com<br>kreardon@fr.com<br><br>*Attorneys for Defendant Quectel<br>Wireless Solutions Co. Ltd.* |
|---|---|

Date: _____9/23/25_____

_____
The Honorable Colm F. Connolly

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KONINKLIJKE PHILIPS N.V.,

   Plaintiff,

  vs.

QUECTEL WIRELESS SOLUTIONS
CO. LTD.,


   Defendant.

C.A. No. 20-cv-1707-CFC

**JURY TRIAL DEMANDED**

## APPENDIX A
## UNDERTAKING OF EXPERTS OR CONSULTANTS
## REGARDING PROTECTIVE ORDER

I, _____, declare that:

  1. My address is

_____. My current

employer is

_____. My

current occupation

is_____.

  2. I have received a copy of the Protective Order in this action. I have

carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – SOURCE CODE" that is disclosed to me.

4. Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Signature _____

Date _____


2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V., <br><br> Plaintiff, <br><br> vs. <br><br> QUECTEL WIRELESS SOLUTIONS CO. LTD., <br><br> Defendant. | C.A. No. 20-cv-1707-CFC <br><br> **JURY TRIAL DEMANDED** |

## APPENDIX B
## UNDERTAKING OF PARTY REPRESENTATIVES
## REGARDING PROTECTIVE ORDER

I, _____, declare that:

    1.    My address is

_____. My current

employer is

_____. My

current occupation

is_____.

    2.    I have received a copy of the Protective Order in this action. I have

carefully read and understand the provisions of the Protective Order.

3.    I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" that is disclosed to me.

4.    Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Signature    _____

Date        _____

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, AND LAIRD CONNECTIVITY INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

## [PROPOSED] PROTECTIVE ORDER

WHEREAS, Plaintiff Koninklijke Philips N. V. ("Philips") and Defendants Quectel Wireless Solutions Co. Ltd. ("Quectel"), CalAmp Corp. ("CamAmp"), Xirgo Technologies, LLC ("Xirgo"), and Laird Connectivity Inc. (n/k/a Ezurio LLC) ("Laird") in the above-captioned action, hereafter collectively referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.	Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL" or, depending on the level of protection as set forth below, "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE." The words "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL -SOURCE CODE" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the words "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as

2

"CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY."

2.      Any document produced before issuance of this Order with the designation "confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order and any such documents produced with the designation "Confidential—Outside Attorneys' Eyes Only" or the like shall receive the same treatment as if designated "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3.      With respect to documents, information, or material designated "CONFIDENTIAL," "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" or HIGHLY CONFIDENTIAL – SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY," and "HIGHLY CONFIDENTIAL – SOURCE CODE" individually and collectively.

3

pleadings and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.     A designation of Protected Material (i.e., "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY") may be made at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s) as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information, or material derived from or based thereon.

5.     "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written

4

consent of the designating Party, upon order of the Court, or as set forth in

paragraph 13 herein:

a. Outside counsel of record in this Action for the Parties.

b. Employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action.

c. (c) Up to and including two (2) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that any Party may in good faith request the other Party's consent to designate one or more additional representatives, the other Party shall not unreasonably withhold such consent, and the requesting Party may seek leave of Court to designate such additional representative(s) if the requesting Party believes the other Party has unreasonably withheld such consent. Before access is given, the representative who is proposed to be given access to CONFIDENTIAL information shall complete the Undertaking attached as Appendix B hereto, which shall be served upon the producing Party. The procedure concerning timing and objections in paragraph 5(d) shall be followed.

d. Outside consultants or experts retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties or of an affiliate of a Party hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert, including a list of other cases in which the individual has provided a report or testified (at trial or deposition) and a list of companies that the individual has been employed by or provided consulting services pertaining to the field of the invention of the patent(s)-in-suit or the products accused of infringement within the last four years and a brief description of the subject matter of the consultancy or employment, at least ten (10) days before access to the Protected Material is to be given to that consultant or expert to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use

5

good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of receipt of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order.

e. Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action.

f. The Court and its personnel.

6. A Party shall designate documents, information, or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information, or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material.

7. Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except

6

as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8.    To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY."

9.    For Protected Material designated CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-b) and (d-f); provided, however, that the designating Party shall accommodate reasonable requests to provide summary information to in-house counsel who exercise no competitive decision-making authority on behalf of the client and reasonably require access to such information.  Only individuals listed in paragraphs 5(a-b) and (d-f) shall have access to material designated HIGHLY CONFIDENTIAL – SOURCE CODE.

10.   To the extent production of Source Code becomes necessary in this case, the following additional provisions shall apply:

  a.  Absent agreement by the producing party, access to Source Code shall be provided on no more than two, for both C.A. No. 20-cv-1707 CFC

and C.A. No. 20-cv-1710-CFC, "stand-alone" computer(s) (i.e., the computer(s) may not be linked to any network, including a local area network ("LAN"), an intranet, or the Internet, and may not be connected to any printer or storage device other than the internal hard disk drive of the computer). The stand-alone computer(s) shall be kept in a secure location at the offices of the producing Party's outside litigation counsel, or at such other location as the producing Party and receiving Party mutually agree. If the producing Party objects to a particular location for the review of Source Code, the producing Party and the receiving Party agree to meet and confer in good faith regarding such objection and present the dispute to the Court if they are not able to reach agreement. The stand-alone secure computer(s) may be password protected and shall have the Source Code stored on a hard drive of the computer(s). The producing Party shall produce Source Code in computer searchable format on the stand-alone computer(s). The stand-alone computer(s) shall, at the receiving Party 's request, include reasonable analysis tools and translation software appropriate for the type of Source Code and language of any comments except that the receiving Party cannot use any compilers, interpreters, or simulators in connection with the Source Code absent

8

consent of the producing Party. The receiving Party shall be responsible for providing the tools, licenses to the tools and/or software that it wishes to use to the producing Party at least seven (7) days in advance of the inspection at its own expense so that the producing Party may install such tools and software on the stand-alone computer. If the producing Party objects to particular software tools or software proposed by the receiving Party, the producing Party and receiving Party agree to meet and confer regarding such objection and to present the dispute to the Court if they are not able to reach agreement.

b. The receiving Party may request paper copies of no more than thirty (30) consecutive pages of Source Code for a total of not more than five hundred (500) pages that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purpose of reviewing the Source Code other than electronically as set forth in paragraph (b) in the first instance. Should the receiving Party believe that more than thirty consecutive pages or more than five hundred total pages of Source Code are needed, the receiving Party will explain the need for additional pages to the Producing Party in

writing and the parties will meet and confer in good faith in an effort to resolve the issue. The producing Party shall provide all such Source Code in paper form, including bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE."

c. The receiving Party shall provide at least three (3) business days' notice to access the Source Code and shall identify all persons, including members of the receiving Party's Outside Counsel of Record, who will review a producing Party's Source Code on behalf of a receiving Party at that inspection. The receiving Party shall have access to the stand-alone secure computer(s) only during business hours, which for purposes of this paragraph shall be 9:00 a.m. through 6:00 p.m. local time at the reviewing location. Access to the stand-alone computer shall be limited to experts retained by the receiving party and two (2) outside counsel representing the receiving party, all of whom have been approved under the protective order in place. The parties are to cooperate in good faith such that maintaining the Source Code at the offices of the producing Party's outside litigation counsel shall not unreasonably hinder the receiving Party's ability to efficiently conduct the prosecution or defense in this case. Proper identification of all Source Code reviewers shall be provided prior to

10

any access to the stand-alone secure computer. All persons who will
review Source Code on behalf of a receiving Party shall be identified
in writing to the producing Party at least five (5) business days in
advance of the first time that such person reviews such Source Code.
The producing Party shall provide these individuals with information
explaining how to start, log on to, and operate the stand-alone
computer in order to access the produced Source Code on the stand-
alone secure computer(s). For subsequent reviews taking place on
non-consecutive business days by such persons, the receiving Party
shall give at least three (3) business days' notice to the producing
Party of such review. The parties agree to cooperate in good faith and
to make reasonable efforts to accommodate requests for access outside
of normal business hours when such access is necessary.

d. Unless otherwise agreed in advance by the parties in writing,
following each inspection, the receiving Party's Outside Counsel
and/or experts shall remove all notes, documents, and all other
materials from the room that may contain work product and/or
attorney client privileged information.

e. The receiving Party shall maintain all paper copies of any portions of

11

the Source Code provided by the producing Party in a secured, locked area. The receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition must not be given to or left with a court reporter or any other unauthorized individual. The receiving Party shall only include such excerpts as are necessary for the purposes of deciding the issue for which such part of the Source Code is being used. All materials containing Source Code that are filed with the court shall be filed under seal. A receiving Party who intends to file Source Code with the Court shall use reasonable efforts to keep to a minimum the amount of Source Code included in any such filing.

11.     Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege,

12

doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party. The recipient(s) shall delete all electronic copies of such documents, information, or other material, and certify that they have done so within ten (10) days of receiving the notice of the inadvertently produced documents, information, or other material.

12.    There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard

13

all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

13.    If a Party learns that, by inadvertence or otherwise, it has disclosed Designated Material to any person or in any circumstance not authorized under this Protective Order, the Party must immediately (a) notify in writing the Party that designated the Designated Material, (b) use its best efforts to retrieve all copies of the Designated Material, and (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order.

14.    Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating Party; (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director, or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this

14

Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

15.    Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as CONFIDENTIAL— OUTSIDE ATTORNEYS' EYES ONLY.

16.    Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court. The filing Party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing. Exhibits to a filing shall conform to the labeling requirements set forth in

this Order. If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

17. The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

18. A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

19.     Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

20.     Each designated party representative to whom information designated as CONFIDENTIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix B.

21.     To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

17

22.    To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" in accordance with this Order.

23.    Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

24.    The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information, or material hereunder shall in no way

18

constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

25.    Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

26.    Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

27.    Nothing in this Order shall be construed to affect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

28.    Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL

to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

29. Other Proceedings. By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that the information may be relevant and subject to disclosure in another case. Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated as confidential pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

30. Deposition Hour Counting. Non-expert witnesses who are witnesses in both C.A. No. 20-cv-1707 CFC and C.A. No. 20-cv-1710-CFC shall be deposed one time, with the hours counting towards the parties' allotments in both matters under Section 9(e)(1) of the scheduling order. Additionally, for depositions in which an interpreter is used, for purposes of counting allocated deposition hours pursuant to Section 9(e)(1) of the scheduling order, a multiplier of 1.5 shall be applied to the allocated deposition time (i.e., each minute shall count as $^2/_3$ a minute of deposition time). For expert witnesses, the assumption will be one deposition per report per case.

31.    Documents, information, or material produced or disclosed by Philips or Quectel in C.A. No. 20-cv-1707 CFC will be considered to have been also produced or disclosed in C.A. No. 20-cv-1710-CFC and vice versa, and subject to the protective orders in each case.

21

| | |
|---|---|
| */s/ Adam W. Poff*<br>Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Alexis N. Stombaugh (No. 6702)<br>Young Conaway Stargatt & Taylor, LLP<br>1000 N. King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>astombaugh@ycst.com<br><br>Eley O. Thompson (*pro hac vice*)<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>(312) 832-4359<br>ethompson@foley.com<br><br>Kevin M. Littman (*pro hac vice*)<br>Lucas I. Silva (*pro hac vice*)<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue<br>Suite 2500<br>Boston, MA 02199-7610<br>(617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br><br>*Attorneys for Plaintiff Koninklijke Philips N.V* | */s/ Warren K. Mabey*<br>Warren K. Mabey, Jr.<br>AnnaMartina Tyreus Hufnal<br>Fish & Richardson, P.C.<br>222 Delaware Avenue, 17th Floor<br>P.O. Box 1114<br>Wilmington, DE 19899-1114<br>(302) 652-5070<br>mabey@fr.com<br>hufnal@fr.com<br><br>Elizabeth G.H. Ranks (*pro hac vice*)<br>Fish & Richardson, P.C.<br>One Marina Park Drive, Suite 1700<br>Boston, MA 02210<br>(617) 542-5070<br>ranks@fr.com<br><br>Thomas H. Reger II (*pro hac vice*)<br>Fish & Richardson, P.C.<br>1717 Main Street, Suite 5000<br>Dallas, TX 75201<br>(214) 747-5070<br>reger@fr.com<br><br>Bryan J. Cannon (*pro hac vice*)<br>Fish & Richardson, P.C.<br>1000 Maine Avenue SW, Suite 1000<br>Washington, D.C. 20024<br>(202) 783-5070<br>cannon@fr.com<br><br>Lawrence R. Jarvis (*pro hac vice*)<br>Katherin Reardon (*pro hac vice*)<br>Fish & Richardson, P.C.<br>1180 Peachtree Street NE, 21st Floor<br>Atlanta, GA 30309<br>(404) 892-5005 |

/s/ *Kenneth L. Dorsney*
Kenneth L Dorsney
Cortlan S. Hitch
Morris James LLP
3205 Avenue North Boulevard
Suite 100
Wilmington, DE 19803
(302) 888-6988
kdorsney@morrisjames.com
chitch@morrisjames.com


Kirk T. Bradley (*pro hac vice*)
Lauren Griffin (*pro hac vice*)
Alston & Bird
Vantage South End
1120 South Tryon Street
Suite 300
Charlotte, NC 28230
(704) 444-1000
kirk.bradley@alston.com
lauren.griffin@alston.com

*Attorneys for Defendant Xirgo
Technologies, LLC*

/s/ *Chad S.C. Stover*
Chad S.C. Stover
Barnes & Thornburg LLP
222 Delaware Avenue Suite 1200
Wilmington, DE 19801
(302) 300-3474
chad.stover@btlaw.com

Eric J. Beste (*pro hac vice*)
Barnes & Thornburg LLP
655 W. Broadway, Suite 1300
San Diego, CA 92101
(619) 321-5000
Eric.beste@btlaw.com

jarvis@fr.com
kreardon@fr.com

*Attorneys for Defendant Quectel
Wireless Solutions Co. Ltd.*



/s/ *Megan C. Haney*
John C. Phillips, Jr.
Megan C. Haney
Phillips, McLaughlin & Hall, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

Glennon P. Fogarty (*pro hac vice*)
Husch Blackwell LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
(314) 480-1500
glennon.fogarty@huschblackwell.com

John Aron Carnahan (*pro hac vice*)
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
aron.carnahan@huschblackwell.com


*Attorneys for Defendant Laird
Connectivity, Inc.*

23

Craig D. Leavell (*pro hac vice*)
Barnes & Thornburg LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 357-1313
Craig.leavell@btlaw.com

*Attorneys for Defendant Calamp Corp.*

Date: 9/23/25

The Honorable Colm F. Connolly

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

KONINKLIJKE PHILIPS N.V.,

Plaintiff,

vs.

QUECTEL WIRELESS SOLUTIONS
CO. LTD., CALAMP CORP., XIRGO
TECHNOLOGIES, LLC, AND LAIRD
CONNECTIVITY INC.,

Defendants.

C.A. No. 20-cv-1710-CFC

**JURY TRIAL DEMANDED**

---

## APPENDIX A
## UNDERTAKING OF EXPERTS OR CONSULTANTS
## REGARDING PROTECTIVE ORDER

I, _____, declare that:

1.    My address is

_____. My current

employer is

_____. My

current occupation

is_____.

2.    I have received a copy of the Protective Order in this action. I have

carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – SOURCE CODE" that is disclosed to me.

4. Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Signature    _____

Date    _____


2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, AND LAIRD CONNECTIVITY INC.,<br><br>Defendants. | C.A. Nos. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

## APPENDIX B
## UNDERTAKING OF PARTY REPRESENTATIVES
## REGARDING PROTECTIVE ORDER

I, _____, declare that:

1.    My address is

_____. My current

employer is

_____. My

current occupation

is_____.

2.    I have received a copy of the Protective Order in this action. I have

carefully read and understand the provisions of the Protective Order.

3

3.      I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" that is disclosed to me.

4.      Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL" or "CONFIDENTIAL— OUTSIDE ATTORNEYS' EYES ONLY" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signature     _____

Date         _____