IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KONINKLIJKE PHILIPS N.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1710-CFC |
| | ) | |
| QUECTEL WIRELESS SOLUTIONS | ) | **JURY TRIAL DEMANDED** |
| CO. LTD., CALAMP CORP., XIRGO | ) | |
| TECHNOLOGIES, LLC, LAIRD | ) | |
| CONNECTIVITY, INC., and EAGLE | ) | |
| ELECTRONICS INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT EAGLE WIRELESS HOLDINGS, INC. F/K/A EAGLE ELECTRONICS INC. MEMORANDUM IN SUPPORT OF <u>MOTION TO DISMISS</u>**

Karen E. Keller (No. 4489)
Virginia K. Lynch (No. 7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
glynch@shawkeller.com
*Attorneys for Defendant Eagle Wireless*
*Holdings, Inc. f/k/a Eagle Electronics Inc.*

Dated: April 10, 2026

# **TABLE OF CONTENTS**

**Page**

I.  NATURE AND STAGE OF PROCEEDINGS..................................................1

II.  SUMMARY OF ARGUMENT.........................................................................2

III. STATEMENT OF FACTS ................................................................................2

IV. ARGUMENT......................................................................................................5

    A.   Legal Standards ...........................................................................................5

      1.   Rule 12(b)(6): Motion to Dismiss .................................................5

      2.   Section 101: Patent Eligibility ......................................................5

    B.   Claim 1 Is Representative. ...........................................................................6

    C.   *Alice* Step One: Claim 1 Is Directed to an Abstract Idea...........................8

    D.   *Alice* Step Two: Claim 1 Lacks an Inventive Concept. ...........................13

V.  CONCLUSION.................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016) .............................................................................13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  573 U.S. 208 (2014).................................................................................*passim*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...............................................................................................5

*Blackbird Tech LLC v. Advanced Discovery Inc.,*
  No. 16-cv-413, 2017 WL 2733725 (D. Del. June 26, 2017)...............................10

*Broadband iTV, Inc. v. Amazon.com, Inc.,*
  113 F.4th 1359 (Fed. Cir. 2024) ........................................................................15

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014) ..........................................................................14

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.,*
  935 F.3d 1341 (Fed. Cir. 2019) .............................................................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................................2, 9

*Doe v. Princeton Univ.,*
  30 F.4th 335 (3d Cir. 2022) ..................................................................................5

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016) ...................................................................*passim*

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
  837 F.3d 1299 (Fed. Cir. 2016) ........................................................................8, 9

*Mobile Acuity Ltd. v. Blippar Ltd.,*
  110 F.4th 1280 (Fed. Cir. 2024) ...............................................................2, 6, 7, 10

ii

*NTJK, Inc. v. Amazon.com, Inc.*,
    No. 24-cv-1043, 2025 WL 1885694 (D. Del. July 8, 2025)...........................7, 8

*Railware, Inc. v. Peninsula Corridor Joint Powers Bd.*,
    No. 25-cv-5725, 2026 WL 800129 (N.D. Cal. Mar. 23, 2026)....................10, 15

*Recentive Analytics, Inc. v. Fox Corp.*,
    692 F. Supp. 3d 438 (D. Del. 2023)....................................................................5

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1378 (Fed. Cir. 2019) ........................................................................6

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ........................................................................11

*United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2023-1778,
    2025 WL 1662737 (Fed. Cir. June 12, 2025).....................................................12

**Statutes**

35 U.S.C. § 101 ..............................................................................................*passim*

35 U.S.C. § 112(6) ................................................................................................10

**Other Authorities**

Local Rule 7.1.3(a)(4).........................................................................................17

Rule 12(b)(6)..........................................................................................................5

iii

The claims of U.S. Patent No. 7,944,935 are directed to nothing more than the abstract idea of receiving, storing, assembling, and outputting data. The claims describe the human function of receiving information, storing it in memory, assembling portions of it, and outputting it as this Court recognized during the *Markman* hearing. The Federal Circuit has repeatedly found collecting and analyzing information by steps performed by people in their minds falls within the realm of abstract ideas. None of the claimed concepts represent an advancement or improvement over existing technology. All of the claimed concepts are directed to well-known, routine, and conventional technology. Put simply, there is no inventive concept recited by the claims. The claims are therefore ineligible under 35 U.S.C. § 101, and Defendant Eagle respectfully moves the Court to dismiss Philips's claim for infringement of the '935 patent for failure to state a claim.

## I.    NATURE AND STAGE OF PROCEEDINGS

On October 14, 2025, Plaintiff Koninklijke Philips N.V. ("Philips") filed a Motion for Leave to Amend Its Complaints. D.I. 78; *see also* D.I. 54 (C.A. No. 1:20-cv-1707 (the "1707 Case")). Among other requested changes, Philips sought to join Eagle Electronics Inc. ("Eagle") as a defendant. D.I. 78 at 1–2; 1707 Case D.I. 54 at 1–2. On March 5, 2026, the Court granted Philips's motion. D.I. 216 at 198:11–12. Philips subsequently filed its Third Amended Complaint, alleging

1

infringement of the '935 patent, among other patents.  D.I. 218 ("Third Am. Compl.") ¶¶ 84–118.

## II.    SUMMARY OF ARGUMENT

1.     Claim 1 is representative of all claims of the '935 patent because all claims are substantially similar and directed to the same abstract idea. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024).

2.     Claim 1 is directed to receiving, storing, assembling, and outputting data.  This method illustrates a human mental process and is a fundamentally abstract idea.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

3.     Claim 1 is not directed to any improvements in technology or to new technologies as the '935 patent itself notes that the prior art disclosed multiplexing data packets having different priorities.  '935 patent at 1:31–34, 2:53–54.

4.     Claim 1 requires only generic, conventional wireless communication equipment to implement the abstract idea to which it is directed and lacks an inventive concept that transforms it into significantly more than the abstract idea itself.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016).

## III.    STATEMENT OF FACTS

The '935 patent discloses a method for multiplexing data packets and an apparatus, communication terminal, and communication system for the same.  '935

patent at 1:4–8.  The patent explains that data packets in communication system have different priority values, and multiplexing allows the system to ensure that packets are transmitted through the system according to their relative priority.  *Id.* at 1:27–47.  The goal of the claimed method and system is to "enable flexible and efficient multiplexing of data packets."  *Id.* at 1:48–49.

The '935 patent has two independent claims: claim 1 and claim 9.  *See id.* at 6:5–8:14.  Claim 1 reads as follows:

> A microprocessor-based method of multiplexing data packets having different assigned priorities, comprising:
>
> receiving data packets;
>
> operating a queue for each different priority of data packet;
>
> assembling a group of the data packets wherein a first portion of the group is populated with data packets selected from one or more of the queues according to a first rule and a second portion of the group is populated with data packets selected from one or more of the queues according to a second rule; and
>
> transmitting the group, wherein the size of the first and second portions is adapted according to the delay experienced by data in each queue relative to a delay criterion for the respective queue.

*Id.* at 6:5–18.  Figure 3 of the '935 patent illustrates this method:

3



FIG. 3

*Id.* at Fig. 3. Claim 9 discloses "[a] multiplexing apparatus for multiplexing data packets having different assigned priorities," with "means for" performing each of the steps disclosed in claim 1. *Id.* at 6:48–63.

Importantly, the claimed method and apparatus require generic communication system equipment to perform the claimed functionality. The patent primarily describes the invention with reference to Universal Mobile Telecommunications Systems (UMTS) but explains "it can be used in other communication systems, particularly in mobile communication systems. The use of the invention is not limited to wireless communication systems." *Id.* at 5:52–56.

## IV.   ARGUMENT

### A.   Legal Standards

#### 1.   Rule 12(b)(6): Motion to Dismiss

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and view those facts in the light most favorable to the plaintiff."  *Recentive Analytics, Inc. v. Fox Corp.*, 692 F. Supp. 3d 438, 446 (D. Del. 2023).  The Court should, however, "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements."  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

#### 2.   Section 101: Patent Eligibility

Section 101 of the Patent Act defines patent-eligible subject matter.  35 U.S.C. § 101.  The Supreme Court has interpreted 35 U.S.C. § 101 to exclude "[l]aws of nature, natural phenomena, and abstract ideas" from patent eligibility.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

5

Under *Alice*, courts perform a two-step analysis to determine patent eligibility under § 101. The *Alice* step one inquiry assesses whether the claims at issue are directed to a patent ineligible concept by "evaluat[ing] the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (internal quotation marks omitted).

At *Alice* step two, if the patent covers an abstract idea, courts examine "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78–79 (2012)). At step two, the court must determine whether an "inventive concept" elevates the claim to patent-eligible subject matter, which requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72).

### B.    Claim 1 Is Representative.

Claim 1 is representative of all 18 claims of the '935 patent. The Court's analysis therefore need only focus on the eligibility of claim 1. "Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile*

6

*Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)).  A defendant bears the initial burden to show the claims are "substantially similar and linked to the same ineligible concept," then the burden shifts to the plaintiff "to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims." *Id.*; *see NTJK, Inc. v. Amazon.com, Inc.*, No. 24-cv-1043, 2025 WL 1885694, at *3–4 (D. Del. July 8, 2025) (applying burden-shifting framework).

Claim 1 is representative of claim 9, the only other independent claim. Whereas claim 1 is directed to a four-step "method of multiplexing data packets having different assigned priorities," '935 patent at 6:5–18, claim 9 is directed to a "multiplexing apparatus for multiplexing data packets having different assigned priorities," with "means for" accomplishing the same four steps (albeit disclosing a "queue *store*" rather than a "queue" for storing data packets), *id.* at 6:48–63.  The specification does not disclose particular hardware for the multiplexing apparatus or any other indication that claim 9 is not "linked to the same ineligible concept" as claim 1. *Mobile Acuity*, 110 F.4th at 1290–92 (holding district court properly treated claims as representative where other claims' additional limitations merely "tack on generic computer components" or "introduce conventional computer activities"). For the same reasons, claim 1 is representative of claim 17, which discloses a

7

"communication terminal comprising the multiplexing apparatus of claim 9," and claim 18, which discloses a "communication system" comprising the communication terminal. *See* '935 patent at 5:52–56 (explaining the claims can be implemented on generic mobile communication systems).

Claim 1 is also representative of all other dependent claims (that is, claims 2–8 and 10–16). Claims 2–5 and 10–13 add limitations defining the "first rule" and "second rule" by which the method/apparatus assembles the first and second portions of the group of data packets. '935 patent at 6:19–36, 6:64–7:14. Claims 6–8 and 14–16 add limitations regarding the sizes of the first and second portions of the queue (or "queue store"), including adapting the sizes of the portions and doing so in response to a signal. *Id.* at 6:37–48, 7:15–18:8. While these limitations more closely define the claimed algorithm, the claims remain directed to the same abstract idea of receiving, storing, assembling, and outputting data. Nor does the specification disclose that these added limitations require anything other than generic wireless communication system hardware. The § 101 analysis therefore remains unchanged for these dependent claims.

## C.   *Alice* Step One: Claim 1 Is Directed to an Abstract Idea.

*Alice* step one considers the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016). This inquiry looks

8

to whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery," *id.* at 1314, and is informed by the patent's written description, *see Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) ("[T]he specification [is] helpful in illuminating what a claim is 'directed to.'").  While there are no bright-line rules regarding whether a particular idea is abstract as a matter of law, the Federal Circuit has consistently held claims abstract when they are directed to functions humans have always performed.  *E.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding claims directed to collecting data, recognizing certain data within the collected data set, and storing recognized data in memory were drawn to an abstract idea because "humans have always performed these functions"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("[W]e have treated analyzing information by steps people go through in their minds . . . without more, as essentially mental processes within the abstract-idea category.").

Claim 1, read as a whole in light of the written description, is directed to the abstract idea of receiving, storing, assembling, and outputting data.  The four claimed steps of (1) "receiving data packets," (2) "operating a queue for each different priority of data packet," (3) "assembling a group of the data packets" based

on a first and a second rule, and (4) and "transmitting the group [of data packets]" are generalized steps to be performed in a generic wireless communication system. *See* '935 patent at 5:52–56; *Blackbird Tech LLC v. Advanced Discovery Inc.*, No. 16-cv-413, 2017 WL 2734725, at *4 (D. Del. June 26, 2017) (holding claims were directed to an abstract idea where they disclosed generalized steps of organizing data). The claimed steps "consist solely of result-orientated, functional language and omit any specific requirements as to how these steps of information manipulation are performed." *Mobile Acuity*, 110 F.4th at 1292–93 ("As we have by now frequently held, claims reciting generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components, are directed to abstract ideas"; collecting cases).

Importantly, claim 1 does not require any particular means of data transmission. The Court construed "transmitting the group" to mean "outputting the group." D.I. 206 at 2. The Court construed "means for transmitting the group," subject to 35 U.S.C. § 112(6), to have a function of "transmitting the group" and a structure of "an output and equivalents thereof." *Id.* For both limitations, the Court adopted Philips' proposed constructions. D.I. 190 ("*Markman* Hr'g Tr.")at 182:14–20, 183:22–184:2. Under Philips' own arguments and the Court's adopted claim construction, therefore, the "transmitting the group" limitation requires only generic outputting of data and nothing more, such as transmitting or moving the output data

10

to another place. *See Railware, Inc. v. Peninsula Corridor Joint Powers Bd.*, No. 25-cv-5725, 2026 WL 800129, at *9 (N.D. Cal. Mar. 23, 2026) (holding a claim that disclosed functions of receiving, generating, and transmitting information was directed to an abstract idea where the claim lacked "any requirement that the code be returned—or indeed, that anything *at all* be done with the code").

Nor does the claim's invocation of a "first rule" and "second rule," by which the method selects data packets to populate the first and second portions of the group, make it non-abstract. Selecting or categorizing information is a quintessentially abstract idea, and the use of certain criteria to select and categorize information does not render it concrete. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (holding claims directed to "selecting an ad" based on information in an activity log were abstract).

Claim 1's method of receiving, storing, assembling, and outputting data is directed to an abstract idea. The method describes the human function of receiving information, storing it in memory, assembling portions of it, and outputting. *Markman* Hr'g Tr. at 183:9–13 (the Court explaining the claimed method "seems to illustrate just the human function of receiving, storing in your memory, assembling portions of it, and transmitting"); *Elec. Power Grp.*, 830 F.3d at 1354 ("[W]e have treated analyzing information by steps people go through in their minds . . . without more, as essentially mental processes within the abstract-idea category"). Indeed,

11

the Court stated at the *Markman* hearing that, based on its construction of "transmitting the group," the claimed method was "just human grouping of data and thinking." *Markman* Hr'g Tr. at 183:13–16.

The claims of the '935 patent are not directed to improvement to existing technology nor new technologies. Philips alleges that the claims of the '935 patent "are improvements in the technology of radio communications." (Third Am. Compl., ¶ 71) and that "no radio communications systems [] multiplexed data packets having different assigned priorities in the manner specified in some of the various claims of the '935 patent." *Id.* ¶ 72. Philips is incorrect. Multiplexing data packets having different priorities were known long before the '935 patent. Indeed, the '935 patent further notes that this prior art figure "shows queues 5 of MAC-d PDUs having different priorities." *Id.* at 1:31–34. The '935 patent includes a Figure 1 that "is a schematic diagram illustrating a prior art method of MAC-d multiplexing." '935 Patent at 2:53–54. Thus, the claims are directed to well-known technologies.

The specification underscores the abstract nature of claim 1. Figure 3, *supra,* illustrates that the claimed method falls squarely within the category of claims directed to "abstract processes of collecting and analyzing information, without more." *Elec. Power Grp.*, 830 F.3d at 1354; *see also United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2023-1778, 2025 WL 1662737, at *2 (Fed. Cir. June 12, 2025)

("We have held that claims directed to collecting information, analyzing information by 'steps people go through in their minds, or by mathematical algorithms, without more,' and presenting the results of collecting and analyzing information fall 'within the realm of abstract ideas.'").  The Court emphasized at the *Markman* hearing that the claimed method illustrated in Figure 3 is quintessentially abstract.  *Markman* Hr'g Tr. at 183:17–21 ("You could almost put [Figure 3] up to a class in a patent course and say:  Figure 3, if transmit is nothing more than just outputting [data], that that's generally not patentable.").  The purported advance of the claims is "flexible and efficient multiplexing of data packets," '935 patent at 1:48–49, but achieves this alleged benefit only by performing an abstract method on generic wireless communication equipment.  Claim 1 is therefore directed to an abstract idea.

**D.    *Alice* Step Two: Claim 1 Lacks an Inventive Concept.**

At *Alice* step two, the court must "determine whether the claims do significantly more than simply describe the abstract method and thus transform the abstract idea into patentable subject matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (quoting *Ultramercial*, 772 F.3d at 715 (citation modified)).  The court looks to see "whether any 'additional features' in the claims constitute an 'inventive concept,' thereby rendering the claims patent-eligible even though they are directed to an abstract idea." *Id.* (quoting *Alice*, 573 U.S. at 221).

The elements of claim 1, considered individually and as an ordered combination, contain no inventive concept sufficient to render the claim patent-eligible.  "The claim[] in this case do[es] not even require a new source or type of information, or new techniques for analyzing it."  *Elec. Power Grp.*, 830 F.3d at 1355.  None of the steps disclosed by claim 1 ("receiving" data, "operating" a data storage queue, "assembling" a group of data packets, and "transmitting" data) require inventive techniques or programming.  *Id.*  Limiting the claim to the particular technological environment of wireless communication multiplexing is insufficient to transform it into a patent-eligible application of the abstract idea to which it is directed.  *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (narrowing application of abstract idea to particular technology "has long been held insufficient to save a claim in this context").

Nothing in claim 1 requires anything other than generic, conventional wireless communication system components performing their routine, conventional functions.  Philips argued at the Markman hearing that the transmitting limitation in the asserted claims does not refer to wireless transmission over a network but merely to "internally outputting that data from the multiplexing apparatus." *Markman* Hr'g Tr. at 161:11–162:23.  The claims do not disclose any inventive wireless communication hardware or network component, or even an innovative arrangement of components.  Indeed, the specification makes clear that the method "is not limited

14

to [application in] UMTS [systems]," but rather that it "can be used in other communication systems, particularly in mobile communication systems."  '935 patent at 5:52–56.  "[S]uch invocations of . . . networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application' of an abstract idea."  *Elec. Power Grp.*, 830 F.3d at 1355 (quoting *buySAFE*, 765 F.3d at 1353, 1355); *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1370 (Fed. Cir. 2024) (holding the use of "conventional server capabilities such as managing a database, and retrieving and transmitting content" using "off the market" servers failed to supply an inventive concept).  As discussed above, Philips's assertion that "no radio communications systems [] multiplexed data packets having different assigned priorities" (D.I. 218, ¶ 72) is rebutted by the patent itself.  '935 patent at 1:31–34, 2:53–54.  Philips has not identified any inventive concept within the claims, nor can it. "Ultimately, because the claim language itself merely recites generating and transmitting [information]," the claim lacks "an inventive concept suggesting patentability."  *Railware, Inc.*, 2026 WL 800129, at *10.  Claim 1 therefore fails *Alice* step two and is unpatentable under § 101.

15

## V.    CONCLUSION

For the foregoing reasons, the claims of the '935 patent are directed to patent-ineligible subject matter.  Eagle therefore respectfully requests that the Court dismiss Philips's claim of infringement of the '935 patent for failure to state a claim.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
Virginia K. Lynch (No. 7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
glynch@shawkeller.com
*Attorneys for Defendant Eagle Wireless*

Dated: April 10, 2026                *Holdings, Inc. f/k/a Eagle Electronics Inc.*

16

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to the Court's Standing Order Regarding Briefing in All Cases (Nov. 10, 2022) and Local Rule 7.1.3(a)(4), the undersigned counsel hereby certifies that the foregoing document contains 3,424 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
Virginia K. Lynch (No. 7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
glynch@shawkeller.com
*Attorneys for Defendant Eagle Wireless*

Dated: April 10, 2026                    *Holdings, Inc. f/k/a Eagle Electronics Inc.*

17