# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V., | |
| Plaintiff, | |
| vs. | C.A. No. 20-cv-1710-CFC |
| QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC., | JURY TRIAL DEMANDED |
| Defendants. | |

## PHILIPS'S ANSWERING BRIEF IN OPPOSITION TO EAGLE WIRELESS HOLDINGS, INC. f/k/a EAGLE ELECTRONICS INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.      Nature and Stage of the Proceedings ................................................................1

II.     Summary of Argument .......................................................................................1

III.    Statement of Facts ..............................................................................................2

IV.     Legal Standard ...................................................................................................4

V.      Argument ............................................................................................................5

    A.      Eagle Fails to Establish Claim 1 is Representative ....................................5

    B.      Claim 1 Is Patent-Eligible Under *Alice* ...................................................8

        1.      *Alice* Step One: Claim 1 Is Directed to a Technological
            Improvement, Not an Abstract Idea .......................................................9

          a.      Eagle's Arguments Oversimplify Claim 1 ..............................9

          b.      Claim 1 Is Comparable to Patent-Eligible Claims in Other Cases....13

          c.      Eagle's Cited Cases Are Inapposite .......................................17

        2.      *Alice* Step Two: Claim 1 Includes an Inventive Concept......................19

VI.     Conclusion ..........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ..................................................................... passim

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) .........................................................................................4, 5

*Aon Re, Inc. v. Zesty.Ai, Inc.*,
791 F. Supp. 3d 531 (D. Del. 2025) ....................................................................7

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) .........................................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................4

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ............................................................... 6, 20, 21

*Blackbird Tech LLC v. Advanced Discovery Inc.*,
No. 16-cv-413, 2017 WL 2734725 (D. Del. June 26, 2017) ..............................19

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) ...........................................................................5

*Containing the Same*,
No. 337-TA-1240, 2021 ITC LEXIS 1102 (ITC Sept. 24, 2021) .......................1

*Diamond v. Diehr*,
450 U.S. 175 (1981) .........................................................................................12

*Diogenes Ltd. v. Draftkings, Inc.*,
623 F. Supp. 3d 423 (D. Del. 2022) ....................................................................8

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .........................................................................17

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ........................................................9, 10

*Eos Positioning Sys., Inc. v. ProStar Geocorp, Inc.*,
   No. CV 22-201, 2023 WL 2709037 (D. Del. Mar. 30, 2023) ...........................20

*Guada Techs. LLC v. Vice Media, LLC*,
   341 F. Supp. 3d 390 (D. Del. 2018)..........................................................4

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)...............................................................5

*Intell. Ventures I LLC v. T-Mobile USA, Inc.*,
   No. 13-1632-LPS, 2017 WL 3706495 (D. Del. Aug. 23, 2017) .................. 15, 16

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed. Cir. 2019) .................................................... 13, 14

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) .................................................... passim

*Mobile Acuity Ltd. v. Blippar Ltd.*,
   110 F.4th 1280 (Fed. Cir. 2024) ...........................................................5, 18

*Powerblock Holdings, Inc. v. iFit, Inc.*,
   146 F.4th 1366 (Fed. Cir. 2025) .................................................... 10, 11

*Railware, Inc. v. Peninsula Corridor Joint Powers Bd.*,
   No. 25-cv-5725, 2026 WL 800129 (N.D. Cal. Mar. 23, 2026)...........................18

*RICPI Commc'ns LLC v. JPS Interoperability Sols., Inc.*,
   No. 18-1507-RGA, 2019 WL 1244077 (D. Del. Mar. 18, 2019)......................15

*Sprint Commc'ns Co. v. Mediacom Commc'ns Corp.*,
   No. 17-1736-RGA, 2021 U.S. Dist. LEXIS 50824 (D. Del. Mar. 16, 2021) ........................................................................... 14, 15

*SRI International, Inc. v. Cisco Systems, Inc.*,
   930 F.3d 1295, 1303 (Fed. Cir. 2019) ...........................................................13

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709, 715 (Fed. Cir. 2014) ...........................................................18

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020) ...............................................................14

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
   No. 2023-1778, 2025 WL 1662737 (Fed. Cir. June 12, 2025)...........................18

**Statutes**

35 U.S.C. § 101 ...................................................................... 1, 4, 17

Plaintiff Koninklijke Philips N.V. ("Philips") opposes Defendant Eagle Wireless Holdings Inc.'s ("Eagle") Motion to Dismiss regarding the validity of the claims of U.S. Patent No. 7,944,935 ("the '935 Patent") (D.I. 245, "Motion" or "Motion to Dismiss"). Eagle's Motion oversimplifies the claimed technology and mischaracterizes the nature of the claims, which are directed to discrete technological improvements, not any abstract idea. The Motion should be denied.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Philips filed the operative Complaint on March 6, 2026. D.I. 218. Fact discovery with respect to defendant Quectel has closed, and expert discovery is underway. *See* D.I. 222. The '935 Patent was previously litigated before the International Trade Commission. Inv. No. 337-TA-1240. There, Quectel and the other Respondents filed a motion arguing that the claims of the '935 Patent are invalid under 35 U.S.C. § 101 as being directed to subject matter that is not eligible for patenting. The ALJ denied the Motion on September 24, 2021. *In re Certain UMTS & LTE Cellular Commc'ns Modules & Prods. Containing the Same*, No. 337-TA-1240, 2021 ITC LEXIS 1102 (ITC Sept. 24, 2021).

## II.    SUMMARY OF ARGUMENT

1.    Claim 1 is not representative of all asserted claims.

1

2. *Alice* Step One: The claims are not directed to an abstract idea and do not reflect a human mental process; they describe a specific technological improvement in radio communications systems.

3. *Alice* Step Two: The claims include inventive concepts that were not well-understood, routine, or conventional at the time of invention and do not preempt any field. Alternatively, at minimum, there are unresolved factual disputes concerning Step Two.

## III.    STATEMENT OF FACTS

Philips is a founding member of the European Telecommunications Standards Institute and has been an active participant in the 3rd Generation Partnership Project, the organization that promulgates cellular standards. D.I. 218 at ¶¶25-28. Philips has made significant contributions to the development of the standards for cellular communications, including 3G/UMTS and 4G/LTE. *Id*. Philips has invested heavily in research and development, resulting in innovations that are fundamental to the operation of cellular communication systems. *Id.* at ¶26, ¶31.

The '935 Patent claims are examples of such innovations. The invention offers a technological solution to problems with legacy methods for multiplexing data packets in packet-based networks that handled packets of different priorities while working on packet-based aspects of UMTS. Specifically, the '935 Patent recognizes that pre-existing methods for multiplexing data packets of different priority lacked

2

the flexibility needed to satisfy all Quality of Service ("QoS") requirements for data. This could lead to the "starving" of lower-priority packets such that the data packets might be excessively delayed or never transmitted, which was unacceptable as demand for cellular technology increased capacity requirements. *See* '935 Patent at 1:12-47, Fig. 1; D.I. 218 at ¶68.

To solve these problems, the inventors developed a system that was more "flexible and efficient" and which would lessen the starvation risk associated with the prior art's rigid multiplexing approach. They therefore invented a multiplexing system where different queues are operated for each different priority of data packet, and where the process of multiplexing involves assembling one group of packets from one or more queues according to a first rule and assembling a second group of packets from one or more queues according to a second rule. *See, e.g.,* '935 Patent at 1:50-59. Such a system provides for applying rules that would avoid the starvation of packets, while offering flexibility that nonetheless still allows for prioritization of data packets, which is necessary for continuous QoS. Using the example of UMTS, the patent further explains the advantages of this approach in allowing different portions of a multiplexed data packet to be governed by different rules. *See id.* at 1:60-67. The patent provides exemplary rules and further describes many configurations that implement additional rules, all of which constitute improvements over legacy multiplexing methods and systems. *Id.* at 2:1-22, 4:5-5:24.

3

A person skilled in the art ("POSITA") would have recognized these teachings as specific improvements to radio communications technology, not as the abstract implementation of existing practices using a general-purpose computer or processing components. D.I. 218 at ¶70-73. The claims also do not automate any practice that was previously carried out by humans. Rather, they are directed to technical improvements in the highly technical field of radio communications.

## IV.    LEGAL STANDARD

"A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations 'could not raise a claim of entitlement to relief.'" *Guada Techs. LLC v. Vice Media, LLC*, 341 F. Supp. 3d 390, 393-94 (D. Del. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). Patent eligibility can be determined at the Rule 12(b)(6) stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Substantively, patent eligibility under §101 is assessed under the two-step test articulated in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Under Step One, the court must determine whether the claim is directed to patent-ineligible subject matter, such as an abstract idea, as opposed to a technical advance.

4

*Id.* However, the Federal Circuit has warned that "we must be careful to avoid oversimplifying the claims." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). If the claim is so broad as to be directed to a patent-ineligible abstract idea, the court considers whether any elements of the claim, either individually or in combination, "transform the nature of the claim into a patent-eligible application," under Step Two. *Alice*, 573 U.S. at 217 (internal quotation omitted). Under both steps, "there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix*, 882 F.3d at 1128.

## V.    ARGUMENT

### A.    Eagle Fails to Establish Claim 1 is Representative

The Court should reject Eagle's assertion that claim 1 is representative of all claims of the '935 Patent. As Eagle admits, as the patent challenger, Eagle "bears the initial burden to make a prima facie showing that the group of claims are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)); D.I. 246 at 7 (quoting *Mobile Acuity*, 110 F.4th at 1290). It fails to meet this burden.

This is particularly true with respect to dependent claims 2-8 and 10-16. While Eagle acknowledges that elements added in these dependent claims specifically define the operation of the first and second rules or algorithms claimed in

5

independent claims 1 and 9, it effectively argues (without supporting caselaw or further explanation) that these details are meaningless because the claims depend from the independent claims and "remain directed to the same [allegedly] abstract idea." D.I. 246 at 8. This argument is both conclusory and legally incorrect.

In the absence of any meaningful analysis of the dependent claim limitations, Eagle's Motion effectively argues that claim 1 is representative of dependent claims 2-8 and 10-16 simply because it is an independent claim from which (some of) these claims depend. But as the Federal Circuit has explained, "[a] claim is not representative simply because it is an independent claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Limitations added in dependent claims may render claims patent-eligible even if the claim from which they depend is ineligible. *Id.* at 1370. Indeed, factual matters preclude a finding of patent-ineligibility for dependent claims where the specification expressly teaches that the limitations added therein improve functionality of the underlying devices. *Id.* (finding material factual issue that precluded patent-ineligibility finding where the "claims recite a specific method of archiving that, according to the specification, provides benefits that improve computer functionality"). Such is the case here, at least as to claims 2-8 and 10-16. *Compare* '935 Patent at 6:19-47 & 6:64-7:8:8 (claims 2-8, 10-16) *with* 2:1-30 (explaining technical improvements associated with each claimed feature).

Moreover, it is well-established that providing greater specificity about how claimed rules operate – as dependent claims 2-8 and 10-16 do – can provide sufficient architecture to render a claim patent-eligible. Rules-based claims, even those that use conventional hardware, are patent-eligible where "the claims are limited to rules with specific characteristics" and "[t]he specific, claimed features of these rules allow for the improvement realized by the invention." *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *see also Aon Re, Inc. v. Zesty.Ai, Inc.*, 791 F. Supp. 3d 531, 538-39 (D. Del. 2025) (denying motion to dismiss and finding claim patent-eligible where it required algorithms with specific characteristics, such that it defined the structure necessary "to achieve a supposed technological improvement in accuracy and efficiency to the [claimed] combination of [known] components"). Each of claims 2-8 and 10-16 provides "specific characteristics" that limit one or more of the claimed rules described in the independent claims, and the '935 Patent teaches that the rules improve functionality in a concrete way. *Compare* '935 Patent at 6:19-47 & 6:64-7:8 *with* 2:1-30.

Eagle's arguments regarding independent claim 9 (and dependent claims 17-18, which depend therefrom) are also deficient. Eagle acknowledges that claim 9 differs from claim 1 at least in its recitation of a "queue store" rather than simply a "queue," but asserts in conclusory fashion that this is immaterial to patent-eligibility. D.I. 246 at 7. Not so.  The patent makes clear that a "queue store" cannot be

synonymous with a "queue" because a "queue store" is a separate element "for containing queues."[1] '935 Patent at 2:66-67; *see also id.* at 4:5-8. Claim 9 therefore requires an element that the supposedly representative claim 1 does not, which may have significant ramifications for the hardware requirements of claim 9's apparatus relative to claim 1's method. Eagle's failure to address this is fatal to its argument that claim 1 is representative of claim 9 and claims that depend therefrom, including claims 17-18. *See Diogenes Ltd. v. Draftkings, Inc.*, 623 F. Supp. 3d 423, 430 (D. Del. 2022) (refusing to find claim representative "where Defendant offers arguments that are conclusory and unexplained at best").

Eagle fails to meet its burden to make a prima facie showing that claim 1 of the '935 Patent is representative. The Motion should be denied as to all other claims.

### B.    Claim 1 Is Patent-Eligible Under *Alice*

Even if Claim 1 were representative – it is not – Eagle's Motion still fails. The facts, when read (as they must be) in the light most favorable to Philips, demonstrate that claim 1 is patent-eligible at both Step One and Step Two.

---

[1] The Court's *Markman* order also construes these terms differently. D.I. 206 at 4.

**1.    *Alice* Step One: Claim 1 Is Directed to a Technological Improvement, Not an Abstract Idea**

**a.    Eagle's Arguments Oversimplify Claim 1**

Claim 1 relates to real world improvements on packet-based communication networks that multiplex data packets of different priorities, not merely to "the abstract idea of receiving, storing, assembling, and outputting data" as Eagle asserts. D.I. 246 at 9. Eagle's arguments improperly oversimplify claim 1.

When considering a computer-based invention under *Alice* Step One, the Court must consider whether the claim focuses "on the specific asserted improvement in computer capabilities… or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). The mere fact that a claimed invention partly relies on or involves existing components, a modified general-purpose microprocessor, or an algorithm does not render a claim patent-ineligible where the invention itself improves functionality. *Id.* at 1338; *see also McRO*, 837 F.3d at 1312 ("We do not assume that [claims involving mathematical formulae] are directed to patent ineligible subject matter because 'all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'") (internal quotation omitted). Thus, the Court must be careful not to oversimplify the claimed invention or describe it at too high a level of abstraction. *See Enfish*, 822 F.3d at 1337 ("[D]escribing the claims at such a high

9

level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule.").

Eagle's Motion improperly conducts the *Alice* analysis by characterizing claim 1 as encompassing only the broad, abstract idea of receiving, storing, assembling, and outputting data using a generic wireless system computer. D.I. 246 at 9-10. Particularly, Eagle improperly bases its analysis on isolated, out-of-context elements of claim 1 rather than the claim as a whole. *Id.* This approach is contrary to law. It is the claim as a whole – not its general field of invention or portions of its individual elements – that matters. *See Enfish*, 822 F.3d at 1335-36. When considered in its entirety, claim 1 is directed to specific technological improvements to a system for multiplexing data packets of different priorities in a packet-based communication network. *Cf., e.g., id.* at 1336 (finding that "a specific improvement to the way computers operate" is not an abstract idea). This constitutes patent-eligible subject matter.

Eagle's assertion that these specific improvements should be disregarded because "[m]ultiplexing data packets having different priorities were [*sic*] known long before the '935 patent" is misplaced and irrelevant. D.I. 246 at 12. It is improper to "read out or ignore limitations in claim 1 here merely because they can be found in the prior art." *Powerblock Holdings, Inc. v. iFit, Inc.*, 146 F.4th 1366, 1373 (Fed. Cir. 2025). Doing otherwise both violates the principle that claims must be assessed

in their entirety for purposes of §101 and improperly conflates the patent-eligibility inquiry under §101 with the prior art-based invalidity inquiries under §§102-103. *See id.* at 1373 n.3. The general presence of data packet multiplexing in the prior art goes to validity under §§102-103—which is not at issue here—not patent-eligibility.

However, even if the presence of multiplexing generally in the prior art were relevant, Eagle's argument is improper because it oversimplifies the claims. Claim 1 does not claim all forms of multiplexing data packets or otherwise preempt this field. Rather, it is directed to a specific, rules-based process that, by virtue of implementing the claimed rules, improves on earlier methods and technology and is fundamentally different from the inflexible prior art systems described in Figure 1 of the '935 patent. These prior art systems multiplexed data packets in a manner that prioritized higher-priority data, but made it more difficult to meet quality-of-service demands while risking packet starvation. *See* D.I. 218 at ¶¶67-73; *see also* '935 Patent at 1:31-47. Such rules-based improvements are patent-eligible. *See, e.g., McRO*, 837 F.3d at 1312-13.

Eagle's conclusory effort to frame claim 1 as directed to implementing a "human function" also fails. D.I. 246 at 11. A plain reading of claim 1—which is limited to a specific implementation of a method for multiplexing data packets of different priorities in a packet-based communication network—demonstrates that the claimed invention cannot be directed to any "human function." Humans do not

11

(and cannot) receive or transmit data packets, let alone multiplex them. Eagle's arguments to the contrary rely on oversimplifications of the claim language that would require the Court to ignore the technical improvements actually made to systems for multiplexing data packets. The Federal Circuit has repeatedly warned against such oversimplifications. *See, e.g., McRO*, 837 F.3d at 1313 (explaining that a "court must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirement of the claims") (quotation omitted); *see also Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981) (cautioning that overgeneralizing claims, "if carried to its extreme, make[s] all inventions un-patentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious").

The claims thus are not directed to the broad abstract idea of "receiving, storing, assembling, and outputting data," whether performed by humans or otherwise. The claims do not cover an abstract result to be achieved, but rather a specific implementation of a system for multiplexing data packets of different priorities in a packet-based communication network—one that cannot be (and never has been) implemented by a human, and which was a specific advancement to the technology that increased flexibility and reduced the risk of starvation. This is patentable subject matter, not a patent-ineligible abstract idea.

b.    **Claim 1 Is Comparable to Patent-Eligible Claims in Other Cases**

Notwithstanding Eagle's efforts to oversimplify the claims, courts routinely reject attempts to characterize improvements in communications technologies, like those claimed by the '935 patent, as abstract ideas.

For example, in *SRI International, Inc. v. Cisco Systems, Inc.*, the Federal Circuit held claims "directed to using a specific technique—using a plurality of network monitors that each analyze types of data on the network and integrating reports from the monitors" not abstract because they represented an "improvement in computer networking technology." 930 F.3d 1295, 1303 (Fed. Cir. 2019). As the Federal Circuit noted, "the human mind is not equipped to detect suspicious activity by using network monitors and analyze network packets as recited in the claims," as the claims required. *Id.* at 1304. Similarly, the claims here are directed to an activity the human mind is incapable of doing and has never done—multiplexing data packets of different priorities in a packet-based communication network.

The Federal Circuit's decision in *Koninklijke KPN N.V. v. Gemalto M2M GmbH* is also instructive. 942 F.3d 1143 (Fed. Cir. 2019). There, the claims were directed to techniques for error-checking data transmissions. Although the claims related to a known check data-matching process, they improved the way data was generated by varying the permutation applied to different data blocks. *Id.* at 1146. Because the claims required that "original data be varied by permutation before

13

being supplied to the generating device" rather than "the mere desired result of catching previously undetectable systematic errors," they were patent-eligible. *Id.* at 1151-52.

Similarly, in *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020), the claims were directed to adding to inquiry messages a data field that allowed for the polling of secondary stations in a cellular system. The Court found the invention "directed to a patent-eligible improvement to computer functionality, namely the reduction of latency experienced by parked secondary stations in communication systems." *Id.* at 1307. The Court reasoned that the invention "changes the normal operation of the communication system itself to overcome a problem specifically arising in the realm of computer networks." *Id.* at 1308 (internal citation omitted). The claims of the '935 Patent also change the "normal operation" (strict priority-based multiplexing) by assembling portions of groups of data packets using rules and adapting the sizes of the portions based upon delay. Critically, this is a change to **how** the multiplexing is done, and it reduces latency and solves other problems arising specifically in the realm of communication systems.

Other cases have reached similar findings where claims improved the operation of devices over the prior art, including in the context of networking or communications technologies. *See, e.g., Sprint Commc'ns Co. v. Mediacom Commc'ns Corp.*, No. 17-1736-RGA, 2021 U.S. Dist. LEXIS 50824, at *6-8 (D.

14

Del. Mar. 16, 2021) (finding claims directed to techniques for operating a packet communication system not patent-ineligible); *RICPI Commc'ns LLC v. JPS Interoperability Sols., Inc.*, No. 18-1507-RGA, 2019 WL 1244077, at \*4 (D. Del. Mar. 18, 2019) (two-way radio communications, using the internet or a computer network instead of prior art telephone lines, was not abstract); *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, No. 13-1632-LPS, 2017 WL 3706495, at \*8 (D. Del. Aug. 23, 2017) (finding claim patent-eligible where, "[i]nstead of simply reciting a mathematical relationship, [the patent] employs that relationship to aid in the high-speed transmission of data without compromising bandwidth efficiency").

Of these, *Sprint* is particularly instructive and illustrates the danger of ignoring the claimed technology in favor of oversimplified analogies and attorney argument. In *Sprint*, defendants argued the claimed techniques for managing data packets were akin to basic, abstract methods of transferring data based on network characteristics. *See Sprint*, 2021 U.S. Dist. LEXIS 50824, at \*7. The Court rejected that characterization, noting that the "problem to be solved" was "communication between packet-based and non-packet-based networks required the transmission of signaling information between the switches of these two disparate networks" and that the claims therefore provided an "idea." *See id.* at \*7-8. The claims at issue in *Sprint* included limitations such as "selecting a network code," "generating a control message," "generating a signaling message," and "using the network code to route

15

the user communication through the packet communication system to the network element." *Id.* at \*5-6. Although these were internal system processes that did not include physical structure, the claims were still patent-eligible. The improvements claimed in the '935 Patent are similarly not abstract. The problem facing the inventors in *Sprint* was similar to the problem presented to the inventors in this case, and like the claims in that case, claim 1 is directed to an innovative solution to a real-world problem, not merely a desired outcome.

Furthermore, claim 1 is directed to a specific technological improvement. The specification confirms this. Prior to the '935 Patent, multiplexing of data packets was "strictly priority-based," with the result that "queues containing low priority PDUs may experience starvation, being starved of opportunities to transmit their PDUs." '935 Patent at 1:31-47. The patent thus identifies a concrete problem in data multiplexing—channel starvation caused by priority-only scheduling—and claims a specific technical solution: dividing a data packet into portions and applying different multiplexing rules to those portions so that "a combination of data packets having different priorities may be transmitted." '935 Patent at 1:66-67. In this way, the '935 Patent improves the operation of the multiplexing process itself, thereby addressing the technological problem of logical channel starvation.

This is consistent with the allegations in the Complaint, which must be taken as true at this stage. Philips alleges that the '935 patent "provides various technical

16

benefits such as 'flexibility for appropriate handling of priorities, guaranteed bit-rates and starvation scenarios by dividing a data packet…into at least two portions and enabling different multiplexing rules to be used for the different portions,'" among other technical improvements. D.I. 218, ¶¶69 (citing '935 Patent at 1:60-66, 2:14-16; 2:20-22; 2:28-30). In the absence of any contradictory evidence—Eagle provides none—these facts preclude dismissal. *See Aatrix*, 882 F.3d at 1125 (vacating dismissal with prejudice where proposed amended pleading contained "factual allegations" that, when accepted as true, "establish[ed] that the claimed combination contain[ed] inventive components and improve[d] the workings of the computer"). Thus, claim 1 should be found valid under *Alice* Step One.

### c.   Eagle's Cited Cases Are Inapposite

For its part, Eagle does not identify prior cases where claims similar to those of the '935 patent have been found patent-ineligible. Instead, Eagle cites a litany of cases for general propositions under 35 U.S.C. §101, that facts of which render each case inapposite.

In particular, Eagle cites various cases that deal with software-implemented inventions claiming unpatentable human activity. These challenged claims have no bearing on the claims at issue here. *See, e.g., Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("[W]e have treated analyzing information by ***steps people go through in their minds*** . . . without more, as essentially mental

17

processes within the abstract-idea category") (emphasis added); *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2023-1778, 2025 WL 1662737, at *2 (Fed. Cir. June 12, 2025) ("We have held that claims directed to collecting information, analyzing information by '***steps people go through in their minds***, or by mathematical algorithms, without more,' and presenting the results of collecting and analyzing information fall 'within the realm of abstract ideas.'") (emphasis added); *Railware, Inc. v. Peninsula Corridor Joint Powers Bd.*, No. 25-cv-5725, 2026 WL 800129, at *9 (N.D. Cal. Mar. 23, 2026) ("The claim does not recite any technical improvement to the functioning of the networks or computing components themselves, instead teaching how to carry out a series of ***functional steps that could be carried out by humans***.") (emphasis added). As discussed above, the '935 Patent claims are directed to processes that are not, have never been, and cannot be performed by humans. *See* §V.B.1.a, *supra*.

The other cases on which Eagle relies fare no better, particularly given the unconventional, rules-based nature of claim 1. For example, in *Mobile Acuity*, the court affirmed a finding of patent-ineligibility largely because the claims "omit[ted] any specific requirements as to how these steps of information manipulation are performed." 110 F.4th at 1292-93. Similarly, in *Ultramercial, Inc. v. Hulu, LLC*, the court found the claims patent-ineligible because they were "devoid of a concrete or tangible application." 772 F.3d 709, 715 (Fed. Cir. 2014). The same is not true of

18

claim 1 of the '935 Patent, which includes detailed claim elements describing how the steps are performed and tangibly applied. *See* '935 Patent at Claim 1; D.I. 218 at ¶70. *Mobile Acuity* and *Ultramercial* are inapplicable.

Likewise, the broad claims in *Blackbird Tech LLC v. Advanced Discovery Inc.*, were markedly different from claim 1 at least because they covered the simple concept of using search terms to perform a query and sorting the results based on how closely they match the underlying concept of the search. No. 16-cv-413, 2017 WL 2734725, at *4 (D. Del. June 26, 2017). Conversely, claim 1 describes a specific, concrete way to multiplex data packets of different priority levels—directly in response to complex technological problems (e.g. starvation of lower-priority data packets) associated with pre-existing systems.

The '935 Patent claims are far from the run-of-the-mill search queries or other abstract ideas addressed in the cases cited by Eagle.

### 2.    *Alice* Step Two: Claim 1 Includes an Inventive Concept

Because claim 1 survives *Alice* Step One, there is no need to address Step Two. *McRO*, 837 F.3d at 1312. However, should the Court consider Step Two, the record demonstrates that claim 1 is further directed to an inventive concept.

Under *Alice* Step Two, a claim is not patent-ineligible "when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix*, 882 F.3d at 1128

19

(quotation omitted). The claims of the '935 Patent describe a technological improvement to systems for multiplexing data packets of different priority levels in packet-based communications networks. *See* §V.B.1, *supra*. As the Complaint explains, the use of unique queues (or queue stores) for each different priority level and applying rules to them such that at least two different groups of data packets end up multiplexed was not routine or conventional at the time of the invention—instead, simply multiplexing data packets while giving priority to higher-priority data packets was the norm. *See* D.I. 218 at ¶¶67-69; §III, *supra*. Again, these factual allegations must be accepted as true at this stage, and in the absence of any contradictory evidence, they preclude dismissal. *See Eos Positioning Sys., Inc. v. ProStar Geocorp, Inc.*, No. CV 22-201, 2023 WL 2709037, at *6-7 (D. Del. Mar. 30, 2023) (citing *Berkheimer*, 881 F.3d at 1368; *Aatrix*, 882 F.3d at 1127-28).

While Eagle asserts that claim 1's elements "considered individually and as an ordered combination, contain no inventive concept" (D.I. 246 at 14), it cites no evidence for that proposition. Nor could it. In reality, the processes claimed in the '935 patent, when considered as an ordered combination of elements contains an inventive concept, as discussed herein and in the operative complaint. *See* D.I. 216 at ¶69. The claimed processes were also not well understood, routine or conventional, including because using queues (or queue stores) in the manner claimed—rather than multiplexing by priority—in the context of multiplexing data

20

packets of different priority levels in a packet-based communication network transformed whatever might conceivably be deemed abstract into a patent-eligible application. *See id.* at ¶70. Again, the invention represented a change to **how** multiplexing is carried out – this is certainly inventive and is patent eligible. At minimum, Eagle's allegations are contrary to the factual assertions in the complaint. *Id.* at ¶¶69-73.

Also, there are no preemption issues (*see, e.g.*, D.I. 216 at ¶71), which Eagle appears to recognize given its failure to argue the point (*see generally* D.I. 246). A claim is less likely to be patent-ineligible if it "do[es] not preempt the use of the abstract idea." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016).

Alternatively, Eagle's motion should at least be denied because there are factual issues. Apart from the '935 Patent itself, the record for purposes of this Motion to Dismiss is devoid of facts, like expert and inventor testimony, that would bear on what was or was not conventional in the field at the time of invention and how the claims contain transformative inventive concepts. *See Berkheimer*, 881 F.3d at 1369 ("Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination."). To the extent the parties disagree on the unconventionality of the invention of claim 1 or any other claims, this is a factual dispute that precludes dismissal.

21

## VI.   CONCLUSION

Philips respectfully requests that the Court deny Eagle's Motion.

Of Counsel:

Eley O. Thompson (pro hac vice)
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (pro hac vice)
Lucas I. Silva (pro hac vice)
Foley & Lardner LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com

Alexis K. Juergens (pro hac vice)
Adam R. Aquino (pro hac vice)
Foley & Lardner LLP
95 S State Street, Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com
aaquino@foley.com

Sarah E. Rieger (pro hac vice)
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-2400
srieger@foley.com

*Attorneys for Plaintiff*
*Koninklijke Philips N.V*

Dated: May 1, 2026

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ *Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

23

## WORD COUNT CERTIFICATION

Pursuant to the Court's Standing Order Regarding Briefing in All Cases (Nov. 10, 2022) and Local Rule 7.1.3(a)(4), the undersigned counsel hereby certifies that the foregoing document contains 4,923 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2026, I caused the foregoing document to be

served via electronic mail upon the following counsel:

Warren K. Mabey, Jr.
Martina Tyreus Hufnal
FISH & RICHARDSON PC
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
reger@fr.com

Elizabeth G.H. Ranks
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
ranks@fr.com

Lawrence R. Jarvis
Katherine Reardon
Peter Hong
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st floor
Atlanta, GA 30309
jarvis@fr.com
reardon@fr.com
hong@fr.com

Mohammad Reza Kameli
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor

Cortlan S. Hitch
Kenneth L. Dorsney
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
chitch@morrisjames.com
kdorsney@morrisjames.com

Kirk T. Bradley
Lauren N. Griffin
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
lauren.griffin@alston.com
kirk.bradley@alston.com

John C. Phillips, Jr.
Megan C. Haney
David A. Bilson
PHILLIPS, MCLAUGHLIN
& HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
jcp@pmhdelaw.com
mch@pmhdelaw.com
dab@pmhdelaw.com

J. Aron Carnahan
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
aron.carnahan@huschblackwell.com

New York, NY 10036
kameli@fr.com

Chad S.C. Stover
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
chad.stover@btlaw.com

Eric J. Beste
655 W. Broadway, Suite 1300
San Diego, CA 92101
eric.beste@btlaw.com

Craig D. Leavell
One N. Wacker Drive, Suite 4400
Chicago, IL 60606
craig.leavell@btlaw.com

Glennon P. Fogarty
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
glennon.fogarty@huschblackwell.com

Karen E. Keller
Virginia K. Lynch
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
kkeller@shawkeller.com
glynch@shawkeller.com

YOUNG CONAWAY STARGATT
    & TAYLOR, LLP

/s/ Adam W. Poff
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff*

2