**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED**<br><br>**REDACTED - PUBLIC VERSION**<br>(Filed July 22, 2026) |

**JOINT [PROPOSED] FINAL PRETRIAL ORDER**

Dated: July 15, 2026

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Of Counsel:*

Eley O. Thompson
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313

FISH & RICHARDSON P.C.
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II *(pro hac vice)*
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

(312) 832-4359
ethompson@foley.com

Kevin M. Littman
Lucas I. Silva
Kevin Littman
Tom Relyea
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Alexis K. Juergens
FOLEY & LARDNER LLP
95 South State Street
Suite 2500
Salt Lake City, UT 84093
(801)-401-8900
ajuergens@foley.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

Lawrence R. Jarvis *(pro hac vice)*
Katherine Reardon *(pro hac vice)*
Peter "Tae" Hong (*pro hac vice*)
FISH & RICHARDSON P.C.
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005

Elizabeth G.H. Ranks *(pro hac vice)*
FISH & RICHARDSON P.C.
One Marina Park Drive
Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon *(pro hac vice)*
FISH & RICHARDSON P.C.
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli *(pro hac vice)*
FISH & RICHARDSON P.C.
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

## TABLE OF CONTENTS

I. NATURE OF THE ACTION AND PLEADINGS ....... 1
A. The Parties ....... 1
B. Nature of the Action ....... 2
C. Pending Motions ....... 6
II. JURISDICTION ....... 10
III. FACTS ....... 10
A. Uncontested Facts ....... 10
B. Statement of Issues of Fact to Be Litigated at Trial ....... 11
IV. ISSUES OF LAW ....... 11
V. EXHIBITS ....... 12
A. Demonstrative Exhibits ....... 15
VI. WITNESSES ....... 16
A. Witness Lists ....... 16
B. Testimony by Deposition ....... 18
VII. BRIEF STATEMENT OF INTENDED PROOFS ....... 23
VIII. TRIAL DISCLOSURE SCHEDULE ....... 23
A. Witness, Testimony by Deposition, and Exhibits ....... 23
B. Trial Exhibits and Demonstratives for Opening Statements ....... 26
IX. AMENDMENT OF THE PLEADINGS ....... 26
X. DISCOVERY ....... 27
XI. MOTIONS *IN LIMINE* ....... 28
XII. LENGTH OF TRIAL AND ORDER OF PRESENTATION ....... 33
XIII. SETTLEMENT ....... 38
XIV. ORDER TO CONTROL COURSE OF ACTION ....... 38

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| 1. | Joint Statement of Admitted Facts |
| 2. | Philips' Statement of Issues of Fact to be Litigated at Trial |
| 3. | Quectel's Statement of Issues of Fact to be Litigated at Trial |
| 4. | Philips' Brief Statement of Contested Issues of Law |
| 5. | Quectel's Statement of Issues of Law to be Litigated at Trial |
| 6. | Philips' Trial Exhibit List |
| 7. | Quectel's Trial Exhibit List |
| 8. | Joint Trial Exhibit List |
| 9. | Philips' Witness List |
| 10. | Quectel's Witness List |
| 11. | Philips' Deposition Designations |
| 12. | Quectel's Deposition Designations |
| 13. | Philips' Brief Statement of Intended Proofs |
| 14. | Quectel's Brief Statement of Intended Proofs |
| 15. | Philips' Motion *In Limine* No. 1 |
| 16. | Philips' Motion *In Limine* No. 2 |
| 17. | Philips' Motion *In Limine* No. 3 |
| 18. | Quectel's Motion *In Limine* No. 1 to Preclude Evidence, Testimony, or Argument Referencing the Chinese Government or Military |
| 19. | Quectel's Motion *In Limine* No. 2 to Preclude Evidence, Testimony, or Argument Regarding Quectel's Internal Communications About Its Negotiation Strategy or State of Mind |
| 20. | Quectel's Motion *In Limine* No. 3 to Preclude Evidence, Testimony, or Argument Regarding Quectel's Alleged Use of Philips's Patent Portfolio |

On Wednesday, August 5, 2026, counsel for Plaintiff Koninklijke Philips N.V. ("Philips") and counsel for Defendant Quectel Wireless Solutions Co. Ltd ("Quectel") will participate in a Pretrial Conference before this Court pursuant to Rule 16 of the Federal Rules of Civil Procedure, D. Del. L.R. 16.3, and the Court's Scheduling Order issued on March 9, 2026 (D.I. 222). Pursuant to D. Del. L.R. 16.3(c), the parties hereby submit for the Court's approval this Joint Final Pretrial Order ("Pretrial Order") governing trial of the action, which is currently scheduled to commence on Monday, August 24, 2026.

# I. NATURE OF THE ACTION AND PLEADINGS

## A. The Parties

1. Plaintiff Philips is a public limited company established under the laws of the Netherlands, having its registered office at High Tech Camps 52, 5656 AG Eindhoven, The Netherlands.

2. Defendant Quectel is a public company organized and existing at Building 5, Shanghai Business Park Phase III (Area B), No. 1016 Tianlin Road, Mihang District, Shanghai 200233, China.

3. The other named Defendants include Calamp Corp., Xirgo Technologies, LLC, Laird Connectivity, Inc., and Eagle Electronics, Inc. Calamp, Xirgo, and Laird are referred to as the "Customer Defendants." The Customer

Defendants and Eagle are accused of infringement, but they will not be participating in this trial. D.I. 274.

**B. Nature of the Action**

4. On December 17, 2020 Philips filed its initial complaint in Civil Action No. 1:20-cv-1710-CFC ("the 1710 Action"), alleging infringement of four patents. D.I. 1. The case was stayed pending the outcome of the parallel ITC Action 337-TA-1240 ("the ITC Action"). On August 20, 2025, this case was unstayed.

5. On October 3, 2025, Philips amended its complaint to drop FRAND-related Claims V-VIII from this case and move them to the co-pending Civil Action No. 1:20-cv-1707-CFC ("the 1707 Action"). On March 6, 2026, Philips filed its Third Amended Complaint (D.I. 218), and thus that is the operative Complaint in this case.

6. Philips currently alleges that Quectel infringes, both directly and indirectly, claims 1-3, 9-11, and 17 of U.S. Patent No. 7,944,935 ("the '935 Patent") (Count I), and claims 1-8 of U.S. Patent No. 7,831,271 ("the '271 Patent") (Count II). The patents and asserted claims are referenced collectively as the "Asserted Patents" and the "Asserted Claims." Quectel denies that it directly or indirectly infringes the Asserted Patents. Quectel alleges that the Asserted Claims of the Asserted Patents are invalid.

7. Philips currently alleges that the following Quectel products infringe the Asserted Patents (collectively, "Accused Products"):

| Accused Products |
| --- |
| 5G RedCap RG255C |
| 5G RedCap RG255C-GL |
| 5G RedCap RM255C-GL |
| 5G RG255AA |
| 5G RG500U |
| 5G RG520F |
| 5G RG520N |
| 5G RG525F-NA |
| 5G RG530F |
| 5G RG650E |
| 5G RG650V |
| 5G RG651E-NA |
| 5G RM500U |
| 5G RM520N |
| 5G RM530N-GL |
| AG15 |
| AG35 |
| AG520R |
| AG550Q |
| BC65 |
| BC66 |
| BC66-NA |
| BC68 |
| BC92 |
| BC95-G |
| BG600L-M3 |
| BG77 |
| BG95 |
| BG95-M1 |
| BG96 |
| BG96-MA |
| BG96-MC |
| EC20 |
| EC200A |
| EC200U |
| EC21 |
| EC21-G |
| EC25 |
| EG06 |

| Accused Products |
|---|
| EG060K |
| EG060W-EA |
| EG065K |
| EG12 |
| EG120K |
| EG18 |
| EG21-GL |
| EG25-G |
| EG25-GL |
| EG512R-EA |
| EG800K |
| EG800Q |
| EG810M |
| EG91 (and all variants thereof including EG91-NA) |
| EG912N |
| EG912U |
| EG915K-EU |
| EG915N |
| EG915Q (and variants) |
| EG915U |
| EG916Q-GL (and variants) |
| EG95 |
| EG950A |
| EM05 |
| EM06 |
| EM060K |
| EM061k-GL |
| EM12 |
| EM120K-GL |
| EM120R-GL |
| EM121R-GL |
| EM12-G |
| EM160R-GL |
| EP06 |
| RG500Q |
| RM500Q-GL |
| SC20 and all its variants |

| Accused Products |
|---|
| SC200R |
| SC600T |
| SC600Y |
| SC66 |

8. On March 27, 2026 Quectel filed its answer and counterclaims to the Third Amended Complaint, including First Counterclaim (Breach of FRAND Contract), Second Counterclaim (Breach of Obligation to Negotiate in Good Faith), Third Counterclaim (Declaration of Non-Infringement of U.S. Patent No. 7,944,935), Fourth Counterclaim (Declaration of Invalidity of U.S. Patent No. 7,944,935), Fifth Counterclaim (Declaration of Non-Infringement of U.S. Patent No. 7,831,271) and Sixth Counterclaim (Declaration of Invalidity of U.S. Patent No. 7,831,271). D.I. 233.

9. The trial will address Philips Counts I and II and Quectel's defenses thereto (which include non-equitable and equitable defenses), and Quectel's First, Second, Third, Fourth, Fifth, and Sixth Counterclaims and Philips's defenses thereto.

10. Quectel's equitable defenses will be decided (if necessary) at some point after this 1710 jury trial, see Section XII.

**C. Pending Motions**

11. On April 27, 2026, Philips filed a Motion to Dismiss Quectel's First and Second Counterclaims, which remains to be decided by the Court. *See* D.I.

256. If this motion is granted, all the breach counterclaims may be addressed in the second December trial involving FRAND, breach, and other factually related claims and counterclaims between the parties, *i.e.*, 20-cv-1707.

12. On May 29, 2026, the parties filed the following Motions for Summary Judgment, which remain to be decided by the Court:

a. Philips's Motion for Summary Judgment of No Implied Waiver and No Equitable Estoppel (Motion for Summary Judgment #1). *See* D.I. 308. If this motion is granted, then equitable affirmative defenses to patent infringement will be removed from the trial and the Court need not address equitable issues separate from the jury;

b. Philips's Motion for Summary Judgment to dismiss Quectel's First and Second Counterclaims (Motion for Summary Judgment #2). *See* D.I. 317. If this motion is granted, then the breach counterclaims will not be presented to the jury, reducing complexity;

c. Quectel's Motion for Summary Judgment of Patent Ineligibility Under 35 U.S.C. § 101 of the '935 Patent (Motion for Summary Judgment #1). D.I. 299. If this motion is granted, Philips will be limited to asserting one

patent, the ’271 patent, at this trial with all remaining asserted patents being tried in the December trial.

d. Quectel’s Motion for Summary Judgment of Noninfringement of the ’935 Patent (Motion for Summary Judgment #2). D.I. 298. If this motion is granted, Philips will be limited to alleging infringement of one patent, the ’271 patent, at this trial with all remaining asserted patents being tried in the December trial.

13. On May 29, 2026, the parties filed the following *Daubert* motions, which remain to be decided by the Court:

a. Philips’s *Daubert* to Exclude Portions of Carrie Distler’s Expert Opinion and Testimony (*Daubert* Motion #1). D.I. 310.

b. Philips’s *Daubert* to Exclude Portions of Friedhelm Rodermund’s Expert Opinion and Testimony (*Daubert* Motion #2). D.I. 311.

c. Quectel's *Daubert* to Exclude Eric Stasik's Opening Report (*Daubert* Motion #1). D.I. 289.[1]

d. Quectel's *Daubert* to Exclude Eric Stasik's Rebuttal Report (*Daubert* Motion #2). D.I. 290.

e. Quectel's *Daubert* to Exclude Dr. Teece's Portfolio-Wide Damages Number (*Daubert* Motion #3). D.I. 291.

f. Quectel's *Daubert* to Exclude Prof. Borghetti's Opinions Related to ETSI (*Daubert* Motion #4). D.I. 292.

g. Quectel's *Daubert* to Exclude Dr. Teece's Opinions Derived from Handset Licenses (*Daubert* Motion #5). D.I. 293.

h. Quectel's *Daubert* to Exclude Opinions of Philips's Experts Applying French Law (*Daubert* Motion #6). D.I. 294.

i. Quectel's *Daubert* to Exclude Dr. Teece's Per-Patent Apportionment (*Daubert* Motion #7). D.I. 295.

14. With this Proposed Pretrial Order, the Parties file the now pending Motions *in Limine* described in Section XI.

---

[1] The Memorandum in Support of Quectel's *Daubert* Motions is provided in D.I. 296 and D.I. 380 (Reply).

## II. JURISDICTION

15. Philips brings its patent infringement claims under the patent laws of the United States, 35 U.S.C. §§1, et seq.

16. This Court has subject matter jurisdiction over the claims for patent infringement pursuant to 28 U.S.C. §§ 1331.

17. Quectel brings its Counterclaims under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the patent laws of the United States, 35 U.S.C. § 1 et seq.

18. This Court has subject matter jurisdiction over Quectel's Counterclaims under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

19. No party contests that this Court has personal jurisdiction over Philips and Quectel for purposes of this action.

20. No party contests that venue for this action is proper in this District under 28 U.S.C. § 1400(b).

## III. FACTS

### A. Uncontested Facts

21. The parties' joint statement of admitted facts requiring no proof is set forth in **Exhibit 1**. The facts in Exhibit 1 are not disputed or have been agreed to or stipulated by the parties. As such, these facts should become part of the evidentiary record in this case. Any party, without prior notice to all other parties, may read any or all of the uncontested facts to the Court or jury.

### B. Statement of Issues of Fact to Be Litigated at Trial

22. Philips's statement of issues to be litigated at trial is set forth in **Exhibit 2.**

23. Quectel's statement of issues of fact to be litigated at trial is set forth in **Exhibit 3.**

24. If this Court determines that any issue identified in either statement of issues of fact is more properly considered as an issue of law, it should be so considered.

25. The parties reserve the right to modify or supplement their statement of issues of fact to be litigated at trial to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties. The parties also reserve the right to move items from their respective lists of contested facts to the joint statement of uncontested facts in the event the parties come to the agreement that any issue is no longer contested.

## IV. ISSUES OF LAW

26. Philips's statement of issues of law to be litigated at trial is set forth in **Exhibit 4.**

27. Quectel's statement of issues of law to be litigated at trial is set forth in **Exhibit 5.**

28. If this Court determines that any issue identified in either statement of issues of law is more properly considered as an issue of fact, it should be so considered.

29. The parties reserve the right to modify or supplement their statements of issues of law to be litigated at trial to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties.

## V. EXHIBITS

30. Philips's list of exhibits that it may offer at trial, except demonstratives and exhibits to be used solely for impeachment, and Quectel's objections to Philips' exhibits, are attached as **Exhibit 6**. Philips's trial exhibits will be identified with the PTX- prefix, starting with PTX-1.

31. Quectel's list of exhibits that it may offer at trial, except demonstratives and exhibits to be used solely for impeachment, and Philips's objections to Quectel's exhibits, are attached as **Exhibit 7**. Quectel's trial exhibits will be identified with the DTX- prefix, starting with DTX-1.

32. A key to the objection codes is appended at the end of each exhibit list.

33. A joint trial exhibit list is attached as **Exhibit 8**. Joint trial exhibits will be identified with the JTX- prefix, starting with JTX-1.

34. Demonstratives are subject to the parties' agreement in Section VIII below.

35. This pretrial order contains the parties' good-faith efforts to identify the entire universe of exhibits to be used at trial, except exhibits to be used solely for impeachment, as well as all objections to the admission of such exhibits. Nothing herein (including the exhibits hereto) shall be construed as a stipulation or admission that a document listed on a party's exhibit list is entitled to any weight in deciding the merits of this case. The parties agree that any description of a document on an exhibit list, including the date listed for documents, is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document. Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted, may be used equally by each party, subject to any limitations as to its admission. The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side for the purpose that the opposing side wishes to admit the document. Each party has made a good faith effort to list objections to deposition designations or exhibits offered by the other party as not relevant (FRE 402), unduly prejudicial (FRE 403), or for lack of foundation (FRE 602). However, each party reserves the

right to object to the admission of deposition testimony or exhibits on any of these three grounds at the time such evidence is offered, in view of the specific context in which such evidence is offered. Each party reserves the right to withdraw objections at any time. Each party reserves the right under Fed. R. Evid. 105 to assert limited admissibility and to request that the Court restrict the evidence to its proper scope and instruct the jury accordingly.

36. Legible copies of United States patents and patent applications may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

37. A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial.

38. The parties shall make available for inspection physical exhibits to be used at trial at the office of Delaware counsel no later than 11:00 a.m. EDT on August 21, 2026.

39. For irregularly sized physical exhibits, the party seeking to use the physical exhibit will provide a color representation of the exhibit in PDF form and make the physical exhibit available for inspection

40. The parties agree that for exhibits that bear a deposition exhibit sticker, a party may elect to use an identical version of the document without a deposition sticker to improve legibility and/or reduce juror confusion. A party

choosing to do so must give the other party notice and represent that the exhibit is otherwise identical.

**A. Demonstrative Exhibits**

41. Philips's demonstratives will be identified with PDX numbers, starting with PDX-1. Quectel's demonstratives will be identified with DDX numbers, starting with DDX-1.

42. The parties agree that the demonstrative exhibits that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Final Pretrial Order.

43. For demonstratives subject to advance disclosure under Section VIII below, the party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. However, for video or animations, the party seeking to use the demonstrative will provide a native version. For irregularly sized demonstrative exhibits, the party seeking to use the demonstrative will provide a color representation of the demonstrative in PDF form and make the demonstrative available for inspection. Demonstratives to be used for cross-examination or previously used at trial in this Action are not subject to the disclosure provisions in Section VIII below.

44. Each demonstrative exhibit shall clearly indicate all information sources (including, if available, all trial exhibit numbers) that form the basis of the demonstrative exhibit.

45. Highlighted or enlarged exhibits, exhibit pages or portions of pages, or excerpts of trial or admitted deposition testimony are demonstratives that do not need to be provided to the other side in advance of their use unless a party intends to use them in opening statements, in which case they must be exchanged in advance as set forth in Section VIII. Demonstratives disclosed by one party may not be used by the opposing party prior to being used by the disclosing party. However, once the demonstrative is used by the disclosing party, the opposing party may also use the demonstrative.

46. Demonstratives shall not be admitted into evidence, unless, pursuant to FRE 107, all parties consent or the Court, for good cause, orders otherwise. Demonstratives used at trial as illustrative aids must be entered into the record.

## VI. WITNESSES

### A. Witness Lists

47. The list of witnesses that Philips will call or may call to testify in person or by designation is attached as **Exhibit 9.**

48. The list of witnesses that Quectel will call or may call to testify in person or by designation is attached **Exhibit 10.**

49. To the extent that a witness's circumstances change, or a witness otherwise becomes unavailable for trial, each party reserves the right to call that witness by deposition to the extent permitted by the Federal Rules of Civil Procedure, as set forth below in this pretrial order. The party calling such a witness by deposition must promptly provide an explanation of the changed circumstances and the proposed deposition designations to the other party. Such other party reserves all rights to object to the use of such deposition testimony, including on the grounds that the witness is not unavailable, the unavailability was foreseeable, or because untimely deposition designations will cause it unfair prejudice.

50. With respect to those witnesses whom the parties have identified in Exhibits 9 and 10 who will be called to testify live at trial, no deposition designations or counter-designations are required. Should the party that intends to call a fact witness identified in Exhibits 9 and 10 as testifying live at trial demonstrate that the fact witness has become unavailable, as that term is defined in the Federal Rules of Civil Procedure and Federal Rules of Evidence, the parties may designate specific pages and lines of deposition transcript that they intend to read or play in lieu of the witness's appearance. A party shall immediately notify the other party in the event it decides not to call a witness live at trial or otherwise learns that a witness has become unavailable and allow the other party sufficient

time to prepare objections and any counter-designations to such deposition testimony.

51. Any witness not listed in the parties' witness lists will be precluded from testifying absent a showing of good cause including, for example, one or more of the following reasons: (1) one or more additional witnesses whose testimony is necessary to establish authenticity or admissibility of any trial exhibit, if that evidentiary status of the exhibit is challenged by an opposing party; (2) additional witnesses to respond to any issues raised by the Court's pretrial or trial rulings; (3) any witness solely for impeachment purposes to the extent permitted by applicable rules; (4) any witness who appears on the other party's witness list; and (5) additional rebuttal witnesses that could not have been anticipated.

**B. Testimony by Deposition**

52. The parties may offer some or all of the deposition testimony set forth in the attached exhibits at trial, subject to objections. A party's decision not to introduce some or all of the testimony of a witness designated herein shall not be commented upon at trial.

53. The deposition testimony that the parties may offer into evidence is identified in **Exhibit 11** and **Exhibit 12**. Prior to trial, the parties will continue to work together to resolve outstanding objections to deposition testimony before seeking resolution from the Court.

54. Any party seeking to play any deposition testimony shall provide the opposing party with a list of the designations it seeks to play, including any exhibits, by 5 p.m. EDT three days prior. The opposing party shall provide its counter-designations, including any exhibits, and objections by 12 p.m. EDT the next day (two days prior). The party seeking to play the designations shall provide any counter-counters and objections by 7 p.m. EDT that day (two days prior). The parties shall meet and confer by 9 p.m. EDT that day (two days prior) in an attempt to narrow or resolve any objections. Any remaining objections shall be submitted to the Court in writing by 8 a.m. EDT the next day (one day prior). All objections shall be resolved by the Court prior to any deposition testimony being played.

55. Any party may use testimony that is designated by another party, to the same effect as if it had designated the testimony for fairness or completeness reasons and regardless of whether the testimony was included in the party's own designations, subject to all objections. For convenience and sake of brevity, the parties have listed counter-designations in response to specific affirmative designations by the opposing party, as well as counter-counter designations. To the extent an opposing party withdraws any affirmatively designated testimony, a party may present its counter-designation testimony in response to other affirmative testimony by the opposing party, subject to any objections by the affirmatively designating party that those counter-designations are not proper counters to the

remaining affirmative testimony. With respect to those witnesses who are expected to testify by deposition rather than in person, each party has designated the specific pages and lines of deposition testimony of the fact witnesses that it may read or play during trial pursuant to Rule 32 of the Federal Rules of Civil Procedures (e.g., testimony of a party's officer or Rule 30(b)(6) designees, testimony of unavailable witnesses, etc.), other than for impeachment or cross-examination of a live witness.

56. The party offering deposition testimony is responsible for preparing video deposition clips of all designated testimony for that witness, including counter-designations. A copy of the video deposition clips, including any counter designations, shall be provided to the opposing party no later than 9:00 p.m. EDT the day before the deposition testimony is expected to be read or played. The opposing party shall promptly review the video deposition clips upon receipt, and the parties agree to meet and confer in good faith at the earliest possible time to resolve any objections from the opposing party.

57. Whether or not a witness is designated as will call, either party may use for any purpose the deposition of a witness who, when deposed, was the other party's officer, director, managing agent, or designee under Rule 30(b)(6). A party's employees who are not on the "will call" list and who are beyond the Court's subpoena power are presumptively "unavailable" to the other party for purposes of Rule 32(a)(4) of the Federal Rules of Civil Procedures. If a "may call"

witness will be made available to testify live at trial, the other party must be informed by August 14, 2026, absent good cause. If a “will call” witness will not be made available to testify live at trial, the other party must be informed by August 14, 2026, absent good cause.

58. Regardless of whether deposition testimony is read or played by video, the time available for each party’s trial presentation shall be reduced by the length of its designations, including any counter-counter-designations and additions to address any incompleteness objections. The time to play counter-designations counts against the time of the counter-designating party.

59. If an exhibit is referenced in a deposition designation played at trial, the designating party may seek to admit the exhibit into evidence if it is included on a party’s trial exhibit list and disclosed with the party’s designations, subject to the other party’s objections. If an exhibit is referenced in a deposition designation played at trial and the Court has not sustained an objection to the exhibit’s admission into evidence, the designating or counter-designating party may display the exhibit to the jury alongside the video and highlight or enlarge portions of the exhibit on the screen that were discussed or referenced in the designation or counter-designation, respectively, as if the exhibit was being shown to a live testifying witness.

60. By objecting to a designation on a given ground, a party asserts that at least one question or answer in the designation is subject to such objection.

61. Each party reserves the right to object to a given designation as improper under Rule 32, including because the witness is not unavailable and the testimony falls outside the scope of the topic for which the witness was designated under Rule 30(b)(6), in view of the specific context in which such testimony is offered. Such objections will be made pursuant to Section VI above or Section VIII below.

62. A party's designations, counter-designations, or counter-counter designations shall not operate as a waiver of any of that party's objections to the other party's designations and may be offered in the alternative.

63. The parties reserve the right to play any completeness designations as counter-counter-designations should the Court rule that they are required to make the designation complete.

64. All irrelevant and redundant material such as objections and colloquy between counsel or translators (except insofar as the parties agree that the colloquy clarifies a deposition question or answer, and to the extent the parties dispute whether the colloquy clarifies a deposition question or answer, the party seeking to include the colloquy will raise that issue with the Court pursuant to Section VI above) will be eliminated when the deposition is read or viewed at trial. When a

witness testifies in a foreign language, the witness's foreign language answer, along with the translation of that answer, must be included in the deposition video played for the jury.

65. Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

66. When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations, counter-designations, and counter-counter designations that will be read or played.

## VII. BRIEF STATEMENT OF INTENDED PROOFS

67. Philips's brief statement of intended proofs is attached as **Exhibit 13.**

68. Quectel's brief statement of intended proof is attached as **Exhibit 14.**

69. The parties reserve the right to modify or supplement their statements of intended proofs to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties.

## VIII. TRIAL DISCLOSURE SCHEDULE

### A. Witness, Testimony by Deposition, and Exhibits

70. The following disclosure, objection and meet-and-confer timing may be altered only by mutual agreement of the parties or order of the Court.

71. The parties agree to exchange updated trial witness lists at 5 p.m. EDT August 18, 2026, making a good faith effort to identify the order in which each witness, including witnesses testifying by deposition, will be called.

72. A party shall identify the witnesses it intends to call to testify at trial by 8:00 p.m. EDT two calendar days before the trial day during which those witnesses are expected to testify (e.g., if a party intends to call a witness to testify on Wednesday, the party must identify the witness by 8:00 p.m. EDT on Monday). The parties will make a good faith effort to disclose the witnesses in the order they intend to call the witness (live or by deposition). A party shall also disclose exhibits and demonstratives to be used in connection with each direct examination (either live or by deposition) by 8:00 p.m. EDT two days before the trial day on which the witness is expected to testify. For witnesses that are intended to be called by deposition, refer to Section VI.B.

73. A party is not required to provide advance notice of exhibits to be used during a cross examination or an adverse direct examination (if the Court rules that the parties are permitted to call witnesses for adverse direct examination).

74. Pursuant to Fed. R. Evid. 611(b), cross examination shall not go beyond the scope of the direct examination, absent party agreement.

75. The receiving party shall notify the identifying party of any objection to the disclosed witnesses or deposition testimony, or exhibits to be used on direct examination, by 7:00 p.m. EDT one day after the disclosures (i.e., one calendar day before the trial day on which the witness is expected to testify).

76. The parties shall meet and confer on all objections to the disclosed witnesses, exhibits, and demonstratives by 9:00 p.m. EDT the day after disclosures (i.e., one calendar day before the trial day on which the witness is expected to testify and the exhibits or demonstratives are to be introduced) in good faith before the objections are raised to the Court.

77. If good faith efforts to resolve the objections fail, the party objecting shall raise its objections with the Court in writing by 8 a.m. EDT the day of the testimony.

78. In the event that a party intends to call an unforeseen rebuttal witness, it will inform the other party promptly and no later than 6:00 p.m. EDT the night before the trial day when the rebuttal witness is expected to testify unless the circumstances requiring that the unforeseen witness be called occur on the final day of testimony.

79. A party shall confirm the order in which it intends to call its witnesses by 8:00 p.m. EDT the day before the trial day during which those witnesses are expected to testify.

### B. Trial Exhibits and Demonstratives for Opening Statements

80. The parties will identify and provide trial exhibits and demonstrative exhibits to be used in connection with opening statements at 2:00 p.m. EDT the day before their intended use (e.g., exhibits for an opening statement on Monday must be disclosed by 2:00 p.m. EDT on Sunday). The receiving party will provide its objections by 5:00 p.m. EDT the same night. The parties shall meet and confer at 7:00 pm EDT the night before the use of any exhibits in order to resolve any objections. If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall raise its objections with the Court in writing no later than 8:00 a.m. EDT the morning of the first day of trial.

81. The parties agree that slides and other demonstratives for closing arguments need not be exchanged.

## IX. AMENDMENT OF THE PLEADINGS

82. The parties are not seeking to amend the pleadings at this time.

## X. DISCOVERY

83. Fact discovery in this 1710 case is complete.[2] Expert depositions are not yet completed, although the parties have an agreement that expert depositions will be completed prior to trial.[3]

---

[2] Philips's Position: Philips is currently seeking the deposition of Mr. Norbert Muhrer, a former director of Quectel and currently a director of Eagle. Philips intends to designate portions of Mr. Muhrer's testimony and to seek permission to call Mr. Muhrer at the upcoming trial by deposition designations.

Quectel's Position: Philips claims it will be taking Mr. Muhrer's deposition in the Eagle case at some future date. However, fact discovery in this case is over, and has been over since March 6, 2026. Philips served a subpoena on Eagle back in December of 2025 and never moved to compel compliance. Notably, Philips's July 14, 2026 letter to the Court about alleged discovery issues with Eagle does not mention depositions. D.I. 402. Philips also only added Mr. Muhrer to its witness list on July 15, 2026, after not including him on its disclosures made on June 22, 2026. It is prejudicial to Quectel to allow Philips to supplement the record at this late stage of the case.

[3] Philips's Position: Quectel was compelled to produce its source code and Philips anticipates that it may seek leave to serve short supplemental infringement expert reports explaining why the source code that was in the possession of Quectel supports the previously offered infringement opinions of its experts.

Quectel's Position: While it is accurate that Quectel was ordered to produce its source code, it did so on April 3, 2026, providing full access to Philips's counsel and experts. Philips has never sought to amend its expert reports, and should not be allowed to do so now. It is prejudicial to Quectel to allow Philips to supplement the record at this late stage of the case.

## XI. MOTIONS *IN LIMINE*

84. During the meet and confer process for the motions *in limine*, the parties agreed on the following:[4]

a. The parties are precluded from disparaging China or Chinese people or companies, or to witnesses testifying in a different language. [Philips' position: Philips agrees in principle but wishes to clarify that this agreement does not in any way limit any party's ability to contend that the other party acted in bad faith.]

b. The parties are precluded from implying that foreign companies and/or foreign nationals do not follow U.S. law or that they commit crimes. [Philips' position: Philips agrees in principle but wishes to clarify that this agreement does not in any way limit any party's ability to

[4] Quectel's Position: Philips previously agreed to the following statements during the parties' motion *in limine* meet and confer on June 26, 2026. Quectel later summarized the meet and confer, and these explicit statements, that same day. Philips never raised any concerns with these agreements until the day before this PTO was due to be filed. The language of these motion *in limine* agreements does not require further explanation, and Philips's additional "clarifications" should not be included. Quectel explicitly disagrees with, and views waived, any "clarifications" from Philips that retreat from or alter the meaning of any of the agreed upon motions *in limine*.

contend that the other party did not follow the law or to introduce evidence or argue that the other party's actions were not consistent with United States law.]

c. The parties are precluded from referring to any other person or entity as "unethical" or similar pejorative term. The parties shall also be precluded from introducing evidence, testimony, or argument that characterizes any other person or entity's actions as "stealing," "copying," "misappropriating," "pirating," "trespassing," or any similar terms. [Philips' position: Philips agrees in principle but wishes to clarify that this agreement does not in any way limit any party's ability to contend that the other party acted in bad faith, or that Quectel misappropriated Philips's technology (using that word or similar terms) by infringing Philips's patents.]

d. The parties are precluded from regarding the presence or absence of any party's corporate representative, employee, or other witness, including any evidence, testimony, or argument suggesting that the opposing party failed to call any witness. Neither party shall "try

the empty chair." [Philips' position: Philips agrees in principle wishes to clarify that the parties are permitted to remark on the absence of <u>evidence or information</u> concerning an issue that is relevant to the claims and counter-claims in the case or another party's failure to provide evidence or witnesses concerning a relevant topic.]

e. The parties are precluded from putting forward evidence, testimony, and argument on a corporate representative's lack of knowledge outside of personal knowledge or 30(b)(6) topics.

f. The parties are precluded from referencing any discovery or other motion practice (and the Court's Orders regarding such motions), including the fact that any party has attempted to exclude evidence (such as the parties' Daubert motions and privilege disputes).

g. No expert witness may testify to expert opinions outside the established parameters of their expert report(s).

h. The parties are precluded from suggesting that any third-party devices practice the asserted patents. [Philips'

position: Philips agrees in principle that it will not argue that any specific third-party device practices the asserted patents, but it maintains that it may discuss its portfolio licenses and the value of the patents to others, including licensees of the asserted patents.]

85. Pursuant to Paragraph 23 of the Scheduling Order (D.I. 63), the parties' pending motions *in limine* are submitted with this Joint Pretrial Order as follows:

a. Philips' Motion *In Limine* No. 1 to Exclude Certain Findings from ITC Investigation No. 3347-TA-1240, the parties' briefing in support and opposition of which is attached hereto as **Exhibit 15**.

b. Philips' Motion *In Limine* No. 2 to Exclude Expert Testimony Arguing Claim Construction or Evidence Contradicting this Court's Claim Constructions, the parties' briefing in support and opposition of which is attached hereto as **Exhibit 16**.

c. Philips' Motion *In Limine* No. 3 to Exclude Opinions or Analysis Provided by Experts in Other Litigations Involving the Asserted Patents, the parties' briefing in

support and opposition of which is attached hereto as **Exhibit 17**.

d. Quectel's Motion *in Limine* No. 1 to Preclude Evidence, Testimony, or Argument Referencing the Chinese Government or Military, the parties' briefing in support and opposition of which is attached hereto as **Exhibit 18**.

e. Quectel's Motion *in Limine* No. 2 to Preclude Philips from introducing any evidence, testimony, or argument regarding Quectel's internal communications about its negotiation strategy or state of mind toward Philips, the parties' briefing in support and opposition of which is attached hereto as **Exhibit 19**.

f. Quectel's Motion *in Limine* No. 3 to Preclude Philips from suggesting that Quectel uses, practices, or otherwise benefits from patents within Philips's broader patent portfolio that are not asserted in this case, the parties' briefing in support and opposition of which is attached hereto as **Exhibit 20**.

## XII. LENGTH OF TRIAL AND ORDER OF PRESENTATION

86. Pursuant to the Court's Scheduling Order issued on September 22, 2025 (D.I. 222), this case is currently scheduled for a five-day jury trial beginning at 8:30 am on August 24, 2026.[5] As explained further below, Quectel's equitable affirmative defenses of implied waiver and estoppel will be heard during a separate bench trial.

87. The trial will be timed. Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by the other party, deposition designations as agreed-to-above, and closing argument. Any time required for objections heard during side-bar will be charged to the losing party. The Courtroom Deputy will keep a running total of time used by counsel.

88. For the jury trial, the parties propose splitting the trial time evenly for each side's case (including opening and closing statements).

89. On the first day of trial, each member of the jury shall be provided a binder containing (1) the Asserted Patents, (2) a list identifying the number of each Asserted Claim, (3) the terms/phrases of the Asserted Claims of the Asserted

[5] In view of the numerous witnesses required just to address the Quectel breach counterclaims, plus the need for a Chinese interpreter for Quectel's witness, Philips requests an additional jury trial day. Quectel maintains that five days is sufficient for this jury trial.

Patents that have been construed, any agreed constructions, and the Court's constructions, (4) a photograph of each witness expected to be called at trial (each photograph on a single page), and (5) several blank sheets for notes. Philips will provide a draft of the juror notebooks by August 14, 2026. Quectel will provide any edits by August 18, 2026. The parties will meet and confer on the juror notebooks on August 19, 2026. The parties will identify any outstanding objections to the juror notebooks to the Court by 4 p.m. EDT on August 20, 2026. The Parties agree that jurors be permitted to write notes by hand in their provided binders during the trial, and that the jurors be permitted to bring their provided binders into the deliberation room.

90. The trial will proceed in the following order: (a) Philips's opening statement; (b) Quectel's opening statement; (c) Philips's presentation of its case in-chief; (d) Quectel's rebuttal and its presentation of its case-in-chief; (e) Philips's rebuttal; (f) Philips's closing argument; and (g) Quectel's closing argument.

91. Equitable Issues:

a. The parties acknowledge there is some overlap between the evidence and witness testimony for Quectel's breach claims to the jury and for Quectel's equitable defenses of implied waiver and equitable estoppel to the Court. Thus, a full bench trial on the equitable defenses may be avoided, and instead a limited

bench trial may be possible. If there is a bench trial on the equitable defenses, the Court can hear evidence and witness testimony addressing elements unique to Quectel's equitable defenses that will not have been heard during the jury trial, including evidence and testimony of any unfair benefit to or egregious misconduct by Philips, or reliance by Quectel. For the Court to receive additional evidence and hear additional witness testimony on Quectel's affirmative equitable defenses, the parties propose the following competing positions:

b. Quectel's position: Quectel proposes trying Quectel's equitable affirmative defenses in this case concurrently with Quectel's equitable affirmative defenses in the 1707 Action in a single bench trial, to be scheduled at the Court's convenience at some point after the pretrial conference in the 1707 Action, which is presently scheduled for November 23, 2026. Consistent with the Court's guidance that "a FRAND case in the context of the 1707 case" would include "what happened with the patents in the 1710 case," findings of non-infringement, invalidity, and/or breach specific to those patents directly impact the 1707 Action's FRAND case without the need for a prior bench trial

only on equitable issues. *See* D.I. 58 at 14. Evidence and witness testimony addressing elements unique to Quectel's equitable defenses will not have been heard during the jury trial, including evidence and testimony of any unfair benefit to or egregious misconduct by Philips, or reliance by Quectel. Philips's contention that Quectel's breach counterclaims are violative of claim splitting is incorrect, as those claims are specific to the patents at issue in the respective actions and therefore should be tried separately. D.I. 270 at 8-15. Moreover, the Court already rejected Philips's invitation to resolve all FRAND issues in a first trial. D.I. 48 at ¶ 3 ("The Court rejects Philips' proposal to have the case proceed initially to a FRAND trial."). Philips also argued just recently that "[t]he 1707 Case is preferable for proceeding with [Quectel's] counterclaims." D.I. 256 at 16. For example, Philips argued that the 1707 Action is a preferred time to hear the breach counterclaims because the "counterclaims in the 1707 Case are broader" by "encompass[ing] allegations related to a license to Philips' full portfolio" rather than the two patents at issue in this case. *Id.* at 17; *see generally id.* at 17-19. Consistent with the Court's prior

guidance on the breach counterclaims, and Philips's position regarding the preferred timing of Quectel's breach counterclaims if they are addressed in a single trial, should the Court find it appropriate to hear Quectel's equitable defenses in a single bench trial, it should be after the pretrial conference in the 1707 Action.

c. Philips's position: To the extent that the Court allows for two separate trials on Quectel's breach counterclaims, one in August and one in December, which Philips suggests is violative of claim splitting (*see* D.I. 256), then in view of the overlap in the evidence with those claims and Quectel's equitable affirmative defenses, Philips does not agree with Quectel's suggestion to move the bench portion to later. Philips believes that the August jury will hear **all** of the evidence relevant to Quectel's equitable affirmative defenses, and it would be a waste of party resources to call witnesses back to provide duplicative testimony. Philips believes that the equitable affirmative defenses should be resolved in August through post jury trial argument so that duplication of witness testimony and evidence can be avoided and so that the entire

action as to the ’271 and ’935 patents is resolved before the December trial. This is consistent with the Court’s observation from the original scheduling conference that “…I don't know how we could have what amounts to a FRAND case in the context of the 1707 case without bringing up what happened with the patents in the 1710 case.” *See* Scheduling Conference Tr., D.I. 58 at 14. Philips is not aware of any evidence to be presented by Quectel for its breach claims that does not overlap with the evidence to be presented for its equitable claims.

## XIII. SETTLEMENT

92. The Parties have previously engaged in various rounds of settlement discussions. The Parties have further scheduled a time before the forthcoming Pretrial Conference to engage in an additional good faith effort to explore the resolution of the controversy by settlement.

## XIV. ORDER TO CONTROL COURSE OF ACTION

This Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Of Counsel:*

Eley O. Thompson
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman
Lucas I. Silva
Kevin Littman
Tom Relyea
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II *(pro hac vice)*
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis *(pro hac vice)*
Katherine Reardon *(pro hac vice)*
Peter "Tae" Hong (*pro hac vice*)
FISH & RICHARDSON P.C.
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005

Elizabeth G.H. Ranks *(pro hac vice)*
FISH & RICHARDSON P.C.
One Marina Park Drive
Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Alexis K. Juergens
FOLEY & LARDNER LLP
95 South State Street
Suite 2500
Salt Lake City, UT 84093
(801)-401-8900
ajuergens@foley.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

Bryan J. Cannon *(pro hac vice)*
FISH & RICHARDSON P.C.
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli *(pro hac vice)*
FISH & RICHARDSON P.C.
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

Dated: July 15, 2026

SO ORDERED this ______day of __________________, 2026

______________________________
Chief United States District Judge

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**JOINT STATEMENT OF UNCONTESTED FACTS**

The following facts are not disputed and/or have been stipulated to by the Parties, and thus require no proof at trial. Either party may read any or all of these uncontested facts into the record at trial and will be charged for the time used to do so.

## I. THE PARTIES

1. Plaintiff Koninklijke Philips N.V. ("Philips") is a public limited company established under the laws of the Netherlands, having its registered office at High Tech Campus 52, 5656 AG Eindhoven, The Netherlands.

2. Defendant Quectel Wireless Solutions Co., Ltd. ("Quectel") is a Chinese company organized and existing at Building 5, Shanghai Business Park

Phase III (Area B), No. 1016 Tianlin Road, Mihang District, Shanghai 200233, China.

## II. PHILIPS'S ASSERTED PATENTS

3. U.S. Patent No. 7,944,935 ("'935 Patent") was issued on May 17, 2011.

4. U.S. Patent No. 7,831,271 ("'271 Patent") was issued on November 9, 2010.

5. Paul Bucknell, Matthew P.J. Baker, and Timothy Moulsley are the named inventors of the '935 Patent.

6. Matthew P.J. Baker and Timothy Moulsley are the named inventors of the '271 Patent.

7. Philips owns all substantial rights, title, and interest in and to the Asserted Patents.

## III. ETSI AND IPR POLICY

8. The European Telecommunications Standardization institute ("ETSI") is a standards setting organization dealing with standards for telecommunications, broadcasting and other electronic communications. ETSI was established in 1988 by the European Conference of Postal and Telecommunications Administrations ("CEPT"). ETSI is a not-for-profit association under French law, officially recognized by the European Union as a European Standards Organization. It has

become the preeminent standards setting organization for cellular wireless telecommunications worldwide.

9. The 3rd Generation Partnership Project ("3GPP") was established in December 1998 by a group of telecommunications standards setting organizations to be a partnership project responsible for producing "Technical Specifications" ("TS") for global telecommunications standards, which would then be "transposed" by the standard setting organizations into regional standards. The standards development organizations that make up 3GPP are also called Organizational Partners ("OP"). There are seven OPs that make up 3GPP, of which ETSI is one.

10. On November 18-19, 1997, the 29th General Assembly of ETSI approved an ETSI Interim Intellectual Property Rights ("IPR") Policy to become permanent.

11. The ETSI IPR Policy is part of a larger document called the "ETSI Directives." The ETSI Directives includes the ETSI IPR Policy, the ETSI Guide on IPRs, and other documents within it.

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**KONINKLIJKE PHILIPS N.V.'S STATEMENT OF ISSUES OF FACT TO BE LITIGATED AT TRIAL**

Consistent with D. Del. LR 16.3(c)(4), Philips identifies the following issues of contested facts. This statement is based on the arguments Philips expects to make, as well as its understanding of the arguments Quectel is likely to make, at trial.

Philips reserves the right to supplement this statement, as it is based on the current status of the case and the Court's rulings to date. Philips may supplement this statement if any of these items change, including if Quectel makes new arguments or the Court enters new rulings. Philips further reserves the right to supplement or amend this statement upon receipt of Quectel' pretrial disclosures. Should the Court determine that any of the issues listed and discussed below are

issues of law, and not fact, Philips incorporates such issues by reference into its Statement of Issues of Law. To the extent Philips's Statement of Issues of Law contains issues that the Court deems are issues of fact, those issues are incorporated herein by reference.

The following statements are not exhaustive. Philips reserves the right to prove any matters identified in its pleadings, interrogatory responses, and/or expert reports Philips further intends to offer evidence to rebut evidence offered by Quectel, in response to rulings by the Court, or for other good cause. By including a fact herein, Philips does not assume the burden of proof or production with regard to that fact.

**A. INFRINGEMENT OF THE ASSERTED PATENTS**

1. Whether Philips has proven by a preponderance of the evidence that Quectel has infringed, is infringing, or is likely in the future to infringe, directly or indirectly, claims 1-3, 9-11, and 17 of the '935 Patent, including without limitation whether Quectel directly infringed or induced its customers' or Eagle's direct infringement of those claims. (Unless otherwise specified, all references to Quectel's infringement of the '935 Patent include both direct and indirect infringement.)

2. Whether Philips has proven by a preponderance of the evidence that Quectel has infringed, is infringing, or is likely in the future to infringe, directly or

indirectly, claims 1-8 of the ’271 Patent, including without limitation whether Quectel directly infringed or induced its customers’ or Eagle’s direct infringement of those claims. (Unless otherwise specified, all references to Quectel’s infringement of the ’271 Patent include both direct and indirect infringement.)

3. Whether Philips proved by a preponderance of the evidence that Quectel directly infringed one or more Asserted Claims of the ’935 or ’271 Patents by inducing infringement.

4. Whether Philips proved by a preponderance of the evidence that Quectel willfully infringed any of the Asserted Patents.

## II. VALIDITY

5. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’935 patent are invalid as anticipated or obvious to a person of ordinary skill under 35 U.S.C. §§ 102 or 103.

6. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’271 patent are invalid as obvious to a person of ordinary skill under 35 U.S.C. § 102.

7. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims are invalid for lack of written description or enablement under 35 U.S.C. § 112.

8. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’935 Patent are patent ineligible pursuant to 35 U.S.C. § 101.

9. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’271 Patent are patent ineligible pursuant to 35 U.S.C. § 101.

10. Whether Quectel has proven by clear and convincing evidence that the Asserted Claims of the ’935 and ’271 patents are not entitled to a priority date of September 30, 2004 and August 11, 2003, respectively.

## III. PATENT DAMAGES AND COSTS

11. Whether Philips proved by a preponderance of the evidence the dollar amount that will compensate Philips for Quectel’s infringement of the Asserted Patents.

12. Whether Philips proved that it is entitled to enhanced damages for Quectel’s willful infringement under 35 U.S.C. § 284, and if so, the amount of enhancement.

13. Whether Philips or Quectel proved that it is entitled to costs and, if so, the dollar amount of such costs.

14. Whether Philips proved that this case is exceptional under 35 U.S.C. § 285, and whether Philips is entitled to an award of attorneys’ fees.

15. Whether Philips is entitled to an award of pre-judgment and post-judgment interest and, if so, the dollar amount of such award.

16. Whether Philips has proven it is entitled to a permanent injunction.

## IV. QUECTEL'S COUNTERCLAIMS

17. Whether Quectel proved that Philips breached Clause 4.1 of the ETSI IPR Policy.

18. Whether Quectel proved that Philips breached Clause 6.1 of the ETSI IPR Policy.

19. Whether Quectel proved that Philips breached its obligation to negotiate in good faith under French law.

20. If breach is found, the dollar amount that will compensate Quectel for Philips's alleged breach.

## V. QUECTEL'S IMPLIED WAIVER AFFIRMATIVE DEFENSE [BENCH TRIAL]

21. Whether Quectel proved by clear and convincing evidence that Philips's conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished.

22. Whether Quectel proved by clear and convincing evidence that Philips had a duty of disclosure to ETSI.

23. Whether Quectel proved by clear and convincing evidence that Philips breached a duty of disclosure to ETSI, as set forth in Clause 4.1 of the ETSI IPR Policy.

24. Whether Quectel proved by clear and convincing evidence that the timing of Philips's disclosure of its IPRs to ETSI resulted in an unfair benefit to Philips.

25. Whether Quectel proved by clear and convincing evidence that Philips engaged in egregious misconduct.[1]

## VI. QUECTEL'S EQUITABLE ESTOPPEL AFFIRMATIVE DEFENSE [BENCH TRIAL]

26. Whether Quectel proved by clear and convincing evidence that the statements or conduct of Philips communicated something in a misleading way.

27. Whether Quectel proved by clear and convincing evidence that it substantially relied on the misleading conduct of Philips in connection with taking some action.

28. Whether Quectel proved by clear and convincing evidence that Quectel would be materially prejudiced if Philips is now permitted to proceed with the suit.

---

[1] Philips contests whether Quectel has plead "egregious misconduct," and thus this will only be an issue of fact if the Court agrees with Quectel's position that it plead "egregious misconduct." *See, e.g.*, D.I. 316 at 3 n.2; D.I. 352 at 6-8.

29. Considering of any other evidence and facts respecting the equities of the parties, in exercising the Court's discretion, in deciding whether to allow the defense of equitable estoppel to bar the suit.

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**QUECTEL'S STATEMENT OF ISSUES OF**
**FACT TO BE LITIGATED AT TRIAL**

# TABLE OF CONTENTS


I. Procedural Background ........ 2

II. Noninfringement of the asserted patents ........ 2

III. Validity ........ 3

IV. Patent damages and costs ........ 4

V. Quectel's counterclaims ........ 5

VI. Quectel's implied waiver affirmative defense [Bench Trial] ........ 8

VII. Quectel's equitable estoppel affirmative defense [Bench Trial] ........ 9

Consistent with D. Del. LR 16.3(c)(4) and the parties' agreed-upon schedule, Quectel identifies the following issues of contested facts. This statement is based on the arguments Quectel expects to make, as well as its understanding of the arguments Philips is likely to make, at trial.

Quectel reserves the right to supplement this statement, as it is based on the current status of the case and the Court's rulings to date. Quectel may supplement this statement if any of these items change, including if Philips makes new arguments or the Court enters new rulings. Quectel further reserves the right to supplement or amend this statement based on Philips's pretrial disclosures. Should the Court determine that any of the issues listed and discussed below are issues of law, and not fact, Quectel incorporates such issues by reference into its Statement of Issues of Law (Exhibit 5). To the extent Quectel's Statement of Issues of Law (Exhibit 5) contains issues that the Court deems are issues of fact, those issues are incorporated herein by reference.

The following statements are not exhaustive. Quectel reserves the right to prove any matters identified in its pleadings, interrogatory responses, and/or expert reports. Quectel further intends to offer evidence to rebut evidence offered by Philips, in response to rulings by the Court, or for other good cause. Quectel incorporates by reference its expert reports in support of any proof to be presented

by expert testimony. By including a fact herein, Quectel does not assume the burden of proof or production with regard to that fact.

## I. PROCEDURAL BACKGROUND

1. This case was stayed pending the outcome of the parallel ITC Action 337-TA-1240 ("the ITC Action"). In the ITC Action, the International Trade Commission found that Philips failed to act with the diligence required in disclosing its essential intellectual property rights (IPRs) because it waited years after filing its applications to do so. D.I. 354-4 at 271, 279–80. The ITC also found claims in each of Philips's four originally asserted patents—the '271, '935, '943, and '711 patents— to not be infringed, and found all four patents to be unenforceable. ITC Action, Final Initial Determination at 58–89, 143–66, 214–36. The ITC also found claims in three of Philips's four originally asserted patents—the '271, '943, and '711 patents— to be invalid. ITC Action, Final Initial Determination at 266–84.[1]

## II. NONINFRINGEMENT OF THE ASSERTED PATENTS

2. Whether Philips has proven by a preponderance of the evidence that Quectel has infringed and continues to infringe, directly or indirectly, claims 1-3,

[1] While Philips declined to include this in the Pretrial Order or Joint Uncontested Facts, Quectel's position is that this information is relevant at least to Philips's claims of willful infringement, damages, and Quectel's counterclaims.

9-11, and 17 of the ’935 Patent, including without limitation whether Quectel directly infringed or induced its customers’ direct infringement of those claims. (Unless otherwise specified, all references to Quectel’s infringement of the ’935 Patent include both direct and indirect infringement.)

3. Whether Philips has proven by a preponderance of the evidence that Quectel has infringed and continues to infringe, directly or indirectly, claims 1-8 of the ’271 Patent, including without limitation whether Quectel directly infringed or induced its customers’ direct infringement of those claims. (Unless otherwise specified, all references to Quectel’s infringement of the ’271 Patent include both direct and indirect infringement.)

4. Whether Philips proved by a preponderance of the evidence that Quectel directly infringed one or more Asserted Claims of the ’935 or ’271 Patents by inducing infringement.

5. Whether Philips proved by a preponderance of the evidence that Quectel willfully infringed any of the Asserted Patents.

## III. VALIDITY

6. Whether Philips has proven by clear and convincing evidence that the Asserted Claims of the ’935 and ’271 patents are entitled to a priority date of September 30, 2004 and August 11, 2003, respectively.

7. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’935 patent are invalid as anticipated or obvious to a person of ordinary skill under 35 U.S.C. §§ 102 or 103.

8. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’271 patent are invalid as obvious to a person of ordinary skill under 35 U.S.C. §§ 102 or 103.

9. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the Asserted Patents are invalid for lack of written description under 35 U.S.C. § 112.

10. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’935 patent are patent ineligible under 35 U.S.C. § 101.

11. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’271 patent are patent ineligible under 35 U.S.C. § 101.

## IV. PATENT DAMAGES AND COSTS

12. If infringement of any valid claim is found, the dollar amount that will compensate Philips for Quectel’s infringement of the Asserted Patents that Philips has proven by a preponderance of the evidence.

13. If infringement of any valid claim is found and willful infringement is found, whether Philips proved that it is entitled to enhanced damages for Quectel's willful infringement under 35 U.S.C. § 284, and if so, the amount of enhancement.

14. Whether Philips proved that this case is exceptional under 35 U.S.C. § 285, and whether Philips is entitled to an award of attorneys' fees.

15. Whether Philips is entitled to an award of pre-judgment and post-judgment interest and, if so, the dollar amount of such award.

16. Whether Philips has proven it is entitled to a permanent injunction.

17. Whether Philips or Quectel proved that it is entitled to costs and, if so, the dollar amount of such costs.

## V. QUECTEL'S COUNTERCLAIMS

18. Whether Philips's asserted patents are FRAND-encumbered.

19. Whether Philips submitted contractual declarations for the asserted patents to ETSI that Philips would offer FRAND licenses for the respective IPR to any potential licensee.[2]

[2] While Philips declined to include this in the parties' Joint Statement of Uncontested Facts, Philips elsewhere affirms that it declared the asserted patents to ETSI and committed "to license its essential IPRs on FRAND terms." D.I. 314 at ¶¶ 8-13 (Concise Statement of Facts in Support of Plaintiff's Motion for Summary Judgment (No. 1)).

20. The earliest date Philips declared the ’935 Patent, its applications, or its counterparts as essential to the Universal Mobility Telecommunication Standard (“UMTS”), also known as 3G, was November 26, 2009. Specifically, whether, on November 26, 2009, Philips declared the ’935 Patent essential to TS 25.321, developed by 3GPP Radio Access Network (“RAN”) Working Group 2.[3]

21. The earliest date Philips declared the ’935 Patent, its applications, or its counterparts as essential to the Long Term Evolution (“LTE”) standard was December 3, 2014. Specifically, whether, on December 3, 2014, Philips declared the ’935 Patent essential to TS 36.321, developed by 3GPP RAN Working Group 2.[4]

22. The earliest date Philips declared the ’271 Patent, its applications, or its counterparts as essential to the UMTS, also known as 3G, was November 26, 2009. Specifically, whether, on November 26, 2009, Philips declared the ’271

---

[3] While Philips declined to include this in the parties’ Joint Statement of Uncontested Facts, Philips elsewhere affirms that it “declared the applications for the ’271 and ’935 patents to ETSI for UMTS on November 26, 2009.” D.I. 314 at ¶¶ 8-13 (Concise Statement of Facts in Support of Plaintiff’s Motion for Summary Judgment (No. 1)).

[4] While Philips declined to include this in the parties’ Joint Statement of Uncontested Facts, Philips elsewhere affirms that it “declared the’935 patent to ETSI for LTE on December 3, 2014.” D.I. 314 at ¶¶ 8-13 (Concise Statement of Facts in Support of Plaintiff’s Motion for Summary Judgment (No. 1)).

Patent essential to TS 25.214, which was developed by 3GPP RAN Working Group 1.[5]

23. Whether Philips's declarations of the asserted patents, their applications, or their counterparts as essential to the UMTS and LTE standards at issue occurred after the standards at issue were enacted.

24. Whether Philips attended and participated in 3GPP RAN Working Groups 1 and 2 during the development of the UMTS and LTE standards at issue, including but not limited to TS 25.321, TS 36.321, and TS 25.214.

25. Whether Quectel proved that Philips breached its contractual FRAND obligation to disclose its patents to ETSI in a timely fashion using reasonable endeavors.

26. Whether Quectel proved that Philips breached its contractual FRAND obligation to offer a license to the Asserted Patents on FRAND terms and conditions.

27. Whether Quectel proved that Philips breached its obligation to negotiate in good faith.

---

[5] While Philips declined to include this in the parties' Joint Statement of Uncontested Facts, Philips elsewhere affirms that it "declared the applications for the '271 and '935 patents to ETSI for UMTS on November 26, 2009." D.I. 314 at ¶¶ 8-13 (Concise Statement of Facts in Support of Plaintiff's Motion for Summary Judgment (No. 1)).

28. If breach is found, the dollar amount that will compensate Quectel for Philips's breach.

## VI. QUECTEL'S IMPLIED WAIVER AFFIRMATIVE DEFENSE [BENCH TRIAL]

29. Whether Quectel proved by clear and convincing evidence that Philips's conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished.

30. Whether Quectel proved by clear and convincing evidence that Philips had a duty of disclosure to ETSI.

31. Whether Quectel proved by clear and convincing evidence that Philips breached its duty of disclosure to ETSI.

32. Whether Quectel showed prejudice or egregious misconduct[6] sufficient to justify the sanction of unenforceability of the Asserted Patents.

[6] Philips disputes that Quectel has pled egregious misconduct. *See, e.g.*, D.I. 316 at 3 n.2; D.I. 352 at 6-9.

## VII. QUECTEL'S EQUITABLE ESTOPPEL AFFIRMATIVE DEFENSE [BENCH TRIAL]

33. Whether Quectel proved by clear and convincing evidence that Philips engaged in misleading conduct that led Quectel to reasonably infer that Philips does not intend to enforce its patent against Quectel.

34. Whether Quectel proved by clear and convincing evidence that Philips had a duty of disclosure to ETSI.

35. Whether Quectel proved by clear and convincing evidence that Philips breached a duty of disclosure to ETSI.

36. Whether Quectel would be materially prejudiced if Philips is permitted to proceed with its claims.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**KONINKLIJKE PHILIPS N.V.'S BRIEF STATEMENT OF
CONTESTED ISSUES OF LAW**

# TABLE OF CONTENTS


I. Issues of Law ....................2

A. Infringement of Asserted Patents ....................2

1) Issues to be Litigated ....................2

2) Legal Principles....................3

i. Direct Infringement ....................3

ii. Induced Infringement ....................5

iii. Willful Infringement ....................6

B. Validity of Asserted Patents ....................7

1) Issues to be Litigated ....................7

2) Legal Principles....................8

i. Anticipation ....................9

ii. Obviousness....................11

iii. Written Description and Enablement....................12

iv. Patent Eligibility....................13

v. Priority Date ....................14

C. Damages ....................16

1) Issues to be Litigated ....................16

2) Legal Principles....................17

i. Reasonable Royalty....................17

ii. Interest and Costs ....................18

iii. Enhanced Damages ....................................................18

iv. Exceptional Case ....................................................19

D. Alleged "Breach of FRAND" Counterclaim....................................19

1) Issues to be Litigated ....................................................19

2) Legal Principles....................................................21

i. Third-Party Beneficiaries to a Contract ..............................22

ii. IPR Disclosure Obligations ..............................................23

iii. FRAND License Obligations ..........................................29

iv. Monetary Damages as an Element of a Breach of Contract Claim ....................................................30

E. Alleged "Breach of Obligation to Negotiate in Good Faith" Counterclaim....................................................30

1) Issues to be Litigated ....................................................30

2) Legal Principles....................................................31

F. Alleged Waiver of Philips's Claims for Infringement ........................32

1) Issues to be Litigated ....................................................32

2) Legal Principles....................................................32

G. Equitable Estoppel....................................................33

3) Issues to be Litigated ....................................................33

4) Legal Principles....................................................34

Pursuant to Local Rule 16.3(c)(4) and the parties' agreed-upon schedule, Koninklijke Philips N.V. ("Philips") submits the following statement of issues of law to be litigated at trial, including a citation of authorities. This statement is based on Philips's understanding of the defenses and counterclaims of Defendant Quectel Wireless Solutions Co. Ltd. ("Quectel"), as well as the proceedings in this litigation to date.

Philips reserves the right to modify or amend this statement to the extent necessary to fairly respond to any new issues that Quectel may raise, if Quectel is permitted to raise new issues. Philips further reserves the right to modify or amend this statement based upon the resolution of any outstanding motion or any future ruling by the court. Philips does not, by way of including an issue in this Exhibit, concede that such issue should be included in the jury trial of this litigation. Certain issues included in this statement may be presented separately. The following statements are not exhaustive, and Philips reserves the right to prove any matters identified in its pleadings, interrogatory responses, and/or expert reports. Philips also intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order. Philips further intends to offer evidence to rebut evidenced offered by Quectel, and to argue that Quectel is precluded from offering evidence in support of theories and claims not adequately disclosed in accordance

with the scheduling order. Philips incorporates by reference its expert reports in support of any proof to be presented by expert testimony.

To the extent Philips's statement of issues of fact that remain to be litigated contains issues of law, those issues are incorporated by reference. To the extent this statement of issues of law to be litigated at trial contains issues of fact, those issues are incorporated into Philips' statement of issues of fact that remain to be litigated. In particular, Philips discusses certain fact issues raised by the parties' contentions in this discussion of legal issues for purposes of completeness, without waiver of any argument regarding whether a particular issue is one of fact or law.

# I. ISSUES OF LAW

## A. Infringement of Asserted Patents

### 1) *Issues to be Litigated*

1. Whether Quectel has infringed, is infringing, or is likely in the future to infringe, directly or indirectly, claims 1-3, 9-11, and 17 of the '935 Patent.

2. Whether Quectel has willfully infringed the '935 Patent.

3. Whether Quectel has infringed, is infringing, or is likely in the future to infringe, directly or indirectly, claims 1-8 of the '271 Patent.

4. Whether Quectel has willfully infringed the '271 Patent.

5. Whether Philips is entitled pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284, and if so, the amounts.

6. Whether Philips may recover its attorneys' fees and costs and/or costs under 35 U.S.C. § 285, and if so, the amounts.

7. Whether Philips is entitled under 35 U.S.C. §§ 283 and 284 or other applicable law to an ongoing royalty, other damages, or supplemental damages for Quectel's ongoing infringement (e.g., based on an accounting).

8. Whether Philips is entitled to a permanent injunction, pursuant to 35 U.S.C. § 283, enjoining Quectel and each of their officers, agents, employees, parents, affiliates, and subsidiaries, and all persons and entities acting in concert with Quectel or on their behalf from commercially manufacturing, using, offering for sale, or selling the Accused Products within the United States, or importing the Accused Products into the United States, until the last expiration date of either of the '935 or '271 Patents, including any additional extensions or exclusivity period applicable to those patents.

**2)** ***Legal Principles***

i. Direct Infringement

9. Under 35 U.S.C. § 271(a), any person who, without authorization, makes, uses, offers to sell, or sells a patented invention within the United States is liable for patent infringement. Determining whether infringement has occurred involves a two-step inquiry. The first step requires the Court to construe the claims at issue in order to determine their proper meaning and scope. *Markman v.*

*Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Second, the factfinder must compare the accused products or processes against each element of the properly construed claims. *See id.*; *see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). The patentee bears the burden of establishing, by a preponderance of the evidence, that the accused products or processes satisfy each and every limitation of the asserted claims. *See SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

10. With respect to apparatus claims, infringement is established where the accused device is reasonably capable of meeting the claim limitations, even if the device is also capable of operating in a non-infringing manner. *See Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001). By way of illustration, a structural component such as an automobile engine exists for purposes of an apparatus claim regardless of whether it is actively in use. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010). Method claims, by contrast, require a different analysis — the patentee must present evidence demonstrating that the accused device was actually used to perform the claimed method. *See Embrex, Inc. v. Service Eng'g Corp.*, 216 F.3d 1343, 1352 (Fed. Cir. 2000).

ii. Induced Infringement

11. A party may be held liable for infringement where it aids or abets the direct infringement of others. Under 35 U.S.C. § 271(b), anyone who actively induces infringement of a patent is liable as an infringer. To prevail on a theory of induced infringement, the patentee must demonstrate the following elements: (1) that end users of the accused products committed acts of direct infringement of an asserted claim; (2a) that the accused infringer engaged in conduct intended to bring about, and that did bring about, those infringing acts by the end users; and (2b) that the accused infringer had knowledge of the asserted patent and either knew that the induced acts would constitute infringement or believed there was a high probability that such acts would infringe and deliberately avoided confirming that belief. *See Minn. Mining & Mfg. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002); *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). Evidence that a party took affirmative steps to encourage infringing use—such as promoting or advertising such use—may support a finding of intent to induce infringement. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009). The patentee carries the burden of proving inducement by a preponderance of the evidence. *See Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 855 F. Supp. 670, 672 (D. Del. 1993).

12. A defendant's good-faith belief that the patent is invalid does not constitute a defense to a claim of induced infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642–43 (2015).

iii. Willful Infringement

13. Under 35 U.S.C. § 284, the Court is authorized to enhance damages up to three times the amount awarded, including where the infringement is found to be willful. The patentee bears the burden of proving willfulness by a preponderance of the evidence. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017). Willfulness is a question of fact for the jury, and the relevant inquiry focuses on the accused infringer's culpability as measured by what that party knew at the time of the challenged conduct. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp. LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016)). The standard for willfulness requires only that the jury find the infringement was deliberate or intentional. *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). A patentee may satisfy this standard by demonstrating that the defendant knowingly infringed or that the infringement was so apparent that the accused infringer should have been aware of it. *Arctic Cat*, 876 F.3d at 1371–72.

### B. Validity of Asserted Patents

#### 1) *Issues to be Litigated*

14. Whether Quectel has proved by clear and convincing evidence that that claims 1-3, 9-11, and 17 of the ’935 Patent are invalid as anticipated.

15. Whether Quectel has proved by clear and convincing evidence that 1-3, 9-11, and 17 of the ’935 Patent are invalid as obvious.

16. Whether Quectel has proved by clear and convincing evidence that claims 1-8 of the ’271 Patent are invalid as anticipated.

17. Whether Quectel has proved by clear and convincing evidence that claims 1-8 of the ’271 Patent are invalid as obvious.

18. Whether Quectel has proved by clear and convincing evidence that one or more of the claims of the Asserted Patents are invalid for lack of written description or enablement under 35 U.S.C. § 112.

19. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’935 patent are invalid for patent ineligibility under 35 U.S.C. § 101.

20. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’271 patent are invalid for patent ineligibility under 35 U.S.C. § 101.

21. Whether Quectel has proven by clear and convincing evidence that the Asserted Claims of the ’935 and ’271 patents are not entitled to a priority date of September 30, 2004 and August 11, 2003, respectively.

**2) *Legal Principles***

22. Quectel bears a substantial burden in challenging the validity of the Asserted Patents. Under 35 U.S.C. § 282, issued patents are presumed valid, and Quectel must rebut that presumption with clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P’ship*, 564 U.S. 91, 99–107 (2011); *KSR Int’l Co. v. Teleflex Inc.*, 550 U.S. 398, 412 (2007) (“By direction of 35 U.S.C. § 282, an issued patent is presumed valid.”).

23. To satisfy the clear-and-convincing standard, a party asserting invalidity must produce evidence sufficient to establish in “in the mind of the trier of fact an abiding conviction that the truth of a factual contention is ‘highly probable.’” *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (citation omitted). The Federal Circuit has further described this burden as requiring “well-nigh irrefragable” proof — evidence that “‘cannot be refuted or disproved; incontrovertible, incontestable, indisputable, irrefutable, undeniable.’” *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239–40 (Fed. Cir. 2002) (quoting Oxford English Dictionary 93 (2d ed. 1991)).

24. The clear-and-convincing standard governs all invalidity challenges, and it applies with particular force when the U.S. Patent and Trademark Office ("USPTO") previously considered the prior art or other evidence at issue. *See Microsoft*, 564 U.S. at 109. Thus, when an invalidity challenge relies on references that were before the USPTO during prosecution, overcoming the presumption of validity is "especially difficult." *Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004) (citation omitted). In that circumstance, the challenger also bears "the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (citation omitted).

i. Anticipation

25. To establish that a patent claim is invalid for anticipation, the accused infringer must prove by clear and convincing evidence that a single prior art reference discloses each and every element of the claimed invention. *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 796 (Fed. Cir. 2010).

26. Anticipation requires that the four corners of a single prior art reference disclose every element of the claimed invention, either expressly or

inherently, in a manner that would enable a person of ordinary skill in the art to practice the invention without undue experimentation. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

27. In assessing anticipation, the knowledge of a person of ordinary skill in the art cannot be used to supply a missing claim limitation. *See Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 799 F. App'x 838, 845 (Fed. Cir. 2020) ("[W]e have previously rejected the proposition that 'a reference missing a limitation can anticipate a claim if a skilled artisan viewing the reference would "at once envisage" the missing limitation.'" (citing *Nidec Motor Corp. v. Zhongshan Bd. Queen Motor Co. Ltd.*, 851 F.3d 1270, 1274–75 (Fed. Cir. 2017); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 146 F. Supp. 3d 595, 609 (D. Del. 2015) (rejecting as "legally flawed" an "anticipation by combination" theory under which a POSA would read prior art "in combination with the artisan's own knowledge of the prior art," because "anticipation requires that each limitation of a claim must be found in a single reference"); *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed. Cir. 1984) (holding that although a reference need not use the precise language of the claims, neither the knowledge of a POSA nor disclosure in another reference can supply what is absent from the allegedly anticipating reference).

28. If a prior art reference is overly broad or generic, it does not provide the specificity required to anticipate a claimed invention. Anticipation demands more than disclosure of the individual elements of a claim in isolation. *See Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1458–59 (Fed. Cir. 1984) (reversing decision that treated the prior art as a "mere catalogs of separate parts."). Rather, because the touchstone of anticipation is prior invention, the prior art reference must disclose within its four corners not only all elements of the claim, but also those elements "arranged as in the claim." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) (citation omitted).

ii. Obviousness

29. Under 35 U.S.C. § 103, a claim is invalid for obviousness only if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

30. The accused infringer must demonstrate, on a claim-by-claim basis, that the claimed invention would have been obvious to a person of ordinary skill in the art as of the filing date of the original application. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358–59 (Fed. Cir. 2017).

31. A claim is rendered obvious where the differences between the prior art and the claimed invention are such that the invention as a whole would have been apparent to a skilled artisan before the effective filing date. 35 U.S.C. § 103; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. at 406. This analysis demands proof that a person of ordinary skill would have been motivated to combine the relevant prior art teachings to arrive at the claimed invention and would have possessed a reasonable expectation of success in doing so. *See Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367–68 (Fed. Cir. 2016).

32. Critically, the inquiry is not merely whether a skilled artisan could have combined the references, but whether there existed sufficient motivation to do so. *Adidas AG v. Nike Inc.*, 963 F.3d 1355, 1359 (Fed. Cir. 2020). Additionally, objective indicia of non-obviousness — including commercial success, long-felt but unresolved need, the failure of others, skepticism among experts, industry praise, teaching away, and evidence of copying — may serve as probative evidence that the claimed invention was not obvious. *See KSR*, 550 U.S. at 406–07.

iii. Written Description and Enablement

33. Patents are presumed valid, and the accused infringer must prove inadequate written description or lack of enablement by clear and convincing evidence. Section 112 of the Patent Act requires that a patent specification both describe the claimed invention and enable a person skilled in the relevant art to

make and use it. 35 U.S.C. § 112. These two obligations are referred to as the written description requirement and the enablement requirement.

34. Regarding written description, there is no mandate that the disclosure includes examples or an actual reduction to practice. *Alcon Rsch. Ltd. v. Barr Lab'ys., Inc.*, 745 F.3d 1180, 1191 (Fed. Cir. 2014). Instead, the pertinent question is whether the specification describes the invention in enough detail to convey to a person of ordinary skill that the inventor had possession of the claimed subject matter at the time the application was filed. *Id.* at 1190–91. The written description standard does not require that the inventor demonstrate a physical embodiment or reduction to practice of the invention. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010).

35. As for enablement, the patent's disclosure must be sufficient to allow a skilled artisan to make the claimed invention without undue experimentation. *Alcon Rsch.*, 745 F.3d at 1188–90. Some degree of experimentation does not defeat enablement; however, the experimentation required must not be unduly excessive. *Hybritech v. Monoclonocal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986) *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1351 (Fed. Cir. 1998).

iv. <u>Patent Eligibility</u>

36. In evaluating whether a claimed invention qualifies for patent protection under 35 U.S.C. § 101, the court first examines the claimed advance to

determine whether the claims are directed to an abstract idea. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). Claims directed to concrete technological improvements, rather than abstract concepts, satisfy the eligibility threshold. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313–14 (Fed. Cir. 2016). Patents that recite a specific, particular arrangement of components are patent eligible. *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348–49 (Fed. Cir. 2017); *see also id. Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–39 (Fed. Cir. 2016).

37. Even where claims implicate abstract ideas, patent eligibility is preserved if the claims employ those underlying ideas through an inventive arrangement of conventional and novel components. *See BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

v. Priority Date

38. "[O]nce a challenger (the alleged infringer) has introduced sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted, prior art that is dated earlier than the apparent effective date of the asserted patent claim, the patentee has the burden of going forward with evidence and argument to the contrary." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008).

39. "[I]t is a long standing rule of patent law that, because an issued patent is by statute presumed valid, a challenger has the burden of persuasion to show by clear and convincing evidence that the contrary is true. That ultimate burden never shifts, however much the burden of going forward may jump from one party to another as the issues in the case are raised and developed." *Id.*

40. "An application for patent for an invention disclosed in the manner provided by section 112(a) (other than the requirement to disclose the best mode) in an application previously filed in the United States, or as provided by section 363 or 385, which names an inventor or joint inventor in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application." 35 U.S.C. §120.

41. 35 U.S.C. § 120 applies to all provisions of the Patent Act, and "does not limit its effect to only certain provisions under patent laws." *Loughlin v. Ling*, 684 F.3d 1289, 1293 (Fed. Cir. 2012).

42. Pursuant to 35 U.S.C. § 100, the term "effective filing date" shall mean "the filing date of the earliest application for which the patent or application

is entitled, as to such invention, to a right of priority under section 119, 365(a), 365(b), 386(a), or 386(b) or to the benefit of an earlier filing date under section 120, 121, 365(c), or 386(c)."

**C. Damages**

**1) *Issues to be Litigated***

43. Whether Philips proved by a preponderance of the evidence the dollar amount that will compensate Philips for Quectel's infringement of the Asserted Patents.

44. Whether Philips proved that it is entitled to enhanced damages for Quectel's willful infringement under 35 U.S.C. §284, and if so, the amount of enhancement.

45. Whether Philips or Quectel proved that it is entitled to costs and, if so, the dollar amount of such costs.

46. Whether Philips proved that this case is exceptional under 35 U.S.C. § 285, and whether Philips is entitled to an award of attorneys' fees.

47. Whether Philips is entitled to an award of pre-judgment and post-judgment interest and, if so, the dollar amount of such award.

**2) *Legal Principles***

i. <u>Reasonable Royalty</u>

48. Where infringement is established, the patentee is entitled to damages adequate to compensate for the infringement, which in no event may be less than a reasonable royalty. 35 U.S.C. § 284. The patentee must prove the amount of damages by a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Lab'ys. Corp.*, 926 F.2d 1161, 1163–64 (Fed. Cir. 1991). Although mathematical precision is not required, the patentee must establish its damages with reasonable certainty. *See Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, 2015 WL 307572, at *1 (D. Del. Jan 23, 2015).

49. A reasonable royalty is measured by the royalty rate to which a willing licensor and willing licensee would have agreed in a hypothetical negotiation occurring just before infringement commenced. The royalty may be determined by reference to the outcome of such a hypothetical negotiation, *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012), guided by the fifteen factors articulated in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The purpose of the hypothetical negotiation framework is to reconstruct, as faithfully as possible, the ex ante licensing scenario and the agreement the parties would have reached. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325

(Fed. Cir. 2009). Where comparable licenses are relied upon to inform the royalty analysis, questions of comparability generally go to the sufficiency of the evidence rather than its admissibility. *Bio-Rad Lab'ys., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373 (Fed. Cir. 2020).

ii. Interest and Costs

50. A prevailing patentee is entitled to interest and costs as determined by the Court. *See* 35 U.S.C. § 284. An award of prejudgment interest is appropriate in the typical patent case in order to provide the patentee with full compensation for the infringement. *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1373–74 (Fed. Cir. 2022) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654–55 (1983)). Indeed, the award of prejudgment interest is the rule rather than the exception. *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012). A prevailing plaintiff is likewise entitled to post-judgment interest. *See* 28 U.S.C. § 1961.

iii. Enhanced Damages

51. The Court has discretion under 35 U.S.C. § 284 to increase the damages award by up to three times the amount found. The party seeking enhanced damages must carry its burden by a preponderance of the evidence. *Arctic Cat*, 876 F.3d at 1370–71.

iv. Exceptional Case

52. Under 35 U.S.C. § 285, the Court may award reasonable attorney fees to the prevailing party in exceptional cases. A case qualifies as exceptional when it stands out from others based on the substantive strength of a party's litigation position — considering both the applicable law and the underlying facts — or the unreasonable manner in which the litigation was conducted. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The prevailing party bears the burden of establishing entitlement to fees by a preponderance of the evidence. *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 68 F.4th 1285, 1291 (Fed. Cir. 2023).

**D. Alleged "Breach of FRAND" Counterclaim**

***1) Issues to be Litigated***

53. Alleged Breach of Clause 4.1 of the European Telecommunications Standards Institute ("ETSI") intellectual property right ("IPR") Policy:

a. Whether, under French law, Quectel is an intended third-party beneficiary of Clause 4.1 ETSI IPR Policy.

b. Whether, under French law, Philips breached Clause 4.1 of the ETSI IPR Policy based on the timing of its disclosure of the '935 patent as essential to a standard.[1]

c. Whether, under French law, Philips breached Clause 4.1 of the ETSI IPR Policy based on the timing of its disclosure of the '271 patent as essential to a standard.[2]

d. Whether, under French law, Quectel has demonstrated an injury sufficient to support its counterclaim for breach of contract based on alleged breach of Clause 4.1 of the ETSI IPR Policy.

54. Alleged Breach of Clause 6.1 of the ETSI IPR Policy:

a. Whether, under French law, Philips breached Clause 6.1 of the ETSI IPR Policy and its IPR declaration to ETSI.

b. Whether, under French law, Quectel has demonstrated an injury sufficient to support its counterclaim for breach of contract based on

[1] There may be sub-issues of French law to decide also, including whether Clause 4.1 requires IPRs to be disclosed prior to the date a standard is "frozen," as Quectel has contended. This will require the Court to determine whether Clause 4.1 requires interpretation, and if so, a jury can determine how it should be interpreted under the "subjective" (common intention of the parties) approach under French law, which is the interpretative approach that can be used. (Alternatively, if Quectel were permitted to contest whether the "subjective" approach could be applied, and it is found that the "subjective" approach cannot be used, then the jury could be instructed on and apply the "objective" approach to interpretation.)

[2] Same as prior footnote..

alleged breach of Clause 6.1 of the ETSI IPR Policy and Philips's IPR declarations to ETSI.

**2) *Legal Principles*[3]**

55. Clause 12 of the ETSI IPR Policy states "[t]he POLICY shall be governed by the laws of France." EUR. TELECOMM. STANDARDS INST., ETSI DIRECTIVES, ANNEX 6: ETSI INTELLECTUAL PROPERTY RIGHTS POLICY 53 (2025) (hereinafter "ETSI IPR POLICY") (KPNV0256455-738 at KPNV0256507). Claims for breaches of the ETSI IPR Policy are contractual and, therefore, governed by the laws of France. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484-85 (5th Cir. 2021) (holding that French law applied to claims of breach of FRAND duties and breach of duty to negotiate in good faith).

56. Clause 4.1 of the ETSI's IPR Policy governs the disclosure of IPRs that are or may be essential to a standard and reads:

> [E]ach MEMBER shall use its reasonable endeavours, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion. In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of

[3] Because the claim is under French law, the legal principles, including those set forth below, will be further provided by Professor Jean-Sébastien Borghetti, including as set forth in his expert reports. *See* Borghetti Report, ¶¶31-160 (related to Clause 4.1), ¶¶14-30 (related to Clause 6.10).

> that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

ETSI IPR POLICY at 49 (KPNV0256455-738 at KPNV0256503).

57. Clause 6.1 of the ETSI IPR Policy governs the licensing of essential IPRs and reads:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such IPR . . .

*Id.*

i. Third-Party Beneficiaries to a Contract

58. Under French law, a contract only creates obligations between the parties to the contract. Code civil [C. civ.] [Civil Code] art. 1199 (Fr.) (2016) ("A contract creates obligations only as between the parties"); *see also* Code civil [Old C. Civ.] [Civil Code] art. 1165 (2013) (Fr.) ("Agreements product effects between the contracting parties."); Rebuttal Expert Report of Professor Jean-Sébastien Borghetti, dated April 28, 2026 ("Borghetti Report"), ¶33.

59. There is one main exception to this rule, *stipulation pour autrui*, which is a contract whereby one party requires a promise from the other party to accomplish an act of performance for the benefit of a third party that is identified

in the contract (or must be able to be determined at the time of the performance of the promise). C. Civ. art. 1205; Borghetti Report, ¶34.

60. ETSI's Guide on IPRs "is intended to help ETSI members, and any other party involved in ETSI's standardization activities (e.g. members, Technical Body Chairs, Secretariat, etc.) to understand the implement [ETSI's] IPR Policy." EUR. TELECOMM. STANDARDS INST., ETSI DIRECTIVES, GUIDE ON INTELLECTUAL PROPERTY RIGHTS POLICY 63 (2025) [hereinafter ETSI GUIDE ON IPRS] (KPNV0256455-738 at KPNV0256517). Article 1.4 of the ETSI Guide on IPRs specifies that users of ETSI standards only have third-party rights under the ETSI IPR Policy in relation to Clauses 6.1, 8.1, 8.2, 9.3, and 10. *Id.* at 64-65 (KPNV0256455-738 at KPNV0256518-19). Third parties that implement ETSI standards do not have third-party rights in relation to Clause 4.1. *Id. See generally* Borghetti Report, ¶¶34-35.

ii. <u>IPR Disclosure Obligations</u>

61. Under French law, a term can only be interpreted if it is ambiguous: not susceptible to a single meaning or it conflicts with one or more terms in the same contract. J. Boré & L. Boré, *La Cassation en matière civile* (5th edn, Dalloz 2015) ¶ 79-151. Once a term is determined to be ambiguous, it is to be interpreted based on the common intention of the parties rather than looking only at the literal meaning. C. civ. art. 1188(1). For organizations, this common intent can be derived

from the bylaws or organizing documents, such as the ETSI Guide on IPRs. *See e.g.*, P. H. Dutheil, *Associations et Fondations* 35 (Dalloz 2016) (KPNV0076335-37 at KPNV0076337); C. Atias & N. Le Rudulier, *Copropriété des immeubles bâtis: statut et structures, Répertoire de droit immobilier* ¶¶ 173-174 (Dalloz 2018) (KPNV0076348-52); ETSI GUIDE ON IPRS at 63 (KPNV0256455-738 at KPNV0256517). *See generally* Borghetti Report, ¶39. The common intent of the parties can be derived by examining elements beyond the four corners of the contract, such as the behavior or course of dealing of the parties, can be used to shed light on the parties' intention, and these things may include things such as the history of Clause 4.1 and the discussions at ETSI about this Clause, the purpose of the disclosure obligation, and industry practice. *See id.*, ¶47; *see also id.*, ¶¶48-100.

62. While Clause 4.1 of the ETSI IPR Policy requires members to disclose essential IPRs "in a timely fashion," it is ambiguous what that means. *See Optis v Apple*, UK High Court, [2021] EWHC 1739 (Pat) ¶¶ 372 ("There are genuine and substantial questions about the scope and content and purpose of 'timely', 'reasonable endeavors', and 'bona fide'."); *see also id.* at ¶¶ 369-373, 452; *see generally* Borghetti Report, ¶¶39-43.

63. ETSI does not have a set time at which or by which Clause 4.1 disclosures must be made; Article 2 of the ETSI Guide on IPRs explains that

"[d]efinitions for . . . 'timely' [in Clause 4.1] cannot be agreed because such definitions would constitute a 'change to the Policy.'" ETSI GUIDE ON IPRS at 66 (KPNV0256455-738 at KPNV0256520). When ETSI rewrote Clause 4.1, it did not add any timeliness deadline. *Compare id.* at 49 (KPNV0256455-738 at KPNV0256503) *with* EUR. TELECOMM. STANDARDS INST., ETSI DIRECTIVES, ANNEX 6: ETSI INTELLECTUAL PROPERTY RIGHTS POLICY 29 (1994) (KPNV0046499-543 at KPNV0046536). Instead of imposing a strict rule on the timing of the disclosure of specific IPRs, ETSI encourages its members to make general licensing declarations that they will make FRAND licenses available for all its IPRs in the future. *Id.* at 67 (KPNV0256455-738 at KPNV0256521); *see generally* Borghetti Report, ¶¶39-43.

64. Of note, ETSI directs participates in working groups developing standards to *not* discuss IPRs. ETSI GUIDE ON IPRS at 64 (KPNV0256455-738 at KPNV0256518) ("In complying with the [IPR] Policy the Technical Bodies should not become involved in legal discussion on IPR matters."); *see also* EUR. TELECOMM. STANDARDS INST., ETSI DIRECTIVES, GUIDELINES FOR ANTRITRUST COMPLIANCE 90 (2021) (KPNV0256455-738 at KPNV0256544) (directing participants in working groups to not "[a]ttempt to set or control price or terms of product, service or license fees in the course of any ETSI activity" or "[d]iscuss any disclosure of licensing price or terms, product or service price or terms, pricing

methods, profits, profit margins, cost data, production plans, market share or territories in the course of any ETSI activity.”).

65. The “reasonable endeavors” notion in Clause 4.1[4] is an obligation of means (*obligations de moyens*), as opposed to an obligation to achieve a specific result (*obligations de résultat*)—such as disclosing IPRs before a specific date. The distinction between these two types of obligations is a basic feature of French contract law. The concept of an obligation of means was born out of article 1137 of the old *code civil*, which provided that the debtor had to provide all the care of a “good family man” (*bon père de famille*), i.e., of a reasonable person. Old C. civ. art. 1137. It is undisputed that, under an obligation of means, the debtor is only bound to exercise the diligence of a reasonable person, i.e., reasonable endeavors, to achieve the desired result. The *Cour de cassation*, France’s highest court in civil and commercial matters, even takes the position that a best endeavors obligation (*obligation de faire ses meilleurs efforts*), as opposed to a reasonable endeavors obligation (*obligation de faire des efforts raisonnables*) is an obligation of means. Cour de cassation [Cass.] [supreme court for judicial matters] com., Jan. 19, 2010, 09/11201. As a consequence, the mere fact that the desired result was eventually not achieved does not amount to a breach of contract. Breach of contract only

[4] ETSI IPR POLICY at 49 (KPNV0256455-738 at KPNV0256503); *see also* ETSI GUIDE ON IPRS at 80 (KPNV0256455-738 at KPNV0256534) (“[T]he concept of ‘reasonable endeavors’ qualifies the obligation to disclose essential patents.”).

exists if the failure to achieve the desired result is a consequence of the debtor not using reasonable endeavors. And, under French law, it is for the creditor to demonstrate that the debtor was in breach of his obligations of means and that he did not use reasonable efforts to achieve the desired result. *See generally* Borghetti Report, ¶¶101-110 and citations therein.

66. Breach of an obligation of means is a question of fact to be decided by a trial judge. *See e.g.*, Cass., 1e civ., Feb. 23, 1970, 68/13900, Bull. civ. I, No. 62; Cass., 1e civ., Oct. 7, 1992, 90/21141, Bull. civ. I, No. 243; *see generally* Borghetti Report, ¶¶103 & ¶106 and citations therein.

67. Clause 4.1 also notes a member who submits a technical proposal must, on a bona fide basis, draw ETSI's attention to that member's IPRs which would be essential to the proposal if adopted. ETSI IPR POLICY at 49 (KPNV0256455-738 at KPNV0256503). This clause does not impose a specific disclosure date separate from the general "timely" requirement. ETSI GUIDE ON IPRS at 80 (KPNV0256455-738 at KPNV0256534) ("[T]he inclusion of ['in particular'] does not mean either that the window of opportunity for a member to declare its Essential IPRs is closed once a standard is adopted or that the member's duty to use its 'reasonable endeavours' post-adoption is waived or altered."); *see also* Cour d'appel [CA] [regional court of appeal] Paris, 7, Sept. 25, 2019, 17/17595 (KPNV0076441-84 and KPNV0076505-06) (noting that under French

law, the court would not create a distinction in a contract that does not provide for one); *Optis* at ¶ 515 ("Overall, it makes much more sense to read 'reasonable endeavours', 'timely fashion' and 'bona fide' as together implying an obligation of means in relation to the Clause as a whole."); *see generally* Borghetti Report, ¶¶111-18.

68. Thus, a party asserting breach of Clause 4.1 must prove the other party did not disclose its IPR in a "timely fashion" and did not act as a reasonable ETSI member when trying to do so. *See, e.g.,* Cass., 1e civ., Nov. 23, 1977, 76/11171, Bull. civ. I, No. 438; *see also* CA, Versailles, 27 May 27, 2009, 08/02957. ETSI specifically notes "reasonable endeavors" can "cover different scenarios on their merits on a logical, case-by-case basis." ETSI GUIDE ON IPRS at 80 (KPNV0256455-738 at KPNV0256534). Further, ETSI members are not obligated to conduct IPR searches. ETSI IPR POLICY at 49 (KPNV0256455-738 at KPNV0256503); *see generally* Borghetti Report, ¶102, ¶106, ¶107.

69. Most declarations of essential IPRs being made after the relevant technical specification is settled. *See Optis* at ¶¶ 429 ("The great majority of declarations were made after the stage 3 freeze date."). This behavior has not prompted ETSI to change its disclosure policies. *See generally* ETSI IPR POLICY; ETSI GUIDE ON IPRS.

70. The purpose of the overall ETSI IPR Policy is to ensure that implementation of the standards is not wasted as a result of IPRs essential to the standard being unavailable. ETSI IPR POLICY at 49 (KPNV0256455-738 at KPNV0256503). This is balanced against the need for its members to be adequately compensated for the use of their IPRs in ETSI standards. *Id.* The problems with late disclosure of essential IPRs are unavailability of a license to the IPR or unavailability of a license on FRAND terms. *Id.* at 66 (KPNV0256455-738 at KPNV0256520).

71. As such, Clause 4.1 must be understood as part of the larger scheme to ensure all essential IPRs are made available on FRAND terms to parties implementing a standard. *See* ETSI GUIDE ON IPRS at 79 (KPNV0256455-738 at KPNV0256533) (noting modifications to Clause 4.1 were made "to prevent an ETSI member from intentionally not disclosing Essential Intellectual Property Rights (EIPR) during the standardization process, and after the standard has issued, then disclosing such EIPR with the intention to not license on fair, reasonable, and non-discriminatory (FRAND) terms.").

iii. <u>FRAND License Obligations</u>

72. Clause 6.1 of the ETSI IPR Policy requires that any member, which declares its IPR as essential, agrees that it is prepared to grant licenses for disclosed patents on FRAND terms. ETSI IPR POLICY at 49 (KPNV0256455-738

at KPNV0256503). The specific FRAND terms are to be determined by the contracting parties, not by ETSI. ETSI GUIDE ON IPRS at 75 (KPNV0256455-738 at KPNV0256529); *see generally* Borghetti Report, ¶¶14-30.

iv. Monetary Damages as an Element of a Breach of Contract Claim

73. A possible remedy for breach of contract under French law is monetary damages. C. civ. art. 1231-1. However, this remedy is only available if the breach resulted in a loss or injury to the party asserting the claim. *Id.* at art. 1231-2; *see also* Cass., 3e civ., Dec. 3, 2003, 02/18033, Bull. civ. III, No. 221; Cour de cassation, première chambre civile, 11/21/2018, No. 17-26.766. A breach of contract claim cannot be adjudicated, even for nominal damages, without proof of this injury. Cass., 1e civ., Nov. 18, 1997, 95/19516, Bull. civ. I, No. 317; Cass., 2e civ., Sept. 11, 2008, 07/20857, Bull. civ. II, No. 191; *see generally* D.I. 345 (Borghetti Declaration), ¶¶19-22.

**E. Alleged "Breach of Obligation to Negotiate in Good Faith" Counterclaim**

**1) *Issues to be Litigated***

74. Whether Philips breached its duty, under French law, to negotiate with Quectel in good faith for a FRAND license.

75. Whether, under French law, Quectel has demonstrated an injury sufficient to support its counterclaim for breach of the duty to negotiate in good faith.

**2) *Legal Principles*[5]**

76. Clause 12 of the ETSI IPR Policy states "[t]he POLICY shall be governed by the laws of France." ETSI IPR POLICY at 53 (KPNV0256455 at KPNV0256507). Claims for breaches of the ETSI IPR Policy are contractual and, therefore, governed by the laws of France. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484-85 (5th Cir. 2021) (holding that French law applied to claims of breach of FRAND duties and breach of duty to negotiate in good faith).

77. Under the French new civil code Article 1104, contract negotiations must be negotiated in good faith. *See* C. civ. art. 1104. The same obligation applies to a party which makes an undertaking to negotiate, such as an essential IPR declaration, and to a party benefiting from said undertaking. *Id.* at 1112; *see generally* Borghetti Report, ¶¶24-26.

78. A possible remedy for breach of the duty to negotiate in good faith under French law is monetary damages. C. civ. art. 1231-1. However, this remedy

[5] Because the claim is under French law, the legal principles, including those set forth below, will be further provided by Professor Jean-Sébastien Borghetti, including as set forth in his expert reports. *See* Borghetti Report, ¶¶24-26, ¶¶166-181.

is only available if the breach resulted in a loss or injury to the party asserting the claim. *Id.* at art. 1231-2; *see also* Cass., 3e civ., Dec. 3, 2003, 02/18033, Bull. civ. III, No. 221; Cour de cassation, première chambre civile, 11/21/2018, No. 17-26.766 A claim for breach of the duty to negotiate in good faith cannot be adjudicated, even for nominal damages, without proof of this injury. Cass., 1e civ., Nov. 18, 1997, 95/19516, Bull. civ. I, No. 317; Cass., 2e civ., Sept. 11, 2008, 07/20857, Bull. civ. II, No. 191; *see generally* D.I. 345 (Borghetti Declaration), ¶¶19-22.

### F. Alleged Implied Waiver of Philips's Claims for Infringement

#### 1) *Issues to be Litigated*

79. Whether Philips's infringement claims for the Asserted Patents are barred due to the doctrine of implied waiver.

#### 2) *Legal Principles*

80. To prevail on an affirmative defense of implied waiver, the accused infringer must show that the patentee's conduct "was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1365 (Fed. Cir. 2018).

81. In order to succeed on "implied waiver in the standard setting organization context," the "conduct can be shown where (1) the patentee had a

duty of disclosure to the standard setting organization, and (2) the patentee breached that duty." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011).

82. Because the doctrine "hinges on basic fairness," the accused infringer must also prove by clear and convincing evidence that Philips's conduct "resulted in an unfair benefit." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1365 (Fed. Cir. 2018) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011)). Alternatively to "unfair benefit,: "egregious misconduct" may be shown (*id.*), but Quectel has not alleged egregious misconduct by Philips in its affirmative defense.

83. Quectel bears the burden of proving unfair benefit (or egregious misconduct, if it was alleged) by clear and convincing evidence. *See Therasense*, 649 F.3d at 1287 ("The accused infringer must prove both elements [of inequitable conduct]—intent and materiality—by clear and convincing evidence").

### G. Equitable Estoppel

#### 3) *Issues to be Litigated*

84. Whether Philips's infringement claims for the Asserted Patents are barred due to the doctrine of equitable estoppel.

**4) *Legal Principles***

85. A party raising equitable estoppel must prove, by preponderance of the evidence, the following elements: (1) "the statements or conduct of the patentee. . . communicated something in a misleading way," (2) the accused infringer "substantially relied on the misleading conduct of the patentee in connection with taking some action," and (3) "it would be materially prejudiced if the patentee is now permitted to proceed." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1042-43 (Fed. Cir. 1992).

86. "The first element of equitable estoppel requires conduct by the patentee that misleadingly suggests that the patent holder will not assert its rights." *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1324 (Fed. Cir. 2004). However, "silence alone will not create an estoppel unless there was a clear duty to speak, or somehow the patentee's continued silence reenforces the [accused infringer's] inference from the [patentee's] known acquiescence that the defendant will be unmolested." *Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1043-44 (Fed. Cir. 1992) (internal citation omitted). "In the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate or vigorous enforcement of its patent rights but then did nothing for an unreasonably long time." *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1574 (Fed. Cir. 1987), overruled on other grounds by *Aukerman*, 960

F.2d at 1038-39; *see also Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1464 (Fed. Cir. 1990), overruled on other grounds by *Aukerman*, 960 F.2d at 1038-39.

87. The Federal Circuit also has made it clear that "we do not believe that a suggestion of infringement coupled with an offer to license followed by silence would suffice to establish equitable estoppel." *Brooks Shoe*, 912 F.2d at 1464. With regards to the second element of equitable estoppel, the "accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action. Reliance is not the same as prejudice or harm….To show reliance, the infringer must have had a relationship or communication with the [patentee] which lulls the infringer into a sense of security[.]"*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1042-43 (Fed. Cir. 1992).

88. As for the third element of equitable estoppel, the patentee "must establish that it would be materially prejudiced if the patentee is not permitted to proceed…the prejudice may be a change of economic position or loss of evidence." *Id.* at 1043.

89. Even if all three elements of equitable estoppel are established, the court must "take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit." *Id.*

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**QUECTEL'S STATEMENT OF ISSUES OF LAW TO BE LITIGATED AT TRIAL**

# TABLE OF CONTENTS

A. Alleged Infringement of Asserted Patents ....................1
1) Issues to be Litigated ....................1
2) Legal Principles....................2
i. Direct Infringement ....................2
ii. Induced Infringement ....................5
iii. Willful Infringement ....................6
B. Validity of Asserted Patents....................8
1) Issues to be Litigated ....................8
2) Legal Principles....................9
i. Priority Date ....................11
ii. Anticipation....................12
iii. Obviousness ....................14
iv. Written Description ....................15
v. Patent Eligibility....................16
C. Patent Damages ....................17
1) Issues to be Litigated ....................17
2) Legal Principles....................18
i. Reasonable Royalty....................18
ii. Interest and Costs ....................19
iii. Enhanced Damages ....................20
iv. Exceptional Case ....................20
D. Breach of FRAND....................20
1) Issues to be Litigated ....................20
2) Legal Principles....................21
i. Third-Party Beneficiaries to a Contract ....................23
ii. IPR Disclosure Obligations....................24
iii. FRAND License Obligations ....................28
iv. Monetary Damages as an Element of a Breach of Contract Claim....................29
E. Breach of Obligation to Negotiate in Good Faith....................29
1) Issues to be Litigated ....................29
2) Legal Principles....................30
F. WAIVER....................33
1) Issues to be Litigated ....................33
2) Legal Principles....................33
G. EQUITABLE ESTOPPEL....................35
3) Issues to be Litigated ....................35
4) Legal Principles....................35

Pursuant to Local Rule 16.3(c)(4) and the parties' agreed-upon schedule, Quectel submits the following statement of issues of law to be litigated at trial, including a citation of authorities.

Quectel reserves the right to modify or amend this statement to the extent necessary to fairly respond to any new issues that arise, including upon the resolution of any outstanding motions or other rulings of the court. Quectel reserves all rights that Philips has reserved (Exhibit 4).

To the extent Quectel's statement of issues of fact that remain to be litigated (Exhibit 3) contains issues of law, those issues are incorporated by reference. And vice versa, to the extent this statement of issues of law to be litigated at trial contains issues of fact, those issues are incorporated into Quectel's statement of issues of fact that remain to be litigated.

**A. Alleged Infringement of Asserted Patents**

***1) Issues to be Litigated***

1. Whether Quectel has infringed, is infringing, or is likely in the future to infringe, directly or indirectly, claims 1-3, 9-11, and 17 of the '935 Patent.

2. Whether Quectel has willfully infringed the '935 Patent.

3. Whether Quectel has infringed, is infringing, or is likely in the future to infringe, directly or indirectly, claims 1-8 of the '271 Patent.

4. Whether Quectel has willfully infringed the '271 Patent.

5. Whether Philips is entitled pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284, and if so, the amounts.

6. Whether Philips may recover its attorneys' fees and costs and/or costs under 35 U.S.C. § 285, and if so, the amounts.

7. Whether Philips is entitled under 35 U.S.C. §§ 283 and 284 or other applicable law to an ongoing royalty, other damages, or supplemental damages for Quectel's ongoing infringement (e.g., based on an accounting).

8. Whether Philips is entitled to a permanent injunction, pursuant to 35 U.S.C. § 283, enjoining Quectel and each of their officers, agents, employees, parents, affiliates, and subsidiaries, and all persons and entities acting in concert with Quectel or on their behalf from commercially manufacturing, using, offering for sale, or selling the Accused Products within the United States, or importing the Accused Products into the United States, until the last expiration date of either of the '935 or '271 Patents, including any additional extensions or exclusivity period applicable to those patents.

**2) *Legal Principles***

i. <u>Direct Infringement</u>

9. Under 35 U.S.C. § 271(a), any person who, without authorization, makes, uses, offers to sell, or sells a patented invention within the United States is liable for patent infringement. Determining whether infringement has occurred

involves a two-step inquiry. The first step requires the Court to construe the claims at issue in order to determine their proper meaning and scope. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Second, the factfinder must compare the accused products or processes against each element of the properly construed claims. *See id.*; *see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). The patentee bears the burden of establishing, by a preponderance of the evidence, that the accused products or processes satisfy each and every limitation of the asserted claims. *See SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

10. With respect to apparatus claims, infringement is established where the accused device is reasonably capable of meeting the claim limitations, even if the device is also capable of operating in a non-infringing manner. *See Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001). By way of illustration, a structural component such as an automobile engine exists for purposes of an apparatus claim regardless of whether it is actively in use. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010). Method claims, by contrast, require a different analysis — the patentee must present evidence demonstrating that the accused device was actually used to

perform the claimed method. *See Embrex, Inc. v. Service Eng'g Corp.*, 216 F.3d 1343, 1352 (Fed. Cir. 2000).

11. To establish literal infringement, Philips must prove "that each and every limitation set forth in a claim appear" in each accused product. *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005); *see also DeMarini Sports, Inc. v. Worth*, Inc., 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'") (citation omitted). If the patentee fails to prove that any limitation is literally present in the accused product, then there can be no finding of literal infringement. *VFormation*, 401 F.3d at 1312 (finding no literal infringement where "the accused devices do not include" one of the limitations of the asserted claims); *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998) ("[A]ny deviation from the claim precludes a finding of literal infringement"). "[A] dependent claim, by nature, incorporates all the limitations of the claim to which it refers." *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000). Thus, it is "a fundamental principle of patent law that 'dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.'" *Id.* (citation omitted).

ii. Induced Infringement

12. A party may be held liable for infringement where it aids or abets the direct infringement of others. Under 35 U.S.C. § 271(b), anyone who actively induces infringement of a patent is liable as an infringer. To prevail on a theory of induced infringement, the patentee must demonstrate the following elements: (1) that end users of the accused products committed acts of direct infringement of an asserted claim; (2a) that the accused infringer engaged in conduct intended to bring about, and that did bring about, those infringing acts by the end users; and (2b) that the accused infringer had knowledge of the asserted patent and either knew that the induced acts would constitute infringement or believed there was a high probability that such acts would infringe and deliberately avoided confirming that belief. *See Minn. Mining & Mfg. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002); *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). The patentee carries the burden of proving inducement by a preponderance of the evidence. *See Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 855 F. Supp. 670, 672 (D. Del. 1993).

13. A defendant's good-faith belief that the patent is invalid does not constitute a defense to a claim of induced infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642–43 (2015).

iii. Willful Infringement

14. If Philips meets its burden to prove infringement, the jury must also decide whether the infringement was willful.

15. Under 35 U.S.C. § 284, the Court is authorized to enhance damages up to three times the amount awarded, including where the infringement is found to be willful. Willful infringement requires Philips to prove that (1) Quectel knew about the Asserted Patents; (2) Quectel intentionally infringed the Asserted Claims of the Asserted Patents; and (3) Quectel's conduct was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful or flagrant, or—indeed—characteristic of a pirate." *See Halo Elecs.*, 136 S. Ct. 1923 (2016); 2019 AIPLA Model Patent Jury Instructions at 11.0. Mere knowledge of the Asserted Patents and infringement, without more, is not sufficient. *Id.* The patentee bears the burden of proving willfulness by a preponderance of the evidence. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017). Willfulness is a question of fact for the jury, and the relevant inquiry focuses on the accused infringer's culpability as measured by what that party knew at the time of the challenged conduct. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp. LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016)). "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton,

malicious, bad faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs.*, 579 U.S. at 103–04.

16. A finding of willful infringement does not mandate that enhanced damages must be awarded. *See* 35 U.S.C. § 284; *see also Halo Elecs.*, 579 U.S. at 104. Accordingly, enhanced damages are not to be awarded in a typical infringement case but are instead designed as a punitive sanction for egregious infringement behavior, and there is no requirement that enhanced damages must follow a finding of egregious misconduct. Courts typically consider the following factors:

(1) whether the infringer deliberately copied the ideas or design of another;

(2) whether the infringer, when it knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or not infringed;

(3) the infringer's behavior as a party to the litigation;

(4) the infringer's size and financial condition;

(5) the closeness of the case;

(6) the duration of the infringer's misconduct;

(7) remedial action by the infringer;

(8) the infringer's motivation for harm; and

(9) whether the infringer attempted to conceal its misconduct.

*Halo Elecs.*, 136 S. Ct. 1923 (2016); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992); *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959 (Fed. Cir. 2018).

**B. Validity of Asserted Patents**

***1) Issues to be Litigated***

17. Whether Philips has proven by clear and convincing evidence that the Asserted Claims of the '935 and '271 patents are entitled to a priority date of September 30, 2004 and August 11, 2003, respectively.

18. Whether Quectel has proved by clear and convincing evidence that that claims 1-3, 9-11, and 17 of the '935 Patent are invalid as anticipated.

19. Whether Quectel has proved by clear and convincing evidence that 1-3, 9-11, and 17 of the '935 Patent are invalid as obvious.

20. Whether Quectel has proved by clear and convincing evidence that claims 1-8 of the '271 Patent are invalid as obvious.

21. Whether Quectel has proved by clear and convincing evidence that one or more of the claims of the Asserted Patents are invalid for lack of written description under 35 U.S.C. § 112.

22. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the '935 patent are invalid for patent ineligibility under 35 U.S.C. § 101.

23. Whether Quectel proved by clear and convincing evidence that one or more of the Asserted Claims of the ’271 patent are invalid for patent ineligibility under 35 U.S.C. § 101.

**2) *Legal Principles***

*24.* Patent invalidity is a complete defense to a charge of infringement. *See, e.g.*, *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) (“[A] judgment of invalidity necessarily moots the issue of infringement . . . .”); *Viskase Corp. v. Am. Nat’l Can Co.*, 261 F.3d 1316, 1323 (Fed. Cir. 2001) (“[A]n invalid claim can not be infringed . . . .”); *Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1335 (Fed. Cir. 1998) (“[I]nvalidity operates as a complete defense to infringement for any product, forever . . . .”).

25. Under 35 U.S.C. § 282, issued patents are presumed valid, and Quectel must rebut that presumption with clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P’ship*, 564 U.S. 91, 99–107 (2011); *KSR Int’l Co. v. Teleflex Inc.*, 550 U.S. 398, 412 (2007) (“By direction of 35 U.S.C. § 282, an issued patent is presumed valid.”).

26. To satisfy the clear-and-convincing standard, a party asserting invalidity must produce evidence sufficient to establish in “in the mind of the trier of fact an abiding conviction that the truth of a factual contention is ‘highly probable.’” *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (citation

omitted). The Federal Circuit has further described this burden as requiring "well-nigh irrefragable" proof — evidence that "'cannot be refuted or disproved; incontrovertible, incontestable, indisputable, irrefutable, undeniable.'" *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239–40 (Fed. Cir. 2002) (quoting Oxford English Dictionary 93 (2d ed. 1991)).

27. The clear-and-convincing standard governs all invalidity challenges, and it applies with particular force when the U.S. Patent and Trademark Office ("USPTO") previously considered the prior art or other evidence at issue. *See Microsoft*, 564 U.S. at 109. Thus, when an invalidity challenge relies on references that were before the USPTO during prosecution, overcoming the presumption of validity is "especially difficult." *Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004) (citation omitted). In that circumstance, the challenger also bears "the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (citation omitted).

28. "[T]here is no heightened burden of proof when a reference was previously considered by the PTO, and no lowered burden of proof if a defendant

raises a new reference or argument during litigation." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) (citing *i4i*, 564 U.S. at 108-09). However, "new evidence supporting an invalidity defense may carry more weight in an infringement action than evidence previously considered by the PTO." *i4i*, 564 U.S. at 110 (internal quotation and citation omitted). "Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force . . . [a]nd, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain." *Id.* at 111.

i. Priority Date

29. Philips bears the burden to establish its patents are entitled to their priority claims to earlier applications. *See, e.g.*, *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1375-76 (Fed. Cir. 2016) ("a patent challenger has the burden of producing evidence to support a conclusion of unpatentability under § 102 or § 103, but a patentee bears the burden of establishing that its claimed invention is entitled to an earlier priority date than an asserted prior art reference" ); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008) (once an accused infringer makes a prima facie showing of invalidity based on the patent application date, the burden is on the patent owner to show it is entitled to an earlier priority date). "Patent claims 'are not entitled to an earlier priority date

merely because the patentee claims priority.'" *Nat. Alts. Int'l, Inc. v. Iancu*, 904 F.3d 1375, 1380 (Fed. Cir. 2018) (quoting *In re NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2011)).

30. A patent's effective filing date is the filing date of the patent application or a priority application if the patentee establishes entitlement to an earlier filing date. *See* 35 U.S.C. § 100(i)(1) ("(1) The term 'effective filing date' for a claimed invention in a patent or application for patent means— (A) if subparagraph (B) does not apply, the actual filing date of the patent or the application for the patent containing a claim to the invention; or (B) the filing date of the earliest application for which the patent or application is entitled, as to such invention, to a right of priority under section 119, 365(a), 365(b), 386(a), or 386(b) or to the benefit of an earlier filing date under section 120, 121, 365(c), or 386(c).").

ii. Anticipation

31. To establish that a patent claim is invalid for anticipation, the accused infringer must prove by clear and convincing evidence that a single prior art reference discloses each and every element of the claimed invention. *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 796 (Fed. Cir. 2010).

32. Anticipation requires that the four corners of a single prior art reference disclose every element of the claimed invention, either expressly or

inherently, in a manner that would enable a person of ordinary skill in the art to practice the invention without undue experimentation. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

33. In assessing anticipation, the knowledge of a person of ordinary skill in the art cannot be used to supply a missing claim limitation. *See Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 799 F. App'x 838, 845 (Fed. Cir. 2020) ("[W]e have previously rejected the proposition that 'a reference missing a limitation can anticipate a claim if a skilled artisan viewing the reference would "at once envisage" the missing limitation.'" (citing *Nidec Motor Corp. v. Zhongshan Bd. Queen Motor Co. Ltd.*, 851 F.3d 1270, 1274–75 (Fed. Cir. 2017); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 146 F. Supp. 3d 595, 609 (D. Del. 2015) (rejecting as "legally flawed" an "anticipation by combination" theory under which a POSA would read prior art "in combination with the artisan's own knowledge of the prior art," because "anticipation requires that each limitation of a claim must be found in a single reference"); *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed. Cir. 1984) (holding that although a reference need not use the precise language of the claims, neither the knowledge of a POSA nor disclosure in another reference can supply what is absent from the allegedly anticipating reference).

34. If a prior art reference is overly broad or generic, it does not provide the specificity required to anticipate a claimed invention. Anticipation demands more than disclosure of the individual elements of a claim in isolation. *See Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1458–59 (Fed. Cir. 1984) (reversing decision that treated the prior art as a "mere catalogs of separate parts."). Rather, because the touchstone of anticipation is prior invention, the prior art reference must disclose within its four corners not only all elements of the claim, but also those elements "arranged as in the claim." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) (citation omitted).

iii. Obviousness

35. Under 35 U.S.C. § 103, a claim is invalid for obviousness only if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

36. The accused infringer must demonstrate, on a claim-by-claim basis, that the claimed invention would have been obvious to a person of ordinary skill in the art as of the filing date of the original application. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358–59 (Fed. Cir. 2017).

37. A claim is rendered obvious where the differences between the prior art and the claimed invention are such that the invention as a whole would have been apparent to a skilled artisan before the effective filing date. 35 U.S.C. § 103; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. at 406. This analysis demands proof that a person of ordinary skill would have been motivated to combine the relevant prior art teachings to arrive at the claimed invention and would have possessed a reasonable expectation of success in doing so. *See Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367–68 (Fed. Cir. 2016).

38. Critically, the inquiry is not merely whether a skilled artisan could have combined the references, but whether there existed sufficient motivation to do so. *Adidas AG v. Nike Inc.*, 963 F.3d 1355, 1359 (Fed. Cir. 2020). Additionally, objective indicia of non-obviousness — including commercial success, long-felt but unresolved need, the failure of others, skepticism among experts, industry praise, teaching away, and evidence of copying — may serve as probative evidence that the claimed invention was not obvious. *See KSR*, 550 U.S. at 406–07.

iv. Written Description

39. Patents are presumed valid, and the accused infringer must prove inadequate written description by clear and convincing evidence. Section 112 of the Patent Act requires that a patent specification both describe the claimed invention and enable a person skilled in the relevant art to make and use it. 35

U.S.C. § 112. These two obligations are referred to as the written description requirement and the enablement requirement.

40. Regarding written description, there is no mandate that the disclosure includes examples or an actual reduction to practice. *Alcon Rsch. Ltd. v. Barr Lab'ys., Inc.*, 745 F.3d 1180, 1191 (Fed. Cir. 2014). Instead, the pertinent question is whether the specification describes the invention in enough detail to convey to a person of ordinary skill that the inventor had possession of the claimed subject matter at the time the application was filed. *Id.* at 1190–91. The written description standard does not require that the inventor demonstrate a physical embodiment or reduction to practice of the invention. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010).

v. Patent Eligibility

41. In evaluating whether a claimed invention qualifies for patent protection under 35 U.S.C. § 101, the court first examines the claimed advance to determine whether the claims are directed to an abstract idea. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). Claims directed to concrete technological improvements, rather than abstract concepts, satisfy the eligibility threshold. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313–14 (Fed. Cir. 2016). Patents that recite a specific, particular arrangement of components are patent eligible. *Thales Visionix Inc. v. United States*, 850 F.3d

1343, 1348–49 (Fed. Cir. 2017); *see also id. Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–39 (Fed. Cir. 2016).

42. Even where claims implicate abstract ideas, patent eligibility is preserved if the claims employ those underlying ideas through an inventive arrangement of conventional and novel components. *See BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

### C. Patent Damages

#### 1) *Issues to be Litigated*

43. If any claim is found both valid and infringed, whether Philips proved by a preponderance of the evidence the dollar amount that will compensate Philips for Quectel's infringement of the Asserted Patents.

44. If infringement of any valid claim is found and willful infringement is found, whether Philips proved that it is entitled to enhanced damages for Quectel's willful infringement under 35 U.S.C. §284, and if so, the amount of enhancement.

45. Whether Philips proved that this case is exceptional under 35 U.S.C. § 285, and whether Philips is entitled to an award of attorneys' fees.

46. Whether Philips is entitled to an award of pre-judgment and post-judgment interest and, if so, the dollar amount of such award.

47. Whether Philips or Quectel proved that it is entitled to costs and, if so, the dollar amount of such costs.

**2) *Legal Principles***

i. Reasonable Royalty

48. Where infringement is established, the patentee is entitled to damages adequate to compensate for the infringement, which in no event may be less than a reasonable royalty. 35 U.S.C. § 284. The patentee must prove the amount of damages by a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Lab'ys. Corp.*, 926 F.2d 1161, 1163–64 (Fed. Cir. 1991). Although mathematical precision is not required, the patentee must establish its damages with reasonable certainty. *See Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, 2015 WL 307572, at *1 (D. Del. Jan 23, 2015). The purpose of compensatory damages is to make the patent owner "whole" or "fully compensate" them for the infringement, such that the patent owner is restored to the financial position they would have been in had the infringement not occurred. *Rite-Hite Corp. v. Kelley Co.*, 46 F.3d 1538, 1545, 1547 (Fed. Cir. 1995) (en banc).

49. A reasonable royalty is measured by the royalty rate to which a willing licensor and willing licensee would have agreed in a hypothetical negotiation occurring just before infringement commenced. The royalty may be determined by reference to the outcome of such a hypothetical negotiation, *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012), guided by the fifteen factors articulated in

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The purpose of the hypothetical negotiation framework is to reconstruct, as faithfully as possible, the ex ante licensing scenario and the agreement the parties would have reached. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Where comparable licenses are relied upon to inform the royalty analysis, questions of comparability generally go to the sufficiency of the evidence rather than its admissibility. *Bio-Rad Lab'ys., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373 (Fed. Cir. 2020).

ii. Interest and Costs

50. A prevailing patentee is entitled to interest and costs as determined by the Court. *See* 35 U.S.C. § 284. An award of prejudgment interest is appropriate in the typical patent case in order to provide the patentee with full compensation for the infringement. *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1373–74 (Fed. Cir. 2022) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654–55 (1983)). Indeed, the award of prejudgment interest is the rule rather than the exception. *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012). A prevailing plaintiff is likewise entitled to post-judgment interest. *See* 28 U.S.C. § 1961.

iii. Enhanced Damages

51. The Court has discretion under 35 U.S.C. § 284 to increase the damages award by up to three times the amount found. The party seeking enhanced damages must carry its burden by a preponderance of the evidence. *Arctic Cat*, 876 F.3d at 1370–71.

iv. Exceptional Case

52. Under 35 U.S.C. § 285, the Court may award reasonable attorney fees to the prevailing party in exceptional cases. A case qualifies as exceptional when it stands out from others based on the substantive strength of a party's litigation position — considering both the applicable law and the underlying facts — or the unreasonable manner in which the litigation was conducted. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The prevailing party bears the burden of establishing entitlement to fees by a preponderance of the evidence. *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 68 F.4th 1285, 1291 (Fed. Cir. 2023).

## D. Breach of FRAND

### 1) *Issues to be Litigated*

53. Whether Quectel proved that Philips breached its contract with ETSI by breaching its FRAND obligations.

54. Whether, under French law, Quectel has standing to assert a breach of contract action against Philips as a third party beneficiary of Philips's contract with ETSI.[1]

**2) *Legal Principles*[2]**

55. Clause 12 of the ETSI IPR Policy states "[t]he POLICY shall be governed by the laws of France." EUR. TELECOMM. STANDARDS INST., ETSI DIRECTIVES, ANNEX 6: ETSI INTELLECTUAL PROPERTY RIGHTS POLICY 53 (2025) (hereinafter "ETSI IPR POLICY") (KPNV0256455-738 at KPNV0256507). Claims for breaches of the ETSI IPR Policy are contractual and, therefore, governed by the laws of France. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484-85 (5th Cir. 2021) (holding that French law applied to claims of breach of FRAND duties and breach of duty to negotiate in good faith); Libchaber Report, ¶¶ 22-25.

56. Clause 4.1 of the ETSI's IPR Policy governs the disclosure of IPRs that are or may be essential to a standard and reads:

---

[1] Under Rule 44.1, this adjudication should be made by the Court and not the jury. Quectel's understanding is that the parties are in agreement regarding certain of Quectel's breach assertions, but disagree that Quectel may assert a breach of ETSI contract claim based on Philips's untimely disclosure of the Asserted Patents as standard essential to ETSI.

[2] Because the claim is under French law, the legal principles regarding French contract law, including those set forth below, will be further provided by Professor Remy Libchaber, including as set forth in his expert reports. Mr. Fred Rodermund, an expert on ETSI, will provide further principles regarding the interpretation of ETSI clauses and requires, including as set forth in his expert reports.

> [E]ach MEMBER shall use its reasonable endeavours, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion. In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

ETSI IPR POLICY (MARCH 29, 2007) (KPNV0048866 at 48898-48903).

57. Clause 6.1 of the ETSI IPR Policy governs the licensing of essential IPRs and reads:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such IPR . . .

*Id.*

58. Philips submitted IPR Declarations to ETSI declaring the Asserted Patents as standard essential to certain cellular communication standards, which form a binding contract under French law between Philips and ETSI. Libchaber Report, ¶ 29; *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484-485 (5th Cir. 2021) ("[An implementer's] FRAND commitment is part of an agreement that it made with ETSI."). When an ETSI member signs and submits an ETSI IPR Declaration form disclosing its IPR as essential, it expresses its consent

to ETSI's requirements for the patent(s) declared essential. Libchaber Report, ¶ 29.

i. Third-Party Beneficiaries to a Contract

59. A third party may enforce the FRAND undertaking given to ETSI (or to its Director-General) under the French contractual mechanism known as a *stipulation for the benefit of a third party (stipulation pour autrui)*. Libchaber Report, ¶ 10.

60. The existence of third party rights is confirmed by the ETSI IPR Guide. *See* Guide on Intellectual Property Rights (IPRs), Sep. 19, 2013 (KPNV0047792); *see also* Guide on Intellectual Property Rights (IPRs), Nov. 27, 2008 (QTL-1707-1710_0031839); ETSI DIRECTIVES, Nov. 30, 2020 (KPNV0047792).

61. An implementer is "a third-party beneficiary to [a patent holder's] RAND commitments" and can sue "for breach of its obligation to offer RAND licenses to its patents in good faith." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1030 (9th Cir. 2015).

62. This type of contract was set forth in Article 1121 of the old French Civil Code and is now provided by Article 1205 of the new French Civil Code, pursuant to which: "One can stipulate for others. One of the contracting parties, the stipulator, may make the other, the promisor, promise to perform a service for the

benefit of a third party, the beneficiary. The beneficiary may be unknown, but it must be precisely designated, or it shall be easily identifiable upon execution of the promise." Article 1205, New French Civil Code; Libchaber Report, ¶ 37. In a *stipulation pour autrui* adapted to the ETSI context, the promisor undertakes, as between itself and the stipulator, to confer rights on one or more third-party beneficiaries. Libchaber Report, ¶ 37. Applied to ETSI IPR declarations, ETSI is the stipulator and requires the SEP owner (the promisor) to make FRAND licenses available to any potential standards implementer (the beneficiaries). Libchaber Report, ¶ 37.

63. The principle of privity of contracts under French law does not bar ETSI members and third parties from asserting harm arising from breach of Clause 4.1. Libchaber Reply Report, ¶¶ 4-6, 13-27 (analyzing French statutory authority and legal precedent to explain why a third party may seek damages for breach of Clause 4.1 of the ETSI IPR Policy).

ii. <u>IPR Disclosure Obligations</u>

64. Under French law, a term can only be interpreted if it is ambiguous: not susceptible to a single meaning or it conflicts with one or more terms in the same contract. J. Boré & L. Boré, *La Cassation en matière civile* (5th edn, Dalloz 2015) ¶ 79-151; Libchaber Report, ¶ 48-52.

65. The wording of Clause 4.1 is clear and precise and would not require contractual interpretation under French law. Libchaber Report, ¶¶ 48-52; Libchaber Reply Report, ¶¶ 28-105. Identifying whether or not Philips's IPR disclosures were timely requires consideration of the totality of the facts and circumstances and the goals of the ETSI IPR Policy. Libchaber Report, ¶ 53. Since the declaration of SEP can have a significant influence on concrete standardization process, it is clear that early disclosure is preferable to late disclosure: the sooner, the better. *Id.* Clause 4.1 explains members shall timely disclose SEPs "on a bona fide basis," meaning that the disclosure must be made in good faith. *Id.*

66. According to ETSI Clause 4.1, where a member participates in the development of a standard, there is an obligation to disclose Essential IPR "during" the development of that standard, which requires disclosure before the development of that standard has concluded. Libchaber Report, ¶ 54; Libchaber Reply Report, ¶¶ 83-97. The second part of Clause 4.1 requires a member "submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION" to disclose any IPR which might be Essential "if that proposal is adopted." Libchaber Report, ¶ 55. This second part of Clause 4.1 indicates that there is an obligation to disclose when "submitting" such a proposal, which must mean at the time when the submission is made or, if that is not possible, as soon as

practicable after, and, in any case, before the proposal is adopted. *Id.* The ETSI IPR Policy's emphasis on disclosure shows that intentional delays and evasive behavior is not acceptable, regardless of whether it may be commonplace. *Id.*, ¶ 56; *see also* Libchaber Reply Report, ¶¶ 28-105. The standards essential patent owner bears the burden to demonstrate it has used reasonable endeavors to disclose its patents in a timely fashion. Libchaber Reply Report, ¶¶ 91-97.

67. "ETSI's intellectual property rights policy states that the disclosure requirement attaches to a member 'submitting a technical proposal' if that party has intellectual property that 'might' be essential 'if that proposal is adopted.' … [A]n ETSI member's duty to disclose a patent application on particular technology attaches at the time of the proposal and is not contingent on ETSI ultimately deciding to include that technology in an ETSI standard." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1367 (Fed. Cir. 2018).

68. If the working group is aware of standard essential patent(s) or particular IPRs, it might adopt other technical alternatives to avoid encumbering the standard with IPRs. Libchaber Report, ¶ 56. The necessity of an early disclosure is reinforced by the ETSI's IPR Guide. *See* ETSI Guide on Intellectual Property Rights (IPRs), Nov. 27, 2008 (QTL-1707-1710_0031839); Libchaber Report, ¶¶ 57-58.

69. Under French law, civil liability (*responsabilité civile*) requires three elements: (1) breach of a legal rule; (2) harm to the victim's legally protected interests; and (3) a causal link showing that the harm directly results from the breach. Libchaber Report, ¶ 59.

70. All three elements are present in the case of late disclosure—i.e., where a patent holder strategically or deliberately delays disclosure of SEPs to ETSI. *Id.*, ¶ 60.

71. First, there is a breach of the ETSI IPR Policy because Clause 4.1 is violated when an SEP owner fails to disclose its essential patents in a timely manner, or deliberately delays disclosure to increase its profit at the expense of the standard's effectiveness. According to Article 1103 of the French Civil Code, "Contracts that are legally formed are as binding as the law on those who have entered into them." Libchaber Report, ¶ 61. The breach of Clause 4.1 is not only a clear violation of the contract: it is also a breach of good faith under the ETSI Association Agreement, which, like any French contract, requires constant good faith on the part of the parties, at all stages of its existence, following Article 1104 of the Civil Code. Libchaber Report, ¶ 62.

72. Second, there is a harm for the implementer of the standard who would have been able to use an alternative technical proposal, not encumbered by the patent-holder's rights, that was not adopted by the standards working group

because the standard-encumbering SEPs were not timely disclosed. Libchaber Report, ¶ 63; Libchaber Reply Report, ¶¶ 106-115.

73. Third, there is an obvious causal relationship showing that the damage is a direct result of the breach. The intentional delay in disclosing an essential patent led to its inclusion in a standard, which might otherwise have been avoided. Implementers may thus owe royalties to license patents that would not have been made standard essential had they been timely disclosed. Libchaber Report, ¶ 64.

74. The SEP owner who fails to disclose his patents in a timely manner is therefore liable for breach of contract. Libchaber Report, ¶¶ 66-68; *see also generally* Libchaber Reply Report.

iii. FRAND License Obligations

75. Clause 6.1 of the ETSI IPR Policy requires that any member, which declares its IPR as essential, agrees that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ("FRAND") terms and conditions. ETSI IPR POLICY at 49 (KPNV0256455-738 at KPNV0256503). Failure to engage in good faith negotiations and to offer FRAND terms for standard essential patents constitutes a breach of Philips's contract with ETSI. ETSI IPR Policy, § 6.1; Libchaber Report, ¶¶ 107-11. The specific FRAND terms are to be determined by the contracting parties, not by ETSI. ETSI GUIDE ON IPRS at 75 (KPNV0256455-738 at KPNV0256529).

76. The ETSI IPR Policy constitutes a commitment by SEP owners to open license negotiations in good faith. Libchaber Report, ¶ 106. Therefore, any conduct indicative of bad faith (further discussed below) is indicative of a breach of the SEP owner's FRAND obligations under French law. *Id.*

77. A breach of FRAND obligations is properly brought as an action for breach of contract. *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1030 (9th Cir. 2015) (addressing whether "Motorola had indeed breached its RAND good faith and fair dealing obligations in its dealings with Microsoft" as a "breach of contract" action for the jury).

iv. Monetary Damages as an Element of a Breach of Contract Claim

78. A possible remedy for breach of contract under French law is monetary damages. C. civ. art. 1231-1. The compensation claimed should be equal to the amount of the loss. Libchaber Report, ¶ 69. If Quectel successfully demonstrates that Philips's breached its FRAND obligations, Quectel can recoup costs incurred by the negotiation, including legal costs. Libchaber Report, ¶ 111.

**E. Breach of Obligation to Negotiate in Good Faith**

***1) Issues to be Litigated***

79. Whether Philips breached its duty, under French law, to negotiate with Quectel in good faith.

**2) *Legal Principles*[3]**

80. Clause 12 of the ETSI IPR Policy states "[t]he POLICY shall be governed by the laws of France." ETSI IPR POLICY at 53 (KPNV0256455 at KPNV0256507). Claims for breaches of the ETSI IPR Policy are contractual and, therefore, governed by the laws of France. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484-85 (5th Cir. 2021) (collecting cases and holding that French law applied to claims of breach of FRAND duties and breach of duty to negotiate in good faith).

81. Under the French new civil code Article 1104, contract negotiations must be negotiated in good faith. *See* C. civ. art. 1104. The same obligation applies to a party which makes an undertaking to negotiate, such as an essential IPR declaration, and to a party benefiting from said undertaking. *Id.* at 1112; *see generally* Libchaber Report.

82. The duty to negotiate in good faith requires a duty of loyalty and a duty of cooperation. Libchaber Report, ¶¶ 72-74. The duty of loyalty in the case of an ETSI undertaking requires a SEP owner to be faithful to its contractual commitments and to perform the contract truthfully, transparently, and vigilantly.

---

[3] Because the claim is under French law, the legal principles, including those set forth below, will be further provided by Professor Jean-Sébastien Borghetti, including as set forth in his expert reports. *See* Borghetti Report, ¶¶ 24-26, ¶¶ 166-181.

*Id.*, ¶ 73. The duty of cooperation requires a party to be considerate of the other party's interests and may require that a party inform, advise, or warn the other party of relevant information. *Id.*, ¶ 74.

83. "Good faith is always presumed, and it is up to the party alleging bad faith to prove it." C. civ. art. 2274; Libchaber Report, ¶ 79. The obligation to act in good faith begins with contract negotiations. C. civ. art. 1104, 1112; Libchaber Report, ¶ 80.

84. To comply with the duty to cooperate under French law, a SEP owner must take into consideration the implementer's needs without trying to impose licenses on useless patents. Libchaber Report, ¶ 84. A totally excessive offer during a FRAND negotiation is not considered complying with good faith. *Id.*, ¶ 85. The conduct of the negotiations must be examined to determine whether the parties acted in good faith. *Id.*, ¶ 86. Using legal proceedings to apply pressure to force an implementer to accept a contract can be indicative of bad faith. *Id.*, ¶¶ 88-89; C. civ. art. 1140.

85. Under French law, whether conduct is indicative of good faith or bad faith is assessed based on the totality of the circumstances. Libchaber Report, ¶ 91; *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 483 (Fed. Cir. 2021) ("[w]hether or not a license is FRAND will depend on the totality of the particular facts and circumstances existing during the negotiations and leading up

to the license"); *Ericsson Inc. v. Apple Inc.*, No. 2:21-cv-00376, Dkt. 291 at 2-3 (E.D. Tex. Nov. 29, 2022) (considering "the totality of Ericsson's conduct in negotiation for SEP licenses under FRAND terms"). Initiating litigation during a FRAND negotiation, particularly if brought based on external considerations unrelated to the negotiation, can be indicative of bad faith. Libchaber Report, ¶¶ 95-97. Pressuring customers of a standards implementer can be indicative of bad faith. *Id.* Improperly seeking an injunction, concealment of relevant information, and failing to adjust license offers in light of changed circumstances can all indicate failure to comply with the duty to negotiate in good faith. *Id.*, ¶¶ 98-106; *see also Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1046 (9th Cir. 2015) ("Microsoft offered significant evidence upon which the jury could apply this standard and infer that the injunctive actions violated Motorola's good faith and fair dealing obligations.").

86. A possible remedy for breach of the duty to negotiate in good faith under French law is monetary damages. C. civ. art. 1231-1. If Quectel successfully demonstrates that Philips's breached its duty to negotiate in good faith, Quectel can recoup costs incurred by the negotiation, including legal costs. Libchaber, ¶ 111.

## F. WAIVER

### 1) *Issues to be Litigated*

87. Whether Philips's claims for infringement of the Asserted Patents are barred due to the doctrine of waiver.

### 2) *Legal Principles*

88. Waiver is an equitable defense to be decided by the Court. *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019 (Fed. Cir. 2008).

89. Under the defense of waiver, a party may "impliedly waive[ ] its right to assert infringement claims" against specified products. *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011).

90. "A participant in a standards-setting organization may waive its right to assert infringement claims against products that practice the standard." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1365 (Fed. Cir. 2018) (citing *Hynix*, 645 F.3d at 1347-1348; *Qualcomm*, 548 F.3d at 1020-1024).

91. To prevail on the defense of waiver, a party must demonstrate by "clear and convincing evidence either that [the patentee], with full knowledge of the material facts, intentionally relinquished its rights to enforce the [asserted] patents or that its conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Qualcomm*,

548 F.3d at 1020 (internal punctuation and emphasis omitted*); see also Hynix*, 645 F.3d at 1348 (same).

92. In the context of standards-setting organizations like the European Telecommunications Standards Institute ("ETSI"), the "court in Hynix made clear that '[s]uch conduct can be shown where (1) the patentee had a duty of disclosure to the standard setting organization, and (2) the patentee breached that duty.'" *Core Wireless*, 899 F.3d at 1365 (quoting *Hynix*, 645 F.3d at 1348).

93. Additionally, "there is no requirement under the implied waiver doctrine that a third party must interpret the patentee's conduct as constituting a waiver of its rights to enforce the patent; such analysis is more relevant to equitable estoppel." *Core Wireless*, 899 F.3d at 1367.

94. Upon a finding of waiver, the Court must determine the appropriate remedy, "as the task of applying an equitable defense is committed to the district court's discretion." *Core Wireless*, 899 F.3d at 1369 (citing *Meredith v. Winter Haven*, 320 U.S. 228, 235 (1943) ("An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity."); *Qualcomm*, 548 F.3d at 1019). "In the … case of implied waiver … [the] equitable considerations require either a showing of prejudice or egregious misconduct sufficient to justify the sanction of unenforceability of the patent at issue." *Core Wireless*, 899 F.3d at 1368; *see also*

*Wyeth LLC v. AstraZeneca Pharms. LP*, No. 21 C 1338, 2024 WL 3665801, at *8 (D. Del. Aug. 6, 2024).

## G. EQUITABLE ESTOPPEL

### 3) *Issues to be Litigated*

95. Whether Philips's claims for infringement of the Asserted Patents are barred due to the doctrine of equitable estoppel.

### 4) *Legal Principles*

96. Equitable estoppel is a defense "addressed to the sound discretion of the trial court." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992).

97. A patentee's suit may be barred by equitable estoppel. *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001).

98. "In order to establish equitable estoppel, a defendant must show: (1) the patentee, through misleading words, conduct, or silence, led the alleged infringer to reasonably infer that the patentee did not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *McKesson Info. Sols. LLC v. Trizetto Grp., Inc.*, 426 F. Supp. 2d 203, 210 (D. Del. 2006).

99. "[M]isleading conduct occurs where an accused infringer can reasonably infer from a patent owner's conduct or silence that the patent owner has known of the allegedly infringing activities for some time without having asserted its rights." *Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*, 2025 WL 1617966, at *3 (Fed. Cir. June 9, 2025).

100. "The required misleading conduct may be evidenced through the patentee's inaction." *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 503 F. Supp. 3d 156, 171 (D. Del. 2020), aff'd in part, vacated in part on unrelated grounds, 30 F.4th 1109 (Fed. Cir. 2022).

101. A party's silence can be misleading where "there was a clear duty to speak" or where "a patent owner's 'continued silence' reinforces an accused infringer's inference that the patent owner has acquiesced to the infringer's conduct." *Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung e.V.*, 2025 WL 1617966, at *3.

102. "[A] change of economic position or loss of evidence" may demonstrate material prejudice. *McKesson Info. Sols. LLC*, 426 F. Supp. 2d at 211.

103. For example, a party's "development of [a line of] business, in reliance on [the patentee's] silence . . . represents a significant change in economic position and constitutes material prejudice sufficient to support equitable estoppel." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1312 (Fed.

Cir. 2010). The accused infringer "need not show a total loss of value in order to show material prejudice." *Id.* "Prejudice may be shown by a change of economic position flowing from actions taken or not taken by the patentee." *Id.*

104. In the context of standards-setting organizations like the European Telecommunications Standards Institute ("ETSI"), a defense of "equitable estoppel requires a duty of disclosure, a breach of that duty, and misleading conduct that 'led the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer'." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1367 (Fed. Cir. 2018) (citing *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011) (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)); *see also Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*, 255 F. Supp. 3d 279, 289 (D. Mass. 2017) ("[I]f there is a duty to disclose and the patent owner breaches that duty, there may be an inference of reliance."); *see also Barnes & Noble v. LSI Corp.*, 849 F. Supp. 2d 925, 939–40 (N.D. Cal. 2012) ("[I]t is reasonable to infer reliance by the IEEE based on the IEEE's policies requiring disclosure and requiring it to obtain assurances regarding any patents relevant to proposed standards[.]").

105. Additionally, a standard implementer's substantial reliance can be found in the context of standards-setting organizations "because once the industry

standard was established, all members of the industry had to conform their purchases to that standard." *Luca Aerospace, Ltd. v. Unison Indus., L.P.*, 899 F. Supp. 1268, 1294 (D. Del. 1995) (collecting cases). Thus, for standards implementers "the three elements [of equitable estoppel] identified by … the *Hynix* Court can be subsumed in the reliance analysis, i.e., if there is a duty to disclose and the patent owner breaches that duty, there may be an inference of reliance." *Momenta Pharms.*, 255 F. Supp. 3d at 289; *see also TruePosition Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 466 (D. Del. 2007).

# EXHIBIT 6

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0001 | Baker Ex.05 | LinkedIn for Matthew Baker | N/A | N/A | |
| PTX-0002 | Eleveld Ex. 03 | Philips' First Amended Rule 26(a) Initial Disclosures for 20-cv-1707 | 2026/02/12 | N/A | |
| PTX-0003 | Eleveld Ex. 10 | Final Initial Determination, from ITC Investigation No. 337-TA-1240 (Public Version) | 2022/04/01 | ITC-RECORD0115276 - ITC-RECORD0115599 | |
| PTX-0004 | Eleveld Ex. 11 | Complaint (Dkt. 1) for 20-cv-1707 | 2020/12/17 | N/A | NE |
| PTX-0005 | Eleveld Ex. 15 | Notice of a Commission Determination To Review in Part and, On Review, Affirm A Final Initial Determination Riding No Violation of Section 337; Termination of Investigation, from ITC Investigation No. 337-TA-1240 | 2022/07/06 | ITC-RECORD0115764 - ITC-RECORD0115767 | |
| PTX-0006 | Hu, Jean Ex. 05 | Quectel's Second Supplemental Response To Philips's First Set of Interrogatories, 20-cv-1707 | 2026/02/13 | N/A | |
| PTX-0007 | Hu, Jean Ex. 06; Zhang, Ivan Ex. 07; Zhang, Lynn Ex. 14 | Quectel Presenation "Quectel Wireless Solutions Company & Product Overview" | N/A | QTL-1707-1710_0008600 - QTL-1707-1710_0008623 | |
| PTX-0008 | Hu, Jean Ex. 07 | Quectel Specification Sheet for EM061 K-GL LTE-A Cat 6 M.2 Module | 2025/00/00 | QTL-1707-1710_0077053 - QTL-1707-1710_0077054 | |
| PTX-0009 | Hu, Jean Ex. 08; Zhang, Lynn Ex. 05 | Quectel Road Map "The Leading Global Supplier of loT&M2M Modules | 2021/00/00 | QTL-1707-1710_0030631 - QTL-1707-1710_0030666 | |
| PTX-0010 | Hu, Jean Ex. 09; Zhang, Ivan Ex. 06 | Quectel Presenation "Quectel Cellular loT Product and Solution Overview" | N/A | QTL-1707-1710_0077843 - QTL-1707-1710_0077934 | |
| PTX-0011 | Hu, Jean Ex. 10 | Quectel Presenation "Quectel 5G & LTE-A Product and Solution Overview" | N/A | QTL-1707-1710_0077686 - QTL-1707-1710_0077754 | |
| PTX-0012 | Hu, Jean Ex. 11 | PTCRB Program Management Document Process Overview of PTCRB Certification Program and IMEI Control, Version 4.1 | 2025/12/00 | N/A | 802/901 |
| PTX-0013 | Hu, Jean Ex. 12 | PTCRB Get Certified, from chrome-extension://mcbpblocgmgfnpjjppndjkmgjaogfceg/fsCaptured.html?id=61 | 2026/02/19 | N/A | 802/901 |
| PTX-0014 | Hu, Jean Ex. 13 | PTCRB Get Certified, from https://www.ptcrb.com/get-certified/#process | 2026/02/19 | N/A | 802/901 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0015 | Hu, Jean Ex. 14 | PTCRB Update ECO Certification Request | N/A | QTL-1707-1710_0150101 - QTL-1707-1710_0150106 | 802/901 |
| PTX-0016 | Hu, Jean Ex. 15 | Sporton Lab Initial Certification Test Report of Quectel's SC20-A | 2018/04/25 | QTL-1707-1710_0029132 - QTL-1707-1710_0029784 | 802/901 |
| PTX-0017 | Hu, Jean Ex. 16 | Sporton Lab ECO Certification Test Report of Quectel's EM12-G | 2020/10/29 | QTL-1707-1710_0145270 - QTL-1707-1710_0145535 | 802/901 |
| PTX-0018 | Hu, Jean Ex. 17 | ritt layers InterLab Final Report on BC66 HW: R.1., SW: BC66NBR010A07 (SVN: 07) | 2019/01/10 | QTL-1707-1710_0141561 - QTL-1707-1710_0141581 | 802/901 |
| PTX-0019 | Hu, Jean Ex. 18 | PTCRB Certified Device Detail | N/A | QTL-1707-1710_0025783 | 802/901 |
| PTX-0020 | Hu, Jean Ex. 19; Zhang, Lynn Ex. 13 | Quectel Presentation "Quectel Wireless Solutions Company Overview" | N/A | QTL-1707-1710_0078045 - QTL-1707-1710_0078677 | |
| PTX-0021 | Hu, Jessica Ex. 03 | Email chain between Y. Feng, D. Shang, E. Nie, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/06/08 | ITC1240-0011371 - ITC1240-0011387 | |
| PTX-0022 | Hu, Jessica Ex. 04 | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th (CX-853) | 2018/03/13 | ITC-RECORD0032051 - ITC-RECORD0032543 | |
| PTX-0023 | Hu, Jessica Ex. 05 | Email chain between S. Pasquier, J. Hu and Y. Feng re Quectel_MACHINE TO MACHINE MODULE PATENT LICENSE AGREEMENT : Philips lump sum license proposal | 2023/08/22 | QTL-1707-1710_0000010 - QTL-1707-1710_0000013 | |
| PTX-0024 | Hu, Jessica Ex. 06 | Email chain between Y. Feng, S. Pasquier re Quectel_Philips loT Cellular Communication Patent License | 2021/03/31 | QTL-1707-1710_0014560 - QTL-1707-1710_0014562 | |
| PTX-0025 | Hu, Jessica Ex. 07 | Email chain between J. Hu, S. Pasquier and Y. Feng re Respond 09/20: Quectel_MACHINE TO MACHINE MODULE PATENT LICENSE AGREEMENT : Philips lump sum license proposal | 2023/09/21 | QTL-1707-1710_0000001 - QTL-1707-1710_0000009 | |
| PTX-0026 | Hu, Jessica Ex. 08 | Recommended Determination on Remedy and Bonding from ITC Investigation No. 337-TA-1240 (Public Version) | 2022/04/15 | N/A | 401/402/403/NE |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0027 | Hu, Jessica Ex. 09 | Email chain between S. Pasquier, J. Hu, N. Muhrer, Mr. Dembinksi and P. Qian | 2025/11/12 | KPNV0195562 - KPNV0196126 | |
| PTX-0028 | Hu, Jessica Ex. 10 | Sivel NB-loT/LTE-M Agreement Between Sisvel and Quectel Wireless Solutions | 2025/07/14 | QTL-1707-1710_0156352 - QTL-1707-1710_0156359 | |
| PTX-0029 | Hu, Jessica Ex. 13 | Email chain between C. Rubin, N. Muhrer, P. Fowler, P. Qian, J. Hu, J. Jin, EMT at Quectel, P. Sagi, A. Wang, J. Jia, D. Sun, S. Xiao, W. Fang, S. Lin, D. Wei, L.Yao, R. Wang, M. Wang, J. Xin, R. Wen, J. Wang, M. Markovic, NA-Territory Sales and T. Yang re Counterpoint mention Netprisma and Eagle in the report notes | 2025/01/03 | QTL-1707-1710_0106902 - QTL-1707-1710_0106906 | 401/402/403 |
| PTX-0030 | Scott Ex. 14 | 3GPP Portal Specification #: 36.321 | 2026/02/19 | N/A | |
| PTX-0031 | Scott Ex. 17 | Witness Statement of Kevin Scott for UK Matter | 2020/05/01 | PRSNA-ITC0520928 - PRSNA-ITC0520947 | |
| PTX-0032 | Wu Ex. 01 | Quectel Wireless Solutions Co., Ltd.'s First Amended Rule 25 Initial Disclosures for 20-cv-1707 | 2026/02/13 | N/A | 401/402/403/NE |
| PTX-0033 | Zhang, Ivan Ex. 02 | Letter to Foley & Lardner LLP from fish & Richardson P.C. re Plaintiff's Request for Qualcomm Baseband Processor Build IDs | 2026/01/29 | N/A | 104/MIL |
| PTX-0034 | Zhang, Ivan Ex. 03; Zhang, Lynn Ex. 04 | Quectel's Third Supplemental Response To Philips's First Set of Interrogatories for 20-cv-1707 | 2026/02/24 | N/A | 401/402/403 |
| PTX-0035 | Zhang, Lynn Ex. 11 | Spreadsheet re forecast US-2025 | N/A | QTL-1707-1710_0106900 | |
| PTX-0036 | Zhang, Lynn Ex. 12 | Spreadsheet re Smart modules FCT 18-26 | N/A | QTL-1707-1710_0106901 | |
| PTX-0037 | | File History for U.S. Patent No. 7,089,028 (Baker, et al.), August 8, 2006 | | KPNV0002576 - KPNV0003019 | 401/402/403 |
| PTX-0038 | | File History for U.S. Patent No. 8,195,216 (Baker, et al.) | 2024/09/25 | QTL-1707-1710_0100714 - QTL-1707-1710_0101295 | 401/402/403 |
| PTX-0039 | | File History for U.S. Patent No. 9,178,577 (Moulsley, et al.) | 2015/11/03 | QTL-1707-1710_0103610 - QTL-1707-1710_0104009 | 401/402/403 |
| PTX-0040 | | File History for U.S. Patent No. 9,635,599 (Moulsley, et al.) | 2017/04/25 | QTL-1707-1710_0105255 - QTL-1707-1710_0105712 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0041 | | Letter to CalAmp from Verizon Wireless re CalAmp Corp HMU3640LV Open Development Certification | 2019/10/11 | CAL00001258 - CAL00001260 | |
| PTX-0042 | | Letter to CalAmp from Verizon Wireless re CalAmp Corp LMU2630LC Open Development Certification | 2017/06/30 | CAL00005095 - CAL00005096 | |
| PTX-0043 | | Notice of Network Compatibility between AT&T Mobility LLC and CalAMP | 2017/04/25 | CAL00005099 - CAL00005102 | |
| PTX-0044 | | Letter to CalAmp from Verizon Wireless re CalAmp Corp QB300LV Open Development Certification | 2018/10/26 | CAL00005764 - CAL00005765 | |
| PTX-0045 | | Notice of Network Compatibility between AT&T Mobility LLC and CalAMP | 2018/10/26 | CAL00005766 - CAL00005768 | |
| PTX-0046 | | Notice of Network Compatibility between AT&T Mobility LLC and CalAMP | 2019/06/06 | CAL00006544 - CAL00006546 | |
| PTX-0047 | | CalAmp Presentation "World-Class Telematics, Connectivity. Analystics. Data in Motion" | 2020/03/00 | CAL00007213 - CAL00007215 | 401/402/403/802 |
| PTX-0048 | | CalAmp Presentation "CalAmp iOn for Commerical Fleets Stay On Track: Vehicle, Equipment, Tool and Cargo Management" | 2021/01/00 | CAL00007316 - CAL00007347 | 401/402/403/802 |
| PTX-0049 | | Lemley, et al., "Patent Holdup and Royalty Stackin," | 2007/00/00 | HUBER-0000192 - HUBER-0000250 | |
| PTX-0050 | | Blecker, et al., "An Experience-Based Look At The Licensing Practices That Drive The Cellular Communications Industry: Whole Portfolio/Whole Device Licensing," les Nouvelles, 231-243 | 2016/12/00 | HUBER-0000926 - HUBER-0000938 | |
| PTX-0051 | | Communication From the Commission Intellectual Property Rights and Standardization, COM(92) 445 Final | 1992/10/27 | HUBER-0002911 - HUBER-0002945 | |
| PTX-0052 | | Complainants' Petition For Commission To Review of Initial Determination on Violation of Section 337, form 337-TA-1240 | 2022/04/13 | ITC1240-0001720 - ITC1240-0001830 | 401/402/403/NE |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| | | TSG-RAN Working Group 2 meeting #63, Jeju, Korea, August 18-22, 2008, R2-083830, from ETSI MCC, Agenda Item 2, Document for Approval | 2008/07/07 | ITC1240-0006823 - ITC1240-0006970 | |
| PTX-0054 | | Respondent Quectel's Fifth Supplemental Responses To Complainants' First Set of Interrogatories (Nos. 2, 6, 8, 9, 13, 16-28, 36-38, 40) from ITC Investigation No. 337-TA-1240 | 2021/06/14 | ITC1240-0013211 - ITC1240-0013313 | |
| PTX-0055 | | 3GPP Portal Specification # 25.214 | N/A | ITC-RECORD-0004623 | |
| PTX-0056 | | 3GPP TS 23.107 V6.3.0 (2005-06) Technical Specification, 3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; Quality of Service (QoS) concept and architecture (Release 6) | 2005/06/00 | ITC-RECORD-0009028 - ITC-RECORD-0009067 | |
| PTX-0057 | | Sesia, et al., "LTE The UMTS Long Term Evolution From Theory to Practice," Second Edition | 2011/00/00 | ITC-RECORD-0009069 - ITC-RECORD-0009862 | |
| PTX-0058 | | Demonstrative Exhibits to the Witness Statement of Mark Lanning from ITC Investigation No. 337-TA-1240 | N/A | ITC-RECORD-0023436 - ITC-RECORD-0023505 | 403/NE |
| PTX-0059 | | Respondents' Objections and Counter-Designations of Paul Bucknell, from ITC Investigation No. 337-TA-1240 | 2021/06/10 | ITC-RECORD-0023855 - ITC-RECORD-0023913 | 401/402/403/NE |
| PTX-0060 | | Annex 24 to the Witness Statement of Kevin Scott from Philips v. TCL, et al. (CX-0210) | 2020/05/01 | ITC-RECORD-0028060 - ITC-RECORD-0028065 | 401/402/403 |
| PTX-0061 | | Recommended Determination on Remedy and Bonding from ITC Investigation No. 337-TA-1240 | 2022/04/15 | ITC-RECORD-0055482 - ITC-RECORD-0055524 | 401/402/403 |
| PTX-0062 | | Respondent CalAmp Corp.'s Resp. Under 19 C.F.R. § 210.14(f) in Support of its Statement of Public Interest | 2021/03/01 | ITC-RECORD-0059208 - ITC-RECORD-0059216 | 401/402/403/NE |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0063 | | 3GPP TS 25.214 V5.5.0 (2003-06) 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Physical layer procedures (FDD) (Release 5) | 2003/06/00 | ITC-RECORD-0105731 - ITC-RECORD-0105793 | |
| PTX-0064 | | 3GPP TS 25.211 V5.4.0 (2003-06) Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Physical channels and mapping of transport channels onto physical channels (FDD) (Release 5) | 2003/06/00 | ITC-RECORD-0105794 - ITC-RECORD-0105844 | |
| PTX-0065 | | 3GPP TS 25.308 V5.0.0 (2001-09) Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; UTRA High Speed Downlink Packet Access (HSDPA); Overall description; Stage 2 (Release 5) | 2001/09/00 | ITC-RECORD-0105845 - ITC-RECORD-0105864 | |
| PTX-0066 | | 3GPP Portal Specification #25.214 | N/A | ITC-RECORD-0113574 | |
| PTX-0067 | | Quectel's EP06&EG06&EM06 At Commands Manual, LTE-A Module Series | 2018/08/10 | JACKSON-0030471 - JACKSON-0030711 | |
| PTX-0068 | | Quectel EM12 Hardware Design LTE-A Module Series, Version 1.1 | 2019/11/18 | JACKSON-0044410 - JACKSON-0044481 | |
| PTX-0069 | | PTCRB Certification Requirements from https://iotdevices.att.com/Uploaded_Docs/ptcrb_flyer_sept_2018_20180918115808079.pdf | N/A | JACKSON-0059984 - JACKSON-0059985 | 401/402/403/802/901 |
| PTX-0070 | | 3GPP TSG-RNA WG2 meeting #45, Shin-Yokohama, Japan, 15-19 November 2004, R2-042345, Document for Discussion, Decision for Philips' E-DCH MAC-e multiplexing | 2004/11/15 | KPNV0002411 - KPNV0002414 | |
| PTX-0071 | | 3GPP TSG-RNA WG2 meeting #45bis, Sophia Antipolis, France, 10th-14th January 2005, R2-050244, Document for Discussion, Decision for Philips' Minimum Set for Non-Scheduled E-DCH transmissions | 2005/01/10 | KPNV0002424 - KPNV0002425 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0072 | | ETSI TS 125 212 V5.10.0 (2006-06) Technical Specification for Universal Mobile Telecommunications System (UMTS); Multiplexing and channel coding (FDD) (3GPP TS 25.212 version 5.10.0 Release 5) | 2006/06/00 | KPNV0009176 - KPNV0009249 | |
| PTX-0073 | | ETSI TS 125 214 V18.0.0 (2024-05) Technical Specification Universal Mobile Telecommunications Systems (UMTS); Physical layer procedures (FDD) (3GPP TS 25.214 version 18.0.0 Release 18) | 2024/05/00 | KPNV0009530 - KPNV0009671 | |
| PTX-0074 | | Letter to Sony from Philips re settlement and license agreement | 2012/11/30 | KPNV0019769 | 401/402/403/802/901 |
| PTX-0075 | | Letter to Sony from Philips re patent license | 2012/12/10 | KPNV0019770 - KPNV0019771 | 401/402/403/802/901 |
| PTX-0076 | | ETSI IPR Information Statement and Licensing Declaration for Koninklijke Philips Electronics N.V. | 2009/11/26 | KPNV0031499 - KPNV0031514 | |
| PTX-0077 | | ETSI 12th General Assembly, Nice, 2-3 April 1992, Temp. Doc. 12 Rev. 1, Agenda Item 8, Document for Decision | 1992/04/03 | KPNV0038717 - KPNV0038718 | |
| PTX-0078 | | ETSI 12th General Assembly Temp Doc. 16, Rev. 1, Nice, 2-3 April 1992, Document for Information/Discussion/Decision re Considerations from the CEC regarding the Draft IRP Policy and Undertaking | 1992/04/02 | KPNV0038758 - KPNV0038762 | |
| PTX-0079 | | ETSI 12th General Assembly ETSI/GA 12 (92) 3, Nice, 2-3 April 1992, Document for Information re Intellectual Property Policy and Procedures | 1992/02/28 | KPNV0038803 - KPNV0038830 | |
| PTX-0080 | | ETSI/GA15 TD 25, Appendix A - ETSI Intellectual Property Rights Undertaking | N/A | KPNV0038962 - KPNV0038981 | |
| PTX-0081 | | ETSI/GA15 TD 24, European Telecommunications Standards Institute (ETSI) Intellectual Property Rights Undertaking, Version Resulting From Negotiation with EC Commission | 1993/01/05 | KPNV0038982 - KPNV0038989 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0082 | | ETSI/GA15 (93) 34 Draft Minutes of the 15th General Assembly of ETSI | N/A | KPNV0038990 - KPNV0039030 | |
| PTX-0083 | | Comments of Pete Hizzy of ICOMN | 2003/01/13 | KPNV0039033 - KPNV0039035 | 401/402/403/802/901 |
| PTX-0084 | | Open Letter to ETSI from Dr. White re How ETIS can demonstrate to DG Competition that its IPR Policy is not anti-competitive | 2003/01/13 | KPNV0039042 - KPNV0039043 | 401/402/403/802/901 |
| PTX-0085 | | Document re ETSI GA#40 creation of ad-hoc group | N/A | KPNV0039044 - KPNV0039046 | |
| PTX-0086 | | ETSI GA ahg on IPR#1 ETSI GA/IPR01(03)09, Sophia Antipolis, 23-24 January 2003, Document for Information re Compilation of answers to the IPR questionnaire | 2023/01/23 | KPNV0039073 - KPNV0039095 | 401/402/403/802 |
| PTX-0087 | | ETSI GA ahg on IPR#2 ETSI GA/IPR02(03)08, Sophia Antipolis, 03-04 March 2003, Document for Discussion re Timely disclosure of essential IPRs (Issue 1) | 2003/02/27 | KPNV0039144 - KPNV0039146 | 401/402/403/802 |
| PTX-0088 | | ETSI GA ahg on IPR#2 ETSI GA/IPR02(03)02, Sophia Antipolis, 3-4 March 2003, Document for Discussion re Issues arising from Late submission of IPR Declarations (Issue 02) | 2003/02/19 | KPNV0039156 - KPNV0039163 | 401/402/403/802 |
| PTX-0089 | | ETSI GA ahg on IPR#2 ETSI GA/IPR02(03)14 rev. 1, Sophia Antipolis, 3-4 March 2003, Secretary's meeting notes | 2003/05/15 | KPNV0039164 - KPNV0039183 | 401/402/403/802 |
| PTX-0090 | | ETSI GA ahg on IPR#5 ETSI GA/IPR05(03)02 Rev. 2, Mainz, 26 September 2003, Document for Discussion re Resume of status of Recommendations under each "issue" and preparation for reporting to GA#4 | 2003/09/24 | KPNV0039282 - KPNV0039315 | 401/402/403/802 |
| PTX-0091 | | ETSI GA ahg on IPR#5 ETSI GA/IPR05(03)04, Mainz, 26 September 2003, Document for Discussion re Timely disclosure of essential IPRs (Issue 1) | 2003/09/24 | KPNV0039316 - KPNV0039319 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0092 | | ETSI GA ahg on IPR#5 ETSI GA/IPR05(03)13, Rev. 3, Mainz, 26 September 2003, Document for Discussion re Status of Recommendations under each "issue" and preparation for reporting to GA#42 (post IPR#5 meeting) | 2003/10/21 | KPNV0039320 - KPNV0039343 | 401/402/403/802 |
| PTX-0093 | | ETSI GA ahg on IPR#5 ETSI GA/IPR05(03)06, Mainz, 26 September 2003, Document for Discussion re Members' compliance with the undertaking (Issue 09) | 2003/09/24 | KPNV0039344 - KPNV0039356 | 401/402/403/802 |
| PTX-0094 | | ETSI GA ahg on IPR#4 ETSI GA/IPR04(03)02, Sophia Antipolis, 18-19 June 2003, Discussion re Issues arising from Late submission of IPR Declarations (Issue 02) | 2003/05/29 | KPNV0039402 - KPNV0039406 | 401/402/403/802 |
| PTX-0095 | | ETSI GA ahg on IPR#7 ETSI GA/IPR07(05)03, Sophia Antipolis, 1 March 2005, Document for Discussion/Information re DG Competition's proposed changes to Article 4.1 of the ETSI Pro Policy and Rationale | 2005/02/28 | KPNV0039432 - KPNV0039434 | 401/402/403/802 |
| PTX-0096 | | ETSI GA ahg on IPR#7 ETSI GA/IPR07(05)06 rev. 1, Sophia Antipolis, 1 March 2005, Secretary's meeting notes | 2005/03/08 | KPNV0039435 - KPNV0039437 | 401/402/403/802 |
| PTX-0097 | | ETSI GA ahg on IPR#7 ETSI GA/IPR07(05)02, Sophia Antipolis, 1 March 2005, Document for Discussion re Letter from DG COMPETITION (dated 28 January 2005) re GSM 03.19 / GSM 43.019 | 2005/02/28 | KPNV0039442 - KPNV0039446 | 401/402/403/802 |
| PTX-0098 | | ETSI GA ahg on IPR#2 ETSI GA/IPR03(03)03, Sophia Antipolis, 19-20 May 2003, Document for Discussion re Issue arising from Late Submission of IPR Declaration (Issue 02) | 2003/05/02 | KPNV0039538 - KPNV0039544 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0099 | | ETSI GA ahg on IPR#3 ETSI GA/IPR03(03)17, Sophia Antipolis, 19-20 May, 2003, Secretary's meeting notes | 2003/05/01 | KPNV0039553 - KPNV0039569 | 401/402/403/802 |
| PTX-0100 | | ETSI 12th Technical Assembly Temp Doc. 6, Nice, 26 November 1991, Document for Discussion re The ETSI Standards and the related IRPs problems (STET position) | 1991/11/26 | KPNV0039648 - KPNV0039658 | 401/402/403/802 |
| PTX-0101 | | ETSI 12th Technical Assembly Temp Doc. 7, Nice, 26 November 1991, Document re Discussion re Reasoned argument for a two stage approach to an ETSI IPR policy and undertaking | 1991/11/26 | KPNV0039659 - KPNV0039662 | 401/402/403/802 |
| PTX-0102 | | ETSI 14th Technical Assembly ETSI/TA 14 (92) 13 Document for Information for Intellectual Property Policy and Procedure | 1992/02/28 | KPNV0039667 - KPNV0039696 | 401/402/403/802 |
| PTX-0103 | | ETSI Temp. Doc. 6, 6th Technical Assembly, Nice, 5-7 March 1990, Intellectual Property Rights Committee | 1990/02/13 | KPNV0039738 - KPNV0039745 | 401/402/403/802 |
| PTX-0104 | | ETSI 15th Technical Assembly ETSI/TA 15 (92) 3, Nice, 6-8 July 1999 Document for Final decisions of the 13th Technical Assembly | 1992/06/10 | KPNV0039812 - KPNV0039825 | 401/402/403/802 |
| PTX-0105 | | ETSI 10th Technical Assembly ETSI/TA 10 (91) 17, Nice, 4-6 June 1991, Document re Decision re Reflections of the TA Chairman on ETSI's IPR Policy | 1991/05/15 | KPNV0039840 - KPNV0039849 | 401/402/403/802 |
| PTX-0106 | | ETSI 8th Technical Assembly Temp. Doc. 21, Nice, 9-11 October 1990, Document for Discussion re ETSI IPR Policy and Procedure ETSI IPRs Undertaking and License Model Agreemen | 1990/10/05 | KPNV0039853 - KPNV0039858 | 401/402/403/802 |
| PTX-0107 | | ETSI 8th Technical Assembly ETSI/TA 8 (90) 45, revision 1, 9-11 October 1990, Document for Decision re Final Decisions of the 8th Technical Assembly | 1991/01/31 | KPNV0039859 - KPNV0039887 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0108 | | ETSI/TA 8 (90) 43, 8th Technical Assembly, Nice 9-11 October 1990, Document for Discussion, October 4, 1990 | 1990/10/04 | KPNV0039888 - KPNV0039891 | 401/402/403/802 |
| PTX-0109 | | ETSI Board#47 ETSI/B47(04)46, Sophia Antipolis, 26-27 May 2004, Document for Decision re Draft Summary minutes, decisions and actions from 47th ETSI Board Meeting, Sophia Antipolis, 26-27, May 2004 | 2004/08/28 | KPNV0039949 - KPNV0039966 | 401/402/403/802 |
| PTX-0110 | | ETSI Board#52 ETSI/B52(05)07 Rev. 1, Sophia Antipolis, 24-25 May 2005, Discussion re Proposed Modification to Article 4.1 of the ETSI IPR Policy - Follow-up from DG COMPETITION | 2005/05/24 | KPNV0039998 - KPNV0040005 | 401/402/403/802 |
| PTX-0111 | | ETSI Board#39 ETSI/B39(02)02 Munich, 28-29 August 2002 Document for Discussion re ETSI IPR Policy - The DIIS (Digital Interchange of Information and Signaling) protocol | 2002/07/25 | KPNV0040006 - KPNV0040007 | 401/402/403/802 |
| PTX-0112 | | ETSI Board#18 ETSI/B18(99)06 Sophia Antipolis, 23-25 March 1999, Document for Decision re Redrafting of the ETSI IPR forms for IPR Information Statement and IPR Licensing Declaration | 1999/03/11 | KPNV0040016 - KPNV0040027 | 401/402/403/802 |
| PTX-0113 | | ETSI Board#48 ETSI/B48(04)16, Sophia Antipolis, 1-2 September 2004, Document for Decision ETSI Guide on IPRs | 2004/08/04 | KPNV0041551 - KPNV0041574 | 401/402/403/802 |
| PTX-0114 | | ETSI Board#48 ETSI/B48(04)58, Sophia Antipolis, 1-2 September 2004, Document for Information re Status of Implementation of the recommendations from the GA ad hoc group on ETSI's IPR Policy operation | 2004/08/31 | KPNV0041575 - KPNV0041577 | 401/402/403/802 |
| PTX-0115 | | ETSI Directives, Version 25 | 2009/01/00 | KPNV0043044 - KPNV0043242 | |
| PTX-0116 | | ETSI Directives, Version 009 | 1996/04/00 | KPNV0045857 - KPNV0045899 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0117 | | ETSI Directives, Version 007 | 1994/11/00 | KPNV0046222 - KPNV0046266 | |
| PTX-0118 | | ETSI Directives Version 7 | 1994/11/07 | KPNV0046499 - KPNV0046543 | |
| PTX-0119 | | ETSI Directives Version 45 | 2022/06/22 | KPNV0048257 - KPNV0048488 | |
| PTX-0120 | | Specially Convened Meeting held in connection with ETSI 46th General Assembly ETSI/GA46(05)SCM03, Nice, 22-23 November 2005, Document for Decision re Modifications to the "ETSI Guide on IPRs" | 2005/10/07 | KPNV0051072 - KPNV0051102 | 401/402/403/802 |
| PTX-0121 | | ETSI/GA45(05)12, ETSI 45th General Assembly meeting Nice, 5-6 April 2005, from ETSI Director General, Document for Discussion | N/A | KPNV0051137 - KPNV0051142 | 401/402/403/802 |
| PTX-0122 | | ETSI 15th General Assembly ETSI/GA 15 (93) 20, Nice, 16-18 March 1993 Document for Discussion and Decision re Simplified IPR Undertaking | 1993/02/08 | KPNV0051179 - KPNV0051186 | 401/402/403/802 |
| PTX-0123 | | ETSI 15th General Assembly ETSI/GA 15 (93) 25, Nice, 16-18 March 1993, Document for Discussion and Decision re Simplification of IP Policy, February 10, 1993 | 1993/02/10 | KPNV0051190 - KPNV0051191 | 401/402/403/802 |
| PTX-0124 | | ETSI 19th General Assembly Temp Doc. 18, Sophia Antipolis, 24-25 March 1994, Document for Information/Discussion re Proposed alternative course of action on IPR | 1994/03/24 | KPNV0051197 - KPNV0051198 | 401/402/403/802 |
| PTX-0125 | | ETSI/GA20(94)3, 20th General Assembly (Extraordinary Meeting on IPR matters), Cannes-Mandeliu, 22 July 1994, Agenda Item 2, Document for Information/Discussion/Decision | 1994/07/08 | KPNV0051199 - KPNV0051221 | 401/402/403/802 |
| PTX-0126 | | ETSI/GA20(94)2 Annex I, GA 19 TEMP Docs 18, 18, 20 | 1994/03/25 | KPNV0051222 - KPNV0051277 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0127 | | ETSI 20th General Assembly (Extraordinary Meeting on IPR matters), Cannes-Mandelieu, 22 July 1994, Document for Discussion re IPR Undertaking, | 1994/07/22 | KPNV0051278 | 401/402/403/802 |
| PTX-0128 | | ETSI 42nd General Assembly Meeting ETSI/GA#42(03)20 Rev. 1, Nice, 25-26 November 2003, Document for Decision re Report of the GA ad hoc group on ETSI's IPR Policy operation (with Annex A deleted by GA#42) | 2003/08/14 | KPNV0051283 - KPNV0051309 | 401/402/403/802 |
| PTX-0129 | | ETSI 42nd General Assembly Meeting ETSI/GA#42(03)20 Rev. 1, Nice, 25-26 November 2003, Document for Decision re Report of the GA ad hoc group on ETSI's IPR Policy operation (with Annex A deleted by GA#42) | 2003/08/14 | KPNV0051310 - KPNV0051336 | 401/402/403/802 |
| PTX-0130 | | ETSI 42nd General Assembly Meeting ETSI/GA#42(03)32, Nice, 25-26 November 2003, Document for Information re Result of vote 1 (on the report from the GA ad hoc group on IPR policy operation) | 2003/11/26 | KPNV0051337 | 401/402/403/802 |
| PTX-0131 | | ETSI/GA#40(02)13, ETSI 40th General Assembly Meeting , Nice, 26-27 November 2002, Document for Decisions re Creation of a GA ad hoc group on ETSI's IPR Policy operation | 2002/10/29 | KPNV0051338 - KPNV0051340 | 401/402/403/802 |
| PTX-0132 | | Collective Letter No. 641 from ETSI to ETSI Members, Observers and Counsellors re The EC Committee of the American Chamber of Commerce's position regarding the Commission's Communication on IPRs and Standards, January 25, 1993 | 1993/01/25 | KPNV0051475 - KPNV0051478 | 401/402, 403, 802 |
| PTX-0133 | | Collective Letter No. 640 to ETSI Members, Observers and Counsellors re Letter from IBM dated January 6, 1993 re IBM Comments on ETSI IPR Framework | 1993/01/25 | KPNV0051482 - KPNV0051503 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0134 | | Collective Letter No. 793 to ETSI Members, Observers and Counsellors re Letter from Digital dated August 19, 1993 re the signature of the ETSI IPR Undertaking | 1992/10/21 | KPNV0051504 - KPNV0051505 | 401/402/403/802 |
| PTX-0135 | | ETSI Collective Letter 1017 to ETSI Members, Observers and Counsellors re Vote on ETSI IPR Undertaking | 1994/09/05 | KPNV0051506 | 401/402/403/802 |
| PTX-0136 | | Collective Letter No. 900 from ETSI to Members, Observers and Counsellors of ETSI re CBEMA Complaint | 1994/02/28 | KPNV0051507 | 401/402/403/802 |
| PTX-0137 | | Collective Letter No. 07_2552 to ETSI Members, Observers and Counsellors re New Service for IPR owners to declare IPRs to ETSI online (The ETSI IPR Online Declaration Service) | 2007/06/21 | KPNV0051508 - KPNV0051509 | 401/402/403/802 |
| PTX-0138 | | ETSI SR 000 314 V1.3.1 (1998-06) Special Report for Intellectual Property Rights (IPRs); Essential, or potentially Essential, IPRs notified to ETSI in respect to ETSI standard | 1998/00/00 | KPNV0055919 - KPNV0056021 | 401/402/403/802 |
| PTX-0139 | | Letter to ETSI from Lucent Technologies re Lucent's General Declaration re Intellectual Property Rights Relating to UMTS Terrestrial Radio Access Interface | 1998/01/20 | KPNV0068216 | 401/402/403/802 |
| PTX-0140 | | Letter to ETSI from Ericsson re General Declaration for SMG11 AMR | 1998/05/27 | KPNV0068217 | 401/402/403/802 |
| PTX-0141 | | Letter from ETSI from France Telecom re IPR licensing General Declaration for UMTS | 1998/12/16 | KPNV0068219 | 401/402/403/802 |
| PTX-0142 | | Letter to ETSI from Philips General Declaration for UMTS | 1998/01/15 | KPNV0068220 | |
| PTX-0143 | | Letter to ETSI from Golden Bridge Technology re IPR Licensing Declaration | 1998/09/09 | KPNV0068223 | 401/402/403, 802 |
| PTX-0144 | | Letter to ETSI form Hitachi, Ltd., re IPR essentials | 1998/06/18 | KPNV0068224 | 401/402/403/611/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0145 | | Annex 1 - IPR Information Statement by Texas Instruments France General Declaration for UMTS | 1998/06/16 | KPNV0068225 - KPNV0068226 | 401/402/403/611 |
| PTX-0146 | | General Declaration of Samsung Electronics for W-CDMA technology | 1998/12/14 | KPNV0068227 | 401/402/403/611 |
| PTX-0147 | | Letter to ETSI from CCETT re Intellectual Property Rights licensing declaration Standard ETSI/UMTS | 1998/12/14 | KPNV0068228 | 401/402/403/611 |
| PTX-0148 | | Letter to ETSI from Canon Research Centre France S.A. re IPR policy re UMTS Terrestrial Radio Access Proposed Standard | 1998/06/29 | KPNV0068229 | 401/402/403/611 |
| PTX-0149 | | Letter to ETSI from Alcatel re General Declaration for TD-CDMA proposal and the W-CDMA proposal | 1998/01/23 | KPNV0068230 - KPNV0068231 | 401/402/403/611 |
| PTX-0150 | | Fax from Motorola European Intellectual Property Operations to ETSI re IPR for W-CDMA | 1998/01/26 | KPNV0068232 | 401/402/403/611 |
| PTX-0151 | | Declaration of Omnipoint for UMTS/UTRA Proposals | 1998/12/12 | KPNV0068233 | 401/402/403/611 |
| PTX-0152 | | Letter to ETSI from Robert Bosch GmBH re IPRs related to TD/CMDA and/or W-CDMA | 1998/01/27 | KPNV0068236 | 401/402/403/611 |
| PTX-0153 | | Letter to ETSI from Siemens re General Declaration for TD/CDMA | 1997/11/25 | KPNV0068238 - KPNV0068239 | 401/402/403/611 |
| PTX-0154 | | Letter to ETSI from Panasonic re IPR Licensing Declaration concerning Wideband CDMA proposal for UMTS Terrestrial Radio Access | 1997/12/10 | KPNV0068240 - KPNV0068241 | 401/402/403/611 |
| PTX-0155 | | Declaration of Nokia re General Declaration for W-CDMA | 1997/12/03 | KPNV0068242 | 401/402/403/611 |
| PTX-0156 | | Letter to ETSI from Siemens re General Declaration for any ETSI Standard | 1997/12/11 | KPNV0068243 | 401/402/403/611 |
| PTX-0157 | | Letter to ETSI from Fujitsu Limited re General Declaration for W-CDMA proposal | 1997/12/17 | KPNV0068244 | 401/402/403/611 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0158 | | Letter to B. Cosgrave from Ericsson re General Declaration for W-CDMA Proposal and TD/CDMA Proposal | 1997/12/03 | KPNV0068250 | 401/402/403/611 |
| PTX-0159 | | Layne-Farrar, "Assessing IPR Disclosure Within Standard Setting: An ICT Case Study" | 2011/11/28 | KPNV0069139 - KPNV0069167 | 401/402/403/802 |
| PTX-0160 | | Letter from Qualcomm to ETSI re Intellectual Property Rights on IMT-2000 Ratio Transmission Technologies | 1999/06/25 | KPNV0069673 | 401/402/403/611 |
| PTX-0161 | | ETSI IPR Database Disclaimer Page | 2023/01/12 | KPNV0069677 - KPNV0069682 | |
| PTX-0162 | | Email chain between J. Lancry, S. Tronchon and K. Scott re Philips UMTS patent rights | 2003/08/26 | KPNV0073026 - KPNV0073058 | 401/402/403 |
| PTX-0163 | | ETSI/GA20(94)2 Annex XII Final Texts for Common Objectives from 2nd Plenary Meeting | 1994/06/08 | KPNV0073902 - KPNV0073969 | 401/402/403/802 |
| PTX-0164 | | ETSI/GA20(94)2, 20th General Assembly (Extraordinary Meeting on IPR matters), Cannes-Mandeliu, 22 July 1994, Agenda Item 2, Document for Information/Discussion/Decision | 1994/07/05 | KPNV0073972 - KPNV0073981 | 401/402/403/802 |
| PTX-0165 | | ETSI/GA20(94)2 Annex XVIII Minutes of 3rd Plenary meeting + List of Participants | 1994/06/21 | KPNV0074046 - KPNV0074101 | 401/402/403/802 |
| PTX-0166 | | ETSI 44th General Assembly ETSI/GA44(04)42 Rev. 1, Nice, 29-30 November 2004, Document for Decision re Draft summary minutes, decisions and actions from the 44th ETSI General Assembly Meeting, March 17, 2005 | 2005/03/17 | KPNV0074224 - KPNV0074251 | 401/402/403/802 |
| PTX-0167 | | ETSI/GA21(94)39 Rev. 2 Final Minutes of the ETSI 21st General Assembly Including the Specially Convened Meeting, 22-23 November 1994, Nice | 1994/11/22 | KPNV0074252 - KPNV0074276 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0168 | | ETSI 15th General Assembly ETSI/GA 15 (93) 30, Nice, 16-18 March 1993, Document for Discussion and decision re Comments on the most recent version of the ETSI IPR Policy | 1993/02/11 | KPNV0074274 - KPNV0074303 | 401/402/403/802 |
| PTX-0169 | | ETSI 15th General Assembly ETSI/GA 15 (93) 32, Nice, 16-18 March 1993, Document for Discussion and decision re TSI IPR Policy | 1993/02/12 | KPNV0074304 - KPNV0074310 | 401/402/403/802 |
| PTX-0170 | | ETSI/GA20(94)22 Rev. 1, Revised Minutes of the 20th ETSI General Assembly Meeting (on IPR), 22 July 1994, Mandelieu | 1994/07/22 | KPNV0074312 - KPNV0074348 | 401/402/403/802 |
| PTX-0171 | | ETSI/GA42(03)34, ETSI 42nd General Assembly meeting Nice, 25-26 November 2003, Document for Decision re Draft Summary Minutes, decisions and actions from the 42nd ETSI General Assembly Meeting | 2004/03/01 | KPNV0074349 - KPNV0074377 | 401/402/403/802 |
| PTX-0172 | | IPR Information Session, ETSI/IPR/GA (92) 2, Nice, 9 July 1992, Document for Information/Discussion/Decision re ETSI Intellectual Property Rights Framework - Version recommended by negotiating team | 1992/06/26 | KPNV0074411 - KPNV0074442 | 401/402/403/802 |
| PTX-0173 | | ETSI Temp. Doc. 3, 6th General Assembly, Nice, 14/15 November 1989, Intellectual Property Rights Committee (IPRC) | 1989/11/06 | KPNV0074443 - KPNV0074444 | 401/402/403/802 |
| PTX-0174 | | ETSI 12th Technical Assembly ETSI/TA 12 (91) 7, Nice, 26 November 1991, Document for Discussion re Supplement to TA Working Procedures - Procedures for the disclosure of IPRs | 1991/11/12 | KPNV0074447 - KPNV0074451 | 401/402/403/802 |
| PTX-0175 | | ETSI/TA 19(94)69 Rev 1, 19th Technical Assembly Nice, 21-23 March 1994, Document for Information | 1994/06/22 | KPNV0074484 - KPNV0074512 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0176 | | ETSI 10th Technical Assembly Temp. Doc. 14, Nice, 4-6 June 1991, Document for Discussion re Chairman's compromise proposal on the principles of an IPR Policy for ETSI (Doc. ETSI TA10(91)17), May 31, 1991 | 1991/05/31 | KPNV0074522 - KPNV0074525 | 401/402/403/802 |
| PTX-0177 | | ETSI SMG ETSI/SMG(98)4, Meeting No. 27, Prahn, 12th-17th of October, 1998, (Part A), Executive Summary SMG#27 | 1998/11/23 | KPNV0074541 - KPNV0074620 | 401/402/403/802 |
| PTX-0178 | | ETSI/TA 12 (91) 3, 12th Technical Assembly, Nice 26 November 1991, Document for Discussion and Decision | 1991/10/00 | KPNV0074699 - KPNV0074730 | 401/402/403/802 |
| PTX-0179 | | ETSI IPR Information Session ETSI/IPR/GA (92) 3, Nice, 9 July 1992, Document for Information/Discussion/Decision re ETSI Intellectual Property Rights Framework - Commission Version | 1992/06/26 | KPNV0074841 - KPNV0074872 | 401/402/403/802 |
| PTX-0180 | | Notices From European Union Institutions, Bodies, Offices, and Agencies | 2011/11/14 | KPNV0075087 - KPNV0075158 | 401/402/403 |
| PTX-0181 | | Bekkers, "Mobile Telecommunications Standards: GSM, UMTS, TETRA, and ERMES," Section 7.4.2 | 2001/00/00 | KPNV0075159 - KPNV0075184 | |
| PTX-0182 | | ETSI/GA29(97)22 ETSI 29th General Assembly Meeting, Nice, 18-19 November 1997, Document for Decision re Summary Minutes, decisions, and actions from the 29th ETSI General Assembly Meeting, | 1997/11/24 | KPNV0075185 - KPNV0075218 | 401/402/403/802 |
| PTX-0183 | | Minutes of the Second General Assembly of the European Telecommunications Standards Institute, Nice | 1988/05/04 | KPNV0075370 - KPNV0075375 | 401/402/403/802 |
| PTX-0184 | | Minutes of the Third General Assembly of the European Telecommunications Standards Institute, Nice, 19-20 July 1988, Doc. GA 3(88) 14 | 1988/07/19 | KPNV0075376 - KPNV0075417 | 401/402/403/802 |
| PTX-0185 | | Letter from Deputy Director General London re ETSI Eighth General Assembly | 1990/07/23 | KPNV0075418 - KPNV0075424 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0186 | | ETSI /GA 5(89) 12 5th General Assembly, Nice, 31 March 1989, Report to the General Assembly from Chairman of the ETSI Technical Assembly | 1989/03/30 | KPNV0075466 - KPNV0075468 | 401/402/403/802 |
| PTX-0187 | | ETSI 15th General Assembly Temp. Doc. 7, Nice 16-18 March 1993, Document for Discussion and Decision re Proposal for the establishment of Working Groups | 1993/03/16 | KPNV0075469 - KPNV0075470 | 401/402/403/802 |
| PTX-0188 | | ETSI 11th General Assembly Temp. Doc. 21, Nice, 27-28 November 1991, Document for Inclusion into the draft minutes re Resolution of the GA on IPR | 1991/11/28 | KPNV0075491 | 401/402/403/802 |
| PTX-0189 | | ETSI 9th General Assembly ETSI/GA 9 (90) 17, Nice, 20-21 November 1990, Document for Decision re Budget for Intellectual Property Rights Committee (IPRC) | 1990/11/05 | KPNV0075492 | 401/402/403/802 |
| PTX-0190 | | ETSI 9th General Assembly ETSI/GA 9 (90) 5, Nice, 20-21 November 1990, Document for Decision re Report from the Chairman of the Technical Assembly to the 9th General Assembl | 1990/11/05 | KPNV0075493 - KPNV0075498 | 401/402/403/802 |
| PTX-0191 | | ETSI/GA 9(90) 19 revision 1, Minutes of the Ninth General Assembly, Nice, 20-21 November 1990 | 1990/11 | KPNV0075499 | 401/402/403/802 |
| PTX-0192 | | ETSI Temp. Doc. 18 E, General Assembly, 29-30 March 1988, List of Applications For Membership of ETSI as at 30 March 1988 | 1988/03/25 | KPNV0075592 - KPNV0075598 | |
| PTX-0193 | | Letter from ETSI to All Members, etc. re ETSI/IPR/GA(92) | 1992/06/26 | KPNV0075620 | |
| PTX-0194 | | ETSI Doc. GA 6(89) 13 Minutes of the Sixth Assembly of the European Telecommunications Standards Institute, Nice, 14-15 November 1989 | 1989/11/14 | KPNV0075621 - KPNV0075648 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0195 | | ETSI 12th Technical Assembly Temp. Doc. 5, Nice, 26 November 1991, Document for Discussion re Supplement to TA Working Procedures | 1991/11/26 | KPNV0075652 | 401/402/403/802 |
| PTX-0196 | | ETSI 3rd Technical Assembly, ETSI/TA 3(89) 3, Nice, 29/30 March 1989, Terms of Reference of GSM, and TM Technical Sub-Committees | 1989/03/06 | KPNV0075653 - KPNV0075668 | 401/402/403/802 |
| PTX-0197 | | ETSI 3rd Technical Assembly, ETSI/TA 3(89) 36, Nice, 29/30 March 1989, Draft Minutes of the 3rd Technical Assembly | 1989/03/29 | KPNV0075669 - KPNV0075686 | 401/402/403/802 |
| PTX-0198 | | Doc. ETSI/TA 2(88) 20 ETSI Second Meeting of the Technical Assembly, Nice 25/26 October 1988, Minutes of the Meeting, October 25, 1988 | 1988/10/25 | KPNV0075687 - KPNV0075708 | 401/402/403/802 |
| PTX-0199 | | ETSI Board#40 ETSI/B40(02)11, Sophia Antipolis, 23-24 October 2002, Document for Decision re Draft Summary minutes, decision and actions from 40th ETSI Board Meeting, Sophia Antipolis, 23-24 October 2002, October 25, 2002 | 2002/10/25 | KPNV0075709 - KPNV0075726 | 401/402/403/802 |
| PTX-0200 | | Memo\97096 from H. Lafferre to SMG re Report on Essential IPRs declared in relation to the work of SMG#24 | 1998/05/01 | KPNV0075754 - KPNV0075763 | 401/402/403/802 |
| PTX-0201 | | ETSI SMG Meeting No. 24bis, ETSI/SMG (98) 1 Annex 5 (Tdoc SMG 39/98), Paris, 28th - 29th January, 1998 Consensus Decision on the UTRA Concept to Be Refined by ETSI SMG2 | 1998/01/28 | KPNV0075764 | 401/402/403/802 |
| PTX-0202 | | ETSI SMG#24 Tdoc SMG 1066/97, Madrid, 15-19/12/97, TD-CDMA (delta), the best of both worlds | 1999/12/15 | KPNV0075843 - KPNV0075844 | 401/402/403/802 |
| PTX-0203 | | ETSI TC SMG Meeting No. 20, ETSI/TC SMG (96) 4, Sophia Antipolis, October 7th - 11th, 1996, (Part A) Executive Summary | 1996/10/07 | KPNV0075845 - KPNV0075915 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0204 | | 3GPP T3 Meeting #15 Tdoc T3-0381, San Diego, USA, 16-18 August, 2000, 3GPP TSG-T3 (USIM) ad hoc #7 Tdoc T3z000062, Paris, 11-13 July 2000, DRAFT Report from T3 ad hoc #7 on Java SIM API testing hosted by Oberthur Card Systems in Paris, 11 - 13 July 2000 | 2000/07/11 | KPNV0075916 - KPNV0075922 | 401/402/403/802 |
| PTX-0205 | | Regulation (EU) No 1025/2012 of the European Parliament and of the Council, Official Journal of the European Union | 2012/10/25 | KPNV0075927 - KPNV0075948 | |
| PTX-0206 | | Towards a Dynamic European Economy, Green Paper on the Development of the Common Market For Telecommunications Services and Equipment | 1987/06/30 | KPNV0075955 - KPNV0076207 | |
| PTX-0207 | | UIA Global Civil Society Database from https://uia.org/s/or/en/ 1100009984 | 2023/04/18 | KPNV0076282 - KPNV0076284 | 401/402/403/901 |
| PTX-0208 | | ETSI SMG ETSI/SMG (97) 5 Part A, Meeting No. 24, Madrid, 15th-19th December, 1997, Executive Summary SMG #24 | 1997/12/15 | KPNV0076285 - KPNV0076332 | 401/402/403/802 |
| PTX-0209 | | Terre, et al., "Droit Civil Les Obligations," 12th Edition, Sections 606 and 608 | 2019/00/00 | KPNV0076340 - KPNV0076345 | 403 |
| PTX-0210 | | Atias, et al., "Copropriété des immeubles bâtis, statut et structures - Répertoire de droit immobilier", Sections 173 and 174 | 2018/01/00 | KPNV0076348 - KPNV0076352 | 403 |
| PTX-0211 | | Cour de Cassation, Chambre civile 1, du 23 Fevrier 1970, 68-13900, Bull. Civ. I, no. 62 (French), February 23, 1970 | 1970/02/23 | KPNV0076353 - KPNV0076354 | 403 |
| PTX-0212 | | Cour de Cassation, Chambre commerciale, du 26 Mai 1998, 96-12207, Bull. Civ. I, no. 165 (French), May 26, 1988 | 1988/05/26 | KPNV0076409 - KPNV0076410 | 403 |
| PTX-0213 | | Cour de Cassation, civile, Chambre civile 3, 20 November 2013, 12-27041 (French) | 2013/11/20 | KPNV0076411 - KPNV0076413 | |
| PTX-0214 | | Cour de Cassation, Chambre commerciale, 19 Janvier 2010, 09-11201 (English) | 2010/01/19 | KPNV0076414 - KPNV0076420 | 403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0215 | | Cour de Cassation, Chambre civile 1, du 23 Fevrier 1970, 68-13900, Bull. Civ. I, no. 62 (English), February 23, 1970 | 1970/02/23 | KPNV0076421 - KPNV0076422 | |
| PTX-0216 | | Cour de Cassation, Chambre civile 1, du 23 Novembre 1977, 76-11171, Bull. civ. I, No. 438 (English), November 23, 1977 | 1997/11/23 | KPNV0076423 - KPNV0076424 | |
| PTX-0217 | | Cour de Cassation, Chambre civile 1, du 23 Novembre 1977, 76-11171, Bull. civ. I, No. 438 (French), November 23, 1997 | 1997/11/23 | KPNV0076425 - KPNV0076426 | 403 |
| PTX-0218 | | Cour de Cassation, Chambre civile 1, du 19 Novembre 1985, 84-14638, Bull. Civ. I, no. 311 (French), November 19, 1985 | 1985/11/19 | KPNV0076427 - KPNV0076428 | 403 |
| PTX-0219 | | Cour de Cassation, Chambre commerciale, 19 Janvier 2010, 09-11201 (French), January 19, 2010 | 2010/01/19 | KPNV0076429 - KPNV0076435 | 403 |
| PTX-0220 | | Cour de cassation, civile, Chambre civile 3, 20 novembre 2013, 12-27.041, Publié au bulletin | 2013/11/20 | KPNV0076438 - KPNV0076440 | 403 |
| PTX-0221 | | Cour d'appel de Paris, 25 September 2019, No. 17/17595 (English) | 2019/09/25 | KPNV0076441 - KPNV0076484 | |
| PTX-0222 | | Cour de Cassation, Chambre Sociale, du 31 Octobre 1989, 86-41234, Bull. Civ. I, no. 243 (French), October 31, 1989 | 1989/10/31 | KPNV0076491 - KPNV0076492 | 403 |
| PTX-0223 | | Cour de Cassation, civile, Chambre civile 3, 20 Octobre 2016, No. 15-20285 (French) | 2016/10/20 | KPNV0076493 - KPNV0076497 | 403 |
| PTX-0224 | | Cour de Cassation, Chambre civile 1, du 7 Octobre 1992, 90-21141, Bull. Civ. I, no. 243 (French), October 7, 1992 | 1992/10/17 | KPNV0076505 - KPNV0076506 | 403 |
| PTX-0225 | | Optis Cellular Technology LLC, et al. v. Apple Retail UK Limited, et al. [2021] EWHC 1739 (Pat) ¶515 Approved Judgment | 2021/06/25 | KPNV0076511 - KPNV0076622 | 401/402/403/MIL |
| PTX-0226 | | Maleville, "Pratique de L'Interpretation Des Contrats," §279 | 1991/00/00 | KPNV0076635 - KPNV0076639 | 403 |
| PTX-0227 | | Old French Civil Code, As of 1st July 2013, September 2014, July 2013 | N/A | KPNV0076643 - KPNV0076866 | 403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0228 | | Cartwright, et al., "The Law of Contract, The General Regime of Obligations, and Proof of Obligations, The New Provisions of the *Code civil* " | 2016/02/10 | KPNV0076869 - KPNV0076924 | 403 |
| PTX-0229 | | Cour de cassation, première chambre civile, 19 February 1991, No. 89-14418, Bull. civ. I, No. 66 (French), February 19, 1991 | 1991/02/19 | KPNV0076925 - KPNV0076927 | 403 |
| PTX-0230 | | Cour de cassation, Chambre civile 1, du 20 December 1994, No. 91-15116, Bull. civ. I, No. 386 (French), December 20, 1994 | 1994/12/20 | KPNV0076928 - KPNV0076929 | 403 |
| PTX-0231 | | Cour de cassation, chambre mixte, 26 Avril 1974, No. 72-10770, Bull. ch. mixte No. 1 (French), April 26, 1974 | 1974/04/26 | KPNV0076941 - KPNV0076943 | 403 |
| PTX-0232 | | Cour de cassation, deuxième chambre civile, 8 April 2004, No. 02-15884 (French) | 2004/04/08 | KPNV0076943 - KPNV0076944 | 403 |
| PTX-0233 | | Stoffel-Munck, L'Abus dans le contrat. Essai d'une théorie (LGDJ 2000) Section 114 | N/A | KPNV0076952 - KPNV0076954 | 403 |
| PTX-0234 | | Cour de cassation, civile, Chambre civile 3, 20 October 2016, 15-20.285, Publie au bulletin (French) | 2016/10/20 | KPNV0076959 - KPNV0076962 | 403 |
| PTX-0235 | | 3GPP Legal IIPR from https://web.archive.org/web/20070205195811/ https://www.3gpp.org/legal/IPR.htm | 2023/04/25 | KPNV0076974 | 401/901 |
| PTX-0236 | | Bekkers, et al., "IPR Policies and Practices of a Representative Group of Standards-Setting Organizations Worldwide" | 2013/05/00 | KPNV0076975 - KPNV0046333 | 401/402/403/802 |
| PTX-0237 | | 3GPP Conformance Testing Key Factors and Requirements for 3GPP Conformance Testing https://www.rcrwireless.com/20140509/wireless/3gpp-conformance-testing-five-key-factors-and-requirements | 2014/05/09 | KPNV0077134 - KPNV0077142 | 401/901 |
| PTX-0238 | | 3GPP Working Procedures | 2023/04/25 | KPNV0077143 - KPNV0077180 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0239 | | Conformance Test Systems from https://www.anritsu.com/en-gb/test-measurement/mobile-wireless/conformance-test-systems | 2023/04/25 | KPNV0077181 - KPNV0077183 | 401/901 |
| PTX-0240 | | Bradner, et al., "Intellectual Property Rights in IETF Technology," Internet Engineering Task Force (IETF), from https://www.ietf.org/rfc/rfc8179.txt, | 2017/05/00 | KPNV0077184 - KPNV0077209 | 401/901 |
| PTX-0241 | | ETSI IPR Database Online declaration process for IPR SC#31 meeting, March 6-7, 2019 | 2019/03/06 | KPNV0077236 - KPNV0077257 | 401/402/403 |
| PTX-0242 | | ETSI IPR#38 ETSI/IPR(22)038_005, Hybrid meeting, 3 November 2022, Document for Discussion document re Proposal to Improve IPR Disclosure Process | 2022/10/20 | KPNV0077258 - KPNV0077260 | 401/402/403 |
| PTX-0243 | | ETSI/GA48(06)05, ETSI 48th General Assembly meeting, Nice, 21-22 November 2006, Document for Decision re IPR Review ad hoc group report | 2006/10/10 | KPNV0077261 - KPNV0077287 | |
| PTX-0244 | | ETSI/GA46(05)SCM02, Specially Convened Meeting held in connection with the ETSI 46th General Assembly, Nice, 22-23 November 2005, Document for Decision re Revision of Article 4.1 of the ETSI IPR Policy | 2005/10/07 | KPNV0077334 - KPNV0077337 | |
| PTX-0245 | | ETSI/GA46(05)24 rev. 1, ETSI 46th General Assembly meeting, Nice, 22-23 November 2005, Document for Decision re IPR Committee Agenda Item 20.2 | 2005/11/11 | KPNV0077338 - KPNV0077339 | |
| PTX-0246 | | ETSI/GA46(05)16 rev. 1, ETSI 46th General Assembly meeting, Nice, 22-23 November 2005, Document for Decision re IPR Committee to work on IPR reform in standards, November 22, 2005 | 2005/11/22 | KPNV0077340 - KPNV0077344 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0247 | | ETSI/GA46(05)36 rev. 1, ETSI 46th General Assembly meeting, Nice, 22-23 November 2005, Document for Decision re Draft summary minutes, decisions and actions from the 46th ETSI General Assembly Meeting | 2006/06/06 | KPNV0077345 - KPNV0077378 | |
| PTX-0248 | | ETSI Board #38 Temporary Document 09 Rev. 1, Sophia Antipolis, 29-30 May 2002, Document for Decision re Problems on IPR declaration in SIM Cards deliverables | 2002/05/23 | KPNV0077386 - KPNV0077388 | 401/402/403 |
| PTX-0249 | | ETSI Board#38 ETSI/B38(02)27, Sophia Antipolis, 29-30 May 2002, Document for Discussion re Obligations of Members - ETSI IPR Policy | 2022/05/17 | KPNV0077389 - KPNV0077390 | 401/402/403 |
| PTX-0250 | | ETSI B38(02)30 Rev. 1, Sophia Antipolis, 29-30 May 2002, Document for Decision re Summary minutes, decisions and actions from 38th ETSI Board Meeting, Sophia Antipolis, 29-30 May 2002 | 2002/07/17 | KPNV0077391 - KPNV0077413 | 401/402/403 |
| PTX-0251 | | ETSI Board#30 ETSI/B30(00)14 rev. 1, Sophia Antipolis, 14-15 December 2000, Document for Discussion re Status of actions from previous Board meetings (as to 13 December 2000) | 2000/12/13 | KPNV0077438 - KPNV0077443 | 401/402/403 |
| PTX-0252 | | Tdoc. SMG 450/98, North American GSM Alliance LLC | 1998/05/14 | KPNV0077468 - KPNV0077469 | |
| PTX-0253 | | ETSI/SMG#27 SMG Tdoc 98/608 Prague, 12-16/10/98. Interim Report of the UMTS IPR Working Group (September 1998) | 1998/10/12 | KPNV0077482 - KPNV0077488 | |
| PTX-0254 | | Report to SMG#28 from ETSI Legal Advisor re Report on Essential IPRs declared in relation to the work on SMB#28 (UMTS) | N/A | KPNV0077489 - KPNV0077523 | |
| PTX-0255 | | SMG#24 Tdoc SMG 930/97 Madrid, 15th - 19th December, 1997, Questions on IPR Issues | 1997/12/11 | KPNV0077524 - KPNV0077538 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0256 | | ETSI Collective Letter 09_2692 to ETSI Members, Observers and Counsellors re ETSI Directives, Version 25 - January 2009 | 2009/12/12 | KPNV0077539 - KPNV0077540 | |
| PTX-0257 | | ETSI Annex 1 IPR Information and Declaration Statement for General Instrument Corporation Motorola Broadband Communication Sector | 2000/10/06 | KPNV0077543 - KPNV0077545 | |
| PTX-0258 | | Letter to ETSI from Motorola European Intellectual Property Operations re General Declaration for W-CDMA | 1998/01/26 | KPNV0077551 | 401/402/403/802 |
| PTX-0259 | | IPR Information Statement and Licensing Declaration Forms for Matsushita Electric Industrial Co., Ltd. | 2000/09/01 | KPNV0077564 | 401/402/403/802 |
| PTX-0260 | | Letter to ETIS from Qualcomm re Intellectual Property Rights on IMT-2000 Radio | 1999/06/25 | KPNV0077566 | 401/402/403/802 |
| PTX-0261 | | ETSI General IRP Licensing Declaration for Research in Motion, Ltd. | 2008/03/11 | KPNV0077567 | 401/402/403 |
| PTX-0262 | | Letter to ETSI from Lucent re Declaration | 2000/10/31 | KPNV0077570 - KPNV0077574 | 401/402/403/611 |
| PTX-0263 | | Memorandum to SMG from H. Lafferre re Report on Essential IPRs declared in relation to the work of SM#24 | 1988/01/28 | KPNV0078344 - KPNV0078353 | 401/402/403/802 |
| PTX-0264 | | Letter to Qualcomm from ETSI re Qualcomm Letter for June 2, 1998 | 1998/06/16 | KPNV0078455 - KPNV0078462 | 401/402/403/611/802 |
| PTX-0265 | | ETSI TC SMG Meeting No. 21, ETSI/TC SMG (97) 1, Paris, February 10-14, 1997 (Part A) Executive Summary | 1997/02/10 | KPNV0078486 - KPNV0078563 | |
| PTX-0266 | | Letter to ETSI from AirTouch re Declaration re Intellectual Property Rights essential for UMTS radio access methods | 1998/01/23 | KPNV0078987 | 401/402/403/611 |
| PTX-0267 | | ETSI TC SMG Tdoc SMG 480/97, Meeting No. 22, Kristiansand, Norway, 9-13 June 1997, Proposal for concept groups for the definition of the UMTS Terrestrail Radio Access UTRA | 1997/06/09 | KPNV0079012 - KPNV0079023 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0268 | | Letter to ETSI from Salbu Research and Development Laboratories re Intellectual Property Rights essential for UMTS radio access methods and enclosing Declarations | 1998/01/27 | KPNV0079024 - KPNV0079027 | 401/402/403/611 |
| PTX-0269 | | Technical Report 3GPP TR21.900 V18.0.1 (2022-09), 3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; Technical Specification Group working methods (Release 18) | 2002/09/00 | KPNV0079030 - KPNV0079075 | |
| PTX-0270 | | Letter to ETSI from Telia re Call for IPRs Essential to ETSI Standards and enclosing IPR Licensing Declarations | 1998/06/19 | KPNV0079083 - KPNV0079086 | 401/402/403/611/802 |
| PTX-0271 | | Letter to ETSI from OKI re IPR Licensing Declaration | 1998/09/08 | KPNV0079087 - KPNV0079089 | 401/402/403/611/802 |
| PTX-0272 | | Mitsubishi Electric re IPR Licensing Declaration | 1997/12/11 | KPNV0079094 - KPNV0079095 | 401/402/403/611/802 |
| PTX-0273 | | ETSI IPR#02 ETSI/IPR02(08)14, Sophia Antipolis, 5-6 February 2008 Documents for Decision re Draft Minutes, decisions and actions | 200/03/03 | KPNV0079116 - KPNV0079121 | 401/402/403/802 |
| PTX-0274 | | Meeting of the EBU/CENELEC/ETSI Joint Technical Committee BROADCAST | 2000/03/07 | KPNV0079122 - KPNV0079129 | 401/402/403/802 |
| PTX-0275 | | 3GPP TSG RAN2 Meeting #69, R2-101441, San Francisco, USA, 22-26 February 2010, Change Request Form 25.331 Current Version 9.1.0 for Modification to Fast Dormancy in PCH States | 2010/02/15 | KPNV0079144 - KPNV0079162 | |
| PTX-0276 | | 3GPP TSG-RAN WG2 Meeting #69, R2-101440, R2-101624, San Francisco, United States, February 22-26, 2010, Change Request Form for Modification to Fast Dormancy in PCH States | 2010/02/12 | KPNV0079195 - KPNV0079212 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0277 | | 3GPP TSG-RAN WG2#69, R2-101188, San Francisco, United States, February 22-26, 2010, Document for Discussion and Decision re Fast Dormancy | 2010/02/22 | KPNV0079217 | |
| PTX-0278 | | 3GPP TSG-RAN WG2 Meeting #69, R2-101189, San Francisco, United States, February 22-26, 2010, Change Request Form for Correction to Fast Dormancy | 2010/02/11 | KPNV0079218 - KPNV0079221 | |
| PTX-0279 | | Cour d'appel de Paris, Pole 4 chambre 1, 6 octobre 2011, No. 09/22273 | 2011/10/06 | KPNV0079222 - KPNV0079225 | 403 |
| PTX-0280 | | ETIS IPR Information Statement and Licensing Declaration for Research and Motion Limited | 2011/06/29 | KPNV0079226 - KPNV0079230 | 401/402/403/611 |
| PTX-0281 | | Judgement from Huawei Technologies Co. Limited, et al.v. ZTE Corp., C-170/13, July 16, 2015 | 2015/07/16 | KPNV0082501 - KPNV0082517 | 403/MIL |
| PTX-0282 | | Email chain between J. Schnitzer, K. Baker, D. Roche and S. Pasquier re Tuesday call | 2017/10/02 | KPNV0103277 - KPNV0103286 | |
| PTX-0283 | | Email chain between S. Pasquier, D. Roche and J. Schnitzer re U-BLOX/Philips: GSM-AMR/UMTS/LTE Patent License | 2016/06/01 | KPNV0182114 - KPNV0182144 | |
| PTX-0284 | | Spreadsheet re Litigation Overview | N/A | KPNV0186138 | |
| PTX-0285 | | Cisco Annual Internet Report (2018-2023) | N/A | KPNV0186454 - KPNV0186488 | 401/402/403 |
| PTX-0286 | | ETSI (2022), ETSI Intellectual Property Rights Policy, ETSI Rules of Procedure Annex 6, Version 46, 29-30 November 2022 | 2022/11/00 | KPNV0186525 - KPNV0186536 | |
| PTX-0287 | | EBAY Inc., et al. v. Mercexchange, L.L.C. Syllabus from Supreme Court of the United States | 2006/05/15 | KPNV0186537 - KPNV0186538 | 403/MIL |
| PTX-0288 | | Ericsson Mobility Report | 2021/06/00 | KPNV0186539 - KPNV0186574 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0289 | | Grindley, et al., "Managing Intellectual Capital: Licensing and Cross-Licensing in Semiconductors and Electronics," California Management Review, Vol. 39, No. 2 | 1997/00/00 | KPNV0186615 - KPNV0186649; OR PRSNA-ITC0507806 - PRSNA-ITC0507840 | |
| PTX-0290 | | High Court of Justice, Chancery Division Patents Court, EWHC 1578, Approved Judgment | 2023/06/27 | KPNV0186989 - KPNV0187054 | 403/MIL |
| PTX-0291 | | McKinsey Global Institute Connected World | 2020/02/00 | KPNV0187117 - KPNV0187216 | |
| PTX-0292 | | Nikolic, et al., "CPI Columns Intellectual Property SEP Expert Group Report: A Look Into the IoT Future of SEP Licensing" | 2021/05/00 | KPNV0187226 - KPNV0187233 | |
| PTX-0293 | | Regional Court Mannheim 2 O 34/19, Judgment | 2020/08/18 | KPNV0187519 - KPNV0187558 | 403/MIL |
| PTX-0294 | | Teece, "Technological Leadership and 5G Patent Portfolios: Guiding Strategic Policy and Licensing Decisions," University of California Berkeley, Volume 63, No. 3, pp. 5-34 | 2021/00/00 | KPNV0187571 - KPNV0187600 | 403 |
| PTX-0295 | | Teece, et al., "A Public Policy Evaluation of Rand Decisions in U.S. Courts," Working Paper Series No. 15, 2016, from https://businessinnovation.berkeley.edu/intellectual-capital/working-papers/ | 2016/00/00 | KPNV0187601 - KPNV0187636 | 401/901 |
| PTX-0296 | | Teece, et al., Working Paper Series No. 21, Maintaining Ecosystem Innovation by Rewarding Technology Developers: FRAND, *Ex Ante* Rates and Inherent Value, Tusher Center | 2017/04/24 | KPNV0187637 - KPNV0187698 | 403 |
| PTX-0297 | | High Court of Justice, Chancery Division Patents Court, Unwired Planet v. Huawei, EWHC 711, Approved Judgment | 2017/04/05 | KPNV0187763 - KPNV0187935 | 403/MIL |
| PTX-0298 | | Vary, et al., "What's Next For FRAND, Competition Policy International | 2020/12/21 | KPNV0187936 - KPNV0187943 | 403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0299 | | Dasgupta, et al., "Protecting Innovation in the Mobile Wireless Ecosystem: Understanding and Addressing 'Hold-Out'," Berkeley Technology Law Journal, Vol. 38: Symposium, The Impact of the Patent System on Markets for Technology, pp. 313-348 | 2023/09/27 | KPNV0187944 - KPNV0187979 | 403/802 |
| PTX-0300 | | Heiden, et al., "The Value of Standard Essential Patents and the Level of Licensing" | 2020/10/23 | KPNV0187980 - KPNV0188013 | |
| PTX-0301 | | Communication From the Commission To the European Parliament and the Council | 2004/10/18 | KPNV0188014 - KPNV0188023 | |
| PTX-0302 | | Bekkers, et al., "Landscape Study of Potentially Essential Patents Disclosed to ETSI" | 2020/00/00 | KPNV0188847 - KPNV0188918 | 403/802 |
| PTX-0303 | | Approved Judgement from Interdigital Technology Corporation, et al. v. Lenovo, et al., High Court of Justice, Chancery Division Patents Court EWHC 539 | 2023/03/16 | KPNV0189410 - KPNV0189634 | 403/MIL |
| PTX-0304 | | Amended Rebuttal Expert Report of Jean-Sebastien Borghetti, 20-cv-1708 | 2023/04/28 | KPNV0191022 - KPNV0191124 | 401/402/403/NE |
| PTX-0305 | | Amended Expert Report of Johanna Dwyer from 20-cv-1708 | 2023/04/27 | KPNV0191158 - KPNV0191328 | 401/402/403/NE |
| PTX-0306 | | Expert Report of Antti Toskala from 20-cv-1708 | 2023/04/26 | KPNV0192708 - KPNV0192749 | 401/402/403/NE |
| PTX-0307 | | Expert Report of Allan Shampine from 20-cv-1709 and 20-cv-1713 | 2024/01/10 | KPNV0194643 - KPNV0194743 | 401/402/403/NE |
| PTX-0308 | | Expert Report of David Teece and exhibits A-G from 20-cv-1709 and 20-cv-1713 | 2024/01/10 | KPNV0194955 - KPNV0195379 | 401/402/403/NE |
| PTX-0309 | | Reply Expert Report of David Teece from 20-cv-1709 | 2024/02/13 | KPNV0195380 - KPNV0195450 | 401/402/403/NE |
| PTX-0310 | | Email chain between J. Hu, Y. Feng and S. Pasquier re Quectel_Philips IoT Cellular Communication Patent License | 2021/03/30 | KPNV0196136 - KPNV0196137 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0311 | | Email chain between J. Hu, S. Pasquier, Y. Feng re Quectel Machine to Machine Module Patent License Agreement: Philips lump sum license proposal | 2023/08/22 | KPNV0196138 - KPNV0196150 | |
| PTX-0312 | | Email to S. Pasquier from D. Djavaherian re Semtech-Philips Licensing Discussions | 2016/02/17 | KPNV0196331 - KPNV0196334 | 401/402/403 |
| PTX-0313 | | Email to M. Herigstad from M. Marion re Quectel Modules | 2020/05/04 | KPNV0196376 - KPNV0196384 | |
| PTX-0314 | | Email chain between B. Zhao, S. Pasquier, P. Zhang, M. Herigstad, G Goodwin and M. Marion re Avnet - Philips - Confidential | 2020/04/22 | KPNV0196385 - KPNV0196387 | |
| PTX-0315 | | Email chain between B. Zhao, M. Herigstad, Y. Feng, G Goodwin and M. Marion re Avnet - Philips | 2020/04/28 | KPNV0196388 - KPNV0196394 | |
| PTX-0316 | | Declaration of Dr. Sophie Pasquier | 2025/12/23 | KPNV0197004 - KPNV0197010 | 403/611 |
| PTX-0317 | | Email to S. Pasquier from D. Djavaherian re Sierra-Philips Licensing Discussions | 2021/04/20 | KPNV0201882 - KPNV0201884 | 401/402/403 |
| PTX-0318 | | Email to Mr. Qian, et al. from S. Pasquier re Philips GSM AMR/UMTX/LTE Patent License for cellular modules | 2025/11/12 | KPNV0204666 - KPNV0205230 | |
| PTX-0319 | | Spreadsheet re Business_case_financials Telit 20240822 | 2024/08/22 | KPNV0205231 | 401/402/403 |
| PTX-0320 | | Expert Report of Kalyan Dasgupta | 2025/12/23 | KPNV0205263 - KPNV0205611 | 401/402/403/NE |
| PTX-0321 | | Quectel BC68 Hardware Design LPWA Module Series, Version 1.3 | 2019/03/30 | KPNV0245931 - KPNV0245983 | |
| PTX-0322 | | Quectel BC95-G Hardware Design LPWA Module Series, Version 1.3 | 2019/03/18 | KPNV0245984 - KPNV0246036 | |
| PTX-0323 | | Gati, et al., "Exposure Induced by WCDMA Mobiles Phones in Operating Networks," IEEE | 2009/12/00 | KPNV0246770 - KPNV0246774 | |
| PTX-0324 | | Persson, et al., "Output power distributions of terminals in a 3G mobile communication network," Bio Electro Magnetics, Vol. 33, Issue 4 | 2012/00/00 | KPNV0246787 - KPNV0246792 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0325 | | ETSI TS 134 121-1 V16.2.0 (2020-11) Technical Specification for Universal Mobile Telecommunications System (UMS); User Equipment (UE) conformance specification; Radion transmission and reception (FDD): Part 1: Conformance specification (3GPP TS 34.121-1 version 16.20.0 Release 16) | 2020/11/00 | KPNV0246805 - KPNV0249027 | |
| PTX-0326 | | 3GPP TS 25.101 V.6.10.0 (2005-12) Technical Specification, 3r Generation Partnership Project; Technical Specification Group Radio Access Network; User Equipment (UE) radio transmission and reception (FDD) (Release 6) | 2005/12/00 | KPNV0255223 - KPNV0255356 | |
| PTX-0327 | | European Telecommunication Standard draft for ETS 300 910, Fifth Edition, Digital cellular telecommunications system (Phase 2+); Radion transmission and reception (GSM 05.05 version 5.8.0) | 1998/05/00 | KPNV0256020 - KPNV0256069 | |
| PTX-0328 | | European Telecommunication Standard draft for ETS 300 910, Sixth Edition, Digital cellular telecommunications system (Phase 2+); Radion transmission and reception (GSM 05.05 version 5.9.0 Release 1996) | 1998/07/00 | KPNV0256070 - KPNV0256120 | |
| PTX-0329 | | 3GPP TR 21.900 9.0.0 (2009-12) Technical Report 3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; Technical Specification Group working methods (Release 9) | N/A | KPNV0256121 - KPNV0256155 | |
| PTX-0330 | | Draft of 3GPP TSG-T2 MExE, Portland, Oregon, US, 23rd-25th October, 2001, T2-MExE-010xxx | N/A | KPNV0256157 - KPNV0256166 | |
| PTX-0331 | | ETSI/TC SMG Update Note Recommendation GSM 05.05, Updated by ETSI/PT 12 | 1993/10/00 | KPNV0256371 - KPNV0256393 | |
| PTX-0332 | | ETSI IPR Information Statement and Licensing Declaration for Bijitec Pte Ltd. | 2001/06/27 | KPNV0256394 - KPNV0256395 | 401/402/403/611 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0333 | | ETSI IPR Information Statement and Licensing Declaration for Media Farm, Inc./Srivivas Bharadwaj | 2001/11/14 | KPNV0256396 - KPNV0256397 | 401/402/403/611 |
| PTX-0334 | | Email chain between K. Holley and D. Chen re CR 23.040: Line Drawing as Extended Object in EMS | 2001/08/22 | KPNV0256398 | 403/802 |
| PTX-0335 | | 3GPP TSG-T2#12, Beverly Hills, USA, February 12th - February 16th 2001, T2-010041, 3GPP TSG-T2 MExE Meeting Report | N/A | KPNV0256399 - KPNV0256421 | |
| PTX-0336 | | Virtual Palm Top | N/A | KPNV0256422 - KPNV0256437 | 401/901 |
| PTX-0337 | | Change Request for 3GPP TSG-T2 Meeting #14, Edinburgh, UK, September 3-7, 2001, T2-010734, 23.040 CR, Version 5.0.0 | 2001/08/22 | KPNV0256438 - KPNV0256449 | |
| PTX-0338 | | European Commission Annexes 1 to 5 to the Communication From the Commission to The European Parliament, The Council, The European Economic and Social Committee and the Committee of the Regions | 2025/02/11 | KPNV0256739 - KPNV0256767 | |
| PTX-0339 | | European Commission Proposal for a Regulation of the European Parliament and of the Council on standard essential patents and amending Regulation (EU)2017/1001 | 2023/04/27 | KPNV0256863 - KPNV0256940 | |
| PTX-0340 | | European Parliament 2025-2026 Minutes of the sitting of November 25, 2025 | 2025/11/25 | KPNV0256941 - KPNV0256968 | 401/402/403 |
| PTX-0341 | | Standard essential patents, 2023/0133(COD) | 2024/02/28 | KPNV0256969 - KPNV0256971 | 401/402/403 |
| PTX-0342 | | ETSI IPR#37 Electronic meeting, 8 March 2022, ETSI/IPR(22)037_002, Agenda Item 6.1, 6.3 from ETSi Director-General, Document for Information | 2022/02/18 | KPNV0256972 - KPNV0256975 | 401/402/403 |
| PTX-0343 | | ETSI Annex 1 to increase transparency of ETSI IPR declaration, IPR#38, Agenda Item 5 for Discussion | 2022/11/03 | KPNV0256976 - KPNV0256983 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0344 | | ETSI IPR#38, Hybrid meeting, 3 November 2022, ETSI/IPR(22)038_007r1, from DOCOMO, Agenda Item 8, Document for Discussion | 2022/10/28 | KPNV0256984 - KPNV0256985 | 401/402/403 |
| PTX-0345 | | ETSI IPR#39, Hybrid meeting Berlin, 1 June 2023, ETSI/IPR(23)039_002, from ETSI Director-General, Agenda Item 5.1, 5.2, Document for Information | 2023/05/24 | KPNV0256986 - KPNV0256988 | 401/402/403 |
| PTX-0346 | | ETSI IPR#39, Hybrid meeting Berlin, 1 June 2023, ETSI/IPR(23)039_005, from ETSI Director-General, Agenda Item 5.3, Document for Discussion | 2023/05/24 | KPNV0256989 - KPNV0256993 | 401/402/403 |
| PTX-0347 | | ETSI IPR#40, Hybrid meeting Sophia Antipolis, 15 March 2024, ETSI/IPR(24)040_002r1, from ETSI Director-General, Agenda Item 4.6.1, Document for Information | 2024/03/13 | KPNV0256994 - KPNV0256996 | 401/402/403 |
| PTX-0348 | | ETSI IPR#40, Hybrid meeting Sophia Antipolis, 15 March 2024, ETSI/IPR(24)040_003r1, from DOCMO, Agenda Item 4.6.2, Document for Decision | 2024/03/12 | KPNV0256997 - KPNV0257001 | 401/402/403 |
| PTX-0349 | | ETSI IPR#40, Hybrid meeting Sophia Antipolis, 15 March 2024, ETSI/IPR(24)040_004r1, from EC, Agenda Item 6.5, Document for Information, Late Submission | 2024/03/13 | KPNV0257002 | 401/402/403 |
| PTX-0350 | | ETSI IPR#40, Hybrid meeting Sophia Antipolis, 15 March 2024, ETSI/IPR(24)040_006r1, from Steve Faraji, Meeting Report, Document for Decision | 2024/07/19 | KPNV0257003 - KPNV0257009 | 401/402/403 |
| PTX-0351 | | European Commission's proposal for a Regulation on Standard Essential Patents," ETSI IPR SC#40 | 2024/03/15 | KPNV0257010 - KPNV0257037 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0352 | | ETSI IPR#42, Hybrid meeting Sophia Antipolis, 1 October 2025, ETSI/IPR(25)042_002, from Ericsson, Agenda Item 6, Document for Discussion | N/A | KPNV0257038 - KPNV0257042 | 401/402/403 |
| PTX-0353 | | ETSI IPR#42, Hybrid meeting Sophia Antipolis, 1 October 2025, ETSI/IPR(25)042_003, from ETSI Director-General, Agenda Item 8, Document for Information | N/A | KPNV0257043 - KPNV0257052 | 401/402/403 |
| PTX-0354 | | Decision from Optis Cellular Technology, LLC, et al, v. Apple Inc., 22-1925 (Dkt. 3) | 2025/06/16 | KPNV0257173 - KPNV0257209 | 403/MIL/NE |
| PTX-0355 | | Judgment from Optis Cellular Technology, LLC, et al, v. Apple Inc., 22-1925 (Dkt. 4) | 2025/06/16 | KPNV0257210 | 403/MIL/NE |
| PTX-0356 | | Memorandum of Understanding On The Implementation of a Pan European 900 MHz Digital Cellular Mobile Telecommunications Service by 1991 | 1987/09/07 | KPNV0257211 - KPNV0257237 | 401/402/403 |
| PTX-0357 | | Pohlmann, et al., IP Lytics Landscaping study on Standard Essential Patents (SEPs) | 2016/09/00 | KPNV0257238 - KPNV0257299 | 401/402/403/802 |
| PTX-0358 | | Annex 1 - IPR Information Statement for Omnipoint | 1998/12/16 | KPNV0257300 - KPNV0257301 | 401/402/403 |
| PTX-0359 | | ITU-T Recommendation I.130 | N/A | KPNV0257302 - KPNV0257309 | |
| PTX-0360 | | Apple's Answer, Defenses, and Counterclaims To Core Wireless Licensing S.A.R.L.'s First Amended Complaint, Core Wireless v. Apple Inc., 5:15-cv-5008 (Dkt. 472) | 2016/12/22 | KPNV0257339 - KPNV0257342 | 403/MIL/NE |
| PTX-0361 | | Order on Equitabble Estoppel, Core Wireless v. Apple Inc., 5:15-cv-5008 (Dkt. 205) | 2016/04/14 | KPNV0257310 - KPNV0257338 | 403/MIL/NE |
| PTX-0362 | | Bekkers, et al., "Disclosure rules and declared essential patents," Elsevier | 2022/08/08 | KPNV0257358 - KPNV0257371 | 403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0363 | | Biddle, "Five Reasons Why Patent Disclosure in Standards-Setting Organizations Doesn't Work (And What To Do Instead) | 2016/05/01 | KPNV0257372 - KPNV0257379 | 403/802 |
| PTX-0364 | | Diaz-Marta, Over and under-disclosure of standard essential patents: An EU approach to its effects on innovation and competition" | 2023/11/15 | KPNV0257380 - KPNV0257671 | 403/802 |
| PTX-0365 | | ETSI/GA29(97)SCM/03, 29th General Assembly | 1997/08/01 | KPNV0257756 - KPNV0257761 | |
| PTX-0366 | | ETSI/GA46(05)28, ETSI 46th General Assembly Meeting | 2006/11/22 | KPNV0257762 - KPNV0257763 | |
| PTX-0367 | | ETSI GA ahg on IPR Review #2, Sophia Antipolis, 22-23 February 2006, ETSI GA/IPRR02(06)05, Document for Discussion | 2024/09/01 | KPNV0257764 - KPNV0257771 | 401/402/403 |
| PTX-0368 | | 3G Licensing W-DCMA Technology, W_CDMA Patent Licensing Programme, Presentation Package for Prospective Licensors | 2006/01/10 | KPNV0257779 - KPNV0257826 | |
| PTX-0369 | | Detail of RTS/TSGR-0225331UR5 Work Item Schedule from https://portal.etsi.orgleWPM/index.html#/schedule?WKI_ID=13586 | N/A | KPNV0257843 | 401/901 |
| PTX-0370 | | Detail of DTS/TSGR-0136211v830 Work Item Schedule from https://portal.etsi.orgleWPM/index.html#/schedule?WKI_ID=29211 | N/A | KPNV0257845 | 401/901 |
| PTX-0371 | | Details for DTS/TSGR-0136212v830 Work Item Schedule from https://portal.etsi.org/eWPMlindex.html#/schedule?WKI_ID=29213 | N/A | KPNV0257846 | 401/901 |
| PTX-0372 | | Details of RTS/TSGR-0136213v830 Work Item Schedule from https://portal.etsi.orgleWPM/index.html#/schedule?WKI_ID=29215 | N/A | KPNV0257847 | 401/901 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0373 | | Detailsof DTS/TSGR-0236321v820 Work Item Schedule fromhttps://portal.etsi.orgleWPM/index.html#/schedule?WKI_ID=29223 | N/A | KPNV0257848 | 401/901 |
| PTX-0374 | | Details of RTS/TSGR-0236321v830 Work Item Schedule from https://portal.etsi.orgleWPM/index.html#/schedule?WKI_ID=29224 | N/A | KPNV0257849 | 401/901 |
| PTX-0375 | | Details of DTS/TSGR-0125211U Work Item Schedule from https://portal.etsi.orgleWPM/index.html#/schedule?WKI_ID=7734 | N/A | KPNV0257850 | 401/901 |
| PTX-0376 | | Details of DTS/TSGR-0125214U Work Item Schedule from https://portal.etsi.orgleWPMlindex.html#lschedule?WKI_ID=7737 | N/A | KPNV0257851 | 401/901 |
| PTX-0377 | | Details of DYS/TSGR-0425101U Work Item Schedule from https://portal.etsi.orgleWPMlindex.html#/schedule?WKI_ID=7771 | N/A | KPNV0257852 | 401/901 |
| PTX-0378 | | Details of DTS/TSGS-0223002U Work Item Scheudle from https://portal.etsi.orgleWPMlindex.html#/schedule?WKI_ID=8890 | N/A | KPNV0257853 | 401/901 |
| PTX-0379 | | T2#12 Report V 1.0 (2001-05) | 2001/05/00 | KPNV0257854 - KPNV0257962 | |
| PTX-0380 | | ETSI TR 121 900 V9.0.0 (2010-01) Technical Report | 2010/01/00 | KPNV0257963 - KPNV0257999 | |
| PTX-0381 | | 3GPP TSG RNA WG2 WG2 #44, Sophia Antipolis, France, 4-8 October 2004, R2-042154, Document for Discussion, Decision for Philips' Logical Channel Starvation | 2004/10/04 | KPNV0002409 - KPNV0002410 | 403/802 |
| PTX-0382 | | Spreadsheet re ATT_Approved_Modules | 2025/08/28 | KPNV0021376 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0383 | | ETSI/GA17(93)3 Document for Information re Letters from ETSI Members regarding the signature of the ETSI IPR Undertaking | 1993/06/04 | KPNV0038891 - KPNV0038898 | |
| PTX-0384 | | ETSI GA ahg on IPR#1 ETSI GA/IPR01(03)21 rev. 2, Sophia Antipolis, 23-24 January 2003, Secretary's meeting notes | 2003/02/24 | KPNV0039096 - KPNV0039110 | 401/402/403 |
| PTX-0385 | | ETSI GA ahg on IPR#6 ETSI GA/IPR06(03)06 rev. 1, Sophia Antipolis, 29 October 2003, Document for Decision re draft Report of the GA ad hoc group on ETSI's IPR Policy | 2003/10/29 | KPNV0039506 - KPNV0039529 | 401/402/403 |
| PTX-0386 | | ETSI 5th Technical Assembly ETSI/TA 5 (89) 16, Stockhol, 27/28 September 1989, Executive Summary of the First Meeting of the ETSI Group For Intellectual Property Rights | 1989/09/08 | KPNV0039610 - KPNV0039614 | 401/402/403 |
| PTX-0387 | | ETSI 9th Technical Assembly ETSI/TA 9 (91) 6, Nice, 4-6 March 1991, Document for Discussion re IPRC Progress Report | 1991/02/14 | KPNV0039701 - KPNV0039729 | 401/402/403 |
| PTX-0388 | | ETSI 7th Technical Assembly ETSI/TA 7 (90) 31, Nice, 3-4 July 1990, Intellectual Property Policy and Procedures, June 25, 1990 | 1990/06/25 | KPNV0039785 - KPNV0039811 | 401/402/403 |
| PTX-0389 | | ETSI Directives | 2004/12/00 | KPNV0043781 - KPNV0043902 | |
| PTX-0390 | | ETSI Directives, Version 005 | 1993/03/00 | KPNV0045712 - KPNV0045775 | |
| PTX-0391 | | All ETSI Board Decision, Draft Decisions from B#139, 06-08 September 2022 | 2022/09/00 | KPNV0050909 - KPNV0051059 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0392 | | ETSI 15th General Assembly ETSI/GA 15 (93) 18, Nice, 16-18 March 1993 Document for Discussion and Decision re Comments on ETSI Intellectual Property Rights Framework, February 9, 1993 | 1993/03/16 | KPNV0051165 - KPNV0051176 | 401/402/403 |
| PTX-0393 | | ETSI Temp Doc 13, 22nd General Assembly, Nice, 30 March 1995, Document for Information re Notice in the Official Journal concerning the ETSI IPR Policy | 1995/03/30 | KPNV0051369 - KPNV0051374 | 401/402/403 |
| PTX-0394 | | Collective letter No. 837 from ETSI to Members, Observers and Counsellors of ETSI re Letter from Philips on the signature of the ETSI IPR Undertaking | 1993/12/21 | KPNV0051479 - KPNV0051481 | 401/402/403 |
| PTX-0395 | | ETSI SMG Meeting No. 24bis, ETSI/SMG (98) Part A Executive Summary SMG #24bis | 1998/01/28 | KPNV0051570 - KPNV0051571 | 401/402/403 |
| PTX-0396 | | Letter to ETIS from Nortel re General Declaration for W-CDMA system standards | 1997/01/27 | KPNV0068234 - KPNV0068235 | 401/402/403/611 |
| PTX-0397 | | Letter to ETSI from NTT Mobile Communications Network, Inc. re General Declaration for W-CDMA proposal | 1997/12/08 | KPNV0068245 - KPNV0068246 | 401/402/403/611 |
| PTX-0398 | | Letter to ETSI from NEC re Intellectual Property Rights Essential to UMTS Radio Access Methods | 1997/12/17 | KPNV0068247 | 401/402/403/802 |
| PTX-0399 | | Brief of Telefonaktiebolaget LM Ericsson, et al. in Case No. 19-2039 CAFC (Dkt. 36) | 2019/10/18 | KPNV0068598 - KPNV0068638 | 403/MIL/NE |
| PTX-0400 | | Brismark, "On the Timing of ETSI Disclosures" | 2021/12/17 | KPNV0069181 - KPNV0069199 | 401/402/403/802 |
| PTX-0401 | | 3GPP Portal - Releases | 2022/12/21 | KPNV0069241 - KPNV0069242 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0402 | | ETSI/GA 2(94)5, 2th ETSI General Assembly 22-23 November 1994, Nice, STET/Italtel Document for Information Discussion re Proposal for an ETSI interim IPR Policy | 1994/10/24 | KPNV0069278 - KPNV0069283 | |
| PTX-0403 | | ETSI/GA20(94)2 Annex VI List of questions for Bilateral meetings | 1994/04/28 | KPNV0073984 - KPNV0074045 | |
| PTX-0404 | | ETSI Collective Letter 995 to ETSI Members, Observers and Counsellors re ETSI IPR Undertaking | 1994/07/28 | KPNV0074102 - KPNV0074104 | |
| PTX-0405 | | ETSI/GA 12 (92) 20 Rev. 1, Minutes of the 12th General Assembly | N/A | KPNV0074185 - KPNV0074220 | 401/402/403 |
| PTX-0406 | | Final Minutes of the ETSI 21st General Assembly including the Specially Convened Meeting, 22-23 November 1994, Nice, ETSI/GA21(94)39 Rev. 2 | 1994/11/22 | KPNV0074252 - KPNV0074273 | 401/402/403 |
| PTX-0407 | | ETSI/GA42(03)34, ETSI 42nd General Assembly meeting Nice, 25-26 November 2003, Document for Decision re Draft Summary Minutes, decisions and actions from the 42nd ETSI General Assembly Meeting | 2004/03/01 | KPNV0074349 - KPNV0074377 | 401/402/403 |
| PTX-0408 | | ETSI/GA 9 (90) 9, ETSI 9th General Assembly, Nice, 20-21 November 1990, Document for Information and Discussion re Intellectual Property Policy and Procedures | 1990/11/16 | KPNV0074378 - KPNV0074410 | 401/402/403 |
| PTX-0409 | | ETSI 13th Technical Assembly ETSI/TA 13 (92) 5, Nice, 6 February 1992, Document for Decision re Principles on Procedures for disclosures of IPRs | 1992/01/22 | KPNV0074445 - KPNV0074446 | 401/402/403 |
| PTX-0410 | | ETSI 10th Technical Assembly Temp. Doc. 19, Nice, 4-6 June 1991, Document for Discussion re Amended proposal on the principals of an IPR policy for ETSI | 1991/05/31 | KPNV0074513 - KPNV0074521 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0411 | | ETSI 10th Technical Assembly Temp. Doc. 30, Nice, 4-6 June 1991, Document for Discussion re Comments on TA10(91)17: Reflections on ETSI/IPR Policy | 1991/06/04 | KPNV0074526 - KPNV0074531 | 401/402/403 |
| PTX-0412 | | ETSI Doc. GA 7(90) 17 Draft Minutes of the Seventh Assembly of the European Telecommunications Standards Institute, Nice, 8-9 March 1990 | 1990/03/08 | KPNV0075425 - KPNV0075465 | 401/402/403 |
| PTX-0413 | | ETSI/GA40(02)22 rev. 1, 40. Sitzung der ETSI-Generalversammlung Nizza, 26-27, November 2002, Documents for Decision re ENTWURF Zusammenfassender Sitzungsbericht, Entscheidungen und Aktionen von der 40. Sitzung der ETSI-Generalversammlung | 2003/01/17 | KPNV0075471 - KPNV0075490 | 401/402/403 |
| PTX-0414 | | Minutes of the Inaugural General Assembly of the European Telecommunications Standards Institute, Nice, Sophia Antipolis, 29-30 March 1988 | 1998/03/29 | KPNV0075599 - KPNV0075619 | 401/402/403 |
| PTX-0415 | | ETSI GA ahg on IPR#1, ETSI GA/IPR01(03)02, Sophia Antipolis, 23-24 January 2003 Document for Information re Terms of Reference of the GA ad-hoc on ETSI's IPR Policy operation, January 21, 2003 | 2003/01/21 | KPNV0075649 - KPNV0075650 | 401/402/403 |
| PTX-0416 | | ETSI 13th Technical Assembly Temp. Doc. 6, Nice, 6 February 1992, Document for Discussion re Principles on Procedures for disclosure of IPRs | 1992/02/06 | KPNV0075651 | 401/402/403 |
| PTX-0417 | | ETSI Board#39 Temporary document 05, Munich, 28-29 August 2002, Document for Information re Follow up of the ETSI EC/DG-COMPETITION meeting of 12 July 2002 concerning Smart Cards ex officio Case 37926 (Sun/ETSI) | 2002/08/23 | KPNV0075727 - KPNV0075731 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0418 | | 3GPP/PCG#12 Meeting 3GPP/PCG#12(04)19, St. Paul de Vence, France, 14 April 2004 Document for Information re Implementation of the ETSI IPR Policy (CX-0885) | 2004/04/07 | KPNV0075732 - KPNV0075753 | 401/402/403 |
| PTX-0419 | | 3GPP The Work Plan from https://www.3gpp.org/specifications-technologies/3gpp-work-plan | 2023/04/18 | KPNV0076281 | 401/901 |
| PTX-0420 | | Dutheil, "Droit Des Associations Et Fondations," pp. 35 | 2016/00/00 | KPNV0076335 - KPNV0076337 | 403 |
| PTX-0421 | | Cour de Cassation, Chambre Sociale, du 31 Octobre 1989, 86-41234, Bull. Civ. I, no. 243 (English), October 31, 1989 | 1989/10/31 | KPNV0076436 - KPNV0076437 | 403 |
| PTX-0422 | | Cour de Cassation, Chambre civile 1, du 7 Octobre 1992, 90-21141, Bull. Civ. I, no. 243 (English), October 7, 1992 | 1992/10/17 | KPNV0076509 - KPNV0076510 | |
| PTX-0423 | | Cour de Cassation, Chambre commerciale, du 10 avril 1964, 08-15457, Bull. Civ. IV, no. 173 (French), April 10, 1964 | 1964/04/10 | KPNV0076627 | 403 |
| PTX-0424 | | Cour de Cassation, Chambre commerciale, du 26 Mai 1998, 96-12207, Bull. Civ. I, no. 165 (English) | 1998/05/26 | KPNV0076633 - KPNV0076634 | |
| PTX-0425 | | Bore, "La Cassation en Matier Civile," Section 79-151 | 2015/04/00 | KPNV0076930 - KPNV0076932 | 403 |
| PTX-0426 | | CA Versailles, 14e ch., 27 mai 2009, No 08-02957 | 2009/05/27 | KPNV0076945 - KPNV0076949 | 403 |
| PTX-0427 | | Cour de cassation, Chambre civile 1, du 29 Juin 1994, No. 92-13035 (French), June 29, 1994 | 1994/06/29 | KPNV0076950 - KPNV0076951 | 403 |
| PTX-0428 | | "3GPP Conformance Testing Key Factors and Requirements for 3GPP Conformance Testing," by RCR Wireless News | 2014/05/09 | KPNV0077134 - KPNV0077142 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0429 | | ETSI/GA52(08)SCM07, Specially Convened Meeting held in connection the ETSI 52nd General Assembly, Nice, 25-26 November 2008, Document for Decision re Change to ETSI Rules of Procedure Annex 6 concerning mandatory use of the IPR forms | 2017/05/00 | KPNV0077213 - KPNV0077235 | |
| PTX-0430 | | ETSI IPR#36 ETSI/IPR(21)036_002r1, Electronic meeting, 5-6 October 2021, Document for Information re Current status of the ETSI IPR Database and IPR related IT projects | 2021/09/17 | KPNV0077291 - KPNV0077294 | 401/402/403 |
| PTX-0431 | | ETSI/GA#36 Temp. Doc. 06, ETSI 36th General Assembly meeting, Nice, 21-22 November 2000, Document for Decision re Application of ETSI IPR Policy in Smart Cards standarization | 2000/11/15 | KPNV0077295 - KPNV0077299 | 401/402/403 |
| PTX-0432 | | ETSI/GA46(05)16 rev. 1, ETSI 46th General Assembly meeting, Nice, 22-23 November 2005, Document for Decision re IPR Committee to work on IPR reform in standards | 2005/11/22 | KPNV0077340 - KPNV0077344 | 401/402/403 |
| PTX-0433 | | ETSI/GA52(08)SCM07, Specially Convened Meeting held in connection the ETSI 52nd General Assembly, Nice, 25-26 November 2008, Document for Decision re Change to ETSI Rules of Procedure Annex 6 concerning mandatory use of the IPR forms | 2008/11/09 | KPNV0077379 - KPNV0077385 | |
| PTX-0434 | | ETSI Board#30 ETSI/B30(00)15 rev. 2, Sophia Antipolis, 14-15 December 2000, Document for Decision re Summary Minutes, decisions and actions from 30th ETSI Board Meeting, Sophia Antipolis, 14-15 December 2000 | 2001/02/22 | KPNV0077414 - KPNV0077437 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0435 | | ETSI Board#28 ETSI B28(00)24 Rev. 2, Sophia Antipolis, 5-6 September 2000, Document re Decision re Summary minutes, decisions and actions from 28th ETSI Board Meeting, Sophia Antipolis, 5-6 September 2000 | 2000/10/26 | KPNV0077444 - KPNV0077467 | 401/402/403 |
| PTX-0436 | | Letter to ETSI from Qualcomm re agenda item for SMG26 meeting, | 1998/06/08 | KPNV0077470 - KPNV0077481 | 401/402/403 |
| PTX-0437 | | CCETT Intellectual Property Rights Licensing Declaration Standard ESTI/UMTS | 1998/12/14 | KPNV0077563 | 401/402/403/611 |
| PTX-0438 | | Email to J. Lancry from T. Frost re AT&T IPR Statement re ETSI TS 101 909-16 | 2004/09/03 | KPNV0077575 | 401/402/403 |
| PTX-0439 | | Letter to ETSI from Hitachi, Ltd. re IPR for UMTS radio access methods | 1998/06/18 | KPNV0077580 | 401/402/403 |
| PTX-0440 | | ETSI IPR#31bis ETSI/IPR(19)31bis005, Sophia Antipolis, 15 April 2019, Documents for Discussion re ETSI Database and Transparency | 2019/04/10 | KPNV0078995 - KPNV0078998 | 401/402/403 |
| PTX-0441 | | ETSI/GA52(08)SCM07, Specially Convened Meeting held in connection the ETSI 52nd General Assembly, Nice, 25-26 November 2008, Document for Decision re Change to ETSI Rules of Procedure Annex 6 concerning mandatory use of the IPR forms | 2008/11/09 | KPNV0079004 - KPNV0079010 | |
| PTX-0442 | | 3GPP TSG-RAN WG2#69, R2-101439, San Francisco, United States, February 22-26, 2010, Document for Discussion and Decision re Fast Dormacy Behaviour in PCH States | 2010/02/22 | KPNV0079130 - KPNV0079131 | |
| PTX-0443 | | 3GPP TSG-RAN WG2 Meeting #69, R2-101726, R2-101624, San Francisco, United States, February 22-26, 2010, Change Request Form for Correction to Fast Dormancy | 2010/02/26 | KPNV0079138 - KPNV0079143 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0444 | | 3GPP TSG-RAN WG2 Meeting #69, R2-10xxx, R2-101624, San Francisco, United States, February 22-26, 2010, Change Request Form for Correction to Fast Dormancy | 2010/02/25 | KPNV0079163 - KPNV0079168 | |
| PTX-0445 | | 3GPP TSG-RAN WG2 Meeting #69, R2-101624, San Francisco, United States, February 22-26, 2010, Change Request Form for Correction to Fast Dormancy | 2010/02/22 | KPNV0079213 - KPNV0079216 | |
| PTX-0446 | | Letter to ETSI from Thomson Images & Beyond re Intellectual Property Rights (IPRs) related to ETSI specification TS 101 812 | 2006/08/31 | KPNV0079231 | 401/402/403 |
| PTX-0447 | | Portable Device and UMTS/LTE Master Agreement between Koninklijke Philips N.V. and ASUSTek Computer Inc. | 2020/12/31 | KPNV0152086 - KPNV0152095 | |
| PTX-0448 | | UMTS/LTE Terminal Patent License and Stipulation of Dismissal Agreement between Koninklijke Philips N.V. and ASUSTek Computer Inc., dated December 31, 2020 | 2020/12/31 | KPNV0152140 - KPNV0152175 | |
| PTX-0449 | | Approved Judgement from Unwired Planet International Limted, et al. v. Huawei Technologies Co. Limited, et al., [2017] EWHC 711 | 2017/04/05 | KPNV0165996 - KPNV0166161 | 403/MIL/NE |
| PTX-0450 | | High Court of Justice, Chancery Division Patents Court, EWHC 1095, Approved Judgment | 2023/05/10 | KPNV0186684 - KPNV0186968 | 403/MIL/NE |
| PTX-0451 | | High Court of Justice, Chancery Division Patents Court, EWHC 29, Approved Judgment | 2020/01/17 | KPNV0186969 - KPNV0186988 | 403/MIL/NE |
| PTX-0452 | | Microsoft Corp. v. Motorola, Inc., et al., Opinion for Case No. 14-35393 | 2015/07/30 | KPNV0187699 - KPNV0187762 | 403/MIL/NE |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0453 | | Findings of Fact and Conclusions of Law, Microsoft v. Motorola, Inc., Case No. C-10-1823JLR, U.S. District Court, Western District of Washington at Seattle, April 25, 2013 | 2013/04/25 | KPNV0189015 - KPNV0189221 | 403/MIL/NE |
| PTX-0454 | | Communication From the Commission Intellectual Property Rights and Standardization, COM(92) 445 Final | 1992/10/27 | KPNV0192550 - KPNV0192585 | |
| PTX-0455 | | Holma, et al., "WCDMA For UMTS Radio Access For Third Generation Mobile Communications," Third Edition, 2004 | 2004/00/00 | KPNV0246037 - KPNV0246517 | |
| PTX-0456 | | ETSI Doc IPRR05(06)08a1, Agenda Item 6, CLA + MCOI, Document for Discussion | N/A | KPNV0257731 - KPNV0257737 | 401/402/403 |
| PTX-0457 | | ETSI GA ahg on IPR Review #6, Sophia Antipolis, 7-8 September 2006, ETSI GA/IPRR06(06)24 Rev. 3 | 2006/09/14 | KPNV0257738 - KPNV0257755 | 401/402/403 |
| PTX-0458 | | ETSI GA/IPRR03(06)05, Agenda Item 5, Siemens AG "Proposal for way forward Input for discussion" | 2006/03/22 | KPNV0257772 - KPNV0257778 | 401/402/403/802 |
| PTX-0459 | | ETSI GA-IPR#4 Introduction to the W-CDMA Patent Licensing Programme | 2006/05/11 | KPNV0257827 - KPNV0257841 | |
| PTX-0460 | | Laird's User Guide Sentrius RG191+LTE, Version 2.0 | 2021/02/12 | LCI0000187 - LCI0000242 | |
| PTX-0461 | | Set of documents focused on 3GPP Portal Specification #36.321 | N/A | ITC-RECORD-0005436 - ITC-RECORD-0005799 | |
| PTX-0462 | | 3GPP Portal Specification #36.321 | N/A | ITC-RECORD-0005799 | |
| PTX-0463 | | R&S CMW-KT02x CMWmars Message Analyzer User Manual, Version 27 | 2020/00/00 | PRSNA_ITC0549791 - PRSNA_ITC0550124 | 401/402/403 |
| PTX-0464 | | Letter to O. Piou from Philips re Philips GSM-AMR/UMTS/LTE Licensing Program | 2015/12/11 | PRSNA-ITC0140881 - PRSNA-ITC0140902 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0465 | | Quectel Specification for BC68 Ultra-compact Multi-band NB-Iot Module with Ultra-low Power Consumption, Version 1.8 | 2020/00/00 | PRSNA-ITC0143079 - PRSNA-ITC0143080 | |
| PTX-0466 | | Quectel Specification for BC95-G Multi-band NB-Iot Module with Ultra-low Power Consumption, Version 1.9 | 2020/00/00 | PRSNA-ITC0143087 - PRSNA-ITC0143088 | |
| PTX-0467 | | Quectel LTE-A EM06 from https://www.quectel.com/product/EM06.htm | 2020/08/12 | PRSNA-ITC0143254 - PRSNA-ITC0143259 | 401/901 |
| PTX-0468 | | Approved Judgment for Unwired Planet International Ltd. and Huawei Technologies Co. Ltd., Case No. HP-2014-000005 | 2017/04/05 | PRSNA-ITC0192419 - PRSNA-ITC0192584 | 403/MIL |
| PTX-0469 | | 3GPP TS 36.331 V8.5.0 (2009-03) Technical Specification, 3rd Generation Partnership Project; Technical Specificaton Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA) Radio Resource Control (RRC); Protocol Specification (Release 8) | 2009/03/00 | PRSNA-ITC0200301 - PRSNA-ITC0200504 | |
| PTX-0470 | | Stasik, "Royalty Rates and Licensing Strategies For Essential Patents On LTE (4G) Telecommunications Standards," Royalty Rates For Telecommunications, les Nouvelles, pp. 114–119 | 2010/09/00 | PRSNA-ITC0454987 - PRSNA-ITC0454992 | 403/802 |
| PTX-0471 | | Communication From the Commission To the European Parliament and the Council and The European Economic and Social Committee | 2017/11/29 | PRSNA-ITC0456490 - PRSNA-ITC0456503 | 401/402/403/802 |
| PTX-0472 | | Email chain between B. Zhao, S. Pasquier, Y. Feng, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/03/30 | PRSNA-ITC0469555 - PRSNA-ITC0469571 | |
| PTX-0473 | | Email chain between D. Shang, Y. Feng, P. Zhang and E. Nie re Meeting Minutes of March 9th | 2018/04/19 | PRSNA-ITC0469575 - PRSNA-ITC0469591 | |
| PTX-0474 | | Email chain between J. Zhu and P. Zhang re Meeting Minutes of March 9th | 2016/04/09 | PRSNA-ITC0469605 - PRSNA-ITC0469607 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0475 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/04/03 | PRSNA-ITC0469608 - PRSNA-ITC0469622 | |
| PTX-0476 | | Email chain between B. Zhao, S. Pasquier, Y. Feng, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/04/03 | PRSNA-ITC0469623 - PRSNA-ITC0469642 | |
| PTX-0477 | | Email chain between S. Pasquier, Y. Feng, E. Nie, J. Zhu, P. Zhang and D. Sheng re Quectel : Meeting on Friday 19th of October 2018 | 2018/10/16 | PRSNA-ITC0469643 - PRSNA-ITC0469677 | |
| PTX-0478 | | Email chain between B. Zhao, S. Pasquier, Y. Feng, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/04/30 | PRSNA-ITC0469695 - PRSNA-ITC0469743 | |
| PTX-0479 | | Email chain between B. Zhao, S. Pasquier, Y. Feng, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/03/09 | PRSNA-ITC0469821 - PRSNA-ITC0469833 | |
| PTX-0480 | | Email chain between S. Pasquier, D. Shang, E. Nie, J. Zhu, P. Zhang and Y. Feng re Quectel: Meeting on Friday 19th of October 2018 | 2018/10/18 | PRSNA-ITC0469834 - PRSNA-ITC0469858 | |
| PTX-0481 | | Email chain between J. Zhu and P. Zhang re Meeting Minutes of March 9th | 2016/06/15 | PRSNA-ITC0469859 - PRSNA-ITC0469864 | |
| PTX-0482 | | Email chain between B. Zhao, S. Pasquier, Y. Feng, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2019/07/02 | PRSNA-ITC0469924 - PRSNA-ITC0469936 | |
| PTX-0483 | | Email chain between B. Zhao, S. Pasquier, G. Bossard, D. Roche, and Y. Feng re Quectel: Meeting on Thursday 6th of December 2018 | 2019/02/12 | PRSNA-ITC0469937 - PRSNA-ITC0469958 | |
| PTX-0484 | | Email chain between J. Zhu and P. Zhang re Meeting Minutes of March 9th | 2016/04/09 | PRSNA-ITC0469959 - PRSNA-ITC0469961 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0485 | | Email chain between S. Pasquier, P. Zhang and J. Zhu re Meeting in March 2016 for M2M licensing program | 2016/01/21 | PRSNA-ITC0469962 - PRSNA-ITC0470287 | |
| PTX-0486 | | Email chain between J. Zhu and P. Zhang re Meeting Minutes of March 9th | 2016/04/25 | PRSNA-ITC0470288 - PRSNA-ITC0470294 | |
| PTX-0487 | | Email chain between J. Wei, B. Zhao, S. Pasquier, G. Bossard, D. Roche, and Y. Feng re Quectel: Meeting on Thursday 6th of December 2018 | 2019/09/04 | PRSNA-ITC0470295 - PRSNA-ITC0470310 | |
| PTX-0488 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/03/13 | PRSNA-ITC0470344 - PRSNA-ITC0470836 | |
| PTX-0489 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/04/09 | PRSNA-ITC0470837 - PRSNA-ITC0470853 | |
| PTX-0490 | | Email chain between J. Wei, B. Zhao, S. Pasquier, Y. Feng, G. Bossard and D. Roche re Philips cellular patent license | 2020/11/23 | PRSNA-ITC0470854 - PRSNA-ITC0470897 | |
| PTX-0491 | | Email chain between J. Zhu and P. Zhang re Meeting Minutes of March 9th | 2016/06/15 | PRSNA-ITC0470913 - PRSNA-ITC0470918 | |
| PTX-0492 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/03/28 | PRSNA-ITC0470919 - PRSNA-ITC0470931 | |
| PTX-0493 | | Email chain between B. Zhao, S. Pasquier, Y. Feng, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2019/03/01 | PRSNA-ITC0470932 - PRSNA-ITC0470941 | |
| PTX-0494 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/02/23 | PRSNA-ITC0470970 - PRSNA-ITC0471356 | |
| PTX-0495 | | Judgement from Unwired Planet International Limted, et al. v. Huawei Technologies Co. Limited, et al., [2018] EWCA Civ 2344 | 2018/10/23 | PRSNA-ITC0458252 - PRSNA-ITC0458316 | 403/MIL/NE |
| PTX-0496 | | Email chain between P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2016/06/15 | PRSNA-ITC0469859 - PRSNA-ITC0469864 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0497 | | Email chain between P. Zhang and J. Zhu re Meeting in March 2016 for M2M licensing program | 2016/01/20 | PRSNA-ITC0471357 - PRSNA-ITC0471358 | |
| PTX-0498 | | Email to J. Zhu from P. Zhang re Meeting Minutes of March 9 | 2016/03/17 | PRSNA-ITC0471373 - PRSNA-ITC0471486 | |
| PTX-0499 | | Email to Y. Feng from S. Pasquier re Quectel_Philips IoT Cellular Communications Patent License | 2020/12/30 | PRSNA-ITC0471487 - PRSNA-ITC0471857 | |
| PTX-0500 | | Email chain between J. Zhu and P. Zhang re Meeting Minutes of March 9th | 2016/07/19 | PRSNA-ITC0471907 - PRSNA-ITC0471912 | |
| PTX-0501 | | Email chain between B. Zhao, S. Pasquier, Y. Feng, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2018/12/23 | PRSNA-ITC0471913 - PRSNA-ITC0471923 | |
| PTX-0502 | | Email to J. Zhu from P. Zhang re Meeting Minutes of March 9 | 2016/03/17 | PRSNA-ITC0471924 - PRSNA-ITC0472037 | |
| PTX-0503 | | Email chain between S. Pasquier, Y. Feng, D. Shang, J. Zhu, P. Zhang and E. Nie re Quectel: Meeting on Friday 19th of October 2018 | 2018/10/24 | PRSNA-ITC0472038 - PRSNA-ITC0472064 | |
| PTX-0504 | | Email chain between J. Zhu and P. Zhang re Meeting Minutes of March 9th | 2016/04/25 | PRSNA-ITC0472090 - PRSNA-ITC0472096 | |
| PTX-0505 | | Email chain between E. Nie, D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/06/08 | PRSNA-ITC0472097 - PRSNA-ITC0472113 | |
| PTX-0506 | | Email chain between J. Zhu and P. Zhang re Meeting Minutes of March 9th | 2016/07/20 | PRSNA-ITC0472116 - PRSNA-ITC0472122 | |
| PTX-0507 | | Email chain between B. Zhao, S. Pasquier, Y. Feng, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/06/22 | PRSNA-ITC0472123 - PRSNA-ITC0472145 | |
| PTX-0508 | | Email chain between S. Pasquier, P. Zhang and J. Zhu re Meeting in March 2016 for M2M licensing program | 2016/01/21 | PRSNA-ITC0472180 - PRSNA-ITC0472505 | |
| PTX-0509 | | AMR#1 - Coarse and Fine Search in 1-DIM Codebook | N/A | PRSNA-ITC0472379 - PRSNA-ITC0472387 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0510 | | LTE#01 - Spread Spectrum using OFDM | N/A | PRSNA-ITC0472388 - PRSNA-ITC0472505 | |
| PTX-0511 | | Email chain between S. Pasquier, C . Petsch re Gemalto UMTS M2M License | 2016/02/16 | PRSNA-ITC0472974 - PRSNA-ITC0473138 | |
| PTX-0512 | | Email chain between S. Pasquier and C. Petsch re Next meeting date to confirm: Gemalto/Philips license discussion | 2016/07/18 | PRSNA-ITC0473759 - PRSNA-ITC0473770 | |
| PTX-0513 | | Email chain between S. Pasquier, M. Galai, S. Menashe and D. Roche re Telit : Philips UMTS Licensing Program | 2016/08/05 | PRSNA-ITC0478276 - PRSNA-ITC0478351 | |
| PTX-0514 | | Email chain between S. Pasquier, M. Galai, O. Cats and A. Dipalo re dsRE : Philips GSM-AMR/UMTS/LTE Licensing Program | 2016/01/20 | PRSNA-ITC0479951 - PRSNA-ITC0479997 | |
| PTX-0515 | | Email to S. Pasquier from C. Petsch | 2016/01/12 | PRSNA-ITC0482960 - PRSNA-ITC0482987 | |
| PTX-0516 | | 3GPP TS 36.523-1 V16.7.0 (2020-12) | 2020/12/00 | PRSNA-ITC0501548 - PRSNA-ITC0502537 | |
| PTX-0517 | | ETSI GA ahg on IPR Review #6, Sophia Antipolis, 7-8 September 2006, ETSI GA/IPRR06(06)24 rev. 1, Secretary Notes from IPRR#6 - Exhibit DJT-34 to the Expert Report of David Teece from Philips v. TCL, et al. | 2006/09/14 | PRSNA-ITC0507776 - PRSNA-ITC0507794 | 401/402/403 |
| PTX-0518 | | Approved Judgment for Unwired Planet International Ltd. and Huawei Technologies Co. Ltd., Case No. A3/2017/1784 - Exhibit DJT-14 to Expert Report of David Teece from Philips v. TCL | 2018/10/13 | PRSNA-ITC0507910 - PRSNA-ITC0507976 | 403/MIL/NE |
| PTX-0519 | | Galetovick, et al., "An estimate of the average cumulative royalty yield in the world mobile phone industry: Theory, measurement and results," Telecommunications Policy, Vol. 42, No. 3 (2018), pp. 263–276 - Exhibit DJT-54 to the Expert Report of David Teece from Philips v. TCL, et al., | 2018/00/00 | PRSNA-ITC0508107 - PRSNA-ITC0508121 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0520 | | ECLI:NL:RBDHA:2017:1025 - Exhibit DJT-15 to the Expert Report of David Teece from Philips v. TCL, et al. | 2017/08/20 | PRSNA-ITC0508122 - PRSNA-ITC0508152 | 401/402/403 |
| PTX-0521 | | VFB LLC v. Campbell Soup Company, 482 D.3d 624 - Exhibit DJT-27 to the Expert Report of David Teece from Philips v. TCL, et al. | 2007/03/30 | PRSNA-ITC0508153 - PRSNA-ITC0508166 | 401/402/403 |
| PTX-0522 | | Schankerman, et al., "Estimates of the Value of Patent Rights in European Countries During the Post-1950 Period," The Economic Journal, 96, 1052-1076 - Exhibit DJT-56 to the Expert Report of David Teece from Philips v. TCL, et al., dated June 30, 2020 | 198/6/12/00 | PRSNA-ITC0508204 - PRSNA-ITC0508229 | 401/402/403 |
| PTX-0523 | | Guide to Licensing Negotiations Involving Standard Essential Patents, Japan Patent Office - Exhibit DJT-46 to the Expert Report of David Teece from Philips v. TCL, et al. | 2018/06/05 | PRSNA-ITC0508290 - PRSNA-ITC0508346 | 401/402/403 |
| PTX-0524 | | Memorandum of Finding of Fact and Conclusion of Law for TCL Communications v. Ericsson Inc., USDC California - Exhibit DJT-55 to the Expert Report of David Teece from Philips v. TCL, et al. | 2017/12/21 | PRSNA-ITC0508476 - PRSNA-ITC0508591 | 401/402/403 |
| PTX-0525 | | Approved Judgment from Unwired Planet International Ltd. v. Huawei, et al., [2017] EWHC 711 (Pat)- Exhibit DJT-2 to Expert Report of David Teece from Philips v. TCL, et al. | 2017/04/05 | PRSNA-ITC0508686 - PRSNA-ITC0508852 | 401/402/403 |
| PTX-0526 | | About T-Mobile - Exhibit DJT-4 to the Expert Report of David Teece from Philips v. TCL, et al. | N/A | PRSNA-ITC0508853 - PRSNA-ITC0508865 | 401/402/403 |
| PTX-0527 | | Judgment of the Court (Fifth Chamber) - Exhibit DJT-16 to the Expert Report of David Teece from Philips v. TCL, et al. | 2015/07/16 | PRSNA-ITC0508912 - PRSNA-ITC0508923 | 403/MIL/NE |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0528 | | Mallinson,"Cumulative Mobile-SEP Royalty Payments No More than Around 5% of Mobile Handset Revenues," IP Finance (blog) - Exhibit DJT-52 to the Expert Report of David Teece from Philips v. TCL, et al., | 2015/08/19 | PRSNA-ITC0509042 - PRSNA-ITC0509046 | 401/402/403 |
| PTX-0529 | | DAF/COMP(2008)38 - Exhibit DJT-17 to the Expert Report of David Teece from Philips v. TCL, et al. | 2008/00/00 | PRSNA-ITC0509354 - PRSNA-ITC0509411 | 401/402/403 |
| PTX-0530 | | Memorandum of Finding of Fact and Conclusions of Law from HTC Corporation, et al. v. Telefonaktiebolaget LM Ericsson, et al. - Exhibit DJT-28 to the Expert Report of David Teece from Philips v. TCL, et al. | 2019/05/23 | PRSNA-ITC0510110 - PRSNA-ITC0510125 | 401/402/403 |
| PTX-0531 | | "ETSI says IEEE's IPR policy is not compatible with its own," - Exhibit DJT-36 to the Expert Report of David Teece from Philips v. TCL, et al., dated June 30, 2020 | 2015/03/12 | PRSNA-ITC0510248 - PRSNA-ITC0510249 | 401/402/403 |
| PTX-0532 | | Summary of Blackberry - Annex 19 to the Witness Statement of Kevin James Scott from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0520762 - PRSNA-ITC0520765 | 401/402/403 |
| PTX-0533 | | Apple Analysis - Annex 17 to the Witness Statement of Kevin James Scott from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0520769 - PRSNA-ITC0520773 | 401/402/403 |
| PTX-0534 | | MobiWire SAS Analysis - Annex 5 to the Witness Statement of Sophie Pasquier from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0520948 - PRSNA-ITC0520950 | 401/402/403 |
| PTX-0535 | | Huawei Analysis - Annex 23 to the Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0520958 - PRSNA-ITC0520961 | 401/402/403 |
| PTX-0536 | | Samsung Analysis - Annex 21 to the Witness Statement of Kevin Scott from Philips v. TCL, et al. | N/A | PRSNA-ITC0520965 - PRSNA-ITC0520968 | 401/402/403 |
| PTX-0537 | | License Running Royalty Income - Annex 14 to the Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0521158 - PRSNA-ITC0521160 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0538 | | LG Electronics Analysis - Annex 20 to the Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0521161 - PRSNA-ITC0521164 | 401/402/403 |
| PTX-0539 | | Quectel Master Classes | 2021/06/12 | ITC1240-0012470 - ITC1240-0012472 | |
| PTX-0540 | | Machine to Machine Module Patent License Agreement between Koninklijke Philips N.V. and U-blox AG | 2018/08/01 | KPNV0020214 - KPNV0020239 | |
| PTX-0541 | | Transcript of Hearing from Conversant v. Apple | 2020/08/04 | KPNV0068572 - KPNV0068597 | 403/MIL/NE |
| PTX-0542 | | Philips' Presentation "Selected LTE Patents" | 2016/02/00 | KPNV0092582 - KPNV0092624 | |
| PTX-0543 | | Philips' Presentation "M2M Licensing Program Selected LTE Patents" | 2016/05/17 | KPNV0093210 - KPNV0093257 | |
| PTX-0544 | | Telit Presentation "License Discussion Philips' Patent Portfolio" | 2016/09/13 | KPNV0093259 - KPNV0093301 | |
| PTX-0545 | | Email chain between J. Schnitzer and S. Pasquier re U-BLOX/Philips: GSM/UMTS/LTE Patent License | 2015/12/15 | KPNV0102910 - KPNV0102918 | |
| PTX-0546 | | Email to S. Pasquier from K. Baker re Oct 3 Meeting Summary | 2017/10/18 | KPNV0103560 - KPNV0103562 | |
| PTX-0547 | | Email chain between J. Schnitzer, K. Baker and S. Pasquier re Confidential Philips - License Discussion | 2017/08/30 | KPNV0105228 - KPNV0105245 | |
| PTX-0548 | | Spreadsheet re calculations | N/A | KPNV0188488 | |
| PTX-0549 | | Baron, et al., "The Effect of Patent Pools on Patenting and Innovation - Evidence from Contemporary Technology Standards" | 2015/02/02 | KPNV0188815 - KPNV0188846 | |
| PTX-0550 | | Berk, et al., "Valuation and return dynamics of new ventures", NBER Working Paper 6745 | 1998/10/00 | KPNV0188919 - KPNV0188972 | |
| PTX-0551 | | Festel, et al., "Valuation of early stage high-tech start-up companies", International Journal of Business, 18(3), pp. 216-231 | 2013/00/00 | KPNV0188999 - KPNV0189014 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0552 | | Harhoff, et al., "Citations, family size, opposition and the value of patent rights", Research Policy, Vol. 32, pp.1343-1363, 2003 | 2003/00/00 | KPNV0189313 - KPNV0189333 | |
| PTX-0553 | | Judgment for Unwired Planet International Ltd. and Huawei Technologies Co. Ltd., Case No. HP-2014-000005 | 2020/08/26 | KPNV0189725 - KPNV0189783 | 403/MIL/NE |
| PTX-0554 | | Reply Expert Report of Dr. Matthias Schneider, from 20-cv-1708 | 2023/06/07 | KPNV0191634 - KPNV0191665 | 403/NE |
| PTX-0555 | | Email chain between J. Hu, Y. Feng and S. Pasquier re Respond 9/20: Quectel_MACHINE TO MACHINE MODULE PATENT LICENSE AGREEMENT: Philips lump sum license proposal | 2023/09/21 | KPNV0196127 - KPNV0196135 | |
| PTX-0556 | | Declaration of Sophie Pasquier | 2025/12/23 | KPNV0205346 - KPNV0205611 | 403/611 |
| PTX-0557 | | Quectel's Smart Module(Q) AT Commands Manual, Version 1.0 | 2022/05/19 | QTL-1707-1710_0092392 - QTL-1707-1710_0092430 | |
| PTX-0558 | | Quectel EC2x&EG25-G&UC20 Compatible Design, UMTS/HSPA+/LTE Module Series, Version 1.1 | 2019/01/03 | QTL-1707-1710_0096554 - QTL-1707-1710_0096583 | |
| PTX-0559 | | SGC-CSTC Standards Technical Services Co. Ltd. Official Test Report 5G According to NAPRD03 V.6.9 for Quectel Wireless Solutions Co., Ltd. for AG550Q-NA, Version R1.0 | 2022/12/12 | QTL-1707-1710_0141368 - QTL-1707-1710_0141560 | 401/402/403/802 |
| PTX-0560 | | PTCRB Certificate of Compliance for Quectel EC-25A | N/A | QTL-1707-1710_0142365 | 401/402/403/802 |
| PTX-0561 | | Ritt 7 Layers InterLab Final Report on EC25-A, 4-RC219a-2016 | 2017/01/06 | QTL-1707-1710_0142650 - QTL-1707-1710_0142776 | 401/402/403/802 |
| PTX-0562 | | Ritt 7 Layers InterLab Final Report on EC25-A, 4-RC109c-2017 | 2017/09/22 | QTL-1707-1710_0142777 - QTL-1707-1710_0142820 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0563 | | Ritt 7 Layers InterLab Final Report on EC25-A, 4-RC211a-2018 | 2019/01/03 | QTL-1707-1710_0142863 - QTL-1707-1710_0142910 | 401/402/403/802 |
| PTX-0564 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-A, Version R1.0 | 2020/01/20 | QTL-1707-1710_0142911 - QTL-1707-1710_0142942 | 401/402/403/802 |
| PTX-0565 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AF Minipcie, Version R1.0 | 2021/09/15 | QTL-1707-1710_0142974 - QTL-1707-1710_0143002 | 401/402/403/802 |
| PTX-0566 | | Quectel_EC25-AFXD MINIPCIE_PTCRB_Certificate | 2024/10/22 | QTL-1707-1710_0143150 - QTL-1707-1710_0143152 | |
| PTX-0567 | | 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AFXD Minipcie, Version R1.0 | 2024/10/17 | QTL-1707-1710_0143153 - QTL-1707-1710_0143176 | 401/402/403/802 |
| PTX-0568 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AFXD MNIPCIE, Version R1.0 | 2021/10/25 | QTL-1707-1710_0143204 - QTL-1707-1710_0143230 | 401/402/403/802 |
| PTX-0569 | | Quectel_EC25-AFXD_PTCRB_Certificate | 2024/10/22 | QTL-1707-1710_0143260 - QTL-1707-1710_0143262 | |
| PTX-0570 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AFXD, Version R1.0 | 2020/07/15 | QTL-1707-1710_0143263 - QTL-1707-1710_0143290 | 401/402/403/802 |
| PTX-0571 | | Ritt 7 Layers InterLab Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AF, Version R1.0 | 2018/08/02 | QTL-1707-1710_0143437 - QTL-1707-1710_0143570 | 401/402/403/802 |
| PTX-0572 | | Ritt 7 Layers InterLab Test Report on Quectel Wireless Solutions Co., Ltd. EC25-A, Version R1.0 | 2023/03/06 | QTL-1707-1710_0143572 - QTL-1707-1710_0143600 | 401/402/403/802 |
| PTX-0573 | | Quectel_EG25-GL(R07A01)_PTCRB(ECO)_Certificate | N/A | QTL-1707-1710_0143891 - QTL-1707-1710_0143893 | |
| PTX-0574 | | 7 Layers Test Report on Quectel Wireless Solutions Co., Ltd. EC25-GL, Version R1.0 | 2025/04/17 | QTL-1707-1710_0143894 - QTL-1707-1710_0143934 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0575 | | 7 Layers Test Report on Quectel Wireless Solutions Co., Ltd. EG25-GL, Version R1.0 | 2024/10/30 | QTL-1707-1710_0143938 - QTL-1707-1710_0143988 | 401/402/403/802 |
| PTX-0576 | | SGS-CSTC Standards Technical Services Co., Ltd. Official Test Report WCDMA According to NAPRD03 V5.38 and GCF CC V3.73.0 for Quectel Wireless Solutions Co., Ltd for LTE-A Cat6 Module, Version R1.0 | 2019/05/12 | QTL-1707-1710_0144788 - QTL-1707-1710_0144946 | 401/402/403/802 |
| PTX-0577 | | SGS-CSTC Standards Technical Services Co., Ltd. Official Test Report LTE According to NAPRD03 V5.38 and GCF CC V3.73.0 for Quectel Wireless Solutions Co., Ltd for LTE-A Cat6 Module, Version R1.0 | 2019/05/12 | QTL-1707-1710_0144947 - QTL-1707-1710_0145269 | 401/402/403/802 |
| PTX-0578 | | Sporton Lab ECO Certification Test Report for Quectel Wireless Solutions Co., Ltd, EM12-G, Version Rev. 01 | 2021/04/15 | QTL-1707-1710_0145802 - QTL-1707-1710_0146068 | 401/402/403/802 |
| PTX-0579 | | Sporton Lab ECO Certification Test Report for Quectel Wireless Solutions Co., Ltd, EM12-G, Version Rev. 01 | 2022/06/10 | QTL-1707-1710_0146330 - QTL-1707-1710_0146599 | 401/402/403/802 |
| PTX-0580 | | Sporton Lab ECO Certification Test Report for Quectel Wireless Solutions Co., Ltd, SC20-AL, Version Rev. 02 | 2020/07/30 | QTL-1707-1710_0153387 - QTL-1707-1710_0153903 | 401/402/403/802 |
| PTX-0581 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. SC20R-NA, Version R1. | 2020/12/09 | QTL-1707-1710_0153904 - QTL-1707-1710_0154371 | 401/402/403/802 |
| PTX-0582 | | SGS-CSTC Standards Technical Services Co., Ltd. Partial Test Report According to NAPRD03 V6.17for Quectel Wireless Solutions Co., Ltd for SC600T-NA, Version R1.0 | 2024/10/18 | QTL-1707-1710_0154375 - QTL-1707-1710_0154507 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0583 | | SGS-CSTC Standards Technical Services Co., Ltd. Partial Test Report WCDMA According to NAPRD03 V6.0.1 for Quectel Wireless Solutions Co., Ltd for SC600Y-NA, Version R1.0 | 2020/06/29 | QTL-1707-1710_0154508 - QTL-1707-1710_0154561 | 401/402/403/802 |
| PTX-0584 | | SGS-CSTC Standards Technical Services Co., Ltd. Partial Test Report WCDMA According to NAPRD03 V6.1 for Quectel Wireless Solutions Co., Ltd for SC600Y-NA, Version R1.0 | 2020/09/15 | QTL-1707-1710_0154617 - QTL-1707-1710_0154670 | 401/402/403/802 |
| PTX-0585 | | SGS-CSTC Standards Technical Services Co., Ltd. Partial Test Report WCDMA According to NAPRD03 V6.1 for Quectel Wireless Solutions Co., Ltd for SC600Y-NA, Version R1.0 | 2020/12/09 | QTL-1707-1710_0154721 - QTL-1707-1710_0154774 | 401/402/403/802 |
| PTX-0586 | | SGS-CSTC Standards Technical Services Co., Ltd. Partial Test Report According to NAPRD03 V6.12 for Quectel Wireless Solutions Co., Ltd for SC600Y-NA, Version R1.0 | 2023/08/21 | QTL-1707-1710_0154775 - QTL-1707-1710_0154913 | 401/402/403/802 |
| PTX-0587 | | Quectel_UC15_PTCRB_Certificate (1) | N/A | QTL-1707-1710_0154991 | |
| PTX-0588 | | TTL Partial Report for Quectel Wireless Solutions Co., Ltd. on UC20 | 2014/03/12 | QTL-1707-1710_0155087 - QTL-1707-1710_0155156 | 401/402/403/802 |
| PTX-0589 | | TMC Partial Supl Test Report for Quectel Wireless Solutions Co., Ltd. WCDMA Module UC20, Version R1.0 | 2014/03/10 | QTL-1707-1710_0155157 - QTL-1707-1710_0155170 | 401/402/403/802 |
| PTX-0590 | | Email chain between Y. Feng, N. Muhrer, D. Hierl, D. Zhang and P. Qian re Philips License Agreement | 2018/06/14 | QTL-1707-1710_0157798 - QTL-1707-1710_0157801 | 901 |
| PTX-0591 | | Email chain between Y. Feng, N. Muhrer, D. Hierl, D. Zhang and P. Qian re Philips License Agreement | 2018/06/14 | QTL-1707-1710_0157802 - QTL-1707-1710_0157806 | 402, 403, MIL |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0592 | | Email chain between Y. Feng, N. Muhrer, D. Zhang and P. Qian re The progress on Philips Licensing Program | 2018/10/24 | QTL-1707-1710_0157810 - QTL-1707-1710_0157812 | 402, 403, MIL |
| PTX-0593 | | Email chain between Y. Feng, G. Bazyluk, D. Zhang, D. Hierl, J. Bilag and J. Jarabek re Philips patent licensing | 2019/05/25 | QTL-1707-1710_0157815 - QTL-1707-1710_0157821 | 402, 403, MIL |
| PTX-0594 | | Email chain between Y. Feng, G. Bazyluk, J. Sesztak, D. Zhang, D. Hierl, J. Bilag and J. Jarabek re Philips patent licensing | 2019/05/27 | QTL-1707-1710_0157822 - QTL-1707-1710_0157828 | 402, 403, MIL |
| PTX-0595 | | Email chain between S. Pasquier, M. Galai and D. Roche re TELIT Philips GSM-AMR/UMTS/LTE Licensing Program attachment 2 | 2016/05/30 | PRSNA-ITC0474577 - PRSNA-ITC0474618 | |
| PTX-0596 | | Email chain between S. Pasquier, M. Galai and S. Menashe re Telit : Philips UMTS Licensing Program | 2016/08/05 | PRSNA-ITC0478276 - PRSNA-ITC0478351 | |
| PTX-0597 | | Antipolis, "ETSI's Director General Issues Public Statement on IPR Policy," from https://www.etsi.org/newsroom/news/1458-etsi-s-director-general-issues-public-statement-on-ipr-polic - Exhibit ES-4 to Expert Report of Eric Stasik from Philips v. TCL, et al. | 2018/12/03 | PRSNA-ITC0507619 - PRSNA-ITC0507620 | 401/901 |
| PTX-0598 | | Quectel adds extensive antennas portfolio to IoT product range | 2021/04/08 | PRSNA-ITC0523131 - PRSNA-ITC0523135 | 401/402/403 |
| PTX-0599 | | 3GPP TS 25.214 V5.6.0 (2003-09) Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Physical layer procedures (FDD) (Release 5) | 2003/09/00 | PRSNA-ITC0533314 - PRSNA-ITC0533376 | |
| PTX-0600 | | Email to Collegues from M. Baker re AH50: Power scaling at max power with HS DPCCH | 2003/08/11 | PRSNA-ITC0533957 - PRSNA-ITC0533958 | |
| PTX-0601 | | History of Quectel Negotiations | | PRSNA-ITC0534504 - PRSNA-ITC0534505 | 403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0602 | | Email chain between S. Pasquier, C. Petsch re Philips-Gemalto | 2015/05/01 | PRSNA-ITC0534538 - PRSNA-ITC0534980 | |
| PTX-0603 | | Email chain with S. Pasquier re Philips UMTS/LTE Licensing Programme - Exhibit SP-23 to the Witness Statement of Sophie Pasquier from Philips v. TCL, et al., dated May 1, 2020 | 2017/06/26 | PRSNA-ITC0535094 - PRSNA-ITC0535097 | 401/402/403 |
| PTX-0604 | | Letter to Prestigio Plaza Ltd. from Philips re Philips UMTS/LTE Licensing Program, Exhibit SP-8 to the Witness Statement of Sophie Pasquier from Philips v. TCL, et al. | 2015/05/18 | PRSNA-ITC0535202 - PRSNA-ITC0535205 | 401/402/403 |
| PTX-0605 | | Document for meeting re smartphones - Exhibit KJS-22 to the Witness Statement of Kevin James Scott from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0535404 - PRSNA-ITC0535406 | 401/402/403 |
| PTX-0606 | | UMTS Apple calculation - Exhibit KJS-43 to the Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0535519 - PRSNA-ITC0535520 | 401/402/403 |
| PTX-0607 | | Email to R. Peters, et al., from S. Tsugaru re Apple: Final documents - Exhibit KJS-44 to the Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | 2011/12/05 | PRSNA-ITC0535521 | 401/402/403 |
| PTX-0608 | | Email chain re VERY URGENT: Meeting with Sharpt - Exhibit KJS-47 to the Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | 2010/08/06 | PRSNA-ITC0535532 - PRSNA-ITC0535536 | 401/402/403 |
| PTX-0609 | | Philips - Sony Statement Negotiations - Exhibit KJS-50 to the Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0535549 - PRSNA-ITC0535550 | 401/402/403 |
| PTX-0610 | | UMTS Royalty - Exhibit KJS-69 to the Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | N/A | PRSNA-ITC0536499 - PRSNA-ITC0536500 | 401/402/403 |
| PTX-0611 | | Google propsoal document - Exhibit KJS-80 to Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | 2017/11/07 | PRSNA-ITC0536604 - PRSNA-ITC0536605 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0612 | | Huawei Presentation "Patent Negotiation With Philips," - Exhibit KJS-84 to Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | 2018/06/05 | PRSNA-ITC0536655 - PRSNA-ITC0536659 | 401/402/403 |
| PTX-0613 | | Huawei Presentation "Huawei Comments to Philips' July 31, 2008 Presentation and Updated Offer," - Exhibit KJS-86 to Witness Statement of Kevin Scott from Philips v. TCL, et al., dated May 1, 2020 | 2018/09/27 | PRSNA-ITC0536663 - PRSNA-ITC0536673 | 401/402/403 |
| PTX-0614 | | Quectel BC92 Hardware Design NB-IoT Module Series, Version 1.0 | 2020/04/23 | PRSNA-ITC0539754 - PRSNA-ITC0539818 | |
| PTX-0615 | | ETSI TS 125 213 V5.6.0 (2005-06) Technical Specification for Universal Mobile Telecommunications System (UMTS); Spreading and modulation (FDD) (3GPP TS 25.213 version 5.6.0 Release 5) | 2005/06/00 | PRSNA-ITC0544145 - PRSNA-ITC0544171 | |
| PTX-0616 | | ETSI TS 125 331 V5.25.0 (2012-01) Technical Specification Universal Telecommunications System (UMTS); Radio Resource Control (RRC); Protocol specification (3GPP TS 25.331 version 5.25.0 Release 5) | 2012/01/00 | PRSNA-ITC0546804 - PRSNA-ITC0547853 | |
| PTX-0617 | | Quectel's BG96 Hardware Deisgn LPWA Module Series, V. 1.4 | 2019/08/15 | QTL-1240-0004009 - QTL-1240-0000488 | |
| PTX-0618 | | Quectel's BG96 Hardware Version Differences Introduction, LPWA Module Series, V1.0 | 2019/06/15 | QTL_1240-0004454 - QTL_1240-0004462 | |
| PTX-0619 | | Letter to Quectel from Philips re Philips patent license proposal - lump sum, dated August 11, 2023 | 2023/08/11 | QTL-1707-1710_0000011 - QTL-1707-1710_0000013 | |
| PTX-0620 | | Quectel Product Specification EG060K Series IoT/M2M-optimized LTE-A Cat 6 LGA Module, Version 1.4 | 2023/00/00 | QTL-1707-1710_0000023 - QTL-1707-1710_0000025 | |
| PTX-0621 | | Quectel Production Specification EG060W-EA IoT/M2M-optimized LTE-A Cat 6 LGA Module, Version 1.2 | 2022/00/00 | QTL-1707-1710_0000115 - QTL-1707-1710_0000117 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0622 | | Quectel EG056K Series Hardware Design LTE-A Module Series, Version 1.0 | 2023/09/01 | QTL-1707-1710_0000118 - QTL-1707-1710_0000213 | |
| PTX-0623 | | Quectel Product Specification EG065K Series IoT/M2M-optimized LTE-A Cat 6 LGA Module, Version 1.3 | 2023/00/00 | QTL-1707-1710_0000214 - QTL-1707-1710_0000216 | |
| PTX-0624 | | Quectel Product Specification EG060K Series LTE-A Cat 6 M.2 Module, Version 1.5 | 2024/00/00 | QTL-1707-1710_0000318 - QTL-1707-1710_0000320 | |
| PTX-0625 | | Quectel Product Specification EM120K-GL LTE-A Cat 12 M.2 Module, Version 1.2 | 2023/00/00 | QTL-1707-1710_0000396 - QTL-1707-1710_0000397 | |
| PTX-0626 | | Quectel EM120R-GL&EM160R-GL Hardware Design LTE-A Module Series, Version 1.5 | 2025/04/15 | QTL-1707-1710_0000398 - QTL-1707-1710_0000493 | |
| PTX-0627 | | Quectel Product Specification EM120R-GL LTE-A Cat 12 M.2 Module, Version 1.3 | 2023/00/00 | QTL-1707-1710_0000494 - QTL-1707-1710_0000496 | |
| PTX-0628 | | Quectel Product Specification EM160R-GL LTE-A Cat 16 M.2 Module, Version 1.2 | 2023/00/00 | QTL-1707-1710_0000497 - QTL-1707-1710_0000499 | |
| PTX-0629 | | Quectel Production Specification RG255AA Series 5G RedCap Sub-6 GHz LGA Module, Version 1.0 | 2025/00/00 | QTL-1707-1710_0000500 - QTL-1707-1710_0000502 | |
| PTX-0630 | | Quectel Product Specification RG255C Series 5G RedCap Sub-6 GHz LGA Module, Version 1.3 | 2025/00/00 | QTL-1707-1710_0000613 - QTL-1707-1710_0000614 | |
| PTX-0631 | | Quectel RG255C Series Hardware Design 5G Products, Version 1.2 | 2025/08/26 | QTL-1707-1710_0000615 - QTL-1707-1710_0000722 | |
| PTX-0632 | | Quectel Production Specification RG500L Series IoT/eMBB-Optimized 5G Sub-6 GHz LGA Module, Version 1.7 | 2025/00/00 | QTL-1707-1710_0000723 - QTL-1707-1710_0000725 | |
| PTX-0633 | | Quectel Product Specification RG500U Series IoT/eMBB-Optimized 5G Sub-6 GHz LGA Module, Version 1.7 | 2024/00/00 | QTL-1707-1710_0000726 - QTL-1707-1710_0000728 | |
| PTX-0634 | | Quectel Product Specification RG520F Series IoT/eMBB-Optimized 5G Sub-6 GHz LGA Module, Version 1.4 | 2023/00/00 | QTL-1707-1710_0001138 - QTL-1707-1710_0001139 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0635 | | Quectel Product Specification RG525F-NA IoT/eMBB-Optimized 5G Sub-6 GHz LGA Module, Version 1.4 | 2023/00/00 | QTL-1707-1710_0001140 - QTL-1707-1710_0001142 | |
| PTX-0636 | | Quectel Product Specification RG530F Series IoT/eMBB-Optimized 5G Sub-6 GHz & mmWave LGA Module, Version 1.3 | 2023/00/00 | QTL-1707-1710_0001265 - QTL-1707-1710_0001267 | |
| PTX-0637 | | Quectel Product Specification RG600L Series IoT/eMBB-Optimized 5G Sub-6 GHz LGA Module, Version 1.2 | 2025/00/00 | QTL-1707-1710_0001400 - QTL-1707-1710_0001402 | |
| PTX-0638 | | Quectel Product Specification RG620T Series IoT/eMBB-Optimized 5G Sub-6 GHz LGA Module, Version 1.4 | 2025/00/00 | QTL-1707-1710_0001403 - QTL-1707-1710_0001405 | |
| PTX-0639 | | Quectel Product Specification RM500K-CN IoT/eMBB-Optimized 5G Sub-6 GHz M.2 Module, Version 1.0 | 2024/00/00 | QTL-1707-1710_0001406 - QTL-1707-1710_0001407 | |
| PTX-0640 | | Quectel Product Specification RM500U Series IoT/eMBB-Optimized 5G Sub-6 GHz M.2 Module, Version 1.6 | 2024/00/00 | QTL-1707-1710_0001408 - QTL-1707-1710_0001410 | |
| PTX-0641 | | Quectel Product Specification RM520N Series IoT/eMBB/URLLC-Optimized 5G Sub-6 GHz M.2 Module, Version 1.5 | 2025/00/00 | QTL-1707-1710_0001597 - QTL-1707-1710_0001598 | |
| PTX-0642 | | Quectel RM520N Series Hardware Design 5G Module Series, Version 1.4 | 2025/05/17 | QTL-1707-1710_0001599 - QTL-1707-1710_0001706 | |
| PTX-0643 | | Quectel Product Specification RM530N-GL 5G Sub-6 GHz & M.2 Module, Version 1.1 | 2023/00/00 | QTL-1707-1710_0001707 - QTL-1707-1710_0001708 | |
| PTX-0644 | | Quectel BC65 Hardware Design NB-IoT Module Series, Version 1.1 | 2025/06/30 | QTL-1707-1710_0001802 - QTL-1707-1710_0001862 | |
| PTX-0645 | | Quectel BC66-NA Hardware Design NB-IoT Module Series, Version 1.1 | 2021/12/15 | QTL-1707-1710_0001863 - QTL-1707-1710_0001927 | |
| PTX-0646 | | Quectel BC66 Hardware Design NB-IoT Module Series, Version 1.4 | 2012/12/15 | QTL-1707-1710_0001928 - QTL-1707-1710_0001991 | |
| PTX-0647 | | Quectel BC600L-M3 Hardware Design LPWA Module Series, Version 1.2 | 2022/08/18 | QTL-1707-1710_0001992 - QTL-1707-1710_0002076 | |
| PTX-0648 | | Quectel BC96 Hardware Design LPWA Module Series, Version 1.6 | 2023/02/21 | QTL-1707-1710_0002294 - QTL-1707-1710_0002372 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0649 | | Quectel EC200U Series Hardware Design LTE Standard Module Series, Version 1.3 | 2025/03/26 | QTL-1707-1710_0002586 - QTL-1707-1710_0002684 | |
| PTX-0650 | | Quectel EC25 Series Hardware Design LTE Standard Module Series, Version 2.8 | 2025/08/03 | QTL-1707-1710_0002809 - QTL-1707-1710_0002946 | |
| PTX-0651 | | Quectel EC800K&EG800K Series Hardware Design LTE Standard Module Series, Version 1.1 | 2025/01/20 | QTL-1707-1710_0002947 - QTL-1707-1710_0003034 | |
| PTX-0652 | | Quectel EC800M&EG810M Series Hardware Design LTE Standard Module Series, Version 1.3 | 2024/11/21 | QTL-1707-1710_0003035 - QTL-1707-1710_0003135 | |
| PTX-0653 | | Quectel's EG2x-GL Hardware Design LTE Standard Module Series, Version 1.2 | 2025/04/07 | QTL-1707-1710_0003336 - QTL-1707-1710_0003444 | |
| PTX-0654 | | Quectel's EG912N-EN Hardware Design LTE Standard Module Series, Version 1.0 | 2023/04/14 | QTL-1707-1710_0003518 - QTL-1707-1710_0003596 | |
| PTX-0655 | | Quectel's EG915K-EU Hardware Design LTE Standard Products, Version 1.0 | 2025/08/15 | QTL-1707-1710_0003694 - QTL-1707-1710_0003770 | |
| PTX-0656 | | Quectel EC91xQ Series Hardware Design LTE Standard Module Series, Version 1.5 | 2025/05/29 | QTL-1707-1710_0003965 - QTL-1707-1710_0004061 | |
| PTX-0657 | | Quectel Product Specification BC65 Compact MB-IoT Module with Ultra-low Power Consumption, Version 1.5 | 2022/00/00 | QTL-1707-1710_0004454 - QTL-1707-1710_0004455 | |
| PTX-0658 | | Quectel Product Specification BC66-NA Compact LTE Cat NB2 Module with Ultra-low Power Consumption, Version 1.4 | 2022/00/00 | QTL-1707-1710_0004456 - QTL-1707-1710_0004457 | |
| PTX-0659 | | Quectel Production Specification BC92 Compact NBLTE Cat NB1 Module with Ultra-low Power Consumption, Version 2.0 | 2022/00/00 | QTL-1707-1710_0004460 - QTL-1707-1710_0004461 | |
| PTX-0660 | | Quectel Product Specification BG600L-M3 LTE Cat M1/Cat NB2/EGPRS Module, Version 1.7 | 2024/00/00 | QTL-1707-1710_0004462 - QTL-1707-1710_0004463 | |
| PTX-0661 | | Quectel Product Specification BG77 Ultra-Compact LTE Cat M1/Cat NB2 Module, Version 1.9 | 2024/00/00 | QTL-1707-1710_0004464 - QTL-1707-1710_0004465 | |
| PTX-0662 | | Quectel Product Specification BG95 LTE Cat M1/Cat NB2/EGPRS Module, Version 2.3, 2025 | 2025/00/00 | QTL-1707-1710_0004466 - QTL-1707-1710_0004468 | |

KONINKLIJKE PHILIPS N.V.'S TRIAL EXHIBIT LIST

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0663 | | Quectel Product Specification EC200U Series IoT/M2M-optimzed LTE Cat 1bis Module, Version 1.8 | 2025/00/00 | QTL-1707-1710_0004476 - QTL-1707-1710_0004477 | |
| PTX-0664 | | Quectel Production Specification EC800K Series IoT/M2M-optimzed LTE Cat 1bis Module, Version 1.3 | 2024/00/00 | QTL-1707-1710_0004496 - QTL-1707-1710_0004497 | |
| PTX-0665 | | Quectel Product Specification EC800Q Series IoT/M2M-optimzed LTE Cat 1bis Module, Version 1.7 | 2024/00/00 | QTL-1707-1710_0004498 - QTL-1707-1710_0004499 | |
| PTX-0666 | | Quectel Production Specification EG810M Series IoT/M2M-optimzed LTE Cat 1bis Module, Version 1.2 | 2024/00/00 | QTL-1707-1710_0004500 - QTL-1707-1710_0004502 | |
| PTX-0667 | | Quectel Production Specification EG912N-EN IoT/M2M-optimzed LTE450 Cat 1 Module, Version 1.3 | 2024/00/00 | QTL-1707-1710_0004503 - QTL-1707-1710_0004504 | |
| PTX-0668 | | Quectel Product Specification EG912U IoT/M2M-optimzed LTE Cat 1bis Module, Version 1.6 | 2025/00/00 | QTL-1707-1710_0004505 - QTL-1707-1710_0004506 | |
| PTX-0669 | | Quectel Product Specification EG915K Series IoT/M2M-optimzed LTE Cat 1 Module, Version 1.7 | 2025/00/00 | QTL-1707-1710_0004507 - QTL-1707-1710_0004509 | |
| PTX-0670 | | Quectel Product Specification EG915N Series IoT/M2M-optimzed LTE Cat 1bis Module, Version 1.2 | 2025/00/00 | QTL-1707-1710_0004510 - QTL-1707-1710_0004512 | |
| PTX-0671 | | Quectel Product Specification EG915Q Series IoT/M2M-optimzed LTE Cat 1 bis Module, Version 1.6 | 2024/00/00 | QTL-1707-1710_0004513 - QTL-1707-1710_0004514 | |
| PTX-0672 | | Quectel Product Specification EG915U Series IoT/M2M-optimzed LTE Cat 1 bis Module, Version 1.7 | 2025/00/00 | QTL-1707-1710_0004515 - QTL-1707-1710_0004516 | |
| PTX-0673 | | Quectel Product Specification EG916Q-GL IoT/M2M-optimzed LTE Cat 1 bis Module, Version 1.1 | 2024/00/00 | QTL-1707-1710_0004517 - QTL-1707-1710_0004519 | |
| PTX-0674 | | Quectel Specification Quectel EG950A Series, IoT/ M2M-optimized LTE Cat 4 Module, Version 1.3 | 2025/00/00 | QTL-1707-1710_0004523 - QTL-1707-1710_0004525 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0675 | | Quectel Product Specification for Quectel AG15 IATF 16949 Compliant Automotive Grade C-V2X Module, Version 1.1 | 2023/00/00 | QTL-1707-1710_0004557 - QTL-1707-1710_0004558 | |
| PTX-0676 | | Quectel Product Specification Quectel AG52xR Family, Version 1.4 | 2024/00/00 | QTL-1707-1710_0004774 - QTL-1707-1710_0004776 | |
| PTX-0677 | | Quectel Product Specification Quectel EM121R-GL LTE-A Cat 12 M.2 Module, Version 1. | 2025/00/00 | QTL-1707-1710_0005161 - QTL-1707-1710_0005163 | |
| PTX-0678 | | Quectel Production Specification Quectel RG650E & RG650V Series IoT/eMBB-Optimized 5G Sub-6 GHz LGA Module, Version 1.4 | 2025/00/00 | QTL-1707-1710_0005164 - QTL-1707-1710_0005166 | |
| PTX-0679 | | Quectel Product Specification Quectel RM255C-GL 5G RedCap Sub-6 GHZ M.2 Module, Version 1.0 | 2025/00/00 | QTL-1707-1710_0005167 - QTL-1707-1710_0005168 | |
| PTX-0680 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/04/13 | QTL-1707-1710_0005174 - QTL-1707-1710_0005187 | |
| PTX-0681 | | Email chain between D. Shang, Y. Feng, E. Nie, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/08/28 | QTL-1707-1710_0005190 - QTL-1707-1710_0005210 | |
| PTX-0682 | | Philips Presentation "GSM-AMR/UMTS/LTE M2M Philips Licensing Program" | 2018/03/07 | QTL-1707-1710_0005708 - QTL-1707-1710_0005727 | |
| PTX-0683 | | Email chain between B. Zhao, Y. Feng, D. Shang, E. Nie, J. Zhu, P. Zhang and S. Pasquier re Quectel: Meeting on Friday 19th of October 2018 | 2018/11/14 | QTL-1707-1710_0006223 - QTL-1707-1710_0006252 | |
| PTX-0684 | | Email chain between J. Wei, Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2019/03/22 | QTL-1707-1710_0007117 - QTL-1707-1710_0007127 | |
| PTX-0685 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/04/03 | QTL-1707-1710_0008104 - QTL-1707-1710_0008123 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0686 | | Quectel_SC20-A_PTCRB_Certificate_04262018 | N/A | QTL-1707-1710_0009040 | |
| PTX-0687 | | Quectel SC20 Hardware Design Smart Module Series, Version 2.1 | 2020/11/13 | QTL-1707-1710_0010926 - QTL-1707-1710_0011057 | |
| PTX-0688 | | Quectel's EC25&EC21 AT Commands Manual, Version 1.3 | 2018/09/20 | QTL-1707-1710_0013175 - QTL-1707-1710_0013415 | |
| PTX-0689 | | Lanner article "LEC-7242: FCC/CE/PTCRB Certified Wirless Gateway for LTE and Wifi Communications" | 2020/03/17 | QTL-1707-1710_0013930 | |
| PTX-0690 | | Lanner "Hybrid TCA Platforms" | N/A | QTL-1707-1710_0013931 - QTL-1707-1710_0013932 | |
| PTX-0691 | | Quectel Specification for SC20 Series Multi-mode Smart LTE Module with Wi-FI Bluetooth | 2006/00/00 | QTL-1707-1710_0025369 - QTL-1707-1710_0025370 | |
| PTX-0692 | | Quectel_BG96_PTCRB_Certificate_11162017 | N/A | QTL-1707-1710_0025783 | |
| PTX-0693 | | Quectel_SC20-A_PTCRB_Certificate_04262018 | N/A | QTL-1707-1710_0029131 | |
| PTX-0694 | | Quectel_BG96_PTCRB_Certificate_11162017 | N/A | QTL-1707-1710_0030953 | |
| PTX-0695 | | Quectel_SC20-A_PTCRB_Certificate_04262018 | N/A | QTL-1707-1710_0031024 | |
| PTX-0696 | | Letter from Qualcomm Technology Licensing to Quectel Wireless Solutions Co., Ltd. enclosing License Agreement | 2018/11/29 | QTL-1707-1710_0032462 - QTL-1707-1710_0032499 | |
| PTX-0697 | | First Amendment to Embedded Module Patent License Agreement between Qualcomm Incorporated and Quectel Wireless Solutions Co., Ltd. | 2020/07/01 | QTL-1707-1710_0032500 - QTL-1707-1710_0032505 | |
| PTX-0698 | | Quectel Production Specification Quectel IoT/eMBB-Optimized 5G Sub-6 GHz LGA Module, Version 1.4 | 2025/00/00 | QTL-1707-1710_0032605 - QTL-1707-1710_0032606 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0699 | | Quectel's ECx00x&EG800AK&EG800K&EG810M&EG91xN&EG915K&EG950A Series AT Commands Manual LTE Standard Module Series, Version 1.4 | 2025/07/21 | QTL-1707-1710_0057741 - QTL-1707-1710_0057956 | |
| PTX-0700 | | Quectel EM12&EG12&EG18 Series AT Command Manual LTE-A Module Series, Version 1.1 | 2025/01/07 | QTL-1707-1710_0070622 - QTL-1707-1710_0070855 | |
| PTX-0701 | | Quectel Product Specification Quectel EG120K Series IoT/M2M-optimized LTE-A Cat 12 LGA Module, Version 1.3 | 2023/00/00 | QTL-1707-1710_0071242 - QTL-1707-1710_0071244 | |
| PTX-0702 | | Quectel EC2x&EG25-GL&EG9x&EM05 QuecCell AT Commands Manual LTE Standard Module Series, Version 1.1.0 | 2022/08/18 | QTL-1707-1710_0071826 - QTL-1707-1710_0071843 | |
| PTX-0703 | | Quectel Product Specification Quectel EG512R-EA IoT/eMBB-optimized LTE-A Cat 12 LGA Module, Version 1.3, 2023 | 2023/00/00 | QTL-1707-1710_0071844 - QTL-1707-1710_0071846 | |
| PTX-0704 | | Quectel EM05 Hardware Design LTE-A Module Series, Version 1.1 | 2025/03/13 | QTL-1707-1710_0076676 - QTL-1707-1710_0076751 | |
| PTX-0705 | | Quectel EM06 Series Hardware Design LTE-A Module Series, Version 1. | 2025/04/16 | QTL-1707-1710_0076885 - QTL-1707-1710_0076955 | |
| PTX-0706 | | Quectel Product Specification Quectel EM061K-GL LTE-A Cat 6 M.2 Module, Version 1.0 | 2025/00/00 | QTL-1707-1710_0077053 - QTL-1707-1710_0077054 | |
| PTX-0707 | | Quectel Product Specification Quectel RG520N Series IoT/eMBB-optimized 5G Sub-6 GHz LGA Module, Version 1.7 | 2025/00/00 | QTL-1707-1710_0086582 - QTL-1707-1710_0086583 | |
| PTX-0708 | | Quectel RG650E&650V Series QuecOpen Hardware Design 5G Module Series, Version 1.1 | 2024/07/17 | QTL-1707-1710_0089497 – QTL-1707-1710_0089627 | |
| PTX-0709 | | Quectel Product Specification Quectel RG651E-NA IoT/eMBB-optimized LGA 5G Sub-6 GHz and mmWave Module, Version 1.0 | 2024/00/00 | QTL-1707-1710_0090259 - QTL-1707-1710_0090261 | |
| PTX-0710 | | Quectel SC200R Series Hardware Design Smart Module Series, Version 1.5 | 2024/10/28 | QTL-1707-1710_0093653 - QTL-1707-1710_0093773 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0711 | | Quectel SC600Y&SC600T Series Hardware Design Smart Module Series, Version 1.4 | 2023/12/29 | QTL-1707-1710_0094375 - QTL-1707-1710_0094502 | |
| PTX-0712 | | Quectel's UC15 TCPIP AT Commands Manual, UMTS/HSPA Module Series, Version 1.1 | 2014/09/28 | QTL-1707-1710_0095448 - QTL-1707-1710_0095484 | |
| PTX-0713 | | Embedded Module Patent License agreement between Qualcomm Incorporated and Quectel Wireless Solutions Co., Ltd. | 2022/07/01 | QTL-1707-1710_0106641 - QTL-1707-1710_0106679 | |
| PTX-0714 | | License Agreement between Sovereign Peak Ventures, LLC and Quectel Iot Technologies PTE LTD. | 2025/12/30 | QTL-1707-1710_0107398 - QTL-1707-1710_0107461 | |
| PTX-0715 | | Spreadsheet re PTCRB Certification Testing Documents List | N/A | QTL-1707-1710_0140205 | 403 |
| PTX-0716 | | Quectel_AG550Q-NA_PTCRB_Certificate | 2022/13/13 | QTL-1707-1710_0141019 | |
| PTX-0717 | | SGS Official Test Report GSM According to NAPRD03 V6.9 For Quectell Wireless Solutions Co., Ltd. for AG550Q-NA | 2022/12/12 | QTL-1707-1710_0141020 - QTL-1707-1710_0141080 | |
| PTX-0718 | | SGC-CSTC Standards Technical Services Co. Ltd. Official Test Report LTE According to NAPRD03 V.6.9 for Quectel Wireless Solutions Co., Ltd. for AG550Q-NA, Version R1.0 | 2022/12/12 | QTL-1707-1710_0141081 - QTL-1707-1710_0141367 | |
| PTX-0719 | | Quectel_BC66-NA_PTCRB_Certificate(Detailed) | N/A | QTL-1707-1710_0141920 | |
| PTX-0720 | | Quectel_BC66-NA_PTCRB_Certificate | 2023/08/09 | QTL-1707-1710_0141921 | |
| PTX-0721 | | Quectel_BC66_PTCRB_Certificate | N/A | QTL-1707-1710_0141955 | |
| PTX-0722 | | Quectel_BG600L-M3_PTCRB_Certificate | N/A | QTL-1707-1710_0142018 | |
| PTX-0723 | | Quectel_BG96_PTCRB_Certificate(Detailed) | N/A | QTL-1707-1710_0142362 | |
| PTX-0724 | | Quectel_BG96_PTCRB_Certificate(Detailed) | N/A | QTL-1707-1710_0142363 | |
| PTX-0725 | | Quectel_BG96_PTCRB_Certificate | N/A | QTL-1707-1710_0142364 | |
| PTX-0726 | | Ritt 7 Layers InterLab Final Report on EC25-A, 4-RC09a-2018 | 2018/06/07 | QTL-1707-1710_0142366 - QTL-1707-1710_0142409 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0727 | | Ritt 7 Layers InterLab Final Report on EC25-A, 4-RC219c-2016-2018 | 2017/01/06 | QTL-1707-1710_0142461 - QTL-1707-1710_0142508 | 401/402/403/802 |
| PTX-0728 | | Ritt 7 Layers InterLab Final Report on EC25-A, 4-RC219b-2016 | 2017/01/06 | QTL-1707-1710_0142509 - QTL-1707-1710_0142649 | 401/402/403/802 |
| PTX-0729 | | Ritt 7 Layers InterLab Final Report on EC25-A, 4-RC081a-2018 | 2018/06/01 | QTL-1707-1710_0142821 - QTL-1707-1710_0142862 | 401/402/403/802 |
| PTX-0730 | | Quectel_EC25-AF MINIPCIE(R07A14)_PTCRB_Certificate | N/A | QTL-1707-1710_0142970 - QTL-1707-1710_0142973 | |
| PTX-0731 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AF, Version R1.0 | 2021/09/15 | QTL-1707-1710_0143056 - QTL-1707-1710_0143084 | 401/402/403/802 |
| PTX-0732 | | Quectel_EC25-AF(R07A14)_PTCRB_Certificate | 2024/08/13 | QTL-1707-1710_0143085 - QTL-1707-1710_0143088 | |
| PTX-0733 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AFX Minipcie, Version R1.0 | 2023/03/07 | QTL-1707-1710_0143089 - QTL-1707-1710_0143116 | 401/402/403/802 |
| PTX-0734 | | Quectel_EC25-AFX MINIPCIE_PTCRB_Certificate | N/A | QTL-1707-1710_0143117 | |
| PTX-0735 | | 7 Layers Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AFX, Version R1.0 | 2025/08/13 | QTL-1707-1710_0143118 - QTL-1707-1710_0143149 | 401/402/403/802 |
| PTX-0736 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AFXD Minipcie, Version R1.0 | 2021/10/25 | QTL-1707-1710_0143177 - QTL-1707-1710_0143203 | 401/402/403/802 |
| PTX-0737 | | Quectel_EC25-AFXD_MINIPCIE_PTCRB_Certificate | N/A | QTL-1707-1710_0143231 | |
| PTX-0738 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AFXD Minipcie, Version R1.0 | 2020/07/15 | QTL-1707-1710_0143232 - QTL-1707-1710_0143259 | 401/402/403/802 |
| PTX-0739 | | 7 Layers Test Reporton Quectel Wireless Solutions Co., Ltd. EC25-AFXD, Version R1.0 | 2024/10/17 | QTL-1707-1710_0143291 - QTL-1707-1710_0143317 | 401/402/403/802 |
| PTX-0740 | | Quectel_EC25-AFX_PTCRB_Certificate | 2025/09/10 | QTL-1707-1710_0143318 - QTL-1707-1710_0143321 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0741 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AF Minipcie, Version R1.0 | 2019/04/19 | QTL-1707-1710_0143322 - QTL-1707-1710_0143355 | 401/402/403/802 |
| PTX-0742 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AF Minipcie, Version R1.0 | 2020/04/03 | QTL-1707-1710_0143356 - QTL-1707-1710_0143385 | 401/402/403/802 |
| PTX-0743 | | Quectel_EC25-AF_MINIPCIE_PTCRB_Certificate | N/A | QTL-1707-1710_0143386 | |
| PTX-0744 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AF Minipcie, Version R1.0 | 2018/08/08 | QTL-1707-1710_0143387 - QTL-1707-1710_0143435 | 401/402/403/802 |
| PTX-0745 | | Quectel_EC25-AF_PTCRB_Certificate | N/A | QTL-1707-1710_0143436 | |
| PTX-0746 | | Quectel_EC25-A_PTCRB_Certificate | N/A | QTL-1707-1710_0143571 | |
| PTX-0747 | | Quectel_EC25_AFDL_PTCRB_Certificate | N/A | QTL-1707-1710_0143601 | |
| PTX-0748 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-AFDL, Version R1.0 | 2022/01/07 | QTL-1707-1710_0143602 - QTL-1707-1710_0143620 | 401/402/403/802 |
| PTX-0749 | | Quectel_EG065K-NA_PTCRB_Certificate (1) | N/A | QTL-1707-1710_0143621 - QTL-1707-1710_0143623 | |
| PTX-0750 | | Quectel_EG25-GL(R07A03)_PTCRB_Certificate (1) | 2024/11/05 | QTL-1707-1710_0143935 - QTL-1707-1710_0143937 | |
| PTX-0751 | | Quectel_EG25-GL_PTCRB_Certificate (1) | 2023/03/21 | QTL-1707-1710_0143989 | |
| PTX-0752 | | Ritt 7 Layers InterLab EVO Test Report on Quectel Wireless Solutions Co., Ltd. EC25-GL, Version R1.0 | 2023/01/13 | QTL-1707-1710_0143990 - QTL-1707-1710_0144192 | 401/402/403/802 |
| PTX-0753 | | Quectel_EG915Q-AF_PTCRB_Certificate(Detailed) | N/A | QTL-1707-1710_0144307 | |
| PTX-0754 | | Quectel_EG915Q-AF_PTCRB_Certificate | N/A | QTL-1707-1710_0144308 | |
| PTX-0755 | | Quectel_EG915Q-NA_PTCRB_Certificate(Detailed) | N/A | QTL-1707-1710_0144519 | |
| PTX-0756 | | Quectel_EG915Q-NA_PTCRB_Certificate | N/A | QTL-1707-1710_0144520 | |
| PTX-0757 | | SGS-CSTC Standards Technical Services Co., Ltd. Partial Test Report According to NAPRD03 V6.4 for Quectel Wireless Solutions Co., Ltd for LTE-A Cat6 Module, Version R1.0 | 2021/09/22 | QTL-1707-1710_0144642 - QTL-1707-1710_0144762 | 401/402/403/802 |

KONINKLIJKE PHILIPS N.V.'S TRIAL EXHIBIT LIST

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0758 | | Quectel_EM06-A_PTCRB_Certificate (1) | N/A | QTL-1707-1710_0144763 | |
| PTX-0759 | | Tejet Partial Field Test Report, Report No. 2019FTA107 for Quectel Wireless Solutions Co., Ltd., for LTE-A Cat 6 M.2 Module, Version R1.0 | 2019/05/13 | QTL-1707-1710_0144764 - QTL-1707-1710_0144787 | 401/402/403/802 |
| PTX-0760 | | Sporton Lab ECO Certification Test Report for Quectel Wireless Solutions Co., Ltd, EM12-G, Version Rev. 01, December 15, 2020 | 2020/12/15 | QTL-1707-1710_0145536 - QTL-1707-1710_0145801 | 401/402/403/802 |
| PTX-0761 | | Sporton Lab ECO Certification Test Report for Quectel Wireless Solutions Co., Ltd, EM12-G, Version Rev. 01 | 2021/08/09 | QTL-1707-1710_0146069 - QTL-1707-1710_0146329 | 401/402/403/802 |
| PTX-0762 | | Sporton Lab ECO Certification Test Report for Quectel Wireless Solutions Co., Ltd, EM12-G, Version Rev. 01 | 2019/12/20 | QTL-1707-1710_0146600 - QTL-1707-1710_0146873 | 401/402/403/802 |
| PTX-0763 | | Sporton Lab ECO Certification Test Report for Quectel Wireless Solutions Co., Ltd, EM12-G, Version Rev. 01 | 2020/08/07 | QTL-1707-1710_0146874 - QTL-1707-1710_0147152 | 401/402/403/802 |
| PTX-0764 | | Quectel_EM12-G_PTCRB_Certificate | N/A | QTL-1707-1710_0147153 | |
| PTX-0765 | | Quectel_EM12-G_PTCRB_Certificate (Detailed) | N/A | QTL-1707-1710_0147154 | |
| PTX-0766 | | Quectel_EM12-G_PTCRB_Certificate(Detailed) | N/A | QTL-1707-1710_0147154 | |
| PTX-0767 | | Quectel_EM12-G_PTCRB_Certificate | | QTL-1707-1710_0147155 - QTL-1707-1710_0147156 | |
| PTX-0768 | | Sporton Lab ECO Certification Test Report for Quectel Wireless Solutions Co., Ltd, EM12-G, Version Rev. 01 | 2019/09/03 | QTL-1707-1710_0147157 - QTL-1707-1710_0148008 | 401/402/403/802 |
| PTX-0769 | | Quectel_EM160R-GL_PTCRB_Certificate | N/A | QTL-1707-1710_0148009 | |
| PTX-0770 | | Quectel_EM160R-GL_PTCRB_Certificate(Detailed) | N/A | QTL-1707-1710_0148010 | |
| PTX-0771 | | Quectel_EM160R-GL_PTCRB_Certificate | N/A | QTL-1707-1710_0148011 | |
| PTX-0772 | | Quectel Module PTCRB Certification for 5G RedCap RG255C-GL | 2024/09/20 | QTL-1707-1710_0148012 | |
| PTX-0773 | | Quectel_RG620T-NA(2201)_PTCRB_Certificate | N/A | QTL-1707-1710_0150059 - QTL-1707-1710_0150063 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0774 | | Quectel_RG620T-NA(R03A10)_PTCRB_Certificate | N/A | QTL-1707-1710_0150337 - QTL-1707-1710_0150341 | |
| PTX-0775 | | Quectel_RG620T-NA_PTCRB_Certificate | N/A | QTL-1707-1710_0151170 - QTL-1707-1710_0151173 | |
| PTX-0776 | | Quectel_RG650V-NA_PTCRB_Certificate | 2024/08/29 | QTL-1707-1710_0151930 - QTL-1707-1710_0151933 | |
| PTX-0777 | | Quectel_RM520N-GL PTCRB Certificate_20231013_with LWM2M | N/A | QTL-1707-1710_0151934 - QTL-1707-1710_0151938 | |
| PTX-0778 | | Quectel_RM520N-GL(0303)_PTCRB(ECO)_Certificate | N/A | QTL-1707-1710_0151939 - QTL-1707-1710_0151943 | |
| PTX-0779 | | Quectel_RM520N-GL(R03A03)_PTCRB(ECO)_Certificate | N/A | QTL-1707-1710_0152018 | |
| PTX-0780 | | Quectel_RM520N-GL_PTCRB_Certificate | 2022/08/01 | QTL-1707-1710_0152205 | |
| PTX-0781 | | Quectel_SC20-AL_PTCRB_Certificate | N/A | QTL-1707-1710_0153386 | |
| PTX-0782 | | Quectel_SC600T-NA_PTCRB_Certificate(Detailed) | N/A | QTL-1707-1710_0154372 | |
| PTX-0783 | | Quectel_SC600T-NA_PTCRB_Certificate | N/A | QTL-1707-1710_0154373 | |
| PTX-0784 | | Quectel_SC600T-NA_PTCRB_Certificate | N/A | QTL-1707-1710_0154374 | |
| PTX-0785 | | SGS-CSTC Standards Technical Services Co., Ltd. Partial Test Report WCDMA According to NAPRD03 V6.6 for Quectel Wireless Solutions Co., Ltd for SC600Y-NA, Version R1. | 2022/02/22 | QTL-1707-1710_0154562 - QTL-1707-1710_0154616 | 401/402/403/802 |
| PTX-0786 | | SGS-CSTC Standards Technical Services Co., Ltd. Partial Test Report According to NAPRD03 V6.14 for Quectel Wireless Solutions Co., Ltd. for SC600Y-NA, Version R1.0 | 203/12/13 | QTL-1707-1710_0154671 - QTL-1707-1710_0154720 | 401/402/403/802 |
| PTX-0787 | | Quectel_SC600Y-NA_PTCRB_Certificate | N/A | QTL-1707-1710_0154914 | |
| PTX-0788 | | Quectel_SC600Y-NA_PTCRB_Certificate (Detailed) | N/A | QTL-1707-1710_0154915 | |
| PTX-0789 | | Quectel_SC600Y-NA_PTCRB_Certificate | N/A | QTL-1707-1710_0154916 | |
| PTX-0790 | | Tejet Partial Field Test Report, Report No. 2017FTA360 for Quectel Wireless Solutions Co., Ltd., for UMTS/HSDPA Module, Version R1.0 | 2017/07/25 | QTL-1707-1710_0154918 - QTL-1707-1710_0154969 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0791 | | Tejet Partial Field Test Report, Report No. 2017FTA361 for Quectel Wireless Solutions Co., Ltd., for UMTS/HSDPA Module, Version R1.0 | 2017/07/25 | QTL-1707-1710_0154970 - QTL-1707-1710_0154990 | 401/402/403/802 |
| PTX-0792 | | TTL Partial Report for Quectel Wireless Solutions Co., Ltd. on UC15 | 2014/05/30 | QTL-1707-1710_0154992 - QTL-1707-1710_0155085 | 401/402/403/802 |
| PTX-0793 | | Quectel_UC20_PTCRB_Certificate | N/A | QTL-1707-1710_0155086 | |
| PTX-0794 | | Ritt 7 Layers InterLab Final Report on Quectel Wireless Solutions Co., Ltd. UC20, Version R1.0 | 2014/03/27 | QTL-1707-1710_0155171 - QTL-1707-1710_0155248 | 401/402/403/802 |
| PTX-0795 | | Quectel_UG96_PTCRB_Certificate | N/A | QTL-1707-1710_0155249 | |
| PTX-0796 | | Ritt 7 Layers InterLab Final Report on Quectel Wireless Solutions Co., Ltd. UG96, Version R1.0 | 2015/10/20 | QTL-1707-1710_0155250 - QTL-1707-1710_0155460 | 401/402/403/802 |
| PTX-0797 | | Ritt 7 Layers InterLab Final Report on Quectel Wireless Solutions Co., Ltd. UG96, Version R1.0 | 2015/10/20 | QTL-1707-1710_0155461 - QTL-1707-1710_0155583 | 401/402/403/802 |
| PTX-0798 | | Email to P. Qian, et al. from Y. Feng re Philips License Agreement | 2018/06/12 | QTL-1707-1710_0157282 - QTL-1707-1710_0157347 | 402, 403, MIL |
| PTX-0799 | | Email chain between Y. Feng, N. Muhrer, D. Hierl and P. Qian re Philips License Agreement | 2018/06/12 | QTL-1707-1710_0157348 - QTL-1707-1710_0157349 | 402, 403, MIL |
| PTX-0800 | | Email chain between Y. Feng, N. Muhrer, D. Hierl, D. Zhang and P. Qian re Philips License Agreement | 2018/06/13 | QTL-1707-1710_0157350 - QTL-1707-1710_0157797 | 402, 403, MIL |
| PTX-0801 | | Email to P. Qian, et al. from Y. Feng re The progress on Philips Licensing Program | 2018/06/12 | QTL-1707-1710_0157807 | 402, 403, MIL |
| PTX-0802 | | Email chain between Y. Feng, N. Muhrer, D. Zhang and P. Qian re The progress on Philips Licensing Program | 2018/10/24 | QTL-1707-1710_0157808 - QTL-1707-1710_0157809 | 402, 403, MIL |
| PTX-0803 | | Embedded Module Patent License agreement between Qualcomm Incorporated and Quectel Wireless Solutions Co., Ltd. | 2022/07/01 | QTL-1707-1710_0164232 - QTL-1707-1710_0164270 | |
| PTX-0804 | | Letter to Quectel Wireless Solutions Co., Ltd. from Qualcomm re Fully Executed Agreements | 2022/08/18 | QTL-1707-1710_0164271 - QTL-1707-1710_0164310 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0805 | | Amendment To Embedded Module Patent License agreement between Qualcomm Incorporated and Quectel Wireless Solutions Co., Ltd. | 2023/01/01 | QTL-1707-1710_0164311 - QTL-1707-1710_0164318 | |
| PTX-0806 | | Xirgo Datasheet for XT2180 Series | 2020/00/00 | XIRGO_ITC_000006 - XIRGO_ITC_000007 | 802/901 |
| PTX-0807 | | Xirgo Datasheet for XT2500 Series | 2020/00/00 | XIRGO_ITC_000011 - XIRGO_ITC_000023 | 802/901 |
| PTX-0808 | | Xirgo Datasheet for XT3100 Series | 2020/00/00 | XIRGO_ITC_000016 - XIRGO_ITC_000016 | 802/901 |
| PTX-0809 | | Xirgo Data Sheet fro XT4900 Series | 2021/00/00 | XIRGO_ITC_000021 - XIRGO_ITC_000022 | 802/901 |
| PTX-0810 | | Xirgo XT6264 User Guide | 2019/07/19 | XIRGO_ITC_000042 - XIRGO_ITC_000055 | 802/901 |
| PTX-0811 | | Xirgo Datasheet for XT3500 Series | 2021/00/00 | XIRGO_ITC_000097 - XIRGO_ITC_000098 | 802/901 |
| PTX-0812 | | Xirgo Datasheet for XT6200 Series | 2020/00/00 | XIRGO_ITC_000101 - XIRGO_ITC_000102 | 802/901 |
| PTX-0813 | | Xirgo Datasheet for XT2500 Series | 2020/00/00 | XIRGO_ITC_000208 - XIRGO_ITC_000209 | 802/901 |
| PTX-0814 | | U.S. Patent No. 8,817,681 (Aoyama) | 2014/08/26 | N/A | |
| PTX-0815 | | U.S. Patent No. 8,467,723 (Saito) | 2013/06/18 | N/A | |
| PTX-0816 | | U.S. Patent No. 8,559,963 (Nishio) | 2013/10/15 | N/A | |
| PTX-0817 | | Japanese Patent No. JP 5002650 | 2012/08/15 | N/A | 401/402/403 |
| PTX-0818 | | Quectel Wireless Solutions Co., Ltd. 2025 Semi-Annual Financial Report | 2025/00/00 | QTL-1707-1710_0115507 - QTL-1707-1710_0115516 | |
| PTX-0819 | | 36523-3-c10 TBS sheet | | N/A | |
| PTX-0820 | | 3GPP TS 125 213 V7.0.0 (2006-03) Technical Specification Universal Mobile Telecommunications System (UMTS; Spreadings and modulation (FDD) (3GPP TS 25.213 version 7.0.0 Release 7) | 2006/03/00 | N/A | NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0821 | | 3GPP TS 25.101 V5.20.0 (2006-12) Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; User Equipment (UE) radio transmission and reception (FDD) (Release 5), December 2005 | 2005/12/00 | N/A | NP |
| PTX-0822 | | 3GPP TS 25.211 V5.6.0 (2004-09) Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Physical channels and mapping of transport channels onto physical channels (FDD) (Release 5) | 2004/09/00 | N/A | NP |
| PTX-0823 | | 3GPP TS 25.211 V6.7.0 (2005-12) Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Physical channels and mapping of transport channels onto physical channels (FDD) (Release 6) | 2005/12/00 | N/A | NP |
| PTX-0824 | | 3GPP TS 36.523-2 V12.5.0 (2015-03), Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); and Evolved Packet Core (EPC); User Equipment (UE) conformance specification; Part 2: Implementation Conformance Statement (ICS) proforma specification (Release 12) | 2015/03/00 | N/A | NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0825 | | 3GPP TS 36.523-2 V8.6.0 (2010-06), Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); and Evolved Packet Core (EPC); User Equipment (UE) conformance specification; Part 2: Implementation Conformance Statement (ICS) proforma specification (Release 8) | 2010/06/00 | N/A | NP |
| PTX-0826 | | 3GPP TS 36.523-3 V12.1.0 (2015-03), Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); and Evolved Packet Core (EPC); User Equipment (UE) conformance specification; Part 3: Test Suites (Release 12) | 2015/03/00 | N/A | NP |
| PTX-0827 | | 3GPP TS 36.523-3 V8.7.0 (2011-06), Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); and Evolved Packet Core (EPC); User Equipment (UE) conformance specification; Part 3: Test Suites (Release 8) | 2011/06/00 | N/A | NP |
| PTX-0828 | | 3GPP TS 36.523-3 V12.1.0 (2015-03)Annex A-C | 2011/06/00 | N/A | NP |
| PTX-0829 | | 3GPP TS 36.523-3 V12.1.0 (2015-03) Annex D-E | 2015/03/00 | N/A | NP |
| PTX-0830 | | 3GPP TSG T1#3 T1-99089 | N/A | N/A | NP |
| PTX-0831 | | 3GPP TSG-T Meeting #3 Yokohama (Japan) 22-23 April, TSG#3(99)089, Agenda 10.2 Document for Discussion and information | N/A | N/A | 403/NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0832 | | Amicus Curie from VoiceAge EVS GmbH v. HMD Global Oy, Munich Higher Court from https://oxfirst.com/wp-content/uploads/2024/08/AmicusBriefEnglish.pdf | 2024/04/15 | N/A | 403/MIL |
| PTX-0833 | | AT&T PTCRB Certification Requirements, Version 4 | 2018/09/00 | N/A | NP |
| PTX-0834 | | Barney, "A Study of Patent Morality Rates: Using Statistical Survival Analysis To Rate and Value Patent Assets," Vol. 30, No. 3 | 2002/00/00 | N/A | NP |
| PTX-0835 | | Deng, "A dynamic stochastic analysis of international patent application and renewal process," International Journal of Industrial Organization 29 | 2011/00/00 | N/A | NP |
| PTX-0836 | | Benly, "Why PTM Replaced AMT in Modern DSL Networks," February 11, 2026 from https://medium.com/@mark.benly/why-ptm-replaced-atm-in-modern-dsl-networks-e43cd0cbafa2 | 2026/02/11 | N/A | 401/901 |
| PTX-0837 | | Holma, et al., "HSDPA/HSUPA for UMTS," Wiley, pp. 4, 35, Figure 3.9 | 2006/00/00 | N/A | 401/901/NP |
| PTX-0838 | | Kurose and K. Ross, Computer Networking: A Top-Down Approach, 7th Ed., Pearson, p. 28, 244, 2017 | 201/00/00 | N/A | NP |
| PTX-0839 | | McGraw-Hill Dictionary of Scientific & Technical Terms, 6E, 2003 by The McGraw-Hill Companies, Inc., from https://encyclopedia2.thefreedictionary.com/software+multiplexing | N/A | N/A | 104/NP |
| PTX-0840 | | Pourahim, et al., "From a Freeflowing Dance to a Forced March: A Commentary on the EU Commission's Inflexible View of Huawei-ZTE and its impact on FRAND negotiations" | 2025/01/08 | N/A | 401/402/403/MIL/901/NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0841 | | Schankerman, "How Valuable is Patent Protection: Estimates by Technology Field," RAND Journal of Economics, Volume 29, Number 1, pp.77-107 | 1998/00/00 | N/A | 401/402/403/MIL/901/NP |
| PTX-0842 | | Stasik, et al., "Royalty Rates and Licensing Strategies for Essential Patents on 5G Telecommunication Standards: What to Expect," les Nouvelles, 2020, pp. 176-180 | 2020/00/00 | N/A | 401/402/403/MIL/901/NP |
| PTX-0843 | | Tanenbaum, Computer Networks, 4th Ed., Pearson, 2003, p. 38, 95, 313 | 2003/00/00 | N/A | 401/402/403/MIL/901/NP |
| PTX-0844 | | ETSI SR 000 314 V2.37.1 (2025-03) Special Report for Intellectual Property Rights (IPRs); Essential, or potentially Essential, IPRs notified to ETSI in respect of ETSI standards | 2025/03/00 | N/A | NP |
| PTX-0845 | | ETSI SR 000 314 V2.38.1 (2025-11) Special Report for Intellectual Property Rights (IPRs); Essential, or potentially Essential, IPRs notified to ETSI in respect of ETSI standards | 2025/11/00 | N/A | NP |
| PTX-0846 | | ETSI SR 000 314 V2.39.1 (2026-03) Special Report for Intellectual Property Rights (IPRs); Essential, or potentially Essential, IPRs notified to ETSI in respect of ETSI standards | 2026/03/00 | N/A | NP |
| PTX-0847 | | 3GPP TS 25.212 V6.7.0 (2005-12) Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Multiplexing and channel coding (FDD) (Release 6) | 2005/12/00 | N/A | NP |
| PTX-0848 | | ETSI TS 136 321 V.17.7.0 (2024-01) Technical Specification, LTE; Evolved Universal Terrestrial Radio Access (E-UTRA); Medium Access Control (MAC) protocol specification; (3GPP TS 36.321 version 17.7.0 Release 17) | 2024/01/00 | N/A | NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0849 | | 3GPP TS 25.213 V6.5.0 (2006-03) Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Spreading and modulation (FDD) (Release 6) | 2006/03/00 | N/A | NP |
| PTX-0850 | | 3GPP TS 25.214 V6.7.1 (2005-12) Technical Specification for 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Physical layer procedures (FDD) (Release 6) | 2005/12/00 | N/A | NP |
| PTX-0851 | | Letter to Foley & Lardner from Fish re Plaintiff's Request for Qualcomm Baseband Processor Build IDs | 2026/01/30 | N/A | 104/MIL |
| PTX-0852 | | 3GPP TS 36.523-3 V.12.1.0, Release 12 (2005-03) | 2005/03/00 | N/A | NP |
| PTX-0853 | | PTCRB Permanent Reference Document NAPRD03, Version 6.24 | 2026/03/00 | N/A | NP |
| PTX-0854 | | PTCRB: Understanding certification requirements and process | 2024/00/00 | N/A | NP |
| PTX-0855 | | Seite nicht gefunden from https://www.justiz.bayern.de/media/images/behoerden-und-gerichte/landgerichte/muenchen1/hinweise_frand_und_m%FCnchner_verfahren__stand_februar_2020_.pdf | N/A | N/A | 401/402/403/901/NP |
| PTX-0856 | | Shanghai Stock Exchange, (603236) "Quectel Wireless Solutions Co., Ltd." (the Company)-Announcement on Major Financial Indicators in 2019 from http://static.sse.com.cn/disclosure/listedinfo/announcement/c/2020-04-15/603236_20200415 2.pdf | | N/A | 401/901 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0857 | | Shanghai Stock Exchange, (603236) "Quectel Wireless Solutions Co., Ltd." (the Company)- Announcement on United States International Trade Commission Conducting 337 Investigation, http:/static.sse.com.cn/disclosure/listedinfo/announcement/c/2020-12-23/603236_20201223_ 1.pdf | | N/A | 401/901 |
| PTX-0858 | | Spreadsheet S&P Capital IQ | N/A | N/A | NP |
| PTX-0859 | | Verizon's Open Development Device Certification Process, 2025 | | N/A | NP |
| PTX-0860 | | Why IP beat out ATM for use in Next-Generation Voice Networks" from https://hubtechinsider.wordpress.com/2009/05/10/why-ip-beat-out-atm-for-use-in-next-generation-voice-networks/ | 2009/05/10 | N/A | 401/901 |
| PTX-0861 | | T+P Tech+IP Advisory, LLC, 4G-5G SEP Landscape - Patents Declared Through Dec 31, 2021 | 2022/06/00 | N/A | NP |
| PTX-0862 | | Approved Judgment (Public) from Optis Cellular v. Apple [2025] EWCA Civ 552 | 2025/05/01 | N/A | 403/MIL/NE |
| PTX-0863 | | USPTO Presenation "PTAB Trial Statistics FY22 End of Year Outcome Roundup IPR, PGR, Patent Trial and Appeal Board Fiscal Year 2022" | 2022/00/00 | N/A | 401/402/403 |
| PTX-0864 | | TS 38.321 V.16.21.0 (2025-10) | 2025/10/00 | N/A | NP |
| PTX-0865 | | DIGIT 2G, 3G, 4G LTE Network Shutdown Updates from https://www.digi.com/blog/post/2g-3g-4g-lte-network-shutdown-updates | N/A | N/A | 901/802/NP |
| PTX-0866 | | FCC "Plan Ahead for Phase Out of 3G Cellular Networks and Service," from https://www.fcc.gov/consumers/guides/plan-ahead-phase-out-3g-cellular-networks-and-service | N/A | N/A | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0867 | | Lund, "T-Mobile will shut down its 2G network in the United States on April 2, 2024. from https://www.particle.io/blog/t-mobile-sunset-2g/ | 2023/03/30 | N/A | |
| PTX-0868 | | Quectel's EG25-GL Hardware Design, LTE Standard Module Series, Version 1.0.0 | 2022/09/09 | N/A | NP/901 |
| PTX-0869 | | CalAmp LMU-5541 LTE CAT-+4 from https://www.calamp.com/device/lmu-5541 | N/A | N/A | 901/NP |
| PTX-0870 | | 3GPP TS 25.214 V11.0.0 | | N/A | NP |
| PTX-0871 | | 3GPP Article 55 from https://www.3gpp.org/ftp/Information/Working_Procedures/archive/2015-01-23/3GPP_WP.htm#Article_55 | N/A | N/A | 901/NP |
| PTX-0872 | | 3GPP Delegates Corner from http://www.3gpp.org/specifications-groups/delegates-corner | N/A | N/A | 901/NP |
| PTX-0873 | | 3GPP Get Involved from from https://www.3gpp.org/get-involved | N/A | N/A | 901/NP |
| PTX-0874 | | 3GPP Groups from https://www.3gpp.org/3gpp-groups | N/A | N/A | 901/NP |
| PTX-0875 | | 3GPP Partner from https://www.3gpp.org/about-us/partners | N/A | N/A | 901/NP |
| PTX-0876 | | 3GPP Portal from https://portal.3gpp.org/Releases.aspx | N/A | N/A | 901/NP |
| PTX-0877 | | 3GPP Releases from https://www.3gpp.org/specifications-technologies/releases/70- | N/A | N/A | 901/NP |
| PTX-0878 | | 3GPP Releases from https://www.3gpp.org/specifications-technologies/releases/78-functionality-in-early-gsm | N/A | N/A | 901/NP |
| PTX-0879 | | 3GPP Specifications & Technologies from https://www.3gpp.org/specifications-technologies/67-releases | N/A | N/A | 901/NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0880 | | 3GPP Working Procedures from https://www.3gpp.org/delegates-corner/3gpp-working-procedures | N/A | N/A | 901/NP |
| PTX-0881 | | 3GPP Working Procedures from https://www.3gpp.org/delegates-corner3gpp-working-procedures | N/A | N/A | 901/NP |
| PTX-0882 | | About 3GPP from https://web.archive.org/web/20040815001010/http://www.3gpp.org/About/about.htm | N/A | N/A | 901/NP |
| PTX-0883 | | Alston & Bird, "Antitrust Advisory / Japan's Reemergence in Global SEP Disputes," from https://www.alston.com/en/insights/publications/2026/02/japan-reemergence-global-sep-disputes?utm_source=chatgpt.com | N/A | N/A | 401/402/403/901/NP |
| PTX-0884 | | CalAmp's ATU-1650MB Compact Multi-Purpose Asset Tracker from https://www.calamp.com/device/atu-1650mb-compact-multi-purpose-asset-tracker/ | N/A | N/A | 901/NP |
| PTX-0885 | | Electronics Tutorials, The Multiplexer from https://www.electronicstutorials.ws/combination/comb_2.html | N/A | N/A | 401/402/403/901/NP |
| PTX-0886 | | Eric Stasik post on Linked-In from https://www.linkedin.com/posts/eric-stasik-8872b41_a-commentary-on-the-european-commissions-activity-7283058502900609025-6GX4/?utm_source=share&utm_medium=member_desktop&rcm=ACoAAAA4wucBa905QjB02MmLu8N31aGQhwvijR4 | N/A | N/A | 403/MIL/NP |
| PTX-0887 | | ETSI IPR Online Database from https://ipr.etsi.org/SearchIPRD.aspx | N/A | N/A | 401/901/NP |
| PTX-0888 | | ETSI IPR FAQS from https://www.etsi.org/images/files/IPR/FAQ-IPR-Question1.pdf | 2022/05/20 | N/A | 401/901/NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0889 | | ETSI Resources, Intellctual Property Rights IPRs) from https://www.etsi.org/resources/intellectual-property-rights/ | N/A | N/A | 401/901/NP |
| PTX-0890 | | European Commission Communication From the Commission to the European Parliament, The Council and the European Economic and Social Committee, from https://ec.europa.eu/docsroom/documents/26583 | 2017/11/29 | N/A | 401/901/NP |
| PTX-0891 | | ezurio's Cold Chain Moniotring from https://www.ezurio.com/market/cold-chain-monitoring | N/A | N/A | 401/901/NP |
| PTX-0892 | | FCC Equipment Authorization from https://www.fcc.gov/engineering-technology/laboratorydivision/ general/equipment-authorization | N/A | N/A | 401/901/NP |
| PTX-0893 | | FCC Internal Photos of ATV-1650-MB from https://apps.fcc.gov/eas/GetApplicationAttachment.html?id=8332672 | | N/A | 401/901/NP |
| PTX-0894 | | GCF, About – The Global Certification Forum from https://www.globalcertificationforum.org/about.html | | N/A | 401/901/NP |
| PTX-0895 | | Lightyear Asynchronous Transfer Mode vs Ethernet Explained from https://lightyear.ai/tips/asynchronous-transfer-mode-versus-ethernet | N/A | N/A | 401/901/NP |
| PTX-0896 | | https://www.ccsa.org.cn/english/iprDetail/?id=4271&title=CCSA%20Intellectual%20Property%20Rights%20Policy%20%28for%20trial%implementation%29%20 | | N/A | 401/901/NP |
| PTX-0897 | | https://www.etsi.org/ | | N/A | 401/901/NP |
| PTX-0898 | | https://www.etsi.org/?idproj=1312 | N/A | N/A | 401/901/NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0899 | | Interactive session on "Smart Grids for Smart Cities" | 2018/10/30 | N/A | 401/901/NP |
| PTX-0900 | | iPhone 4S launch propels surging Apple 20% to close the gap with Android from https://appleinsider.com/articles/12/01/18/iphone_4s_launch_propels_surging_apple_20_to_close_the_gap_with_android_ | 2012/01/18 | N/A | 401/901/NP |
| PTX-0901 | | PTCRB About from https://www.ptcrb.com/about/#:~:text=PTCRB%20is%20a%20certification%20program,5G%20technologies%20in%20today%27s%20devices | N/A | N/A | 401/901/NP |
| PTX-0902 | | PTCRB, About from https://www.ptcrb.com/about/ | N/A | N/A | 401/901/NP |
| PTX-0903 | | PTCRB, Industry Certified and Network Ready from https://www.ptcrb.com/ | N/A | N/A | 401/901/NP |
| PTX-0904 | | The Verge "The original iPhone changed phones as we knew them, but iPhone 4S was a game-changer, too / Remember compact digitial cameras?," from https://www.theverge.com/2017/1/16/14286168/iphone-4s-launch-bigger-than-first-iphone-siri-icloud-camera | | N/A | 401/901/NP |
| PTX-0905 | | T-Mobile, OEM prerequisites for T-Mobile Lab Entry from https://www.tmobile.com/business/solutions/iot/device-certification/process/oemprerequisites?msockid=2aacd5dcaddc68e310aec2f0ac9969c2, | | N/A | 401/901/NP |
| PTX-0906 | | U.S. Department of the Treasury, Daily Treasury Rates from https://home.treasury.gov/resource-center/data-chart-center/interest-rates/TextView?type=daily_treasury_yield_curve&field_tdr_date_value=2024 | N/A | N/A | 401/901/NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0907 | | UMTS, HSDPA in W-CDMA from https://www.umtsworld.com/technology/hsdpa.htm | N/A | N/A | 401/901/NP |
| PTX-0908 | | ETSI Understanding standards from https://www.etsi.org/standards/understanding-standards/ | N/A | N/A | 401/901/NP |
| PTX-0909 | | Quectel 4G modules: LTE Cat 1 bis from https://www.quectel.com/lte-cat-1-bis-modules/ | N/A | N/A | 401/901/NP |
| PTX-0910 | | 3GPP webpage from https www.3gpp.org/membership | N/A | N/A | 401/901/NP |
| PTX-0911 | | ETSI Find Us from https://www.etsi.org/find-us | N/A | N/A | 401/901/NP |
| PTX-0912 | | Qualcomm Understanding 3GPP - starting with the basics, from https://www.qualcomm.com/news/onq/2017/08/understanding-3gpp-starting-basics | 2017/08/01 | N/A | 401/901/NP |
| PTX-0913 | | ETSI History from https://www.etsi.org/about/history/ | N/A | N/A | 401/901/NP |
| PTX-0914 | | Qualcomm datasheet for MSM7200A Chipset Solution from https://datasheet.octopart.com/MSM7200A-Qualcomm-datasheet-181152866.pdf | 2007/00/00 | N/A | 401/901/NP |
| PTX-0915 | | 3GPP Directory Listing - /ftp/tsg_ran/wg1_rl1/TSGR1_32/Docs/Zips | 2026/04/18 | N/A | 401/901/NP |
| PTX-0916 | | 3GPP Directory Listing - /ftp/tsg_ran/wg1_rl1/TSGR1_33/Docs/Zips | 2026/04/18 | N/A | 401/901/NP |
| PTX-0917 | | 3GPP TSG-RAN WG1 Meeting #33, New York, USA, 25-29 August 2003, R1-030863, Change Request for 25.214 CR 328, Version 5.5.0 | 2003/08/21 | N/A | NP |
| PTX-0918 | | 3GPP Portal Specification #: 25.214 | N/A | N/A | NP |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0919 | | Ericsson IoT Licensing, from https://www.ericsson.com/en/patents/our-licensing-programs/cellular-internet-of-things-iot | N/A | N/A | 401/901/NP |
| PTX-0920 | | "Deputy Assistant Attorney General Dian Kallay Delivers Keynote at Concurrences Dinner in New York," from https://www.justice.gov/opa/speech/daag-dina-kallay-delivers-keynote-concurrences-dinner-new-york | 2025/09/19 | N/A | 401/901/NP |
| PTX-0921 | | "Sveriges Riksbak Prize in Economic Sciences in Memory of Alfred Nobel 2012," from https://www.nobelprize.org/prizes/economic-sciences/2012/summary/ | 2012/00/00 | N/A | 401/901/NP |
| PTX-0922 | | Nokia IoT Licensing Program from https://www.nokia.com/licensing/patents/IoT/ | N/A | N/A | 401/901/NP |
| PTX-0923 | | "Sisvel announces cellular patent pool for narrowband IoT devices (LTE-M, NB-IoT) with great diversity of initial licensors ranging from NPEs to chipmakers and network operators; focus on market development," from https://web.archive.org/web/20231202111413/http:/www.fosspatents.com/2022/11/sisvel-announces-cellular-patent-pool.html | 2022/11/09 | N/A | 401/901/NP |
| PTX-0924 | | PTCRB's Benefits of Participation from https://web.archive.org/web/20130115141218/http://ptcrb.com/index.cfm?tab=benefits | N/A | N/A | 401/901/NP |
| PTX-0925 | | MobilTech Work Instruction for ATE/Config Testing/Configuation for CalAmp Product HMU3640 | 2024/02/02 | CALAMP_1710_00000001 - CALAMP_1710_00000004 | 802 |
| PTX-0926 | | Test Record | 2025/12/10 | CALAMP_1710_00000005 - CALAMP_1710_00000023 | 802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0927 | | Test Record | 2026/03/24 | CALAMP_1710_00000024 - CALAMP_1710_00000063 | 802 |
| PTX-0928 | | HMU3640LB Global Cat 1 LTE + BLE Product Specification | 2023/01/27 | CALAMP_1710_00000064 - CALAMP_1710_00000090 | 802 |
| PTX-0929 | | PRD - LMU-3040 LTE Cat-M + 2G OBD Telematics | 2020/07/22 | CALAMP_1710_00000091 - CALAMP_1710_00000100 | 802 |
| PTX-0930 | | PRD - LMU-2650 Project Information | N/A | CALAMP_1710_00000101 - CALAMP_1710_00000126 | 802 |
| PTX-0931 | | PRD ATU-1650 Project Information | 2026/04/21 | CALAMP_1710_00000127 - CALAMP_1710_00000143 | 802 |
| PTX-0932 | | Graph of Combined Power Spectral Density Plot | N/A | CALAMP_1710_00000144 | 802 |
| PTX-0933 | | 450-00107-K2 Specifications | N/A | 1710-eZurio-0000001 - 1710-eZurio-0000003 | 802 |
| PTX-0934 | | 450-00107-K2 Part Detail Page | N/A | 1710-eZurio-0000004 - 1710-eZurio-0000005 | 802 |
| PTX-0935 | | ezurio Sentrius RG191+LTE Gateways Flexible Multi-Wireless Gateway for Bridging Your LoRaWAN Devices to the Cloud | 2025/00/00 | 1710-eZurio-0000006 - 1710-eZurio-0000007 | 802 |
| PTX-0936 | | Laird Connectivity Product Change Notification (PCN) | 2022/11/01 | 1710-eZurio-0000008 - 1710-eZurio-0000011 | 802 |
| PTX-0937 | | ezuiro Release Notes for Sentrius RG1xx/RG191+LTE, Version 12.178.0.18 | 2025/00/00 | 1710-eZurio-0000012 - 1710-eZurio-0000027 | 802 |
| PTX-0938 | | TCB Grant of Equipment Authorization Certification Issued Under the Authority of the FCC By Eurofins Product Service GmbH for SQG-RG191NALTE | N/A | 1710-eZurio-0000028 | 802 |
| PTX-0939 | | TCB Grant of Equipment Authorization Certification Issued Under the Authority of the FCC By Eurofins Product Service GmbH for SQG-RG191NALTE | N/A | 1710-eZurio-0000029 | 802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0940 | | TCB Grant of Equipment Authorization Certification Issued Under the Authority of the FCC By Eurofins Product Service GmbH for SQG-RG191NALTE | N/A | 1710-eZurio-0000030 | 802 |
| PTX-0941 | | eurofins Product Service Radio Report for Laird Connectivity Inc. for Model RG191+LTE Series | 2020/09/03 | 1710-eZurio-0000031 - 1710-eZurio-0000142 | 802 |
| PTX-0942 | | eurofins Product Service Radio Report for Laird Connectivity Inc. for Model RG191+LTE Series | 2020/08/27 | 1710-eZurio-0000143 - 1710-eZurio-0000227 | 802 |
| PTX-0943 | | eurofins Product Service Radio Report for Laird Connectivity Inc. for Model RG191+LTE Series | 2020/06/29 | 1710-eZurio-0000228 - 1710-eZurio-0000312 | 802 |
| PTX-0944 | | eurofins Product Service FCC/ISED Test Report for Laird Connectivity Inc. for Model RG191+LTE Series | 2020/09/03 | 1710-eZurio-0000313 - 1710-eZurio-0000337 | 802 |
| PTX-0945 | | eurofins Product Service Radio Report for Laird Connectivity Inc. for Model RG191+LTE Series | 2020/09/03 | 1710-eZurio-0000378 - 1710-eZurio-0000469 | 802 |
| PTX-0946 | | eurofins Product Service Radio Report for Laird Connectivity Inc. for Model RG191+LTE Series | 2020/09/03 | 1710-eZurio-0000470 - 1710-eZurio-0000535 | 802 |
| PTX-0947 | | eurofins Product Service Radio Report for Laird Connectivity Inc. for Model RG191+LTE Series | 2020/09/10 | 1710-eZurio-0000536 - 1710-eZurio-0000584 | 802 |
| PTX-0948 | | eurofins Product Service RF-Expsoure Report for Laird Connectivity Inc. for Model RG191+LTE Series | 2020/09/09 | 1710-eZurio-0000585 - 1710-eZurio-0000615 | 802 |
| PTX-0949 | | eurofins Product Service EMC Test Report for Laird Connectivity Inc. for Model RG191+LTE Series | 2020/09/10 | 1710-eZurio-0000616 - 1710-eZurio-0000658 | 802 |
| PTX-0950 | | Laird Connectivity RG191+LTE Regulatory Information, Version 1.1 | 2021/00/00 | 1710-eZurio-0000659 - 1710-eZurio-0000660 | 802 |
| PTX-0951 | | 450-00109-K2 Specifications | N/A | 1710-eZurio-0000661 - 1710-eZurio-0000663 | 802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0952 | | 450-00109-K2 Part Detail Page | N/A | 1710-eZurio-0000664 - 1710-eZurio-0000665 | 802 |
| PTX-0953 | | ezurio Sentrius RG191+LTE Gateways Flexible Multi-Wireless Gateway for Bridging Your LoRaWAN Devices to the Cloud | 2025/00/00 | 1710-eZurio-0000666 - 1710-eZurio-0000667 | 802 |
| PTX-0954 | | ezurio User Guide Sentrius RG1xx/RG191+LTE, Version 7.1 | 2025/07/21 | 1710-eZurio-0000668 - 1710-eZurio-0000745 | 802 |
| PTX-0955 | | Laird Connectivity End of Life (EOL) Notice | 2023/03/23 | 1710-eZurio-0000746 | 802 |
| PTX-0956 | | Quectel's Responses to Philips's First Set of Interrogatories (Nos. 1-7) | 2025/12/15 | N/A | |
| PTX-0957 | | Quectel's First Supplemental Response to Philips's First Set of Interrogatories | 2026/02/13 | N/A | |
| PTX-0958 | | Quectel's Second Supplemental Responses to Philips's First Set of Interrogatories (Nos. 1-7) | 2026/03/06 | N/A | |
| PTX-0959 | | Quectel's Second Supplemental Responses to Philips's First Set of Interrogatories (Nos. 8-12) | 2026/03/06 | N/A | |
| PTX-0960 | | Customer Defendants' Response to Philips's First Set of Interrogatories (Nos. 1-17) | 2026/02/17 | N/A | |
| PTX-0961 | | CalAmp's Supplemental Responses To Philips's Interrogatories Nos. 1-6 | 2026/04/22 | N/A | |
| PTX-0962 | | eZuiro's Supplemental Response to Philips's First Set of Interrogatories (Nos. 1-7) | 2026/04/07 | N/A | |
| PTX-0963 | | Philips' Third Amended Complaint (Dkt. 218) | 2026/03/06 | N/A | NE |
| PTX-0964 | | Quectel's Answer, Defenses, and Counterclaims to Philips' Third Amended Complaint (Dkt. 233) from 202-cv-1710 | 2026/03/27 | N/A | NE |
| PTX-0965 | | Eagle's Answer, Defenses and Counterclaims to Philips's Third Amended Complaint (Dkt. 247) | 2026/04/10 | N/A | 401/402/403/MIL/NE |
| PTX-0966 | | Email chain between Y. Feng and B. Conrad re Philips Lighting has invited you to participate in an event: RFI | 2017/06/26 | QTL-1707-1710_0157250 - QTL-1707-1710_0157256 | 401/402/403 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0967 | | Email chain between Y. Feng and B. Conrad re [Philips Lighting] Supplier financial evaluation | 2017/11/10 | QTL-1707-1710_0157257 - QTL-1707-1710_0157263 | 403/901 |
| PTX-0968 | | Email chain between Y. Feng, D. Hierl and B. Conrad re Philips-Lighting Supplier financial evaluation | 2017/12/10 | QTL-1707-1710_0157264 - QTL-1707-1710_0157281 | 403/901 |
| PTX-0969 | | Email chain between Y. Feng, D. Hierl and T. Forrester re Laird - Philips | 2020/11/20 | QTL-1707-1710_0157813 - QTL-1707-1710_0157814 | 403/901 |
| PTX-0970 | | Quectel 5G RedCap (MediaTek Product) Feasibility Analysis Report | 2024/05/00 | QTL-1707-1710_0157829 - QTL-1707-1710_0157840 | 401/402/403/802 |
| PTX-0971 | | Spreadsheet re ROI & Product Approval Application | 2026/03/26 | QTL-1707-1710_0157841 | |
| PTX-0972 | | Qualcomm Presenation "SDX85/82 Introduction" | N/A | QTL-1707-1710_0157842 - QTL-1707-1710_0157850 | |
| PTX-0973 | | Auectel Presentation "Quectel 5G RedCapAMedlale Nroduet Feasbility Analysis Bepod, Feasbility Anaylsis Report for RG255G Product" | 2024/05/00 | QTL-1707-1710_0157851 - QTL-1707-1710_0157862 | 401/402/403/802 |
| PTX-0974 | | Quectel Presentation "FG101-EAU" | 2023/03/00 | QTL-1707-1710_0157863 - QTL-1707-1710_0157873 | |
| PTX-0975 | | Quectel Presentation "SIM7912E" | 2023/09/00 | QTL-1707-1710_0157874 - QTL-1707-1710_0157889 | |
| PTX-0976 | | Email to J. Ma, et al. from D. Chang re X7X | 2023/07/04 | QTL-1707-1710_0157890 - QTL-1707-1710_0157891 | |
| PTX-0977 | | Quectel Presentation | 2024/01/00 | QTL-1707-1710_0157892 - QTL-1707-1710_0157925 | |
| PTX-0978 | | Quectel Presentation "Analysis of FG101 - EAU" | 2023/03/00 | QTL-1707-1710_0157926 - QTL-1707-1710_0157936 | |
| PTX-0979 | | Auectel Presentation "Competitive product analysis report" | 2021/00/00 | QTL-1707-1710_0157937 - QTL-1707-1710_0157956 | 401/402/403/802 |
| PTX-0980 | | Quectel Presentation "Analysis of SIM 791E" | 2023/09/00 | QTL-1707-1710_0157957 - QTL-1707-1710_0157972 | |
| PTX-0981 | | Auectel Presentation "Issues and requirements related to Unisoc 8910 RF" | N/A | QTL-1707-1710_0157973 - QTL-1707-1710_0157981 | 401/402/403/802 |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0982 | | Email to J. Ma, et al. from D. Chang re X7X High-Frequency Performance Optimization Plan | 2023/07/04 | QTL-1707-1710_0157982 - QTL-1707-1710_0157983 | |
| PTX-0983 | | Auectel Presentation "Competitive product analysis report" | 2024/00/00 | QTL-1707-1710_0157984 - QTL-1707-1710_0158017 | 401/402/403/802 |
| PTX-0984 | | Quectel Presentation | N/A | QTL-1707-1710_0158018 - QTL-1707-1710_0158037 | |
| PTX-0985 | | Quectel Presentation "8910 RF" | N/A | QTL-1707-1710_0158038 - QTL-1707-1710_0158046 | |
| PTX-0986 | | Spreadsheet re 2010-2025 Worldwide Sales | N/A | QTL-1707-1710_0164351 | |
| PTX-0987 | | Young, "Advanced Mobile Phone Service: Introduction, Background, and Objectives," The Bell System Technical Journal, Vol. 58, No. 1 | 1979/01/00 | QTL-1707-1710_0164352 - QTL-1707-1710_0164629 | 401/901 |
| PTX-0988 | | Japanese Patent Application H9-233124 | 1997/09/05 | QTL-1707-1710_0165111 - QTL-1707-1710_0165137 | 402/403 |
| PTX-0989 | | Rec. ITU-R M. 687-2 Recommendation ITU-R M.687-2 International Mobile Telecommunications-2000 (IMT-2000) | 1997/00/00 | QTL-1707-1710_0165138 - QTL-1707-1710_0165157 | |
| PTX-0990 | | Email chain between S. Pasquier, Y. Feng, P. Zhang, J. Zhu and D. Shang re Quectel : Meeting on Friday 19th of October 2018 | 2018/10/26 | QTL-1707-1710_0006253 - QTL-1707-1710_0006280 | |
| PTX-0991 | | Email chain between Y. Feng, D. Shang, S. Pasquier, D. Roche, J. Zhu and P. Zhang re Meeting Minuts of March 9th | 2018/03/28 | QTL-1707-1710_0006344 - QTL-1707-1710_0006356 | |
| PTX-0992 | | Email chain between D. Shang, Y. Feng re Meeting Minutes of March 9th | 2018/03/13 | QTL-1707-1710_0006451 - QTL-1707-1710_0006943 | |
| PTX-0993 | | EP1118236B1 Claim Chart | N/A | QTL-1707-1710_0006944 - QTL-1707-1710_0006946 | 401/402/403/MIL |
| PTX-0994 | | EP1479258B1 & US8199711B2 Claim Charts | N/A | QTL-1707-1710_0006947 | 401/402/403/MIL |
| PTX-0995 | | US9497005B2 Claim Chart | N/A | QTL-1707-1710_0006948 - QTL-1707-1710_0006974 | 401/402/403/MIL |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-0996 | | US9392592B2 Claim Chart | N/A | QTL-1707-1710_0006975 - QTL-1707-1710_0006976 | 401/402/403/MIL |
| PTX-0997 | | Email chain between B. Zhao, Y. Feng, G. Bossard, D. Roche and S. Pasquier re Quectel : Meeting on Thursday 6th of December 2018 | 2019/02/12 | QTL-1707-1710_0007029 - QTL-1707-1710_0007058 | |
| PTX-0998 | | Email to Y. Feng from S. Pasquier re Quectel Philips IoT Cellular Communication Patent License | 2020/12/30 | QTL-1707-1710_0007175 - QTL-1707-1710_0007545 | |
| PTX-0999 | | Sisvel Cellular IoT Licensing Terms from https://web.archive.org/web/20230926070208/https://www.sisvel.com/licensing-programmes/iot/cellular-iot/#tab-license-terms | 2023/09/26 | QTL-1707-1710_0156243 - QTL-1707-1710_0156245 | |
| PTX-1000 | | Sisvel Cellular IoT Licensing Terms from https://web.archive.org/web/20231124075424/https://www.sisvel.com/licensing-programmes/iot/cellular-iot/#tab-license-terms | 2023/11/21 | QTL-1707-1710_0156246 - QTL-1707-1710_0156248 | |
| PTX-1001 | | Sisvel Cellular IoT Patent Owners from https://www.sisvel.com/licensing-programmes/iot/cellular-iot/#tab-patent-owners | 2026/02/12 | QTL-1707-1710_0156249 - QTL-1707-1710_0156251 | |
| PTX-1002 | | Sisvel Cellular IoT FAQ from https://www.sisvel.com/licensing-programmes/iot/cellular-iot/#tab-faq | 2026/02/12 | QTL-1707-1710_0156252 - QTL-1707-1710_0156257 | |
| PTX-1003 | | Sisvel New, lower royalty rates announced for Sisvel IoT patent pool from https://www.sisvel.com/news/new-lower-royalty-rates-announced-for-sisvel-cellular-iot-patent-pool/ | 2024/05/13 | QTL-1707-1710_0156258 - QTL-1707-1710_0156264 | |
| PTX-1004 | | Sisvel Cellular IoT Patents from https://www.sisvel.com/licensing-programmes/iot/cellular-iot/#tab-patents | 2026/02/09 | QTL-1707-1710_0156265 - QTL-1707-1710_0156269 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-1005 | | Sisvel Cellular IoT License Terms from https://www.sisvel.com/licensing-programmes/iot/cellular-iot/#tab-license-terms | N/A | QTL-1707-1710_0156270 - QTL-1707-1710_0156274 | |
| PTX-1006 | | Exhibit D Licensed Patents LTE-M | N/A | QTL-1707-1710_0156275 - QTL-1707-1710_0156351 | |
| PTX-1007 | | Second Amendment to Embedded Module Chinese Patent License Agreement and Embedded Module Patent License Agreement between Qualcomm and Quectel | 2024/10/01 | QTL-1707-1710_0106637 - QTL-1707-1710_0106640 | |
| PTX-1008 | | License Agreement between Soverign Peak Ventures, LLC and Quectel IoT Technologies PTE. Ltd. | 2025/12/30 | QTL-1707-1710_0107398 - QTL-1707-1710_0107461 | |
| PTX-1009 | | Letter to Quectel from Philips re Philips GSM-AMR/UMTS/LTE Licensing Program | 2015/12/29 | PRSNA-ITC0470980 - PRSNA-ITC0471001 | |
| PTX-1010 | | Xirgo XT4964 User Guide, Revsion ` | 2019/11/13 | XIRGO_ITC_000026 - XIRGO_ITC_000041 | |
| PTX-1011 | | Xirgo Data Sheet for XT6300 Series | 2020/00/00 | XIRGO_ITC_000056 - XIRGO_ITC_000057 | |
| PTX-1012 | | Xirgo XT6372R User Guide, Version 2.0 | 2017/07/21 | XIRGO_ITC_000061 - XIRGO_ITC_000090 | |
| PTX-1013 | | Laird Connectivity Sentrius RG191+LTE Gateways, Flexible Multi Wireless Gateway For Bridging Your Lorawan Devices To the Cloud | N/A | LCI0000243 - LCI0000244 | |
| PTX-1014 | | Laird Connectivity Sentrius IG60-BL654 Regulatory Information, Version 1.0 | 2021/00/00 | LCI0000245 - LCI0000252 | |
| PTX-1015 | | Laird Connectivity Sentrius IG60 Wireless IoT Gateways | N/A | LCI0001044 - LCI0001048 | |
| PTX-1016 | | Letter to CalAmp from Verizon re CalAmp Corp HMU3640LV Open Development Certification | 2019/10/11 | CAL00001258 - CAL00001260 | |
| PTX-1017 | | Letter to CalAmp from Verizon re CalAmp Corp LMU2630LV Open Development Certification | 2017/06/30 | CAL00005095 - CAL00005096 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-1018 | | Notice of Network Compatibility between AT&T and CalAmp | 2017/04/25 | CAL00005099 - CAL00005102 | |
| PTX-1019 | | Letter to CalAmp from Verizon re CalAmp Corp QB300LV Open Development Certification | 2018/10/26 | CAL00005764 - CAL00005765 | |
| PTX-1020 | | Notice of Network Compatibility between AT&T and CalAmp | 2018/10/26 | CAL00005766 - CAL00005768 | |
| PTX-1021 | | Notice of Network Compatibility between AT&T and CalAmp | 2019/06/06 | CAL00006544 - CAL00006546 | |
| PTX-1022 | | CalAmp Presentatiaon "World Class Telematic" | 2020/03/00 | CAL00007213 - CAL00007315 | |
| PTX-1023 | | CalAmp Presentatiaon "CalAmp iOn for Commercial Fleets, Stay on Track: Vehicle, Equipment, Tool and Cargo Management" | 2021/01/00 | CAL00007316 - CAL00007347 | |
| PTX-1024 | | Quectel Specification for Quectel BC66 Compact LTE Cat NB1 Module with Ultra-low Power Consumption, Version 2.0 | 2022/00/00 | QTL-1707-1710_0004458 - QTL-1707-1710_0004459 | |
| PTX-1025 | | Quectel Specifcation Quectel EC20-CE IoT/M2M-optimized LTE Cat 4 Module, Verison 1.4 | 2023/00/00 | QTL-1707-1710_0004471 - QTL-1707-1710_0004472 | |
| PTX-1026 | | Quectel Specifcation Quectel EM05 Series OpT/M2M-optimized LTE Cat 4 M.2 Module, Version 1.7 | 2024/00/00 | QTL-1707-1710_0004531 - QTL-1707-1710_0004532 | |
| PTX-1027 | | Quectel Specifcation Quectel EC200A-xxV1 Series IoT/M2M-optimized LTE Cat 4 Module, Version1.3 | 2026/00/00 | QTL-1707-1710_0158981 - QTL-1707-1710_0158982 | |
| PTX-1028 | | Tech Mahindra Test Report for EC25-A | 2026/03/28 | KPNV0249028 - KPNV0249041 | |
| PTX-1029 | | Tech Mahindra Test Report for SC20-A | 2026/03/28 | KPNV0249042 - KPNV0249055 | |
| PTX-1030 | | Tech Mahindra Test Report for EM06-A | 2026/03/28 | KPNV0249056 - KPNV0249069 | |
| PTX-1031 | | Tech Mahindra Test Report for EM12-G | 2026/03/28 | KPNV0249070 - KPNV0249083 | |
| PTX-1032 | | Tech Mahindra Test Report for SC200R-NA | 2026/03/28 | KPNV0249084 - KPNV0249097 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-1033 | | Tech Mahindra Test Report for SC600Y-NA | 2026/03/27 | KPNV0249098 - KPNV0249111 | |
| PTX-1034 | | Tech Mahindra Test Report EG25-GL | 2026/03/27 | KPNV0256004 - KPNV0256017 | |
| PTX-1035 | | Eagle's Objections and Responses to Philips' First Set of Interrogatories (Nos. 1-13) | 2026/06/19 | N/A | 401/402/403/MIL/NE |
| PTX-1036 | | Tech Mahindra Test Report for SC200R-NA | 2026/03/31 | KPNV0255588 - KPNV0255597 | |
| PTX-1037 | | Tech Mahindra Test Report for SC600Y-NA | 2026/03/31 | KPNV0255598 - KPNV0255607 | |
| PTX-1038 | | Tech Mahindra Test Report for BG600L-M3 | 2026/03/31 | KPNV0255608 - KPNV0255617 | |
| PTX-1039 | | Tech Mahindra Test Report for BG96 | 2026/03/31 | KPNV0255618 - KPNV0255627 | |
| PTX-1040 | | Tech Mahindra Test Report for EC200U-AU | 2026/03/31 | KPNV0255628 - KPNV0255637 | |
| PTX-1041 | | Tech Mahindra Test Report for EG065K-NA | 2026/03/31 | KPNV0255638 - KPNV0255647 | |
| PTX-1042 | | Tech Mahindra Test Report for EM160R-GL | 2026/03/31 | KPNV0255648 - KPNV0255657 | |
| PTX-1043 | | Tech Mahindra Test Report for RG255C-GL | 2026/03/31 | KPNV0255658 - KPNV0255667 | |
| PTX-1044 | | Tech Mahindra Test Report for RG650V-NA | 2026/03/31 | KPNV0255668 - KPNV0255677 | |
| PTX-1045 | | Tech Mahindra Test Report for RM520N-GL | 2026/03/31 | KPNV0255678 - KPNV0255687 | |
| PTX-1046 | | Tech Mahindra Test Report for EG25-GL | 2026/03/31 | KPNV0255698 - KPNV0255707 | |
| PTX-1047 | | Tech Mahindra Test Report for EC25-A | 2026/03/31 | KPNV0255708 - KPNV0255717 | |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-1048 | | Tech Mahindra Test Report for SC20-A | 2026/03/31 | KPNV0255718 - KPNV0255727 | |
| PTX-1049 | | Tech Mahindra Test Report for EM06-A | 2026/03/31 | KPNV0255728 - KPNV0255737 | |
| PTX-1050 | | Tech Mahindra Test Report for EM12-G | 2026/03/31 | KPNV0255738 - KPNV0255747 | |
| PTX-1051 | | Tech Mahindra Test Report for SC600Y-NA | 2026/03/31 | KPNV0255758 - KPNV0255767 | |
| PTX-1052 | | Tech Mahindra Test Report for BG600L-M3 | 2026/03/31 | KPNV0255768 - KPNV0255777 | |
| PTX-1053 | | Tech Mahindra Test Report for SC600Y-NA | 2026/03/31 | KPNV0255778 - KPNV0255787 | |
| PTX-1054 | | Tech Mahindra Test Report for BG600L-M3 | 2026/03/31 | KPNV0255788 - KPNV0255787 | |
| PTX-1055 | | Tech Mahindra Test Report for BG96 | 2026/03/31 | KPNV0255798 - KPNV0255807 | |
| PTX-1056 | | Tech Mahindra Test Report for EC200U-AU | 2026/03/31 | KPNV0255808 - KPNV0255817 | |
| PTX-1057 | | Tech Mahindra Test Report for RG255C-GL | 2026/03/31 | KPNV0255818 - KPNV0255827 | |
| PTX-1058 | | Tech Mahindra Test Report for RG650V-NA | 2026/03/31 | KPNV0255828 - KPNV0255837 | |
| PTX-1059 | | Tech Mahindra Test Report for EG25-GL | 2026/03/31 | KPNV0255858 - KPNV0255867 | |
| PTX-1060 | | Tech Mahindra Test Report for EC25-A | 2026/03/31 | KPNV0255868 - KPNV0255877 | |
| PTX-1061 | | Tech Mahindra Test Report for SC20-A | 2026/03/31 | KPNV0255878 - KPNV0255887 | |
| PTX-1062 | | Tech Mahindra Test Report for EM06-A | 2026/03/31 | KPNV0255888 - KPNV0255897 | |
| PTX-1063 | | Tech Mahindra Test Report for EM12-G | 2026/03/31 | KPNV0255898 - KPNV0255907 | |
| PTX-1064 | | Test Data and Log Files produced with Infringement Expert Reports | N/A | KPNV0249112 - KPNV0255222 | 403/NE |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-1065 | | Test Data and Log Files produced with Infringement Expert Reports | N/A | KPNV0255908 - KPNV0256003 | 403/NE |
| PTX-1066 | | UMTS/LTE Terminal Patent License Agreement between Koninklijke Philips N.V. and Acer, Inc. | 2016/12/15 | KPNV0017864 - KPNV0017896 | |
| PTX-1067 | | Internet of Things ("IoT") Platform Master License Management Agreement between Avanci, LLC and The Original Licensors | 2016/07/26 | KPNV0018171 - KPNV0018446 | |
| PTX-1068 | | Touch-Enabled Device/UMTS/LTE/BD/DVD Master Agreement between Koninklijke Philips N.V. and Microsoft | 2019/12/30 | KPNV0019210 - KPNV0019222 | |
| PTX-1069 | | UMTS/LTE Terminal Patent License Agreement between Koninklijke Philips N.V. and Taiwan Nuovo Co., Ltd | 2018/09/17 | KPNV0019814 - KPNV0019844 | |
| PTX-1070 | | UMTS/LTE Terminal Patent License Agreement between Koninklijke Philips N.V. and Vertu Corporation Limited | 2016/01/01 | KPNV0019997 - KPNV0020026 | |
| PTX-1071 | | Patent Assignment Agreement between Koninklijke Philips N.V. and vivo Mobile Communication Co., Ltd. | | KPNV0020266 - KPNV0020274 | |
| PTX-1072 | | Cellular Terminal Patent License Agreement between Koninklijke Philips N.V. and vivo Mobile Communication Co., Ltd. | 2025/01/01 | KPNV0020275 - KPNV0020320 | |
| PTX-1073 | | Settlement Agreement between Koninklijke Philips N.V. and Wiko SAS | 2023/03/05 | KPNV0020027 - KPNV0020046 | |
| PTX-1074 | | Email to Philips from R. Jud re Philips royalty report persuant to counteroffer | 2016/10/31 | PRSNA-ITC0534515 - PRSNA-ITC0534517 | |
| PTX-1075 | | Email to S. Pasquier from K. Baker re Royalty Reports Philips Q4-2016 - Q3-2017 | 2017/11/23 | PRSNA-ITC0534518 - PRSNA-ITC0534519 | |
| PTX-1076 | | Transcript of Markman Hearing | 2026/02/10 | N/A | 104/NE |
| PTX-1077 | | Declaration of Mark R. Lanning (Dkt. 148-01) | 2023/01/23 | N/A | 403/611 |
| PTX-1078 | | Ex. A - Disputed Constructions (Dkt. 109-02) | 2025/12/05 | N/A | 104/NE |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-1079 | | Claim Construction Order (Dkt. 206) | 2026/02/25 | N/A | 104/NE |
| PTX-1080 | | Ex. B - Disputed Constructions (Dkt. 155-02) | 2026/02/02 | N/A | 104/NE |
| PTX-1081 | | Email to P. Gruijters from M. Schlief re Eagle Sync - Follow-Up | 2025/10/17 | KPNV0023886 - KPNV0023912 | 401/402/403/MIL/NP |
| PTX-1082 | | Qualcomm's Source Code | N/A | Q1PHILIPSVQUECTELSC0000001 - Q1PHILIPSVQUECTELSC0000952 | 401/402/403/description |
| PTX-1083 | | Quectel's Source Code | N/A | QTL-1707-1710-SC_0001 - QTL-1707-1710-SC_0129 | 401/402/403/description |
| PTX-1084 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0001 | description |
| PTX-1085 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0002 | description |
| PTX-1086 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0003 | description |
| PTX-1087 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0004 | description |
| PTX-1088 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0005 | description |
| PTX-1089 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0006 | description |
| PTX-1090 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0007 | description |
| PTX-1091 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0008 | description |
| PTX-1092 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0009 | description |
| PTX-1093 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0010 | description |
| PTX-1094 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0011 | description |
| PTX-1095 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0012 | description |
| PTX-1096 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0013 | description |
| PTX-1097 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0014 | description |
| PTX-1098 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0015 | description |
| PTX-1099 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0016 | description |
| PTX-1100 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0017 | description |
| PTX-1101 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0018 | description |
| PTX-1102 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0019 | description |
| PTX-1103 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0020 | description |
| PTX-1104 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0021 | description |
| PTX-1105 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0022 | description |
| PTX-1106 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0023 | description |
| PTX-1107 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0024 | description |
| PTX-1108 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0025 | description |
| PTX-1109 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0026 | description |

| PTX NO. | EX. NO. | DESCRIPTION | DATE | BATES RANGE | DEFENDANT'S OBJECTIONS |
|---|---|---|---|---|---|
| PTX-1110 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0027 | description |
| PTX-1111 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0028 | description |
| PTX-1112 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0029 | description |
| PTX-1113 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0030 | description |
| PTX-1114 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0031 | description |
| PTX-1115 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0032 | description |
| PTX-1116 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0033 | description |
| PTX-1117 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0034 | description |
| PTX-1118 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0035 | description |
| PTX-1119 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0036 | description |
| PTX-1120 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0037 | description |
| PTX-1121 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0038 | description |
| PTX-1122 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0039 | description |
| PTX-1123 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0040 | description |
| PTX-1124 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0041 | description |
| PTX-1125 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0042 | description |
| PTX-1126 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0043 | description |
| PTX-1127 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0044 | description |
| PTX-1128 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0045 | description |
| PTX-1129 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0046 | description |
| PTX-1130 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0047 | description |
| PTX-1131 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0048 | description |
| PTX-1132 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0049 | description |
| PTX-1133 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0050 | description |
| PTX-1134 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0051 | description |
| PTX-1135 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0052 | description |
| PTX-1136 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0053 | description |
| PTX-1137 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0054 | description |
| PTX-1138 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0055 | description |
| PTX-1139 | | Quectel Physical | N/A | QTL-1707-1710_PHYS_0056 | description |
| PTX-1140 | | 3GPP TR 21.905 V5.10.0 Release 5 | | N/A | NP |

# Exhibit 7

| DTX No. | Date | Description | Beg. Bates | End Bates | Objections |
|---|---|---|---|---|---|
| DTX-0001 | | U.S. Patent No. 7,831,271 | KPNV0005173 | KPNV0005179 | |
| DTX-0002 | | U.S. Patent No. 7,944,935 | KPNV0005180 | KPNV0005186 | |
| DTX-0003 | | U.S. Patent App. No. 10/567,042 (File History for U.S. Pat. No. 7,831,271) | KPNV0003020 | KPNV0003274 | |
| DTX-0004 | | U.S. Patent App. No. 11/718,720 (File History for U.S. Pat. No. 7,944,935 ) | KPNV0003275 | KPNV0003488 | |
| DTX-0005 | | Quectel's Amended Notice of Deposition of Kevin Scott (1707) | | | NE, 401/402 |
| DTX-0006 | | Quectel's Amended Notice of Deposition of Kevin Scott (1710) | | | NE, 401/402 |
| DTX-0007 | | Quectel's 30(b)(6) Notice of Deposition of Philips (1707) | | | NE, 401/402 |
| DTX-0008 | | Quectel's 30(b)(6) Notice of Deposition of Philips (1710) | | | NE, 401/402 |
| DTX-0009 | | Email to K. Scott from J. Lin re Philips/HTC UK Proceedings | KPNV0132554 | KPNV0132563 | |
| DTX-0010 | | Philips-HTC Portable Device and UMTS/LTE Master Agreement | KPNV0018905 | KPNV0018914 | |
| DTX-0011 | | Annex C to Teece Expert Report (Philips v. Tinno, HP 2018 000032) | PRSNA-ITC0520724 | PRSNA-ITC0520738 | |
| DTX-0012 | | ETSI Directives Version 26 | QTL-1707-1710_0031839 | QTL-1707-1710_0032037 | |
| DTX-0013 | | Philips IPR Information Statement and Licensing Declaration | KPNV0031515 | KPNV0031522 | |
| DTX-0014 | | Philips IPR Information Statement and Licensing Declaration | KPNV0002292 | KPNV0002307 | |
| DTX-0015 | | Letter to ETSI from Philips re UMTS Patent Declaration | KPNV0031446 | KPNV0031469 | |
| DTX-0016 | | U.S. Patent No. 7,089,028 | | | |
| DTX-0017 | | 3GPP Specification 36.321 Details | | | 401/402, 802, 901 |
| DTX-0018 | | Memo from J. Haken re Summary of Essential Terms of Qualcomm License Agreement | KPNV0019559 | KPNV0019592 | |
| DTX-0019 | | Letter to Qualcomm from Philips re Philips-Qialcomm 1998 Patent Agreement | KPNV0019593 | KPNV0019593 | |
| DTX-0020 | | Kevin Scott Witness Statement (Philips v. Tinno, HP 2018 000032) | PRSNA-ITC0520928 | PRSNA-ITC0520947 | 802, 803, 403, 401/402 |
| DTX-0021 | | Philips' Responses to Quectel's First Interrogatories (1707) | | | 401/402, 802 |
| DTX-0022 | | Quectel's Amended Notice of Deposition of Matthew Baker (1707) | | | NE, 401/402 |
| DTX-0023 | | Quectel's Amended Notice of Deposition of Matthew Baker (1710) | | | NE, 401/402 |
| DTX-0024 | | Letter to M. Baker from Philips re Reimbursement Agreement for Litigation | PRSNA-ITC0537344 | PRSNA-ITC0537349 | NE, 401/402, 802 |
| DTX-0025 | | Matthew Baker LinkedIn Resume | | | 802, 803, 403, 401/402 |
| DTX-0026 | | U.S. Patent No. 8,195,216 | | | |
| DTX-0027 | | U.S. Patent No. 9,178,577 | | | |
| DTX-0028 | | U.S. Patent No. 9,635,599 | | | |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0029 | | Quectel's Notice of Deposition of Jako Eleveld (1707) | | | NE, 401/402 |
| DTX-0030 | | Quectel's Notice of Deposition of Jako Eleveld (1710) | | | NE, 401/402 |
| DTX-0031 | | Philips' First Amended Rule 26(a) Initial Disclosures | | | NE, 401/402 |
| DTX-0032 | | GSM-AMR/UMTS/ LTE M2M Philips Licensing Program Presentation | QTL-1707-1710_0005708 | QTL-1707-1710_0005727 | |
| DTX-0033 | | Philips Complaint (1707) | | | |
| DTX-0034 | | Philips-U-blox Machine to Machine Module Patent License Agreement | KPNV0020214 | KPNV0020239 | |
| DTX-0035 | | Philips-U-blox Machine to Machine Module Patent License Agreement | KPNV0020240 | KPNV0020265 | |
| DTX-0036 | | Letter to Y. Feng from J. Eleveld re Conflict Representation by Quectel through Former Philips Employee | QTL-1707-1710_0008122 | QTL-1707-1710_0008123 | |
| DTX-0037 | | Notice of Commission Determination to Review in Part and Affirm a Final Initial Determination Finding No Violation, 337-TA-1240 | ITC-RECORD-0115764 | ITC-RECORD-0115767 | NE, 401/402, 403, 802 |
| DTX-0038 | | Quectel's Notice of Deposition of Sophie Pasquier (1707) | | | NE, 401/402 |
| DTX-0039 | | Quectel's Notice of Deposition of Sophie Pasquier (1710) | | | NE, 401/402 |
| DTX-0040 | | Letter to P. Qian from S. Pasquier re Philips GSM-AMR/UMTS/LTE Licensing Program | QTL-1707-1710_0005221 | QTL-1707-1710_0005242 | |
| DTX-0041 | | Email to Y. Feng from D. Shang re Meeting Minutes of March 9th and enclosing NDA | QTL-1707-1710_0005174 | QTL-1707-1710_0005187 | |
| DTX-0042 | | Email to Y. Feng from D. Shang re Meeting Minutes of March 9th | QTL-1707-1710_0005190 | QTL-1707-1710_0005210 | |
| DTX-0043 | | Email to Y. Feng from B. Zhao re Quectel: Meeting on Friday 19th of October 2018 | QTL-1707-1710_0006223 | QTL-1707-1710_0006252 | |
| DTX-0044 | | Valuation Spreadsheet | PRSNA-ITC0534520 | PRSNA-ITC0534521 | |
| DTX-0045 | | U-blox Renewal Agreement Working File | KPNV0205262 | KPNV0205262 | |
| DTX-0046 | | Royalties due from Quectel - Successive Offers | KPNV0197397 | KPNV0197397 | |
| DTX-0047 | | Telit Settlement Discussion Working File | KPNV0197049 | KPNV0197049 | |
| DTX-0048 | | Email to B. Zhao from J. Wei re Quectel: Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0007117 | QTL-1707-1710_0007127 | |
| DTX-0049 | | Email to Y. Feng from S. Pasquier re Quectel: Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0007019 | QTL-1707-1710_0007027 | |
| DTX-0050 | 04/01/22 | Final Initial Determination, 337-TA-1240 | ITC-RECORD-0022936 | ITC-RECORD-0023261 | |
| DTX-0051 | 02/10/26 | Markman Hearing Transcript | | | 802, 803, 703, 403, 401/402 |
| DTX-0052 | | 3GPP TS 36.321 - PRSNA-ITC0500669 | KPNV0007424 | KPNV0007478 | |
| DTX-0053 | | Michael Brogioli Demonstrative Exhibits | ITC-RECORD-0023352 | ITC-RECORD-0023435 | 104, 401/402, 602, 702, 703, 802, 901 |
| DTX-0054 | | Quectel EG21-G Module Datasheet | | | 401/402 |
| DTX-0055 | Dec. 2005 | 3GPP TS 25.214 V6.7.1 Release 6 | | | 802, 901 |
| DTX-0056 | 04/06/26 | Philips' Supplemental Responses to Quectel's First Interrogatories (No. 6) | | | 401/402, 802 |
| DTX-0057 | | Harry Bims CV (Bims Rpt. Ex. 1) | | | 401/402 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0058 | | Bims List of Materials Considered (Bims Rpt. Ex. 2) | | | 401/402 |
| DTX-0059 | | Carrie Distler CV (Distler Rpt. App. A) | | | 401/402 |
| DTX-0060 | | Distler List of Materials Considered (Distler Rpt. App. B) | | | 401/402, 702 |
| DTX-0061 | | Distler List of Depositions and Expert Reports Reviewed (Distler Rpt. App. C) | | | 401/402, 702 |
| DTX-0062 | | 1710 Patents-in-Suit (Distler Rpt. Sch. 1) | | | 401/402 |
| DTX-0063 | | Quectel Income Statements 2015-2024 (Distler Rpt. Sch. 2) | | | 401/402, 403, 702, 703 |
| DTX-0064 | | Quectel Produced Sales Data 2014-2025 (Distler Rpt. Sch. 2.1) | | | 401/402, 403, 702, 703 |
| DTX-0065 | | Timeline of Offers from Quectel and Philips (Distler Rpt. Sch. 3) | | | 403, 702, 703, 802 |
| DTX-0066 | | Pre-suit Communications between Philips and Quectel (Distler Rpt. Sch. 3.1) | | | 403, 702, 703, 802 |
| DTX-0067 | | Philips-u-blox Agreement (2018) Adjusted Effective Rates (Distler Rpt. Sch. 4) | | | 401/402, 702, 802, 901 |
| DTX-0068 | | Unit Volumes in Philips-u-blox Agreement (2018) (Distler Rpt. Sch. 4.1) | | | 401/402, 702, 802, 901 |
| DTX-0069 | | Unit Volumes in Philips-u-blox Agreement (2018) (Distler Rpt. Sch. 4.2) | | | 401/402, 702, 802, 901 |
| DTX-0070 | | u-blox Valuation, Philips (Distler Rpt. Sch. 4.3) | | | 401/402, 702 |
| DTX-0071 | | Philips-Telit Cinterion Agreement (2024) Adjusted Units (2014-2028) (Distler Rpt. Sch. 5) | | | 401/402, 702, 802, 901 |
| DTX-0072 | | Gemalto Valuation Sheet from Philips's November 2018 Offer (Distler Rpt. Sch. 5.1) | | | 401/402, 702, |
| DTX-0073 | | Telit Valuation Sheet from Philips's June 2019 Offer (Distler Rpt. Sch. 5.2) | | | 401/402, 702 |
| DTX-0074 | | Volume Comparison between Quectel, u-blox, Telit, and Gemalto, 2016-2020 (Distler Rpt. Sch. 6.1) | | | 401/402, 403, 702, 802, 901 |
| DTX-0075 | | Volume Comparison between Apple and Quectel (Distler Rpt. Sch. 6.2) | | | 401/402, 403, 702, 802, 901 |
| DTX-0076 | | Comparison of Royalty Rate Calculations for Philips-Huawei Agreement (2019) (Distler Rpt. Sch. 7.1) | | | 401/402, 403, 702, 802, 901 |
| DTX-0077 | | Effective Rate of Philips-Apple 2012 Agreement and Philips-Sharp-Apple 2011 Agreement (Distler Rpt. Sch. 7.2) | | | 401/402, 403, 702, 802, 901 |
| DTX-0078 | | Comparison of Royalty Rate Calculations for Philips-Apple and Philips-Sharp-Apple Agreements (Distler Rpt. Sch. 7.3) | | | 401/402, 403, 702, 802, 901 |
| DTX-0079 | | Remy Libchaber CV (Libchaber Rpt. Att. A) | | | 401/402 |
| DTX-0080 | | Libchaber List of Materials Considered (Libchaber Rpt. Att. B) | | | 401/402 |
| DTX-0081 | | Friedhelm Rodermund CV (Rodermund Rpt. Ex. A) | | | 401/402 |
| DTX-0082 | | Rodermund List of Materials Considered (Rodermund Rpt. Ex. B) | | | 401/402 |
| DTX-0083 | | Membership of ETSI (https://www.etsi.org/membership) (Rodermund Rpt. Ex. 1) | | | 401/402, 802, 901 |
| DTX-0084 | Jan. 2008 | Draft Minutes of the 60th TSG-RAN WG2 Meeting, R2-07080510 (Rodermund Rpt. Ex. 2) | | | 401/402, 802, 805, 901 |
| DTX-0085 | 09/19/13 | Guide on Intellectual Property Rights (IPRs) (Rodermund Rpt. Ex. 3) | | | 401/402, 802, 901 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0086 | 03/29/07 | ETSI IPR Policy (Rodermund Rpt. Ex. 4) | | | 401/402, 802, 901 |
| DTX-0087 | May. 2003 | Draft Report of 3GPP TSG RAN WG1 #30 Meeting, R1-030613 (Rodermund Rpt. Ex. 5) | | | 401/402, 802, 805, 901 |
| DTX-0088 | 01/29/09 | List of All ETSI Full Members ( https://web.archive.org/web/20090129164903/http://portal.etsi.org:80/Portal_IntegrateAppli/QueryResult.asp?Alone=1&SortBy=&SortDirection=&Param=) (Rodermund Rpt. Ex. 6) | | | 401/402, 802, 805, 901 |
| DTX-0089 | | Third Generation Partnership Project Agreement (Rodermund Rpt. Ex. 7) | | | 401/402, 802, 901 |
| DTX-0090 | May.. 2003 | Report of 3GPP TSG RAN WG1 #31 Meeting Revision 1, R1-030614 (Rodermund Rpt. Ex. 8) | | | 401/402, 802, 805, 901 |
| DTX-0091 | Aug. 2003 | Report of 3GPP TSG RAN WG1 #32 (Revision1), R1-030941 (Rodermund Rpt. Ex. 9) | | | 401/402, 802, 805, 901 |
| DTX-0092 | | ETSI, Our operations (https://www.etsi.org/about/our-operations) (Rodermund Rpt. Ex. 10) | | | 401/402, 802, 901 |
| DTX-0093 | 09/23/06 | TSG Organization, Specifications Group (https://web.archive.org/web/20060923162439/http://www.3gpp.org/tb/home.htm) (Rodermund Rpt. Ex. 11) | | | 104, 401/402, 802 901 |
| DTX-0094 | | Technical Specification Groups (TSGs) (https://www.3gpp.org/3gpp-groups) (Rodermund Rpt. Ex. 12) | | | 401/402, 802, 901 |
| DTX-0095 | | 3GPP FAQs, https://www.3gpp.org/about-us/3gpp-faqs (Rodermund Rpt. Ex. 13) | | | 401/402, 802, 901 |
| DTX-0096 | | 3GPP Specifications by Series (https://www.3gpp.org/specifications-technologies/specifications-by-series) (Rodermund Rpt. Ex. 14) | | | 401/402, 802, 901 |
| DTX-0097 | | 3GPP TS 21.900, Technical Specification Group Working Methods, V8.0.0 (Rodermund Rpt. Ex. 15) | | | 401/402, 802, 901 |
| DTX-0098 | Nov. 1997 | ETSI IPR Policy (Rodermund Rpt. Ex. 16) | | | 401/402, 802, 901 |
| DTX-0099 | Nov. 2022 | ETSI IPR Policy (Rodermund Rpt. Ex. 17) | | | 401/402, 802, 901 |
| DTX-0100 | Apr. 2005 | Proposed Modification to Clause 4.1 of the ETSI IPR Policy (Rodermund Rpt. Ex. 18) | | | 802, 805, 901 |
| DTX-0101 | | Draft Report of 3GPP TSG RAN WG2 #60bis (Rodermund Rpt. Ex. 19) | | | 401/402, 802, 805, 901 |
| DTX-0102 | | ETSI Seminar 2010, Legal Considerations (Rodermund Rpt. Ex. 20) | | | 401/402, 403, 702, 802, 901 |
| DTX-0103 | | Frohlich, The Interface between Standards and IPRs - The ETSI IPR Policy (Rodermund Rpt. Ex. 21) | | | 401/402, 403, 702, 802, 901 |
| DTX-0104 | 11/23/05 | ETSI Guide on Intellectual Property Rights (IPRs) (Rodermund Rpt. Ex. 22) | | | 401/402, 802, 901 |
| DTX-0105 | | 3GPP FAQs (https://www.3gpp.org/about-us/3gpp-faqs) (Rodermund Rpt. Ex. 23) | | | 401/402, 802, 901 |
| DTX-0106 | | ETSi, IPRs (https://www.etsi.org/intellectual-property-rights) (Rodermund Rpt. Ex. 24) | | | 401/402, 403 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0107 | 11/29/17 | Setting out the EU approach to Standard Essential Patents (Rodermund Rpt. Ex. 25) | | | 401/402, 403, 802 |
| DTX-0108 | | 3GPP, Call for IPR (Meetings) (https://www.3gpp.org/about-us/legal-matters/callfor-ipr) (Rodermund Rpt. Ex. 26) | | | 401/402, 403, 702, 703, 802, 901 |
| DTX-0109 | | ETSI Seminar Slides (Rodermund Rpt. Ex. 27) | | | 401/402, 403, 702, 703, 802, 901 |
| DTX-0110 | | Participant List of RAN WG2 #60bis (Rodermund Rpt. Ex. 28) | | | 401/402, 802, 901 |
| DTX-0111 | | Draft Report of 3GPP TSG RAN WG2 #61 (Rodermund Rpt. Ex. 29) | | | 401/402, 802, 805, 901 |
| DTX-0112 | | (https://portal.3gpp.org/#/55934-releases) (Rodermund Rpt. Ex. 30) | | | 401/402, 802, 901 |
| DTX-0113 | 08/11/03 | Email from M. Baker re AH50: Power scaling at max power with HS-DPCCH (Rodermund Rpt. Ex. 31) | | | 401/402, 403, 802, 805, 901 |
| DTX-0114 | 08/18/03 | Email from M. Baker re AH50: CR for RAN1#33 for power scaling at max power (Rodermund Rpt. Ex. 32) | | | 401/402, 403, 802, 805, 901 |
| DTX-0115 | 08/21/03 | Email from M. Baker re Re: AH50: CR for RAN1#33 for power scaling at max power (Rodermund Rpt. Ex. 33) | | | 401/402, 403, 802, 805, 901 |
| DTX-0116 | | Report of RAN WG1 #33 (Rodermund Rpt. Ex. 34) | | | 401/402, 403, 802, 805, 901 |
| DTX-0117 | | Participant List of RAN WG2 #61 (Rodermund Rpt. Ex. 35) | | | 401/402, 403, 802, 805, 901 |
| DTX-0118 | | Report of 3GPP TSG RAN WG2 meeting #62bis, R2-083830 (Rodermund Rpt. Ex. 36) | | | 401/402, 403, 802, 805, 901 |
| DTX-0119 | 11/17/25 | Philips' Responses to Quectel's First Interrogatories (Rodermund Rpt. Ex. 37) | | | 401/402, 802 |
| DTX-0120 | | Report of 3GPP TSG RAN WG2 Meeting #61bis, R2-082800 (Rodermund Rpt. Ex. 38) | | | 401/402, 802, 805 |
| DTX-0121 | | GB 0424918.1 (Rodermund Rpt. Ex. 39) | | | 401/402 |
| DTX-0122 | | Participant List of RAN WG2 #61bis (Rodermund Rpt. Ex. 40) | | | 401/402, 403, 802, 805, 901 |
| DTX-0123 | | Report of 3GPP TSG RAN WG2 meeting #62bis, R2-083830 (Rodermund Rpt. Ex. 41) | | | 401/402, 403, 802, 805, 901 |
| DTX-0124 | | Report of 3GPP TSG RAN WG2 meeting #63, R2-085971 (Rodermund Rpt. Ex. 42) | | | 401/402, 403, 802, 805, 901 |
| DTX-0125 | | Participant List of RAN WG2 #62 (Rodermund Rpt. Ex. 43) | | | 401/402, 403, 802, 901 |
| DTX-0126 | | Report from the email discussion on Logical Channel Prioritisation, R2-083140 (Rodermund Rpt. Ex. 44) | | | 401/402, 403, 802, 805, 901 |
| DTX-0127 | | UL Channel Prioritisation, R2-084920 (Rodermund Rpt. Ex. 45) | | | 401/402, 403, 802, 901 |
| DTX-0128 | | Clarification of power scaling with HS-DPCCH, R1-030608 (Rodermund Rpt. Ex. 46) | | | 401/402, 403, 802, 901 |
| DTX-0129 | | Summary of the email discussion on logical channel prioritization, R2-082123 (Rodermund Rpt. Ex. 47) | | | 401/402, 403, 802, 805, 901 |
| DTX-0130 | | Michael Walker Expert Report, Core Wireless v. Apple (5:15-cv-5008, N.D. Cal.) (Rodermund Rpt. Ex. 48) | | | 401/402, 403, 702, 703, 802, 805, 901 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0131 | 11/20/15 | Email from J. Meredith re Re: [91bis#23][LTE/iPos] 36.355 CR (Rodermund Rpt. Ex. 49) | | | 401/402, 802, 805, 901 |
| DTX-0132 | | ETSI Executive Summary SMG #24 (Rodermund Rpt. Ex. 50) | | | 401/402, 802, 805, 901 |
| DTX-0133 | 11/20/01 | Email from S. Bharadwaj re Proceeding further on VP (Rodermund Rpt. Ex. 51) | | | 401/402, 802, 901 |
| DTX-0134 | 08/22/01 | Email from A. Baldwin re CR 23.040: Line Drawing as Extended Object in EMS (Rodermund Rpt. Ex. 52) | | | 401/402, 802, 901 |
| DTX-0135 | 08/23/01 | Email from D. Chen re CR 23.040: Line Drawing as Extended Object in EMS (Rodermund Rpt. Ex. 53) | | | 401/402, 802, 901 |
| DTX-0136 | 01/24/02 | Email from Rodermund re Questions regarding references in 3GPP (Rodermund Rpt. Ex. 54) | | | 401/402, 802, 901 |
| DTX-0137 | 01/05/07 | Email from O. Takeshita re QPP in 3GPP LTE (Rodermund Rpt. Ex. 55) | | | 401/402, 802, 901 |
| DTX-0138 | | Distler List of Materials Considered (Distler Reb. Rpt. App. B) | | | 401/402 |
| DTX-0139 | | Distler List of Depositions and Expert Reports Reviewed (Distler Reb. Rpt. App. C) | | | 401/402 |
| DTX-0140 | | Asserted Claims of Patents-in-Suit (Distler Reb. Rpt. App. D) | | | 401/402, 403 |
| DTX-0141 | | Quectel Weighted Average Cost of Capital (Distler Reb. Rpt. App. E) | | | 401/402, 702, 703 |
| DTX-0142 | | Comparison of Rates, Assumptions, and Royalties (Distler Reb. Rpt. Sch. 1) | | | 401/402,702, 802 |
| DTX-0143 | | Comparison of Rates, Assumptions, and Royalties (Distler Reb. Rpt. Sch. 1a) | | | 401/402,702, 802 |
| DTX-0144 | | Comparison of Rates, Assumptions, and Royalties - Assuming a Notice Date of January 21, 2016 (Distler Reb. Rpt. Sch. 1n) | | | 401/402,702, 802 |
| DTX-0145 | | Scenarios 1a & 1b: Teece Royalty Rates, Unadjusted (Distler Reb. Rpt. Sch. 1.1) | | | 401/402,702, 802 |
| DTX-0146 | | Scenario 2: Teece Royalty Rates, as Adjusted (Distler Reb. Rpt. Sch. 1.2) | | | 401/402,702, 802 |
| DTX-0147 | | Scenario 3: Teece Royalty Rates, as Adjusted (Distler Reb. Rpt. Sch. 1.3) | | | 401/402,702, 802 |
| DTX-0148 | | Scenario 4: Teece Royalty Rates, as Adjusted (Distler Reb. Rpt. Sch. 1.4) | | | 401/402,702, 802 |
| DTX-0149 | | Scenario 4a: Teece Royalty Rates, as Adjusted (Distler Reb. Rpt. Sch. 1.4a) | | | 401/402,702, 802 |
| DTX-0150 | | 1710 Patents-in-Suit (Distler Reb. Rpt. Sch. 2) | | | 401/402 |
| DTX-0151 | | Replication of Dr. Teece's Calculation of Quectel Units by Patent, Type, and Year (2014-2026) (Distler Reb. Rpt. Sch. 3.1) | | | 401/402, 403, 702, 802 |
| DTX-0152 | | Replication of Dr. Teece's Calculation of Quectel Units by Patent, Type, and Year (2016-2026) Assuming a Notice Date of January 21, 2016 (Distler Reb. Rpt. Sch. 3.1n) | | | 401/402, 403, 702, 802 |
| DTX-0153 | | Dr. Teece's Calculation of Accused Units (Compounded) (Distler Reb. Rpt. Sch. 3.2) | | | 401/402,702, 802 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0154 | | Dr. Teece's Calculation of Accused Units (Compounded), Assuming a Notice Date of January 21, 2016 (Distler Reb. Rpt. Sch. 3.2n) | | | 401/402,702, 802 |
| DTX-0155 | | Quectel Units Per Month (2014-2025), per Dr. Teece (Distler Reb. Rpt. Sch. 3.3) | | | 401/402,702, 802 |
| DTX-0156 | | Quectel Units by Patent and Type (Q4 2014 - Q3 2026) (Distler Reb. Rpt. Sch. 3.4) | | | 401/402, 702, 802 |
| DTX-0157 | | Dr. Teece's Calculation of Accused Units (Compounded using Prime Rate) (Distler Reb. Rpt. Sch. 3.5) | | | 401/402, 702, 802 |
| DTX-0158 | | Quectel Units by Patent and Type (2014-2026), Adjusting Dr. Teece's Product Type Misclassification (Distler Reb. Rpt. Sch. 4.1) | | | 401/402, 702, 802 |
| DTX-0159 | | Quectel Units by Patent and Type (Q4 2014 - Q3 2026), Adjusting Dr. Teece's Product Type Misclassification (Distler Reb. Rpt. Sch. 4.2) | | | 401/402, 702, 802 |
| DTX-0160 | | Quectel Units by Patent and Type (2016 - Q3 2026), Adjusting Dr. Teece's Product Type Misclassification Assuming a Notice Date of January 21, 2016 (Distler Reb. Rpt. Sch. 4.2n) | | | 401/402, 702, 802 |
| DTX-0161 | | Accused Units (Compounded) - Adjusting Dr. Teece's Product Type Misclassification (Distler Reb. Rpt. Sch. 4.3) | | | 401/402, 702, 802 |
| DTX-0162 | | Quectel Units by Patent and Type (Q4 2014 - Q3 2026) - Compounded Units Using Prime Rate, Adjusting Dr. Teece's Product Type Misclassification (Distler Reb. Rpt. Sch. 4.4) | | | 401/402, 702, 802 |
| DTX-0163 | | Quectel Units by Patent and Type (2016 - Q3 2026) - Compounded Units Using Prime Rate, Adjusting Dr. Teece's Product Type Misclassification Assuming a Notice Date of January 21, 2016 (Distler Reb. Rpt. Sch. 4.4n) | | | 401/402, 702, 802 |
| DTX-0164 | | Quectel Units Per Year, Adjusting Dr. Teece's Product Type Misclassification (Distler Reb. Rpt. Sch. 4.5) | | | 401/402, 702, 802 |
| DTX-0165 | | Total Quectel Units by Month (2014-2025), Adjusting Dr. Teece's Product Type Misclassification (Distler Reb. Rpt. Sch. 4.6) | | | 401/402, 702, 802 |
| DTX-0166 | | Quectel Units by Month and Source (2014-2025), Adjusting for Dr. Teece's Product Type Misclassification (Distler Reb. Rpt. Sch. 4.6a) | | | 401/402, 702, 802 |
| DTX-0167 | | Dr. Teece's Module Index, Adjusted for Dr. Teece's Product Type Misclassification (Distler Reb. Rpt. Sch. 4.7) | | | 401/402, 702, 802 |
| DTX-0168 | | Quarterly Prime Rates (Distler Reb. Rpt. Sch. 5) | | | 401/402, 702, 802 |
| DTX-0169 | | License Fee of SPV Agreement Apportioned to '935 Patent (Distler Reb. Rpt. Sch. 6.1) | | | 401/402, 702, 703, 802 |
| DTX-0170 | | 935 Patent Units (Distler Reb. Rpt. Sch. 6.2) | | | 401/402, 702, 703 |
| DTX-0171 | | Quectel UMTS / LTE MM Units Covered by SPV Agreement (Distler Reb. Rpt. Sch. 6.3) | | | 401/402, 702, 703, 802 |
| DTX-0172 | | Term of Hypothetical License to '935 Patent Compared to Term of SPV Agreement (Distler Reb. Rpt. Sch. 6.4) | | | 401/402, 702, 703, 802 |
| DTX-0173 | | Expiration Dates of Licensed Patents in SPV Agreement Technically Comparable to '935 Patent (Distler Reb. Rpt. Sch. 6.5) | | | 401/402, 702, 703, 802 |
| DTX-0174 | | SPV Asserted Patents Summary (Distler Reb. Rpt. Sch. 6.6) | | | 401/402, 702, 703, 802 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0175 | | SPV Agreement Patents & Applications (Distler Reb. Rpt. Sch. 6.7) | | | 401/402, 702, 703, 802 |
| DTX-0176 | | SPV Asserted Patents Detail (Distler Reb. Rpt. Sch. 6.8) | | | 401/402, 702, 703, 802 |
| DTX-0177 | | SPV Litigation History (Distler Reb. Rpt. Sch. 6.9) | | | 401/402, 702, 703, 802 |
| DTX-0178 | | SPV Litigation (Distler Reb. Rpt. Sch. 6.10) | | | 401/402, 702, 703, 802 |
| DTX-0179 | | Nonexhaustive List of Philips's Lump Sum Agreements with Handset Companies (Distler Reb. Rpt. Sch. 7) | | | 401/402, 403, 702, 802, 901 |
| DTX-0180 | | Rodermund List of Materials Considered (Rodermund Reb. Rpt. Ex. 1) | | | 401/402 |
| DTX-0181 | | 2013-09-19 Guide on Intellectual Property Rights (IPRs) (Rodermund Reb. Rpt. Ex. 2) | | | 401/402, 702, 802, 901 |
| DTX-0182 | | Stephen Wicker CV and Testimony History (Wicker 271 Reb. Rpt. Ex. 1) | | | 401/402 |
| DTX-0183 | | Wicker List of Materials Considered (Wicker 271 Reb. Rpt. Ex. 2) | | | 401/402 |
| DTX-0184 | | Wicker List of Materials Considered (Wicker 935 Reb. Rpt. Ex. 2) | | | 401/402 |
| DTX-0185 | | R2-082123 - Summary of the email discussion on logical channel prioritization (Wicker 935 Reb. Rpt. Ex. 3) | | | 401/402, 702, 802, 805, 901 |
| DTX-0186 | | GB 0421719.6 (Bims Reply Rpt. Ex. 1) | | | 401/402 |
| DTX-0187 | | Distler List of Materials Considered (Distler Reply Rpt. App. B) | | | 401/402 |
| DTX-0188 | | Distler List of Depositions and Expert Reports Reviewed (Distler Reply Rpt. App. C) | | | 401/402 |
| DTX-0189 | | Asserted Claims of Patents-in-Suit (Distler Reply Rpt. App. D) | | | 401/402, 403 |
| DTX-0190 | | Philips’s Calculations of Blended Rates in License Agreements and Offers (Distler Reply Rpt. App. E) | | | 401/402, 702, 802 |
| DTX-0191 | | 2010-2011 Analyst Report Forecasts of iPhone Units (Distler Reply Rpt. Sch. 1) | | | 401/402, 702, 703, 802, 901 |
| DTX-0192 | | Cellular Module Shipment by Vendor, 2017 to 2018 (Distler Reply Rpt. Sch. 2) | | | 702, 703, 802, 901 |
| DTX-0193 | | IoT M2M module volumes based on Philips's estimates (2016-2026) (Distler Reply Rpt. Sch. 3) | | | 702, 703, 802 |
| DTX-0194 | | Changes in Market Share of Potential Philips Licensees, 2016 to 2018, per ABI Research (2016-2026) (Distler Reply Rpt. Sch. 4) | | | 401/402, 702, 703, 802, 901 |
| DTX-0195 | | Libchaber List of Materials Considered (Libchaber Reply Rpt. Att. A) | | | 401/402 |
| DTX-0196 | | Rodermund List of Materials Considered (Rodermund Reply Rpt. Ex. 1) | | | 401/402 |
| DTX-0197 | | 3GPP TR 21.900 V8.0.0 (Rodermund Reply Rpt. Ex. 2) | | | 401/402, 403, 702, 802, 901 |
| DTX-0198 | | ETSI Online Database User Guide (Rodermund Reply Rpt. Ex. 4) | | | 401/402, 802, 901 |
| DTX-0199 | 06/27/03 | Physical Channels and Mapping of Transport Channels onto Physical Channels (FDD), 3GPP TS 25.211 V5.4.0 (TS 25.211 I) | PA_0003521 | PA_0003571 | 401/402, 802, 901 |
| DTX-0200 | 09/29/03 | Physical Channels and Mapping of Transport Channels onto Physical Channels (FDD), 3GPP TS 25.211 V5.5.0 (TS 25.211 II) | PA_0003572 | PA_0003622 | 401/402, 802, 901 |
| DTX-0201 | 06/27/03 | Physical Layer Procedures (FDD), 3GPP TS 25.214 V5.5.0 | PA_0003623 | PA_0003685 | 401/402, 802, 901 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0202 | 10/02/01 | Ultra High Speed Downlink Packet Access (HSDPA), 3GPP TS 25.308 V5.0.0 (TS 25.308 I) | PA_0003750 | PA_0003769 | 401/402, 802, 901 |
| DTX-0203 | 03/24/04 | Ultra High Speed Downlink Packet Access (HSDPA), 3GPP TS 25.308 V5.5.0 (TS 25.308 II) | PA_0003770 | PA_0003797 | 401/402, 802, 901 |
| DTX-0204 | Jan. 2002 | R1#23-02 0060, Requirement of Different Transmission Power Levels Between Ack and Nack Signaling, 3GPP TSG RAN WG1 Meeting #23 | PA_0003808 | PA_0003811 | 401/402, 403, 702, 802, 805, 901 |
| DTX-0205 | 07/08/03 | U.S. Pat. No. 6,591,113 (Mortensen) | PA_0003926 | PA_0003930 | 401/402, 802, 901 |
| DTX-0206 | 05/30/06 | U.S. Pat. No. 7,054,633 (Seo) | PA_0003947 | PA_0003983 | 401/402, 802, 901 |
| DTX-0207 | 04/01/08 | U.S. Pat. No. 7,352,709 (Wakabayashi) | PA_0004006 | PA_0004031 | 401/402, 802, 901 |
| DTX-0208 | 08/11/09 | U.S. Pat. No. 7,573,860 (Zhao) | PA_0004032 | PA_0004054 | 401/402, 802, 901 |
| DTX-0209 | Aug. 2004 | R2-04-1629/R1-040950, Per Priority Queue basis Rate Scheduling in Enhanced Uplink | PA_0004228 | PA_0004230 | 401/402, 403, 702, 802, 805, 901 |
| DTX-0210 | Oct. 2004 | R2-042066, Per Priority Queue basis Rate Scheduling in Enhanced Uplink | PA_0004231 | PA_0004233 | 401/402, 403, 702, 802, 805, 901 |
| DTX-0211 | Oct. 2004 | R2-042120, E-DCH - MAC-e multiplexing | PA_0004234 | PA_0004235 | 401/402, 403, 702, 802, 805, 901 |
| DTX-0212 | 03/14/02 | U.S. Pat. App. Pub. No. 2002/0032788 A1 (Emanuel) | PA_0004335 | PA_0004347 | 401/402, 802, 901 |
| DTX-0213 | 05/20/04 | U.S. Pat. App. Pub. No. 2004/0095892 A1 (Sampath) | PA_0004405 | PA_0004415 | 401/402, 802, 901 |
| DTX-0214 | 08/19/04 | U.S. Pat. App. Pub. No. 2004/0163084 A1 (Devadas) | PA_0004416 | PA_0004453 | 401/402, 802, 901 |
| DTX-0215 | 07/27/93 | U.S. Pat. No. 5,231,633 (Hluchyj) | PA_0004511 | PA_0004526 | 401/402, 802, 901 |
| DTX-0216 | 12/04/01 | U.S. Pat. No. 6,327,254 (Chuah) | PA_0004543 | PA_0004602 | 401/402, 802, 901 |
| DTX-0217 | 08/20/02 | U.S. Pat. No. 6,438,134 (Chow) | PA_0004603 | PA_0004621 | 401/402, 802, 901 |
| DTX-0218 | 01/18/05 | U.S. Pat. No. 6,845,100 (Rinne) | PA_0004685 | PA_0004713 | 401/402, 802, 901 |
| DTX-0219 | 01/06/09 | U.S. Pat. No. 7,474,668 (Bauman) | PA_0004899 | PA_0004914 | 401/402, 802, 901 |
| DTX-0220 | | X ZR 112/19 Judgment (Translation) | PA_0005154 | PA_0005175 | 401/402, 403, 802, 901 |
| DTX-0221 | 07/25/02 | U.S. Pat. App. Pub. No. 2002/0097733 A1 (Yamamoto) | PRSNA-ITC0142936 | PRSNA-ITC0142959 | 401/402, 802, 901 |
| DTX-0222 | 02/05/04 | U.S. Pat. App. Pub. No. 2004/0022188 A1 (Abel) | PRSNA-ITC0142926 | PRSNA-ITC0142935 | 401/402, 802, 901 |
| DTX-0223 | 05/26/05 | U.S. Pat. App. Pub. No. 2005/0111361 A1 (Hosein) | PRSNA-ITC0142912 | PRSNA-ITC0142925 | 401/402, 802, 901 |
| DTX-0224 | | GB 0424918.1 | KPNV0002387 | KPNV0002405 | |
| DTX-0225 | | GB 0410905.4 | KPNV0002363 | KPNV0002386 | |
| DTX-0226 | | GB 0318735.8 | KPNV0002355 | KPNV0002362 | |
| DTX-0227 | | PCT/IB2004/002630 | PRSNA-ITC0533870 | PRSNA-ITC0533891 | 401/402, 802, 901 |
| DTX-0228 | | Standardized Technology and Standard-Essential Patents | DISTLER_000001 | DISTLER_000001 | 401/402, 403, 802, 901 |
| DTX-0229 | | Audenrode, Over-Declaration of Standard Essential Patents and Determinants of Essentiality | DISTLER_000002 | DISTLER_000047 | 401/402, 403, 802, 901 |
| DTX-0230 | | Patent Pools: A Practical Perspective Part I | DISTLER_000048 | DISTLER_000056 | 401/402, 403, 802, 901 |
| DTX-0231 | | Antitrust Enforcement and Intellectual Property Rights: Promoting Innovation and Competition | DISTLER_000057 | DISTLER_000276 | 401/402, 403, 802 |
| DTX-0232 | | Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments | DISTLER_000277 | DISTLER_000286 | 401/402, 403, 802 |
| DTX-0233 | | 2G, 3G, 4G LTE Network Shutdown Updates \| Digi International | DISTLER_000287 | DISTLER_000320 | 401/402, 403, 802, 901 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0234 | | Bekkers, Patents and standards: a modern framework for IPR-based standardisation | DISTLER_000321 | DISTLER_000603 | 401/402, 403, 802, 901 |
| DTX-0235 | | 3G CDMA Network Retirement \| Verizon Business | DISTLER_000604 | DISTLER_000606 | 401/402, 403, 802, 901 |
| DTX-0236 | | 5G NR-Light (RedCap): Revolutionizing IoT \| Qualcomm | DISTLER_000607 | DISTLER_000616 | 401/402, 403, 802, 901 |
| DTX-0237 | | 5G Wireless: Capabilities and Challenges for an Evolving Network | DISTLER_000617 | DISTLER_000629 | 401/402, 403, 802, 901 |
| DTX-0238 | | 5G / 6G Wireless Networks | DISTLER_000630 | DISTLER_000635 | 401/402, 403, 802, 901 |
| DTX-0239 | | 6G standards expected to be ready by 2029-2030, ETSI says \| Euronews | DISTLER_000636 | DISTLER_000639 | 401/402, 403, 802 |
| DTX-0240 | | A Complete Apple Watch History: Every Apple Watch Model Released | DISTLER_000640 | DISTLER_000654 | 401/402, 403, 802, 901 |
| DTX-0241 | | A look into the local brands acting in niche segments of the European phone market - Benelux Intelligence Community | DISTLER_000655 | DISTLER_000660 | 401/402, 403, 802, 901 |
| DTX-0242 | | About us \| Philips | DISTLER_000661 | DISTLER_000672 | 401/402, 403, 901 |
| DTX-0243 | | Apple Store Online - Apple | DISTLER_000673 | DISTLER_000681 | 401/402, 403, 802, 901 |
| DTX-0244 | | Apples iPhone 5 announcement: everything you need to know \| The Verge | DISTLER_000682 | DISTLER_000709 | 401/402, 403, 802, 901 |
| DTX-0245 | | Avanci 5G Vehicle - Avanci | DISTLER_000710 | DISTLER_000721 | 401/402, 403, 802, 901 |
| DTX-0246 | | Avanci IoT - Avanci | DISTLER_000722 | DISTLER_000728 | 401/402, 403, 802, 901 |
| DTX-0247 | | Sisvel Cellular IoT Licenses: Connecting Innovation | DISTLER_000729 | DISTLER_000737 | 401/402, 403, 802, 901 |
| DTX-0248 | | Cellular IoT Licensing Program \| Qualcomm | DISTLER_000738 | DISTLER_000743 | 401/402, 403, 802, 901 |
| DTX-0249 | 06/26/01 | Philips stops making phones \| Citywire | DISTLER_000744 | DISTLER_000750 | 401/402, 403, 901, 802, 602 |
| DTX-0250 | | Telit Annual Report and Financial Statements \| Year Ended 31 December 2024 | DISTLER_000751 | DISTLER_000829 | 401/402, 403, 602, 802, 901 |
| DTX-0251 | | Cotter, Comparative Law and Economics of Standard-Essential Patents and FRAND Royalties | DISTLER_000830 | DISTLER_000884 | 401/402, 403, 602, 802, 901 |
| DTX-0252 | | Huawei Corporate Information | DISTLER_000885 | DISTLER_000900 | 401/402, 403, 602, 802, 901 |
| DTX-0253 | | 5G in America \| CTIA | DISTLER_000901 | DISTLER_000917 | 401/402, 403, 602, 802, 901 |
| DTX-0254 | | CTIA - Our Mission | DISTLER_000918 | DISTLER_000919 | 401/402, 403, 602, 802, 901 |
| DTX-0255 | | ETSI - ETSI accelerates next-generation 6G technology with new ISAC work items | DISTLER_000920 | DISTLER_000920 | 401/402, 403, 901, 802, 602 |
| DTX-0256 | | ETSI - Standards, mission, vision, direct member participation | DISTLER_000921 | DISTLER_000925 | 401/402, 403, 602, 802, 901 |
| DTX-0257 | | Every iPhone Generation: A Full History of Release Dates - IGN | DISTLER_000926 | DISTLER_000933 | 401/402, 403, 901, 802, 602 |
| DTX-0258 | | Lemley, A Simple Approach to Setting Reasonable Royalties for Standard-Essential Patents | DISTLER_000934 | DISTLER_000965 | 401/402, 403, 901, 802, 602 |
| DTX-0259 | | GAO-20-468, 5G DEPLOYMENT: FCC Needs Comprehensive Strategic Planning to Guide Its Efforts | DISTLER_000967 | DISTLER_001009 | 401/402, 403, 602, 802, 901 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0260 | | GCIG \| Mapping the Digital Frontiers of Trade and Intellectual Property | DISTLER_001053 | DISTLER_001186 | 401/402, 403, 602, 802, 901 |
| DTX-0261 | | GNSS modules: Overview \| Quectel | DISTLER_001187 | DISTLER_001193 | 401/402, 403, 602, 802, 901 |
| DTX-0262 | | GSM - Glossary \| CSRC | DISTLER_001194 | DISTLER_001195 | 401/402, 403, 602, 802, 901 |
| DTX-0263 | | Chart: How Important Is China for Apple \| Statista | DISTLER_001196 | DISTLER_001203 | 401/402, 403, 901, 802, 602 |
| DTX-0264 | | Huawei 4G Module \| Huawei LTE Embedded Module \| Huawei M2M Module Price | DISTLER_001204 | DISTLER_001207 | 401/402, 403, 901, 802, 602 |
| DTX-0265 | | Huawei Enterprise Official Website - Advancing Industrial All Intelligence | DISTLER_001208 | DISTLER_001220 | 401/402, 403, 901, 802, 602 |
| DTX-0266 | | HUAWEI Global - Consumers | DISTLER_001221 | DISTLER_001227 | 401/402, 403, 901, 802, 602 |
| DTX-0267 | | Introducing 3GPP | DISTLER_001228 | DISTLER_001232 | |
| DTX-0268 | | ioT Patent Pool | DISTLER_001233 | DISTLER_001240 | 401/402, 403, 602, 802, 901 |
| DTX-0269 | 08/19/25 | iPad History: All iPad Models Through the Years | DISTLER_001241 | DISTLER_001251 | 401/402, 403, 901, 802, 602 |
| DTX-0270 | | iPhone 5 sales top 5 million during launch weekend - Ars Technica | DISTLER_001252 | DISTLER_001253 | 401/402, 403, 901, 802, 602 |
| DTX-0271 | | Long Term Evolution for Machines: LTE-M \| Internet of Things | DISTLER_001254 | DISTLER_001260 | 401/402, 403, 901, 802, 602 |
| DTX-0272 | | LPWA BG96 Cat M1/NB1/EGPRS Product Features \| Quectel | DISTLER_001261 | DISTLER_001269 | 401/402, 403, 602, 901 |
| DTX-0273 | | What is LTE Cat 3? - everything RF | DISTLER_001270 | DISTLER_001272 | 401/402, 403, 901, 802, 602 |
| DTX-0274 | | LTE EG25-G Product Features \| Quectel | DISTLER_001273 | DISTLER_001278 | 401/402, 403, 602, 802, 901 |
| DTX-0275 | | LTE EG91 series Product Features \| Quectel | DISTLER_001279 | DISTLER_001288 | 401/402, 403, 602, 802, 901 |
| DTX-0276 | | LTE IoT standards: LTE Cat 1, LTE Cat 1bis, LTE-M, NB-IoT | DISTLER_001289 | DISTLER_001303 | 401/402, 403, 602, 802, 901 |
| DTX-0277 | | Mattioli, Measuring the Costs and Benefits of Patent Pools | DISTLER_001304 | DISTLER_001372 | 401/402, 403, 901, 802, 602 |
| DTX-0278 | 06/01/23 | How to Determine Which Types of IoT Modules You Need | DISTLER_001373 | DISTLER_001388 | 401/402, 403, 901, 802, 602 |
| DTX-0279 | | What is the difference between LTE Cat NB1 and LTE Cat NB2? - everything RF | DISTLER_001389 | DISTLER_001391 | 401/402, 403, 602, 802, 901 |
| DTX-0280 | | IoT connected devices by use case 2034 \| Statista | DISTLER_001392 | DISTLER_001395 | 401/402, 403, 901, 802, 602 |
| DTX-0281 | | IoT connected devices by vertical 2034 \| Statista | DISTLER_001396 | DISTLER_001399 | 401/402, 403, 901, 802, 602 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0282 | | Bekkers, A Study of Policies and Practices of a Representative Group of Standards Setting Organizations Worldwide | DISTLER_001400 | DISTLER_001522 | 401/402, 403, 901, 802, 602 |
| DTX-0283 | | Plan Ahead for Phase Out of 3G Cellular Networks and Service \| Federal Communications Commission | DISTLER_001523 | DISTLER_001526 | 401/402, 403, 901, 802, 602 |
| DTX-0284 | | Quectel \| End-to-end IoT solutions provider | DISTLER_001527 | DISTLER_001531 | 401/402, 403, 602, 802, 901 |
| DTX-0285 | 07/17/25 | Quectel Joins Avanci 5G Vehicle as a Licensor - Avanci | DISTLER_001532 | DISTLER_001534 | 401/402, 403, 901, 802, 602 |
| DTX-0286 | | Quectel joins Avanci 5G Vehicle as a licensor - Quectel | DISTLER_001535 | DISTLER_001538 | 401/402, 403, 901, 802, 602 |
| DTX-0287 | | Quectel launches into second decade with new company logo \| Quectel | DISTLER_001539 | DISTLER_001542 | 401/402, 403, 901, 802, 602 |
| DTX-0288 | | Quectel response to FCC about IoT module security \| Quectel | DISTLER_001543 | DISTLER_001548 | 401/402, 403, 901, 802, 602 |
| DTX-0289 | | Quectel showcases comprehensive IoT solutions at MWC Doha | DISTLER_001549 | DISTLER_001553 | 401/402, 403, 901, 802, 602 |
| DTX-0290 | | Ask the Quexperts: What is an IoT module? | DISTLER_001554 | DISTLER_001559 | 401/402, 403, 901, 802, 602 |
| DTX-0291 | | 3GPP Specifications and Technologies - Release 20 | DISTLER_001560 | DISTLER_001565 | 401/402, 403, 602, 802, 901 |
| DTX-0292 | | Report of the Expert Group on Patent Aggregation - EU Agenda | DISTLER_001566 | DISTLER_001567 | 401/402, 403, 602, 802, 901 |
| DTX-0293 | | Rosa, Cooperation and Competition: The Case of Innovation in the Telecommunications Sector | DISTLER_001568 | DISTLER_001642 | 401/402, 403, 602, 802, 901 |
| DTX-0294 | | Shanghai Langbo Communication Technology L.T.D \| LinkedIn Profile | DISTLER_001643 | DISTLER_001646 | 401/402, 403, 901, 802, 602 |
| DTX-0295 | | Quectel Wireless Solutions \|SHANGHAI STOCK EXCHANGE | DISTLER_001647 | DISTLER_001648 | 401/402, 403, 602, 802, 901 |
| DTX-0296 | | Sisvel \| Quectel agrees Cellular IoT pool deal with Sisvel | DISTLER_001649 | DISTLER_001652 | 401/402, 403, 602, 802, 901 |
| DTX-0297 | | Sisvel Cellular IoT – ioT Patent Pool | DISTLER_001653 | DISTLER_001659 | 401/402, 403, 602, 802, 901 |
| DTX-0298 | | Sovereign Peak Ventures \| Dominion Harbor | DISTLER_001660 | DISTLER_001661 | 401/402, 403, 602, 802, 901 |
| DTX-0299 | | Global Smartphone Shipments from 2008 to 2025 by Vendor | DISTLER_001662 | DISTLER_001662 | 401/402, 403, 901, 802, 602 |
| DTX-0300 | | Apple Shipments of Smartphones Worldwide 2010 to 2025 | DISTLER_001663 | DISTLER_001663 | 401/402, 403, 901, 802, 602 |
| DTX-0301 | | Technical Standards, Invention, Innovation, and Economic Growth \| SEI 2018 | DISTLER_001664 | DISTLER_001665 | 401/402, 403, 901, 802, 602 |
| DTX-0302 | | Telecommunication IP Licensing \| Philips | DISTLER_001666 | DISTLER_001674 | 401/402, 403, 901, 802, 602 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0303 | | Telit and Thales announce the creation of a leading western IoT solutions provider: Telit Cinterion \| Thales Group | DISTLER_001675 | DISTLER_001683 | 401/402, 403, 901, 802, 602 |
| DTX-0304 | | Telit and Thales announce the creation of a leading western IoT solutions provider: Telit Cinterion \| Telit Cinterion | DISTLER_001684 | DISTLER_001688 | 401/402, 403, 901, 802, 602 |
| DTX-0305 | | Telit Cinterion History | DISTLER_001689 | DISTLER_001691 | 401/402, 403, 901, 802, 602 |
| DTX-0306 | | Thales Completes Acquisition of Gemalto to Become a Global Leader in Digital Identity and Security \| Thales Group | DISTLER_001696 | DISTLER_001700 | 401/402, 403, 901, 802, 602 |
| DTX-0307 | 06/11/25 | The global 3G sunset and its effect on IoT connectivity, Teltonika | DISTLER_001701 | DISTLER_001710 | 401/402, 403, 901, 802, 602 |
| DTX-0308 | | Attaran, The impact of 5G on the evolution of intelligent automation and industry digitization - PMC | DISTLER_001711 | DISTLER_001757 | 401/402, 403, 901, 802, 602 |
| DTX-0309 | | T-Mobile Network Evolution \| T-Mobile | DISTLER_001758 | DISTLER_001760 | 401/402, 403, 901, 802, 602 |
| DTX-0310 | | What is an IoT module and how does it function in the Internet of Things \| Trolink News | DISTLER_001761 | DISTLER_001764 | 401/402, 403, 901, 802, 602 |
| DTX-0311 | | u-blox LinkedIn Profile | DISTLER_001765 | DISTLER_001781 | 401/402, 403, 901, 802, 602 |
| DTX-0312 | 09/04/15 | u-blox posts strong first half for 2015 u-blox | DISTLER_001782 | DISTLER_001796 | 401/402, 403, 901, 802, 602 |
| DTX-0313 | | Universal Mobile Telecommunications System (UMTS) - Glossary CSRC | DISTLER_001797 | DISTLER_001798 | 401/402, 403, 602, 802, 901 |
| DTX-0314 | | Understanding 3GPP – starting with the basics \| Qualcomm | DISTLER_001799 | DISTLER_001813 | 401/402, 403, 901, 802, 602 |
| DTX-0315 | | Report of the Expert Group on Patent Aggregation | DISTLER_001814 | DISTLER_001893 | 401/402, 403, 602, 802, 901 |
| DTX-0316 | | What is the Internet of Things (IoT)? \| IBM | DISTLER_001908 | DISTLER_001915 | 401/402, 403, 901, 802, 602 |
| DTX-0317 | | Why Quectel Brochure | DISTLER_001916 | DISTLER_001917 | 401/402, 403, 602, 802, 901 |
| DTX-0318 | | Quectel Wireless Solutions - A Company Profile & Executives - WSJ | DISTLER_001918 | DISTLER_001923 | 401/402, 403, 602, 802, 901 |
| DTX-0319 | | Annex 23 to Kevin Scott Witness Statement (Philips v. Tinno, HP 2018 000032) | ITC1240-0008872 | ITC1240-0008875 | 401/402, 403, 901 |
| DTX-0320 | 12/11/20 | Philips-Apple UMTS Commercial Presentation | ITC1240-0009211 | ITC1240-0009236 | 401/402, 403, 802 |
| DTX-0321 | | Philips Complaint, 337-TA-1240 | ITC-RECORD-0001133 | ITC-RECORD-0001229 | 401/402, 403 |
| DTX-0322 | 08/05/16 | Email to Galai from Pasquier re Philips UMTS Licensing Program | ITC-RECORD-0045840 | ITC-RECORD-0045915 | 401/402, 403, 408, 802, 805 |
| DTX-0323 | 07/01/18 | Philips-AK-TEK UMTS/LTE Terminal Patent License Agreement | KPNV0017746 | KPNV0017777 | |
| DTX-0324 | 12/31/20 | Philips-ASUSTeK Portable Device and UMTS/LTE Master Agreement | KPNV0017778 | KPNV0017787 | |
| DTX-0325 | 12/31/20 | Philips-ASUSTeK Portable Device Patent Stipulation of Dismissal Agreement | KPNV0017788 | KPNV0017827 | |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0326 | 12/31/20 | Philips-ASUSTeK UMTS/LTE Terminal Patent License and Stipulation of Dismissal Agreement | KPNV0017828 | KPNV0017863 | |
| DTX-0327 | | Philips-Apple Wireless Patent License Agreement | KPNV0017897 | KPNV0017927 | |
| DTX-0328 | | Philips-Apple Wireless Patent License Agreement | KPNV0017928 | KPNV0017971 | |
| DTX-0329 | 10/01/20 | Philips-Apple Global Patent License Agreement | KPNV0017972 | KPNV0018104 | |
| DTX-0330 | 03/31/17 | Philips-Archos UMTS/LTE Terminal Patent License Agreement | KPNV0018105 | KPNV0018138 | |
| DTX-0331 | 03/01/16 | Philips-Asbisc UMTS/LTE Terminal Patent License Agreement | KPNV0018139 | KPNV0018170 | |
| DTX-0332 | 04/01/24 | Philips-Blu Cellular Handset Patent License Agreement | KPNV0018447 | KPNV0018490 | |
| DTX-0333 | 06/01/18 | Philips-Benq UMTS/LTE Terminal Patent License Agreement | KPNV0018491 | KPNV0018522 | |
| DTX-0334 | 01/01/14 | Philips-Blackberry UMTS/LTE Terminal Patent License Agreement | KPNV0018523 | KPNV0018552 | |
| DTX-0335 | 11/01/18 | Philips-Century Mobil UMTS/LTE Terminal Patent License Agreement | KPNV0018553 | KPNV0018583 | |
| DTX-0336 | 04/01/23 | Philips-Chin Jheng Chang UMTS/LTE Terminal Patent License Agreement | KPNV0018584 | KPNV0018627 | |
| DTX-0337 | 12/01/17 | Philips-Doro UMTS/LTE Terminal Patent License Agreement | KPNV0018628 | KPNV0018658 | |
| DTX-0338 | 07/01/18 | Philips-Emporia UMTS/LTE Terminal Patent License Agreement | KPNV0018659 | KPNV0018688 | |
| DTX-0339 | 07/10/18 | Philips-Fuhsiang UMTS/LTE Terminal Patent Settlement Agreement | KPNV0018689 | KPNV0018712 | |
| DTX-0340 | 10/01/18 | Philips-Gigaset UMTS/LTE Terminal Patent License Agreement | KPNV0018713 | KPNV0018744 | |
| DTX-0341 | | Philips-Google Patent License Agreement | KPNV0018745 | KPNV0018777 | |
| DTX-0342 | 06/30/25 | Philips-Google Patent License Agreement | KPNV0018778 | KPNV0018846 | |
| DTX-0343 | 12/23/19 | Philips-HTC UMTS/LTE Terminal Patent License Agreement | KPNV0018847 | KPNV0018873 | |
| DTX-0344 | 12/23/19 | Philips-HTC Portable Device Patent License and Stipulation of Dismissal Agreement | KPNV0018874 | KPNV0018904 | |
| DTX-0345 | 07/01/21 | Philips-Hesdo UMTS/LTE Terminal Patent License Agreement | KPNV0018915 | KPNV0018949 | |
| DTX-0346 | 02/15/19 | Philips-Huawei Patent Assignment Agreement | KPNV0018950 | KPNV0018964 | |
| DTX-0347 | 02/15/19 | Philips-Huawei UMTS/LTE Terminal Patent License Agreement | KPNV0018965 | KPNV0018984 | |
| DTX-0348 | 12/28/17 | Philips-Hugiga UMTS/LTE Terminal Patent License Agreement | KPNV0018985 | KPNV0019015 | |
| DTX-0349 | 09/11/18 | Philips-IMatch UMTS/LTE Terminal Patent Settlement Agreement | KPNV0019016 | KPNV0019039 | |
| DTX-0350 | 07/01/15 | Philips-JME UMTS/LTE Terminal Patent License Agreement | KPNV0019040 | KPNV0019071 | |
| DTX-0351 | 09/30/24 | Philips-Kyocera Cellular Handset Patent License Agreement | KPNV0019072 | KPNV0019128 | |
| DTX-0352 | 12/01/16 | Philips-LG UMTS/LTE Terminal Patent License, Release and Peace Agreement | KPNV0019129 | KPNV0019138 | |
| DTX-0353 | 12/30/21 | Philips-LG UMTS/LTE/5G Terminal Patent Release Agreement | KPNV0019139 | KPNV0019147 | |
| DTX-0354 | 10/01/18 | Philips-Lechpol UMTS/LTE Terminal Patent License Agreement | KPNV0019148 | KPNV0019179 | |
| DTX-0355 | 03/30/22 | Philips-Motorola 3G/4G Terminal Patent License Agreement | KPNV0019180 | KPNV0019209 | |
| DTX-0356 | 12/30/19 | Philips-Microsoft Touch-Enabled Device License and Stipulation of Dismissal Agreement | KPNV0019223 | KPNV0019247 | |
| DTX-0357 | 12/30/19 | Philips-Microsoft BD/DVD Patent License Agreement | KPNV0019248 | KPNV0019281 | |
| DTX-0358 | 12/30/19 | Philips-Microsoft UMTS/LTE Terminal Patent License Agreement | KPNV0019282 | KPNV0019305 | |
| DTX-0359 | 07/01/17 | Philips-Mobiwire UMTS/LTE Terminal Patent License Agreement | KPNV0019306 | KPNV0019337 | |
| DTX-0360 | | Motorola-Philips Master Settlement Agreement | KPNV0019338 | KPNV0019410 | |
| DTX-0361 | | Sharp-Motorola 2003 Cellular Essentials Properties Cross License Agreement Amendment | KPNV0019411 | KPNV0019484 | |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0362 | 01/01/17 | Philips-Mundo Reader UMTS/LTE Terminal Patent License Agreement | KPNV0019485 | KPNV0019515 | |
| DTX-0363 | 01/01/24 | Philips-Oppo Cellular Terminal Patent License Agreement | KPNV0019516 | KPNV0019558 | |
| DTX-0364 | 02/08/10 | Motorola-Sagem UMTS Terminal Settlement Agreement | KPNV0019594 | KPNV0019615 | |
| DTX-0365 | 01/29/10 | Philips-Sagem UMTS Terminal Patent License Agreement | KPNV0019616 | KPNV0019640 | |
| DTX-0366 | 11/14/18 | Philips-Samsung Patent Cross License Agreement | KPNV0019641 | KPNV0019689 | |
| DTX-0367 | 06/30/23 | Letter to Samsung re Cross License Agreement | KPNV0019690 | KPNV0019698 | |
| DTX-0368 | | Philips-Sharp Wireless Patent License Agreement | KPNV0019699 | KPNV0019729 | |
| DTX-0369 | 09/01/18 | Philips-Shenzhen Huafurui UMTS/LTE Terminal Patent License Agreement | KPNV0019730 | KPNV0019761 | |
| DTX-0370 | 09/14/12 | Philips-Sony Settlement and License Agreement | KPNV0019762 | KPNV0019768 | |
| DTX-0371 | 11/30/12 | Letter to Sony re Settlement and License Agreement | KPNV0019769 | KPNV0019769 | |
| DTX-0372 | 12/10/12 | Philips Confirmation of No Further Royalties Owed | KPNV0019770 | KPNV0019771 | |
| DTX-0373 | 11/19/20 | Philips-TCL UMTS Terminal Patent License Agreement | KPNV0019772 | KPNV0019813 | |
| DTX-0374 | 10/18/18 | Philips-Tecom UMTS/LTE Terminal Patent Settlement Agreement | KPNV0019845 | KPNV0019868 | |
| DTX-0375 | 01/03/19 | Philips-Telgo UMTS/LTE Terminal Patent License Agreement | KPNV0019869 | KPNV0019898 | |
| DTX-0376 | 08/02/24 | Philips-Telit Settlement and Patent License Agreement | KPNV0019899 | KPNV0019964 | |
| DTX-0377 | 03/01/18 | Philips-Venda UMTS/LTE Terminal Patent License Agreement | KPNV0019965 | KPNV0019996 | |
| DTX-0378 | 05/01/18 | Philips-Wiz Smart UMTS/LTE Terminal Patent License Agreement | KPNV0020047 | KPNV0020078 | |
| DTX-0379 | 03/11/22 | Philips-Xiaomi Patent License Agreement | KPNV0020079 | KPNV0020189 | |
| DTX-0380 | 05/24/18 | Philips-Yang Yi UMTS/LTE Terminal Patent Settlement Agreement | KPNV0020190 | KPNV0020213 | |
| DTX-0381 | 06/08/18 | Letter to D. Shang from Y. Feng re Meeting Minutes of March 9th | KPNV0028015 | KPNV0028031 | |
| DTX-0382 | 01/04/24 | Philips-Oppo Binding Offer | KPNV0081489 | KPNV0081504 | |
| DTX-0383 | 01/15/24 | Philips-Oppo Cellular Terminal Patent License Agreement | KPNV0081505 | KPNV0081547 | |
| DTX-0384 | | M2M Embedded Cellular Modules Market Data - ABI Research | KPNV0186352 | KPNV0186352 | |
| DTX-0385 | 02/07/23 | Philips-Hugiga UMTS/LTE Terminal Patent License Agreement Extension | KPNV0189988 | KPNV0189988 | |
| DTX-0386 | 01/31/23 | Philips-AK-TEK UMTS/LTE Terminal Patent License Agreement Extension | KPNV0189989 | KPNV0189989 | |
| DTX-0387 | 10/28/25 | Philips-Huawei Cellular Terminal Patent License Agreement | KPNV0189990 | KPNV0190073 | |
| DTX-0388 | 11/12/25 | Letter to Quectel from Philips re Wireless Mobility and Eagle Electronics Knowledge of Philips SEP Portfolio | KPNV0196125 | KPNV0196126 | |
| DTX-0389 | 08/11/23 | Letter to Y. Feng from S. Pasquier re Philips Patent License Proposal - Lump Sum | KPNV0196139 | KPNV0196141 | 401/402, 403, 408, 802, 805 |
| DTX-0390 | | Royalties due by Quectel - successive offers | KPNV0196397 | KPNV0196397 | 401/402, 403 |
| DTX-0391 | 12/23/25 | Pasquier Declaration | KPNV0197004 | KPNV0197010 | 802, 803, 403, 401/402 |
| DTX-0392 | | uBlox Agreement 2024 Working File | KPNV0197022 | KPNV0197022 | |
| DTX-0393 | 11/19/18 | Letter to Gemalto from Philips re Lump Sum Proposal | KPNV0205259 | KPNV0205261 | |
| DTX-0394 | | GSM-AMR/UMTS/LTE M2M Philips Licensing Program Meeting Presentation | KPNV0246725 | KPNV0246756 | |
| DTX-0395 | | Response on Philips Statements and Gemalto Royalty | PRSNA-ITC0473278 | PRSNA-ITC0473285 | 401/402, 403, 802, 901 |
| DTX-0396 | 09/13/16 | Philips-Telit License Discussions | PRSNA-ITC0478064 | PRSNA-ITC0478106 | 401/402, 403, 408, 802, 805, 901 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0397 | | GSM/UMTS/LTE M2M Philips Licensing Program Royalty Rates Proposal | PRSNA-ITC0478350 | PRSNA-ITC0478351 | 401/402, 403, 802 |
| DTX-0398 | | Philips Machine to Machine Module Patent License Agreement Template | PRSNA-ITC0482645 | PRSNA-ITC0482676 | 401/402, 403, 408, 901 |
| DTX-0399 | | Philips Licensing Program Revised Proposal | PRSNA-ITC0482777 | PRSNA-ITC0482777 | |
| DTX-0400 | 04/14/16 | Kearl Export Report, Philips v. Archos | PRSNA-ITC0525840 | PRSNA-ITC0525914 | 401/402, 403, 802, 901 |
| DTX-0401 | | Valuation Model for Non. 2018 Proposal - Gemalto | PRSNA-ITC0534506 | PRSNA-ITC0534507 | 401/402, 403, 408, 802, 901 |
| DTX-0402 | | History of Telit Negotiations | PRSNA-ITC0534508 | PRSNA-ITC0534510 | 401/402, 403, 408, 802, 901 |
| DTX-0403 | | History of Gemalto Negotiations | PRSNA-ITC0534511 | PRSNA-ITC0534512 | 401/402, 403, 408, 802, 901 |
| DTX-0404 | | Valuation Model for June 2019 Telit Offer | PRSNA-ITC0534513 | PRSNA-ITC0534514 | 401/402, 403, 408, 802, 901 |
| DTX-0405 | | Confidential Exhibit KJS-43 to Kevin Scott Witness Statement (Philips v. Tinno, HP 2018 000032) | PRSNA-ITC0535519 | PRSNA-ITC0535520 | |
| DTX-0406 | | Confidential Exhibit KJS-86 to Kevin Scott Witness Statement (Philips v. Tinno, HP 2018 000032) | PRSNA-ITC0536663 | PRSNA-ITC0536673 | |
| DTX-0407 | | Philips Machine to Machine Module Patent License Agreement Template | QTL_1240-0001408 | QTL_1240-0001439 | 401/402, 403, 408, 901 |
| DTX-0408 | | (EG91) A technology for all - Why LTE Cat-1 is transforming cellular connectivity | QTL_1240-0020833 | QTL_1240-0020847 | |
| DTX-0409 | | Philips Machine to Machine Module Patent License Agreement Draft Sent to Quectel - Aug. 2023 | QTL-1707-1710_0000014 | QTL-1707-1710_0000022 | |
| DTX-0410 | | Quectel 2014-2016 NA Sales Data | QTL-1707-1710_0005169 | QTL-1707-1710_0005169 | |
| DTX-0411 | | Quectel 2017 US Sales Data | QTL-1707-1710_0005170 | QTL-1707-1710_0005170 | |
| DTX-0412 | | Quectel 2018 to July 2025 US Sales Data | QTL-1707-1710_0005171 | QTL-1707-1710_0005171 | |
| DTX-0413 | | Quectel 2018 to July 2025 BG96MA and BG96MC US Sales Data | QTL-1707-1710_0005172 | QTL-1707-1710_0005172 | |
| DTX-0414 | | Quectel 2018 to July 2025 RG500U EG120K US Sales Data | QTL-1707-1710_0005173 | QTL-1707-1710_0005173 | |
| DTX-0415 | 03/26/18 | Philips-Quectel NDA | QTL-1707-1710_0005188 | QTL-1707-1710_0005189 | |
| DTX-0416 | 02/23/18 | Email to Y. Feng from D. Shang re Meeting Minutes of March 9th | QTL-1707-1710_0005211 | QTL-1707-1710_0005220 | |
| DTX-0417 | | Philips Machine to Machine Module Patent License Agreement Draft | QTL-1707-1710_0005243 | QTL-1707-1710_0005274 | |
| DTX-0418 | | AMR#1 Claim Charts V2.0 | QTL-1707-1710_0005275 | QTL-1707-1710_0005283 | |
| DTX-0419 | | LTE#1 Claim Charts V2.3 | QTL-1707-1710_0005284 | QTL-1707-1710_0005401 | |
| DTX-0420 | | UMTS#11 Claim Charts V2.4 | QTL-1707-1710_0005402 | QTL-1707-1710_0005597 | |
| DTX-0421 | 06/19/18 | Email to Y. Feng from D. Shang re Meeting Minutes of March 9th | QTL-1707-1710_0005598 | QTL-1707-1710_0005615 | |
| DTX-0422 | 10/09/17 | Qualcomm Letter Confirming Agreement re Philips Patents | QTL-1707-1710_0005616 | QTL-1707-1710_0005616 | |
| DTX-0423 | | Email to Y. Feng from D. Shang re Meeting Minutes of March 9th | QTL-1707-1710_0005617 | QTL-1707-1710_0005629 | |
| DTX-0424 | 03/09/16 | UMTS Presentation | QTL-1707-1710_0005630 | QTL-1707-1710_0005657 | |
| DTX-0425 | 03/09/16 | LTE Patents Presentation | QTL-1707-1710_0005658 | QTL-1707-1710_0005682 | |
| DTX-0426 | 03/09/16 | AMR Presentation | QTL-1707-1710_0005683 | QTL-1707-1710_0005696 | |
| DTX-0427 | 03/13/18 | Email to Y. Feng from D. Shang re Meeting Minutes of March 9th | QTL-1707-1710_0005697 | QTL-1707-1710_0005707 | |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0428 | | GSM-AMR/UMTS/LTE M2M Philips Licensing Program Meeting Presentation | QTL-1707-1710_0005728 | QTL-1707-1710_0005740 | |
| DTX-0429 | | Philips Machine to Machine Module Patent License Agreement Draft | QTL-1707-1710_0005741 | QTL-1707-1710_0005772 | |
| DTX-0430 | | AMR#1 Claim Charts V1.1 | QTL-1707-1710_0005773 | QTL-1707-1710_0005781 | |
| DTX-0431 | | LTE#1 Claim Charts V2.5 | QTL-1707-1710_0005782 | QTL-1707-1710_0005978 | |
| DTX-0432 | | UMTS#11 Claim Charts V2.6 | QTL-1707-1710_0005979 | QTL-1707-1710_0006189 | |
| DTX-0433 | 03/27/18 | Email to Y. Feng from D. Shang re Meeting Minutes of March 9th | QTL-1707-1710_0006190 | QTL-1707-1710_0006202 | |
| DTX-0434 | 03/26/18 | Philips-Quectel NDA | QTL-1707-1710_0006203 | QTL-1707-1710_0006204 | 401/402, 403 |
| DTX-0435 | 05/03/18 | Email to Y. Feng from D. Shang re Meeting Minutes of March 9th | QTL-1707-1710_0006205 | QTL-1707-1710_0006220 | |
| DTX-0436 | 03/26/18 | Philips-Quectel NDA | QTL-1707-1710_0006221 | QTL-1707-1710_0006222 | 401/402, 403 |
| DTX-0437 | 10/29/18 | Email to Y. Feng from B. Zhao re Meeting on Friday 19th of October 2018 | QTL-1707-1710_0006281 | QTL-1707-1710_0006308 | |
| DTX-0438 | 12/02/18 | Email to Y. Feng from B. Zhao re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0006309 | QTL-1707-1710_0006311 | |
| DTX-0439 | 04/03/18 | Email to Y. Feng from D. Shang re Meeting Minutes of March 9th | QTL-1707-1710_0006312 | QTL-1707-1710_0006324 | |
| DTX-0440 | | Quectel NDA Template | QTL-1707-1710_0006325 | QTL-1707-1710_0006326 | 401/402, 403 |
| DTX-0441 | 04/09/18 | Email to D. Shang from Y. Feng re Meeting Minutes of March 9th | QTL-1707-1710_0006327 | QTL-1707-1710_0006340 | |
| DTX-0442 | 03/26/18 | Philips-Quectel NDA | QTL-1707-1710_0006341 | QTL-1707-1710_0006343 | |
| DTX-0443 | 03/19/18 | Email to D. Shang from Y. Feng re Meeting Minutes of March 9th | QTL-1707-1710_0006357 | QTL-1707-1710_0006368 | |
| DTX-0444 | 03/23/18 | Email to D. Shang from Y. Feng re Meeting Minutes of March 9th | QTL-1707-1710_0006369 | QTL-1707-1710_0006380 | |
| DTX-0445 | 11/15/18 | Email to B. Zhao from Y. Feng re Meeting on Friday 19th of October 2018 | QTL-1707-1710_0006381 | QTL-1707-1710_0006411 | |
| DTX-0446 | | Non-Infringement Analysis LTE#19 v2.2, EP 2241154 | QTL-1707-1710_0006412 | QTL-1707-1710_0006413 | 401/402, 403, 701, 901 |
| DTX-0447 | | Non-Infringement Analysis LTE#20, EP 2258135 | QTL-1707-1710_0006414 | QTL-1707-1710_0006416 | 401/402, 403, 701, 901 |
| DTX-0448 | | Non-Infringement Analysis LTE#21, EP 2258136 | QTL-1707-1710_0006417 | QTL-1707-1710_0006418 | 401/402, 403, 701, 901 |
| DTX-0449 | | Non-Infringement Analysis LTE#22 v3.0, EP 2274944 | QTL-1707-1710_0006419 | QTL-1707-1710_0006421 | 401/402, 403, 701, 901 |
| DTX-0450 | 11/02/18 | Email to S. Pasquier from Y. Feng re Meeting on Friday 19th of October 2018 | QTL-1707-1710_0006422 | QTL-1707-1710_0006450 | |
| DTX-0451 | 12/13/18 | Email to L. Yang from Y. Feng re Today's Slides | QTL-1707-1710_0006979 | QTL-1707-1710_0006979 | |
| DTX-0452 | 12/06/18 | Philips-Quectel LTE Meeting Presentation Slides | QTL-1707-1710_0006980 | QTL-1707-1710_0006992 | |
| DTX-0453 | 11/28/18 | Email to B. Zhao from Y. Feng re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0006993 | QTL-1707-1710_0006994 | |
| DTX-0454 | 04/15/19 | Email to D. Zhang from D. Hierl re Philips Patent Licensing | QTL-1707-1710_0006995 | QTL-1707-1710_0006996 | |
| DTX-0455 | 04/11/19 | Letter to SOS from S. Pasquier re GSM-AMR/UMTS/LTE M2M Philips Licensing Program related to IoT Modules | QTL-1707-1710_0006997 | QTL-1707-1710_0007018 | 401/402, 403, 408, 802 |
| DTX-0456 | 10/09/17 | Qualcomm Letter Confirming Agreement re Philips Patents | QTL-1707-1710_0007028 | QTL-1707-1710_0007028 | |
| DTX-0457 | 07/17/19 | Email to Y. Feng from B. Zhao re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0007059 | QTL-1707-1710_0007070 | |
| DTX-0458 | 08/01/19 | Philips-Quectel NDA | QTL-1707-1710_0007071 | QTL-1707-1710_0007073 | |
| DTX-0459 | 07/02/19 | Email to Y. Feng from B. Zhao re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0007074 | QTL-1707-1710_0007084 | |
| DTX-0460 | 07/15/19 | Philips-Quectel NDA | QTL-1707-1710_0007085 | QTL-1707-1710_0007086 | |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0461 | 09/04/19 | Email to B. Zhao from J. Wei re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0007087 | QTL-1707-1710_0007099 | |
| DTX-0462 | | Philips-Quectel NDA Draft | QTL-1707-1710_0007100 | QTL-1707-1710_0007102 | |
| DTX-0463 | 03/13/19 | Email to B. Zhao from J. Wei re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0007103 | QTL-1707-1710_0007112 | |
| DTX-0464 | 03/26/19 | Philips-Quectel NDA | QTL-1707-1710_0007113 | QTL-1707-1710_0007115 | |
| DTX-0465 | | Patent List | QTL-1707-1710_0007116 | QTL-1707-1710_0007116 | |
| DTX-0466 | 11/12/19 | Email to J. Sesztak from Y. Feng re Quectel Anual conference in Paris and GSM-AMR/UMTS/LTE Patent Licensing Program related to IoT modules | QTL-1707-1710_0007128 | QTL-1707-1710_0007137 | |
| DTX-0467 | 07/09/19 | Email to B. Zhao from Y. Feng re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0007138 | QTL-1707-1710_0007148 | |
| DTX-0468 | 04/22/20 | Email to M. Marion from G. Goodwin re Avnet - Philips | QTL-1707-1710_0007149 | QTL-1707-1710_0007149 | |
| DTX-0469 | 03/23/20 | Letter to Avnet from Philips re GSM-AMR/UMTS/LTE Patent Licensing Program related to cellular M2M/IoT modules | QTL-1707-1710_0007150 | QTL-1707-1710_0007174 | |
| DTX-0470 | 12/02/20 | Email to S. Pasquier from J. Wei re Philips cellular patent license | QTL-1707-1710_0007546 | QTL-1707-1710_0007565 | |
| DTX-0471 | 11/23/20 | Email to B. Zhao from J. Wei re Philips cellular patent license | QTL-1707-1710_0007566 | QTL-1707-1710_0007583 | |
| DTX-0472 | 11/22/20 | Philips UMTS Counter Charts | QTL-1707-1710_0007584 | QTL-1707-1710_0007610 | |
| DTX-0473 | 08/24/20 | Email to Y. Feng from B. Zhao re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0007611 | QTL-1707-1710_0007628 | |
| DTX-0474 | Mar. 2020 | LTE#1 Claim Charts V2.8 | QTL-1707-1710_0007629 | QTL-1707-1710_0007874 | |
| DTX-0475 | | UMTS#11 Claim Charts V2.8 | QTL-1707-1710_0007875 | QTL-1707-1710_0008103 | |
| DTX-0476 | 04/03/20 | Email to Y. Feng from B. Zhao re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0008104 | QTL-1707-1710_0008118 | 401/402, 403, 802, 805, 901 |
| DTX-0477 | 04/15/20 | Philips-Quectel NDA | QTL-1707-1710_0008119 | QTL-1707-1710_0008121 | 401/402, 403 |
| DTX-0478 | 06/15/20 | Email to Y. Feng from B. Zhao re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0008124 | QTL-1707-1710_0008140 | |
| DTX-0479 | 06/15/20 | Philips Response to Quectel Validity Argument re EP525 and EP511 | QTL-1707-1710_0008141 | QTL-1707-1710_0008157 | |
| DTX-0480 | 03/09/20 | Email to Y. Feng from B. Zhao re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0008158 | QTL-1707-1710_0008170 | |
| DTX-0481 | 06/22/20 | Email to B. Zhao from Y. Feng re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0008171 | QTL-1707-1710_0008187 | |
| DTX-0482 | 07/01/20 | Philips-Quectel NDA | QTL-1707-1710_0008188 | QTL-1707-1710_0008190 | |
| DTX-0483 | 07/01/20 | Philips-Quectel NDA | QTL-1707-1710_0008191 | QTL-1707-1710_0008193 | |
| DTX-0484 | 03/30/20 | Email to B. Zhao from Y. Feng re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0008194 | QTL-1707-1710_0008207 | |
| DTX-0485 | | Philips-Quectel NDA Draft | QTL-1707-1710_0008208 | QTL-1707-1710_0008210 | |
| DTX-0486 | 04/30/20 | Email to B. Zhao from Y. Feng re Meeting on Thursday 6th of December 2018 | QTL-1707-1710_0008211 | QTL-1707-1710_0008225 | |
| DTX-0487 | 05/15/20 | Philips-Quectel NDA | QTL-1707-1710_0008226 | QTL-1707-1710_0008228 | |
| DTX-0488 | | Evaluation of EP1440525B1 | QTL-1707-1710_0008229 | QTL-1707-1710_0008240 | |
| DTX-0489 | | Evaluation of EP1623511B1 | QTL-1707-1710_0008241 | QTL-1707-1710_0008259 | |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0490 | 12/20/18 | Qualcomm-Quectel Embedded Module Patent License Agreement | QTL-1707-1710_0032462 | QTL-1707-1710_0032499 | 802, 803, 703, 403, 401/402 |
| DTX-0491 | 07/01/20 | First Amendment to Qualcomm-Quectel Embedded Module Patent License Agreement | QTL-1707-1710_0032500 | QTL-1707-1710_0032505 | 802, 803, 703, 403, 401/402 |
| DTX-0492 | 07/01/22 | Qualcomm-Quectel Embedded Module Patent License Agreement | QTL-1707-1710_0106641 | QTL-1707-1710_0106679 | 802, 803, 703, 403, 401/402 |
| DTX-0493 | 01/03/25 | Email to N. Muhrer from C. Rubin re Counterpoint mention Netprisma and Eagle in the report notes | QTL-1707-1710_0106902 | QTL-1707-1710_0106906 | |
| DTX-0494 | 12/30/25 | SPV-Quectel License Agreement | QTL-1707-1710_0107398 | QTL-1707-1710_0107461 | 802, 803, 703, 403, 401/402 |
| DTX-0495 | | Sisvel-Quectel NB-IoT/LTE-M Agreement | QTL-1707-1710_0156352 | QTL-1707-1710_0156359 | 802, 803, 703, 403, 401/402 |
| DTX-0496 | | Cellular IoT Module Shipments Up 16% YoY in Q1 2025 \| Counterpoint | QTL-1707-1710_0157111 | QTL-1707-1710_0157114 | 401/402, 403, 901, 802, 602 |
| DTX-0497 | | Cellular IoT Module Shipments Up 17% YoY in Q2 2025; 5G RedCap Shipments Signal Start of Commercial Ramp \| Counterpoint | QTL-1707-1710_0157115 | QTL-1707-1710_0157120 | 401/402, 403, 901, 802, 602 |
| DTX-0498 | | M2M Cellular Module Vendor Market Share - 4Q 2025 - ABI Research | QTL-1707-1710_0157192 | QTL-1707-1710_0157192 | 401/402, 403, 901, 802, 602 |
| DTX-0499 | Dec. 2025 | ETSI Directives V. 52, Rules of Procedure, Annex 6 | KPNV0256455 | KPNV0256738 | |
| DTX-0500 | 12/12/22 | ETSI Directives V. 46 | KPNV0068860 | KPNV0069110 | |
| DTX-0501 | | Loi du 1er Juillet 1901, relative au contrat d'association. Article 1. | | | 401/402, 403 |
| DTX-0502 | | D. R. Martin, « La stipulation de contrat pour autrui », D. 1994.145. | | | 401/402, 403 |
| DTX-0503 | | Com. 28 January 2003, n° 00-12.149, Bull. IV n° 11, p. 12. | | | 401/402, 403 |
| DTX-0504 | | Com. 1st June 1999, n° 97-12.853, Bull. IV n° 118, p. 97. | | | 401/402, 403 |
| DTX-0505 | | G. Cornu, Vocabulaire juridique, 11th ed. | LIBCHABER_00002 | LIBCHABER_00002 | 401/402, 403, 901, 802, 602 |
| DTX-0506 | | Fr. Terré, Ph. Simler, Y. Lequette and Fr. Chénedé, Les obligations, 13th ed., Dalloz 2022 | LIBCHABER_00003 | LIBCHABER_00004 | 401/402, 403, 901, 802, 602 |
| DTX-0507 | | A. Bénabent, Droit des obligations, 21st ed., LGDJ 2025 | LIBCHABER_00001 | LIBCHABER_00001 | 401/402, 403, 901, 802, 602 |
| DTX-0508 | | Com. 26 November 2003, nos 00-10.243 and 00-10.949, Bull. IV, n° 186 p. 206. | | | 401/402, 403, 901, 802, 602 |
| DTX-0509 | | Civ. 3, 28 June 2006, n° 04-20.040, Bull. III, n° 164, p. 136. | | | 401/402, 403 |
| DTX-0510 | | Civ. 3, 7 January. 2009, n° 07-20.783, Bull. III, n° 5. | | | 401/402, 403 |
| DTX-0511 | | Com. 18 September 2012, n° 11-19.629, Bull. IV, n° 163. | | | 401/402, 403 |
| DTX-0512 | | Com., 31 March 2021, n° 19-14.533 | | | 401/402, 403 |
| DTX-0513 | | French Civil Code | | | 401/402, 403 |
| DTX-0514 | | Clarification of Power Scaling with HS-DPCCH, R1-030934 | KPNV0002438 | KPNV0002440 | |
| DTX-0515 | | Draft Report of 3GPP TSG RAN WG1 #33, R1-031163 | KPNV0002441 | KPNV0002502 | |
| DTX-0516 | 02/08/18 | ETSI Directives V. 38 | KPNV0044466 | KPNV0044693 | |
| DTX-0517 | 11/30/20 | ETSI Directives V. 42r1 | KPNV0047792 | KPNV0048024 | |
| DTX-0518 | Jul. 2007 | ETSI Directives V. 22 | KPNV0048866 | KPNV0049052 | |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0519 | Nov. 2005 | Modifications to the ETSI Guide on IPRs, GA46(05)SCM03, Revision of Article 4.1 of the ETSI IPR Policy | KPNV0051072 | KPNV0051102 | |
| DTX-0520 | Apr. 2005 | Proposed Modification to Article 4.1 of ETSI IPR Policy, GA45(05)12 | KPNV0051137 | KPNV0051142 | |
| DTX-0521 | | IPR declaration - ipr.etsi.org - Wayback Machine | KPNV0069676 | KPNV0069676 | |
| DTX-0522 | | About ETSI Webpage | KPNV0075253 | KPNV0075258 | |
| DTX-0523 | Dec. 1997 | Executive Summary SMG #24, ETSI/SMG (97) 5 Part A | KPNV0076285 | KPNV0076332 | |
| DTX-0524 | | Third Generation Partnership Project Agreement | KPNV0079169 | KPNV0079194 | |
| DTX-0525 | 08/01/97 | Amendments of the ETSI Interim Intellectual Property Rights, GA29(97)SCM03 | KPNV0188135 | KPNV0188140 | |
| DTX-0526 | 11/29/17 | Setting Out the EU Approach to Standard Essential Patents, COM(2017) 712 | PRSNA-ITC0456490 | PRSNA-ITC0456503 | |
| DTX-0527 | Apr. 2008 | Report of 3GPP TSG RAN WG2 Meeting #61bis, R2-082800 | PRSNA-ITC0485959 | PRSNA-ITC0486093 | 401/402, 403, 802 |
| DTX-0528 | 04/20/21 | Email to Y. Feng from S. Pasquier re Quectel Philips IoT Cellular Communication Patent License | KPNV0196177 | KPNV0196179 | |
| DTX-0529 | | Running Royalty Licenses Summary | KPNV0246518 | KPNV0246518 | |
| DTX-0530 | 01/21/16 | Email to P. Zhang from S. Pasquier re meeting in March 2016 for M2M licensing program | PRSNA-ITC0469962 | PRSNA-ITC0469964 | 401/402, 403, 408, 701, 802 |
| DTX-0531 | | UMTS#11 Claim Charts V2.4 | PRSNA-ITC0469965 | PRSNA-ITC0470160 | 401/402, 403, 408, 701, 802 |
| DTX-0532 | | LTE#1 Claim Charts V2.3 | PRSNA-ITC0470170 | PRSNA-ITC0470287 | 401/402, 403, 408, 701, 802 |
| DTX-0533 | 10/04/16 | Cellular M2M Licensing Philips Royalty Rate Explanations - Gemalto Meeting | PRSNA-ITC0473420 | PRSNA-ITC0473430 | 401/402, 403, 408 |
| DTX-0534 | 09/20/23 | Letter to Philips from Quectel responding to Philips Recent Letter regarding a Non-FRAND Patent License | QTL-1707-1710_0000004 | QTL-1707-1710_0000009 | |
| DTX-0535 | 03/31/01 | Letter to Philips from Quectel re FRAND | QTL-1707-1710_0014562 | QTL-1707-1710_0014562 | 401/402, 403, 802 |
| DTX-0536 | 07/01/22 | Qualcomm-Quectel Embedded Module Chinese Patent License Agreement | QTL-1707-1710_0164232 | QTL-1707-1710_0164270 | 802, 803, 703, 403, 401/402 |
| DTX-0537 | 08/18/22 | Letter to D. Zhang from Z. Blecker enclosing Fully Executed EMPLA and EMCPLA | QTL-1707-1710_0164271 | QTL-1707-1710_0164310 | 802, 803, 703, 403, 401/402 |
| DTX-0538 | 01/01/23 | First Amendment to Quectel-Qualcomm EMPLA and EMCPLA | QTL-1707-1710_0164311 | QTL-1707-1710_0164318 | 802, 803, 703, 403, 401/402 |
| DTX-0539 | 04/13/22 | Complainants' Petition for Review of Initial Determination on Violation of Section 337 | ITC1240-0001720 | ITC1240-0001830 | 802, 803, 403, 401/402 |
| DTX-0540 | 04/02/21 | Declaration of Timothy Moulsley, 337-TA-1240 | ITC1240-0007982 | ITC1240-0007990 | 401/402, 403, 802, 901 |
| DTX-0541 | Sept. 2009 | 3GPP TS 25.213 V9.0.0 | KPNV0005654 | KPNV0005689 | 401/402, 403 |
| DTX-0542 | Jun. 2005 | 3GPP TS 25.214 V5.11.0 | KPNV0009477 | KPNV0009529 | |
| DTX-0543 | | Quectel UC15 Hardware Design V1.3 | PRSNA-ITC0541110 | PRSNA-ITC0541188 | |
| DTX-0544 | | Quectel UC200T Hardware Design V1.0 | PRSNA-ITC0541552 | PRSNA-ITC0541637 | |
| DTX-0545 | | EG25-G V2.1 BOM(BOM8)200222 | QTL_1240-0000002 | QTL_1240-0000002 | |
| DTX-0546 | | EG91-NA V3.2 BOM(BOM2)200911 | QTL_1240-0000003 | QTL_1240-0000003 | |
| DTX-0547 | | Quectel EG25-G LTE Standard Specification V1.3 | QTL_1240-0000023 | QTL_1240-0000024 | |
| DTX-0548 | | Quectel EG91 Series LTE Standard Specification V2.1 | QTL_1240-0000075 | QTL_1240-0000077 | |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0549 | | Quectel BG96 LPWA Specification V1.8 | QTL_1240-0000110 | QTL_1240-0000111 | |
| DTX-0550 | | Quectel BG95 Series LPWA Specification V1.6 | QTL_1240-0000252 | QTL_1240-0000254 | |
| DTX-0551 | | Quectel SC20 Series Smart Module Specification V1.9 | QTL_1240-0000289 | QTL_1240-0000291 | |
| DTX-0552 | | Quectel EG91 LTE Specification V1.5 | QTL_1240-0023640 | QTL_1240-0023641 | |
| DTX-0553 | | Quectel RG50xQ Series 5G Specification V1.6 | QTL-1707-1710_0000855 | QTL-1707-1710_0000857 | |
| DTX-0554 | | Quectel EC21 Series Hardware Design V2.1 | QTL-1707-1710_0002685 | QTL-1707-1710_0002808 | |
| DTX-0555 | | Quectel UC200A-GL Hardware Design V1.1 | QTL-1707-1710_0004370 | QTL-1707-1710_0004453 | |
| DTX-0556 | | Quectel EC200A Series LTE Standard Specification V1.6 | QTL-1707-1710_0004473 | QTL-1707-1710_0004475 | |
| DTX-0557 | | Quectel EC21 Series LTE Standard Specification V2.6 | QTL-1707-1710_0004478 | QTL-1707-1710_0004480 | |
| DTX-0558 | | Quectel EC25 Series LTE Standard Specification V2.8 | QTL-1707-1710_0004481 | QTL-1707-1710_0004485 | |
| DTX-0559 | | Quectel EG21-GL LTE Standard Specification V1.6 | QTL-1707-1710_0004486 | QTL-1707-1710_0004488 | |
| DTX-0560 | | Quectel EG21-G LTE Standard Specification V1.6 | QTL-1707-1710_0004489 | QTL-1707-1710_0004490 | |
| DTX-0561 | | Quectel EG25-GL LTE Standard Specification V1.4 | QTL-1707-1710_0004491 | QTL-1707-1710_0004493 | |
| DTX-0562 | | Quectel EG25-G LTE Standard Specification V1.7 | QTL-1707-1710_0004494 | QTL-1707-1710_0004495 | |
| DTX-0563 | | Quectel EG95 Series LTE Standard Specification V2.5 | QTL-1707-1710_0004526 | QTL-1707-1710_0004530 | |
| DTX-0564 | | Quectel UC15 UMTS&HSDPA Specification V1.8 | QTL-1707-1710_0004533 | QTL-1707-1710_0004534 | |
| DTX-0565 | | Quectel UC200A-GL UMTS&HSPA+ Specification V1.2 | QTL-1707-1710_0004535 | QTL-1707-1710_0004536 | |
| DTX-0566 | | Quectel UC200T UMTS&HSPA+ Specification V1.0 | QTL-1707-1710_0004537 | QTL-1707-1710_0004538 | |
| DTX-0567 | | Quectel UC20 UMTS&HSPA+ Specification V2.0 | QTL-1707-1710_0004539 | QTL-1707-1710_0004540 | |
| DTX-0568 | | Quectel UG96 UMTS&HSPA Specification V1.3 | QTL-1707-1710_0004541 | QTL-1707-1710_0004542 | |
| DTX-0569 | | Quectel SC200R Series Smart Module Specification V1.6 | QTL-1707-1710_0004543 | QTL-1707-1710_0004544 | |
| DTX-0570 | | Quectel SC20 Series Smart Module Specification V2.1 | QTL-1707-1710_0004545 | QTL-1707-1710_0004548 | |
| DTX-0571 | | Quectel SC600T Series Smart Module Specification V1.3 | QTL-1707-1710_0004549 | QTL-1707-1710_0004551 | |
| DTX-0572 | | Quectel SC600Y Series Smart Module Specification V1.4 | QTL-1707-1710_0004552 | QTL-1707-1710_0004554 | |
| DTX-0573 | | Quectel SC66 Series Smart Module Specification V1.5 | QTL-1707-1710_0004555 | QTL-1707-1710_0004556 | |
| DTX-0574 | | Quectel AG35 Series Automotive Module Specification V1.8 | QTL-1707-1710_0004625 | QTL-1707-1710_0004627 | |
| DTX-0575 | | Quectel AG55xQ Series Automotive Module Specification V1.7 | QTL-1707-1710_0004940 | QTL-1707-1710_0004942 | |
| DTX-0576 | | Quectel EG91 Series LTE Standard Specification V2.1 | QTL-1707-1710_0008334 | QTL-1707-1710_0008336 | |
| DTX-0577 | | Quectel EC20 LTE Specification V1.4 | QTL-1707-1710_0066750 | QTL-1707-1710_0066751 | |
| DTX-0578 | | Quectel EG06 Series LTE-A Specification V2.0 | QTL-1707-1710_0067427 | QTL-1707-1710_0067428 | |
| DTX-0579 | | Quectel EG12 Series LTE-A Module Specification V1.3 | QTL-1707-1710_0070582 | QTL-1707-1710_0070584 | |
| DTX-0580 | | Quectel EG18 Series LTE-A Specification V1.2 | QTL-1707-1710_0071281 | QTL-1707-1710_0071282 | |
| DTX-0581 | | Quectel EM06 Series LTE-A Specification V1.9 | QTL-1707-1710_0076796 | QTL-1707-1710_0076798 | |
| DTX-0582 | | Quectel EM12-G LTE-A Specification V1.2 | QTL-1707-1710_0077056 | QTL-1707-1710_0077057 | |
| DTX-0583 | | Quectel EP06 Series LTE-A Specification V1.9 | QTL-1707-1710_0077616 | QTL-1707-1710_0077617 | |
| DTX-0584 | | Quectel RM50xQ Series 5G Specification V1.2 | QTL-1707-1710_0090662 | QTL-1707-1710_0090663 | |
| DTX-0585 | | Clarification of Power Scaling with HS-DPCCH, R1-030608 | QTL-1707-1710_0164319 | QTL-1707-1710_0164321 | |
| DTX-0586 | Nov. 2004 | 3GPP Release 5 and Beyond - The Evolution of UMTS | QTL-1707-1710_0164322 | QTL-1707-1710_0164350 | |
| DTX-0587 | | U.S. Patent No. 8,559,963 | | | 401/402, 403 |
| DTX-0588 | | Source Code | SC0000375 | | 401/402, 403 |
| DTX-0589 | | Source Code | SC0000393 | | 401/402, 403 |
| DTX-0590 | | Source Code | SC0000503 | | 401/402, 403 |
| DTX-0591 | | Source Code | SC0000537 | | 401/402, 403 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0592 | | PCT/IB2005/053618 | PRSNA-ITC0210374 | PRSNA-ITC0210393 | 401/402, 403 |
| DTX-0593 | | Report from the Email Discussion on Logical Channel Prioritisation, R2-083140 | ITC1240-0006809 | ITC1240-0006812 | |
| DTX-0594 | | Min Report Exhibit, 337-TA-1240 | ITC-RECORD-0009019 | ITC-RECORD-0010210 | 401/402, 403, 802, 901 |
| DTX-0595 | | Joint Proposed Claim Construction Chart, 337-TA-1240 | ITC-RECORD-0074933 | ITC-RECORD-0074996 | 401/402, 403, 802 |
| DTX-0596 | Feb. 2021 | ETSI TS 136 523-1 V16.7.0 | JACKSON-0061023 | JACKSON-0067879 | |
| DTX-0597 | | Cox, An Introduction to LTE | KPNV0007781 | KPNV0008267 | |
| DTX-0598 | | Quectel BG96 LPWA Specification V2.0 | QTL-1707-1710_0004469 | QTL-1707-1710_0004470 | |
| DTX-0599 | | U.S. Patent No. 8,467,723 | | | 401/402, 403 |
| DTX-0600 | | U.S. Patent No. 8,817,681 | | | 401/402, 403 |
| DTX-0601 | | Requirement of different transmission power levels between ACK and NACK signaling, R1-23-020060 | ITC1240-0004504 | ITC1240-0004508 | 401/402, 403, 802, 901 |
| DTX-0602 | | 3GPP TS 25.214 V5.8.0 Release 5 | PA_0003686 | PA_0003749 | 401/402, 403 |
| DTX-0603 | 12/17/10 | Gabelli Company-AAPL The King Is Dead; Long Live The King - Buy | DISTLER_001924 | DISTLER_001941 | 401/402, 403, 901, 802, 602 |
| DTX-0604 | 03/16/11 | Credit Suisse-AAPL The Most Valuable Company in the World | DISTLER_001942 | DISTLER_002041 | 401/402, 403, 901, 802, 602 |
| DTX-0605 | 06/21/11 | Credit Suisse-Smartphones - Another bite from the Apple | DISTLER_002042 | DISTLER_002158 | 401/402, 403, 901, 802, 602 |
| DTX-0606 | 11/21/11 | Credit Suisse-AAPL iPhone-lasticity | DISTLER_002159 | DISTLER_002194 | 401/402, 403, 901, 802, 602 |
| DTX-0607 | | Shanghai Quectel Communication Technology Co., 2019 Annual Report | DISTLER_002195 | DISTLER_002569 | 401/402, 403, 901, 802, 602 |
| DTX-0608 | 04/14/20 | Shanghai Quectel Communication Technology Co. Announcement on Major Financial Indicators in 2019 | DISTLER_002570 | DISTLER_002756 | 401/402, 403, 901, 802, 602 |
| DTX-0609 | 12/23/20 | Announcement on United States International Trade Commission Conducting 337 Investigation | DISTLER_002757 | DISTLER_002759 | 401/402, 403, 901, 802, 602 |
| DTX-0610 | 04/06/22 | Shanghai Quectel Communication Technology Co. Announcement on Progress in USITC Conducting Investigation for Section 337 | DISTLER_002760 | DISTLER_002762 | 401/402, 403, 901, 802, 602 |
| DTX-0611 | 04/06/22 | Shanghai Quectel Communication Technology Co. Announcement on Progress in USITC Conducting Investigation for Section 337 | DISTLER_002763 | DISTLER_002764 | 401/402, 403, 901, 802, 602 |
| DTX-0612 | | Shanghai Quectel Communication Technology Co., 2024 Annual Report | DISTLER_002765 | DISTLER_003186 | 401/402, 403, 901 |
| DTX-0613 | | Shanghai Quectel Communication Technology Co., 2024 Annual Report | DISTLER_003187 | DISTLER_003415 | 401/402, 403, 901 |
| DTX-0614 | | ATT 2022 Annual Report | DISTLER_003416 | DISTLER_003505 | 401/402, 403, 901, 802, 602 |
| DTX-0615 | | Colon, Litigation Services Handbook (6th ed 2017) | DISTLER_003506 | DISTLER_003528 | 401/402, 403, 901, 802, 602 |
| DTX-0616 | | Contreras, FRAND Cases in Context | DISTLER_003529 | DISTLER_003534 | 401/402, 403, 901, 802, 602 |
| DTX-0617 | | Cotter, Remedies in IP Law | DISTLER_003535 | DISTLER_003540 | 401/402, 403, 901, 802, 602 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0618 | Nov. 2002 | Nokia Form 6-K November 2002 | DISTLER_003541 | DISTLER_003551 | 401/402, 403, 901, 802, 602 |
| DTX-0619 | | Philips Annual Report 2024 | DISTLER_003552 | DISTLER_003853 | 401/402, 403 |
| DTX-0620 | | Global Smartphone Shipments from 2008 to 2025 by Vendor | DISTLER_003855 | DISTLER_003855 | 401/402, 403, 901, 802, 602 |
| DTX-0621 | | Apple Shipments of Smartphones Worldwide 2010 to 2025 | DISTLER_003857 | DISTLER_003857 | 401/402, 403, 901, 802, 602 |
| DTX-0622 | 11/17/20 | Philips-Apple Discussions | KPNV0098050 | KPNV0098072 | |
| DTX-0623 | 12/11/20 | Philips Apple UMTS/LTE Commercial Discussions | KPNV0098074 | KPNV0098099 | |
| DTX-0624 | 09/30/16 | Email to S. Pasquier from C. Petsch re Philips Licensing Negotiations | PRSNA-ITC0473728 | PRSNA-ITC0473731 | 401/402, 403, 408, 901, 802 |
| DTX-0625 | | Cellular Modem Market Update | PRSNA-ITC0475995 | PRSNA-ITC0476008 | 401/402, 403, 901, 802, 602 |
| DTX-0626 | 03/29/19 | Letter to Philips from Gemalto re Philips Patent License Discussions with Gemalto | PRSNA-ITC0482993 | PRSNA-ITC0482995 | 401/402, 403, 408, 901, 802 |
| DTX-0627 | | Annex 17 to Kevin Scott Witness Statement (Philips v. Tinno, HP 2018 000032) | PRSNA-ITC0520769 | PRSNA-ITC0520773 | |
| DTX-0628 | | Annex 21 to Kevin Scott Witness Statement (Philips v. Tinno, HP 2018 000032) | PRSNA-ITC0520965 | PRSNA-ITC0520968 | |
| DTX-0629 | | History of Quectel Negotiations | PRSNA-ITC0534504 | PRSNA-ITC0534505 | |
| DTX-0630 | | Exhibit KJS-71 to Kevin Scott Witness Statement (Philips v. Tinno, HP 2018 000032) | PRSNA-ITC0536518 | PRSNA-ITC0536524 | 401/402, 403, 802 |
| DTX-0631 | 06/13/18 | Ermail to H. Muhrer from Y. Feng re Philips License Agreement | QTL-1707-1710_0157350 | QTL-1707-1710_0157352 | 401/402, 403, 408, 901, 802, 805 |
| DTX-0632 | 10/20/18 | Email to P. Qian from Y. Feng re the Progress on Philips Licensing Program | QTL-1707-1710_0157807 | QTL-1707-1710_0157807 | |
| DTX-0633 | 10/24/18 | Ermail to H. Muhrer from Y. Feng re the Progress on Philips Licensing Program | QTL-1707-1710_0157808 | QTL-1707-1710_0157809 | |
| DTX-0634 | | Assemblée Plénière, 6 October 2006, n° 05-13.255, Bull. 2006, Ass. plén, n° 9 | | | 401/402, 403 |
| DTX-0635 | | Assemblée Plénière 13 January 2020, n° 17-19.963 | | | 401/402, 403 |
| DTX-0636 | | Civ. 1, 9 November 1993, n° 91-22.059, Bull. I, n° 317, p. 220 | | | 401/402, 403 |
| DTX-0637 | | Civ. 1, 13 December 1988, n° 86-19.068, Bull. I, n° 352, p. 239 | BORGHETTI-0000301 | BORGHETTI-0000302 | 401/402, 403 |
| DTX-0638 | | Civ. 1, 4 June 2014, n° 13-17.077, Bull. I, n° 100 | | | 401/402, 403 |
| DTX-0639 | | Civ. 1re, 24 June1981, no 80-13.585 | | | 401/402, 403 |
| DTX-0640 | | Civ. 1re, 16 May 2018, no 17-17.904 | | | 401/402, 403 |
| DTX-0641 | | Civ. 1re, 3 July 2001, no 99-12.859 | | | 401/402, 403 |
| DTX-0642 | | Civ. 1re, 16 October 2001, no 99-18.221 | | | 401/402, 403 |
| DTX-0643 | | Civ. 3, 26 November 2003, n° 02-14.184, Bull. III, n° 210, p. 187 | | | 401/402, 403 |
| DTX-0644 | | Civ. 3, 12 September 2019, n° 18-11.922 | | | 401/402, 403 |
| DTX-0645 | | Civ. 3, 18 December 1991, n° 89-21.046, Bull. III, n° 328, p 193 | | | 401/402, 403 |
| DTX-0646 | 03/06/26 | Philips' Responses to Quectel's First Requests for Admission | | | 401/402, 403, 802 |
| DTX-0647 | 11/17/25 | Philips' Responses to Quectel's First Interrogatories | | | 401/402, 403, 802 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0648 | 03/06/26 | Philips' Second Suppl. Responses to Quectel's Interrogatory No. 5 | | | 401/402, 403, 802 |
| DTX-0649 | 03/06/26 | Philips' Responses to Quectel's Second Interrogatories | | | 401/402, 403, 802 |
| DTX-0650 | 04/06/26 | Philips' Suppl. Responses to Quectel's Interrogatory No. 6 | | | 401/402, 403, 802 |
| DTX-0651 | | 3GPP TSG RAN WG1 Communications from Matthew Baker | ITC-RECORD-0070889 | ITC-RECORD-0070890 | 401/402, 403, 802, 901 |
| DTX-0652 | 01/15/20 | Quectel BG96 V2.2 Product BOM Sheet | QTL-1707-1710_0008260 | QTL-1707-1710_0008260 | 401/402, 403, 901 |
| DTX-0653 | 02/24/20 | Quectel EG25-G V2.1 Product BOM(BOM8) Sheet | QTL-1707-1710_0008261 | QTL-1707-1710_0008261 | 401/402, 403, 901 |
| DTX-0654 | 09/12/20 | Quectel EG91-NA V3.2 Product BOM(BOM2) Sheet | QTL-1707-1710_0008262 | QTL-1707-1710_0008262 | 401/402, 403, 901 |
| DTX-0655 | 05/23/18 | Quectel SC20-A V1.1 Product BOM(BOM3) Sheet | QTL-1707-1710_0008263 | QTL-1707-1710_0008263 | 401/402, 403, 901 |
| DTX-0656 | 06/09/20 | Quectel BG96MC V3.1 Product BOM(BOM3) Sheet | QTL-1707-1710_0009670 | QTL-1707-1710_0009670 | 401/402, 403, 901 |
| DTX-0657 | 10/01/24 | Second Amendment to Quectel-Qualcomm EMPLA and EMCPLA | QTL-1707-1710_0106637 | QTL-1707-1710_0106640 | 802, 803, 703, 403, 401/402 |
| DTX-0658 | | EP 2274861 B1 | QTL-1707-1710_0106862 | QTL-1707-1710_0106871 | 401/402, 403, 901 |
| DTX-0659 | | EP 3103116 B1 | QTL-1707-1710_0106872 | QTL-1707-1710_0106899 | 401/402, 403, 901 |
| DTX-0660 | | Quectel 2019 Annual Financial Report | QTL-1707-1710_0107123 | QTL-1707-1710_0107131 | 401/402, 403, 901 |
| DTX-0661 | | Quectel 2020 Annual Financial Report | QTL-1707-1710_0107132 | QTL-1707-1710_0107140 | 401/402, 403, 901 |
| DTX-0662 | | Quectel 2020 Q3 Financial Report | QTL-1707-1710_0107141 | QTL-1707-1710_0107151 | 401/402, 403, 901 |
| DTX-0663 | | Quectel 2020 Semi Annual Financial Report | QTL-1707-1710_0107152 | QTL-1707-1710_0107160 | 401/402, 403, 901 |
| DTX-0664 | | Quectel 2021 Annual Financial Report | QTL-1707-1710_0107161 | QTL-1707-1710_0107170 | 401/402, 403, 901 |
| DTX-0665 | | Quectel 2021 Semi-Annual Financial Report | QTL-1707-1710_0107171 | QTL-1707-1710_0107178 | 401/402, 403, 901 |
| DTX-0666 | | Quectel 2022 Annual-Financial-Report | QTL-1707-1710_0107179 | QTL-1707-1710_0107188 | 401/402, 403, 901 |
| DTX-0667 | | Quectel 2022 Q1 Financial Report | QTL-1707-1710_0107189 | QTL-1707-1710_0107197 | 401/402, 403, 901 |
| DTX-0668 | | Quectel 2022 Q3 Financial Report | QTL-1707-1710_0107198 | QTL-1707-1710_0107206 | 401/402, 403, 901 |
| DTX-0669 | | Quectel 2022 Semi-Annual Financial Report | QTL-1707-1710_0107207 | QTL-1707-1710_0107213 | 401/402, 403, 901 |
| DTX-0670 | | Quectel 2023 Annual Financial Report final | QTL-1707-1710_0107214 | QTL-1707-1710_0107224 | 401/402, 403, 901 |
| DTX-0671 | | Quectel 2023 Q1-Financial-Report | QTL-1707-1710_0107225 | QTL-1707-1710_0107233 | 401/402, 403, 901 |
| DTX-0672 | | Quectel 2023 Q3 Financial Statement57 | QTL-1707-1710_0107234 | QTL-1707-1710_0107242 | 401/402, 403, 901 |
| DTX-0673 | | Quectel 2023 Semi-Annual Financial Report | QTL-1707-1710_0107243 | QTL-1707-1710_0107249 | 401/402, 403, 901 |
| DTX-0674 | | Quectel 2024 Annual Financial Report | QTL-1707-1710_0107250 | QTL-1707-1710_0107260 | 401/402, 403, 901 |
| DTX-0675 | | Quectel 2024 Q1 Financial Report final | QTL-1707-1710_0107261 | QTL-1707-1710_0107269 | 401/402, 403, 901 |
| DTX-0676 | | Quectel 2024 Q3 Financial Report | QTL-1707-1710_0107270 | QTL-1707-1710_0107279 | 401/402, 403, 901 |
| DTX-0677 | | Quectel 2024 Semi-Annual Financial Report | QTL-1707-1710_0107280 | QTL-1707-1710_0107289 | 401/402, 403, 901 |
| DTX-0678 | | Quectel 2025 Q1 Financial Report | QTL-1707-1710_0107290 | QTL-1707-1710_0107298 | 401/402, 403, 901 |
| DTX-0679 | | Quectel 2025 Q3 Financial Report | QTL-1707-1710_0107299 | QTL-1707-1710_0107308 | 401/402, 403, 901 |
| DTX-0680 | | Quectel 2025 Semi-Annual Financial Report | QTL-1707-1710_0107309 | QTL-1707-1710_0107318 | 401/402, 403, 901 |
| DTX-0681 | 11/06/23 | Quectel ETSI ISLD-202310-064 | QTL-1707-1710_0107462 | QTL-1707-1710_0107466 | 401/402, 403, 802, 901 |
| DTX-0682 | 11/06/23 | Quectel ETSI ISLD-202311-009 | QTL-1707-1710_0107467 | QTL-1707-1710_0107472 | 401/402, 403, 802, 901 |
| DTX-0683 | 05/31/24 | Quectel ETSI ISLD-202405-030 | QTL-1707-1710_0107473 | QTL-1707-1710_0107475 | 401/402, 403, 802, 901 |
| DTX-0684 | 05/31/24 | Quectel ETSI ISLD-202405-037 | QTL-1707-1710_0107476 | QTL-1707-1710_0107478 | 401/402, 403, 802, 901 |
| DTX-0685 | 06/10/25 | Quectel ETSI ISLD-202505-042 | QTL-1707-1710_0107479 | QTL-1707-1710_0107481 | 401/402, 403, 802, 901 |
| DTX-0686 | 12/27/21 | Quectel ETSI ISLD-202112-116 | QTL-1707-1710_0107482 | QTL-1707-1710_0107483 | 401/402, 403, 802, 901 |
| DTX-0687 | 12/23/22 | Quectel ETSI ISLD-202212-062 | QTL-1707-1710_0107484 | QTL-1707-1710_0107485 | 401/402, 403, 802, 901 |
| DTX-0688 | 12/23/22 | Quectel ETSI ISLD-202212-063 | QTL-1707-1710_0107486 | QTL-1707-1710_0107487 | 401/402, 403, 802, 901 |
| DTX-0689 | 11/06/23 | Quectel ETSI ISLD-202310-051 | QTL-1707-1710_0107488 | QTL-1707-1710_0107490 | 401/402, 403, 802, 901 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0690 | 11/06/23 | Quectel ETSI ISLD-202310-064 | QTL-1707-1710_0107491 | QTL-1707-1710_0107495 | 401/402, 403, 802, 901 |
| DTX-0691 | 11/06/23 | Quectel ETSI ISLD-202311-009 | QTL-1707-1710_0107496 | QTL-1707-1710_0107501 | 401/402, 403, 802, 901 |
| DTX-0692 | 05/31/24 | Quectel ETSI ISLD-202405-030 | QTL-1707-1710_0107502 | QTL-1707-1710_0107504 | 401/402, 403, 802, 901 |
| DTX-0693 | 05/31/24 | Quectel ETSI ISLD-202405-037 | QTL-1707-1710_0107505 | QTL-1707-1710_0107507 | 401/402, 403, 802, 901 |
| DTX-0694 | 05/31/24 | Quectel ETSI ISLD-202405-039 | QTL-1707-1710_0107508 | QTL-1707-1710_0107511 | 401/402, 403, 802, 901 |
| DTX-0695 | 05/31/24 | Quectel ETSI ISLD-202405-053 | QTL-1707-1710_0107512 | QTL-1707-1710_0107514 | 401/402, 403, 802, 901 |
| DTX-0696 | 08/07/24 | Quectel ETSI ISLD-202408-002 | QTL-1707-1710_0107515 | QTL-1707-1710_0107518 | 401/402, 403, 802, 901 |
| DTX-0697 | 08/07/24 | Quectel ETSI ISLD-202408-003 | QTL-1707-1710_0107519 | QTL-1707-1710_0107521 | 401/402, 403, 802, 901 |
| DTX-0698 | 08/07/24 | Quectel ETSI ISLD-202408-004 | QTL-1707-1710_0107522 | QTL-1707-1710_0107524 | 401/402, 403, 802, 901 |
| DTX-0699 | 08/07/24 | Quectel ETSI ISLD-202408-005 | QTL-1707-1710_0107525 | QTL-1707-1710_0107527 | 401/402, 403, 802, 901 |
| DTX-0700 | 03/31/25 | Quectel ETSI ISLD-202502-002 | QTL-1707-1710_0107528 | QTL-1707-1710_0107530 | 401/402, 403, 802, 901 |
| DTX-0701 | 03/31/25 | Quectel ETSI ISLD-202502-003 | QTL-1707-1710_0107531 | QTL-1707-1710_0107533 | 401/402, 403, 802, 901 |
| DTX-0702 | 04/01/25 | Quectel ETSI ISLD-202503-062 | QTL-1707-1710_0107534 | QTL-1707-1710_0107536 | 401/402, 403, 802, 901 |
| DTX-0703 | 04/01/25 | Quectel ETSI ISLD-202504-001 | QTL-1707-1710_0107537 | QTL-1707-1710_0107539 | 401/402, 403, 802, 901 |
| DTX-0704 | 04/01/25 | Quectel ETSI ISLD-202504-002 | QTL-1707-1710_0107540 | QTL-1707-1710_0107542 | 401/402, 403, 802, 901 |
| DTX-0705 | 04/01/25 | Quectel ETSI ISLD-202504-003 | QTL-1707-1710_0107543 | QTL-1707-1710_0107545 | 401/402, 403, 802, 901 |
| DTX-0706 | 04/01/25 | Quectel ETSI ISLD-202504-004 | QTL-1707-1710_0107546 | QTL-1707-1710_0107548 | 401/402, 403, 802, 901 |
| DTX-0707 | 05/13/25 | Quectel ETSI ISLD-202504-014 | QTL-1707-1710_0107549 | QTL-1707-1710_0107551 | 401/402, 403, 802, 901 |
| DTX-0708 | 05/12/25 | Quectel ETSI ISLD-202505-013 | QTL-1707-1710_0107552 | QTL-1707-1710_0107554 | 401/402, 403, 802, 901 |
| DTX-0709 | 08/07/25 | Quectel ETSI ISLD-202505-017 | QTL-1707-1710_0107555 | QTL-1707-1710_0107559 | 401/402, 403, 802, 901 |
| DTX-0710 | 06/10/25 | Quectel ETSI ISLD-202505-042 | QTL-1707-1710_0107560 | QTL-1707-1710_0107562 | 401/402, 403, 802, 901 |
| DTX-0711 | 08/07/25 | Quectel ETSI ISLD-202508-010 | QTL-1707-1710_0107563 | QTL-1707-1710_0107572 | 401/402, 403, 802, 901 |
| DTX-0712 | 08/31/25 | Quectel ETSI ISLD-202508-076 | QTL-1707-1710_0107573 | QTL-1707-1710_0107577 | 401/402, 403, 802, 901 |
| DTX-0713 | 08/31/25 | Quectel ETSI ISLD-202508-102 | QTL-1707-1710_0107578 | QTL-1707-1710_0107599 | 401/402, 403, 802, 901 |
| DTX-0714 | 11/03/25 | Quectel ETSI ISLD-202511-001 | QTL-1707-1710_0107600 | QTL-1707-1710_0107616 | 401/402, 403, 802, 901 |
| DTX-0715 | | Quectel SEP Playbook V8 | QTL-1707-1710_0107617 | QTL-1707-1710_0107629 | |
| DTX-0716 | | Qualcomm Aware EG915QA-NA Spec and Timeline | QTL-1707-1710_0115120 | QTL-1707-1710_0115122 | 401/402, 403, 802, 901 |
| DTX-0717 | | Qualcomm Aware EG916QA-GL Spec and Timeline | QTL-1707-1710_0115123 | QTL-1707-1710_0115125 | 401/402, 403, 802, 901 |
| DTX-0718 | 01/30/26 | Representative Products Costed BOMs | QTL-1707-1710_0155584 | QTL-1707-1710_0155584 | 401/402, 403, 901 |
| DTX-0719 | | Sisvel I Sisvel Cellular IoT Licensing  Connecting Innovation - web.archive.org | QTL-1707-1710_0156243 | QTL-1707-1710_0156245 | 802, 803, 703, 403, 401/402 |
| DTX-0720 | | Sisvel I Sisvel Cellular IoT Licensing  Connecting Innovation - web.archive.org | QTL-1707-1710_0156246 | QTL-1707-1710_0156248 | 802, 803, 703, 403, 401/402 |
| DTX-0721 | | Sisvel Cellular IoT Licenses  Connecting Innovation - www.sisvel.com | QTL-1707-1710_0156249 | QTL-1707-1710_0156251 | 802, 803, 703, 403, 401/402 |
| DTX-0722 | | Sisvel Cellular IoT Licenses  Connecting Innovation - www.sisvel.com | QTL-1707-1710_0156252 | QTL-1707-1710_0156257 | 802, 803, 703, 403, 401/402 |
| DTX-0723 | 05/13/24 | Sisvel \| New, lower royalty rates announced for Sisvel Cellular IoT patent pool | QTL-1707-1710_0156258 | QTL-1707-1710_0156264 | 802, 803, 703, 403, 401/402 |
| DTX-0724 | | Sisvel \| Sisvel Cellular IoT Licenses  Connecting Innovation patents | QTL-1707-1710_0156265 | QTL-1707-1710_0156269 | 802, 803, 703, 403, 401/402 |
| DTX-0725 | | Sisvel \| Sisvel Cellular IoT Licenses  Connecting Innovation | QTL-1707-1710_0156270 | QTL-1707-1710_0156274 | 802, 803, 703, 403, 401/402 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0726 | | Sisvel Cellular IoT - Patent List | QTL-1707-1710_0156275 | QTL-1707-1710_0156351 | 802, 803, 703, 403, 401/402 |
| DTX-0727 | | 3GPP TR 21.905 | QTL-1707-1710_0157047 | QTL-1707-1710_0157110 | 401/402, 403 |
| DTX-0728 | | Despite China's Failure to Recover in Q3 2022, Global Cellular IoT Module Market Experiences Growth | QTL-1707-1710_0157121 | QTL-1707-1710_0157125 | 401/402, 403, 901, 802, 602 |
| DTX-0729 | | Global Cellular IoT Module Market Shows Early Signs of Recovery | QTL-1707-1710_0157126 | QTL-1707-1710_0157129 | 401/402, 403, 901, 802, 602 |
| DTX-0730 | | Global Cellular IoT Module Revenue Grows 58% YoY in Q4 2021; 5G, 4G Cat 1 Modules Fastest Growing | QTL-1707-1710_0157130 | QTL-1707-1710_0157135 | 401/402, 403, 901, 802, 602 |
| DTX-0731 | | Global Cellular IoT Module Shipments Cross 100 Million for First Time in Q2 2021 | QTL-1707-1710_0157136 | QTL-1707-1710_0157141 | 401/402, 403, 901, 802, 602 |
| DTX-0732 | | Global Cellular IoT Module Shipments Grew 20% YoY in Q2 2022 | QTL-1707-1710_0157142 | QTL-1707-1710_0157148 | 401/402, 403, 901, 802, 602 |
| DTX-0733 | | Global Cellular IoT Module Shipments Grow 70% YoY in Q3 2021; 5G Module Shipments up 700% YoY | QTL-1707-1710_0157149 | QTL-1707-1710_0157153 | 401/402, 403, 901, 802, 602 |
| DTX-0734 | | Global Cellular IoT Module Shipments Record First-ever Annual Decline | QTL-1707-1710_0157154 | QTL-1707-1710_0157157 | 401/402, 403, 901, 802, 602 |
| DTX-0735 | | Global Cellular IoT Module Shipments Up 10% YoY in Q3 2025 With India Leading Market Expansion | QTL-1707-1710_0157158 | QTL-1707-1710_0157162 | 401/402, 403, 901, 802, 602 |
| DTX-0736 | | Global Cellular IoT Module Shipments up 50% YoY in Q1 2021 as Demand for 5G, LTE-Cat 1 Modules Soars | QTL-1707-1710_0157163 | QTL-1707-1710_0157167 | 401/402, 403, 901, 802, 602 |
| DTX-0737 | | Global IoT Module Shipments Rise 10% YoY in 2024 as Market Swings to Growth | QTL-1707-1710_0157168 | QTL-1707-1710_0157171 | 401/402, 403, 901, 802, 602 |
| DTX-0738 | | NB-IoT Module Share in Cellular IoT Module Shipments at Record 30% in Q3 2020 | QTL-1707-1710_0157172 | QTL-1707-1710_0157175 | 401/402, 403, 901, 802, 602 |
| DTX-0739 | | Quectel Widens Gap with Competition in Global Cellular IoT Module Market During COVID-hit Q2 2020 | QTL-1707-1710_0157176 | QTL-1707-1710_0157180 | 401/402, 403, 901, 802, 602 |
| DTX-0740 | | Quectel, Fibocom & Sunsea Capture Half the Cellular IoT Module Market in Q1 2022 | QTL-1707-1710_0157181 | QTL-1707-1710_0157186 | 401/402, 403, 901, 802, 602 |
| DTX-0741 | | Rising Demand in China, India Fuels Global Cellular IoT Module Growth | QTL-1707-1710_0157187 | QTL-1707-1710_0157190 | 401/402, 403, 901, 802, 602 |
| DTX-0742 | | AT&T 3G FAQs | QTL-1707-1710_0157193 | QTL-1707-1710_0157198 | 401/402, 403, 901, 802, 602 |
| DTX-0743 | 05/11/26 | Quectel Complaint, 1:26-cv-01605 DDC | QTL-1707-1710_0165158 | QTL-1707-1710_0165239 | 401/402, 403, 802, 901 |
| DTX-0744 | 10/25/19 | Quectel Drives Intelligent Connectivity with the Latest 5G Modules (https://www.quectel.com/news-and-pr/quectel-drives-intelligent-connectivity-with-the-latest-5g-modules/) | | | 401/402, 403, 901, 802, 602 |
| DTX-0745 | | Quectel Company History (https://www.quectel.com/company/history/) | | | 401/402, 403, 901, 802, 602 |
| DTX-0746 | | 2G and 3G sunsets and how to prepare, Onomondo (https://onomondo.com/blog/2g-3g-sunset) | | | 401/402, 403, 901, 802, 602 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0747 | | An extended guide to NB-IoT: Practical insights for IoT projects, Onomondo (https://onomondo.com/blog/what-is-nb-iot-definitive-guide) | | | 401/402, 403, 901, 802, 602 |
| DTX-0748 | | Quectel 2025 603236 (https://static.sse.com.cn/disclosure/listedinfo/announcement/c/new/2025-08-15/603236_20250815_F1AO.pdf) | | | 401/402, 403, 901, 802, 602 |
| DTX-0749 | | Quectel Archives: Products (https://www.quectel.com/product) | | | 401/402, 403, 802, 901 |
| DTX-0750 | | Acer 2017 Annual Report https://images.acer.com/is/content/acer/2017_Acer_AnnualReport_ENpdf ) | | | 401/402, 403, 901, 802, 602 |
| DTX-0751 | | MobiConnect Box 5G Features (https://mobiwire.com/wp-content/uploads/2026/04/CC51.pdf) | | | 401/402, 403, 901, 802, 602 |
| DTX-0752 | | Panasonic Sells Nearly 3,500 Tech Patents to Dominion Harbor, Bloomberg (https://news.bloomberglaw.com/ip-law/panasonic-sells-nearly-3-500-tech-patents-to-dominion-harbor) | | | 401/402, 403, 901, 802, 602 |
| DTX-0753 | | Statistical notes for clinical researchers: Understanding standard deviations and standard errors, NLM (https://pmc.ncbi.nlm.nih.gov/articles/PMC3843040) | | | 401/402, 403, 901, 802, 602 |
| DTX-0754 | | 4G-5G SEP Landscape – Patents Declared Through Dec 31, 2021, Tech + IP Advisory (https://static1.squarespace.com/static/5e77c2b245630059ae9ee9d9/t/6298071d857bc74ef9e20570/1654130) | | | 401/402, 403, 901, 802, 602 |
| DTX-0755 | | Acer Graphics Cards (https://store.acer.com/en-us/components/graphics-cards) | | | 401/402, 403, 901, 802, 602 |
| DTX-0756 | | Acer Monitors (https://store.acer.com/en-us/monitors) | | | 401/402, 403, 901, 802, 602 |
| DTX-0757 | | Acer Peripherals (https://store.acer.com/en-us/peripherals) | | | 401/402, 403, 901, 802, 602 |
| DTX-0758 | | Mundo Reader Profile (https://toysfromspain.com/companie/product/mundo-reader-s-l/) | | | 401/402, 403, 901, 802, 602 |
| DTX-0759 | | Sisvel License Terms (Archived) (https://web.archive.org/web/20231205135854/https://www.sisvel.com/licensing-programmes/iot/cellular-iot/#tab-licence-terms) | | | 401/402, 403, 802, 901 |
| DTX-0760 | | Archos Yuko Webpage (https://www.archos.com/yuko) | | | 401/402, 403, 901, 802, 602 |
| DTX-0761 | | Asbis Home Page (https://www.asbis.com) | | | 401/402, 403, 901, 802, 602 |
| DTX-0762 | | Asbis Robotic Solutions (https://www.asbis.com/asbis-robotic-solutions) | | | 401/402, 403, 901, 802, 602 |
| DTX-0763 | | Asbis Consumer Distribution (https://www.asbis.com/consumer-distribution) | | | 401/402, 403, 901, 802, 602 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0764 | | Asbis Investments (https://www.asbis.com/corporate-venture-investments) | | | 401/402, 403, 901, 802, 602 |
| DTX-0765 | | Asbis AI, Data Center & Enterprise Infrastructure Solutions (https://www.asbis.com/ict-iot-solutions-to-enterprises) | | | 401/402, 403, 901, 802, 602 |
| DTX-0766 | | Asbis IT Distribution (https://www.asbis.com/it-distribution) | | | 401/402, 403, 901, 802, 602 |
| DTX-0767 | | Asbis Premium Retail Business Unit (https://www.asbis.com/premium-retail) | | | 401/402, 403, 901, 802, 602 |
| DTX-0768 | | Asbis Sustainable Solutions for Electronics (https://www.asbis.com/trade-in-business-unit) | | | 401/402, 403, 901, 802, 602 |
| DTX-0769 | | 5G: World's first commercial services promise 'great leap, BBC (https://www.bbc.com/news/business-47796528) | | | 401/402, 403, 901, 802, 602 |
| DTX-0770 | | About Dominion Harbor (https://www.dominionharbor.com/about) | | | 401/402, 403, 901, 802, 602 |
| DTX-0771 | | Dominion Harbor Portfolios (https://www.dominionharbor.com/portfolio) | | | 401/402, 403, 901, 802, 602 |
| DTX-0772 | | Doro Hemma Doorbell (https://www.doro.com/en-gb/why-doro/new-categories/doro-hemma-doorbell/) | | | 401/402, 403, 901, 802, 602 |
| DTX-0773 | | ETSI History (https://www.etsi.org/about/history) | | | 401/402, 403, 901, 802, 602 |
| DTX-0774 | | Lexis Nexis Cellular IoT Report (https://www.lexisnexisip.com/cellular-iot-report/#download) | | | 401/402, 403, 901, 802, 602 |
| DTX-0775 | | Acer suspends its smartphone business in India: report, Medianama (https://www.medianama.com/2016/12/223-acer-suspends-smartphone-india) | | | 401/402, 403, 901, 802, 602 |
| DTX-0776 | | Quectel Product Selector (https://www.quectel.com/product-selector/?_sft_product_cat=wi-fi-bluetooth-modules) | | | 401/402, 403, 901, 802, 602 |
| DTX-0777 | | Sisvel Cellular IoT pool licence covers over half of relevant SEPs, new data confirms, Sisvel (https://www.sisvel.com/insights/sisvel-cellular-iot-pool-licence-covers-over-half-of-relevant-seps-new-data) | | | 401/402, 403, 901, 802, 602 |
| DTX-0778 | | Sisvel launches its Cellular IoT Patent Pool, Sisvel (https://www.sisvel.com/news/sisvel-launches-its-cellular-iot-patent-pool) | | | 401/402, 403, 901, 802, 602 |
| DTX-0779 | | Where 5G Technology Has Been Deployed, Statista (https://www.statista.com/chart/23194/5g-networks-deployment-world-map/?srsltid=AfmBOoqRvI4tc-uR2YHaZeitmNM3rgUKu3ljVzfXpJZUs1HQlE-Eym1s) | | | 401/402, 403, 901, 802, 602 |
| DTX-0780 | | PCT – The International Patent System, WIPO (https://www.wipo.int/en/web/pct-system) | | | 401/402, 403, 901, 802, 602 |
| DTX-0781 | | About Concur IP (https://concurip.com/about.php) | | | 401/402, 403, 901, 802, 602 |

| | | | | | |
|---|---|---|---|---|---|
| DTX-0782 | | Morgan Stanley: Apple may sell 190 million iPhones next year, CNN (Archived) (https://web.archive.org/web/20111215145849/http://tech.fortune.cnn.com/2011/12/15/morgan-stanley-apple-may-sell-190-million-iphones-next-year) | | | 401/402, 403, 901, 802, 602 |
| DTX-0783 | | Shipments of cellular IoT modules reached 237 million units in 2017, Berg Insight (https://www.berginsight.com/shipments-of-cellular-iot-modules-reached-237-million-units-in-2017) | | | 401/402, 403, 901, 802, 602 |
| DTX-0784 | | Sisvel License Terms (https://www.sisvel.com/licensing-programmes/iot/cellular-iot/#tab-licence-terms) | | | 401/402, 403, 802, 901 |
| DTX-0785 | | Smartphone and tablet stats: what's really going on in the mobile market?, The Guardian (https://www.theguardian.com/technology/appsblog/2011/aug/01/smartphone-stats-2011) | | | 401/402, 403, 901, 802, 602 |

**Objection Key**

| Abbreviation | Description | Underlying Rule |
|---|---|---|
| 103 | Mischaracterizes testimony or document | Fed. R. Evid. 103(c), 611(a) |
| 104 | Preliminary Issue | FRE 104 |
| 105 | Limited admissibility | FRE 105 |
| 106 | Exhibit/designation is incomplete. | Fed. R. Evid. 106 |
| 401/402 | Exhibit/designation is not relevant. | Fed. R. Evid. 402 |
| 403 | The probative value of the exhibit/designation is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or by considerations of delay, waste of time, or needless presentation of cumulative evidence. | Fed. R. Evid. 403 |
| 404 | Exhibit/designation is inappropriate character evidence. | Fed. R. Evid. 404-406 |
| 408 | Exhibit/designation relates to inadmissible settlement negotiations. | Fed. R. Evid. 408 |
| 602 | Exhibit/designation lacks foundation or is from someone lacking personal knowledge (i.e., speculative). | Fed. R. Evid. 602 and 901(a) |
| 611 | | Fed. R. Evid. 611 |
| 611(Arg) | Question in designation is argumentative. | Fed. R. Evid. 611(a) |
| 611(AF) | Question in designation assumes facts not in evidence. | Fed. R. Evid. 611(a) and 103(c) |
| 611(Comp) | Question in designation is compound. | Fed. R. Evid. 611(a) |
| 611(Counter) | Improper Counter-designation | Fed. R. Evid. 611(b); Fed. R. Civ. P. 26(a)(3)(A)(ii) |
| 611(Har) | Designation is harassing or embarrassing. | Fed. R. Evid. 611(a) |
| 611(Lead) | Question in designation is an improper leading question. | Fed. R. Evid. 611(c) |
| 611(NR) | Answer in designation is non-responsive. | Fed. R. Evid. 611(a) |
| 611(VA) | Question in designation is vague, ambiguous, indefinite, or calls for a narrative. | Fed. R. Evid. 611(a) |
| 701 | Exhibit/designation is improper opinion testimony from a lay witness. | Fed. R. Evid. 602 and 701 |
| 702 | Exhibit/designation is an improper expert opinion. | Fed. R. Evid. 602 and 702 |
| 703 | Probative value not substantially outweighed by prejudicial effect | Fed. R. Evid. 703 |
| 802 | Exhibit/designation is inadmissible hearsay. | Fed. R. Evid. 802 |
| 805 | Inadmissible hearsay within hearsay. | Fed. R. Evid. 805 |

| | | |
|---|---|---|
| 901 | Authentication | Fed. R. Evid. 901 |
| CO | Interpreter and/or attorney colloquy | |
| Daubert | Exhibit/designation is covered by a pending Daubert motion. | |
| Description | Insufficient description | |
| ERR | Answer has been corrected by a subsequent errata. | |
| ILC | Exhibit/designation is an improper legal conclusion. | Fed. R. Evid. 602, 701, and 704 |
| IMP | Improper use of depositions | Fed. R. Civ. P. 32 |
| MIL | Subject to MIL | |
| MSJ | Subject to motion for summary judgment | |
| MTS | Exhibit/designation is covered by a Motion to Strike. | |
| NE | Not evidence | |
| NP | Not Produced | |
| OS | Outside the scope of the witness' designation. | |

# EXHIBIT 8

JOINT EXHIBIT LIST

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0001 | Baker Ex.11 | U.S. Patent No. 7,831,271 (Baker) | 2010/11/09 | KPNV0005173 - KPNV0005179 |
| JTX-0002 | Baker Ex.10 | U.S. Patent No. 7,944,935 (Bucknell) | 2011/05/27 | KPNV0005180 - KPNV0005186 |
| JTX-0003 | | File History for U.S. Patent No. 7,831,271 (Baker, et al.) | 2010/11/09 | KPNV0003020 - KPNV0003274 |
| JTX-0004 | | File History for U.S. Patent No. 7,944,935 (Bucknell, et al.) | 2011/05/17 | KPNV0003275 - KPNV0003488 |
| JTX-0005 | Baker Ex.06 | U.S. Patent No. 8,195,216 (Baker) | 2012/06/05 | N/A |
| JTX-0006 | Baker Ex.07; Scott Ex. 13 | U.S. Patent No. 7,089,028 (Baker) | 2006/08/08 | N/A |
| JTX-0007 | Baker Ex.08 | U.S. Patent No. 9,178,577 (Baker) | 2015/11/03 | N/A |
| JTX-0008 | Baker Ex.09 | U.S. Patent No. 9,635,599 (Moulsley) | 2017/04/25 | N/A |
| JTX-0009 | | Introducing 3GPP from https://www.3gpp.org/about-us/introducing-3gpp | 2026/04/02 | DISTLER_001228 - DISTLER_001232 |
| JTX-0010 | | ETSI TS 136 523-1 V.16.7.0 (2021-02) Technical Specification, LTE; Evolved Universal Terrestrial Radio Access (E-UTRA) and Evolved Packet Core (EPC); User Equipment (UE) conformance specification; Part 1: Protocol conformance specification (3GPP TS 36.523-1 version 16.7.0 Release 16) | 2021/02/00 | JACKSON-0061023 - JACKSON-0067879 |
| JTX-0011 | | 3GPP TSG-RAN WG2#62bis, Warsaw, Poland, June 30-July 4, 2008, R2-083140, from Ericsson, Agenda Item 6.1.1.04, Document for Discussion and Decision | 2008/06/30 | ITC1240-0006809 - ITC1240-0006812 |
| JTX-0012 | | Final Initial Determination from ITC Investigation No. 337-TA-1240 | 2022/04/01 | ITC-RECORD-0022936 - ITC-RECORD-0023261 |
| JTX-0013 | Scott Ex. 11 | ETSI IPR Information Statement and Licensing Declaration by Koninklijke Philips N.V. | 2009/11/26 | KPNV0002292 - KPNV0002307 |
| JTX-0014 | | GB Patent 0318735 | 2003/08/11 | KPNV0002355 - KPNV0002362 |
| JTX-0015 | | GB Patent 0410905 | 2003/08/11 | KPNV0002363 - KPNV0002368 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0016 | | PCT/IB05/053618, GB 042918.1 | 2004/11/11 | KPNV0002387 - KPNV0002405 |
| JTX-0017 | | Change Request for 3GPP TSG-RAN WG1 Meeting #33, New York, USA, 25-29 August 2003, 25.214 CR 328, Rev. 2, Version 5.5.0, R1-030934 | N/A | KPNV0002438 - KPNV0002440 |
| JTX-0018 | | 3GPP TSG RAN WG1 Meeting #35, Lisbon, Portugal, 17-21 November, 2003, Draft R1-031163 | 2003/11/17 | KPNV0002441 - KPNV0002502 |
| JTX-0019 | | 3GPP TS 36.321 V11.0.0 (2012-09) Technical Specification, 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); Medium Access Control (MAC) protocol specification (Release 11) | 2005/01/10 | KPNV0007424 - KPNV0007478 |
| JTX-0020 | | Cox, "An Introduction To LTE," Second Edition | 2014/00/00 | KPNV0007781 - KPNV0008267 |
| JTX-0021 | | ETSI TS 125 214 V5.11.0 (2005-06) Technical Specification for Universal Mobile Telecommunications System (UMTS); Physical layer procedures (FDD) (3GPP TS 25.214 version 5.11.0 Release 5) | 2006/06/00 | KPNV0009477 - KPNV0009529 |
| JTX-0022 | | UMTS/LTE Patent License Agreement between Philips and AK-TEK | 2019/07/01 | KPNV0017746 - KPNV0017777 |
| JTX-0023 | | Portable Device and UMTS/LTE Master Agreement between Philips and ASUSTek | 2020/12/31 | KPNV0017778 - KPNV0017787 |
| JTX-0024 | | Portable Device Patent Stipulation of Dismissal Agreement between Philips and ASUSTek | 2020/12/31 | KPNV0017788 - KPNV0017827 |
| JTX-0025 | | UMTS/LTE Terminal Patent License and Stipulation of Dismiss Agreement between Philips and ASUSTek | 2020/12/31 | KPNV0017828 - KPNV0017863 |
| JTX-0026 | | Wireless Patent License Agreement between Philips and Sharp and Apple | 2011/12/19 | KPNV0017897 - KPNV0017927 |

JOINT EXHIBIT LIST

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0027 | | Wireless Patent License Agreement between Philips and Apple | 2012/01/09 | KPNV0017928 - KPNV0017971 |
| JTX-0028 | | UMTS/LTE Patent License Agreement between Philips and Archos | 2017/03/31 | KPNV0018105 - KPNV0018138 |
| JTX-0029 | | UMTS/LTE Patent License Agreement between Philips and Asbisc | 2016/03/01 | KPNV0018139 - KPNV0018170 |
| JTX-0030 | | Global Patent License Agreement between Apple and Philips | 2020/10/01 | KPNV0017972 - KPNV0018104 |
| JTX-0031 | | Cellular Handset Patent License Agreement between Philips and BLU | 2024/04/01 | KPNV0018447 - KPNV0018490 |
| JTX-0032 | | UMTS/LTE Terminal Patent License Agreement between Philips and Benq | 2018/06/01 | KPNV0018491 - KPNV0018522 |
| JTX-0033 | | UMTS/LTE Terminal Patent License Agreement between Philips and Blackberry | 2014/01/01 | KPNV0018523 - KPNV0018552 |
| JTX-0034 | | UMTS/LTE Terminal Patent License Agreement between Philips and Century Mobile | 2018/11/01 | KPNV0018553 - KPNV0018583 |
| JTX-0035 | | UMTS/LTE Terminal Patent License Agreement between Philips and Chin Jheng | 2023/04/01 | KPNV0018584 - KPNV0018627 |
| JTX-0036 | | UMTS/LTE Terminal Patent License Agreement between Philips and Doro AB | 2017/12/01 | KPNV0018628 - KPNV0018658 |
| JTX-0037 | | UMTS/LTE Terminal Patent License Agreement between Philips and Emporia Telecom | 2018/07/01 | KPNV0018659 - KPNV0018668 |
| JTX-0038 | | UMTS/LTE Terminal Patent Settlement Agreement between Philips and Fuhsiang Marketing | 2018/07/10 | KPNV0018689 - KPNV0018712 |
| JTX-0039 | | UMTS/LTE Terminal Patent License Agreement between Philips and Gigaset | 2018/10/01 | KPNV0018713 - KPNV0018744 |
| JTX-0040 | | Patent License Agreement between Philips and Google | 2019/01/01 | KPNV0018745 - KPNV0018777 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0041 | | Patent License Agreement between Philips and Google | 2025/06/30 | KPNV0018778 - KPNV0018846 |
| JTX-0042 | | UMTS/LTE Terminal Patent License Agreement between Philips and HTC | 2019/12/23 | KPNV0018847 - KPNV0018873 |
| JTX-0043 | | Portable Device Patent License and Stipulation of Dismissal Agreement between Philips and HTC | 2019/12/23 | KPNV0018874 - KPNV0018904 |
| JTX-0044 | Scott Ex. 07 | Portable Device and UMTS/LTE Master Agreement between Koninklijke Philips N.V. and HTC Corporation | 2019/12/23 | KPNV0018905 - KPNV0018914 |
| JTX-0045 | | UMTS/LTE Terminal Patent License Agreement between Philips and Hesdo | 2021/07/01 | KPNV0018915 - KPNV0018949 |
| JTX-0046 | | Patent License Agreement between Philips and Huawei | 2019/02/15 | KPNV0018950 - KPNV0018961 |
| JTX-0047 | | UMTS/LTE Terminal Patent License Agreement between Philips and Huawei | 2019/02/15 | KPNV0018965 - KPNV0018984 |
| JTX-0048 | | UMTS/LTE Terminal Patent License Agreement between Philips and Hugiga | 2017/12/28 | KPNV0018985 - KPNV0019015 |
| JTX-0049 | | UMTS/LTE Terminal Patent License Agreement between Philips and Imatch | 2018/09/11 | KPNV0019016 - KPNV0019039 |
| JTX-0050 | | UMTS/LTE Terminal Patent License Agreement between Philips and JME | 2015/07/01 | KPNV0019040 - KPNV0019071 |
| JTX-0051 | | Cellular Handset Patent License Agreement between Philips and Kyocera | 2024/09/13 | KPNV0019072 - KPNV0019128 |
| JTX-0052 | | UMTS/LTE Terminal Patent License, Release and Peace Agreement between Philips and LG Electronics | 2016/12/01 | KPNV0019129 - KPNV0019138 |
| JTX-0053 | | UMTS/LTE/5G Terminal Patent Release Agreement between Philips and LGE | 2021/12/30 | KPNV0019139 - KPNV0019147 |
| JTX-0054 | | UMTS/LTE Terminal Patent License Agreement between Philips and Lechpol | 2018/10/01 | KPNV0019148 - KPNV0019179 |
| JTX-0055 | | 3G/4G Terminal Patent License Agreement between Philips, Lenovo and Motorola | 2022/03/30 | KPNV0019180 - KPNV0019209 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0056 | | Touch-Enabled Device License and Stipulation of Dismissal Agreement between Philips and Microsoft | 2019/12/30 | KPNV0019223 - KPNV0019247 |
| JTX-0057 | | Bd/DVD Patent License Agreement between Philips and Microsoft | 2019/12/30 | KPNV0019248 - KPNV0019281 |
| JTX-0058 | | UMTS/LTE Terminal Patent License, Release and Peace Agreement between Philips and Microsoft | 2019/12/30 | KPNV0019282 - KPNV0019305 |
| JTX-0059 | | UMTS/LTE Terminal Patent License, Release and Peace Agreement between Philips and Mobiwire | 2017/07/01 | KPNV0019306 - KPNV0019337 |
| JTX-0060 | | Master Settlement Agreement between Philips, Motorola, Sharp (Part 1) | 2010/12/01 | KPNV0019338 - KPNV0019410 |
| JTX-0061 | | Exhibit 8 - Sharp Motorola 2003 Cellular Essentials Properties Cross License Agreement Amended to Master Settlement Agreement between Philips, Motorola, Sharp | 2010/12/01 | KPNV0019411 - KPNV0019484 |
| JTX-0062 | | UMTS/LTE Terminal Patent License Agreement between Philips and Mundo Reader | 2017/01/01 | KPNV0019485 - KPNV0019515 |
| JTX-0063 | | Cellular Terminal Patent License Agreement between Philips and Guangdong | 2024/01/01 | KPNV0019516 - KPNV0019558 |
| JTX-0064 | Scott Ex. 15 | Memo from J. Haken to A. Westerlaken re Qualcomm patent license | 1998/03/23 | KPNV0019559 - KPNV0019592 |
| JTX-0065 | Scott Ex. 16 | Letter to Qualcomm from Philips re Patent Agreement dated February 26, 1998 (the "Agreement") by and between QUALCOMM Incorporated ('QUALCOMM") and Koninklijke Philips Electronics N.V. ("Philips") and U.S. Philips Corporation ("USPC") | 2008/08/04 | KPNV0019593 |
| JTX-0066 | | UMTS Terminal Settlement Agreement between Philips and Sagem | 2010/02/08 | KPNV0019594 - KPNV0019615 |
| JTX-0067 | | UMTS Terminal Patent License Agreement between Philips and Sagem | 2010/01/29 | KPNV0019616 - KPNV0019640 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0068 | | Patent Cross License Agreement between Philips and Samsung | 2018/11/14 | KPNV0019641 - KPNV0019689 |
| JTX-0069 | | Letter to Samsung from Philips re Cross License Agreement | 2023/06/30 | KPNV0019690 - KPNV0019698 |
| JTX-0070 | | Wireless Patent License Agreement between Philips and Sharp and Apple | 2010/10/01 | KPNV0019699 - KPNV0019729 |
| JTX-0071 | | UMTS/LTE Terminal Patent License Agreement between Philips and Shenzhen | 2018/09/01 | KPNV0019730 - KPNV0019761 |
| JTX-0072 | | Settlement and License Agreement between Philips and Sony | 2012/09/14 | KPNV0019762 - KPNV0019768 |
| JTX-0073 | | UMTS/LTE Terminal Patent License Agreement between Philips and Huizhou TCL Mobile Communication Co., Ltd. | 2020/11/19 | KPNV0019772 - KPNV0019813 |
| JTX-0074 | | UMTS/LTE Terminal Patent Settlement Agreement between Philips and Tecom | 2018/10/18 | KPNV0019845 - KPNV0019868 |
| JTX-0075 | | UMTS/LTE Terminal Patent License Agreement between Philips and Telgo | 2019/01/03 | KPNV0019869 - KPNV0019898 |
| JTX-0076 | | Settlement and Patent License Agreement between Philips and Telit | 2024/08/02 | KPNV0019899 - KPNV0019964 |
| JTX-0077 | | UMTS/LTE Terminal Patent License Agreement between Philips and Venda | 2018/03/01 | KPNV0019965 - KPNV0019996 |
| JTX-0078 | | UMTS/LTE Terminal Patent License Agreement between Philips and Wiz Smart | 2018/05/01 | KPNV0020047 - KPNV0020078 |
| JTX-0079 | | Patent License Agreement between Philips and Beijing Xiaomi | 2022/03/11 | KPNV0020079 - KPNV0020189 |
| JTX-0080 | | UMTS/LTE Terminal Patent Settlement Agreement between Philips and Yang Yi | 2018/05/24 | KPNV0020190 - KPNV0020213 |
| JTX-0081 | Eleveld Ex. 12; Pasquier Ex. 10 | Machine to Machine Module Patent License Agreement between Koninklijke Philips N.V. and U-blox AG (CX-0145) | 2018/08/01 | KPNV0020214 - KPNV0020239 |
| JTX-0082 | Pasquier Ex. 12; Eleveld Ex. 13 | Machine to Machine Module Patent License Agreement between Koninklijke Philips N.V. and U-blox AG | 2024/01/01 | KPNV0020240 - KPNV0020265 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0083 | | Email chain between Y. Feng, E. Nie, J. Zhu and D. Shang re Meeting Minutes of March 9th | 2018/06/08 | KPNV0028015 - KPNV0028031 |
| JTX-0084 | Eleveld Ex. 06; Scott Ex. 12 | Letter to ETSI from Philips re UMTS Patent Application | 2003/09/02 | KPNV0031446 - KPNV0031469 |
| JTX-0085 | Eleveld Ex. 05; Scott Ex. 10 | ETSI IPR Information Statement and Licensing Declaration by Koninklijke Philips N.V. | 2014/12/03 | KPNV0031515 - KPNV0031522 |
| JTX-0086 | | ETSI Directives Version 38 | 2018/02/08 | KPNV0044466 - KPNV0044693 |
| JTX-0087 | | ETSI Directives Version 42r1 | 2020/11/30 | KPNV0047792 - KPNV0048024 |
| JTX-0088 | | ETSI Directives, Version 22 | 2007/07/00 | KPNV0048866 - KPNV0049052 |
| JTX-0089 | | ETSI Directives, Version 46 | 2022/12/12 | KPNV0068860 - KPNV0069110 |
| JTX-0090 | | ETSI IPR Online Database - Disclaimer IPR in ETSI deliverables | N/A | KPNV0069676 |
| JTX-0091 | | ETSI About Us from https://www.etsi.org/about/about-us | 2023/04/14 | KPNV0075253 - KPNV0075258 |
| JTX-0092 | | Third Generation Partnership Project Agreement | 1998/12/04 | KPNV0079169 - KPNV0079194 |
| JTX-0093 | | Binding Offer between Koninklijke Philips N.V. and Guangdong OPPO Mobile Telecommunications Corp. | 2024/01/04 | KPNV0081489 - KPNV0081504 |
| JTX-0094 | | Cellular Terminal Patent License Agreement between Koninklijke Philips N.V. and Guangdong OPPO Mobile Telecommunications Corp., Ltd. | 2024/01/04 | KPNV0081505 - KPNV0081547 |
| JTX-0095 | | Apple Presentation "Philips - Apple Licensing Discussions" | 2020/11/17 | KPNV0098050 - KPNV0098072 |
| JTX-0096 | | Philips Presentation "Philips-Apple UMTS/LTE Commercial Discussions" | 2020/12/11 | KPNV0098074 - KPNV0098099 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0097 | Scott Ex. 06 | Email chain between J. Lin, K. Scott, G. Lin, F. Hsu, M. Hsiao re Philips/HTC: UK Proceedings | 2017/09/05 | KPNV0132554 - KPNV0132563 |
| JTX-0098 | | Spreadsheet of M2M Embedded Cellular Modules - ABI Research | N/A | KPNV0186352 |
| JTX-0099 | | ETSI/GA29(97)/SCM/03, 29th General Assembly Specially Convened Meeting, Nice, 18-19 November 1997, Document for Decision re Amendments of the ETSI interim Intellectual Property Rights Policy | 1997/08/01 | KPNV0188135 - KPNV0188140 |
| JTX-0100 | | Letter to Hugiga from Philips re UMTS/LTE Terminal Patent License Agreement | 2023/02/07 | KPNV0189988 |
| JTX-0101 | | Letter to Ak-Tek from Philips re UMTS/LTE Terminal Patent License Agreement | 2023/01/31 | KPNV0189989 |
| JTX-0102 | | Cellular Terminal Patent License Agreement between Philips and Huawei | 2025/10/28 | KPNV0189990 - KPNV0190073 |
| JTX-0103 | | Letter to Quectel, Wireless Mobility and Eagle Electronics from Philips re Philips Cellular IoT Patent Licensing Program | 2025/11/12 | KPNV0196125 - KPNV0196126 |
| JTX-0104 | | Email chain between S. Pasquier and Y. Feng re Quectel_Phlips IoT Cellular Communication Patent License | 2021/04/20 | KPNV0196177 - KPNV0196179 |
| JTX-0105 | Pasquier Ex. 15 | Spreadsheet re Royalties due by Quectel _ successive offers | N/A | KPNV0196397 |
| JTX-0106 | | Spreadsheet re UBLOX AGREEMENT RENEWAL 2024 WORKING FILE | N/A | KPNV0197022 |
| JTX-0107 | Pasquier Ex. 16 | Spreadsheet re Telit Settlement July 2024 | N/A | KPNV0197049 |
| JTX-0108 | | Letter to Gemalto from Philips re Philips GSM-AMR/UMTS/LTE Licensing Program | 2018/11/19 | KPNV0205259 - KPNV0205261 |
| JTX-0109 | Pasquier Ex. 14 | Spreadsheet re UBLOX AGREEMENT RENEWAL 2024 WORKING FILE | N/A | KPNV0205262 |
| JTX-0110 | | Spreadsheet re Running Royalty Licenses Summary | N/A | KPNV0246518 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0111 | | Philips's Presentation "GSM-AMR/UMTX/LTR M2M Philips Licensing Program" | 2018/06/13 | KPNV0246725 - KPNV0246756 |
| JTX-0112 | | ETSI Directives Version 52 | 2025/12/05 | KPNV0256455 - KPNV0256738 |
| JTX-0113 | | Letter to Philips from Quectel Wireless Solutions Co., Ltd. re Response to Philips's Recent Letter regarding a Non-FRAND Patent License | 2023/09/20 | QTL-1707-1710_0000004 - QTL-1707-1710_0000009 |
| JTX-0114 | | Draft Machine to Machine Module Patent License Agreement between Koninklijke Philips N.V. and Quectel Wireless Solutions Co., Ltd. | 2023/00/00 | QTL-1707-1710_0000014 - QTL-1707-1710_0000022 |
| JTX-0115 | | Quectel Product Specification RG50xQ Series IoT/M2M Optimized 5G Sub-6 GHz LGA Module, Version 1.6 | 2023/00/00 | QTL-1707-1710_0000855 - QTL-1707-1710_0000857 |
| JTX-0116 | | Quectel EC21 Series Hardware Design LTE Standard Module Series, Version 2.1 | 2024/08/03 | QTL-1707-1710_0002685 - QTL-1707-1710_0002808 |
| JTX-0117 | Zhang, Ivan Ex. 04 | Quectel Product Specification for Quectel UC20 | 2018/00/00 | QTL-1707-1710_0004539 - QTL-1707-1710_0004540 |
| JTX-0118 | | Quectel UC200A-GL Hardware Design UMTS/HSPA+ Module Series, Version 1.1 | 2025/01/06 | QTL-1707-1710_0004370 - QTL-1707-1710_0004453 |
| JTX-0119 | | Quectel Production Specification BG96 LTE Cat M1/Cat & Cat NB1 & EGPRS Module, Version 2.0 | 2024/00/00 | QTL-1707-1710_0004469 - QTL-1707-1710_0004470 |
| JTX-0120 | | Quectel Product Specification EC200A Series IoT/M2M-optimzed LTE Cat 4 Module | 2024/00/00 | QTL-1707-1710_0004473 - QTL-1707-1710_0004475 |
| JTX-0121 | | Quectel Specification Quectel EC21 Series, IoT/ M2M-optimized LTE Cat 1 Module, Version 2.6 | 2024/00/00 | QTL-1707-1710_0004478 - QTL-1707-1710_0004480 |
| JTX-0122 | | Quectel Specification Quectel EC25 Series, IoT/ M2M-optimized LTE Cat 4 Module, Version 2.8 | 2024/00/00 | QTL-1707-1710_0004481 - QTL-1707-1710_0004485 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0123 | | Quectel Specification Quectel EC21-GL, IoT/ M2M-optimized LTE Cat 1 Module, Version 1.6 | 2025/00/00 | QTL-1707-1710_0004486 - QTL-1707-1710_0004488 |
| JTX-0124 | | Quectel Specification Quectel EC21-G, IoT/ M2M-optimized LTE Cat 1 Module, Version 1.6 | 2024/00/00 | QTL-1707-1710_0004489 - QTL-1707-1710_0004490 |
| JTX-0125 | | Quectel Specification Quectel EG25-GL, IoT/ M2M-optimized LTE Cat 4 Module, Version 1.4 | 2025/00/00 | QTL-1707-1710_0004491 - QTL-1707-1710_0004493 |
| JTX-0126 | | Quectel Specification Quectel EG25-G, IoT/ M2M-optimized LTE Cat 4 Module, Version 1.7 | 2024/00/00 | QTL-1707-1710_0004494 - QTL-1707-1710_0004495 |
| JTX-0127 | | Quectel Specification Quectel EG95 Series, IoT/ M2M-optimized LTE Cat 4 Module, Version 2.5 | 2024/00/00 | QTL-1707-1710_0004526 - QTL-1707-1710_0004530 |
| JTX-0128 | | Quectel Specification Quectel UC15 UMTS/HSDPA Module | 2017/00/00 | QTL-1707-1710_0004533 - QTL-1707-1710_0004534 |
| JTX-0129 | | Quectel Specification Quectel UC200A-GL UMTS/HSDPA+ Module, Version 1.2 | 2024/00/00 | QTL-1707-1710_0004535 - QTL-1707-1710_0004536 |
| JTX-0130 | | Quectel Specification Quectel UC200T UMTS/HSDPA+ Module, Version 1.0 | 2019/00/00 | QTL-1707-1710_0004537 - QTL-1707-1710_0004538 |
| JTX-0131 | | Quectel Specification Quectel UG96 Compact UMTS/HSPA Module | 2017/00/00 | QTL-1707-1710_0004541 - QTL-1707-1710_0004542 |
| JTX-0132 | | Quectel Specification Quectel SC200R Series Multi-mode Smart LTE Module with Wi-Fi & Bluetooth, Version 1.6 | 2024/00/00 | QTL-1707-1710_0004543 - QTL-1707-1710_0004544 |
| JTX-0133 | | Quectel Specification Quectel SC20 Series Multi-mode Smart LTE Module with Wi-Fi & Bluetooth, Version 2.1 | 2023/00/00 | QTL-1707-1710_0004545 - QTL-1707-1710_0004548 |
| JTX-0134 | | Quectel Specification Quectel SC600T Series Multi-mode Smart LTE Module with Wi-Fi & Bluetooth, Version 1.3 | 2024/00/00 | QTL-1707-1710_0004549 - QTL-1707-1710_0004551 |
| JTX-0135 | | Quectel Specification Quectel SC600Y Series Multi-mode Smart LTE Module with Wi-Fi & Bluetooth, Version 1.4 | 2023/00/00 | QTL-1707-1710_0004552 - QTL-1707-1710_0004554 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0136 | | Quectel Specification Quectel SC66 Series Multi-mode Smart LTE Cat 6 Module with Wi-Fi & Bluetooth, Version 1.5 | 2023/00/00 | QTL-1707-1710_0004555 - QTL-1707-1710_0004556 |
| JTX-0137 | | Quectel Specification Quectel AG35 Series IATF 16949 Compliant Automotive Grade LTE Cat 4 Module, Version 1.8 | 2025/00/00 | QTL-1707-1710_0004625 - QTL-1707-1710_0004627 |
| JTX-0138 | Zhang, Ivan Ex. 05 | Quectel Product Specification for Quectel AG55xQ Family | 2023/00/00 | QTL-1707-1710_0004940 - QTL-1707-1710_0004942 |
| JTX-0139 | Zhang, Lynn Ex. 06 | Spreadsheet re 2014-2016 NA sales data | N/A | QTL-1707-1710_0005169 |
| JTX-0140 | Zhang, Lynn Ex. 07 | Spreadsheet re 2017 US sales data | N/A | QTL-1707-1710_0005170 |
| JTX-0141 | Zhang, Lynn Ex. 08 | Spreadsheet re 2018 to July 2025 US Sales data | N/A | QTL-1707-1710_0005171 |
| JTX-0142 | Zhang, Lynn Ex. 09 | Spreadsheet re All 2018 to Jul 2025 BG96MA and BG96MC US sales data | N/A | QTL-1707-1710_0005172 |
| JTX-0143 | Zhang, Lynn Ex. 10 | Spreadsheet re All 2018 to July 2025 RG500U EG120K US Sales data | N/A | QTL-1707-1710_0005173 |
| JTX-0144 | Pasquier Ex. 06 | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/04/13 | QTL-1707-1710_0005174 - QTL-1707-1710_0005187 |
| JTX-0145 | | Confidentiality and Non-Disclosure Agreement between Philips and Quectel Wireless Solutions Co., Ltd. | 2018/03/26 | QTL-1707-1710_0005188 - QTL-1707-1710_0005189 |
| JTX-0146 | Pasquier Ex. 08 | Email chain between D. Shang, Y. Feng, E. Nie, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/08/28 | QTL-1707-1710_0005190 - QTL-1707-1710_0005210 |
| JTX-0147 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th, | 2018/02/23 | QTL-1707-1710_0005211 - QTL-1707-1710_0005220 |
| JTX-0148 | Pasquier Ex. 05 | Letter to Quectel from Philips re Philips GSM-AMR/UMTS/LTE Licensing Program | 2015/12/29 | QTL-1707-1710_0005221 - QTL-1707-1710_0005242 |
| JTX-0149 | | Draft Machine to Machine Module Patent License Agreement by Koninklijke Philips N.V. | 2016/00/00 | QTL-1707-1710_0005243 - QTL-1707-1710_0005274 |
| JTX-0150 | | AMR#1 - Coarse and Fine Search in 1-DIM Codebook | N/A | QTL-1707-1710_0005275 - QTL-1707-1710_0005283 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0151 | | LTE#01 - Spread Spectrum using OFDM | N/A | QTL-1707-1710_0005284 - QTL-1707-1710_0005401 |
| JTX-0152 | | UMTS #11 - Identification Codes | N/A | QTL-1707-1710_0005402 - QTL-1707-1710_0005597 |
| JTX-0153 | | Email chain between D. Shang, Y. Feng, E. Nie, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/06/19 | QTL-1707-1710_0005598 - QTL-1707-1710_0005615 |
| JTX-0154 | | Letter from Qualcomm to To Whom It May Concern re Rights under patents owned by Koninklijke Philips N.V. | 2017/10/09 | QTL-1707-1710_0005616 |
| JTX-0155 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/03/26 | QTL-1707-1710_0005617 - QTL-1707-1710_0005629 |
| JTX-0156 | | Philips Presentation "M2M Licensing Program Selected UMTS patents" | 2016/03/09 | QTL-1707-1710_0005630 - QTL-1707-1710_0005657 |
| JTX-0157 | | Philips Presentation "Selected LTE patents" | 2016/03/09 | QTL-1707-1710_0005658 - QTL-1707-1710_0005682 |
| JTX-0158 | | Philips Presentation "M2M Licensing Program Selected AMR patent," | 2016/03/09 | QTL-1707-1710_0005683 - QTL-1707-1710_0005696 |
| JTX-0159 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/03/13 | QTL-1707-1710_0005697 - QTL-1707-1710_0005707 |
| JTX-0160 | Pasquier Ex. 07; Eleveld Ex. 09 | Philips Presentation "GSM-AMR/UMTS/LTE M2M Philips Licensing Program" | 2018/03/07 | QTL-1707-1710_0005708 - QTL-1707-1710_0005727 |
| JTX-0161 | | Philips Presentation "GSM-AMR/UMTS/LTE M2M Licensing Program" | 2016/03/09 | QTL-1707-1710_0005728 - QTL-1707-1710_0005740 |
| JTX-0162 | | Draft Machine to Machine Module Patent License Agreement By Koninklijke Philips N.V. | N/A | QTL-1707-1710_0005741 - QTL-1707-1710_0005772 |
| JTX-0163 | | AMR#1 - Transmission System Using Auxiliary Block Coder | N/A | QTL-1707-1710_0005773 - QTL-1707-1710_0005781 |
| JTX-0164 | | LTE#01 - Spread Spectrum using OFDM | N/A | QTL-1707-1710_0005782 - QTL-1707-1710_0005978 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0165 | | UMTS #11 - Identification Codes | N/A | QTL-1707-1710_0005979 - QTL-1707-1710_0006189 |
| JTX-0166 | | Email chain between D. Shang, Y. Feng, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/03/27 | QTL-1707-1710_0006190 - QTL-1707-1710_0006220 |
| JTX-0167 | | Email chain between D. Shang, Y. Feng. J. Zhu, P. Zhang and E. Nie re Meeting Minutes of March 9th | 2019/05/03 | QTL-1707-1710_0006205 - QTL-1707-1710_0006222 |
| JTX-0168 | Pasquier Ex. 09; Pasquier Ex. 18 | Email chain between B. Zhao, S. Pasquier, D. Shang, E. Nie, J. Zhu, P. Zhang, J. Zhu and Y. Feng re Quectel: Meeting on Friday 19th of October 2018 | 2018/11/14 | QTL-1707-1710_0006223 - QTL-1707-1710_0006252 |
| JTX-0169 | | Email chain between B. Zhao, Y. Feng, D. Shang, E. Nie, J. Zhu, P. Zhang and S. Pasquier re Quectel: Meeting on Friday 19th of October 2018 | 2018/10/29 | QTL-1707-1710_0006281 - QTL-1707-1710_0006308 |
| JTX-0170 | | Email chain between B. Zhao, Y. Feng, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2018/12/02 | QTL-1707-1710_0006309 - QTL-1707-1710_0006311 |
| JTX-0171 | | Email chain between Y. Feng, D. Shang, P. Zhang and J. Zhu re Meeting Minutes of March 9th, | 2018/04/03 | QTL-1707-1710_0006312 - QTL-1707-1710_0006326 |
| JTX-0172 | | Email chain between Y. Feng, D. Shang, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/04/09 | QTL-1707-1710_0006327 - QTL-1707-1710_0006343 |
| JTX-0173 | | Email chain between Y. Feng, D. Shang, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/03/19 | QTL-1707-1710_0006357 - QTL-1707-1710_0006368 |
| JTX-0174 | | Email chain between Y. Feng, D. Shang, P. Zhang and J. Zhu re Meeting Minutes of March 9th | 2018/03/23 | QTL-1707-1710_0006369 - QTL-1707-1710_0006380 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0175 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, D. Shang, E. Nie, P. Zhang and J. Zhu re Quectel Meeting on Friday 19th of October 2018 | 2018/11/15 | QTL-1707-1710_0006381 - QTL-1707-1710_0006411 |
| JTX-0176 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, D. Shang, E. Nie, P. Zhang and J. Zhu re Quectel Meeting on Friday 19th of October 2018 | 2018/11/02 | QTL-1707-1710_0006422 - QTL-1707-1710_0006450 |
| JTX-0177 | | Email to L. Yang, et al. from Y. Feng re Today's Slides | 2018/12/13 | QTL-1707-1710_0006979 - QTL-1707-1710_0006992 |
| JTX-0178 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2018/11/28 | QTL-1707-1710_0006993 - QTL-1707-1710_0006994 |
| JTX-0179 | | Email chain between D. Hierl, D. Zhang, J. Jarabek and J. Bilag re Philips patent licensing | 2019/04/15 | QTL-1707-1710_0006995 - QTL-1707-1710_0006996 |
| JTX-0180 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2019/03/01 | QTL-1707-1710_0007019 - QTL-1707-1710_0007028 |
| JTX-0181 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2019/07/17 | QTL-1707-1710_0007059 - QTL-1707-1710_0007073 |
| JTX-0182 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2019/07/02 | QTL-1707-1710_0007074 - QTL-1707-1710_0007086 |
| JTX-0183 | | Email chain between J. Wei, Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2019/09/04 | QTL-1707-1710_0007087 - QTL-1707-1710_0007102 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0184 | | Email chain between J. Wei, Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2019/03/13 | QTL-1707-1710_0007103 - QTL-1707-1710_0007116 |
| JTX-0185 | Pasquier Ex. 17 | Email chain between J. Wei, B. Zhao, S. Pasquier, G. Bossard, D. Roche and Y. Feng re Quectel: Meeting on Thursday 6th of December 2018 | 2019/03/22 | QTL-1707-1710_0007117 - QTL-1707-1710_0007127 |
| JTX-0186 | | Email chain between Y. Feng, J. Sesztak and S. Pasquier re Quectel annual conference in Paris and GSM-AMR/UMTS/LTE Patent Licensing Program related to IoT modules | 2019/11/12 | QTL-1707-1710_0007128 - QTL-1707-1710_0007137 |
| JTX-0187 | | Email chain between J. Wei, Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2019/07/09 | QTL-1707-1710_0007138 - QTL-1707-1710_0007148 |
| JTX-0188 | Hu, Jessica Ex. 11 | Email to M. Marion from G. Goodwin re Avent - Philips | 2020/04/22 | QTL-1707-1710_0007149 - QTL-1707-1710_0007174 |
| JTX-0189 | | Email chain between J. Wei, Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Philips cellular patent license | 2020/12/02 | QTL-1707-1710_0007546 - QTL-1707-1710_0007565 |
| JTX-0190 | | Email chain between J. Wei, Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Philips cellular patent license | 2020/11/23 | QTL-1707-1710_0007566 - QTL-1707-1710_0007610 |
| JTX-0191 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/08/24 | QTL-1707-1710_0007611 - QTL-1707-1710_0008103 |
| JTX-0192 | Eleveld Ex. 14 | Letter to Quectel from Philips re Conflict Representation by Quectel Through Former Philips Employee | 2020/03/31 | QTL-1707-1710_0008122 - QTL-1707-1710_0008123 |
| JTX-0193 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/06/15 | QTL-1707-1710_0008124 - QTL-1707-1710_0008157 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0194 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/03/09 | QTL-1707-1710_0008158 - QTL-1707-1710_0008170 |
| JTX-0195 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/06/22 | QTL-1707-1710_0008171 - QTL-1707-1710_0008193 |
| JTX-0196 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/03/30 | QTL-1707-1710_0008194 - QTL-1707-1710_0008210 |
| JTX-0197 | | Email chain between Y. Feng, B. Zhao, S. Pasquier, G. Bossard and D. Roche re Quectel: Meeting on Thursday 6th of December 2018 | 2020/04/30 | QTL-1707-1710_0008211 - QTL-1707-1710_0008259 |
| JTX-0198 | | Quectel Specification Quectel EG91 Series IoT/M2M-Optimized LTE Cat 2.1 Modules, Version 2.1 | 2020/00/00 | QTL-1707-1710_0008334 - QTL-1707-1710_0008336 |
| JTX-0199 | Eleveld Ex. 04; Scott Ex. 09 | ETSI Directives, Version 26 | 2009/07/00 | QTL-1707-1710_0031839 - QTL-1707-1710_0032037 |
| JTX-0200 | | Quectel Specification Quectel EC20 Multi-mode LTE Module | 2017/00/00 | QTL-1707-1710_0066750 - QTL-1707-1710_0066751 |
| JTX-0201 | | Quectel Specification Quectel EG06 Series IoT/M2M-optimized LTE-A Cat 6 LGA Module, Version 2.0 | 2023/00/00 | QTL-1707-1710_0067427 - QTL-1707-1710_0067428 |
| JTX-0202 | | Quectel Specification Quectel EG12 Series IoT/M2M-optimized LTE-A Cat 12 LGA Module, Version 1.3 | 2025/00/00 | QTL-1707-1710_0070582 - QTL-1707-1710_0070584 |
| JTX-0203 | | Quectel Specification Quectel EG18 Series IoT/M2M-optimized LTE Cat 18 LGA Module in LGA Package, Version 1.2 | 2025/00/00 | QTL-1707-1710_0071281 - QTL-1707-1710_0071282 |
| JTX-0204 | | Quectel Specification Quectel EM06 Series IoT/M2M-optimized LTE-A Cat 6 M.2 Module, Version 1.9 | 2022/00/00 | QTL-1707-1710_0076796 - QTL-1707-1710_0076798 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0205 | | Quectel Production Specification Quectel EM12-G IoT/M2M-optimized LTE-A Cat 12 Module, Version 1.2 | 2023/00/00 | QTL-1707-1710_0077056 - QTL-1707-1710_0077057 |
| JTX-0206 | | Quectel Specification Quectel EM06 Series IoT/M2M-optimized LTE Cat 6 Mini PCle Module, Version 1.9, 2023 | 2023/00/00 | QTL-1707-1710_0077616 - QTL-1707-1710_0077617 |
| JTX-0207 | | Quectel Specification Quectel RG50xQ Series IoT/eMBB-optimized 5G Sub-6 GHz M.2 Module, Version 1.2 | 2023/00/00 | QTL-1707-1710_0090662 - QTL-1707-1710_0090663 |
| JTX-0208 | Hu, Jessica Ex. 12 | Quectel's SEP Playbook | N/A | QTL-1707-1710_0107617 - QTL-1707-1710_0107629 |
| JTX-0209 | | 3GPP TSG-RAN WG1 Meeting #32, Paris, France, 19-23 May 2003, R1-030608, Change Request for 25.214 CR 323, Version 5.4.0 | 2003/05/22 | QTL-1707-1710_0164319 - QTL-1707-1710_0164321 |
| JTX-0210 | | 3GPP Release 5 and Beyond, The Evolution of UMTS (November 2004 update) | 2004/06/00 | QTL-1707-1710_0164322 - QTL-1707-1710_0164350 |
| JTX-0211 | | Spreadsheet EG25-G_V2.1_BOM(BOM8)200222 | N/A | QTL_1240-0000002 |
| JTX-0212 | | Spreadsheet EG91-NA_V3.2_BOM(BOM2)200911 | N/A | QTL_1240-0000003 |
| JTX-0213 | | Quectel Specification for E25-G IoT/M2M-optimized LTE Cat 4 Module, Version 1.3 | 2020/00/00 | QTL_1240-0000023 - QTL_1240-0000024 |
| JTX-0214 | | Quectel Specification for EG91 Series IoT/M2M-optimized LTE Cat 1 Modules, Version 2.1 | 2020/00/00 | QTL_1240-0000075 - QTL_1240-0000077 |
| JTX-0215 | | Quectel Specification for BG96 LTE Cat M1 & Cat NB1 & EGRPS Module, Version 1.8 | 2020/00/00 | QTL_1240-0000110 - QTL_1240-0000111 |
| JTX-0216 | | Quectel Specification for BG95 Series LTE Cat M1/Cat NB2 & EGRPS Module, Version 1.6, 2020 | 2020/00/00 | QTL_1240-0000252 - QTL_1240-0000254 |
| JTX-0217 | | Quectel Specification for SC20 Series Multi-mode Smart LTE Module with Wi-FI Bluetooth, Version 1.9 | 2020/00/00 | QTL_1240-0000289 - QTL_1240-0000291 |

| JTX NO. | DEPO EX. | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|---|
| JTX-0218 | | Quectel's booklet "A technology for all, Why LTE Cat-1 is transforming cellular connectivity" | 2020/03/00 | QTL_1240-0020833 - QTL_1240-0020847 |
| JTX-0219 | | Quectel Specification for EG91 IoT/M2M-optimized LTE Cat 1 Module, Version 1.5 | 2016/00/00 | QTL_1240-0023640 - QTL_1240-0023641 |
| JTX-0220 | | Spreadsheet re revised price proposal for opening bid | N/A | PRSNA-ITC0482777 |
| JTX-0221 | Eleveld Ex. 07; Scott Ex. 08 | Annex C to the Expert Report of David Teece for UK Matter | 2020/06/30 | PRSNA-ITC0520724 - PRSNA-ITC0520738 |
| JTX-0222 | Pasquier Ex. 11 | Spreadsheet, S. Pasquier, Lump Sum Monetization Spreadsheet (Ex. A to S. Pasquier Witness Statement dated July 9, 2021) | 2021/07/09 | PRSNA-ITC0534520 - PRSNA-ITC0534521 |
| JTX-0223 | | Quectel's UC15 Hardware Design Manual, UMTS/HSDPA Module Series, Version 1.3 | 2014/04/21 | PRSNA-ITC0541110 - PRSNA-ITC0541188 |
| JTX-0224 | | Quectel's UC200T Hardware Design Manual, UMTS/HSPA+ Module Series, Version 1.0 | 2019/10/14 | PRSNA-ITC0541552 - PRSNA-ITC0541637 |

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**KONINKLIJKE PHILIPS N.V.'S WITNESS LIST**

Pursuant to D. Del. LR 16.3(c)(7), and the parties' agreed-upon schedule, Koninklijke Philips N.V. ("Philips") submits the following list of witnesses that, subject to the availability of each witness, Philips intends to call at trial, either live or via previous testimony including deposition testimony. Philips reserves the right to revise, supplement, amend, or update this list of witnesses, and to submit, as appropriate, additions and/or deletions or revisions to this list as the pretrial and trial process evolves, including meeting and conferring with Quectel on outstanding trial management issues, to respond to further rulings by the Court, to remove witnesses that prove unnecessary, to rebut evidence presented at trial by Quectel, or to address any other changed circumstances. Philips further reserves the right to add or delete witnesses, including any witness who may be deposed

between the date of this list and trial, or otherwise amend its witness list as appropriate. Philips reserves the right to call any witness on Quectel's witness list and any witness called by Quectel.

This list is not a representation that any witness listed is available to appear for trial. By identifying these witnesses, Philips is not required to call them at trial, nor is Philips limited in the manner in which such testimony is presented at trial. Philips also reserves the right to elicit testimony concerning facts from Quectel's expert witnesses, including any expert witness who has previously provided testimony on behalf of Quectel but whom Quectel does not call to testify. Philips reserves the right to call one or more additional witnesses whose testimony is necessary to establish authenticity or admissibility of any trial exhibit if the admissibility of the exhibit is challenged by Quectel. Philips reserves the right to object to any witness or testimony. The identification of a witness on this list shall not constitute waiver of any argument that the witness's testimony is inadmissible if called by Quectel. To the extent any witness listed on Quectel's witness list has not previously been disclosed, Philips reserves the right to seek to exclude such witness or to depose such witness promptly.

## I. WITNESSES PHILIPS INTENDS TO CALL AT TRIAL

1. Matthew Peter John Baker
2. Sophie Pasquier

3. Kevin Scott
4. Jako Eleveld
5. Mark Lanning
6. Mark Mahon
7. David Teece
8. Eric Stasik
9. Dirk Weiler
10. Jean-Sebastien Borghetti[1]
11. Johanna Dwyer[2]
12. Antti Toskala[3]

## II. WITNESSES PHILIPS MAY CALL AT TRIAL

1. Jessica Hu
2. Jean Hu
3. Andy Wu
4. Ivan Zhang
5. Lynn Zhang
6. Norbert Muhrer

[1] This witness relates to Quectel's equitable defenses, which will be tried to the Court, not the Jury.
[2] This witness relates to Quectel's equitable defenses, which will be tried to the Court, not the Jury.
[3] This witness relates to Quectel's equitable defenses, which will be tried to the Court, not the Jury.

# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**QUECTEL'S TRIAL WITNESS LIST**

Pursuant to D. Del. LR 16.3(c)(7), and the parties' agreed-upon schedule, Quectel submits the following list of witnesses that, subject to the availability of each witness, Quectel will call or may call at trial, either live or via previous testimony including deposition testimony. Quectel reserves the right to revise, supplement, amend, or update this list of witnesses, and to submit, as appropriate, additions and/or deletions or revisions to this list as the pretrial and trial process evolves, including meeting and conferring with Philips on outstanding trial management issues, to respond to further rulings by the Court, to remove witnesses that prove unnecessary, to rebut evidence presented at trial by Philips, or to address any other changed circumstances. Quectel further reserves the right to add or delete witnesses, including any witness who may be deposed between the date of this list

and trial, or otherwise amend its witness list as appropriate. Quectel reserves the right to call any witness on Philips's witness list and any witness called by Philips.

This list is not a representation that any witness listed is available to appear for trial. By identifying these witnesses, Quectel is not required to call them at trial, nor is Quectel limited in the manner in which such testimony is presented at trial. The identification of a witness on this list shall not constitute waiver of any argument that the witness's testimony is inadmissible if called by Philips. To the extent any witness listed on Philips's witness list has not previously been disclosed, Philips reserves the right to seek to exclude such witness or to depose such witness prior to the start of trial.

## I. QUECTEL'S WILL CALL LIST

- Dr. Harry Bims
- Carrie Distler
- Jessica Hu
- Friedhelm Rodermund
- Dr. Stephen Wicker
- Ivan Zhang*

## II. QUECTEL'S MAY CALL LIST

- Matthew Baker*
- Gildas Bossard*
- Michael Brogioli*

- Paul Bucknell*
- Nicholas Cormas*
- Jako Eleveld*
- Yaffa Feng*
- Rémy Libchaber
- Timothy Moulsley*
- Sophie Pasquier*
- Kevin Scott*

* - presented through deposition designations

# EXHIBIT 11

| *KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD., ET AL.*<br>**Case No. 1:20-CV-1710-CFC**<br>**KONINKLIJKE PHILIPS N.V.'S DEPOSITION DESIGNATIONS** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Witness: Steve Burrington (ITC Investigation No. 337-TA-1240)** | | | | | | | | | | | | | |
| **Date of Deposition: June 14, 2021** | | | | | | | | | | | | | |
| **Initial Designations** | | | | | **Counterdesignations** | | | | **Counter Counter Designation** | | | | |
| **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** |
| 7 | 16 | 8 | 11 | CO; NE | | | | | | | | | |
| 10 | 2 | 11 | 24 | ILC | | | | | | | | | |
| 13 | 9 | 20 | 20 | NE; 611(VA); 602; 403 | | | | | | | | | |
| 20 | 24 | 21 | 9 | OS; 401/402 | | | | | | | | | |
| 21 | 13 | 22 | 4 | OS; 401/402; 611(VA) | | | | | | | | | |
| 24 | 20 | 25 | 18 | CO; 611(Comp) | | | | | | | | | |
| 26 | 14 | 27 | 2 | CO; 602 | | | | | | | | | |
| 27 | 6 | 29 | 10 | 401/402; 611(VA); 602 | | | | | | | | | |
| 29 | 18 | 31 | 3 | CO; NE | | | | | | | | | |
| 32 | 2 | 32 | 16 | NE | | | | | | | | | |
| 33 | 8 | 33 | 24 | CO; NE | | | | | | | | | |
| 34 | 10 | 35 | 9 | CO; OS; 602 | | | | | | | | | |
| 35 | 23 | 35 | 25 | NE | | | | | | | | | |
| 36 | 6 | 39 | 20 | OS; 602 | | | | | | | | | |
| 41 | 3 | 42 | 25 | 611(VA); 602 | | | | | | | | | |
| 44 | 10 | 44 | 11 | 106; 611(AF) | 44 | 15 | 44 | 22 | 611(counter) | | | | |
| 44 | 15 | 50 | 3 | 611(VA); 602; 403 | | | | | | | | | |
| 50 | 18 | 51 | 2 | 611(VA); 602 | 51 | 3 | 51 | 10 | | | | | |
| 51 | 11 | 51 | 16 | 106 | 51 | 17 | 51 | 23 | 401/402, 602, 611 | | | | |
| 51 | 24 | 52 | 15 | 106; 602 | | | | | | | | | |
| 52 | 20 | 53 | 15 | OS; 602 | | | | | | | | | |
| 53 | 18 | 54 | 14 | 611(VA) | | | | | | | | | |
| 54 | 18 | 55 | 10 | 611(VA); 602 | | | | | | | | | |
| 55 | 22 | 63 | 11 | 611(VA); 611(NR); 403 | | | | | | | | | |
| 63 | 14 | 66 | 8 | 611(NR); 602; 403 | 63 | 7 | 63 | 11 | 611(counter) | | | | |
| 66 | 11 | 69 | 6 | 611(VA); 403 | 63 | 14 | 64 | 2 | 611(counter) | | | | |
| 69 | 10 | 72 | 15 | 611(VA); ILC | 69 | 18 | 71 | 11 | 611(counter) | | | | |
| 72 | 20 | 73 | 25 | 611(VA); ILC | | | | | | | | | |
| 74 | 6 | 74 | 14 | 611(NR); 103 | 74 | 11 | 74 | 14 | 611(counter) | | | | |
| 74 | 16 | 75 | 21 | 611(VA) | 74 | 16 | 75 | 8 | 611(counter) | | | | |
| 76 | 2 | 77 | 8 | 611(VA); 611(NR); 602 | | | | | | | | | |
| 78 | 2 | 82 | 19 | 611(VA); 403 | 80 | 18 | 82 | 6 | 611(counter) | | | | |
| 83 | 21 | 85 | 4 | 611(VA); 602 | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 85 | 16 | 91 | 7 | 611(VA); 611(NR); 602; 403 | 85 | 6 | 85 | 14 | 401/402, 611 | | | | |
| 91 | 13 | 92 | 16 | 611(VA); 611(NR) | | | | | | | | | |
| 92 | 18 | 96 | 4 | 611(NR); 602; 403 | 95 | 10 | 97 | 8 | 611(counter), CO, NE | | | | |
| 96 | 7 | 99 | 17 | 602; 403 | 99 | 25 | 100 | 18 | 611(counter) | | | | |
| 99 | 19 | 105 | 11 | 611(Lead); 602; 403 | | | | | | | | | |
| 106 | 6 | 106 | 24 | 611(VA) | | | | | | | | | |
| 107 | 3 | 114 | 3 | 611(VA); 602; ILC; 403 | | | | | | | | | |
| 114 | 6 | 116 | 10 | 611(VA); 602 | | | | | | | | | |
| 116 | 21 | 117 | 14 | 611(VA) | | | | | | | | | |
| 118 | 5 | 122 | 18 | 611(VA); 611(Comp); 611(NR); ILC; 403 | | | | | | | | | |
| 123 | 8 | 123 | 19 | NE | | | | | | | | | |
| 123 | 25 | 124 | 5 | NE; 602 | | | | | | | | | |
| 124 | 13 | 124 | 14 | 106; 602 | 124 | 6 | 124 | 14 | 401/402, 611(counter), 403 | | | | |
| 124 | 17 | 126 | 6 | 611(VA); 602 | 124 | 17 | 126 | 6 | 611(counter) | | | | |
| 136 | 17 | 136 | 23 | 602 | 135 | 7 | 135 | 21 | 401/402, 603, 611, IMP, 611(counter) | | | | |
| 137 | 7 | 141 | 11 | 611(VA); 611(NR); 602; 403 | | | | | | | | | |
| 141 | 19 | 145 | 2 | 611(VA); 403 | | | | | | | | | |
| 145 | 6 | 152 | 3 | 611(VA); 602; 403 | | | | | | | | | |
| 152 | 5 | 156 | 9 | 611(NR); 602; 403 | | | | | | | | | |
| 156 | 25 | 157 | 14 | OS; 401/402 | 156 | 10 | 156 | 24 | 401/402 | | | | |
| 161 | 10 | 164 | 14 | 611(VA); 611(NR); 602; 403 | | | | | | | | | |
| 164 | 19 | 165 | 15 | 611(VA); 611(Comp); 611(NR) | | | | | | | | | |
| 165 | 20 | 167 | 6 | 611(VA) | | | | | | | | | |

| *KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD., ET AL.*<br>**Case No. 1:20-CV-1710-CFC**<br>**KONINKLIJKE PHILIPS N.V.'S DEPOSITION DESIGNATIONS** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Witness: Yaffa Feng (ITC Investigation No. 337-TA-1240)** | | | | | | | | | | | | | |
| **Date of Deposition: June 12, 2021** | | | | | | | | | | | | | |
| **Initial Designations** | | | | | **Counterdesignations** | | | | **Counter Counter Designation** | | | | |
| **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** |
| | | | | 106 | Quectel incorporates its initial designations in response to all of Philip's initial designations. Quectel also objects to Philips's designations as untimely. | | | | To the extent Quectel is reincorporating its initial designations as counters, Philips reincorporates its objections to Quectel's initial designations. | | | | |
| 9 | 9 | 17 | 2 | CO/401/402/403 | | | | | | | | | |
| 39 | 22 | 47 | 18 | CO/401/402/403/106 | 49 | 3 | 49 | 14 | 106/401/402/611 | 49 | 16 | 49 | 16 |
| | | | | | | | | | | 49 | 18 | 49 | 20 |
| | | | | | | | | | | 50 | 16 | 50 | 18 |
| | | | | | | | | | | 51 | 11 | 51 | 12 |
| 52 | 2 | 52 | 14 | | | | | | | | | | |
| 54 | 18 | 56 | 10 | CO | | | | | | | | | |
| 57 | 8 | 57 | 18 | CO/OS | | | | | | | | | |
| 68 | 7 | 71 | 21 | | | | | | | | | | |
| 79 | 21 | 81 | 1 | | | | | | | | | | |
| 81 | 9 | 84 | 14 | CO | | | | | | | | | |
| 86 | 8 | 86 | 9 | 106 | | | | | | | | | |
| 87 | 13 | 87 | 15 | 106 | | | | | | | | | |
| 88 | 8 | 95 | 3 | CO | | | | | | | | | |
| 100 | 7 | 103 | 11 | | | | | | | | | | |
| 104 | 3 | 105 | 10 | | | | | | | | | | |
| 115 | 5 | 116 | 15 | | | | | | | | | | |
| 117 | 3 | 120 | 21 | CO | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 122 | 15 | 126 | 11 | CO | | | | | | | | | |
| 126 | 17 | 128 | 15 | CO | | | | | | | | | |
| 129 | 5 | 131 | 8 | CO | | | | | | | | | |
| 132 | 3 | 135 | 17 | CO/OS | | | | | | | | | |
| 137 | 14 | 137 | 22 | | | | | | | | | | |
| 138 | 8 | 145 | 13 | CO | | | | | | | | | |
| 151 | 22 | 157 | 15 | | | | | | | | | | |
| 157 | 22 | 158 | 19 | | | | | | | | | | |
| 161 | 14 | 171 | 17 | CO/PRIV/OS | | | | | | | | | |
| 177 | 13 | 179 | 15 | | | | | | | | | | |
| 180 | 9 | 181 | 7 | | | | | | | | | | |
| 186 | 19 | 191 | 11 | CO | | | | | | | | | |

***KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD., ET AL.***

**Case No. 1:20-CV-1710-CFC**

**KONINKLIJKE PHILIPS N.V.'S DEPOSITION DESIGNATIONS**

**Witness: Jeff Gardner (ITC Investigation No. 337-TA-1240)**

**Date of Deposition: June 11, 2021**

| Initial Designations | | | | | Counterdesignations | | | | | Counter Counter Designation | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
| 4 | 3 | 8 | 1 | CO; NE | | | | | | | | | |
| 9 | 17 | 9 | 18 | CO; NE; 401/402 | | | | | | | | | |
| 10 | 2 | 10 | 25 | CO; NE; 401/402 | | | | | | | | | |
| 11 | 8 | 11 | 14 | CO; 611(VA) | | | | | | | | | |
| 12 | 2 | 12 | 9 | OS; ILC; 602 | | | | | | | | | |
| 14 | 5 | 14 | 19 | OS; ILC; 602 | | | | | | | | | |
| 16 | 5 | 17 | 6 | OS; 401/402; 602 | 17 | 13 | 17 | 16 | 401/402, 403, 602, 611 | | | | |
| 17 | 10 | 17 | 10 | OS; 401/402; 602 | 17 | 21 | 17 | 21 | 401/402, 403, 602, 611 | | | | |
| 19 | 6 | 20 | 15 | OS; ILC; 611(VA) | | | | | | | | | |
| 21 | 4 | 21 | 14 | ILC; 602; 611(NR) | | | | | | | | | |
| 21 | 23 | 22 | 9 | ILC; 602 | 23 | 18 | 23 | 19 | 401/402, 403, 602, 611, ILC | | | | |
| 22 | 14 | 22 | 22 | ILC; 602 | 23 | 22 | 23 | 22 | 401/402, 403, 602, 611, ILC | | | | |
| 22 | 25 | 22 | 25 | ILC; 602 | 24 | 2 | 24 | 4 | 401/402, 403, 602, 611, ILC | | | | |
| 24 | 11 | 24 | 12 | ILC; 611(VA) | | | | | | | | | |
| 24 | 12 | 25 | 1 | ILC; 611(VA) | | | | | | | | | |
| 25 | 4 | 25 | 11 | 403; 602; 611(VA) | | | | | | | | | |
| 25 | 20 | 26 | 24 | CO; OS; ILC; 602; 611(VA) | | | | | | | | | |
| 27 | 8 | 27 | 14 | OS; 602 | 27 | 16 | 29 | 23 | 401/402, 403, 602, 611 | | | | |
| 33 | 5 | 35 | 16 | OS; 401/402; 403; 602; 611(VA) | | | | | | | | | |
| 35 | 20 | 36 | 6 | OS; 401/402; 403; 602; 611(Comp); 611(VA) | | | | | | | | | |
| 36 | 12 | 40 | 13 | OS; 401/402; 403; 602; 611(VA) | | | | | | | | | |
| 40 | 19 | 46 | 5 | 401/402; 403; 602; 611(VA) | | | | | | | | | |
| 46 | 24 | 47 | 22 | CO; OS; 602; 611(VA) | | | | | | | | | |
| 48 | 11 | 49 | 23 | OS; 403; 602; 611(Comp); 611(VA) | | | | | | | | | |
| 50 | 5 | 50 | 17 | OS; 403; 602; 611(VA) | | | | | | | | | |
| 50 | 19 | 51 | 9 | OS; 403; 602; 611(Arg); 611(Lead) | | | | | | | | | |
| 51 | 14 | 52 | 3 | OS; 403; 611(Arg); 611(Lead) | | | | | | | | | |
| 52 | 6 | 53 | 17 | CO; OS; 602; 611(NR); 611(VA) | | | | | | | | | |
| 53 | 23 | 54 | 17 | OS; 401/402; 602; 611(VA) | | | | | | | | | |
| 54 | 22 | 54 | 25 | OS; 401/402; 602; 611(VA) | | | | | | | | | |
| 55 | 2 | 55 | 9 | OS; 401/402; 602; 611(Lead); 611(NR); 611(VA); 702 | | | | | | | | | |
| 55 | 15 | 56 | 7 | OS; 401/402; 403; 602; 611(VA) | | | | | | | | | |
| 56 | 11 | 56 | 15 | OS; 401/402; 403; 602; 611(Lead); 702 | | | | | | | | | |
| 56 | 19 | 57 | 4 | OS; 403; 602; 611(VA) | | | | | | | | | |
| 57 | 10 | 58 | 8 | OS; ILC; 602; 611(Lead); 611(VA) | | | | | | | | | |
| 58 | 11 | 58 | 19 | OS; ILC; 403; 602 | | | | | | | | | |
| 58 | 25 | 60 | 2 | OS; 401/402; 403; 602 | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 | 5 | 60 | 11 | OS; 602; 611(VA); 702 | | | | | | | | | |
| 60 | 15 | 60 | 15 | OS; 602; 611(VA); 702 | | | | | | | | | |
| 61 | 3 | 61 | 15 | 611(VA) | | | | | | | | | |

***KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD., ET AL.***

**Case No. 1:20-CV-1710-CFC**

**KONINKLIJKE PHILIPS N.V.'S DEPOSITION DESIGNATIONS**

**Witness: Jean Hu**

**Date of Deposition: February 26, 2026**

| Initial Designations | | | | | Counterdesignations | | | | Counter Counter Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** |
| 7 | 7 | 7 | 18 | | | | | | | | | | |
| 8 | 15 | 8 | 17 | | | | | | | | | | |
| 9 | 3 | 12 | 23 | CO | | | | | | | | | |
| 13 | 8 | 13 | 25 | | | | | | | | | | |
| 15 | 9 | 15 | 14 | 401/402/ 403 | | | | | | | | | |
| 15 | 17 | 15 | 23 | 401/402/ 403 | | | | | | | | | |
| 16 | 3 | 16 | 13 | | | | | | | | | | |
| 16 | 23 | 21 | 20 | CO | | | | | | | | | |
| 21 | 25 | 23 | 18 | 401/402/ 403 | | | | | | | | | |
| 23 | 20 | 24 | 15 | 401/402/ 403 | | | | | | | | | |
| 25 | 5 | 25 | 13 | 401/402/ 403 | 27 | 20 | 27 | 23 | 611(counter), 103, 403 | | | | |
| 25 | 18 | 26 | 7 | 401/402/ 403 | | | | | | | | | |
| 26 | 9 | 26 | 10 | 401/402/ 403 | | | | | | | | | |
| 26 | 15 | 26 | 20 | 401/402/ 403 | 27 | 20 | 27 | 23 | 611(counter), 103, 403 | | | | |
| 26 | 23 | 27 | 5 | 401/402/ 403 | 27 | 20 | 27 | 23 | 611(counter), 103, 403 | | | | |
| 27 | 7 | 27 | 7 | 401/402/ 403 | 27 | 20 | 27 | 23 | 611(counter), 103, 403 | | | | |
| 27 | 12 | 27 | 23 | 401/402/ 403 | 27 | 20 | 27 | 23 | 611(counter) | | | | |
| 28 | 5 | 28 | 10 | | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 28 | 12 | 29 | 4 | | | | | | | | | | |
| 29 | 7 | 29 | 9 | | | | | | | | | | |
| 29 | 12 | 30 | 4 | | | | | | | | | | |
| 30 | 6 | 30 | 22 | 401/402/ 403 | 27 | 20 | 27 | 23 | 611(counter), 103, 403 | | | | |
| 31 | 2 | 31 | 10 | 401/402/ 403 | 27 | 20 | 27 | 23 | 611(counter), 103, 403 | | | | |
| 32 | 2 | 33 | 10 | CO | | | | | | | | | |
| 33 | 12 | 34 | 20 | CO | | | | | | | | | |
| 34 | 23 | 35 | 13 | CO | 35 | 14 | 36 | 1 | | | | | |
| 36 | 3 | 36 | 13 | | | | | | | | | | |
| 36 | 16 | 37 | 6 | CO | 37 | 7 | 37 | 12 | | | | | |
| 37 | 13 | 37 | 16 | | | | | | | | | | |
| 37 | 18 | 37 | 21 | | | | | | | | | | |
| 37 | 23 | 38 | 16 | | | | | | | | | | |
| 38 | 18 | 38 | 20 | | | | | | | | | | |
| 38 | 23 | 39 | 5 | | | | | | | | | | |
| 39 | 7 | 39 | 14 | | | | | | | | | | |
| 39 | 19 | 39 | 24 | | | | | | | | | | |
| 40 | 1 | 40 | 19 | CO | | | | | | | | | |
| 40 | 21 | 41 | 7 | | | | | | | | | | |
| 41 | 11 | 41 | 14 | | | | | | | | | | |
| 41 | 16 | 41 | 25 | CO | 42 | 1 | 42 | 10 | | | | | |
| 42 | 12 | 43 | 2 | | | | | | | | | | |
| 43 | 4 | 43 | 24 | | | | | | | | | | |
| 44 | 1 | 44 | 8 | | | | | | | | | | |
| 45 | 3 | 45 | 5 | | | | | | | | | | |
| 45 | 13 | 46 | 3 | | | | | | | | | | |
| 46 | 5 | 46 | 12 | | | | | | | | | | |
| 46 | 14 | 46 | 17 | | | | | | | | | | |
| 46 | 20 | 46 | 21 | | | | | | | | | | |
| 46 | 23 | 46 | 24 | CO | 46 | 25 | 47 | 3 | | | | | |
| 47 | 4 | 47 | 8 | | | | | | | | | | |
| 47 | 12 | 47 | 14 | | | | | | | | | | |
| 47 | 16 | 47 | 23 | | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 47 | 25 | 49 | 1 | | | | | | | | | | |
| 49 | 3 | 49 | 4 | | | | | | | | | | |
| 49 | 7 | 49 | 7 | | | | | | | | | | |
| 49 | 15 | 49 | 16 | | 49 | 17 | 49 | 17 | 401/402, 611 | | | | |
| 49 | 19 | 50 | 17 | | | | | | | | | | |
| 50 | 20 | 51 | 5 | CO/106 | 51 | 6 | 51 | 8 | | | | | |
| 51 | 9 | 51 | 9 | | | | | | | | | | |
| 51 | 15 | 51 | 17 | | | | | | | | | | |
| 51 | 19 | 51 | 24 | CO/106 | 51 | 25 | 52 | 3 | | | | | |
| 52 | 4 | 52 | 9 | CO/106 | 52 | 10 | 52 | 13 | | | | | |
| 52 | 14 | 52 | 14 | | | | | | | | | | |
| 52 | 16 | 52 | 17 | | | | | | | | | | |
| 52 | 21 | 54 | 24 | | | | | | | | | | |
| 55 | 1 | 55 | 24 | CO, PRIV | | | | | | | | | |
| 57 | 22 | 58 | 25 | | | | | | | | | | |
| 59 | 8 | 59 | 20 | | | | | | | | | | |
| 59 | 23 | 60 | 1 | | | | | | | | | | |
| 60 | 7 | 60 | 15 | | | | | | | | | | |
| 60 | 21 | 61 | 7 | | | | | | | | | | |
| 61 | 9 | 61 | 20 | | | | | | | | | | |
| 62 | 16 | 62 | 23 | | | | | | | | | | |
| 63 | 19 | 63 | 25 | | | | | | | | | | |
| 64 | 2 | 64 | 4 | | | | | | | | | | |
| 64 | 9 | 64 | 16 | | | | | | | | | | |
| 64 | 19 | 65 | 4 | | | | | | | | | | |
| 65 | 8 | 65 | 25 | CO/106 | 66 | 1 | 66 | 5 | | | | | |
| 66 | 6 | 67 | 10 | | | | | | | | | | |
| 67 | 13 | 68 | 17 | | | | | | | | | | |
| 68 | 21 | 70 | 2 | | | | | | | | | | |
| 70 | 20 | 71 | 7 | | | | | | | | | | |
| 71 | 14 | 72 | 22 | | | | | | | | | | |
| 72 | 24 | 74 | 10 | CO/106 | 74 | 11 | 74 | 15 | | | | | |
| 74 | 16 | 75 | 9 | CO/106 | 75 | 10 | 75 | 20 | | | | | |
| 75 | 21 | 76 | 25 | | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 77 | 4 | 77 | 10 | 401/402/ 403 | | | | | | | | | |
| 77 | 12 | 77 | 23 | | | | | | | | | | |
| 78 | 1 | 79 | 11 | | | | | | | | | | |
| 79 | 13 | 79 | 16 | CO/106 | 79 | 17 | 80 | 1 | | | | | |
| 80 | 3 | 80 | 16 | | | | | | | | | | |
| 80 | 20 | 80 | 22 | | | | | | | | | | |
| 80 | 24 | 81 | 7 | | | | | | | | | | |
| 81 | 9 | 81 | 25 | | | | | | | | | | |
| 82 | 2 | 82 | 6 | CO/106 | 82 | 7 | 82 | 11 | | | | | |
| 83 | 10 | 83 | 15 | | | | | | | | | | |
| 84 | 3 | 84 | 5 | | | | | | | | | | |
| 84 | 7 | 84 | 8 | CO/106 | 84 | 9 | 84 | 11 | | | | | |
| 84 | 12 | 85 | 3 | CO/106 | 85 | 4 | 85 | 6 | | | | | |
| 85 | 10 | 85 | 16 | 106 | | | | | | 85 | 7 | 85 | 8 |
| 85 | 18 | 85 | 21 | | | | | | | | | | |
| 86 | 3 | 86 | 13 | | | | | | | | | | |
| 86 | 15 | 86 | 24 | 106 | 86 | 25 | 87 | 3 | 401/402 | | | | |
| 87 | 5 | 87 | 21 | | | | | | | | | | |
| 87 | 25 | 88 | 20 | | | | | | | | | | |
| 88 | 24 | 90 | 4 | | | | | | | | | | |
| 90 | 6 | 90 | 15 | | | | | | | | | | |
| 90 | 18 | 91 | 7 | | | | | | | | | | |
| 91 | 21 | 91 | 25 | | | | | | | | | | |
| 92 | 3 | 92 | 5 | | | | | | | | | | |
| 92 | 7 | 92 | 11 | | | | | | | | | | |
| 92 | 13 | 93 | 9 | | | | | | | | | | |
| 93 | 11 | 93 | 15 | | | | | | | | | | |
| 93 | 24 | 94 | 9 | | | | | | | | | | |
| 94 | 13 | 94 | 15 | | | | | | | | | | |
| 95 | 1 | 95 | 23 | | | | | | | | | | |
| 96 | 2 | 96 | 10 | | | | | | | | | | |
| 96 | 13 | 96 | 19 | | | | | | | | | | |
| 96 | 21 | 97 | 11 | | | | | | | | | | |
| 97 | 16 | 97 | 21 | CO/106 | 97 | 22 | 98 | 5 | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 98 | 7 | 98 | 13 | CO/106 | 98 | 14 | 98 | 18 | | | | | |
| 98 | 19 | 99 | 4 | CO/106 | 99 | 5 | 99 | 9 | | | | | |
| 99 | 12 | 100 | 3 | | | | | | | | | | |
| 100 | 7 | 100 | 9 | | | | | | | | | | |
| 100 | 12 | 100 | 18 | | | | | | | | | | |
| 100 | 20 | 101 | 6 | | | | | | | | | | |
| 101 | 8 | 102 | 12 | CO/106 | 102 | 13 | 102 | 23 | | | | | |
| 102 | 24 | 104 | 11 | | | | | | | | | | |
| 104 | 13 | 105 | 2 | | | | | | | | | | |
| 105 | 18 | 107 | 7 | | | | | | | | | | |
| 107 | 9 | 108 | 10 | | | | | | | | | | |
| 108 | 19 | 108 | 23 | | | | | | | | | | |
| 109 | 1 | 109 | 8 | | | | | | | | | | |
| 109 | 10 | 109 | 14 | | | | | | | | | | |
| 109 | 22 | 111 | 15 | | | | | | | | | | |
| 111 | 17 | 111 | 23 | | | | | | | | | | |
| 112 | 1 | 112 | 4 | | | | | | | | | | |
| 112 | 6 | 112 | 14 | | | | | | | | | | |
| 112 | 16 | 112 | 21 | | | | | | | | | | |
| 112 | 23 | 113 | 8 | | | | | | | | | | |
| 113 | 10 | 113 | 17 | | | | | | | | | | |
| 113 | 19 | 113 | 24 | CO/106 | 113 | 25 | 114 | 4 | | | | | |
| 114 | 5 | 114 | 7 | | | | | | | | | | |
| 114 | 9 | 114 | 9 | | | | | | | | | | |
| 114 | 13 | 114 | 13 | | | | | | | | | | |
| 114 | 18 | 114 | 25 | | | | | | | | | | |
| 115 | 7 | 115 | 8 | | | | | | | | | | |
| 115 | 10 | 115 | 25 | CO/106 | 116 | 1 | 116 | 5 | | | | | |
| 116 | 22 | 117 | 5 | | | | | | | | | | |
| 117 | 9 | 117 | 20 | CO/106 | 117 | 21 | 118 | 2 | | | | | |
| 118 | 3 | 118 | 10 | | | | | | | | | | |
| 118 | 12 | 118 | 20 | CO/106 | 118 | 21 | 118 | 24 | | | | | |
| 118 | 25 | 121 | 11 | CO/106 | 121 | 12 | 121 | 21 | | | | | |
| 121 | 23 | 122 | 18 | | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 123 | 8 | 124 | 7 | 401/402/ 403 | | | | | | | | | |
| 124 | 9 | 125 | 4 | 401/402/ 403 | | | | | | | | | |
| 125 | 8 | 126 | 1 | 401/402/ 403 | | | | | | | | | |
| 126 | 6 | 127 | 5 | | | | | | | | | | |
| 127 | 9 | 127 | 12 | | | | | | | | | | |
| 127 | 16 | 127 | 18 | | | | | | | | | | |
| 127 | 22 | 128 | 2 | | | | | | | | | | |
| 128 | 6 | 129 | 5 | | | | | | | | | | |
| 129 | 18 | 129 | 20 | | | | | | | | | | |
| 130 | 2 | 131 | 2 | CO/106 | 131 | 3 | 131 | 13 | | | | | |
| 131 | 15 | 131 | 17 | | | | | | | | | | |
| 131 | 19 | 132 | 1 | CO/106 | 132 | 2 | 132 | 9 | | | | | |
| 132 | 13 | 133 | 17 | | | | | | | | | | |

| Witness: Jessica Hu | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date of Deposition: February 25, 2026 | | | | | | | | | | | | |
| Initial Designations | | | | | Counterdesignations | | Counter Counter Designation | | | | | |
| Begin Page | Begin Line | End Page | End Line | Objs | Page/Line | Objs | | Begin Page | Begin Line | End Page | End Line | |
| | | | | | | To the extent Philips's affirmative designations are responsive to Quectel's counter designations, Philips reincorporates its affirmative designations into its counter-counter designations. | | | | | | |
| 7 | 17 | 8 | 2 | CO | 8:13-21 | NE; 401/402 | | | | | | |
| 8 | 22 | 8 | 24 | | | | | | | | | |
| 9 | 6 | 10 | 12 | | 9:6-10:9 | CO; 401/402 | | | | | | |
| 10 | 20 | 12 | 2 | 106 | 10:20-11:20; 11:22-12:5 | CO; 401/402; 403 | | | | | | |
| 12 | 9 | 13 | 14 | | 12:9-16; 12:18-22; 12:24-13:14 | NE; 401/402; 403 | | | | | | |
| 13 | 16 | 15 | 4 | 106 | 13:16-14:15; 14:17-15:9 | 401/402; 611 | | | | | | |
| 15 | 7 | 15 | 9 | 106 | 15:25-17:7; 17:10-17; 17:19-18:1; 18:8-11 | NE; 401/402; 403; 611 | | | | | | |
| 15 | 11 | 15 | 23 | | 15:11-23; 17:19-18:1; 18:8-11 | 401/402; 403; 611 | | | | | | |
| 15 | 25 | 15 | 25 | 106 | 15:11-23; 15:25-17:7; 17:10-17; 17:19-18:1; 18:8-11 | NE; 401/402; 403; 611 | | | | | | |
| 16 | 5 | 16 | 23 | 611; 106; 103; 104; 611(VA) | 15:11-23; 15:25-17:7; 17:10-17; 17:19-18:1; 18:8-11 | NE; 401/402; 403; 611 | | | | | | |
| 17 | 1 | 17 | 7 | 611; 106; 103; 104; 611(VA) | 15:11-23; 15:25-17:7; 17:10-17; 17:19-18:1; 18:8-11 | NE; 401/402; 403; 611 | | | | | | |
| 17 | 10 | 17 | 17 | 611; 106; 103; 104; 611(VA) | 15:11-23; 15:25-17:7; 17:10-17; 17:19-18:1; 18:8-11 | NE; 401/402; 403; 611 | | | | | | |
| 17 | 19 | 17 | 20 | 611; 106; 103; 104; 611(VA) | 15:11-23; 15:25-17:7; 17:10-17; 17:19-18:1; 18:8-11 | NE; 401/402; 403; 611 | | | | | | |
| 17 | 24 | 18 | 1 | 611; 106; 103; 104; 611(VA) | 15:11-23; 15:25-17:7; 17:10-17; 17:19-18:1; 18:8-11 | NE; 401/402; 403; 611 | | | | | | |
| 18 | 8 | 18 | 25 | 611; 106; 103; 104; 611(VA) | 18:8-11 | 401/402; 403; 611 | | | | | | |
| 19 | 8 | 21 | 8 | 403; 106; 401/402 | 19:8-21:14 | 401/402; 403; 611 | | | | | | |
| 22 | 8 | 22 | 11 | 401/402; 403 | 23:9-28:4 | 106; 401/402; 602; 611 | | | | | | |
| 23 | 9 | 23 | 14 | 106; 401/402; 403 | 22:8-11; 23:9-28:4 | 401/402; 403; 602; 611 | | | | | | |
| 23 | 23 | 24 | 14 | 106; 401/402; 403 | 22:8-11; 23:9-28:4 | 401/402; 403; 602; 611 | | | | | | |
| 24 | 18 | 25 | 10 | 106; 401/402; 403 | 22:8-11; 23:9-28:4 | 401/402; 403; 602; 611 | | | | | | |
| 25 | 20 | 26 | 10 | 106; 401/402; 403 | 22:8-11; 23:9-28:4 | 401/402; 403; 602; 611 | | | | | | |
| 26 | 14 | 26 | 18 | 106; 401/402; 403 | 22:8-11; 23:9-28:4 | 401/402; 403; 602; 611 | | | | | | |
| 26 | 22 | 27 | 13 | 106; 401/402; 403 | 22:8-11; 23:9-28:4 | 401/402; 403; 602; 611 | | | | | | |
| 27 | 24 | 28 | 6 | 106; 401/402; 403 | 22:8-11; 23:9-28:4; 155:15-20 | 401/402; 403; 611 | | | | | | |
| 28 | 10 | 29 | 7 | 106 | 155:15-20 | 401/402; 403; 611 | | | | | | |
| 29 | 17 | 30 | 15 | | 30:13-15; 30:20-33:17; 155:15-20 | 401/402; 403; 602; 611; 701 | | | | | | |
| 30 | 20 | 30 | 22 | 106 | 30:13-15; 30:20-33:17 | 401/402; 403; 602; 611; 701 | | | | | | |
| 31 | 2 | 31 | 18 | | 30:13-15; 30:20-33:17 | 401/402; 403; 602; 611; 701 | | | | | | |
| 31 | 20 | 33 | 5 | 611; 106; 611(AF); 611(VA) | 30:13-15; 30:20-33:17 | 401/402; 403; 602; 611; 701 | | | | | | |
| 34 | 5 | 34 | 24 | 611; 611(AF); 611(Arg); 611(VA) | 34:5-36:18 | 401/402; 403; 602; 611 | | | | | | |
| 35 | 3 | 35 | 8 | 611; 106; 611(AF); 611(VA) | 34:5-36:18 | 401/402; 403; 602; 611 | | | | | | |
| 35 | 17 | 36 | 4 | 106; 611; 611(AF); 611(VA) | 34:5-36:18 | 401/402; 403; 602; 611 | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Page/Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|
| 36 | 11 | 36 | 18 | 611; 611(AF); 611(Arg); 611(VA) | 34:5-36:18 | 401/402; 403; 602; 611 | | | | |
| 37 | 5 | 37 | 8 | | 37:5-8 | NE; CO; 401/402 | | | | |
| 38 | 5 | 38 | 7 | | | | | | | |
| 39 | 18 | 40 | 21 | | 39:23-42:16 | ILC; 401/402; 403; 602; 611; 701 | | | | |
| 40 | 25 | 41 | 3 | 106 | 39:23-42:16 | ILC; 401/402; 403; 602; 611; 701 | | | | |
| 41 | 8 | 41 | 24 | 106 | 39:23-42:16 | ILC; 401/402; 403; 602; 611; 701 | | | | |
| 42 | 6 | 42 | 16 | | 39:23-42:16 | ILC; 401/402; 403; 602; 611; 701 | | | | |
| 43 | 14 | 46 | 8 | 611; 802; 401/402; 408; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 46 | 14 | 46 | 18 | 611; 802; 401/402; 408; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 46 | 21 | 47 | 3 | 611; 802; 401/402; 408; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 47 | 12 | 49 | 8 | 106; 611; 802; 401/402; 408; CO; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 49 | 19 | 50 | 6 | 611; 802; 401/402; 408; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 50 | 9 | 50 | 11 | 611; 802; 401/402; 408; 611(VA); 403; 106; CO | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 50 | 16 | 50 | 18 | 611; 802; 401/402; 408; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 50 | 20 | 51 | 10 | 106; CO; 611; 802; 401/402; 408; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 51 | 16 | 52 | 19 | 611; 802; 401/402; 408; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 52 | 21 | 53 | 16 | 611; 802; 106; 401/402; 408; CO; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 53 | 25 | 54 | 9 | 611; 702; 802; 106; 401/402; 408; CO; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 54 | 13 | 54 | 14 | 611; 802; 401/402; 408; 611(VA); 403 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 54 | 24 | 55 | 21 | 106; 408 | 43:23-46:8; 46:14-47:3; 47:12-48:12; 48:14-50:6; 50:9-18; 50:20-52:19; 52:21-54:14; 54:24-58:19 | OS; ILC; 401/402; 403; 602; 611; 701; 802; 901 | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Page/Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|
| 55 | 24 | 57 | 2 | | 54:24-58:19 | 401/402; 403; 602; 611; 802; 901 | | | | |
| 57 | 5 | 57 | 23 | 802; 602 | 54:24-58:19 | 401/402; 403; 602; 611; 802; 901 | | | | |
| 58 | 2 | 58 | 15 | | 54:24-58:19 | 401/402; 403; 602; 611; 802; 901 | | | | |
| 58 | 19 | 59 | 3 | 702; ILC; 701; 401/402; 602; CO; 403 | 54:24-58:19; 59:6-20 | 106; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 59 | 5 | 59 | 20 | 611; 702; ILC; 401/402; 602; 403 | 54:24-58:19; 59:6-20; 60:3-61:12 | 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 60 | 2 | 61 | 7 | 611; 702; ILC; 401/402; 602; 403 | 54:24-58:19; 59:6-20; 60:3-61:12 | 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 61 | 11 | 61 | 15 | 401/402; 403 | 60:3-61:12 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 62 | 1 | 62 | 3 | 401/402; 403 | | | | | | |
| 62 | 10 | 62 | 13 | 602 | | | | | | |
| 62 | 18 | 62 | 24 | 602 | | | | | | |
| 63 | 1 | 63 | 3 | | | | | | | |
| 63 | 7 | 63 | 11 | 702; ILC; 106 | 63:15-64:6 | ILC; 106; 401/402; 403; 602; 611; 701 | 63 | 9 | 63 | 12 |
| 63 | 15 | 63 | 21 | 702; ILC; 106 | 63:15-64:6 | ILC; 106; 401/402; 403; 602; 611; 701 | 63 | 9 | 63 | 12 |
| 64 | 9 | 64 | 10 | 702; ILC; 106 | | | | | | |
| 64 | 15 | 64 | 16 | 702; ILC; 106; 611; 611(VA); 611Comp; 611(AF) | | | | | | |
| 65 | 9 | 65 | 13 | 106 | 65:9-19; 65:22-66:17 | 401/402; 403; 611; 701; 802 | | | | |
| 65 | 17 | 65 | 19 | 611; 106; 611(VA) | 65:9-19; 65:22-66:17 | 401/402; 403; 611; 701; 802 | | | | |
| 65 | 22 | 66 | 9 | 106 | 65:9-19; 65:22-66:17 | 401/402; 403; 611; 701; 802 | | | | |
| 66 | 23 | 66 | 23 | | | | | | | |
| 67 | 1 | 67 | 7 | 611; 106; 611(VA) | | | | | | |
| 67 | 9 | 67 | 12 | 611; 602; 611(VA) | | | | | | |
| 67 | 14 | 67 | 17 | 106 | 67:14-21 | 106; 401/402; 403; 611 | | | | |
| 67 | 22 | 68 | 13 | 106 | 67:22-68:15 | 401/402; 602; 611 | | | | |
| 68 | 16 | 69 | 3 | | 155:15-20 | 401/402; 403; 611 | | | | |
| 69 | 7 | 69 | 19 | 611; 602; 611(VA) | | | | | | |
| 69 | 21 | 70 | 4 | 611; 602; 611(VA) | 155:15-20 | 401/402; 403; 611 | | | | |
| 70 | 7 | 70 | 13 | 106 | 70:8-17 | 106; 401/402; 403; 602; 611 | | | | |
| 70 | 18 | 70 | 24 | | | | | | | |
| 72 | 8 | 72 | 25 | | | | | | | |
| 73 | 5 | 74 | 22 | 611; 602; 103 | 73:8-74:20; 75:1-23; 75:25-77:19; 77:25-78:20; 78:22-79:22; 79:25-80:5; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 75 | 1 | 75 | 11 | 106 | 73:8-74:20; 75:1-23; 75:25-77:19; 77:25-78:20; 78:22-79:22; 79:25-80:5; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 75 | 21 | 76 | 6 | CO | 73:8-74:20; 75:1-23; 75:25-77:19; 77:25-78:20; 78:22-79:22; 79:25-80:5; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 76 | 10 | 76 | 17 | 106 | 73:8-74:20; 75:1-23; 75:25-77:19; 77:25-78:20; 78:22-79:22; 79:25-80:5; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 77 | 7 | 77 | 19 | 611; 602; 103 | 73:8-74:20; 75:1-23; 75:25-77:19; 77:25-78:20; 78:22-79:22; 79:25-80:5; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Page/Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|
| 77 | 25 | 78 | 20 | 611; 602; 103 | 73:8-74:20; 75:1-23; 75:25-77:19; 78:22-79:22; 79:25-80:5; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 78 | 22 | 79 | 22 | 611; 611Comp; 103 | 73:8-74:20; 75:1-23; 75:25-77:19; 77:25-78:20; 79:25-80:5; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 79 | 25 | 80 | 5 | 611; 103; 611Comp | 73:8-74:20; 75:1-23; 75:25-77:19; 77:25-78:20; 78:22-79:22; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 80 | 8 | 80 | 24 | 611; 401/402; 103; 403 | 73:8-74:20; 75:1-23; 75:25-77:19; 77:25-78:20; 78:22-79:22; 79:25-80:5; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 81 | 4 | 81 | 6 | 611; 401/402; 103; 403 | 73:8-74:20; 75:1-23; 77:25-78:20; 78:22-79:22; 79:25-80:5; 80:8-18 | ILC; 103; 401/402; 403; 602; 611; 701; 802; 901 | | | | |
| 81 | 10 | 82 | 6 | 611; 611(VA); 408 | 81:10-82:6; 82:9-19 | 401/402; 403; 611; 802 | | | | |
| 82 | 9 | 82 | 12 | | 81:10-82:6; 82:9-19 | 401/402; 403; 611; 802 | | | | |
| 82 | 20 | 82 | 22 | 611; 702; 701 | | | | | | |
| 82 | 25 | 82 | 25 | 611; 702; 701 | | | | | | |
| 83 | 9 | 83 | 20 | | 83:25-84:12; 84:14-85:2 | 401/402; 403; 602 | | | | |
| 83 | 24 | 84 | 6 | 106 | 83:25-84:12; 84:14-85:2 | 401/402; 403; 602 | | | | |
| 84 | 14 | 84 | 19 | 611; 106; 611(VA) | 83:25-84:12; 84:14-85:2 | 401/402; 403; 602 | | | | |
| 84 | 22 | 85 | 5 | 611; 611(VA) | 83:25-84:12; 84:14-85:2 | 401/402; 403; 602 | | | | |
| 85 | 7 | 85 | 18 | 611; ILC; 106; 602; 611(VA) | | | | | | |
| 86 | 15 | 86 | 21 | | 86:15-21; 87:3-18 | 401/402; 802; 901 | | | | |
| 87 | 3 | 87 | 15 | | 86:15-21; 87:3-18 | 401/402; 802; 901 | | | | |
| 87 | 18 | 87 | 18 | | 86:15-21 | 401/402 | | | | |
| 88 | 1 | 89 | 15 | 611; 702; ILC; OS | | | | | | |
| 90 | 8 | 90 | 11 | | | | | | | |
| 90 | 24 | 92 | 17 | 611; 702; ILC; 701; 602; OS | 92:15-17; 92:21-93:12 | ILC; 401/402; 403; 611 | | | | |
| 92 | 21 | 92 | 24 | 611; 702; ILC; 701; 106; 602; OS | 92:15-17; 92:21-93:12; 94:10-15; 94:23-96:18 | ILC; 103; 401/402; 403; 611; 802 | | | | |
| 93 | 4 | 93 | 8 | | 92:15-17; 92:21-93:12; 94:10-15; 94:23-96:18 | ILC; 103; 401/402; 403; 611; 802 | | | | |
| 94 | 10 | 94 | 19 | 611; 702; ILC; 701; 106; 602; OS | 94:10-15; 94:23-96:18 | ILC; 103; 401/402; 403; 611; 802 | | | | |
| 94 | 23 | 96 | 5 | 611; 702; ILC; 701; 106; 602; OS | 94:23-96:18 | ILC; 103; 401/402; 403; 611; 802 | | | | |
| 96 | 9 | 96 | 16 | | 94:23-96:18 | ILC; 103; 401/402; 403; 611; 802 | | | | |
| 96 | 18 | 97 | 2 | 611; 702; ILC; 701; 106; 602; OS | | | | | | |
| 97 | 5 | 97 | 8 | 611; 702; ILC; 701; 602; OS | | | | | | |
| 97 | 11 | 97 | 12 | 611; 702; ILC; 701; 602; OS | | | | | | |
| 97 | 21 | 97 | 21 | 611; 702; ILC; 701; 602; OS | | | | | | |
| 99 | 25 | 99 | 25 | | | | | | | |
| 100 | 5 | 100 | 11 | | | | | | | |
| 100 | 13 | 100 | 21 | 103; 611 | | | | | | |
| 100 | 24 | 101 | 12 | 611; 103 | | | | | | |
| 101 | 15 | 102 | 12 | 611; 408 | 102:5-20 | 401/402; 403; 602; 611; 701 | | | | |
| 102 | 14 | 103 | 4 | 611; 602; 611(AF); 611(VA) | 102:5-20 | 401/402; 403; 602; 611; 701 | | | | |
| 103 | 8 | 103 | 17 | | 103:9-106:20 | 401/402, 403; 602; 611; 802 | | | | |
| 103 | 21 | 104 | 6 | | 103:9-106:20 | 401/402, 403; 602; 611; 802 | | | | |
| 104 | 8 | 104 | 19 | | 103:9-106:20 | 401/402, 403; 602; 611; 802 | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Page/Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|
| 104 | 22 | 106 | 20 | | 103:9-106:20 | 401/402, 403; 602; 611; 802 | | | | |
| 107 | 3 | 107 | 24 | 408 | 107:3-13 | 401/402 | | | | |
| 108 | 1 | 108 | 21 | 408; 106 | 107:3-13; 108:11-24 | 401/402; 602 | | | | |
| 108 | 25 | 110 | 3 | CO; 403; 401/402 | 110:8-111:5 | 401/402; 403; 611 | | | | |
| 110 | 7 | 110 | 18 | 611; 106; 403; 401/402 | 110:8-111:5 | 401/402; 403; 611 | | | | |
| 111 | 1 | 111 | 8 | 611; 106; 401/402; 403 | 110:8-111:5 | 401/402; 403; 611 | | | | |
| 111 | 13 | 111 | 18 | 611; 106; 401/402; 403 | 110:8-111:5 | 401/402; 403; 611 | | | | |
| 112 | 3 | 112 | 4 | | | | | | | |
| 112 | 11 | 113 | 9 | | 113:16-114:18; 115:18-116:21 | ILC; 106; 401/402; 403; 611; 802 | | | | |
| 113 | 16 | 113 | 23 | 106 | 112:11-113:9; 113:16-114:18; 115:18-116:21 | ILC; 401/402; 403; 611; 802 | | | | |
| 114 | 13 | 114 | 24 | 611; 106; 401/402; 403 | 112:11-113:9; 113:16-114:18; 115:18-116:21 | ILC; 401/402; 403; 611; 802 | | | | |
| 115 | 18 | 116 | 15 | 611; 401/402; 403 | 112:11-113:9; 113:16-114:18; 115:18-116:21 | ILC; 401/402; 403; 611; 802 | | | | |
| 116 | 19 | 117 | 6 | 611; ILC; 401/402; 403 | 112:11-113:9; 113:16-114:18; 115:18-116:21 | ILC; 401/402; 403; 611; 802 | | | | |
| 117 | 13 | 117 | 19 | 611; ILC; 401/402; 403 | | | | | | |
| 117 | 21 | 118 | 18 | ILC | 117:22-118:18; 124:14-18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 118 | 21 | 118 | 25 | ILC; 401/402; 403; OS | 117:22-118:18; 122:5-8 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 119 | 2 | 119 | 5 | ILC; OS; 401/402; 403 | 117:22-118:18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 119 | 10 | 119 | 12 | 401/402; 403; ILC; OS | 117:22-118:18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 119 | 19 | 120 | 4 | ILC; 401/402; OS; 403 | 117:22-118:18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 120 | 6 | 120 | 8 | ILC; 401/402; OS; 403 | | | | | | |
| 120 | 10 | 120 | 11 | ILC; 401/402; OS; 403 | | | | | | |
| 120 | 15 | 121 | 10 | ILC; 401/402; OS; 403; 106 | 117:22-118:18; 121:3-16; 122:5-8; 124:14-18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 121 | 17 | 121 | 21 | | 124:14-18 | 401/402; 611 | | | | |
| 121 | 25 | 122 | 13 | | 117:22-118:18; 122:5-8; 124:14-18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 122 | 16 | 122 | 24 | 103 | | | | | | |
| 123 | 2 | 123 | 5 | 106 | 123:2-9 | 106; 401/402; 403 | | | | |
| 123 | 10 | 123 | 13 | 106 | 123:10-16 | 401/402; 611 | | | | |
| 123 | 17 | 124 | 4 | 106 | 123:17-124:6 | 401/402; 403; 602 | | | | |
| 124 | 7 | 124 | 8 | ILC; 106; 401/402; OS; 403 | | | | | | |
| 124 | 11 | 124 | 20 | 611; ILC; 106; 401/402; OS; 403 | 117:22-118:18; 122:5-8 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 124 | 24 | 125 | 1 | OS; 106; 403; 401/402; 611; ILC | 122:5-8 | 401/402; 403; 611 | | | | |
| 125 | 4 | 125 | 20 | 611; ILC; 106; 401/402; OS; 403 | 117:22-118:18; 122:5-8; 124:14-18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 125 | 25 | 126 | 5 | 611; ILC; 106; 401/402; OS; 403 | 117:22-118:18; 122:5-8; 124:14-18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 126 | 8 | 126 | 14 | 611; ILC; 106; 401/402; OS; 403 | 117:22-118:18; 122:5-8; 124:14-18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 127 | 17 | 127 | 18 | | | | | | | |
| 127 | 21 | 128 | 3 | 611; ILC; 106; 401/402; OS; 403 | 117:22-118:18; 122:5-8; 124:14-18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 128 | 6 | 128 | 8 | 611; ILC; 106; 401/402; OS; 403 | 128:6-11 | 106; 401/402; 602; 611 | | | | |
| 128 | 12 | 128 | 17 | 611; ILC; 106; 401/402; OS; 403 | 117:22-118:18; 122:5-8; 124:14-18 | ILC; 106; 401/402; 403; 602; 611; 802 | | | | |
| 129 | 8 | 129 | 9 | 401/402; 403 | | | | | | |
| 129 | 12 | 129 | 16 | 401/402; 403 | | | | | | |
| 129 | 24 | 129 | 24 | 401/402; 403 | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Page/Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|
| 130 | 9 | 130 | 13 | 401/402; 403 | | | | | | |
| 130 | 20 | 130 | 22 | 401/402; 403 | | | | | | |
| 130 | 24 | 131 | 6 | 401/402; 403 | | | | | | |
| 131 | 11 | 131 | 12 | 401/402; 403 | | | | | | |
| 131 | 14 | 131 | 16 | 401/402; 403 | | | | | | |
| 131 | 19 | 131 | 25 | 401/402; 403 | | | | | | |
| 132 | 11 | 132 | 23 | 401/402; 403 | | | | | | |
| 133 | 1 | 133 | 3 | 401/402; 403 | | | | | | |
| 133 | 5 | 133 | 13 | 401/402; 403 | | | | | | |
| 133 | 16 | 133 | 19 | 611; ILC; 106; 401/402; OS; 403 | | | | | | |
| 134 | 1 | 134 | 13 | 611; ILC; 106; 401/402; OS; 403 | | | | | | |
| 134 | 17 | 134 | 23 | 401/402; 403 | | | | | | |
| 136 | 8 | 136 | 19 | 611; 103 | 136:23-137:25; 138:3-140:10; 140:17-142:3 | 106; 401/402; 403; 611; 701; 802; | | | | |
| 136 | 23 | 137 | 18 | | 136:8-19; 136:23-137:25; 138:3-140:10; 140:17-142:3 | 401/402; 403; 611; 701; 802 | | | | |
| 137 | 22 | 137 | 25 | | 136:8-19; 136:23-137:25; 138:3-140:10; 140:17-142:3 | 401/402; 403; 611; 701; 802 | | | | |
| 138 | 3 | 140 | 10 | 401/402; 403 | 136:8-19; 136:23-137:25; 140:17-142:3 | 106; 401/402; 403; 611; 701; 802 | | | | |
| 140 | 17 | 141 | 8 | 106; 401/402; 403 | 138:3-140:10; 140:17-142:3 | 106; 401/402; 403; 611; 701; 802 | | | | |
| 142 | 12 | 143 | 9 | 611 | 144:9-145:2; 156:4-157:3 | 106; 401/402; 403; 602; 611; 802 | | | | |
| 143 | 12 | 143 | 22 | 611; 401/402; 103; OS; 403 | 144:9-145:2 | 106; 401/402; 403; 602; 611; 802 | | | | |
| 143 | 24 | 144 | 5 | 611; 401/402; 103; OS; 403 | 144:9-145:2; 156:4-157:3 | 106; 401/402; 403; 602; 611; 802 | | | | |
| 144 | 9 | 144 | 17 | 611; 106; 401/402; 103; OS; 403 | 144:9-145:2; 156:4-157:3 | 106; 401/402; 403; 602; 611; 802 | | | | |
| 145 | 3 | 145 | 4 | | 147:24-148:25; 156:4-157:3; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 145 | 6 | 145 | 11 | 611; 401/402; OS; 403 | 147:24-148:25; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 145 | 13 | 145 | 19 | 611; 702; ILC; 701; 401/402; OS; 403 | 147:1-17; 147:24-148:25; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 145 | 22 | 146 | 1 | 611; 702; ILC; 701; 401/402; OS; 403 | 147:1-17; 147:24-148:25; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 146 | 5 | 146 | 11 | 611; 702; ILC; 701; 106; 401/402; OS; 403 | 146:5-20; 147:1-17; 147:24-148:25; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 146 | 21 | 146 | 23 | 702; 611; ILC; 106; 401/402; OS; 403; 701 | 147:1-17; 147:24-148:25; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 147 | 1 | 147 | 8 | 611; 702; ILC; 701; 106; 401/402; OS; 403 | 147:1-17; 147:24-148:25; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 147 | 18 | 147 | 21 | 611; 702; ILC; 701; 401/402; OS; 403 | 147:1-17; 147:24-148:25; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 147 | 24 | 148 | 8 | 611; 702; ILC; 701; 106; 401/402; OS; 403 | 147:1-17; 147:24-148:25; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 148 | 14 | 148 | 19 | 611; 702; ILC; 701; 106; 401/402; OS; 403 | 147:24-148:25; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 149 | 15 | 149 | 17 | 611 | 157:6-12; 157:14-14; 157:19-24 | 401/402; 403; 602; 611 | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Page/Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|
| 150 | 7 | 150 | 14 | 611; 702; ILC; 701; 602; 611(AF); 611(VA) | 150:21-151:5; 151:14-152:12; 152:18-153:21; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 150 | 21 | 150 | 24 | 611; 702; ILC; 701; 106; 602; 611(AF); 611(VA) | 150:21-151:5; 151:14-152:12; 152:18-153:21; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 151 | 6 | 151 | 10 | 611; 702; ILC; 701; 106; 401/402; OS; 403 | 150:21-151:5; 151:14-152:12; 152:18-153:21; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 151 | 13 | 151 | 19 | 611; 702; ILC; 701; 106; 401/402; OS; 403 | 150:21-151:5; 151:14-152:12; 152:18-153:21; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 152 | 5 | 152 | 7 | 611; 702; ILC; 701; 106; 602; 611(AF); 611(VA) | 151:14-152:12; 152:18-153:21; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 152 | 13 | 152 | 15 | 611; 702; ILC; 701; 602; 611(AF); 611(VA) | 151:14-152:12; 152:18-153:21; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 152 | 18 | 154 | 2 | 701; 602; 611(AF); 702; 611; ILC; 611(VA) | 151:14-152:12; 152:18-153:21; 157:6-12; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611; 701 | | | | |
| 154 | 7 | 154 | 9 | | 152:18-153:21; 157:14-14; 157:19-24 | 106; 401/402; 403; 602; 611 | | | | |
| 154 | 12 | 154 | 18 | 401/402; CO | 152:18-153:21; 157:19-24 | 106; 401/402; 611 | | | | |
| 155 | 15 | 155 | 23 | | | | | | | |
| 156 | 4 | 156 | 19 | | | | | | | |
| 156 | 23 | 157 | 3 | | | | | | | |
| 157 | 6 | 157 | 14 | CO | | | | | | |

| *KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD., ET AL.* Case No. 1:20-CV-1710-CFC KONINKLIJKE PHILIPS N.V.'S DEPOSITION DESIGNATIONS | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Witness: William Steinike (ITC Investigation No. 337-TA-1240)** | | | | | | | | | | | | | |
| **Date of Deposition: June 18, 2021** | | | | | | | | | | | | | |
| **Initial Designations** | | | | | **Counterdesignations** | | | | **Counter Counter Designation** | | | | |
| **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** |
| 7 | 12 | 7 | 16 | CO; NE | | | | | | | | | |
| 7 | 20 | 8 | 12 | CO; NE | | | | | | | | | |
| 9 | 24 | 10 | 18 | NE | | | | | | | | | |
| 12 | 7 | 13 | 7 | 611(VA); 602 | | | | | | | | | |
| 13 | 9 | 13 | 10 | 611(VA); 602 | | | | | | | | | |
| 13 | 22 | 13 | 23 | 106; 611(VA) | | | | | | | | | |
| 13 | 25 | 14 | 6 | 611(VA); 602 | | | | | | | | | |
| 14 | 8 | 15 | 1 | 611(VA); 611(NR) | | | | | | | | | |
| 15 | 4 | 15 | 13 | 611(NR); 103 | | | | | | | | | |
| 15 | 16 | 16 | 11 | 611(VA); 602 | | | | | | | | | |
| 16 | 13 | 17 | 5 | 611(VA); 602 | | | | | | | | | |
| 17 | 8 | 17 | 19 | 611(VA) | | | | | | | | | |
| 17 | 22 | 18 | 24 | 401/402; 611(VA); 611(NR) | | | | | | | | | |
| 19 | 2 | 19 | 7 | 701; ILC | | | | | | | | | |
| 19 | 10 | 19 | 14 | ILC; 103 | | | | | | | | | |
| 19 | 16 | 20 | 16 | 611(VA) | | | | | | | | | |
| 20 | 18 | 21 | 2 | 611(VA); 602 | | | | | | | | | |
| 21 | 4 | 21 | 20 | 611(VA); 602 | | | | | | | | | |
| 22 | 4 | 22 | 6 | 106; 611(VA) | | | | | | | | | |
| 22 | 9 | 22 | 21 | 401/402 | | | | | | | | | |
| 22 | 23 | 23 | 8 | 611(VA); 602 | | | | | | | | | |
| 23 | 11 | 23 | 19 | 611(Comp); 602 | | | | | | | | | |
| 23 | 22 | 24 | 3 | 611(Comp); 602 | | | | | | | | | |
| 24 | 6 | 24 | 9 | 106; 602 | | | | | | | | | |
| 24 | 11 | 25 | 5 | 611(VA); 611(NR); 602 | | | | | | | | | |
| 25 | 14 | 25 | 19 | 611(VA) | | | | | | | | | |
| 25 | 21 | 26 | 7 | 602 | | | | | | | | | |
| 26 | 10 | 27 | 5 | 611(VA); 602 | 26 | 13 | 27 | 8 | 611; CO | | | | |
| 27 | 7 | 27 | 11 | 602 | | | | | | | | | |
| 27 | 14 | 27 | 19 | 611(VA); 602 | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 28 | 2 | 28 | 6 | 611(VA) | 28 | 2 | 28 | 6 | 611 | | | | |
| 28 | 8 | 28 | 19 | 611(VA) | 28 | 8 | 28 | 17 | 611 | | | | |
| 28 | 21 | 29 | 11 | 602 | 28 | 21 | 29 | 4 | 611 | | | | |
| 29 | 13 | 29 | 15 | 106; 602 | | | | | | | | | |
| 30 | 3 | 30 | 5 | 106; 602 | | | | | | | | | |
| 30 | 8 | 30 | 11 | 611(Comp); 611(NR) | | | | | | | | | |
| 30 | 13 | 30 | 23 | 611(Comp); 602 | | | | | | | | | |
| 30 | 25 | 31 | 1 | 611(VA) | 32 | 5 | 32 | 8 | 611; 401; 402/403 | | | | |
| 32 | 22 | 33 | 7 | 602 | 32 | 10 | 32 | 12 | 611; 401; 402/403; 602 | | | | |
| 33 | 9 | 33 | 21 | 611(VA); 602 | 32 | 14 | 32 | 16 | 611; 401; 402/403 | | | | |
| 33 | 24 | 34 | 4 | 611(VA); 602 | 32 | 18 | 32 | 20 | 611; 401; 402/403; 602 | | | | |
| 34 | 7 | 35 | 6 | 611(Comp); 602 | 34 | 10 | 35 | 6 | 611 | | | | |
| 35 | 9 | 35 | 17 | 611(VA); 602 | 35 | 9 | 35 | 10 | 611 | | | | |
| 35 | 19 | 36 | 15 | 611(VA); 602 | | | | | | | | | |
| 36 | 19 | 37 | 6 | OS; 401/402; 611(VA) | 36 | 23 | 37 | 1 | 611 | | | | |
| 37 | 9 | 37 | 13 | 611(Comp); 602 | | | | | | | | | |
| 37 | 15 | 39 | 14 | 611(VA); 611(NR); 602; 403 | | | | | | | | | |
| 40 | 23 | 41 | 5 | 602 | 40 | 10 | 41 | 2 | 611; 401; 402/403; 602 | | | | |
| 41 | 8 | 41 | 21 | 611(VA) | 41 | 13 | 41 | 13 | 611; 411; 4113/413; 611(VA) | | | | |
| 41 | 23 | 42 | 11 | 611(VA) | 41 | 15 | 41 | 21 | 611 | | | | |
| 42 | 13 | 42 | 23 | | | | | | | | | | |
| 43 | 1 | 43 | 8 | 401/402; 611(VA) | | | | | | | | | |
| 43 | 14 | 44 | 13 | 602; 701 | | | | | | | | | |
| 44 | 20 | 44 | 25 | 611(Comp); 611(NR) | | | | | | | | | |
| 45 | 2 | 45 | 4 | 106; 611(VA) | | | | | | | | | |
| 45 | 14 | 47 | 7 | 602; 403 | | | | | | | | | |
| 47 | 14 | 48 | 5 | 611(VA); 401/402 | | | | | | | | | |
| 48 | 8 | 48 | 10 | 401/402; 602 | | | | | | | | | |
| 48 | 16 | 48 | 24 | 602 | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 49 | 6 | 49 | 8 | 106; 611(NR) | | | | | | | | | |
| 49 | 10 | 49 | 10 | 106; 611(VA) | | | | | | | | | |
| 49 | 12 | 49 | 14 | 106; 602 | | | | | | | | | |
| 51 | 11 | 51 | 24 | 611(VA); 602 | | | | | | | | | |
| 52 | 2 | 52 | 6 | 602 | | | | | | | | | |
| 52 | 8 | 52 | 11 | 602 | | | | | | | | | |
| 52 | 15 | 52 | 18 | 611(VA); 602 | | | | | | | | | |
| 52 | 20 | 53 | 5 | 611(VA); 611(NR) | | | | | | | | | |
| 53 | 7 | 53 | 24 | 602 | 53 | 21 | 53 | 24 | 611 | | | | |
| 54 | 5 | 54 | 8 | 611(Lead) | 54 | 2 | 54 | 3 | 611; 602; 401/402; 403 | | | | |
| 55 | 9 | 56 | 6 | CO; 602 | 54 | 5 | 54 | 8 | 611; 401/402; 403 | | | | |
| 56 | 14 | 56 | 21 | CO | | | | | | | | | |
| 56 | 24 | 57 | 1 | 611(VA) | | | | | | | | | |
| 58 | 15 | 59 | 3 | 611(NR); 602 | | | | | | | | | |
| 59 | 5 | 60 | 4 | 611(VA); 602 | | | | | | | | | |
| 62 | 16 | 63 | 14 | 602; ILC; 403 | | | | | | | | | |
| 63 | 20 | 64 | 10 | 611(VA) | | | | | | | | | |
| 64 | 12 | 65 | 10 | 602 | | | | | | | | | |
| 66 | 5 | 66 | 7 | 106; ILC | 66 | 5 | 66 | 7 | 611 | | | | |
| 66 | 10 | 66 | 16 | 403; ILC | 66 | 10 | 66 | 12 | 611 | | | | |
| 66 | 18 | 66 | 21 | 403; ILC | | | | | | | | | |
| 66 | 24 | 66 | 24 | 106; 401/402 | | | | | | | | | |
| 67 | 24 | 67 | 25 | 106; 611(VA) | | | | | | | | | |
| 68 | 3 | 68 | 11 | 602 | | | | | | | | | |
| 68 | 13 | 69 | 12 | 611(VA); 602 | | | | | | | | | |
| 69 | 16 | 69 | 23 | 611(VA) | | | | | | | | | |
| 69 | 25 | 70 | 15 | 611(VA); 611(NR) | | | | | | | | | |

| *KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD., ET AL.*<br>Case No. 1:20-CV-1710-CFC<br>KONINKLIJKE PHILIPS N.V.'S DEPOSITION DESIGNATIONS | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Witness: Andy Wu** | | | | | | | | | | | | | | |
| **Date of Deposition: February 25, 2026** | | | | | | | | | | | | | | |
| **Initial Designations** | | | | | **Counterdesignations** | | | | **Counter Counter Designation** | | | | | |
| **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** | |
| 6 | 24 | 7 | 13 | CO; NE | | | | | | | | | | |
| 7 | 18 | 8 | 11 | CO; NE | | | | | | | | | | |
| 8 | 13 | 10 | 1 | 401/402; 611(Comp); 611(VA) | | | | | | | | | | |
| 10 | 8 | 10 | 9 | 401/402 | | | | | | | | | | |
| 11 | 1 | 12 | 7 | 401/402; 611(Comp) | | | | | | | | | | |
| 12 | 10 | 13 | 10 | 401/402; 611(Comp); 611(VA) | | | | | | | | | | |
| 13 | 13 | 14 | 6 | 602; 611(VA) | | | | | | | | | | |
| 14 | 10 | 14 | 18 | 611(VA) | | | | | | | | | | |
| 14 | 20 | 15 | 5 | 401/402; 611(AF) | | | | | | | | | | |
| 15 | 7 | 15 | 13 | 401/402; 611(AF) | | | | | | | | | | |
| 15 | 15 | 15 | 25 | 401/402; 611(Comp); 611(VA) | | | | | | | | | | |
| 16 | 4 | 16 | 16 | 401/402; 611(AF); 611(Comp); 611(VA) | | | | | | | | | | |
| 16 | 18 | 16 | 20 | 106; 401/402; 611(AF); 611(Comp); 611(VA) | 16 | 23 | 16 | 24 | | | | | | |
| 17 | 1 | 18 | 19 | OS; 401/402; 403; 602; 611(Arg); 611(Lead); 611(Comp); 611(VA) | | | | | | | | | | |
| 18 | 23 | 19 | 5 | 106; 401/402 | 19 | 8 | 19 | 10 | | | | | | |
| 19 | 12 | 19 | 13 | 402/402; 611(AF); 611(VA) | | | | | | | | | | |
| 19 | 18 | 20 | 6 | 103; 401/402; 611(Lead) | | | | | | | | | | |
| 20 | 10 | 21 | 8 | 401/402 | | | | | | | | | | |
| 21 | 12 | 21 | 18 | 401/402; 403 | | | | | | | | | | |
| 21 | 23 | 23 | 13 | CO; 602; 611(Lead); 611(VA) | | | | | | | | | | |
| 23 | 19 | 24 | 16 | 602; 611(VA) | | | | | | | | | | |
| 24 | 21 | 25 | 17 | CO; 602; 611(VA) | | | | | | | | | | |
| 25 | 22 | 26 | 21 | 403; 602; 611(VA) | | | | | | | | | | |
| 26 | 23 | 27 | 8 | 602 | | | | | | | | | | |
| 27 | 13 | 28 | 1 | OS; 602; 611(VA) | | | | | | | | | | |
| 28 | 5 | 28 | 12 | OS; 602; 611(Lead); 611(VA) | | | | | | | | | | |
| 28 | 14 | 30 | 3 | OS; 403; 602; 611(VA) | | | | | | | | | | |
| 30 | 7 | 31 | 3 | OS; 403; 602; 611(VA) | | | | | | | | | | |
| 31 | 6 | 32 | 8 | OS; 403; 602; 611(VA) | | | | | | | | | | |
| 32 | 10 | 32 | 16 | OS; 403; 602; 611(Comp); 611(VA) | | | | | | | | | | |
| 32 | 18 | 32 | 24 | OS; 401/402; 611(VA) | | | | | | | | | | |
| 33 | 12 | 34 | 9 | OS; 602; 611(Comp); 611(Lead); 611(VA) | | | | | | | | | | |
| 34 | 14 | 34 | 24 | OS; 602; 611(Comp); 611(Lead); 611(VA) | | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 35 | 1 | 35 | 6 | OS; 602; 611(VA) | | | | | | | | | |
| 35 | 10 | 35 | 13 | OS; 602; 611(VA) | | | | | | | | | |
| 35 | 17 | 36 | 1 | OS; 602; 611(Lead); 611(VA) | | | | | | | | | |
| 36 | 3 | 36 | 18 | OS; 602; 611(VA) | | | | | | | | | |
| 36 | 20 | 36 | 25 | OS; 401/402; 602; 611(VA) | | | | | | | | | |
| 38 | 7 | 38 | 14 | NE | | | | | | | | | |
| 38 | 18 | 40 | 1 | OS; 602; 611(AF); 611(VA) | | | | | | | | | |
| 40 | 4 | 40 | 20 | 602; 611(AF); 611(Lead); 611(VA) | | | | | | | | | |
| 40 | 24 | 41 | 14 | 602; 611(VA) | | | | | | | | | |
| 41 | 16 | 42 | 5 | OS; 106; 602; 611(VA) | 42 | 8 | 42 | 10 | | | | | |
| 42 | 12 | 42 | 13 | 106; 403 | | | | | | | | | |
| 42 | 16 | 43 | 15 | CO; 401/402; 611(VA) | | | | | | | | | |
| 43 | 23 | 44 | 6 | 106; 403 | | | | | | | | | |
| 44 | 9 | 44 | 18 | 106; 403 | | | | | | | | | |
| 44 | 21 | 45 | 9 | CO; 106; 403 | | | | | | | | | |
| 45 | 16 | 45 | 24 | 106; 403 | | | | | | | | | |

***KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD., ET AL.***

**Case No. 1:20-CV-1710-CFC**

**KONINKLIJKE PHILIPS N.V.'S DEPOSITION DESIGNATIONS**

**Witness: Joel Young (ITC Investigation No. 337-TA-1240)**

**Date of Deposition: June 21, 2021**

| Initial Designations | | | | | Counterdesignations | | | | Counter Counter Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
| 8 | 22 | 8 | 25 | 401/402; CO; NE | | | | | | | | | |
| 9 | 4 | 12 | 14 | 401/402; 602; 611(VA) | | | | | | | | | |
| 14 | 9 | 15 | 12 | 602; 611(VA); ILC; NE | | | | | | | | | |
| 15 | 14 | 15 | 22 | 106; 602; 611(VA); CO | | | | | | | | | |
| 15 | 24 | 16 | 14 | 401/402; 602 | | | | | | | | | |
| 17 | 6 | 18 | 16 | 401/402 | | | | | | | | | |
| 19 | 21 | 21 | 13 | 401/402; 602; CO; NE | | | | | | | | | |
| 21 | 16 | 21 | 18 | 106; 401/402; CO; NE | | | | | | | | | |
| 22 | 22 | 23 | 6 | 602; 611(Lead); NE | | | | | | | | | |
| 23 | 18 | 25 | 3 | 602; OS; CO; NE | | | | | | | | | |
| 25 | 20 | 27 | 17 | 401/402; OS; CO; NE | | | | | | | | | |
| 27 | 21 | 30 | 2 | 401/402; 602; 611(VA); CO; ILC | | | | | | | | | |
| 32 | 7 | 32 | 12 | 401/402; 602 | | | | | | | | | |
| 33 | 8 | 33 | 9 | 106; 602; 611(NR); 401/402; 611(Lead) | | | | | | | | | |
| 33 | 11 | 35 | 21 | 106; 602; 611(NR); 401/402; 611(Lead) | | | | | | | | | |
| 36 | 7 | 36 | 10 | 106; 611(VA); OS; NE | 36 | 7 | 36 | 10 | 401/402/403/611 | | | | |
| 36 | 17 | 39 | 23 | 602; 611(VA); OS; CO | 36 | 18 | 37 | 5 | 401/402/403/611/701 | | | | |
| 40 | 4 | 42 | 11 | 611(VA); OS; CO | | | | | | | | | |
| 42 | 15 | 42 | 19 | 106; 611(Comp); 611(VA); OS | | | | | | | | | |
| 42 | 22 | 43 | 3 | 106; 602; 611(VA) | | | | | | | | | |
| 43 | 5 | 43 | 11 | 106; 602; 611(VA) | 43 | 9 | 44 | 7 | 401/402/403/611 | | | | |
| 43 | 13 | 44 | 11 | OS | 44 | 9 | 44 | 11 | 401/402/403/611 | | | | |
| 44 | 14 | 44 | 22 | 602; 701; OS | 44 | 14 | 44 | 16 | 401/402/403/602/611 | | | | |
| 45 | 2 | 45 | 17 | 602; ERR; OS; CO | | | | | | | | | |
| 46 | 8 | 46 | 12 | 602; ERR | | | | | | | | | |
| 46 | 16 | 47 | 24 | 602; 611(VA); 611(Lead); OS | | | | | | | | | |
| 48 | 3 | 48 | 19 | 401/402; OS | | | | | | | | | |
| 48 | 23 | 50 | 4 | 611(Comp); 611(Lead); OS; CO | | | | | | | | | |
| 50 | 8 | 53 | 13 | 611(VA); OS | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 53 | 16 | 53 | 23 | 602; 611(Lead); OS; CO | | | | | | | | | |
| 54 | 2 | 54 | 12 | OS; CO | | | | | | | | | |
| 54 | 15 | 55 | 3 | 602; 611(VA); OS | | | | | | | | | |
| 55 | 13 | 55 | 14 | 106; OS; NE | | | | | | | | | |
| 55 | 17 | 55 | 22 | 106; OS; NE | | | | | | | | | |
| 55 | 24 | 56 | 10 | OS; CO | | | | | | | | | |
| 56 | 12 | 56 | 18 | OS; CO; NE; ILC | | | | | | | | | |
| 56 | 20 | 59 | 9 | 602; 611(VA); OS | | | | | | | | | |
| 59 | 13 | 59 | 14 | 106; 602; 701; OS | | | | | | | | | |
| 59 | 17 | 59 | 23 | 611(VA); OS | | | | | | | | | |
| 60 | 3 | 61 | 15 | 602; OS | | | | | | | | | |
| 62 | 6 | 63 | 13 | 401/402; 408; 602 | | | | | | | | | |
| 63 | 17 | 65 | 8 | OS; CO | | | | | | | | | |
| 65 | 16 | 66 | 12 | 611(Lead); OS; CO | | | | | | | | | |
| 66 | 14 | 68 | 24 | 602; OS; CO; NE | 66 | 22 | 67 | 13 | 401/402/403 | | | | |
| 69 | 3 | 69 | 20 | 611(Lead); OS; CO | | | | | | | | | |
| 70 | 5 | 70 | 7 | 106; OS; NE | | | | | | | | | |
| 70 | 9 | 72 | 7 | 602; 611(VA); OS; CO | | | | | | | | | |
| 72 | 9 | 79 | 12 | 403; 602; 611(VA); OS; CO | | | | | | | | | |
| 79 | 14 | 80 | 25 | 611(VA); OS | | | | | | | | | |
| 81 | 9 | 82 | 14 | 611(VA); OS | | | | | | | | | |
| 82 | 16 | 86 | 12 | 403; 602; 611(VA); 611(Lead); OS; CO | 83 | 3 | 83 | 6 | 401/402/403/602/611/701 | | | | |
| 86 | 14 | 86 | 25 | 401/402; 602; OS; CO | 85 | 7 | 85 | 16 | 401/402/403 | | | | |
| 87 | 20 | 95 | 5 | 401/402; 403; 602; 611(VA); 701; OS; CO | 97 | 24 | 98 | 10 | 106/401/402/403/602/611/NE | 98 | 11 | 98 | 13 |
| 101 | 11 | 104 | 17 | 602; 611(VA) | 99 | 7 | 101 | 9 | 401/402/403/602/611 | | | | |
| 104 | 19 | 105 | 10 | 611(Lead); CO | 101 | 11 | 101 | 22 | 401/402/403/602/611 | | | | |
| 105 | 13 | 108 | 12 | 103; 602; 611(VA); CO | | | | | | | | | |
| 108 | 16 | 110 | 24 | 103; 602; 611(VA); CO | | | | | | | | | |
| 111 | 20 | 114 | 13 | 401/402; 602; 611(Lead); 802; CO | | | | | | | | | |
| 114 | 18 | 115 | 3 | 401/402; 602; CO | | | | | | | | | |
| 118 | 4 | 118 | 12 | 106; 611(Lead); CO | 118 | 4 | 118 | 9 | 401/402/403/602 | | | | |
| 118 | 14 | 118 | 18 | 106; 611(Lead); CO | 119 | 5 | 119 | 21 | 401/402/403/611 | | | | |
| 118 | 20 | 118 | 24 | 106; 611(Lead); CO | | | | | | | | | |
| 119 | 2 | 120 | 4 | 602; 611(VA) | | | | | | | | | |
| 122 | 6 | 123 | 14 | 602; 611(VA); CO | | | | | | | | | |
| 128 | 12 | 129 | 2 | 401/402; 602 | | | | | | | | | |
| 130 | 9 | 133 | 19 | 401/402; 602; 611(VA) | | | | | | | | | |

| *KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD., ET AL.* Case No. 1:20-CV-1710-CFC KONINKLIJKE PHILIPS N.V.'S DEPOSITION DESIGNATIONS | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Witness: Ivan Zhang** | | | | | | | | | | | | | |
| **Date of Deposition: February 26, 2026** | | | | | | | | | | | | | |
| **Initial Designations** | | | | | **Counterdesignations** | | | | **Counter Counter Designation** | | | | |
| **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** | **Objs** | **Begin Page** | **Begin Line** | **End Page** | **End Line** |
| 7 | 1 | 7 | 14 | CO; NE | 35 | 11 | 35 | 16 | | | | | |
| 7 | 19 | 9 | 17 | | 83 | 4 | 83 | 13 | | | | | |
| 9 | 24 | 10 | 3 | | 83 | 24 | 84 | 2 | | | | | |
| 10 | 6 | 10 | 19 | | 84 | 16 | 84 | 19 | | | | | |
| 10 | 23 | 11 | 2 | | 87 | 22 | 87 | 25 | | | | | |
| 11 | 22 | 13 | 2 | | 88 | 1 | 88 | 4 | | | | | |
| 13 | 4 | 13 | 14 | | | | | | | | | | |
| 13 | 23 | 14 | 6 | | | | | | | | | | |
| 14 | 19 | 16 | 1 | | | | | | | | | | |
| 16 | 5 | 16 | 8 | | | | | | | | | | |
| 16 | 18 | 16 | 25 | | | | | | | | | | |
| 17 | 3 | 17 | 10 | | | | | | | | | | |
| 17 | 14 | 17 | 20 | | | | | | | | | | |
| 17 | 22 | 18 | 22 | | | | | | | | | | |
| 19 | 4 | 19 | 8 | | | | | | | | | | |
| 19 | 13 | 19 | 20 | | | | | | | | | | |
| 20 | 3 | 20 | 8 | | | | | | | | | | |
| 20 | 10 | 20 | 18 | | | | | | | | | | |
| 20 | 22 | 21 | 9 | | | | | | | | | | |
| 21 | 11 | 21 | 19 | | | | | | | | | | |
| 22 | 2 | 22 | 11 | | | | | | | | | | |
| 22 | 24 | 23 | 7 | NE | | | | | | | | | |
| 23 | 11 | 23 | 15 | | | | | | | | | | |
| 23 | 19 | 23 | 20 | | | | | | | | | | |
| 24 | 2 | 25 | 7 | 401/402; NE; 403 | | | | | | | | | |
| 25 | 14 | 25 | 21 | NE; 401/402; 403 | | | | | | | | | |
| 26 | 2 | 26 | 7 | 403; 401/402; NE | | | | | | | | | |
| 26 | 11 | 26 | 21 | 702; 401/402; 611(VA) | | | | | | | | | |
| 26 | 24 | 27 | 7 | 401/402; 611(VA); 702 | | | | | | | | | |
| 27 | 18 | 27 | 23 | 602; CO; NE; OS | | | | | | | | | |
| 28 | 3 | 28 | 12 | 602; OS; 611(VA) | | | | | | | | | |
| 28 | 19 | 29 | 22 | | | | | | | | | | |
| 29 | 24 | 30 | 12 | | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | 17 | 31 | 11 | | | | | | | | | | |
| 32 | 7 | 32 | 24 | 401/402; 602; CO; NE; OS; 403 | | | | | | | | | |
| 33 | 1 | 33 | 2 | 602; 401/402; 403; NE; OS; CO | | | | | | | | | |
| 33 | 12 | 33 | 24 | | | | | | | | | | |
| 34 | 3 | 35 | 10 | | | | | | | | | | |
| 35 | 18 | 36 | 4 | | | | | | | | | | |
| 36 | 9 | 36 | 17 | 602; OS; 611(VA) | | | | | | | | | |
| 36 | 19 | 36 | 23 | | | | | | | | | | |
| 37 | 9 | 37 | 15 | | | | | | | | | | |
| 37 | 17 | 37 | 21 | 602; OS; 611(VA) | | | | | | | | | |
| 37 | 23 | 38 | 11 | 602; OS; 611(VA) | | | | | | | | | |
| 39 | 6 | 40 | 1 | | | | | | | | | | |
| 40 | 16 | 41 | 7 | | | | | | | | | | |
| 42 | 2 | 42 | 18 | | | | | | | | | | |
| 43 | 4 | 43 | 5 | | | | | | | | | | |
| 43 | 10 | 43 | 21 | | | | | | | | | | |
| 43 | 24 | 44 | 9 | | | | | | | | | | |
| 44 | 11 | 44 | 14 | | | | | | | | | | |
| 44 | 21 | 45 | 9 | | | | | | | | | | |
| 45 | 21 | 45 | 25 | | | | | | | | | | |
| 46 | 6 | 46 | 7 | | | | | | | | | | |
| 46 | 9 | 47 | 1 | | | | | | | | | | |
| 47 | 5 | 47 | 12 | | | | | | | | | | |
| 47 | 16 | 48 | 12 | 602; NE; OS | | | | | | | | | |
| 48 | 16 | 48 | 23 | 602; OS; 611(VA) | | | | | | 49 | 1 | 49 | 9 |
| 49 | 10 | 49 | 12 | 611; 401/402; 403 | | | | | | | | | |
| 49 | 19 | 50 | 12 | 403; 401/402; 611 | | | | | | | | | |
| 50 | 16 | 51 | 12 | | | | | | | | | | |
| 51 | 19 | 52 | 9 | | | | | | | | | | |
| 52 | 11 | 52 | 14 | | | | | | | | | | |
| 52 | 17 | 53 | 4 | | | | | | | | | | |
| 53 | 12 | 53 | 24 | | | | | | | 53 | 25 | 54 | 3 |
| 54 | 5 | 55 | 4 | 611; 401/402; 602; 103 | | | | | | 55 | 7 | 55 | 15 |
| 55 | 17 | 56 | 7 | | | | | | | | | | |
| 56 | 24 | 57 | 21 | 602; 805; 103; NE | | | | | | 57 | 22 | 57 | 24 |
| 58 | 1 | 58 | 14 | | | | | | | | | | |
| 58 | 16 | 58 | 24 | | | | | | | | | | |
| 59 | 11 | 59 | 18 | | | | | | | | | | |
| 59 | 23 | 60 | 19 | | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 | 23 | 61 | 21 | | | | | | | | | | |
| 61 | 24 | 62 | 9 | | | | | | | | | | |
| 62 | 11 | 62 | 14 | | | | | | | | | | |
| 62 | 25 | 63 | 22 | 611; 802; 106; 805 | | | | | | | | | |
| 64 | 4 | 66 | 15 | 611; 602; OS | | | | | | | | | |
| 67 | 11 | 67 | 16 | | | | | | | | | | |
| 67 | 18 | 68 | 4 | | | | | | | | | | |
| 68 | 6 | 68 | 12 | | | | | | | | | | |
| 68 | 21 | 68 | 22 | | | | | | | | | | |
| 68 | 24 | 69 | 6 | | | | | | | | | | |
| 69 | 8 | 69 | 17 | | | | | | | | | | |
| 70 | 5 | 70 | 22 | | | | | | | | | | |
| 71 | 1 | 71 | 25 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 72 | 4 | 72 | 5 | CO | | | | | | | | | |
| 73 | 1 | 73 | 2 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 73 | 5 | 74 | 2 | 403; OS; 611; 602; 802 | | | | | | | | | |
| 74 | 11 | 74 | 15 | | | | | | | | | | |
| 74 | 18 | 74 | 23 | | | | | | | | | | |
| 75 | 9 | 75 | 13 | | | | | | | | | | |
| 76 | 1 | 76 | 13 | | | | | | | | | | |
| 76 | 18 | 76 | 21 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 76 | 23 | 76 | 23 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 77 | 1 | 77 | 9 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 77 | 14 | 77 | 15 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 77 | 23 | 78 | 9 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 78 | 20 | 78 | 23 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 79 | 2 | 79 | 5 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 79 | 20 | 79 | 21 | 611; 802; 602; OS; 403 | | | | | | | | | |
| 80 | 15 | 80 | 24 | 103; NE | | | | | | | | | |
| 81 | 1 | 81 | 5 | 611; 602; OS; 403 | | | | | | | | | |
| 81 | 13 | 82 | 1 | 611; 602; OS; 403 | | | | | | | | | |
| 82 | 5 | 82 | 8 | 611; 602; OS; 403 | | | | | | | | | |
| 82 | 12 | 83 | 1 | 611; 602; OS; 403 | | | | | | | | | |
| 83 | 15 | 83 | 16 | 611; 602; OS; 403 | | | | | | | | | |
| 83 | 18 | 83 | 21 | 611; 602; OS; 403 | | | | | | | | | |
| 84 | 3 | 84 | 7 | 611; 602; OS; 403 | | | | | | | | | |
| 84 | 12 | 84 | 15 | | | | | | | | | | |
| 84 | 21 | 84 | 24 | 611; 602; OS; 403 | | | | | | | | | |
| 85 | 6 | 85 | 9 | 611; 602; OS; 403 | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 85 | 11 | 85 | 19 | 611; 602; OS; 403 | | | | | | | | | |
| 85 | 23 | 86 | 2 | 611; 602; OS; 403 | | | | | | | | | |
| 86 | 6 | 86 | 15 | 611; 602; OS; 403 | | | | | | | | | |
| 86 | 20 | 86 | 24 | CO; NE; 403 | | | | | | | | | |
| 87 | 5 | 87 | 19 | 611; OS; 403 | | | | | | | | | |
| 88 | 6 | 88 | 6 | 611; 702; ILC; 602; OS; 403 | | | | | | | | | |
| 88 | 8 | 88 | 25 | 611; 702; ILC; 701; 602; OS; 403 | | | | | | | | | |
| 89 | 4 | 89 | 5 | 602; OS; 403 | | | | | | | | | |
| 89 | 13 | 90 | 10 | 611; 401/402; OS; 403 | | | | | | | | | |
| 91 | 5 | 91 | 6 | OS; 611; 401/402; 403 | | | | | | | | | |
| 91 | 9 | 91 | 22 | 611; 401/402; OS; 403 | | | | | | | | | |
| 92 | 2 | 92 | 3 | 611; 401/402; OS; 403 | | | | | | | | | |
| 92 | 9 | 92 | 16 | 611; 401/402; OS; 403 | | | | | | | | | |
| 93 | 7 | 94 | 10 | 403; OS; 602 | | | | | | | | | |
| 94 | 12 | 94 | 18 | 602; OS; 403 | | | | | | | | | |
| 94 | 20 | 95 | 3 | 602; OS; 403 | | | | | | | | | |
| 95 | 12 | 96 | 9 | 611; 401/402; CO; OS; 403 | | | | | | | | | |
| 96 | 13 | 96 | 16 | 611; 401/402; NE; OS; 403 | | | | | | | | | |
| 96 | 19 | 96 | 24 | 602; OS; 403 | | | | | | | | | |
| 97 | 2 | 97 | 9 | 611; 401/402; NE; OS; 403 | | | | | | | | | |
| 97 | 13 | 97 | 22 | 611; 401/402; NE; OS; 403 | | | | | | | | | |
| 98 | 1 | 98 | 11 | | | | | | | | | | |
| 98 | 15 | 98 | 22 | | | | | | | | | | |
| 99 | 1 | 99 | 1 | | | | | | | | | | |
| 99 | 5 | 99 | 6 | | | | | | | | | | |
| 99 | 11 | 99 | 13 | | | | | | | | | | |
| 99 | 19 | 99 | 21 | 611; 702; ILC; OS; 403 | | | | | | | | | |
| 99 | 23 | 100 | 24 | 611; 702; ILC; OS; 403 | | | | | | | | | |
| 101 | 3 | 101 | 6 | 611; 702; ILC; 602; OS; 403 | | | | | | | | | |
| 101 | 9 | 101 | 19 | 611; 702; ILC; 602; OS; 403 | | | | | | | | | |
| 101 | 21 | 101 | 24 | 611; 702; ILC; 602; OS; 403 | | | | | | | | | |
| 102 | 3 | 102 | 6 | 611; 702; ILC; 602; OS; 403 | | | | | | | | | |
| 102 | 11 | 102 | 15 | 702; 611; 602; OS; 403; ILC | | | | | | | | | |
| 102 | 20 | 104 | 13 | 611; OS; 403 | | | | | | | | | |
| 104 | 17 | 104 | 24 | | | | | | | | | | |
| 105 | 2 | 105 | 12 | 602; 403 | | | | | | | | | |
| 105 | 14 | 105 | 16 | 602; 403 | | | | | | | | | |
| 106 | 3 | 107 | 9 | 611; 602; 403 | | | | | | | | | |
| 107 | 11 | 108 | 12 | 611; 602; 403 | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 108 | 17 | 109 | 2 | 611; 602; 403 | | | | | | | | | |
| 109 | 15 | 109 | 17 | | | | | | | | | | |
| 109 | 21 | 110 | 18 | | | | | | | | | | |
| 110 | 23 | 110 | 24 | | | | | | | | | | |
| 111 | 1 | 111 | 15 | | | | | | | | | | |
| 111 | 19 | 111 | 25 | | | | | | | | | | |
| 112 | 4 | 112 | 23 | | | | | | | | | | |
| 113 | 1 | 114 | 21 | | | | | | | | | | |
| 114 | 25 | 115 | 2 | | | | | | | | | | |
| 115 | 6 | 117 | 1 | | | | | | | | | | |
| 117 | 6 | 117 | 10 | | | | | | | | | | |
| 117 | 14 | 117 | 14 | | | | | | | | | | |
| 117 | 25 | 118 | 2 | | | | | | | | | | |
| 118 | 7 | 118 | 11 | | | | | | | | | | |
| 118 | 20 | 118 | 22 | | | | | | | | | | |
| 119 | 1 | 119 | 10 | 611; 403 | | | | | | | | | |
| 119 | 14 | 119 | 25 | 611; OS; 403 | | | | | | | | | |
| 120 | 5 | 121 | 3 | 611; 702; ILC; 602; 611Lead; 403 | | | | | | | | | |
| 121 | 7 | 121 | 8 | 611; 702; ILC; 602; 611Lead; 403 | | | | | | | | | |
| 121 | 20 | 122 | 2 | | | | | | | | | | |

***KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD., ET AL.***

**Case No. 1:20-CV-1710-CFC**

**KONINKLIJKE PHILIPS N.V.'S DEPOSITION DESIGNATIONS**

**Witness: Lynn Zhang**

**Date of Deposition: February 27, 2026**

| Initial Designations | | | | | Counterdesignations | | | | Counter Counter Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
| 8 | 21 | 8 | 22 | | | | | | | | | | |
| 8 | 25 | 9 | 19 | | | | | | | | | | |
| 9 | 22 | 9 | 23 | CO/106 | 9 | 24 | 9 | 25 | 401/402/403/CO | | | | |
| 10 | 2 | 10 | 11 | CO/PRIV | | | | | | | | | |
| 10 | 19 | 11 | 5 | | 11 | 6 | 11 | 12 | 401/402/403/CO/ NE | | | | |
| 11 | 15 | 11 | 16 | | 11 | 6 | 11 | 12 | 401/402/403/CO/ NE | | | | |
| 12 | 5 | 12 | 9 | 401/402/403 | | | | | | | | | |
| 13 | 9 | 13 | 11 | 401/402/403 | | | | | | | | | |
| 13 | 14 | 14 | 20 | 401/402/403/ CO | | | | | | | | | |
| 14 | 24 | 15 | 12 | CO/106 | 15 | 15 | 15 | 15 | 401/402/403/CO | | | | |
| 15 | 17 | 15 | 25 | | | | | | | | | | |
| 16 | 4 | 16 | 14 | CO/106 | 16 | 15 | 16 | 16 | 401/402/403/CO | | | | |
| 16 | 18 | 17 | 15 | | | | | | | | | | |
| 17 | 22 | 18 | 5 | CO | | | | | | | | | |
| 18 | 9 | 19 | 13 | | | | | | | | | | |
| 19 | 24 | 19 | 25 | | 20 | 1 | 20 | 8 | 401/402/403 | | | | |
| 20 | 10 | 20 | 12 | 106 | 20 | 16 | 20 | 16 | 401/402/403/CO | | | | |
| 20 | 18 | 20 | 21 | CO/106 | 22 | 1 | 22 | 3 | 401/402/403 | | | | |
| 20 | 25 | 21 | 7 | | | | | | | | | | |
| 22 | 21 | 24 | 6 | | | | | | | | | | |
| 24 | 8 | 24 | 10 | 106 | 24 | 12 | 24 | 12 | 401/402/403 | | | | |
| 24 | 14 | 25 | 13 | | | | | | | | | | |
| 25 | 15 | 25 | 21 | | | | | | | | | | |
| 25 | 25 | 26 | 10 | | | | | | | | | | |
| 27 | 2 | 27 | 7 | | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 27 | 12 | 27 | 13 | | | | | | | | | | |
| 27 | 17 | 27 | 23 | 106 | 28 | 1 | 28 | 4 | 401/402/403/611 | | | | |
| 28 | 6 | 28 | 22 | 401/402/403 | | | | | | | | | |
| 28 | 24 | 29 | 2 | 401/402/403 | | | | | | | | | |
| 29 | 4 | 29 | 8 | 401/402/403 | | | | | | | | | |
| 29 | 10 | 29 | 10 | | | | | | | | | | |
| 29 | 14 | 29 | 15 | | | | | | | | | | |
| 29 | 18 | 29 | 19 | | | | | | | | | | |
| 29 | 21 | 30 | 7 | | | | | | | | | | |
| 30 | 9 | 30 | 15 | CO/106 | 30 | 16 | 30 | 16 | 401/402/403/CO | | | | |
| 30 | 18 | 30 | 18 | | | | | | | | | | |
| 30 | 20 | 31 | 3 | | | | | | | | | | |
| 31 | 8 | 31 | 8 | | | | | | | | | | |
| 31 | 10 | 31 | 13 | | | | | | | | | | |
| 31 | 15 | 31 | 15 | | | | | | | | | | |
| 31 | 17 | 31 | 24 | | | | | | | | | | |
| 32 | 1 | 32 | 7 | | | | | | | | | | |
| 32 | 9 | 32 | 11 | | | | | | | | | | |
| 32 | 15 | 32 | 19 | | | | | | | | | | |
| 34 | 2 | 34 | 8 | | | | | | | | | | |
| 34 | 10 | 34 | 15 | | | | | | | | | | |
| 34 | 19 | 34 | 24 | | | | | | | | | | |
| 35 | 1 | 35 | 5 | | | | | | | | | | |
| 35 | 9 | 35 | 11 | | | | | | | | | | |
| 35 | 13 | 37 | 2 | 401/402/403 | | | | | | | | | |
| 37 | 4 | 37 | 14 | CO/106 | 37 | 15 | 37 | 15 | 401/402/403/CO | | | | |
| 37 | 17 | 38 | 24 | | | | | | | | | | |
| 39 | 3 | 39 | 8 | | | | | | | | | | |
| 39 | 10 | 39 | 13 | | | | | | | | | | |
| 39 | 15 | 39 | 20 | | | | | | | | | | |
| 39 | 22 | 40 | 20 | | | | | | | | | | |
| 41 | 8 | 41 | 24 | | | | | | | | | | |
| 42 | 1 | 42 | 4 | | | | | | | | | | |
| 42 | 11 | 43 | 15 | OS | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 43 | 18 | 43 | 22 | OS | | | | | | | | | |
| 43 | 25 | 44 | 11 | OS | | | | | | | | | |
| 44 | 22 | 45 | 12 | | | | | | | | | | |
| 45 | 14 | 45 | 18 | | | | | | | | | | |
| 45 | 22 | 46 | 13 | | | | | | | | | | |
| 46 | 20 | 47 | 10 | | | | | | | | | | |
| 47 | 14 | 47 | 24 | | | | | | | | | | |
| 48 | 1 | 48 | 7 | | | | | | | | | | |
| 48 | 11 | 48 | 16 | | | | | | | | | | |
| 48 | 18 | 48 | 24 | | | | | | | | | | |
| 49 | 3 | 49 | 3 | | | | | | | | | | |
| 49 | 6 | 49 | 6 | | | | | | | | | | |
| 49 | 12 | 50 | 5 | | | | | | | | | | |
| 50 | 7 | 50 | 11 | | | | | | | | | | |
| 50 | 16 | 50 | 16 | | | | | | | | | | |
| 51 | 17 | 53 | 1 | | | | | | | | | | |
| 53 | 3 | 53 | 6 | | | | | | | | | | |
| 53 | 10 | 54 | 4 | | | | | | | | | | |
| 54 | 6 | 54 | 22 | | | | | | | | | | |
| 55 | 2 | 55 | 18 | | | | | | | | | | |
| 55 | 22 | 56 | 16 | | | | | | | | | | |
| 56 | 18 | 56 | 21 | | | | | | | | | | |
| 56 | 23 | 56 | 24 | | | | | | | | | | |
| 57 | 1 | 57 | 8 | CO/106 | 57 | 9 | 57 | 10 | 401/402/403/CO | | | | |
| 57 | 12 | 57 | 15 | | | | | | | | | | |
| 57 | 17 | 57 | 23 | | | | | | | | | | |
| 58 | 1 | 58 | 7 | | | | | | | | | | |
| 58 | 9 | 58 | 17 | | | | | | | | | | |
| 58 | 21 | 58 | 25 | | | | | | | | | | |
| 59 | 8 | 59 | 23 | | | | | | | | | | |
| 59 | 25 | 60 | 18 | | | | | | | | | | |
| 60 | 20 | 60 | 24 | | | | | | | | | | |
| 61 | 4 | 61 | 17 | | | | | | | | | | |
| 61 | 23 | 61 | 25 | | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 62 | 3 | 62 | 3 | | | | | | | | | | |
| 62 | 10 | 63 | 2 | 401/402/403 | | | | | | | | | |
| 63 | 4 | 63 | 10 | | | | | | | | | | |
| 63 | 13 | 63 | 24 | OS/402/403 | | | | | | | | | |
| 64 | 1 | 64 | 5 | OS/402/403 | | | | | | | | | |
| 64 | 8 | 64 | 8 | | | | | | | | | | |
| 64 | 17 | 64 | 25 | | | | | | | | | | |
| 65 | 3 | 65 | 4 | | | | | | | | | | |
| 65 | 7 | 65 | 8 | | | | | | | | | | |
| 65 | 10 | 65 | 18 | | | | | | | | | | |
| 66 | 16 | 66 | 17 | | | | | | | | | | |
| 66 | 19 | 66 | 19 | | | | | | | | | | |
| 66 | 21 | 67 | 1 | | | | | | | | | | |
| 67 | 5 | 68 | 1 | | | | | | | | | | |
| 68 | 4 | 68 | 4 | | | | | | | | | | |
| 68 | 13 | 68 | 14 | | | | | | | | | | |
| 68 | 16 | 68 | 16 | | | | | | | | | | |
| 68 | 18 | 68 | 25 | OS/402/403/ 106 | 69 | 3 | 69 | 5 | 401/402/403/CO | | | | |
| 69 | 7 | 69 | 8 | OS/402/403/ 106 | | | | | | | | | |
| 69 | 11 | 69 | 15 | OS/402/403/ 106 | | | | | | | | | |
| 69 | 17 | 69 | 17 | OS/402/403/ 106 | | | | | | | | | |
| 69 | 19 | 69 | 20 | OS/402/403/ 106 | | | | | | | | | |
| 70 | 9 | 70 | 14 | OS/402/403/ 106 | | | | | | | | | |
| 70 | 16 | 70 | 22 | OS/402/403/ 106 | | | | | | | | | |
| 70 | 24 | 71 | 3 | OS/402/403/ 106 | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 71 | 9 | 71 | 11 | OS/402/403/ 106 | | | | | | | | | |
| 71 | 13 | 71 | 18 | OS/402/403/ 106 | | | | | | | | | |
| 71 | 20 | 71 | 23 | OS/402/403/ 106 | | | | | | | | | |
| 71 | 25 | 72 | 4 | OS/402/403/ 106 | | | | | | | | | |
| 72 | 6 | 72 | 9 | OS/402/403/ 106 | | | | | | | | | |
| 72 | 11 | 72 | 15 | OS/402/403/ 106 | | | | | | | | | |
| 72 | 20 | 73 | 3 | OS/402/403/ 106 | | | | | | | | | |
| 73 | 18 | 73 | 19 | | | | | | | | | | |
| 73 | 23 | 73 | 24 | | | | | | | | | | |
| 74 | 18 | 74 | 22 | | | | | | | | | | |
| 74 | 25 | 75 | 2 | CO/106 | 75 | 3 | 75 | 5 | 401/402/403/CO | | | | |
| 75 | 7 | 75 | 16 | CO | | | | | | | | | |
| 75 | 18 | 75 | 22 | 401/402/403 | | | | | | | | | |
| 75 | 24 | 76 | 4 | | | | | | | | | | |
| 76 | 21 | 77 | 7 | | | | | | | | | | |
| 77 | 11 | 78 | 9 | | | | | | | | | | |
| 78 | 12 | 79 | 1 | | | | | | | | | | |
| 79 | 4 | 79 | 13 | OS | | | | | | | | | |
| 79 | 16 | 79 | 22 | OS/106 | | | | | | | | | |
| 80 | 6 | 80 | 7 | OS | | | | | | | | | |
| 80 | 10 | 80 | 14 | OS | | | | | | | | | |
| 80 | 18 | 81 | 1 | OS | | | | | | | | | |
| 81 | 4 | 81 | 11 | OS | | | | | | | | | |
| 81 | 15 | 81 | 19 | OS | | | | | | | | | |
| 81 | 22 | 82 | 5 | OS | | | | | | | | | |
| 82 | 8 | 82 | 10 | OS | | | | | | | | | |
| 82 | 17 | 82 | 20 | OS | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 82 | 23 | 82 | 25 | OS | | | | | | | | | |
| 83 | 3 | 83 | 13 | OS | | | | | | | | | |
| 83 | 16 | 83 | 21 | OS | | | | | | | | | |
| 83 | 24 | 84 | 3 | OS | | | | | | | | | |
| 84 | 8 | 84 | 15 | | | | | | | | | | |
| 84 | 17 | 84 | 23 | | | | | | | | | | |
| 85 | 1 | 85 | 8 | | | | | | | | | | |
| 85 | 11 | 86 | 1 | | | | | | | | | | |
| 86 | 4 | 86 | 14 | 401/402/403 | | | | | | | | | |
| 86 | 17 | 86 | 20 | 401/402/403 | | | | | | | | | |
| 86 | 22 | 86 | 25 | 401/402/403 | | | | | | | | | |
| 87 | 2 | 87 | 5 | 401/402/403 | | | | | | | | | |
| 87 | 10 | 87 | 16 | 401/402/403 | | | | | | | | | |
| 87 | 18 | 87 | 24 | 401/402/403 | | | | | | | | | |
| 88 | 2 | 88 | 8 | 401/402/403 | | | | | | | | | |
| 88 | 11 | 89 | 1 | OS/401/402/403 | | | | | | | | | |
| 89 | 7 | 89 | 11 | | | | | | | | | | |
| 89 | 14 | 89 | 21 | 401/402/403/106 | 123 | 23 | 140 | 11 | 401/402/403/602/6 | 146 | 15 | 146 | 15 |
| 91 | 15 | 92 | 2 | | | | | | | | | | |
| 92 | 7 | 92 | 10 | | | | | | | | | | |
| 92 | 12 | 92 | 17 | 401/402/403 | | | | | | | | | |
| 93 | 11 | 93 | 13 | | | | | | | | | | |
| 93 | 25 | 94 | 17 | 401/402/403 | | | | | | | | | |
| 94 | 20 | 95 | 9 | 401/402/403 | | | | | | | | | |
| 95 | 16 | 95 | 23 | 401/402/403/OC | 95 | 24 | 95 | 25 | 401/402/403/CO | | | | |
| 96 | 1 | 96 | 10 | 401/402/403/OS | | | | | | | | | |
| 96 | 13 | 96 | 16 | 401/402/403/OS | | | | | | | | | |
| 96 | 19 | 96 | 22 | 401/402/403/OS | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 96 | 25 | 96 | 25 | 401/402/403/ OS | | | | | | | | | |
| 97 | 2 | 97 | 2 | 401/402/403/ OS | | | | | | | | | |
| 97 | 5 | 97 | 8 | 401/402/403/ OS | | | | | | | | | |
| 97 | 14 | 97 | 17 | 401/402/403/ OS | | | | | | | | | |
| 97 | 20 | 98 | 7 | 401/402/403/ OS | | | | | | | | | |
| 98 | 10 | 98 | 17 | 401/402/403/ OS | | | | | | | | | |
| 98 | 20 | 98 | 23 | 401/402/403/ OS | | | | | | | | | |
| 99 | 18 | 100 | 7 | 401/402/403/ OS | | | | | | | | | |
| 100 | 10 | 100 | 20 | 401/402/403/ OS | | | | | | | | | |
| 100 | 24 | 101 | 9 | 401/402/403/ OS | | | | | | | | | |
| 101 | 12 | 101 | 15 | 401/402/403/ OS | | | | | | | | | |
| 101 | 18 | 101 | 22 | 401/402/403/ OS | | | | | | | | | |
| 101 | 25 | 102 | 8 | 401/402/403/ OS | | | | | | | | | |
| 102 | 15 | 103 | 13 | 401/402/403/ OS/OC | 103 | 14 | 103 | 16 | 401/402/403/CO | | | | |
| 103 | 18 | 104 | 5 | | | | | | | | | | |
| 104 | 8 | 104 | 8 | | | | | | | | | | |
| 105 | 22 | 105 | 23 | | | | | | | | | | |
| 105 | 25 | 106 | 3 | | | | | | | | | | |
| 106 | 9 | 106 | 17 | 401/402/403 | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 107 | 3 | 108 | 1 | 401/402/403/ OS | | | | | | | | | |
| 108 | 5 | 108 | 8 | 401/402/403/ OS | | | | | | | | | |
| 108 | 11 | 108 | 24 | 401/402/403/ OS | | | | | | | | | |
| 109 | 25 | 110 | 1 | 401/402/403/ OS | | | | | | | | | |
| 110 | 4 | 110 | 7 | 401/402/403/ OS | | | | | | | | | |
| 110 | 10 | 110 | 13 | 401/402/403/ OS | | | | | | | | | |
| 110 | 15 | 110 | 18 | 401/402/403/ OS | | | | | | | | | |
| 110 | 20 | 111 | 1 | 401/402/403/ OS | | | | | | | | | |
| 111 | 3 | 111 | 9 | 401/402/403/ OS | | | | | | | | | |
| 111 | 12 | 111 | 19 | | | | | | | | | | |
| 111 | 22 | 113 | 3 | | | | | | | | | | |
| 113 | 6 | 115 | 9 | | | | | | | | | | |
| 115 | 12 | 115 | 22 | 401/402/403/ OS | | | | | | | | | |
| 115 | 25 | 116 | 13 | 401/402/403/ OS | | | | | | | | | |
| 116 | 16 | 116 | 18 | 401/402/403/ OS | | | | | | | | | |
| 116 | 21 | 117 | 6 | 401/402/403/ OS | | | | | | | | | |
| 117 | 9 | 117 | 13 | 401/402/403/ OS | | | | | | | | | |
| 117 | 22 | 117 | 25 | 401/402/403/ OS | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 118 | 3 | 118 | 11 | 401/402/403/OS | | | | | | | | | |
| 118 | 13 | 118 | 16 | 401/402/403/OS | | | | | | | | | |
| 118 | 19 | 119 | 1 | 401/402/403/OS | | | | | | | | | |
| 119 | 4 | 119 | 11 | 401/402/403/OS | | | | | | | | | |
| 119 | 14 | 119 | 20 | 401/402/403/OS | | | | | | | | | |
| 119 | 22 | 119 | 25 | 401/402/403/OS | | | | | | | | | |
| 120 | 3 | 120 | 6 | 401/402/403/OS | | | | | | | | | |
| 120 | 9 | 120 | 16 | 401/402/403/OS | | | | | | | | | |
| 120 | 18 | 120 | 21 | 401/402/403/OS | | | | | | | | | |
| 120 | 23 | 121 | 20 | 401/402/403/OS | | | | | | | | | |
| 122 | 4 | 122 | 12 | 401/402/403/OS | | | | | | | | | |
| 122 | 15 | 123 | 3 | 401/402/403/OS | | | | | | | | | |
| 123 | 6 | 123 | 9 | 401/402/403/OS | | | | | | | | | |
| 123 | 12 | 125 | 4 | 401/402/403/OS | | | | | | | | | |
| 125 | 7 | 125 | 20 | 401/402/403/OS | | | | | | | | | |
| 125 | 23 | 126 | 5 | 401/402/403/OS | | | | | | | | | |
| 126 | 8 | 126 | 15 | 401/402/403/OS | | | | | | | | | |

| Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line | Objs | Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 126 | 17 | 126 | 23 | 401/402/403/ OS | | | | | | | | | |
| 127 | 1 | 127 | 9 | 401/402/403/ OS | | | | | | | | | |
| 127 | 11 | 127 | 18 | 401/402/403/ OS | | | | | | | | | |
| 127 | 23 | 127 | 25 | 401/402/403/ OS | | | | | | | | | |
| 128 | 6 | 128 | 10 | 401/402/403/ OS | | | | | | | | | |
| 134 | 2 | 134 | 4 | | | | | | | | | | |
| 134 | 8 | 134 | 19 | | | | | | | | | | |
| 134 | 21 | 136 | 11 | | | | | | | | | | |
| 136 | 19 | 137 | 14 | | | | | | | | | | |
| 137 | 18 | 139 | 22 | | | | | | | | | | |
| 140 | 12 | 141 | 9 | | | | | | | | | | |
| 141 | 21 | 142 | 10 | | | | | | | | | | |
| 142 | 14 | 144 | 8 | | | | | | | | | | |
| 144 | 11 | 144 | 19 | | | | | | | | | | |
| 144 | 22 | 144 | 25 | OC | 145 | 3 | 145 | 7 | 401/402/403/CO | | | | |
| 145 | 7 | 145 | 22 | | | | | | | | | | |
| 146 | 1 | 146 | 3 | | | | | | | | | | |
| 146 | 7 | 146 | 13 | 106 | | | | | | | | | |
| 146 | 17 | 146 | 24 | | | | | | | | | | |
| 147 | 1 | 147 | 7 | OS | | | | | | | | | |
| 147 | 9 | 147 | 13 | OS | | | | | | | | | |
| 147 | 16 | 147 | 19 | OS | | | | | | | | | |
| 147 | 21 | 147 | 21 | OS | | | | | | | | | |
| 147 | 23 | 148 | 9 | OS | | | | | | | | | |
| 148 | 12 | 148 | 12 | OS | | | | | | | | | |

# Exhibit 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC |

# QUECTEL'S DEPOSITION DESIGNATIONS

Defendant Quectel Wireless Solutions Co. Ltd. ("Defendant" or "Quectel"), hereby provides its Deposition Designations.

Defendant reserves the right to identify additional deposition testimony. Defendant reserves objections to Plaintiff's affirmative deposition designations, including as hearsay, to the extent Plaintiff has failed to show unavailability of any of its witnesses. Defendant reserves the right to rely on any of Plaintiff's designations or counter-designations, regardless of whether Plaintiff de-designates such testimony at a later date. Defendant objects to Plaintiff's use of any transcript without the corresponding errata. To the extent either party designates testimony that is subject to an errata, Defendant designates and/or counters with the errata testimony. Defendant further objects to Plaintiff calling any of its witnesses by deposition designation, and to Plaintiff relying on counter-designations beyond the scope of the designations. *See* Fed. R. Civ. P. 32.

Defendant further reserves the right to add or delete designations or otherwise amend the designations based on the Court's rulings on summary judgment, *Daubert* motions, motions *in limine*, the Court's trial schedule, or as otherwise appropriate, based on circumstances that may evolve prior to the commencement of trial. Defendant reserves the right not to introduce any and all rebuttal and counter-designations at trial. Defendant reserves the right to use any applicable, relevant counter-designation or counter-counter designations in relation to any designations within each transcript. Further, Defendant objects to any translations provided by Plaintiff's interpreter where a check translation was necessary, and may seek inclusion of such check translations, where appropriate.

The parties have also agreed to a disclosure schedule in the Pretrial Order regarding deposition designations that will be played at trial.

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF GILDAS BOSSARD
DATE: June 9, 2021**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 9:20-12:19 | | 401/402, 403, 802 | |
| 12:20-13:4 | | 104, 401/402, 403, 802 | |
| 13:12-16:2 | | 104, 401/402, 403, 611, 802 | |
| 16:4-18 | | 104, 401/402, 403, 611, 802 | |
| 17:1-18:12 | | 104, 401/402, 403, 611, 802 | |
| 18:15-19:1 | | 104, 401/402, 403, 611, 802 | |
| 19:3-13 | | 104, 401/402, 403, 611, 802 | |
| 19:15-22 | | 104, 401/402, 403, 611, 802 | |
| 20:1-2 | | 104, 401/402, 403, 611, 802 | |
| 20:4-9 | | 401/402, 403, 602, 611, 802, OS | |
| 20:12-15 | | 401/402, 403, 611, 802, OS | |
| 20:19-21:2 | | 401/402, 403, 611, 802, OS | |
| 21:3-22:8 | | 401/402, 802, CO, NE | |
| 22:9-17 | | 401/402, 802, CO, NE | |
| 22:18-19 | | 401/402, 403, 611, 802, OS | |
| 22:20-22 | | 401/402, 802, CO, NE | |
| 23:1-3 | | 401/402, 802, CO, NE | |
| 23:4-6 | | 401/402, 403, 611, 802, OS | |
| 23:8-20 | | 401/402, 403, 611, 802 | |
| 23:21-24:8 | | 401/401, 403, 802, CO, NE | |
| 24:9-12 | | 401/402, 802, CO, NE | |
| 24:13-25:8 | | 401/402, 403, 611, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 27:3-7 | | 104, 401/402, 403, 802 | |
| 27:8-10 | | 104, 401/402, 403, 802 | |
| 29:10-30:19 | | 104, 401/402, 403, 802 | |
| 31:12-33:4 | | 401/402, 403, 611, 802 | |
| 33:6-34:8 | | 401/401, 611, 802 | |
| 35:2-3 | | | |
| 35:8-11 | | 401/402, 403, 802, OS | |
| 35:14-15 | | 401/402, 403, 802, OS | |
| 35:18-20 | | 401/402, 403, 802, OS | |
| 36:1-3 | | 401/402, 403, 802, OS | |
| 36:5-6 | | 401/402, 403, 802, OS | |
| 36:10-12 | | 401/402, 403, 802, OS | |
| 36:14-16 | | 401/402, 403, 802, OS | |
| 36:18-22 | | 401/402, 403, 802, OS | |
| 37:2-4 | | 401/402, 403, 802, OS | |
| 37:6-15 | | 401/402, 403, 802, OS | |
| 37:18-20 | | 401/402, 403, 802, OS | |
| 38:1-4 | | 401/402, 403, 802, OS | |
| 38:6-10 | | 401/402, 403, 802, OS | |
| 38:12-15 | | 401/402, 403, 802, OS | |
| 38:17-22 | | 401/402, 403, 802, OS | |
| 39:3-41:22 | | 401/402, 403, 802, OS | |
| 42:1-43:1 | | 401/402, 403, 802, CO | |
| 47:13-48:5 | | 401/402, 403, 611, 802 | |
| 48:7-10 | | 401/402, 403, 611, 802 | |
| 48:14-15 | | 401/402, 403, 611, 802 | |
| 48:19-21 | | 401/402, 403, 611, 802 | |
| 48:22-49:5 | | 401/402, 403, 611, 802 | |
| 50:4-20 | | 401/402, 403, 611, 802 | |
| 50:22-51:11 | | 401/402, 403, 611, 802 | |
| 52:17-20 | | 401/402, 403, 802 | |
| 54:6-55:10 | | 401/402, 802 | |
| 58:14-59:3 | | 401/402, 403, 611, 702, 802 | |
| 59:5-8 | | 401/402, 403, 611, 702, 802 | |
| 59:11-12 | | 401/402, 403, 611, 702, 802 | |
| 59:14-15 | | 401/402, 403, 611, 702, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 59:16-20 | | 401/402, 403, 611, 702, 802 | |
| 59:22-60:2 | | 401/402, 403, 611, 702, 802 | |
| 60:4-4 | | 401/402, 403, 611, 702, 802 | |
| 60:7-8 | | 401/402, 403, 611, 702, 802 | |
| 60:10-10 | | 401/402, 403, 611, 702, 802 | |
| 60:19-20 | | 401/402, 403, 611, 702, 802 | |
| 60:22-61:9 | | 401/402, 403, 611, 702, 802 | |
| 61:11-12 | | 401/402, 403, 611, 702, 802 | |
| 61:18-62:10 | | 401/402, 403, 611, 702, 802 | |
| 62:11-63:5 | | 401/402, 403, 611, 702, 802, ILC | |
| 63:8-17 | | 401/402, 403, 611, 702, 802, ILC | |
| 64:3-3 | | 401/402, 403, 611, 702, 802, ILC | |
| 64:6-65:8 | | 401/402, 403, 611, 702, 802, ILC | |
| 77:11-81:9 | | 401/402, 403, 611, 702, 802 | |
| 81:12-16 | | 401/402, 403, 611, 802 | |
| 81:17-83:4 | | 401/402, 403, 602, 802, OS | |
| 83:7-22 | | 401/402, 403, 602, 802, OS | |
| 84:1-4 | | 401/402, 403, 602, 802, OS | |
| 84:7-9 | | 401/402, 403, 602, 802, OS | |
| 84:11-22 | | 401/402, 403, 602, 802, OS | |
| 85:1-86:10 | | 401/402, 403, 602, 802 | |
| 86:11-17 | | 401/402, 403, 611, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 86:19-22 | | 401/402, 403, 611, 802 | |
| 87:2-4 | | 401/402, 403, 611, 802 | |
| 89:16-93:12 | | 401/402, 403, 611, 802 | |
| 89:16-93:12 | | duplicate | |
| 93:14-95:10 | | 401/402, 403, 611, 802 | |
| 95:12-96:7 | | 401/402, 403, 611, 802, OS | |
| 96:9-97:4 | | 401/402, 403, 611, 802, OS | |
| 97:5-7 | | 401/402, 403, 611, 802 | |
| 97:9-100:19 | | 401/402, 403, 611, 802 | |
| 101:2-102:15 | | 401/402, 403, 611, 802 | |
| 108:9-110:13 | 106:4-108:2<br>110:14-22 | 106, 401/402, 403, 802 | [106:4-108:2] 802; 106; 602; IMP; CO; NE; OS; 403 |
| 111:1-116:6 | | 106, 401/402, 403, 802 | |
| 117:11-118:14 | | 401/402, 403, 802 | |
| 122:16-123:15 | | 401/402, 403, 802 | |
| 126:3-5 | | 401/402, 403, 611, 802 | |
| 126:8-14 | | 401/402, 403, 611, 802 | |
| 126:17-19 | | 401/402, 403, 611, 802 | |
| 126:20-21 | | 401/402, 403, 611, 802 | |
| 127:1-4 | | 401/402, 403, 611, 802 | |
| 127:7-10 | | 401/402, 403, 611, 802 | |
| 127:13-16 | | 401/402, 403, 611, 802 | |
| 127:19-22 | | 401/402, 403, 611, 802 | |
| 128:2-11 | | 401/402, 403, 611, 802 | |
| 128:12-129:2 | | 401/402, 403, 611, CO, 802 | |
| 129:4-7 | | 401/402, 403, 611, 802 | |
| 129:9-14 | | 401/402, 403, 611, 802 | |
| 129:16-130:6 | | 401/402, 403, 611, 802 | |
| 136:20-21 | | 401/402, 403, 802 | |
| 137:18-139:3 | | 401/402, 403, 802 | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF KEVIN SCOTT[1]
DATE: June 10, 2021**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 11:16-12:10 | | 105, 401/402, 403, IMP, 802 | |
| 12:16-18 | | 105, 401/402, 403, IMP, 802 | |
| 13:10-12 | | 105, 401/402, 403, IMP, 802 | |
| 16:10-17:10 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 19:9-21:13 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 22:22-23:3 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 23:15-24:8 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 24:15-21 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 25:10-26:3 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 26:10-18 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 26:22-27:7 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 27:18-28:17 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 28:22-29:10 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 30:6-33:17 | | 105, 401/402, 403, 602, 611, IMP, 802 | |
| 33:22-36:15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 36:22-37:5 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 37:9-16 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

[1] Philips objects to all designated deposition testimony of Mr. Kevin Scott under Federal Rule of Evidence 804 because Mr. Scott will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 38:3-40:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 40:8-15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 40:17-41:15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 41:21-42:8 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 42:11-47:20 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 49:10-50:20 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 51:17-20 | | 105, 401/402, 403, IMP, 802 | |
| 53:4-55:17 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 56:1-58:12 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 59:6-20 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 61:18-62:1 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 62:5-63:18 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 63:20-20 | | 401/402, 403, IMP, 802 | |
| 64:4-66:18 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 66:21-68:18 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 69:2-9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 69:12-70:4 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 70:7-10 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 70:12-71:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 71:4-18 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 72:12-73:5 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 73:8-74:8 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 74:10-11 | 74:12-22; 75:3-7 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | [74:12-22] 611; 701; 401/402; 602; 611(AF); 611(Arg); 611(VA); 403<br><br>[75:3-7] 611(NR); 611; ILC; 701; 401/402; 602; 611(Arg); 611(VA); 403 |
| 75:8-78:6 | 74:12-22; 75:3-7 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | [74:12-22] 611; 701; 401/402; 602; 611(AF); 611(Arg); 611(VA); 403<br><br>[75:3-7] 611(NR); 611; ILC; 701; 401/402; 602; 611(Arg); 611(VA); 403 |
| 78:9-79:1 | 79:2-3 | 105, 106. 401/402, 403, 602, 611, 701, IMP, 802 | 611; 401/402; 611(VA); 403 |
| 79:4-81:15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 82:4-86:15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 86:18-87:5 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 87:7-88:1 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 88:3-89:13 | 89:14-17; 89:20-90:7; 90:9-14; 90:17-91:4. | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | [89:14-17] 611; 701; 401/402; 602; 611(VA); 403<br><br>[89:20-90:7] 611; 401/402; 602; 103; OS; 611Comp; 611(VA); 403<br><br>[90:9-14] 611; 701; 401/402; 602; 611(VA); 403<br><br>[90:17-91:4] 611(NR); 611; 701; 401/402; 602; 611(AF); 611(VA); 403 |
| 92:13-93:8 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 93:18-94:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 94:4-13 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 96:7-22 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 97:2-98:9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 98:11-21 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 99:22-100:20 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 105:17-106:14 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 106:21-107:14 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 108:7-17 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 109:14-110:13 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 110:17-111:19 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 112:9-113:8 | | 103, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 113:12-13 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 113:15-114:21 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 115:4-20 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 116:1-12 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 116:18-117:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 118:4-11 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 118:13-21 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 119:1-12 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 121:4-123:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 123:9-124:14 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 124:18-125:1 | 125:2-7; 125:10-12 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | [125:2-7] 611(VA); 611; 701; ILC; 401/402; 602; 611Lead; 403<br><br>[125:10-12] 611; 701; 611(VA); 401/402; 602; 403 |
| 125:13-17 | 125:2-7; 125:10-12 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | [125:2-7] 611(VA); 611; 701; ILC; 401/402; 602; 611Lead; 403<br><br>[125:10-12] 611; 701; 611(VA); 401/402; 602; 403 |
| 125:19-126:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 126:3-12 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 126:15-127:11 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 127:14-21 | | 103, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 128:1-129:4 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 129:8-133:14 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 133:18-134:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 134:10-12 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 134:17-135:7 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 135:10-11 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 136:6-19 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 136:21-22 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 137:9-138:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 138:5-14 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 139:9-15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 140:6-20 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 141:2-143:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 143:4-16 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 144:13-21 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 147:3-148:10 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 148:20-149:10 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 149:12-18 | 149:20-21 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | 611(NR); 611; 401/402; 602; 611(VA); 403 |
| 149:22-151:1 | 149:20-21 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | 611(NR); 611; 401/402; 602; 611(VA); 403 |
| 151:4-152:9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 152:12-13 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 152:15-153:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 153:4-154:21 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 155:1-14 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 155:17-156:7 | 156:8-9; 156:12 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | [156:8-9] 802; 401/402; 602; 611(VA); 403<br><br>[156:12-12] 611(NR); 611; 802; 401/402; 602; 611(VA) |
| 157:10-158:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 159:18-161:12 | 161:13-15; 161:17-21 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | [161:13-15] 611; 701; 401/402; 602; 611(VA)<br><br>[161:17-21] 611; 701; |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| | | | 401/402; 602; 611(Arg); 611(VA) |
| 162:4-164:10 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 164:13-166:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 166:20-167:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 167:9-168:3 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 168:6-169:5 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 169:21-170:4 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 170:6-10 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 171:1-172:18 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 172:20-21 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 173:9-177:9 | | 105, 401/402, 403, 602, 611, 701, 802, IMP, 802 | |
| 177:11-14 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 177:16-178:8 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 178:10-10 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 178:12-180:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 180:4-181:15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 181:18-20 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 182:14-183:18 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 186:14-20 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 187:3-10 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 187:12-188:22 | 189:13-20 | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | 611; 701; 401/402; 602; 403 |
| 189:21-190:2 | 189:13-20 | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | 611; 701; 401/402; 602; 403 |
| 190:5-14 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 190:19-191:4 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 191:7-192:22 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 193:2-18 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 193:22-195:19 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 195:21-196:15 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 196:17-197:7 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 198:20-200:7 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 200:9-18 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 202:9-18 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 203:2-8 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 203:11-17 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 207:6-18 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 208:9-18 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 208:20-209:9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 209:13-210:21 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 211:1-212:3 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 212:5-16 | 212:18-20 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | 611(NR); 611; 401/402; 602; 403 |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 212:21-215:22 | 212:18-20; 216:1-4 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | [212:18-20] 611(NR); 611; 401/402; 602; 403<br><br>[216:1-4] 611(NR); 611; 701; 401/402; 602; 611(AF); 611Lead; 611(VA); 403 |
| 216:5-217:14 | 216:1-4 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | 611(NR); 611; 701; 401/402; 602; 611(AF); 611Lead; 611(VA); 403 |
| 218:5-220:5 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 220:8-11 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 221:12-222:11 | | 105, 401/402, 403, IMP, 802 | |
| 222:15-223:12 | | 105, 401/402, 403, IMP, 802 | |
| 224:22-225:16 | | 105, 401/402, 403, 611, 701, IMP, 802 | |
| 225:20-22 | | 105, 401/402, 403, 611, 701, IMP, 802 | |
| 227:14-230:18 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 232:1-233:17 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 233:19-239:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 239:9-240:7 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 240:9-241:10 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 241:21-242:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 242:11-245:12 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 245:19-246:14 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 246:19-247:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 247:11-18 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 248:6-20 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 248:22-249:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 249:6-250:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 250:3-12 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 251:4-254:16 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 256:8-257:12 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 258:1-10 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 258:14-260:4 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 260:8-261:15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 261:22-262:18 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 263:14-17 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 263:19-265:19 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 266:13-267:8 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 267:10-268:15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 268:19-270:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 270:14-273:4 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 273:9-22 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 274:13-275:15 | 274:6-12 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | 611; ILC; 701; 401/402; 602; 611Lead; 611(VA); 403 |
| 275:21-276:7 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 276:9-22 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 277:2-278:10 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 281:11-16 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 281:18-282:4 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 282:19-283:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 283:9-286:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 286:3-9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 286:12-19 | 286:20-287:1; 287:3-5 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | [286:20-287:1] 611; ILC; 701; 401/402; 602; 103; 611(AF)<br><br>[287:3-5] 401/402; 602; 611Lead; 103; 611; 701; 611(Arg); 611(VA); 403 |
| 287:6-13 | 286:20-287:1; 287:3-5 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | [286:20-287:1] 611; ILC; 701; 401/402; 602; 103; 611(AF)<br><br>[287:3-5] 401/402; 602; 611Lead; 103; 611; 701; 611(Arg); 611(VA); 403 |
| 287:15-288:18 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 288:20-289:21 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 290:3-16 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 291:17-295:3 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 295:5-20 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 295:22-296:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 296:8-298:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 300:2-3 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 300:5-16 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 300:18-301:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 301:9-19 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 301:21-304:13 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 304:18-306:19 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 306:21-308:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |
| 308:7-22 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF PAUL BUCKNELL
DATE: June 10, 2021**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 11:1-15:17 | | 401/402, 802 | | |
| 16:3-4 | | 401/402, 802 | | |
| 16:6-9 | | 401/402, 802 | | |
| 16:12-17:21 | | 401/402, 611, 802 | | |
| 17:22-18:5 | 18:6-7 | 106, 401/402, 802 | | |
| 18:8-16 | | 401/402, 611, 802 | | |
| 18:20-22:14 | | 401/402, 403, 611, 701, 802 | | |
| 22:19-21 | | 401/402, 802 | | |
| 23:2-29:15 | 29:16-19 | 401/402, 403, 802 | | |
| 29:20-31:1 | | 401/402 , 802 | | |
| 31:2-3 | 31:4-5 | 106, 401/402, 802 | | |
| 31:6-19 | | 106, 401/402, 802 | | |
| 31:22-33:15 | | 401/402, 403, 602, 802 | | |
| 33:18-34:16 | | 401/402, 403, 602, 802 | | |
| 34:17-22 | 35:1 | 106, 401/402, 403, 602, 802 | | |
| 35:2-6 | | 106, 401/402, 802 | | |
| 35:8-37:13 | | 401/402, 602, 611, 802, 901 | | |
| 37:14-38:4 | | 401/402, 802, 901 | | |
| 38:5-39:14 | | 401/402, 403, 802, 901 | | |
| 39:16-40:17 | | 401/402, 403, 602, 802 | | |
| 40:18-43:11 | | 401/402, 602, 611, 802 | | |
| 43:12-19 | | 401/402. 611, 802 | | |
| 46:20-47:19 | | 401/402, 403, 602, 611, 802 | | |
| 48:2-13 | | 401/402, 403, 802 | | |
| 48:14-18 | | 401/402, 403, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 48:19-21 | 48:22-49:15 | 106, 401/402, 403, 802 | | 401/402; 602 |
| 49:16-50:16 | | 401/402, 403, 611, 802 | | |
| 51:3-52:10 | | 103, 401/402, 403, 611, 802 | | |
| 52:13-54:9 | | 106, 401/402, 403, 602, 611, 701, 802 | | |
| 54:10-17 | 54:18-22 | 106, 401/402, 403, 602, 611, 701 , 802 | | |
| 55:1-9 | | 401/402, 403, 611, 802 | | |
| 55:12-56:4 | | 401/402, 403, 602, 611, 802 | | |
| 56:5-57:4 | | 401/402, 403, 611, 701, 802 | | |
| 57:5-17 | | 401/402, 403, 611, 701, 802 | | |
| 57:18-58:3 | | 401/402, 403, 602, 611, 802 | | |
| 58:4-8 | | 401/402, 611, 802 | | |
| 58:11-19 | | 106, 401/402, 403, 602, 611, 701, 802 | | |
| 58:22-59:1 | 59:2-3 | 106, 401/402, 403, 602, 611, 701, 802 | | |
| 60:2-9 | | 401/402, 403, 602, 611, 701, 802 | | |
| 60:11-20 | | 401/402, 403, 611, 701, 802 | | |
| 60:21-61:10 | | 401/402, 403, 602, 611, 701, 802 | | |
| 61:11-22 | | 401/402, 403, 602, 611, 701, 802 | | |
| 62:1-5 | | 106, 401/402, 403, 602, 611, 701, 802 | | |
| 62:10-12 | | 106, 401/402, 403, 602, 611, 701, 802 | | |
| 62:14-22 | | 401/402, 403, 602, 611, 701, 802 | | |
| 63:1-7 | | 401/402, 403, 602, 611, 701, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 63:9-12 | | 401/402, 403, 602, 611, 701, 802 | | |
| 64:16-65:7 | | 401/402, 403, 611, 802 | | |
| 65:14-66:17 | | 401/402, 403, 611, 802 | | |
| 66:22-67:4 | 66:18-21 | 106, 602, 611, 701, 802 | | |
| 67:5-21 | 67:22-68:10 | 106, 401/402, 403, 602, 802 | | |
| 68:11-14 | | 401/402, 403, 602, 611, 802 | | |
| 68:15-20 | | 401/402, 802 | | |
| 68:21-70:6 | | 401/402, 403, 602, 611, 701, 802 | | |
| 70:16-71:15 | | 401/402, 403, 802 | | |
| 71:20-72:11 | | 401/402, 403, 602, 611, 701, 802 | | |
| 73:19-20 | | 401/402, 403, 602, 611, 701, 802 | | |
| 73:22-74:1 | | 401/402, 403, 602, 611, 701, 802 | | |
| 74:4-11 | 74:12-20 | 401/402, 403, 602, 611, 701, 802 | | |
| 74:21-75:17 | | 401/402, 403, 611, 701, 802 | | |
| 75:18-77:3 | | 401/402, 403, 611, 701, 802 | | |
| 77:4-78:7 | | 401/402, 602, 611, 701, 802 | | |
| 78:8-15 | | 401/402, 403, 701, 802 | | |
| 78:16-21 | | 401/402, 403, 602, 611, 701, 802 | | |
| 78:22-79:22 | | 401/402, 403, 602, 611, 701, 802 | | |
| 80:1-81:1 | | 401/402, 403, 611, 701, 802 | | |
| 81:17-83:16 | 81:16 | 106, 401/402, 403, 611 701, 802 | | |
| 83:17-21 | | 401/402, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 84:11-22 | | 401/402, 403, 701, 802 | | |
| 85:1-7 | | 401/402, 611, 701, 802 | | |
| 85:9-86:3 | | NE, 401/402, 403, 611, 802 | | |
| 86:6-13 | 87:3-88:9 | 401/402, 403, 701, 802 | 86:14-87:2; 88:10-90:14 | 401/402; 611Count; 403 |
| 90:15-18 | | 401/402, 611, 701, 802 | | |
| 90:19-92:21 | | 401/402, 403, 611, 701, 802, 901 | | |
| 92:22-94:15 | 94:16-20 | 106, 401/402, 403, 602, 611, 701, 802 | | |
| 94:21-96:15 | | 401/402, 403, 602, 611, 701, 802 | | |
| 96:16-98:7 | | 401/402, 602, 611, 701, 802, 901 | | |
| 99:5-9 | 99:10-16 | 401/402, 403, 611, 701, 802 | | |
| 99:17-100:12 | | 401/402, 403, 602, 611, 701, ILC, 802 | | |
| 100:14-19 | | 401/402, 403, 602, 611, 701, ILC, 802 | | |
| 100:21-22 | | 401/402, 403, 602, 611, 701, ILC, 802 | | |
| 101:2-6 | | 401/402, 403, 602, 611, 701, ILC, 802 | | |
| 101:8-11 | | 401/402, 403, 602, 611, 701, 802 | | |
| 102:6-6 | | 401/402, 403, 602, 611, 701, 802 | | |
| 102:8-12 | | 106, 401/402, 403, 611, 701, 802 | | |
| 103:9-104:11 | 102:13-103:6 | 401/402, 403, 611, 701, 802 | | |
| 105:7-106:3 | | 401/402, 403, 602, 611, 701, 802 | | |
| 106:9-14 | | 401/402, 403, 602, 611, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 106:16-109:11 | | 401/402, 403, 602, 611, 701, 802 | | |
| 111:2-13 | | 401/402, 403, 611, 701, 802 | | |
| 111:14-112:2 | | 401/402, 403, 602, 611, 701, ILC, 802 | | |
| 112:3-12 | | 401/402, 403, 602, 611, 701, ILC, 802 | | |
| 114:5-115:7 | | 401/402, 403, 701, 802, 802 | | |
| 115:15-18 | | 401/402, 403, 602, 611, 701, 802 | | |
| 115:19-116:4 | | 401/402, 403, 602, 611, 701, 802 | | |
| 116:5-6 | | 401/402, 403, 602, 611, 701, 802 | | |
| 116:9-11 | | 401/402, 403, 602, 611, 701, 802 | | |
| 116:12-16 | | 401/402, 403, 602, 611, 701, 802 | | |
| 116:17-17 | | 401/402, 403, 602, 611, 701, 802 | | |
| 116:20-21 | | 103, 401/402, 403, 602, 611, 701, 802 | | |
| 118:3-10 | | 401/402, 403, 602, 611, 701, 802 | | |
| 118:13-17 | | 401/402, 403, 602, 611, 701, 802 | | |
| 120:14-121:14 | | 401/402, 403, 611, 701, 802 | | |
| 122:10-15 | 122:6-9 | 106, 401/402, 403, 611, 701, 802 | | |
| 122:16-123:2 | | 401/402, 403, 602, 611, 701, 802 | | |
| 123:3-125:11 | | 401/402, 403, 611, 701, 802 | | |
| 125:12-14 | | 401/402, 403, 602, 611, 701, 802 | | |
| 126:18-20 | | 401/402, 403, 602, 611, 701, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 126:21-127:18 | | 401/402, 403, 611, 701, 802 | | |
| 129:15-19 | | 401/402, 403, 602, 611, 701, 802 | | |
| 131:2-11 | | 401/402, 403, 602, 611, 701, 802 | | |
| 132:2-12 | 149:20-150:2 | 401/402, 403, 602, 611, 701, 802 | | 611; 702; 106; 403 |
| 133:8-21 | 133:2-7 | 401/402, 403, 611, 701, 802 | | |
| 133:22-134:22 | | 401/402, 403, 602, 611, 701, 802 | | |
| 135:1-6 | 135:7-16 | 401/402, 403, 611, 701, 802 | | 401/402 |
| 136:12-13 | | 401/402, 403, 602, 611, 701, 802 | | |
| 136:15-22 | 138:14-21 | 401/402, 403, 602, 611, 701, 802 | | |
| 138:22-139:3 | | 401/402, 403, 602, 611, 701, 802 | | |
| 139:4-6 | | 401/402, 403, 611, 701, 802 | | |
| 139:8-140:7 | | 401/402, 403, 611, 701, 802 | | |
| 140:14-141:1 | | 401/402, 701, 802 | | |
| 142:1-143:21 | | 401/402, 403, 602, 611, 701, 802 | | |
| 144:3-145:6 | | 401/402, 403, 602, 611, 701, 802 | | |
| 146:20-148:5 | | 401/402, 403, 611, 701, 802, 805 | | |
| 151:8-9 | | 106, 401/402, 403, 602, 701, 802 | | |
| 152:17-21 | 152:6-7 | 106, 401/402, 403, 602, 611, 802 | | |
| 152:22-153:8 | | 401/402, 403, 802 | | |
| 153:11-154:15 | | 401/402, 403, 602, 611, 701, 802 | | |
| 155:7-16 | | 401/402, 403, 802, 901 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 156:8-16 | | 401/402, 403, 611, 802 | | |
| 159:16-160:2 | | 401/402, 403, 802, 901 | | |
| 160:6-8 | | 401/402, 611, 802 | | |
| 160:15-21 | | 401/402, 403, 802, 901 | | |
| 162:3-10 | | 401/402, 403, 611, 802 | | |
| 163:1-3 | | 401/402, 403, 802, CO | | |
| 163:7-16 | | 401/402, 403, 611, 802 | | |
| 163:19-165:11 | 165:12-21, 166:8-11 | 401/402, 403, 602, 611, 701, 802 | 165:22-166:7 | [165:12-21] 602; 403<br><br>[166:8-11] 106; 401/402; 602; 611Count; 403 |
| 167:7-168:7 | | 401/402, 403, 602, 611, 701, 802 | | |
| 168:9-170:14 | | 401/402, 403, 602, 611, 701, 802, 901, ILC | | |
| 171:11-172:16 | | 401/402, 403, 602, 611, 701, 802, 901, ILC | | |
| 173:12-17 | | 401/402, 403, 602, 802 | | |
| 173:19-21 | | 401/402, 403, 602, 802 | | |
| 174:2-175:21 | 175:22-176:6 | 401/402, 403, 602, 611, 701, 802 | | 602; 403 |
| 176:8-16 | | 401/402, 403, 802, 901 | | |
| 176:18-177:8 | | 401/402, 403, 611, 802 | | |
| 177:9-10 | | 401/402, 403, 611, 701, 802 | | |
| 177:14-14 | | 401/402, 403, 611, 701, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 177:15-179:9 | | 401/402, 403, 602, 611, 701, 802 | | |
| 179:11-180:2 | | 401/402, 403, 602, 611, 701, 802 | | |
| 181:7-16 | | 401/402, 403, 802, 611 | | |
| 183:11-22 | | 103, 401/402, 403, 611, 701, 802 | | |
| 184:1-14 | | 401/402, 403, 611, 701, 802 | | |
| 184:15-185:4 | 185:5-15 | 401/402, 403, 611, 701, 802 | | 602 |
| 185:16-186:3 | | 401/402, 403, 611, 701, 802 | | |
| 186:5-188:8 | | 401/402, 403, 611, 701, 802, ILC | | |
| 188:17-20 | | 401/402, 403, 602, 611, 701, 802 | | |
| 191:14-16 | | 401/402, 403, 802 | | |
| 195:1-196:2 | 196:3-6, 197:15-198:6 | 401/402, 403, 602, 611, 701, 802 | | 106; 401/402; 611Count; 403 |
| 199:15-200:7 | | 401/402, 403, 611, 701, 802 | | |
| 200:8-21 | | 401/402, 403, 611, 701, 802 | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF NICHOLAS CORMAS
DATE: June 11, 2021**

In addition to the objections listed below, Philips objects to Quectel's attempt to rely on this testimony on the basis that it was not disclosed in accordance with the Court's scheduling order or under Fed. R. Civ. P. 26(a)(1).

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 10:1-3 | 9:19-22 | 401/402, 403, 802 | |
| 13:8-14 | | 401/402, 403, 802 | |
| 15:20-16:18 | | 401/402, 403, 802 | |
| 33:14-34:5 | 33:8-13, 34:6-35:16 | 401/402, 403, 802 | |
| 35:17-19 | 35:20-43:12 | 401/402, 403, 802 | |
| 45:8-48-7 | | 401/402, 403, 802 | |
| 48:13-49:15 | 49:16-50:5 | 401/402, 403, 802 | |
| 58:12-60:4 | 60:5-7 | 106, 401/402, 403, 802 | |
| 96:3-98:2 | 98:3-11 | 401/402, 403, 611, 802 | |
| 105:10-17 | | 401/402, 802 | |
| 113:5-12 | | 401/402, 403, 602, 611, 802 | |
| 115:1-117:4 | | 401/402, 403, 602, 611, 802 | |
| 119:15-21 | | 401/402, 403, 602, 611, 802 | |
| 210:5-212:19 | | 401/402, 403, 602, 611, 802 | |
| 229:20-230:11 | | 401/402, 403, 602, 611, 802 | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.**
**(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF TIMOTHY MOULSLEY, PH.D.**
**DATE: JUNE 11, 2021**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 8:2-4 | | | | |
| 8:15-21 | | | | |
| 9:1-8 | | | | |
| 9:21-10:9 | | | | |
| 10:18-11:14 | | 104, 401/402, 403, 602, 611, 802 | | |
| 12:16-18:7 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 18:11-19:6 | 19:7-15 | 106, 401/402, 403, 611, 802 | | 104, 401/402, 403, 602, 611(VA), 802 |
| 19:16-20:5 | | 401/402, 403, 802 | | |
| 20:7-15 | 20:16-21:5 | 106. 401/402, 403, 611, 802 | | 104, 401/402, 403, 602, 611(VA), 802 |
| 22:21-23:9 | 23:10-12 | 106, 401/402, 403, 611, 802 | | 104, 401/402, 403, 602, 611(VA), 802 |
| 29:8-31:13 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 31:19-32:10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 32:12-33:9 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 36:5-20 | | 401/402, 403, 611, 802 | | |
| 37:9-22 | 38:1-4 | 104, 106, 401/402, 403, 602, 611, 802 | | 104, 401/402, 403, 602, 611(VA), 802, NE |
| 38:12-14 | 38:15-20 | 104, 106, 401/402, 403, 602, 611, 802 | | 104, 401/402, 403, 602, 611(VA), 802, NE |
| 39:2-7 | 39:8-3 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 403, 602, 611(VA), 701, 802 |
| 40:7-41:1 | 40:6 | 106, 401/402, 403, 611, 802 | | 104, 401/402, 403, 602, 611(VA), 802 |
| 41:6-10 | | 401/402, 403, 611, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 43:22-44:9 | | 401/402, 403, 802 | | |
| 45:18-47:4 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 47:8-12 | 47:13-14 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 602, 611(VA), 802 |
| 47:16-22 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 48:2-7 | | 103, 104, 401/402, 403, 602, 611, 701, 802 | | |
| 48:13-49:9 | 49:10-22 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 602, 611(VA), 802, CO |
| 50:1-51:11 | 51:12-52:7 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 602, 611(VA), 701, 802 |
| 52:8-53:4 | 51:12-52:7 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 602, 611(VA), 701, 802 |
| 58:19-22 | | 401/402, 403, 802 | | |
| 59:1 | | 401/402, 403, 802 | | |
| 59:6-13 | | 401/402, 403, 701, 802 | | |
| 59:15-22 | | 401/402, 403, 701, 802 | | |
| 60:3-14 | | 103, 104, 401/402, 403, 602, 611, 701, 802 | | |
| 60:19-61:1 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 61:3-11 | | 103, 104, 401/402, 403, 602, 611, 701, 802 | | |
| 61:18-63:16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 63:18-64:3 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 64:8-65:16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 66:8-11 | | 401/402, 403, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 68:3-14 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 69:13-16 | | 401/402, 403, 802 | | |
| 70:5-8 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 70:10-71:10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 71:16-72:13 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 72:15-74:8 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 74:11-14 | 74:17-75:20 | 104, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 403, 602, 611(VA), 701, 802 |
| 76:13-77:3 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 77:5-6 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 77:11-17 | 77:18-78:6 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 403, 602, 611(VA), 701, 802 |
| 78:7-79:18 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 79:20-81:10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 82:4-8 | | 401/402, 403, 802 | | |
| 83:2-6 | | 401/402, 403, 802 | | |
| 83:10-13 | | 401/402, 403, 802 | | |
| 83:18-20 | | 401/402, 403, 802 | | |
| 84:3-7 | 84:8-9 | 106, 401/402, 403, 802 | | 104, 401/402, 403, 602, 611(VA), 802 |
| 84:10-13 | 84:8-9 | 106, 401/402, 403, 802 | | 104, 401/402, 403, 602, 611(VA), 802 |
| 85:1-14 | | 401/402, 403, 802 | | |
| 85:18-87:2 | 87:3-5 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 403, 602, 611(VA), 802 |
| 87:6-18 | | 104, 401/402, 403, 602, 611, 701, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 87:20-88:2 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 97:22-98:22 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 99:5-6 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 99:13-100:17 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 104:10-105:11 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 106:13-108:4 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 108:6-110:1 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 110:3-111:4 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 111:6-14 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 111:19-112:1 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 112:6-113:1 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 113:18-114:13 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 114:17-20 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 114:22-116:16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 117:3-6 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 117:9-14 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 117:16-118:16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 118:20-119:3 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 119:6-7 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 119:9-121:12 | 121:13-18 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 403, 602, 611(VA), 802 |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 121:19-123:9 | 121:13-18 | 104, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 403, 602, 611(VA), 802 |
| 123:11-125:2 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 125:4-6 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 125:9-11 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 125:14-16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 125:18-21 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 126:1-3 | 126:4-10 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 403, 602, 611(VA), 701, 802 |
| 126:11-22 | 126:4-10 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 403, 602, 611(VA), 701, 802 |
| 127:12-16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 127:19-128:2 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 128:4-14 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 129:2-130:18 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 130:22-131:16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 131:18-21 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 132:2-7 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 132:9-134:13 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 134:16-21 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 136:17-137:1 | 135:9-10; 136:1-15 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 106, 401/402, 403, 602, 611(VA), 701, 802 |
| 138:5-22 | 137:6-7; 137:12-138:4 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | 104, 401/402, 403, 602, 611(VA), 701, 802 |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 139:4-16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 139:18-140:16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 141:2-4 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 152:11-17 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 152:19-153:2 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 153:8-10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 153:12-20 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 154:2-9 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 154:11-155:10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 156:5-158:9 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 158:14-16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 158:18-159:9 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 159:12-15 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 159:17-160:1 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 160:6-11 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 160:13-161:22 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 162:4-10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 162:12-15 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 163:19-164:1 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 164:3-5 | | 104, 401/402, 403, 602, 611, 701, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 164:12-165:13 | 164:6-12 | 104, 106, 401/402, 403, 602, 611, 701, 802 | | |
| 165:18-166:15 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 166:20-168:21 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 169:16-170:13 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 170:16-20 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 170:22-171:21 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 172:3-7 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 172:9-22 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 173:5-7 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 173:9-13 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 173:18-174:1 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 174:4-5 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 174:8-12 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 174:14-19 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 174:21-175:6 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 175:9-20 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 176:3-11 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 176:13-14 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 176:19-21 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 177:1-10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 177:16-20 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 177:22-178:2 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 178:4-10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 178:12-16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 178:22-179:4 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 179:6-13 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 179-16-21 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 180:1-2 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 180:5-10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 180:12-13 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 180:16-21 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 181:1-4 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 181:6-8 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 181:10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 181:12 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 181:14-19 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 181:21-182:3 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 182:5-6 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 182:8-10 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 182:12-18 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 197:21-198:13 | | 104, 401/402, 403, 602, 611, 701, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 198:17-20 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 199:4-9 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 199:11-20 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 199:22-200:2 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 200:4-201:16 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 201:20-204:14 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 204:16-205:4 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 205:11-206:19 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 207:4-22 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 235:22-236:2 | | 401/402, 403, 802 | | |
| 236:7-237:12 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 237:14-238:8 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 239:22-240:1 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 240:4-20 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 240:22-241:4 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 242:2-6 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 242:9-243:14 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 244:10-15 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 244:17-245:4 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 245:11 | | 104, 401/402, 403, 602, 611, 701, 802 | | |
| 245:13-15 | | 104, 401/402, 403, 602, 611, 701, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 245:17-246:2 | | 104, 401/402, 403, 602, 611, 701, 802 | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF YAFFA FENG
DATE: June 12, 2021**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 12:8-9 | | 401/402, 802 | | |
| 12:16-19 | | 401/402, 802 | | |
| 12:21-13:3 | | 401/402, 802 | | |
| 15:9-9 | | 401/402, 802, | | |
| 15:13-21 | | 401/402, 802 | | |
| 16:4-5 | | 401/402, 802 | | |
| 16:13-14 | | 401/402, 802 | | |
| 36:10-14 | | 401/402, 403, 611, 701, 802 | | |
| 43:19-44:3 | | 401/402, 403, 611, 802, | | |
| 45:4-6 | | 401/402, 403, 602, 611, 802 | | |
| 45:14-16 | | 401/402, 403, 602, 611, 802 | | |
| 46:3-5 | | 401/402, 403, 611, 802 | | |
| 46:7-8 | | 401/402, 403, 611, 802 | | |
| 50:4-7 | | 401/402, 403, 611, 701, 802 | | |
| 50:20-51:3 | | 401/402, 403, 611, 701, 802 | | |
| 61:17-19 | | 401/402, 403, 602, 611, 701, 802 | | |
| 62:5-7 | | 401/402, 403, 602, 611, 701, 802 | | |
| 62:9-10 | | 401/402, 403, 602, 611, 701, 802 | | |
| 62:12-17 | | 401/402, 403, 602, 611, 701, 802 | | |
| 63:7-12 | | 401/402, 403, 602, 611, 701, 802 | | |
| 63:14-16 | | 401/402, 403, 602, 611, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 64:2-5 | | 401/402, 403, 602, 611, 701, 802 | | |
| 64:7-8 | | 401/402, 403, 701, 802 | | |
| 64:12-13 | | 401/402, 403, 701, 802, 901 | | |
| 64:15-16 | | 401/402, 403, 611, 802 | | |
| 64:19-20 | | 401/402, 403, 611, 802, | | |
| 64:22-65:1 | | 401/402, 403, 611, 802 | | |
| 65:7-9 | | 401/402, 403, 611, 802 | | |
| 70:8-11 | | 401/402, 403, 602, 611, 701, 802 | | |
| 70:15-17 | 71:18-21 | 401/402, 403, 602, 611, 701, 802 | 70:19-21; 71:9-16 | |
| 71:22-72:4 | | 401/402, 403, 611, 802 | | |
| 82:4-5 | | 401/402, 403, 611, 802 | | |
| 82:8-8 | 118:18-21, 127:11-22, 133:6-11 | 401/402, 403, 611, 802 | [133:6-11] 133:13-17 | [127:11-22] MTS; 802<br><br>[133:6-11] 106; CO |
| 82:10-13 | 82:14-16, 83:1-2 | 401/402, 403, 611, 802 | [83:1-2] 83:4-5; 86:15-18; 118:22-119:4 | [82:14-16] ILC<br><br>[83:1-2] 106; CO; ILC |
| 86:8-9 | 86:10-13 | 106, 401/402, 403, 611, 802, 901 | | |
| 87:7-15 | | 401/402, 403, 802 | | |
| 93:5-95:3 | 95:4-9, 95:14-15, 95:17-18, 95:21-22 | 401/402, 403, 602, 611, 701, 802 | | |
| 96:2-2 | | 401/402, 403, 611, 802 | | |
| 96:8-9 | | 401/402, 403, 611, 802 | | |
| 100:12-102:4 | | 401/402, 403, 602, 611, 802, 901 | | |
| 102:9-103:15 | | 401/402, 403, 602, 611, 802, 901 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 103:20-104:6 | | 401/402, 403, 602, 611, 802, 901 | | |
| 104:22-105:1 | | 401/402, 403, 602, 611, 802 | | |
| 105:7-10 | | 401/402, 403, 602, 611, 802 | | |
| 113:4-10 | | 401/402, 403, 611, 701, 802 | | |
| 114:2-10 | | 401/402, 403, 611, 701, 802 | | |
| 135:5-11 | | 401/402, 403, 602, 611, 701, 802 | | |
| 135:17-17 | | 401/402, 403, 602, 611, 701, 802 | | |
| 141:20-21 | | 401/402, 403, 602, 802 | | |
| 142:6-11 | | 401/402, 403, 802 | | |
| 143:5-9 | | 401/402, 403, 611, 802 | | |
| 157:22-158:10 | | 401/402, 403, 611, 701, 802, 901 | | |
| 158:14-19 | | 401/402, 403, 611, 802, 901 | | |
| 158:20-21 | | 401/402, 403, 611, 701, 802, 901 | | |
| 159:10-15 | | 401/402, 403, 611, 701, 802, 901 | | |
| 160:4-13 | | 401/402, 403, 611, 701, 802, 901 | | |
| 161:2-8 | | 401/402, 403, 611, 701, 802 | | |
| 161:9-21 | | 401/402, 403, 602, 611, 701, 802 | | |
| 163:19-164:9 | | 401/402, 403, 802, 901 | | |
| 164:17-165:10 | | 401/402, 403, 802, 901 | | |
| 165:17-19 | | 401/402, 403, 602, 611, 701, 802 | | |
| 165:21-21 | | 401/402, 403, 602, 611, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 166:2-2 | | 401/402, 403,802 | | |
| 166:9-15 | | 401/402, 403, 611, 802 | | |
| 166:17-19 | | 401/402, 403, 602, 611, 701, 802 | | |
| 167:6-8 | | 401/402, 403, 602, 611, 701, 802 | | |
| 168:10-19 | 168:22-169:7, 169:11-13 | 401/402, 403, 611, 701, 802 | [169:11-13] 169:16-17 | |
| 171:19-19 | 171:2-3, 171:15-17 | 401/402, 403, 611, 701, 802 | | |
| 172:1-3 | 172:4-9 | 401/402, 403, 611, 701, 802 | | 106; CO |
| 172:11-19 | | 401/402, 403, 611, 701, 802 | | |
| 173:5-7 | | 401/402, 403, 802 | | |
| 173:19-174:2 | 174:4. 174:7-10, 174:17-20, 175:2-7, 175:12, 175:14-16 | 401/402, 403, 802 | [174:7-10] 174:12-15 | [174:4-4] 401/402; STM<br><br>[174:7-10]<br><br>[175:14-16] STM; 403 |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF SOPHIE PASQUIER[1]
DATE: June 14, 2021**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 9:17-18 | | 105, 401/402, 802, IMP | |
| 9:21-22 | | 105, 401/402, 802, IMP | |
| 18:4-9 | | 105, 401/402, 802, IMP | |
| 18:14-16 | | 105, 401/402, 802, IMP | |
| 19:9-11 | | 105, 401/402, 403, 802, IMP | |
| 20:9-10 | | 105, 401/402, 403, 802, IMP | |
| 21:12-21 | | 105, 401/402, 403, 802, IMP | |
| 22:20-23:10 | | 105, 401/402, 403, 802, IMP | |
| 25:21-26:11 | 28:14-21 | 105, 401/402, 403, 802, IMP | |
| 29:9-12 | | 105, 401/402, 403, 802, IMP | |
| 29:15-18 | | 105, 401/402, 403, 802, IMP | |
| 38:9-11 | | 105, 401/402, 403, 802, IMP | |
| 47:14-48:4 | 46:19-47:13 | 105, 106, 401/402, 403, 602, 611, 701, 802, IMP | |
| 49:8-11 | 49:12-22 | 105, 401/402, 403, 602, 611, 701, 802, IMP | 50:1-10 |
| 57:19-22 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 62:14-63:7 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 64:21-65:2 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 66:13-17 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 69:9-22 | 69:8; 70:2-4; 70:6-13 | 105, 106, 401/402, 403, 602, 611, 701, 802, IMP, CO | |
| 80:4-13 | 80:3 80:14-81:1 | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 81:3-7 | 81:2 | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 93:18-22 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |

[1] Philips objects to all designated deposition testimony of Ms. Sophie Pasquier under Federal Rule of Evidence 804 because Ms. Pasquier will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 110:15-20 | 110:4-14 | 103, 105, 401/402, 403, 602, 611, 701, 802, IMP | 109:21-110:2 |
| 111:3-12 | 111:18-20; 111:22-112:1 | 105, 401/402, 403, 602, 611, 701, 802, IMP | [111:18-20] 111:13-16 |
| 114:15-19 | 113:17-20; 114:3-14 | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 114:22-115:7 | 113:17-20; 114:3-14 | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 118:8-12 | | 105, 401/402, 403, 602, 611, 701, 802, IMP, OS | |
| 124:4-5 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 124:8 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 139:8-11 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 318:7-9 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 325:12-14 | 323:14-325:7; 325:9-11 | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 329:1-8 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 332:4-6 | | 105, 401/402, 403, 802, IMP | |
| 333:10-17 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 334:1-13 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 334:19-335:5 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 335:11-15 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 335:17-336:7 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 337:14-339:9 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 349:21-350:1 | | 105, 401/402, 403, 802, IMP | |
| 350:12 | 350:8-12; 350:13-15 | 105, 401/402, 403, 802, IMP | |
| 350:16-351:10 | 350:13-15 | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 352:18-22 | | 105, 401/402, 403, 602, 611, 802, IMP | |
| 361:1-2 | | 105, 401/402, 403, 802, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 361:5-7 | | 105, 401/402, 403, 802, IMP | |
| 362:10-14 | 362:3-9 | 105, 106, 401/402, 403, 602, 611, 701, 802, IMP | |
| 363:16-17 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 363:19-364:13 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 365:15-366:9 | 366:10-13 | 105, 106, 401/402, 403, 602, 611, 701, 802, IMP | |
| 366:14-18 | 366:10-13 | 105, 401/402, 403, 602, 611, 701, 802, IMP | |
| 369:13-14 | | 105, 401/402, 403, 602, 611, 701, 802, IMP | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF MATTHEW BAKER[1]
DATE: June 21, 2021**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 12:3-13:21 | | 401/402, 403, IMP | |
| 15:1-17:6 | | 401/402, 403, IMP | |
| 18:1-10 | | 401/402, 403, IMP | |
| 19:20-20:13 | 19:17-19 | 106, 401/402, 403, IMP | 611; 401/402; NE; 104; 403 |
| 21:7-22:11 | | 401/402, 403, IMP | |
| 22:22-24:14 | | 401/402, 403, 611, IMP | |
| 25:6-22 | | 401/402, 403, 611, IMP | |
| 27:13-30:12 | 26:19-21, 27:7-12 | 401/402, 403, 611, 802, 901, IMP | [26:19-21] 602; CO; NE; 403<br><br>[27:7-12] 901; 401/402; 104; 611(VA); STM; 403 |
| 30:20-33:22 | | 401/402, 403, 611, 701, IMP | |
| 34:3-36:9 | | 401/402, 403, 602, 611, 701, IMP | |
| 36:14-15 | | 401/402, 403, 602, 611, 701, IMP | |
| 36:19-38:17 | | 401/402, 403, 602, 611, 701, IMP | |
| 38:20-39:8 | | 401/402, 403, 602, 611, 701, IMP | |
| 39:10-15 | | 401/402, 403, 602, 611, 701, IMP | |
| 39:17-20 | | 401/402, 403, 602, 611, 701, IMP | |
| 40:11-43:11 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 43:20-44:3 | | 401/402, 403, 602, 611, IMP | |
| 44:5-9 | | 401/402, 403, 602, 611, IMP | |
| 44:18-45:2 | | 401/402, 403, 602, 611, IMP | |

[1] Philips objects to all designated deposition testimony of Mr. Matthew Baker under Federal Rule of Evidence 804 because Mr. Baker will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 45:4-13 | | 401/402, 403, 611, IMP | |
| 46:19-48:1 | | 401/402, 403, 602, 611, IMP | |
| 48:4-5 | | 401/402, 403, 602, 611, IMP | |
| 48:7-49:3 | | 401/402, 403, 602, 611, IMP | |
| 49:5-7 | | 401/402, 403, 602, 611, IMP | |
| 49:9-11 | | 401/402, 403, 602, 611, IMP | |
| 49:19-21 | | 401/402, 403, 602, 611, IMP | |
| 50:1-16 | | 401/402, 403, 602, 611, IMP | |
| 51:6-12 | | 401/402, 403, 611, IMP | |
| 51:18-52:22 | | 401/402, 403,611, IMP | |
| 53:6-7 | | 106, 401/402, 403, 602, 611, 701, IMP | |
| 53:10-10 | | 106, 401/402, 403, 602, 611, 701, IMP | |
| 53:12-18 | | 401/402, 403, 602, 611, 701, IMP | |
| 53:20-22 | | 401/402, 403, 602, 611, 701, IMP | |
| 54:2-14 | | 401/402, 403, 602, 611, 701, IMP | |
| 54:16-16 | | 401/402, 403, 602, 611, 701, IMP | |
| 54:18-21 | | 401/402, 403, 602, 611, 701, IMP | |
| 55:1-1 | | 401/402, 403, 602, 611, 701, IMP | |
| 55:3-10 | | 401/402, 403, 602, 611, IMP | |
| 55:13-14 | | 401/402, 403, 602, 611, IMP | |
| 55:16-17 | | 401/402, 403, 602, 611, IMP | |
| 70:9-10 | | 401/402, 403, 611, IMP | |
| 70:13-71:4 | | 401/402, 403, 611, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 71:16-20 | | 401/402, 403, 611, IMP | |
| 71:22-22 | | 401/402, 403, 602, 611, IMP | |
| 72:2-14 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 72:20-73:6 | | 401/402, 403, 611, 701, 802, IMP | |
| 73:20-74:21 | | 401/402, 403, 602, 611, 701, 802, ILC, IMP | |
| 75:11-76:1 | | 401/402, 403, 611, IMP | |
| 76:19-77:7 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 77:13-18 | | 401/402, 403, 602, 611, 802, 901, IMP | |
| 77:20-79:6 | | 401/402, 403, 602, 611, 802, 901, IMP | |
| 80:13-81:4 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 81:10-10 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 81:12-82:10 | | 401/402, 403, 602, 611, 802, 901, IMP | |
| 82:17-85:12 | | 401/402, 403, 602, 611, 701, IMP | |
| 85:14-15 | | 401/402, 403, 611, 701, IMP | |
| 85:17-88:21 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 89:1-1 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 89:3-4 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 89:6-6 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 89:10-14 | | 401/402, 403, 602, 611, 701, IMP | |
| 89:16-16 | | 401/402, 403, 602, 611, 701, IMP | |
| 89:21-91:1 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 91:3-9 | | 401/402, 403, 602, 611, 701, IMP | |
| 91:11-11 | | 401/402, 403, 602, 611, 701, IMP | |
| 91:13-18 | | 401/402, 403, 602, 611, 701, IMP | |
| 92:7-18 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 92:20-20 | | 401/402, 403, 602, 611, IMP | |
| 92:22-93:2 | | 401/402, 403, 602, 611, IMP | |
| 93:5-7 | | 401/402, 403, 602, 611, IMP | |
| 93:10-22 | | 401/402, 403, 602, 611, IMP | |
| 94:2-5 | | 401/402, 403, 602, 611, IMP | |
| 94:7-7 | | 401/402, 403, 602, 611, IMP | |
| 94:9-11 | | 401/402, 403, 602, 611, IMP | |
| 94:13-16 | | 401/402, 403, 602, 611, IMP | |
| 94:18-95:2 | | 401/402, 403, 602, 611, IMP | |
| 95:8-96:14 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 97:1-18 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 97:20-20 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 97:22-98:12 | | 401/402, 403, 602, 611, 701, 802, IMP | |
| 98:16-17 | | 401/402, 403, 602, 611, 701, IMP | |
| 98:19-20 | | 401/402, 403, 602, 611, 701, IMP | |
| 98:22-100:1 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 100:5-101:6 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 101:8-8 | | 401/402, 403, 602, 611, 701, IMP | |
| 101:10-19 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 101:22-22 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 102:2-14 | | 401/402, 403, 611, 701, IMP | |
| 103:1-4 | | 401/402, 403, 602, 611, 701, IMP | |
| 103:7-7 | | 401/402, 403, 602, 611, 701, IMP | |
| 103:9-18 | | 401/402, 403, 602, 611, 701, IMP | |
| 103:21-104:1 | | 401/402, 403, 602, 611, 701, IMP | |
| 104:3-106:6 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 106:8-8 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 106:10-11 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 106:13-14 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 106:16-107:5 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 107:11-14 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 107:17-18 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 107:21-108:2 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 108:4-5 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 108:7-8 | | 401/402, 403, 602, 611, 701, IMP | |
| 108:10-11 | | 401/402, 403, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 108:14-14 | | 401/402, 403, 611, 701, IMP | |
| 108:17-17 | | 401/402, 403, 611, 701, IMP | |
| 108:20-109:4 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 109:6-13 | | 401/402, 403, 611, 602, 701, 802, 901, IMP | |
| 109:15-15 | | 401/402, 403, 611, 602, 701, 802, 901, IMP | |
| 110:9-11 | | 401/402, 403, 611, IMP | |
| 110:13-14 | | 401/402, 403, 611, IMP | |
| 110:20-22 | | 401/402, 403, 611, 701, ILC, IMP | |
| 111:3-3 | | 401/402, 403, 611, 701, ILC, IMP | |
| 111:5-112:3 | | 401/402, 403, 611, 701, ILC, IMP | |
| 112:5-7 | | 401/402, 403, 611, IMP | |
| 112:9-10 | | 401/402, 403, 611, IMP | |
| 112:13-15 | | 401/402, 403, 611, IMP | |
| 112:17-19 | | 401/402, 403, 602, 611, ILC, IMP | |
| 113:1-2 | | 401/402, 403, 602, 611, ILC, IMP | |
| 113:9-11 | | 105, 401/402, 403, 602, 611, ILC, IMP | |
| 113:13-14 | | 401/402, 403, 611, ILC, IMP | |
| 113:16-18 | | 401/402, 403, 611, ILC, IMP | |
| 113:21-21 | | 401/402, 403, 611, ILC, IMP | |
| 115:18-116:18 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 117:4-7 | | 401/402, 403, 611, 701, 802, IMP | |
| 117:10-22 | | 401/402, 403, 611, 701, 802, IMP | |
| 118:13-14 | | 401/402, 403, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 119:13-120:22 | | 401/402, 403, 602, 611, 701, 802, IMP | |
| 121:5-5 | | 401/402, 403, 611, IMP | |
| 121:7-10 | | 105, 401/402, 403, 611, 701, 802, 901, IMP | |
| 121:12-12 | | 401/402, 403, 611, IMP | |
| 123:2-9 | | 401/402, 403, 602, 611, 701, IMP | |
| 123:12-12 | | 401/402, 403, 602, 611, 701, IMP | |
| 123:14-16 | | 401/402, 403, 602, 611, 701, IMP | |
| 123:18-21 | | 401/402, 403, 602, 611, 701, IMP | |
| 124:1-2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 124:5-5 | | 401/402, 403, 602, 611, 701, IMP | |
| 124:7-8 | | 401/402, 403, 602, 611, 701, IMP | |
| 124:10-12 | | 401/402, 403, 602, 611, 701, IMP | |
| 124:14-18 | | 401/402, 403, 602, 611, 701, IMP | |
| 124:20-125:3 | | 401/402, 403, 602, 611, 701, IMP | |
| 125:5-16 | | 401/402, 403, 602, 611, 701, IMP | |
| 125:18-20 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 126:1-3 | | 401/402, 403, 602, 611, 701, IMP | |
| 126:5-20 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 127:6-7 | | 401/402, 403, 602, 611, IMP | |
| 127:9-11 | | 401/402, 403, 611, IMP | |
| 127:13-14 | | 401/402, 403, 611, IMP | |
| 127:16-128:9 | | 401/402, 403, 611, IMP | |
| 129:19-130:4 | | 401/402, 403, 611, IMP | |
| 130:11-12 | | 401/402, 403, 611, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 130:14-16 | | 401/402, 403, 611, IMP | |
| 130:19-22 | | 401/402, 403, 611, IMP | |
| 131:12-132:10 | | 401/402, 403, 602, 611, 701, IMP | |
| 132:13-14 | | 401/402, 403, 602, 611, 701, IMP | |
| 132:16-18 | | 401/402, 403, 602, 611, 701, IMP | |
| 132:21-21 | | 401/402, 403, 602, 611, 701, IMP | |
| 133:1-2 | | 401/402, 403, 602, 611, IMP | |
| 133:7-8 | | 401/402, 403, 602, 611, IMP | |
| 133:10-19 | | 105, 401/402, 403, 602, 611, 701, ILC, IMP | |
| 133:22-134:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 134:4-11 | | 401/402, 403, 602, 611, 701, IMP | |
| 149:10-18 | | 401/402, 403, 611, 701, IMP | |
| 150:3-152:3 | | 401/402, 403, 611, 701, ILC, IMP | |
| 152:5-7 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 152:9-153:20 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 154:1-3 | | 401/402, 403, 611, 701, ILC , IMP | |
| 154:5-6 | | 401/402, 403, 611, 701, ILC, IMP | |
| 154:9-12 | | 401/402, 403, 611, 701, ILC, IMP | |
| 154:20-21 | | 401/402, 403, 611, 701, ILC, IMP | |
| 155:3-5 | | 401/402, 403, 611, 701, ILC, IMP | |
| 155:7-8 | | 401/402, 403, 611, 701, ILC, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 155:14-16 | | 401/402, 403, 611, 701, ILC, IMP | |
| 155:18-20 | | 401/402, 403, 611, 701, IMP | |
| 155:22-22 | | 401/402, 403, 611, 701, IMP | |
| 156:2-6 | | 401/402, 403, 611, IMP | |
| 156:8-15 | | 401/402, 403, 611, 802, 901, IMP | |
| 157:14-22 | | 401/402, 403, 611 | |
| 158:10-161:8 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 161:15-16 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 161:18-19 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 161:21-162:17 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 162:19-19 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 162:21-163:1 | | 401/402, 403, 602, 611, 701, IMP | |
| 163:4-8 | | 401/402, 403, 602, 611, 701, IMP | |
| 163:10-164:11 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 164:14-20 | | 401/402, 403, 611, 701, IMP | |
| 164:22-165:2 | | 401/402, 403, 611, 701, IMP | |
| 165:6-7 | | 401/402, 403, 611, 701, IMP | |
| 165:9-18 | | 401/402, 403, 611, 701, IMP | |
| 166:1-5 | | 401/402, 403, 611, 701, IMP | |
| 167:3-10 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 167:12-168:9 | | 401/402, 403, 611, 701, 802, 901, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 168:12-14 | | 401/402, 403, 611, 701, IMP | |
| 168:16-21 | | 401/402, 403, 611, 701, IMP | |
| 169:2-6 | | 401/402, 403, 611, 701, IMP | |
| 169:8-170:14 | | 401/402, 403, 611, 701, IMP | |
| 171:2-3 | | 401/402, 403, 611, 701, IMP | |
| 171:5-6 | | 401/402, 403, 602, 611, 701, IMP | |
| 171:8-172:18 | | 401/402, 403, 611, 701, IMP | |
| 172:21-173:1 | | 401/402, 403, 611, 701, IMP | |
| 173:3-10 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 173:13-14 | | 401/402, 403, 611, 701, IMP | |
| 173:16-174:1 | | 401/402, 403, 611, 701, IMP | |
| 174:4-7 | | 401/402, 403, 611, 701, IMP | |
| 174:9-11 | | 401/402, 403, 611, 701, IMP | |
| 174:13-13 | | 401/402, 403, 611, 701, IMP | |
| 174:15-17 | | 401/402, 403, 611, 701, IMP | |
| 174:19-20 | | 401/402, 403, 602, 611, 701, IMP | |
| 174:22-175:18 | | 401/402, 403, 602, 611, 701, IMP | |
| 175:21-21 | | 401/402, 403, 611, 701, IMP | |
| 176:1-17 | | 401/402, 403, 611, 701, IMP | |
| 176:20-22 | | 401/402, 403, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 177:2-5 | | 401/402, 403, 611, 701, IMP | |
| 177:8-11 | | 401/402, 403, 611, 701, IMP | |
| 177:13-178:18 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 179:12-180:1 | | 401/402, 403, 611, 701, IMP | |
| 180:4-5 | | 401/402, 403, 611, 701, IMP | |
| 180:7-181:3 | | 401/402, 403, 602, 611, 701, IMP | |
| 181:6-7 | | 401/402, 403, 602, 611, 701, IMP | |
| 182:12-17 | | 401/402, 403, 611, 701, IMP | |
| 182:20-22 | | 401/402, 403, 611, 701, IMP | |
| 183:2-15 | | 401/402, 403, 611, 701, IMP | |
| 184:14-18 | | 401/402, 403, 611, 701, IMP | |
| 184:20-21 | | 401/402, 403, 611, 701, IMP | |
| 185:1-6 | | 401/402, 403, 611, 701, IMP | |
| 185:16-22 | | 401/402, 403, 611, 701, IMP | |
| 186:3-14 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 186:22-189:12 | | 401/402, 403, 611, 701, IMP | |
| 189:14-190:3 | | 401/402, 403, 611, 701, IMP | |
| 190:5-10 | | 401/402, 403, 611, 701, IMP | |
| 190:13-191:7 | | 401/402, 403, 611, 701, IMP | |
| 191:9-15 | | 401/402, 403, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 191:18-21 | | 401/402, 403, 611, 701, IMP | |
| 192:22-193:6 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 193:9-194:3 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 194:5-6 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 195:2-10 | | 401/402, 403, 611, 701, IMP | |
| 202:8-11 | | 401/402, 403, 611, 701, IMP | |
| 202:13-14 | | 401/402, 403, 611, 701, IMP | |
| 202:16-19 | | 401/402, 403, 611, 701, IMP | |
| 211:9-214:19 | | 401/402, 403, 611, 701, IMP | |
| 215:12-217:22 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 218:12-21 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 219:2-4 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 220:12-222:1 | | 401/402, 403, 602, 611, 701, IMP | |
| 222:4-10 | | 401/402, 403, 611, 802, 901, IMP | |
| 222:12-13 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 222:15-223:5 | 223:6-9, 223:11-20 | 401/402, 403, 611, 701, 802, 901, IMP | [223:6-9] 611; 701; 401/402; 602; 103; 611(VA)<br><br>[223:11-20] 611; 701; 401/402; 602; 103 |
| 223:21-224:10 | | 401/402, 403, 611, 701, IMP | |
| 224:12-12 | | 401/402, 403, 611, 701, IMP | |
| 224:14-18 | | 401/402, 403, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 224:20-20 | | 401/402, 403, 611, 701, IMP | |
| 224:22-225:7 | | 401/402, 403, 602, 611, 701, IMP | |
| 225:9-9 | | 401/402, 403, 602, 611, 701, IMP | |
| 225:12-14 | | 401/402, IMP | |
| 226:5-11 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 226:13-228:14 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 228:17-17 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 229:5-230:16 | | 401/402, 403, 611, 701, IMP | |
| 230:18-18 | | 401/402, 403, 611, 701, IMP | |
| 230:20-22 | | 401/402, 403, 611, 701, IMP | |
| 231:7-10 | | 401/402, 403, 602, 611, 701, IMP | |
| 231:13-232:2 | | 401/402, 403, 602, 611, 701, IMP | |
| 232:4-6 | | 401/402, 403, 602, 611, 701, IMP | |
| 234:10-10 | | 401/402, IMP | |
| 234:16-19 | | 401/402, 403, 701, IMP | |
| 234:21-235:2 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 235:9-236:1 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 236:3-7 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 236:9-15 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 236:20-237:2 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 237:5-5 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 237:7-8 | | 401/402, 403, 611, 701, 802, 901, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 237:10-16 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 237:18-18 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 237:20-238:8 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 238:15-17 | | 401/402, IMP | |
| 239:5-13 | | 401/402, 403, 802, 901, IMP | |
| 239:16-241:6 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 241:12-15 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 241:21-22 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 242:2-14 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 242:21-243:2 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 243:4-6 | | 401/402, 403, 701, 802, 901, IMP | |
| 243:10-13 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 243:17-20 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 243:22-244:21 | | 401/402, 403, 611, 701, IMP | |
| 245:4-17 | | 401/402, 802, 901, IMP | |
| 245:19-19 | | 401/402, 802, 901, IMP | |
| 246:11-19 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 246:21-247:3 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 247:5-248:8 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF MICHAEL BROGIOLI
DATE: August 11, 2021**

In addition to the objections listed below, Philips objects to Quectel's attempt to rely on this expert testimony on the basis that it was not disclosed in accordance with the Court's scheduling order or under Fed. R. Civ. P. 26(a)(2).

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 7:2-9:2 | | 401/402, 403, 802 | 97:16-98:20 | |
| 16:9-10 | | 401/402, 403, 802 | | |
| 16:13-14 | | 401/402, 403, 802, 901 | | |
| 16:16-17:1 | | 401/402, 403, 802, 901 | | |
| 16:21-17:1 | | 401/402, 403, 802, 901 | | |
| 17:18-18:6 | | 401/402, 403, 802, 901 | | |
| 18:7-11 | | 401/402, 403, 802 | | |
| 18:12-17 | | 401/402, 403, 802 | | |
| 19:4-21 | | 401/402, 403, 802, 901 | | |
| 19:22-20:14 | | 401/402, 403, 802 | | |
| 20:15-21:13 | | 103, 401/402, 403, 802, 901 | | |
| 21:16-22:12 | | 401/402, 403, 802, 901 | | |
| 22:14-23:3 | | 401/402, 403, 611, 702, 802 | | |
| 23:4-6 | | 401/402, 403, 611, 802 | | |
| 23:8-22 | | 401/402, 403, 611, 702, 802 | | |
| 24:1-1 | | 401/402, 403, 611, 802 | | |
| 24:2-3 | 24:5-8 | 401/402, 403, 611, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 24:9-22 | | 401/402, 403, 611, 802, 901 | | |
| 25:1-3 | | 401/402, 403, 611, 802, 901 | | |
| 25:4-9 | | 103, 401/402, 403, 602, 611, 702, 802, 901, ILC | | |
| 25:12-26:1 | | 103, 401/402, 403, 602, 611, 702, 802, 901, ILC | | |
| 26:4-11 | | 401/402, 403, 602, 611, 702, 802, 901, ILC | | |
| 26:12-32:21 | | 103, 401/402, 403, 602, 611, 702, 802, 901, ILC | | |
| 40:17-20 | | 401/402, 403, 802, 901 | | |
| 40:22-22 | | 401/402, 403, 802, 901 | | |
| 41:4-6 | | 401/402, 403, 802, 901 | | |
| 43:14-15 | | 401/402, 403, 802, 901 | | |
| 43:19-20 | | 401/402, 403, 802, 901 | | |
| 44:1-11 | | 401/402, 403, 802, 901 | | |
| 50:1-16 | | 401/402, 403, 602, 611 Subject to MIL, 802 | | |
| 54:6-10 | | 401/402, 403, 802, 901 | | |
| 55:14-22 | | 401/402, 403, 802, 901 | | |
| 71:17-22 | | 401/402, 403, 802, 901 | | |
| 72:3-8 | | 401/402, 403, 802, 901 | | |
| 72:9-15 | 72:16-22 | 401/402, 403, 802, 901 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 83:11-17 | | 401/402, 403, 611, 702, 802 | | |
| 87:6-15 | | 401/402, 403, 611, 702, 802 | | |
| 87:16-88:12 | | 401/402, 403, 611, 702, 802 | | |
| 89:22-90:2 | | 401/402, 403, 802, 901 | | |
| 90:6-7 | | 401/402, 403, 802, 901 | | |
| 90:10-22 | | 401/402, 403, 802, 901 | | |
| 91:1-8 | | 401/402, 403, 602, 802, 901 | | |
| 91:9-20 | | 401/402, 403, 602, 611, 802, 901 | | |
| 91:22-92:11 | | 401/402, 403, 602, 611, 802, 901 | | |
| 92:13-96:3 | | 401/402, 403, 602, 611, 702, 802, 901 | | |
| 100:8-12 | 99:8-10, 99:12-19 | 401/402, 403, 611, 802 | | [99:12-19] 106; 401/402; 611Count; 403 |
| 114:13-22 | | 401/402, 403, 611, 702, 802 | | |
| 115:9-16 | | 401/402, 403, 802, 901, 802 | | |
| 115:17-116:5 | | 401/402, 403, 802, 901, 802 | | |
| 116:6-9 | 116:10-12 | 106, 401/402, 403, 611, 802, 901 | | |
| 121:4-6 | | 401/402, 403, 602, 611, 702, 802 | | |
| 121:8-18 | | 401/402, 403, 602, 611, 702, 802 | | |
| 121:19-122:2 | | 401/402, 403, 602, 611, 702, 802 | | |
| 122:3-7 | | 401/402, 403, 802 | | |
| 122:11-21 | | 401/402, 403, 611, 702, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 122:22-123:8 | | 401/402, 403, 611, 702, 802 | | |
| 126:21-127:6 | | 401/402, 403, 602, 611, 802 | | |
| 127:14-16 | | 401/402, 403, 602, 611, 702, 802 | | |
| 127:20-128:7 | | 401/402, 403, 602, 611, 702, 802 | | |
| 130:13-131:11 | | 401/402, 403, 602, 611, 802, 901 | | |
| 136:9-17 | | 401/402, 403, 602, 611, 702, 802 | | |
| 137:7-15 | | 401/402, 403, 602, 611, 702 | | |
| 139:2-7 | | 401/402, 403, 802, 901 | | |
| 144:16-145:2 | | 401/402, 403, 602, 611, 702, 802, 901 | | |
| 145:4-15 | | 401/402, 403, 602, 611, 702, 802, 901 | | |
| 145:17-146:5 | | 401/402, 403, 602, 611, 702, 802, 901 | | |
| 147:11-22 | | 103, 401/402, 403, 602, 611, 702, 802 | | |
| 148:1-6 | | 103, 401/402, 403, 602, 611, 702, 802, 901 | | |
| 148:7-149:16 | | 103, 401/402, 403, 602, 611, 702, 802, 901 | | |
| 150:8-19 | | 401/402, 403, 611, 802 | | |
| 150:20-151:1 | | 401/402, 403, 611, 802 | | |
| 151:2-22 | | 401/402, 403, 611, 802 | | |
| 152:2-2 | | 401/402, 403 , 802 | | |
| 155:2-158:11 | | 401/402, 403, 602, 611, 702, 802 | | |
| 159:7-20 | | 401/402, 403, 602, 611, 702, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 159:21-22 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 160:1-3 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 160:5-10 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 161:9-11 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 161:15-15 | | 401/402, 403, 602, 611, 702, 802 | | |
| 161:16-162:4 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 162:14-18 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 162:19-163:1 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 163:2-20 | | 401/402, 403, 602, 611, 702, 802, 901 | | |
| 164:7-165:2 | | 401/402, 403, 611, 702, 802, 901, ILC | | |
| 165:3-6 | | 401/402, 403, 602, 611, 702, 802, 901, ILC | | |
| 166:22-167:11 | | 401/402, 403, 611, 802 | | |
| 167:12-15 | | 401/402, 403, 611, 802 | | |
| 171:18-173:13 | | 401/402, 403, 602, 611, 702, 802 | | |
| 173:15-15 | | 401/402, 403, 602, 611, 702, 802 | | |
| 187:21-188:6 | | 401/402, 403, 602, 611, ILC, 802 | | |
| 188:7-15 | | 401/402, 403, 602, 611, ILC, 802 | | |
| 190:4-9 | 190:10-11 | 106, 401/402, 403, 602, 611, 802 | | |
| 190:12-14 | | 106, 401/402, 403, 602, 611, 802 | | |
| 191:1-4 | | 401/402, 403, 611, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 191:5-17 | | 401/402, 403, 611 , 802 | | |
| 194:2-7 | 193:11-194:1 | 106, 401/402, 403, 602, 611, 702, 802 | | |
| 198:13-199:1 | | 401/402, 403, 611 , 802 | | |
| 199:2-16 | | 401/402, 403, 611, 802 | | |
| 199:17-22 | | 401/402, 403, 611, 802 | | |
| 200:1-201:3 | 201:4-6 | 106, 401/402, 611, 802 | | |
| 201:8-21 | | 401/402, 403, 611, 702, 802 | | |
| 203:22-204:5 | | 401/402, 403, 611, 702, 802 | | |
| 204:6-8 | | 401/402, 403, 611, 702, 802 | | |
| 204:10-11 | | 401/402, 403, 611, 702, 802 | | |
| 211:1-13 | | 401/402, 403, 602, 611, 702, 802 | | |
| 213:15-20 | | 401/402, 403, 602, 611, 702, 802 | | |
| 214:1-10 | | 401/402, 403, 602, 611, 802 | | |
| 214:11-215:5 | | 401/402, 403, 611, 802, 901 | | |
| 215:8-9 | | 401/402, 403, 611, 802, 901 | | |
| 217:9-13 | | 401/402, 403, 602, 611, 702, 802 | | |
| 217:15-218:2 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 218:4-8 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 218:10-17 | | 401/402, 403, 611, 802 | | |
| 223:11-14 | | 401/402, 403, 602, 611, 702, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 223:16-224:1 | | 401/402, 403, 602, 611, 702, 802 | | |
| 224:3-6 | | 401/402, 403, 602, 611, 702, 802 | | |
| 229:3-6 | | 401/402, 403, 602, 611, 702, 802 | | |
| 229:8-10 | | 401/402, 403, 602, 611, 702, 802 | | |
| 245:17-20 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 245:22-246:5 | | 401/402, 403, 602, 611, 702, ILC, 802 | | |
| 246:8-12 | | 401/402, 403, 611, 702, 802 | | |
| 246:14-17 | | 401/402, 403, 611, 702, 802 | | |
| 256:10-14 | 256:7-9 | 106, 401/402, 403, 611, 802 | 255:16-22; 256:2-7 | 106; 401/402; 403 |
| 260:8-22 | | 401/402, 403, 611, 702, 802 | | |
| 261:1-7 | | 401/402, 403, 611, 702, 802 | | |
| 267:8-268:22 | | 401/402, 403, 602, 611, 702, ILC | | |
| 276:18-21 | | 401/402, 403, 611, 802, 901 | | |
| 276:22-277:6 | | 401/402, 403, 611, 802, 901 | | |
| 277:12-14 | | 401/402, 403, 611, 802, 901 | | |
| 277:17-18 | | 401/402, 403, 611, 802, 901 | | |
| 279:6-19 | 279:20-21 | 106, 401/402, 403, 602, 611, 802, 901 | | |
| 279:22-280:5 | | 401/402, 403, 611, 702, 802 | | |
| 280:7-12 | | 401/402, 403, 611, 702, 802 | | |
| 281:18-22 | | 401/402, 403, 611, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 285:3-21 | | 401/402, 403, 602, 611, 802 | | |
| 285:22-286:7 | | 401/402, 403, 602, 611, 702, 802 | | |
| 294:3-6 | | 401/402, 403, 611, 802 | | |
| 294:8-20 | | 401/402, 403, 611, 802 | | |
| 297:5-298:17 | | 401/402, 403, 602, 611, 802 | | |
| 306:4-10 | | 401/402, 403, 602, 611, 702, 802 | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL. (NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF MICHAEL C. BROGIOLI WITNESS STATEMENT DATE: August 20, 2021**

In addition to the objections listed below, Philips objects to Quectel's attempt to rely on this expert testimony on the basis that it was not disclosed in accordance with the Court's scheduling order or under Fed. R. Civ. P. 26(a)(2).

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| Q/A 1 | | 401/402, 802 | Q/A 79 | |
| Q/A 2 | | 401/402, 802 | | |
| Q/A 4 | | 401/402, 403, 611, 802 | | |
| Q/A 5 | Q/A 7 | 401/402, 403, 611, 702, 802, 901, 802 | | 401/402, 403, 611, 702 |
| Q/A 8 | | 401/402, 403, 602, 611, 702, 802 | | |
| Q/A 9 | | 401/402, 403, 602, 611, 702, 802 | | |
| Q/A 10 | | 401/402, 403, 611, 802 | | |
| Q/A 11 | | 401/402, 403, 611, 802 | | |
| Q/A 12 | | 401/402, 403, 611, 802, 901 | | |
| Q/A 13 | | 401/402, 403, 602, 611, 802 | | |
| Q/A 14 | | 401/402, 403, 611, 802 | | |
| Q/A 15 | | 401/402, 802 | | |
| Q/A 16 | | 401/402, 802 | | |
| Q/A 17 | | 401/402, 403, 611, 802 | | |
| Q/A 18 | | 401/402, 403, 602, 611, 702, 802 | | |
| Q/A 19 | | 401/402, 403, 611, 702, 802 | | |
| Q/A 20 | | 401/402, 403, 611, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| Q/A 21 | | 401/402, 403, 611, 802 | | |
| Q/A 28 | | 401/402, 403, 611, 802 | | |
| Q/A 31 | Q/A 30, Q/A 32, Q/A 34 | 401/402, 403, 602, 611, 702, Subject to MIL, 802 | | 401/402, 403, 611, 702, 602 |
| Q/A 35 | Q/A 76, Q/A 77, Q/A/ 144 | 401/402, 403, 611, 702, 802 | | 401/402, 403, 611, 702, 602 |
| Q/A 53 | | 401/402, 403, 611, 702, 802, 901 | | |
| Q/A 63 | | 401/402, 403, 611, 702, 802 | | |
| Q/A 69 | | 401/402, 403, 602, 611, 702, 802 | | |
| Q/A 72 | | 401/402, 403, 602, 611, 802, 901 | | |
| Q/A 80 | Q/A 80 | 106, 401/402, 403, 611. 802, 901 | | 401/402, 403, 611, 702, 602 |
| Q/A 81 | | 401/402, 403, 611, 802, 901 | | |
| Q/A 98 | | 401/402, 403, 611, 702, 802 | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF MICHAEL BROGIOLI REBUTTAL WITNESS STATEMENT
DATE: August 25, 2021**

In addition to the objections listed below, Philips objects to Quectel's attempt to rely on this expert testimony on the basis that it was not disclosed in accordance with the Court's scheduling order or under Fed. R. Civ. P. 26(a)(2).

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| Q/A 1 | | 401/402, 802 | Q/A 40 | |
| Q/A 2 | | 401/402, 802 | | |
| Q/A 30 | Q/A 31 | 401/402, 403, 611, 702, 802, 901 | | 401/402, 403, 611, 702 |
| Q/A 32 | Q/A 32 | 106, 401/402, 403, 611, 702, 802 | | |
| Q/A 38 | Q/A 38 | 106, 401/402, 403, 611, 702, 802 | | |
| Q/A 39 | Q/A 39 | 106, 401/402, 403, 611, 702, 802 | | 401/402, 403, 611, 702, 106 |
| Q/A 40 | Q/A 40 | 106, 401/402, 403, 611, 702 , 802 | | 401/402, 403, 611, 702, 106 |
| Q/A 59 | | 401/402, 403, 611, 702, 802, 901 | | |
| Q/A 60 | Q/A 60 | 106, 401/402, 403, 611, 702, 802 | | 401/402, 403, 611, 702, 106 |
| Q/A 63 | Q/A 63 | 106, 401/402, 403, 611, 702, IMP, 802 | | 401/402, 403, 611, 702, 106 |
| Q/A 65 | | 401/402, 403, 611, 702, 802 | | |
| Q/A 74 | | 401/402, 403, 611, 702, 802, 901 | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.**
**(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF USITC HEARING DAY 2**
**DATE: October 7, 2021**

In addition to the objections listed below, Philips objects to Quectel's attempt to rely on this expert testimony on the basis that it was not disclosed in accordance with the Court's scheduling order or under Fed. R. Civ. P. 26(a)(2).

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 390:8-392:3 | | 105, 401/402, 403, 611, 702, 802 | |
| 394:20-23 | 394:24-395:13; 420:5-421:2; 421:15-20 | 105, 401/402, 403, 611, 702, 802 | |
| 395:14-22 | 394:24-395:13; 395:2 | 105, 106, 401/402, 403, 611, 702, 802 | |
| 395:24-396:9 | 395:2 | 105, 106, 401/402, 403, 611, 702, 802 | |
| 396:14-398:5 | 398:6-17; 420:5-421:2; 421:15-20 | 105, 106, 401/402, 403, 611, 702, 802 | |
| 398:18-399:17 | 420:5-421:2; 421:15-20 | 105, 401/402, 403, 611, 702, 802 | |
| 400:2-7 | 400:8-10 | 105, 106, 401/402, 403, 611, 702, 802 | |
| 401:8-402:5 | | 105, 401/402, 403, 611, 702, 802 | |
| 402:10-17 | | 105, 401/402, 403, 611, 702, 802 | |
| 409:17-21 | | 105, 401/402, 403, 611, 702, 802 | |
| 410:17-22 | | 105, 401/402, 403, 611, 702, 802 | |
| 410:24-411:24 | | 105, 401/402, 403, 611, 702, 802 | |
| 412:3-413:11 | 413:12-17 | 105, 106, 401/402, 403, 611, 702, 802 | |
| 413:18-414:2 | | 105, 401/402, 403, 611, 702, 802 | |
| 431:3-20 | 424:16-425:22 | 105, 401/402, 403, 611, 702, 802 | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF MATTHEW BAKER[1]
DATE: January 20, 2023**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 11:17-19 | | 401/402, IMP | | |
| 13:16-25 | 13:9-15, 14:1-15 | 401/402, 403, 802, 901, IMP | | 104, 401/402, 403, 611(VA), 802, 901 |
| 14:16-15:12 | | 401/402, 403, IMP | | |
| 15:24-16:5 | | 401/402, 403, 611, 701, IMP | | |
| 16:7-17:14 | | 401/402, 403, 611, 701, IMP | | |
| 19:9-20 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 19:25-21:25 | | 401/402, 403, 611, 802, 805, 901, IMP | | |
| 22:7-23:6 | | 401/402, 403, 611, IMP | | |
| 23:16-23 | | 401/402, 403, 602, 611, IMP | | |
| 23:25-24:2 | | 401/402, 403, 602, 611, IMP | | |
| 26:16-18 | 26:9-15 | 401/402, 403, 802, 901, IMP | | 401/402, 403, 802, 901 |
| 27:2-4 | | 401/402, 403, 802, 901, IMP | | |
| 27:10-13 | | 401/402, 403, 802, 901, IMP | | |
| 27:21-25 | 28:1-2 | 106, 401/402, 403, 701, 802, 901, IMP | | 401/402, 403, 802, 901 |
| 28:12-18 | | 401/402, 403, 701, 802, 901, IMP | | |
| 28:22-29:8 | | 401/402, 403, 701, 802, 901, IMP | | |
| 29:24-30:4 | | 401/402, 403, 602, 611, 701, IMP | | |

[1] Philips objects to all designated deposition testimony of Mr. Matthew Baker under Federal Rule of Evidence 804 because Mr. Baker will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 30:7-8 | | 401/402, 403, 602, 611, 701, IMP | | |
| 30:14-19 | | 401/402, 403, 602, 611, 701, IMP | | |
| 31:11-15 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 31:21-32:5 | 31:19-20 | 106, 401/402, 403, 701, 802, 901, IMP | | 401/402, 403, 802, 901 |
| 32:8-9 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 32:11-23 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 34:4-6 | | 401/402, 403, 701, 802, 901, IMP | | |
| 34:16-25 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 35:6-9 | | 401/402, 403, 701, IMP | | |
| 36:2-37:11 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 38:19-39:11 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 39:22-25 | | 401/402, 403, 701, 802, 901, IMP | | |
| 40:2 | | 401/402, 403, 701, 802, 901, IMP | | |
| 41:8-11 | | 401/402, 403, 701, 802, 901, IMP | | |
| 42:10-43:11 | | 401/402, 403, 701, 802, 901, IMP | | |
| 43:24-44:15 | | 401/402, 403, 701, 802, 901, IMP | | |
| 44:20-45:16 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 45:23-46:24 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 47:4-6 | | 401/402, 403, 802, 901, IMP | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 49:6-23 | | 401/402, 403, 802, 901, IMP | | |
| 50:3-8 | | 401/402, 403, 802, 901, IMP | | |
| 50:15-19 | | 401/402, 403, 802, 901, IMP | | |
| 50:23-25 | | 401/402, 403, 802, 901, IMP | | |
| 51:15-25 | | 401/402, 403, 802, 901, IMP | | |
| 52:9-12 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 52:17-53:11 | | 401/402, 403, 701, 802, 901, IMP | | |
| 53:15-16 | | 401/402, 403, 802, 901, IMP | | |
| 54:16-55:4 | | 401/402, 403, 802, 901, IMP | | |
| 55:8-20 | | 401/402, 403, 802, 901, IMP | | |
| 56:13-57:4 | | 401/402, 403, 701, 802, 901, IMP | | |
| 57:8-10 | | 401/402, 403, 802, 901, IMP | | |
| 57:25-58:3 | | 401/402, 403, 802, 901, IMP | | |
| 58:17-23 | | 401/402, 403, 701, 802, 901, IMP | | |
| 59:12-16 | | 401/402, 802, 901, IMP | | |
| 59:20-60:12 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 60:16-61:8 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 61:18-62:5 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 62:23-63:3 | | 401/402, IMP | | |
| 64:2-4 | | 401/402, IMP | | |
| 64:11-14 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 64:18-20 | | 401/402, 403, 611, 701, 802, 901, IMP | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 64:23-65:10 | | 401/402, 403, 611, 802, 901, IMP | | |
| 65:17-23 | | 401/402, 403, 611, IMP | | |
| 66:5-8 | | 401/402, 403, 602, 611, IMP | | |
| 66:23-67:16 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 67:22-68:12 | | 401/402, 403, 602, 611, 802, 901, IMP | | |
| 68:19-24 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 69:20-70:11 | | 401/402, 403, 602, 611, 701, IMP | | |
| 71:6-17 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 71:21-72:4 | | 401/402, IMP | | |
| 73:9-16 | | 401/402, 403, 611, 802, 901, IMP | | |
| 73:20-22 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 74:4-8 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 75:2-18 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 76:21-77:3 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 77:13-20 | | 401/402, 403, 802, 901, IMP | | |
| 77:22-23 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 78:2-10 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 78:13-79:12 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 79:16-80:1 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 80:4-7 | | 401/402, IMP | | |
| 80:11-13 | | 401/402, IMP | | |
| 80:17-19 | | 401/402, IMP | | |
| 81:22-82:4 | | 401/402, 403, 611, 802, 901, IMP | | |
| 82:9-11 | 82:12 | 106, 401/402, 802, 901, IMP | | 401/402, 403, 802, 901 |
| 82:13-83:13 | 83:14-22 | 106, 401/402, 403, 602, 611, 701, 802, 901 | | 401/402, 403, 701, 802, 901 |
| 83:23-84:17 | | 401/402, 403, 602, 611, 802, 901 | | |
| 84:22-85:4 | | 401/402, 403, 802, 901, IMP | | |
| 85:18-86:6 | 86:7-23, 87:5-7 | 401/402, 403, 602, 611, 701, 802, 901, IMP | | 401/402, 403, 611(VA), 701, 802, 901 |
| 89:13-90:16 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 91:15-20 | | 401/402, 802, 901, IMP | | |
| 91:24-92:7 | | 401/402, 403, 802, 901, IMP | | |
| 92:20-23 | | 401/402, 403, 802, 901, IMP | | |
| 93:2-15 | | 401/402, 403, 802, 901, IMP | | |
| 94:7-25 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 95:18-22 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 96:18-20 | 96:21-97:4 | 401/402, 403, 802, 901, IMP | | 401/402, 403, 602, 611(VA), 701, 802, 901 |
| 97:5-22 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 98:2-5 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 98:25-99:2 | | 401/402, 403, 802, 901, IMP | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 99:12-13 | | 401/402, 403, 802, 901, IMP | | |
| 99:24-100:4 | | 401/402, 403, 802, 901, IMP | | |
| 100:8-16 | | 401/402, 403, 802, 901, IMP | | |
| 100:24-101:1 | | 401/402, 403, 802, 901, IMP | | |
| 101:6-23 | | 401/402, 403, 802, 901, IMP | | |
| 102:13-25 | | 401/402, 403, 802, 901, IMP | | |
| 103:17-20 | | 401/402, 403, 611, 802, 901, IMP | | |
| 103:22-104:6 | | 401/402, 403, 611, 802, 901, IMP | | |
| 104:8-9 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 104:16-105:14 | 105:15-21 | 401/402, 403, 611, 701, 802, 901, IMP | | 401/402, 403, 602, 611(VA), 701, 802, 901 |
| 105:22-106:12 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 106:17-107:2 | | 401/402, 403, 611, 701, IMP | | |
| 107:20-23 | | 401/402, 802, 901, IMP | | |
| 108:23-109:23 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 110:2-5 | | 401/402, 403, 611, 802, 901, IMP | | |
| 110:11-16 | | 401/402, 403, 611, 802, 901, IMP | | |
| 110:19-24 | | 401/402, 403, 602, 611, 802, 901, IMP | | |
| 111:1-3 | | 401/402, 403, 802, 901, IMP | | |
| 111:21-112:4 | | 401/402, 403, 802, 901, IMP | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 112:6-114:19 | 120:8-121:15, 122:15-123:6, 123:9-13, 124:2-5, 124:8-16, | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 115:10-12 | | 401/402, 403, 602, 611, 701, IMP | | |
| 115:14-19 | | 401/402, 403, 602, 611, 701, IMP | | |
| 115:22-117:4 | 119:8-12 | 401/402, 403, 602, 611, IMP | | 401/402, 403, 602, 611(VA), 701, 802, 901 |
| 117:11-118:7 | | 401/402, 403, 602, 611, IMP | | |
| 127:2-7 | | 401/402, 403, 602, 802, 901, IMP | | |
| 127:11-128:1 | | 401/402, 403, 611, 701, 802, 901, IMP | | |
| 128:3-9 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 128:12-23 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |
| 128:25-129:2 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF JAKO ELEVELD[1]
DATE: November 21, 2023**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 7:5-14 | | 105, 401/402, 403, IMP, 802 | | |
| 12:3-7 | | 105, 401/402, 403, IMP, 802 | | |
| 13:17-14:6 | | 105, 401/402, 403, IMP, 802 | | |
| 22:19-22 | | 105, 401/402, 403, IMP, 802 | | |
| 26:24-27:2 | 27:3-13 | 105, 401/402, 403, IMP, 802 | | |
| 29:21-30:2 | 30:3-10 | 105, 106, 401/402, 403, IMP, 802 | | |
| 34:25-35:9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 38:12-25 | 39:1-8 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 39:9-12 | 39:1-8; 39:13-20 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | (39:13-20) 403, 611, NR |
| 42:4-14 | 42:15-43:1 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | 401/402, 403, 611, 701 |
| 46:4-9 | 46:10-16 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | 401/402, 403, 611, 701 |
| 50:21-51:2 | 51:3-13 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | |

[1] Philips objects to all designated deposition testimony of Mr. Jako Eleveld under Federal Rule of Evidence 804 because Mr. Eleveld will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 53:4-14 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 57:16-20 | 57:8-15; 57:21-25 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | 106, 401/402, 403, 611, 701 |
| 62:25-63:2 | 63:3-18 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 69:18-25 | 70:1-12 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | 106, 401/402, 403, 611, 701 |
| 78:21-80:9 | 78:9-13; 80:10-19 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 80:20-81:12 | 80:10-19 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 81:19-22 | 81:13-18 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 401/402, 403 |
| 81:24-82:4 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 86:12-17 | 85:18-20; 85:23-86:8 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 88:11-14 | | 105, 401/402, 403, 602, 611, IMP, 802 | | |
| 100:8-19 | 98:25-99:2; 99:5-11; 99:20-100:7 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 109:15-18 | 109:2-14 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 119:15-24 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 127:8-11 | 126:15-127:8 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 403, 602, 611, NR |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 215:2-17 | 213:19-215:1 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 401/402, 403, 602, 802 |
| 225:21-226:4 | 226:5-20 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 253:17-254:7 | 253:8-16 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 265:22-24 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 266:3-8 | 266:9-15 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 266:16-25 | 267:1-9 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 267:10-18 | 267:1-6 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 401/402, 403, 602, 611, 701 |
| 267:20-268:7 | 268:11-20 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 401/402, 403, 602, 611, 701 |
| 269:13-16 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 269:21-270:1 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 270:16-271:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 271:25-272:9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF SOPHIE PASQUIER[1]
DATE: November 28, 2023**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 5:4-7 | | 105, 401/402, 403, IMP, 802 | | |
| 42:18-22 | | 105, 401/402, 403, IMP, 802 | | |
| 54:15-16 | 54:17-22 | 105, 106, 401/402, 403, IMP, 802 | 54:23-55:6 | 403 |
| 56:18-19 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 56:21-57:6 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 58:12-59:9 | 58:8-11 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 66:19-67:11 | 65:23-66:10 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 403, 802, 602 |
| 74:9-75:7 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 75:20-76:13 | 76:14-22 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 77:14-19 | 77:20-23 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 79:12-15 | 79:17-80:11 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 82:25-83:4 | 83:5-14 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | |

[1] Philips objects to all designated deposition testimony of Ms. Sophie Pasquier under Federal Rule of Evidence 804 because Ms. Pasquier will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 83:22-84:11 | 84:11 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | 85:16-18 | 106, 403 |
| 87:16-21 | 88:22-89:11 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | 87:22-88:1 | |
| 89:12-14 | 88:22-89:11; 89:16-90:2 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 91:3-16 | 91:17-92:9 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | 92:11-15 | 403, 802 |
| 97:18-22 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 98:11-12 | | 105, 401/402, 403, IMP, 802 | | |
| 99:5-8 | | 105, 401/402, 403, IMP, 802 | | |
| 105:12-25 | 106:1-107:19 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 107:20-108:11 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 124:4-14 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 130:3-4 | | 105, 401/402, 403, IMP, 802 | | |
| 130:11-22 | 130:25-131:6 | 105, 401/402, 403, 602, 611, IMP, 802 | | |
| 131:10-13 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 131:15-17 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 135:17-18 | | 105, 401/402, 403, IMP, 802 | | |
| 136:21-25 | | 105, 401/402, 403, 602, IMP, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 137:22-24 | | 105, 401/402, 403, 602, 701, IMP, 802 | | |
| 139:17-18 | | 105, 401/402, 403, IMP, 802 | | |
| 144:18-19 | | 105, 401/402, 403, IMP, 802 | | |
| 153:20-21 | | 105, 401/402, 403, IMP, 802 | | |
| 154:18-155:19 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 160:4-10 | 159:23-160:3 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 160:13-161:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 161:14-162:3 | 162:4-18 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 167:21-22 | | 105, 401/402, 403, IMP, 802 | | |
| 168:9-18 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 170:1-4 | | 105, 401/402, 403, 602, 611, IMP, 802 | | |
| 171:3-9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 172:16-19 | | 105, 401/402, 403, IMP, 802 | | |
| 172:25-173:11 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 175:6-17 | 175:18-25 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 178:14-16 | | 105, 401/402, 403, IMP, 802 | | |
| 178:22-179:9 | | 105, 401/402, 403, IMP, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 179:11 | | 105, 401/402, 403, IMP, 802 | | |
| 184:23-185:1 | 185:2-8 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 226:4-227:9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF KEVIN SCOTT, PH.D.[1]
DATE: December 7, 2023**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 14:7-13 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 16:14-19 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 29:18-22 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 29:24-30:5 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 30:9-13 | 30:14-24 | 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | 105, 401/402, 403, 602, 611(VA), 701, 802 |
| 30:25-31:6 | 30:14-24 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 105, 401/402, 403, 602, 611(VA), 701, 802 |
| 36:17-21 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 41:9-42:12 | 42:13-43:13 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 105, 401/402, 403, 602, 611(VA), 701, 802 |
| 47:6-8 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 47:10-13 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 47:15 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |

[1] Philips objects to all designated deposition testimony of Mr. Kevin Scott under Federal Rule of Evidence 804 because Mr. Scott will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 50:14-17 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 50:23-51:2 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 57:24-58:1 | 57:17-18; 57:20-23 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 104, 105, 401/402, 403, 602, 611(VA), 701, 802 |
| 58:4-6 | 57:17-18; 57:20-23 | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 104, 105, 401/402, 403, 602, 611(VA), 701, 802 |
| 69:9-20 | 69:21-70:4 | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 104, 105, 401/402, 403, 602, 611(VA), 611(AF), 701, 802 |
| 71:6-16 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 71:22-72:25 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 80:4-14 | 80:15-23 | 104, 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | 104, 105, 401/402, 403, 602, 611(VA), 611(AF), 701, 802 |
| 80:24-81:2 | 80:15-23 | 104, 105, 106, 401/402, 403, 602, 611, 701, IMP, 802 | | 104, 105, 401/402, 403, 602, 611(VA), 611(AF), 701, 802 |
| 88:12-19 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 88:22-24 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 116:20-117:1 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 117:3-6 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 117:8-10 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|---|
| 117:12-14 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 117:16-118:2 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 118:4-11 | 118:12-14; 118:17-24 | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 104, 105, 401/402, 403, 602, 611(VA), 611(AF), 701, 802 |
| 119:7-17 | 118:12-14; 118:17-24 | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | 104, 105, 401/402, 403, 602, 611(VA), 611(AF), 701, 802 |
| 119:19-21 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 138:22-139:8 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 139:10-24 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 140:4-17 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 160:21-23 | | 105, 401/402, 403, IMP, 802 | | |
| 161:1-9 | | 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| 162:1-4 | | 104, 105, 401/402, 403, 602, 611, 701, IMP, 802 | | |
| | | | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.**
**(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF KEVIN SCOTT[1]**
**DATE: February 20, 2026**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 6:21-24 | | 105, 401/402, 403, IMP | |
| 7:9-25 | | 401/402, IMP | |
| 8:4-6 | | 105, 401/402, IMP | |
| 8:13-16 | | 105, 401/402, IMP | |
| 9:15-17 | | 105, 401/402, IMP | |
| 9:24-25 | | 105, 401/402, IMP | |
| 10:1-2 | | 105, 401/402, IMP | |
| 10:13-20 | | 105, 401/402, IMP | |
| 11:18-23 | | 105, 401/402, IMP | |
| 12:5-11 | | 105, 401/402, IMP | |
| 12:16-18 | | 105, 401/402, IMP | |
| 14:6-11 | | 105, 401/402, IMP | |
| 16:17-18 | | 105, 401/402, IMP | |
| 16:24-17:25 | | 105, 401/402, IMP | |
| 18:2-21:16 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 22:5-6 | 21:17-22:4 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 401/402; NE; 104; 403 |
| 22:10-24 | 21:17-22:4 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 401/402; NE; 104; 403 |
| 23:13-24:1 | 24:2-5 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 401/402; 104; 403 |
| 24:24-25 | | 103, 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 25:2-26:5 | | 103, 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 26:11-27:7 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 27:8-30:20 | 30:21-31:8 | 105, 401/402, 403, 602, 611, 701, IMP | 401/402; 602; 611(VA); 403 |
| 31:9-32:10 | 30:21-31:8 | 105, 401/402, 403, 602, 611, 701, IMP | 401/402; 602; 611(VA); 403 |

[1] Philips objects to all designated deposition testimony of Mr. Kevin Scott under Federal Rule of Evidence 804 because Mr. Scott will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 33:1-10 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 33:12-36:17 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 37:7-39:3 | 39:4-9 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 611(NR); 401/402; 602; 403 |
| 39:10-12 | 39:4-9 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 611(NR); 401/402; 602; 403 |
| 39:14-40:7 | 40:8-11 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 611(NR); 701; 401/402; 602; 403 |
| 40:12-20 | 40:8-11 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 611(NR); 701; 401/402; 602; 403 |
| 40:22-41:5 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 41:10-21 | | 103, 105, 401/402, 403, 602, 611, 701, IMP | |
| 41:23-47:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 47:7-21 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 48:4-57:5 | 57:6-7; 57:9-11 | 104, 105, 106, 401/402, 403, 602, 611, 701, IMP | [57:6-7] 701; 802; 401/402; 602; 105; 403<br><br>[57:9-11] 611(NR); 701; 401/402; 602; 403 |
| 57:12-58:9 | 57:6-7; 57:9-11 | 105, 106, 401/402, 403, 602, 611, 701, IMP | [57:6-7] 701; 802; 401/402; 602; 105; 403<br><br>[57:9-11] 611(NR); 701; 401/402; 602; 403 |
| 58:11-62:2 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 62:7-64:18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 64:22-71:20 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 72:10-78:16 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 78:23-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 79:2-15 | | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 79:17-81:9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 81:11-18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 81:22-83:18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 83:21-85:11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 85:14-23 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 86:1-12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 86:15-23 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 87:1-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 87:14-88:1 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 88:4-89:18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 89:22-91:4 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 91:6-10 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 91:13-13 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 92:6-9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 92:11-99:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 99:6-102:24 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 103:2-105:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 105:20-22 | | 105, 401/402, 403, IMP | |
| 106:1-15 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 106:17-107:25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 108:4-109:21 | | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 109:23-114:17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 114:19-122:14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 122:19-123:18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 123:20-126:25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 127:13-15 | | 105, 401/402, 403, 602, IMP | |
| 127:19-130:25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 131:2-136:10 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 136:14-142:11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 143:4-146:7 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 146:10-152:10 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 152:15-157:8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 157:22-160:7 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 160:23-164:5 | 160:20-22 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 401/402; 602; NE; 104; 403 |
| 164:12-165:18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 166:2-167:11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 167:24-168:15 | 168:16-19 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 611(NR); 401/402; 602; NE; 104; 403 |
| 168:20-169:19 | 168:16-19 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 611(NR); 401/402; 602; NE; 104; 403 |
| 170:2-171:7 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 171:25-172:7 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 173:2-174:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 174:15-176:17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 177:1-18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 178:2-4 | | 105, 401/402, 403, 611, IMP | |
| 178:14-23 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 179:7-180:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 180:9-21 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 181:3-6 | | 105, 401/402, 403, 602, 611, IMP | |
| 181:14-182:24 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 183:6-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 184:7-185:1 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 185:7-186:11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 186:16-189:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 189:20-192:7 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 192:10-193:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 193:4-22 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 193:24-195:14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 195:16-196:9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 196:11-198:8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 198:10-199:5 | | 105, 401/402, 403, 602, 611, 701, IMP | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF MATTHEW BAKER[1]
DATE: February 24, 2026**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 7:19-24 | | 401/402, IMP | |
| 8:2-5 | | 401/402, IMP | |
| 8:12-19 | | 401/402, IMP | |
| 9:11-14 | | 401/402, IMP | |
| 9:25-10:1 | | 401/402, IMP | |
| 11:2-3 | | 401/402, 802, 901, IMP | |
| 12:4-7 | | 401/402, 403, 802, 901, IMP | |
| 12:13-19 | | 401/402, 403, 802, 901, IMP | |
| 14:25-15:6 | | 401/402, 403, IMP | |
| 22:15-23 | | 401/402, 403, IMP | |
| 24:25-25:5 | | 401/402, 403, 611, 701, IMP | |
| 25:11-15 | | 401/402, 403, 611, IMP | |
| 26:2-4 | | 401/402, 403, 611, IMP | |
| 28:14-15 | | 401/402, 403, IMP | |
| 28:17-17 | | 401/402, 403, IMP | |
| 29:6-10 | | 401/402, 403, IMP | |
| 29:17-18 | | 401/402, 403, IMP | |
| 29:20-22 | | 401/402, 403, IMP | |
| 30:5-9 | | 401/402, 403, 802, 901, IMP | |
| 30:17-31:9 | | 401/402, 403, 802, 901, IMP | |
| 31:11-12 | | 401/402, 403, 802, 901, IMP | |
| 31:13-20 | | 401/402, 403, 802, 901, IMP | |
| 31:23-23 | | 401/402, 403, 802, 901, IMP | |

[1] Philips objects to all designated deposition testimony of Mr. Matthew Baker under Federal Rule of Evidence 804 because Mr. Baker will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 32:2-10 | | 401/402, 403, 802, 901, IMP | |
| 32:13-13 | | 401/402, 403, 802, 901, IMP | |
| 32:18-22 | | 401/402, 403, IMP | |
| 33:10-13 | | 401/402, 403, IMP | |
| 37:20-23 | | 401/402, 403, IMP | |
| 38:12-21 | 38:23 | 106, 401/402, 403, 611, 701, IMP | 611; 701; 401/402; 602; 611(VA); 403; 104 |
| 38:24-39:2 | | 401/402, 403, IMP | |
| 39:13-40:3 | | 401/402, 403, 611, IMP | |
| 40:8-9 | | 401/402, 403, 602, 611, IMP | |
| 40:11-13 | | 401/402, 403, 602, 611, IMP | |
| 40:14-16 | | 401/402, 403, 611, IMP | |
| 40:18-24 | | 401/402, 403, 611, IMP | |
| 42:9-11 | | 401/402, 403, 611, 701, IMP | |
| 42:13-13 | | 401/402, 403, 611, 701, IMP | |
| 42:17-43:1 | 42:16 | 106, 401/402, 403, 611, 701, IMP | 611; 602; 103; 611(VA); 403 |
| 43:4-21 | 43:3 | 106, 401/402, 403, 611, 701, IMP | 611; 701; 401/402; 703; 611(AF); 611(VA); 403 |
| 45:12-20 | | 401/402, 403, 611, IMP | |
| 45:25-25 | | 401/402, 403, 611, IMP | |
| 46:8-13 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 46:23-47:4 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 47:9-10 | | 401/402, 403, 611, IMP | |
| 47:12-12 | | 401/402, 403, 611, IMP | |
| 47:18-18 | | 401/402, 403, IMP | |
| 47:20-24 | | 401/402, 403, IMP | |
| 48:21-21 | | 401/402, 403, 611, 701, IMP | |
| 48:24-49:8 | | 401/402, 403, 611, 701, IMP | |
| 49:10-10 | | 401/402, 403, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 50:2-5 | 50:16-17, 50:19 | 401/402, 403, 611, 701, IMP | [50:16-17] 611; 401/402; 611(VA)<br><br>[50:19-19] 611(NR); 401/402; 602; 403 |
| 50:7-7 | | 401/402, 403, 611, 701, IMP | |
| 50:10-10 | | 401/402, 403, 602, 611, 701, IMP | |
| 50:12-15 | | 401/402, 403, 602, 611, 701, IMP | |
| 51:16-23 | | 401/402, 403, 611, 701, IMP | |
| 51:25-52:3 | | 401/402, 403, 701, IMP | |
| 52:5-13 | | 401/402, 403, 611, 701, IMP | |
| 52:17-22 | | 401/402, 403, 611, 701, IMP | |
| 52:24-53:1 | | 401/402, 403, 611, 701, IMP | |
| 53:3-3 | | 401/402, 403, 611, 701, IMP | |
| 53:9-11 | 125:11-14, 125:17-19, 125:21-126:2 | 401/402, 403, 611, 701, IMP | [125:11-14] 611(NR); 401/402; 602; NE; 403<br><br>[125:17-19] 701; 401/402; 602; 611(VA)<br><br>[125:21-126:2] 611; 701; 401/402; 602 |
| 53:13-16 | | 401/402, 403, 611, 701, IMP | |
| 53:18-54:3 | | 401/402, 403, 602, 611, 701, IMP | |
| 54:5-18 | | 401/402, 403, 602, 611, 701, IMP | |
| 54:20-22 | | 401/402, 403, 602, 611, 701, IMP | |
| 55:1-10 | | 401/402, 403, 611, 701, IMP | |
| 55:23-25 | | 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 56:2-2 | | 401/402, 403, 602, 611, 701, IMP | |
| 56:10-17 | | 401/402, 403, 602, 611, 701, IMP | |
| 56:23-57:6 | | 401/402, 403, 611, 701, IMP | |
| 57:8-11 | | 401/402, 403, 611, 701, IMP | |
| 58:9-18 | | 401/402, 403, 611, 701, IMP | |
| 59:4-6 | | 401/402, 403, 611, 701, IMP | |
| 59:8-10 | | 401/402, 403, 611, 701, IMP | |
| 59:12-14 | | 401/402, 403, 611, 701, IMP | |
| 59:16-16 | | 401/402, 403, 611, 701, IMP | |
| 60:3-11 | | 401/402, 403, 602, 611, 701, IMP | |
| 60:13-17 | | 401/402, 403, 602, 611, 701, IMP | |
| 60:19-23 | | 401/402, 403, 602, 611, 701, IMP | |
| 60:25-61:3 | | 401/402, 403, 611, 701, IMP | |
| 61:5-10 | | 401/402, 403, 611, 701, IMP | |
| 62:11-13 | | 401/402, 403, 602, 611, 701, IMP | |
| 62:15-20 | | 401/402, 403, 602, 611, 701, IMP | |
| 62:22-22 | | 401/402, 403, 602, 611, 701, IMP | |
| 63:11-17 | | 401/402, 403, 602, 611, 701, IMP | |
| 63:19-22 | | 401/402, 403, 602, 611, 701, IMP | |
| 63:24-25 | | 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 64:2-25 | | 401/402, 403, 602, 611, 701, IMP | |
| 65:4-6 | | 401/402, 403, 602, 611, 701, IMP | |
| 65:8-8 | | 401/402, 403, 602, 611, 701, IMP | |
| 65:14-16 | | 401/402, 403, 602, 611, 701, IMP | |
| 65:18-25 | | 401/402, 403, 602, 611, 701, IMP | |
| 66:2-5 | | 401/402, 403, 611, 701, IMP | |
| 66:7-10 | | 401/402, 403, 611, 701, IMP | |
| 66:12-21 | | 401/402, 403, 602, 611, 701, IMP | |
| 66:23-67:5 | | 401/402, 403, 602, 611, 701, IMP | |
| 67:7-9 | | 401/402, 403, 602, 611, 701, IMP | |
| 67:11-11 | | 401/402, 403, 602, 611, 701, IMP | |
| 67:18-20 | | 401/402, 403, 611, 701, IMP | |
| 67:22-22 | | 401/402, 403, 611, 701, IMP | |
| 68:2-15 | | 401/402, 403, 602, 611, 701, IMP | |
| 68:17-20 | | 401/402, 403, 602, 611, 701, IMP | |
| 68:22-25 | | 401/402, 403, 602, 611, 701, IMP | |
| 69:2-2 | | 401/402, 403, 602, 611, 701, IMP | |
| 69:13-17 | | 401/402, 403, 611, 701, IMP | |
| 69:19-19 | | 401/402, 403, 611, 701, IMP | |
| 70:2-6 | | 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 70:8-10 | | 401/402, 403, 602, 611, 701, IMP | |
| 70:20-22 | | 401/402, 403, 602, 611, 701, IMP | |
| 70:25-71:1 | | 401/402, 403, 602, 611, 701, IMP | |
| 75:21-22 | | 401/402, 403, 602, 611, 701, IMP | |
| 75:24-24 | | 401/402, 403, 602, 611, 701, IMP | |
| 97:6-8 | | 401/402, 403, 602, 611, 701, IMP | |
| 97:10-14 | 72:21-73:2 | 401/402, 403, 602, 611, 701, IMP | 611(NR); 401/402; 602; NE; 403 |
| 97:16-16 | | 401/402, 403, 602, 611, 701, IMP | |
| 98:3-9 | | 401/402, 403, 602, 611, 701, IMP | |
| 98:11-11 | | 401/402, 403, 602, 611, 701, IMP | |
| 98:17-20 | | 401/402, 403, 602, 611, 701, IMP | |
| 101:9-10 | | 401/402, 403, 602, 611, 701, IMP | |
| 101:12-15 | | 401/402, 403, 611, 701, IMP | |
| 101:17-18 | | 401/402, 403, 602, 611, 701, IMP | |
| 101:20-20 | | 401/402, 403, 602, 611, 701, IMP | |
| 101:23-102:14 | | 401/402, 403, 602, 611, 701, IMP | |
| 103:1-3 | | 401/402, 403, 611, 701, IMP | |
| 103:6-10 | | 401/402, 403, 602, 611, 701, IMP | |
| 110:1-2 | | 401/402, 403, 611, 701, IMP | |
| 110:5-7 | | 401/402, 403, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 110:9-17 | | 401/402, 403, 611, 701, IMP | |
| 134:9-13 | | 401/402, 403, IMP | |
| 134:16-19 | | 401/402, 403, 701, IMP | |
| 134:21-25 | | 401/402, 403, IMP | |
| 135:23-136:4 | | 401/402, 403, 602, 611, 701, IMP | |
| 136:5-6 | | 401/402, 403, 602, 611, 701, IMP | |
| 136:8-8 | | 401/402, 403, 602, 611, 701, IMP | |
| 137:10-14 | 67:23-68:1 | 401/402, 403, 602, 611, 701, 802, 901, IMP | 611(NR); 401/402; 602; NE; 403 |
| 140:8-12 | | 401/402, 403, 602, 611, 701, IMP | |
| 140:14-15 | | 401/402, 403, 602, 611, 701, IMP | |
| 140:19-21 | | 401/402, 403, 602, 611, 701, IMP | |
| 140:23-24 | | 401/402, 403, 602, 611, 701, IMP | |
| 140:25-25 | | 401/402, 403, 602, 611, 701, IMP | |
| 141:2-3 | | 401/402, 403, 602, 611, 701, IMP | |
| 141:4-6 | | 401/402, 403, 602, 611, 701, IMP | |
| 141:8-15 | 141:16-19 | 401/402, 403, 602, 611, 701, IMP | 401/402; 602; 403 |
| 143:6-10 | | 401/402, 403, 602, 611, 701, IMP | |
| 143:12-12 | | 401/402, 403, 602, 611, 701, IMP | |
| 144:4-10 | | 401/402, 403, 602, 611, 701, IMP | |
| 144:11-14 | | 401/402, 403, 602, 611, 701, IMP | |
| 147:2-12 | 146:20-23, 147:1 | 106, 401/402, 403, 611, 701, IMP | [146:20-23] ILC; 701; 401/402; 602; OS; 611(VA)<br><br>[147:1-1] ILC; 701; 401/402; 602; OS |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 147:13-15 | | 401/402, 403, 611, 701, IMP | |
| 147:17-21 | | 401/402, 403, 611, 701, IMP | |
| 148:12-25 | 149:4 | 106, 401/402, 403, 611, 701, 802, 901, ILC, IMP | ILC; 701; 401/402; 602 |
| 149:1-1 | | 106, 401/402, 403, 602, 611, 701, 802, 901, ILC, IMP | |
| 149:13-14 | | 401/402, 403 , 611, 701, IMP | |
| 149:17-25 | | 401/402, 403, 602, 611, 701, IMP | |
| 150:1-2 | | 401/402, 403, 602, 611, 701, IMP | |
| 150:3-5 | | 401/402, 403, 602, 611, 701, IMP | |
| 150:7-10 | | 401/402, 403, 602, 611, 701, IMP | |
| 150:12-14 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 150:17-21 | | 401/402, 403, 602, 611, 701, IMP | |
| 150:24-24 | | 401/402, 403, 602, 611, 701, IMP | |
| 151:7-10 | | 401/402, 403, 602, 611, 701, 802, 901, IMP | |
| 151:12-13 | | 401/402, IMP | |
| 151:19-25 | | 401/402, 403, 611, 701, IMP | |
| 152:23-153:6 | | 401/402, 403, 602, 611, 701, IMP | |
| 153:7-9 | | 401/402, 403, 611, 701, IMP | |
| 153:11-13 | | 401/402, 403, 611, 701, IMP | |
| 154:3-4 | | 401/402, 403, 602, 611, 701, IMP | |
| 154:6-16 | | 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 154:19-19 | | 401/402, 403, 602, 611, 701, IMP | |
| 154:22-155:1 | | 401/402, 403, 602, 611, 701, IMP | |
| 155:3-3 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 155:12-14 | | 401/402, 403, 602, 611, 701, IMP | |
| 155:16-19 | | 401/402, 403, 611, 701, IMP | |
| 156:4-9 | | 401/402, 403, 611, 701, IMP | |
| 156:10-12 | | 401/402, 403, 611, 701, IMP | |
| 156:15-25 | | 401/402, 403, 611, 701, IMP | |
| 157:1-5 | | 401/402, 403, 611, 701, IMP | |
| 157:8-158:3 | | 401/402, 403, 611, 701, IMP | |
| 158:4-9 | | 401/402, 403, 611, 701, IMP | |
| 158:10-18 | | 401/402, 403, 611, 701, IMP | |
| 158:19-22 | | 401/402, 403, 611, 701, IMP | |
| 158:24-159:4 | | 401/402, 403, 611, 701, IMP | |
| 159:6-18 | | 401/402, 403, 611, 701, IMP | |
| 159:19-22 | | 401/402, 403, 602, 611, 701, IMP | |
| 159:23-160:9 | | 401/402, 403, 602, 611, 701, IMP | |
| 160:10-16 | | 401/402, 403, 611, 701, IMP | |
| 160:18-21 | | 401/402, 403, 611, 701, IMP | |
| 163:4-14 | 164:1-4 | 401/402, 403, 602, 611, 701, IMP | 401/402; 403 |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 164:5-5 | | 401/402, 403, 602, 611, 701, IMP | |
| 164:7-17 | | 401/402, 403, 602, 611, IMP | |
| 164:19-20 | | 401/402, 403, 611, 701, IMP | |
| 164:23-25 | | 401/402, 403, 611, 701, IMP | |
| 165:2-6 | | 401/402, 403, 602, 611, IMP | |
| 165:12-12 | | 401/402, 403, 611, 701, IMP | |
| 165:14-18 | | 401/402, 403, 611, 701, IMP | |
| 166:2-7 | | 401/402, 403, 611, 701, IMP | |
| 167:4-5 | | 103, 401/402, 403, 611, 701, IMP | |
| 167:8-11 | | 401/402, 403, 602, 611, 701, IMP | |
| 167:25-168:11 | | 401/402, 403, 611, 701, IMP | |
| 168:12-25 | | 401/402, 403, 611, 701, IMP | |
| 169:1-14 | | 401/402, 403, 602, 611, 701, IMP | |
| 170:10-14 | 170:1-4, 170:6-9 | 401/402, 403, 611, 701, IMP | [170:1-4] 611(NR); 611; 701; 401/402; 602; 403<br><br>[170:6-9] 611; 701; 401/402; 602; 611Comp; 403 |
| 171:1-2 | | 401/402, 403, 611, 701, IMP | |
| 171:5-23 | | 103, 401/402, 403, 611, 701, IMP | |
| 171:24-172:4 | | 401/402, 403, 611, 701, IMP | |
| 172:12-17 | | 401/402, 403, 611, 701, ILC, IMP | |
| 172:19-19 | | 401/402, 403, 611, 701, ILC, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 173:5-6 | | 401/402, 403, 602, 611, 701, IMP | |
| 173:9-25 | 174:1-4, 174:6 | 401/402, 403, 602, 611, 701, IMP | [174:1-4] ILC; 701; 401/402; 602; 611(VA); 403<br><br>[174:6-6] 611; 701; 401/402; 602; 611(VA); 403 |
| 177:2-5 | 176:21-177:1 | 401/402, 403, 611, 701, IMP | [176:21-177:1] 611; 701; 401/402; 602; 611(VA); 403 |
| 178:11-19 | | 401/402, 403, 611, 701, IMP | |
| 178:22-179:2 | | 401/402, 403, 602, 611, 701, 802, 901, ILC, IMP | |
| 179:5-5 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 180:23-181:1 | | 401/402, 403, 611, 701, IMP, IMP | |
| 181:3-8 | | 401/402, 403, 611, 701 | |
| 181:14-16 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 181:19-182:9 | | 401/402, 403, 602, 611, 701, IMP | |
| 187:22-188:9 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 189:22-23 | | 401/402, 403, 602, 611, 701, IMP | |
| 189:25-190:10 | 191:13-14, 191:16-20 | 401/402, 403, 602, 611, 701, IMP | [191:13-14] 611; 401/402; 611(VA); 403<br><br>[191:16-20] 611; 701; 401/402; 602; 611Comp |
| 190:12-17 | | 401/402, 403, 602, 611, 701, IMP | |
| 191:21-23 | | 103, 401/402, 403, 611, 701, IMP | |
| 192:1-9 | | 401/402, 403, 611, 701, IMP | |
| 193:11-13 | | 401/402, 403, IMP | |
| 194:4-13 | | 401/402, 403, 611, 701, 802, 901, IMP | |
| 196:14-17 | | 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 196:19-19 | | 401/402, 403, 602, 611, 701, IMP | |
| 197:5-7 | | 401/402, 403, 602, 611, 701, IMP | |
| 198:2-3 | | 401/402, 403, 611, 701, ILC, IMP | |
| 198:6-199:4 | | 401/402, 403, 611, 701, IMP | |
| 200:12-15 | | 401/402, 403, 602, 611, 701, IMP | |
| 200:18-19 | | 401/402, 403, 602, 611, 701, IMP | |
| 200:21-23 | | 401/402, 403, 602, 611, 701, IMP | |
| 201:9-11 | | 401/402, 403, 611, 701, IMP | |
| 201:12-22 | | 401/402, 403, 611, 701, IMP | |
| 201:24-202:2 | | 401/402, 403, 611, 701, IMP | |
| 202:4-9 | | 401/402, 403, 602. 611, 701, IMP | |
| 202:11-11 | | 401/402, 403, 602, 611, 701, IMP | |
| 202:15-22 | | 401/402, 403, 611, 701, IMP | |
| 203:13-15 | | 401/402, 403, 602, 611, 701, 802, 901, ILC | |
| 203:17-17 | | 401/402, 403, 602, 611, 701, 901. ILC, IMP | |
| 203:18-21 | | 401/402, 403, 602, 611, 701, 901, ILC, IMP | |
| 204:10-11 | | 401/402, 403, 602, 611, 701, IMP | |
| 204:13-13 | | 401/402, 403, 602, 611, 701, IMP | |
| 206:2-8 | | 401/402, 403, 802, 901, IMP | |
| 206:9-13 | | 401/402, 403, 611, 701, 802, 901, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 206:17-18 | | 401/402, 403, 611, 701, IMP | |
| 206:20-23 | | 401/402, 403, 611, 701, IMP | |
| 206:25-207:4 | | 401/402, 403, 611, 701, IMP | |
| 207:6-8 | | 401/402, 403, 602, 611, 701, IMP | |
| 207:10-16 | | 401/402, 403, 602, 611, 701, IMP | |
| 207:19-208:3 | | 401/402, 403, 611, 701, IMP | |
| 208:6-10 | | 401/402, 403, 611, 701, IMP | |
| 209:1-1 | | 401/402, 403, 602, 611, IMP | |
| 209:3-4 | | 401/402, 403, 602, 611, IMP | |
| 209:18-20 | | 401/402, 403, 602, 611, 701, IMP | |
| 209:22-22 | | 401/402, 403, 602, 611, IMP | |
| 209:23-210:3 | | 401/402, 403, 611, IMP | |
| 210:4-16 | | 401/402, 403, 602, 611, IMP | |
| 210:18-211:3 | | 401/402, 403, 602, 611, 701, IMP | |
| 211:5-8 | | 401/402, 403, 602, 611, 701, IMP | |
| 211:11-212:21 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 212:24-213:7 | | 401/402, 403, 602, 611, 701, ILC, IMP | |
| 213:8-14 | | 401/402, 403, 602, 611, 701, 802, 901, ILC, IMP | |
| 214:1-6 | | 401/402, 403, 611, IMP | |
| 214:8-13 | | 401/402, 403, 602, 611, IMP | |
| 214:15-23 | | 401/402, 403, 611, IMP | |
| 214:25-215:8 | | 401/402, 403, 611, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 215:10-12 | | 401/402, 403, 602, 611, IMP | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF IVAN ZHANG
DATE: February 26, 2026**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 7:19-25 | | | |
| 8:1-14 | | | |
| 8:17-19 | | | |
| 8:21-25 | | | |
| 9:1-17 | | | |
| 9:20-22 | | | |
| 9:24-10:3 | | | |
| 10:6-8 | | | |
| 10:10-19 | | | |
| 10:23-24 | | | |
| 11:1-2 | | | |
| 11:23-12:1 | | | |
| 12:4-12 | | | |
| 12:14-25 | | | |
| 13:1-2 | | | |
| 13:4-6 | | | |
| 13:8-14 | | | |
| 13:17-21 | | | |
| 13:23-14:6 | | | |
| 14:9-17 | | | |
| 14:19-22 | | | |
| 14:23-15:7 | | | |
| 15:10-18 | | | |
| 15:20-16:1 | | | |
| 16:5-8 | | | |
| 16:11-16 | | | |
| 16:18-17:6 | | | |
| 17:8-10 | | | |
| 17:14-14 | | | |
| 17:18-20 | | | |
| 17:22-18:5 | | | |
| 18:8-16 | | | |
| 18:18-22 | | | |
| 18:23-19:2 | | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 19:4-15 | | | |
| 19:17-20:5 | | | |
| 20:7-8 | | | |
| 20:10-12 | | | |
| 20:14-18 | | | |
| 20:19-22 | | | |
| 20:24-25 | | | |
| 21:16-18 | | | |
| 21:19-19 | | | |
| 21:21-22 | | | |
| 22:2-14 | | | |
| 22:16-19 | | | |
| 28:24-29:18 | | | |
| 29:25-30:12 | | | |
| 30:17-32:5 | | | |
| 33:12-21 | | | |
| 33:22-35:3 | | | |
| 35:18-36:2 | | | |
| 36:12-17 | | | |
| 36:19-37:7 | | | |
| 37:9-15 | | | |
| 37:17-18 | | | |
| 38:1-18 | | | |
| 39:9-40:1 | | | |
| 40:5-5 | | | |
| 40:16-41:7 | | | |
| 41:8-25 | | | |
| 42:2-8 | | | |
| 42:9-43:2 | | | |
| 43:4-6 | | | |
| 43:9-21 | | | |
| 43:24-44:9 | | | |
| 44:11-19 | | | |
| 44:21-45:9 | | | |
| 45:10-19 | | | |
| 45:21-25 | | | |
| 46:1-7 | | | |
| 46:9-11 | | | |
| 46:13-24 | | | |
| 46:25-47:2 | | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 47:5-8 | | | |
| 47:10-12 | | | |
| 47:16-48:3 | | | |
| 49:24-50:12 | | | |
| 50:17-51:5 | | | |
| 51:7-17 | | | |
| 51:19-52:7 | | | |
| 52:8-9 | | | |
| 52:11-14 | | | |
| 52:15-20 | | | |
| 52:22-53:10 | | | |
| 53:12-20 | | | |
| 55:20-23 | | | |
| 55:24-56:15 | | | |
| 57:6-11 | | | |
| 57:12-17 | | | |
| 58:1-10 | | | |
| 58:11-14 | | | |
| 58:16-59:9 | | | |
| 59:16-19 | | | |
| 59:21-60:14 | | | |
| 61:5-62:5 | | | |
| 63:19-22 | | | |
| 63:25-65:13 | | | |
| 67:22-68:4 | | | |
| 68:6-19 | | | |
| 68:21-22 | | | |
| 68:24-69:1 | | | |
| 69:3-6 | | | |
| 69:8-70:3 | | | |
| 70:5-11 | | | |
| 70:13-18 | | | |
| 70:20-24 | | | |
| 71:1-3 | | | |
| 74:18-75:7 | | | |
| 76:5-11 | | | |
| 97:22-98:6 | | | |
| 98:7-9 | | | |
| 98:20-99:1 | | | |
| 99:5-6 | | | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 99:8-17 | | | |
| 100:15-17 | | | |
| 101:13-16 | | | |
| 103:17-20 | | | |
| 104:20-105:8 | | | |
| 109:15-17 | | | |
| 109:18-110:8 | | | |
| 110:10-18 | | | |
| 110:19-24 | | | |
| 111:1-5 | | | |
| 111:7-15 | | | |
| 111:16-25 | | | |
| 112:4-115:3 | | | |
| 115:6-117:1 | | | |
| 117:6-14 | | | |
| 117:25-118:2 | | | |
| 118:7-22 | | | |
| 119:1-6 | | | |
| 120:7-10 | | | |
| 120:11-15 | | | |
| 120:18-20 | | | |
| 121:20-122:2 | | | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.**
**(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF JAKO ELEVELD[1]**
**DATE: March 4, 2026**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 6:16-20 | | 105, 401/402, 403, IMP | |
| 6:24-7:19 | | 105, 401/402, 403, IMP | |
| 8:12-21 | | 105, 401/402, 403, IMP | |
| 11:13-12:5 | | 105, 401/402, 403, IMP | |
| 16:5-11 | | 105, 401/402, 403, IMP | |
| 17:17-22 | | 105, 401/402, 403, IMP | |
| 18:8-9 | | 105, 401/402, 403, 611, IMP | |
| 19:6-8 | | 105, 401/402, 403, 611, IMP | |
| 19:20-24 | | 105, 401/402, 403, IMP | |
| 20:9-15 | | 105, 401/402, 403, IMP | |
| 22:14-23:7 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 24:5-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 25:22-24 | | 105, 401/402, 403, IMP | |
| 27:17-28:9 | | 105, 401/402, 403, 602, 611, IMP | |
| 28:17-29:11 | | 105, 401/402, 403, 602, 611, IMP | |
| 30:14-32:23 | | 105, 401/402, 403, 602, 611, IMP | |
| 33:7-35:2 | | 105, 401/402, 403, 602, 611, IMP | |
| 35:9-21 | | 105, 401/402, 403, 602, 611, IMP | |
| 36:11-37:23 | | 105, 401/402, 403, 602, 611, IMP | |
| 37:24-39:23 | | 105, 401/402, 403, 602, 611, 701, IMP | |

[1] Philips objects to all designated deposition testimony of Mr. Jako Eleveld under Federal Rule of Evidence 804 because Mr. Eleveld will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 41:1-4 | 41:5; 41:7-13 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 41:14-43:21 | 41:5; 41:7-13 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 43:23-45:14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 45:15-46:11 | 46:13-14 | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 46:15-47:25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 48:25-49:11 | 48:21-24 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 49:15-17 | 49:18-50:5 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 50:6-19 | | 105, 401/402, 403, 602, 611, IMP | |
| 51:10-53:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 53:11-54:9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 54:19-22 | | 105, 401/402, 403, IMP | |
| 55:1-5 | 55:6-12 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 55:13-56:21 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 57:4-58:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 59:23-60:13 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 60:18-24 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 61:11-20 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 61:21-24 | | 105, 401/402, 403, IMP | |
| 62:11-63:8 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 65:18-66:13 | 66:14-25 | 104, 105, 401/402, 403, 602, 611, 701, IMP | 602; 403 |
| 67:1-15 | 66:14-25 | 105, 401/402, 403, 602, 611, 701, IMP | 602; 403 |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 67:16-19 | | 105, 401/402, 403, 602, 611, IMP | |
| 68:6-69:21 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 69:22-70:13 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 70:15-71:22 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 73:14-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 74:4-9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 74:12-13 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 75:19-76:13 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 76:22-77:8 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 77:15-25 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 78:9-79:13 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 80:7-20 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 80:23-81:1 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 81:4-12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 82:20-83:8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 83:11-20 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 85:8-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 85:14-86:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 86:4-19 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 86:23-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 87:2-10 | | 105, 401/402, 403, 602, 611, IMP | |
| 88:19-25 | | 105, 401/402, 403, 602, 611, IMP | |
| 89:18-90:3 | | 105, 401/402, 403, 602, 611, IMP | |
| 90:11-16 | | 104, 105, 401/402, 403, 602, 611, IMP | |
| 90:17-23 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 91:12-25 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 92:2-6 | 92:7-16 | 104, 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 92:17-20 | 92:7-16 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 92:23-93:12 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 93:15-21 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 99:17-100:16 | | 105, 401/402, 403, 602, 611, IMP | |
| 101:5-9 | | 105, 401/402, 403, 602, 611, IMP | |
| 101:14-102:10 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 103:5-17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 103:23-104:15 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 104:18-19 | | 105, 401/402, 403, IMP | |
| 104:23-105:2 | 105:3-5 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 105:14-17 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 105:25-106:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 107:1-7 | | 105, 401/402, 403, 602, 611, IMP | |
| 107:8-18 | | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 107:20-23 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 108:1-16 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 108:19-19 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 109:11-110:1 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 111:4-7 | 111:8-22 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 611; 401/402; 403 |
| 111:23-112:6 | 111:8-22 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 611; 401/402; 403 |
| 112:23-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 113:8-16 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 114:8-18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 116:8-13 | | 105, 401/402, 403, IMP | |
| 116:19-23 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 117:1-14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 117:17-118:1 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 118:3-3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 118:5-8 | 118:12-20 | 105, 106, 401/402, 403, 602, 611, 701, IMP | 106 |
| 119:21-120:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 120:19-23 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 120:25-121:9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 121:20-122:6 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 122:8-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 122:14-20 | | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 124:7-125:9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 125:15-126:5 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 126:6-9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 126:12-23 | 126:24-25 | 105, 401/402, 403, 602, 611, 701, IMP | 611; 403 |
| 127:1-9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 130:12-18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 131:1-14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 132:13-16 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 133:16-20 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 134:8-10 | 133:23-25 | 105, 401/402, 403, 602, 611, 701, IMP | 611; OS; 403 |
| 134:13-17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 135:10-13 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 136:6-13 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 138:5-6 | | 105, 401/402, 403, IMP | |
| 139:1-9 | | 105, 401/402, 403, 602, IMP | |
| 139:12-140:13 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 141:13-17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 141:24-143:13 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 143:14-145:8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 145:17-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 146:17-147:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 147:25-148:12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 148:13-22 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 149:14-20 | 149:21-23 | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 150:1-9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 151:15-18 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 152:12-19 | 152:20-25 | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 153:23-154:25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 155:6-19 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 155:22-156:13 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 157:3-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 157:22-24 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 160:4-14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 160:20-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 161:7-162:12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 163:5-18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 163:21-164:4 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 165:4-17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 167:5-6 | | 105, 401/402, 403, IMP | |
| 167:9-17 | | 105, 401/402, 403, IMP | |
| 167:22-168:12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 169:12-170:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 170:11-18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 171:5-8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 171:9-15 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 171:18-173:4 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 173:6-6 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 173:9-14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 174:10-175:14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 175:23-176:19 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 177:8-22 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 178:6-179:4 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 180:4-8 | | 105, 401/402, 403, 602, 611, IMP | |
| 180:9-10 | | 105, 401/402, 403, 602, 611, IMP | |
| 180:19-24 | | 105, 401/402, 403, 602, 611, IMP | |
| 181:7-14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 181:20-21 | | 105, 401/402, 403, IMP | |
| 182:4-183:1 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 183:12-15 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 185:10-186:17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 187:7-13 | | 105, 401/402, 403, 602, 611, IMP | |
| 187:23-188:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 190:11-191:7 | | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' OBJECTIONS TO COUNTER DESIGNATIONS |
|---|---|---|---|
| 191:10-10 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 191:20-192:17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 193:1-8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 193:9-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 193:20-194:14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 194:19-195:13 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 198:15-199:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 199:7-9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 201:7-10 | | 105, 401/402, 403, 602, 611, IMP | |
| 201:12-14 | | 105, 401/402, 403, 602, 611, IMP | |
| 202:18-203:19 | | 104, 105, 401/402, 403, 602, 611, IMP | |
| 204:5-8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 204:17-205:21 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 206:2-3 | | 105, 401/402, 403, IMP | |
| 206:9-207:15 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 207:19-208:8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 209:1-4 | 209:5-7 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 209:11-12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 209:14-23 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 210:1-8 | | 105, 401/402, 403, 602, 611, 701, IMP | |

**KONINKLIJKE PHILIPS N.V. V. QUECTEL WIRELESS SOLUTIONS CO. LTD. ET AL.
(NO. 1:20-CV-01710 D. DEL.)**

**DESIGNATIONS OF SOPHIE PASQUIER[1]
DATE: March 9, 2026**

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 11:2-5 | | 105, 401/402, 403, IMP | 30:11 - 30:12 |
| 11:8-9 | | 105, 401/402, 403, IMP | 183:15 - 183:25 |
| 11:19-24 | | 105, 401/402, 403, IMP | 196:1 - 196:7 |
| 12:6-15 | | 105, 401/402, 403, IMP | 228:23 - 229:5 |
| 13:15-22 | | 105, 401/402, 403, IMP | 263:9 - 263:12 |
| 15:21-23 | | 105, 401/402, 403, IMP | 265:14 - 265:15 |
| 17:11-25 | | 105, 401/402, 403, IMP | 266:3 - 266:8 |
| 20:11-15 | | 105, 401/402, 403, IMP | 266:15 - 266:17 |
| 20:20 | | 105, 401/402, 403, IMP | |
| 31:8-12 | 30:13-18 | 105, 106, 401/402, 403, IMP | |
| 37:21-25 | | 105, 401/402, 403, 602, 611, IMP | |
| 38:15-16 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 38:18-24 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 41:24-42:4 | 39:19-21 | 105, 401/402, 403, 602, 611, IMP | |
| 46:21-47:2 | | 105, 401/402, 403, 602, 611, IMP | |
| 48:2-16 | | 105, 401/402, 403, 602, 611, IMP | |
| 52:2-4 | | 105, 401/402, 403, IMP | |
| 52:17-19 | | 105, 401/402, 403, 602, 611, IMP | |
| 54:24-55:2 | | 105, 401/402, 403, IMP | |
| 56:7-22 | 56:4-6 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 62:2-8 | 62:9-21 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 62:22-63:4 | 62:9-21 | 105, 401/402, 403, 602, 611, 701, IMP | |

[1] Philips objects to all designated deposition testimony of Ms. Sophie Pasquier under Federal Rule of Evidence 804 because Ms. Pasquier will appear and testify live at trial.

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 65:10-13 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 65:24-66:5 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 68:12-69:8 | 69:9-20 | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 69:25-70:11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 70:13-16 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 70:19-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 71:15-23 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 75:19-76:8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 76:24-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 77:3-5 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 77:13-16 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 77:18-21 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 84:7-12 | 84:1-3; 84:5-6 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 87:19-24 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 88:9-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 88:18-24 | | 105, 401/402, 403, 602, 611, IMP | |
| 91:8-92:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 93:23-94:3 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 95:1-5 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 98:11-15 | | 104, 105, 401/402, 403, 602, 611, 701, IMP | |
| 101:16-20 | 100:10-101:15 | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 105:2-6 | | 105, 401/402, 403, IMP | |
| 105:12-22 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 106:9-15 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 108:14-21 | | 104, 105, 401/402, 403, 602, 611, IMP | |
| 112:23-113:1 | | 105, 401/402, 403, IMP | |
| 113:10-12 | | 105, 401/402, 403, IMP | |
| 114:20-115:3 | | 105, 401/402, 403, 602, 611, IMP | |
| 115:19-22 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 115:25-116:7 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 118:8-10 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 119:10-18 | 119:4-9 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 122:5-9 | | 105, 401/402, 403, 602, 611, IMP | |
| 122:16-18 | | 105, 401/402, 403, 602, 611, IMP | |
| 124:13-15 | 123:25-124:2; 124:5-11 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 125:5-14 | | 105, 401/402, 403, 602, 611, IMP | |
| 125:23-126:4 | | 105, 401/402, 403, 602, 611, IMP | |
| 127:5-12 | | 105, 401/402, 403, 602, 611, IMP | |
| 128:2-16 | 128:17-18; 128:20-23 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 128:24-129:11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 130:6-9 | | 105, 401/402, 403, 602, 611, IMP | |
| 131:19-20 | | 105, 401/402, 403, 602, 611, IMP | |
| 132:15-133:6 | 133:7-9 | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 133:16-24 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 137:8-12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 139:16-140:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 141:10-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 141:13-142:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 142:24-143:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 143:5-6 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 147:22-148:1 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 148:3-15 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 148:21-149:6 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 149:17-23 | 149:24-150:3 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 150:4-12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 151:15-20 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 153:6-11 | 153:13-14; 154:4-11 | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 154:12-17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 156:24-157:4 | 157:5-7 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 157:8-16 | 157:17-21 | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 158:4-12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 160:23-161:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 161:4-21 | 161:22-23; 161:25-162:7; 162:10-11 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 162:12-17 | 161:22-23; 161:25-162:7; 162:10-11 | 105, 401/402, 403, 602, 611, 701, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 168:7-12 | | 105, 401/402, 403, 602, 611, IMP | |
| 169:19-21 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 169:24-25 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 171:6-12 | 170:1-4; 170:7-19; 170:22-171:5; 171:16-23 | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 172:11-13 | | 105, 106, 401/402, 403, 602, 611, IMP | |
| 179:16-18 | 179:22-180:2 | 105, 401/402, 403, 602, 611, IMP | |
| 180:3-9 | | 105, 401/402, 403, 602, 611, IMP | |
| 182:11-15 | | 105, 401/402, 403, 602, 611, IMP | |
| 182:24-183:3 | 183:4-14 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 184:1-15 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 185:7-9 | | 105, 401/402, 403, 602, 611, IMP | |
| 185:17-186:13 | | 105, 401/402, 403, 602, 611, IMP | |
| 187:9-13 | | 105, 401/402, 403, 602, 611, IMP | |
| 189:9-21 | | 105, 401/402, 403, 602, 611, IMP | |
| 193:19-194:3 | 194:4-15 | 105, 401/402, 403, 602, 611, IMP | |
| 195:9-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 195:15-22 | | 105, 401/402, 403, IMP | |
| 196:8-24 | | 105, 401/402, 403, 602, 611, IMP | |
| 199:12-25 | | 105, 401/402, 403, 602, 611, IMP | |
| 203:6-9 | 20:10-16; 203:18-23 | 105, 401/402, 403, 602, 611, IMP | |
| 205:8-16 | | 105, 401/402, 403, 602, 611, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 211:15-22 | 211:23-212:19 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 212:20-213:5 | 211:23-212:19; 213:6-214:1 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 215:6-12 | 214:19-22; 214: 25-215:5 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 216:12-217:2 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 219:23-220:11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 220:25-221:7 | | 105, 401/402, 403, 602, 611, IMP | |
| 225:3-226:3 | 224:24-225:2 | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 226:9-10 | 226:4-8 | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 226:12-17 | 226:18-227:19 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 227:20-22 | 226:18-227:19 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 228:9-18 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 229:6-22 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 232:10-16 | 232:17-18 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 236:14-237:6 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 238:20-23 | | 105, 401/402, 403, 602, 611, IMP | |
| 239:3-5 | | 105, 401/402, 403, 602, 611, IMP | |
| 240:11-14 | 240:15-241:6 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 241:7-15 | 241:16-242:1 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 242:7-243:8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 244:18-22 | | 105, 401/402, 403, 602, 611, IMP | |
| 245:15-246:2 | | 105, 401/402, 403, 602, 611, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 247:6-10 | | 105, 401/402, 403, 602, 611, IMP | |
| 249:4-8 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 249:25-250:2 | | 105, 401/402, 403, IMP | |
| 250:4-17 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 250:22-251:12 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 256:2-4 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 256:21-257:3 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 257:14-16 | | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 257:15-258:11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 259:6-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 259:16-260:4 | 260:5-16 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 260:17-261:14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 261:19-22 | | 105, 401/402, 403, 602, 611, IMP | |
| 265:8-13 | | 105, 401/402, 403, 602, 611, IMP | |
| 271:18-272:20 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 275:1-9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 276:23-277:2 | 275:24-276:14 | 105, 401/402, 403, 602, 611, IMP | 276:16 - 276:22 |
| 278:23-279:3 | | 105, 401/402, 403, 602, 611, IMP | |
| 282:13-19 | 282:11-12; 282:20-23 | 105, 106, 401/402, 403, 602, 611, IMP | |
| 282:24-283:2 | | 105, 401/402, 403, 602, 611, IMP | |
| 283:13-15 | | 105, 401/402, 403, IMP | |
| 283:23-284:1 | | 105, 401/402, 403, IMP | |

| DEFENDANTS' DESIGNATIONS | PLAINTIFF'S COUNTER DESIGNATIONS | PLAINTIFF'S OBJECTIONS TO DESIGNATIONS | DEFENDANTS' COUNTER-COUNTER DESIGNATIONS |
|---|---|---|---|
| 284:11-17 | 284:18-20 | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 287:10-288:1 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 289:6-14 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 290:9-11 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 291:8-292:4 | 292:5-293:15 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 293:16-21 | 292:5-293:15 | 105, 401/402, 403, 602, 611, 701, IMP | |
| 293:24-294:1 | 294:2-8 | 105, 106, 401/402, 403, 602, 611, 701, IMP | |
| 294:9-16 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 299:14-300:6 | | 105, 401/402, 403, 602, 611, IMP | |
| 300:21-24 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 301:1-9 | | 105, 401/402, 403, 602, 611, 701, IMP | |
| 301:17-20 | | 105, 401/402, 403, 602, 611, IMP | |
| 302:6-15 | | 105, 401/402, 403, 602, 611, 701, IMP | |

**Objection Key**

| Abbreviation | Description | Underlying Rule |
|---|---|---|
| 103 | Mischaracterizes testimony or document | Fed. R. Evid. 103(c), 611(a) |
| 104 | Preliminary Issue | FRE 104 |
| 105 | Limited admissibility | FRE 105 |
| 106 | Exhibit/designation is incomplete. | Fed. R. Evid. 106 |
| 401/402 | Exhibit/designation is not relevant. | Fed. R. Evid. 402 |
| 403 | The probative value of the exhibit/designation is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or by considerations of delay, waste of time, or needless presentation of cumulative evidence. | Fed. R. Evid. 403 |
| 404 | Exhibit/designation is inappropriate character evidence. | Fed. R. Evid. 404-406 |
| 408 | Exhibit/designation relates to inadmissible settlement negotiations. | Fed. R. Evid. 408 |
| 602 | Exhibit/designation lacks foundation or is from someone lacking personal knowledge (i.e., speculative). | Fed. R. Evid. 602 and 901(a) |
| 611 | | Fed. R. Evid. 611 |
| 611(Arg) | Question in designation is argumentative. | Fed. R. Evid. 611(a) |
| 611(AF) | Question in designation assumes facts not in evidence. | Fed. R. Evid. 611(a) and 103(c) |
| 611(Comp) | Question in designation is compound. | Fed. R. Evid. 611(a) |
| 611(Counter) | Improper Counter-designation | Fed. R. Evid. 611(b); Fed. R. Civ. P. 26(a)(3)(A)(ii) |
| 611(Har) | Designation is harassing or embarrassing. | Fed. R. Evid. 611(a) |
| 611(Lead) | Question in designation is an improper leading question. | Fed. R. Evid. 611(c) |
| 611(NR) | Answer in designation is non-responsive. | Fed. R. Evid. 611(a) |
| 611(VA) | Question in designation is vague, ambiguous, indefinite, or calls for a narrative. | Fed. R. Evid. 611(a) |
| 701 | Exhibit/designation is improper opinion testimony from a lay witness. | Fed. R. Evid. 602 and 701 |
| 702 | Exhibit/designation is an improper expert opinion. | Fed. R. Evid. 602 and 702 |
| 703 | Probative value not substantially outweighed by prejudicial effect | Fed. R. Evid. 703 |
| 802 | Exhibit/designation is inadmissible hearsay. | Fed. R. Evid. 802 |
| 805 | Inadmissible hearsay within hearsay. | Fed. R. Evid. 805 |

| | | |
|---|---|---|
| 901 | Authentication | Fed. R. Evid. 901 |
| CO | Interpreter and/or attorney colloquy | |
| Daubert | Exhibit/designation is covered by a pending Daubert motion. | |
| Description | Insufficient description | |
| ERR | Answer has been corrected by a subsequent errata. | |
| ILC | Exhibit/designation is an improper legal conclusion. | Fed. R. Evid. 602, 701, and 704 |
| IMP | Improper use of depositions | Fed. R. Civ. P. 32 |
| MIL | Subject to MIL | |
| MSJ | Subject to motion for summary judgment | |
| MTS | Exhibit/designation is covered by a Motion to Strike. | |
| NE | Not evidence | |
| NP | Not Produced | |
| OS | Outside the scope of the witness' designation. | |

# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**KONINKLIJKE PHILIPS N.V.'S BRIEF STATEMENT OF INTENDED PROOFS**

Pursuant to Local Rule 16.3(c) and the parties' agreed-upon schedule, Koninklijke Philips N.V. ("Philips") submits the following statement of intended proofs based on Philips's claims at issue and its current understanding of the defenses and counterclaims of Defendant Quectel Wireless Solutions Co., Ltd ("Quectel"). Philips reserves the right to modify or amend this statement to the extent necessary to fairly respond to Quectel's statement of intended proofs or any new issues that Quectel may raise, if Quectel is permitted to so raise new issues. Philips further reserves the right to modify or amend this statement based upon the resolution of any outstanding motion or future ruling by the Court. The following statements are not exhaustive, and Philips reserves the right to prove any matters

identified in its pleadings, contentions, interrogatory responses, and/or expert reports. Philips also intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order.

## I. ISSUE OF INTENDED PROOF

1. Quectel directly infringed one or more of the Asserted Claims of the ’935 Patent by making, selling, offering for sale, and/or importing the Accused Products.

2. Quectel directly infringed one or more of the Asserted Claims of the ’271 Patent by making, selling, offering for sale, and/or importing the Accused Products.

3. Quectel has indirectly infringed by inducing infringement of one or more Asserted Claims of the Asserted Patents.

4. Quectel willfully infringes the Asserted Patents.

5. Damages for Quectel’s infringement in the amount of a reasonable royalty, including pre-suit damages, together with interest and costs as fixed by the Court.

6. This is an exceptional case, and Philips should obtain costs and reasonable attorneys’ fees under at least 35 U.S.C. § 285.

7. Although Quectel bears the burden of proving invalidity and cannot shift that burden, Philips intends to rebut Quectel’s invalidity contentions that one

or more of the Asserted Claims is anticipated under 35 U.S.C. § 102, obvious under 35 U.S.C. § 103, invalid for lack of written description or enablement under 35 U.S.C. § 112, or patent ineligible under 35 U.S.C. § 101.

8. Although Quectel bears the burden on its breach of FRAND Contract counterclaim, Philips intends to rebut Quectel's contention that Philips breached any FRAND or ETSI obligations.

9. Although Quectel bears the burden on its breach of obligation to negotiate in good faith counterclaim, Philips intends to rebut Quectel's contention that Philips breached any obligation to negotiate in good faith.

10. Although Quectel bears the burden on proving damages for its breach of FRAND Contract and breach of obligation to negotiate in good faith counterclaims, Philips intends to rebut Quectel's contention of any damages, including Quectel's failure to prove any such damages.

11. Although Quectel bears the burden on its affirmative defenses, including the equitable defenses implied waiver or estoppel,[1] Philips intends to rebut Quectel's contentions on the defenses.

[1] Quectel's equitable defenses will be tried to the Court, rather than a jury.

# EXHIBIT 14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC. and EAGLE ELECTRONICS, INC.<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**QUECTEL'S BRIEF STATEMENT OF INTENDED PROOFS**

# TABLE OF CONTENTS

I. Issue of Intended Proof....................2
A. Invalidity of U.S. Patent Nos. 7,944,935 ("the '935 Patent") and 7,831,271 ("the '271 Patent") (Collectively, the "Asserted Patents")....................2
B. Non-Infringement of the '935 Patent and the '271 Patent ....................3
C. Equitable Defenses ....................3
D. Damages....................3
E. Counterclaims ....................4
F. Other Defenses....................5

Pursuant to Local Rule 16.3(c) and the parties' agreed-upon schedule, Quectel submits the following Statement of Intended Proofs based on Quectel's defenses and counterclaims. Further details regarding these intended proofs have been explained in Quectel's pleadings and discovery responses, including in its contentions, interrogatory responses, expert reports, and by experts at depositions, all of which Quectel incorporates by reference. Quectel further intends to offer evidence to rebut arguments and evidence that Philips offers. Quectel reserves the right to modify or amend this statement to the extent necessary to fairly respond to Philips's statement of intended proofs or any new issues that may be raised before trial. The following statements are not exhaustive, and Quectel reserves the right to prove any matters identified in its pleadings, contentions, interrogatory responses, and/or expert reports. Quectel also intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order. By including an issue of fact herein, Quectel does not concede applicable burden of proof or assume the burden of proof or production with regard to that fact.

# I. ISSUE OF INTENDED PROOF

## A. Invalidity of U.S. Patent Nos. 7,944,935 ("the '935 Patent") and 7,831,271 ("the '271 Patent") (Collectively, the "Asserted Patents")

1. Quectel will prove by clear and convincing evidence that the Asserted Claims[1] of the Asserted Patents are not directed to an inventive concept and thus are patent ineligible under 35 U.S.C. § 101.

2. Quectel will prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. § 102 as being anticipated.

3. Quectel will prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. § 103 as being obvious.

4. Quectel will prove by clear and convincing evidence that claims 1-8 of U.S. Patent No. 7,831,271 ("the '271 Patent") are invalid under 35 U.S.C. § 112.

5. To the extent Philips attempts to rely upon any of the secondary considerations of non-obviousness, and to the extent Philips comes forward with evidence of any such secondary considerations and evidence purporting to show nexus, Quectel will introduce evidence to rebut Philips's assertions of both nexus and any secondary considerations.

[1] The asserted claims are claims 1-3, 9-11, and 17 of the '935 Patent and claims 1-8 of the '271 Patent (collectively, the "Asserted Claims").

**B. Non-Infringement of the '935 Patent and the '271 Patent**

6. Quectel will show that it does not directly infringe the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, or importing into the United States the accused Quectel Accused Products.

7. Quectel will show that it does not induce third parties to infringe the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, or importing into the United States the Quectel Accused Products.

8. Quectel will show that it does not willfully infringe any Asserted Claim of the Asserted Patents.

**C. Equitable Defenses**

9. Quectel will show that Philips's claims for infringement of the Asserted Patents are barred due to the doctrine of waiver.

10. Quectel will show that Philips's claims for infringement of the Asserted Patents are barred due to the doctrine of equitable estoppel.

**D. Damages**

11. Quectel intends to show that Philips is not entitled to damages because Quectel does not infringe any valid patent claim.

12. If any claim is found valid and infringed, Quectel intends to refute that Philips is entitled to the amount of damages it demands, and will propose an alternative royalty award to the extent any award of damages is appropriate.

13. Quectel intends to refute that Philips is entitled to any pre-suit damages.

14. Quectel intends to refute that this is an exceptional case, and refute that Philips should obtain costs and reasonable attorneys' fees under at least 35 U.S.C. § 285.

15. Quectel intends to refute that Philips is entitled to pre-judgment and post-judgment interest and costs.

16. Quectel intends to refute that Philips is entitled to enhanced damages if willful infringement is found.

17. Quectel will show that Philips's breaches have harmed Quectel, and that Quectel is entitled to damages for Philips's bad faith behavior.

18. Quectel will show it is entitled to costs, and the dollar amount of such costs.

**E. Counterclaims**

19. Related to the Asserted Patents, Quectel will show that Philips breached its admitted contractual obligations under French law.

20. Quectel will show that Philips failed to negotiate in good faith with Quectel a license for the Asserted Patents on fair, reasonable, and non-discriminatory terms.

**F. Other Defenses**

21. Quectel will rebut any assertions by Philips regarding the intended proofs that Philips has set forth in Exhibit 13.

22. Further details regarding Quectel's intended proofs are available in Quectel's Answer to Philips's Third Amended Complaint (D.I. 233); and Quectel's discovery responses, including its contentions, interrogatories (including any supplemental responses), and expert reports, as well as experts at depositions, which Quectel incorporates by reference, as well as the intended proofs set forth in the parties' Statement of Uncontested Facts, Quectel's Statement of Contested Facts (Ex. 3), and Quectel's Statement of Issues of Law to be Litigated at Trial (Ex. 5), submitted herewith.

# EXHIBIT 15

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION IN LIMINE #1 TO EXCLUDE CERTAIN FINDINGS FROM ITC INVESTIGATION NO. 337-TA-1240**

# TABLE OF CONTENTS

A. The Non-Infringement and Validity Findings of the ALJ Are of Minimal Relevance Because the ALJ Adopted Claim Constructions that Differ from those Adopted by this Court................1

B. Any Relevance of the ALJ's Findings Is Substantially Outweighed by the Danger of Unfair Prejudice and Risk of Juror Confusion ........................................................................2

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996) ....3

*Crocs, Inc. v. Effervescent, Inc.*,
No. 06-cv-00605-PAB-MEH, 2022 WL 968974 (D. Colo. Mar. 30, 2022) ....3

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. 18-425-WCB, 2022 WL 2800911 (D. Del. June 27, 2022) ....3

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006) ....1

*Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*,
No. 1:12-cv-654, 2016 WL 4238769 (W.D. Mich. Jan. 28, 2016) ....3

*Orexo AB v. Actavis Elizabeth LLC*,
424 F. Supp. 3d 371 (D. Del. 2019) ....3

*Personalized User Model, LLP v. Google Inc.*,
No. 09-525-LPS, 2014 WL 807736 (D. Del. Feb. 27, 2014) ....3

*Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*,
851 F.2d 342 (Fed. Cir. 1988) ....3

The findings from *Certain UMTS and LTE Cellular Communications Modules and Products Containing the Same*, 337-TA-1240 related to non-infringement and invalidity of the patents-in-suit should be excluded. Such findings are not binding on this Court, which is in part why the Court set the August trial as a first step towards the December FRAND trial. Any probative value of such findings is minimal, and it is substantially outweighed by the dangers of unfair prejudice to Philips and juror confusion.

### A. The Non-Infringement and Validity Findings of the ALJ Are of Minimal Relevance Because the ALJ Adopted Claim Constructions that Differ from those Adopted by this Court

In the ITC investigation, the ALJ did not accept claim construction briefing or hold a hearing, and he adopted erroneous claim constructions that this Court rejected as contrary to the intrinsic evidence. Just as expert testimony applying an incorrect claim construction is irrelevant and likely to cause prejudice and confuse the jury (*see Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006)), the ITC's non-infringement and invalidity findings should be excluded.

For example, in relation to the "specified power level" terms of the '271 patent, Quectel offered the same "specified by the base station" proposed constructions in the ITC that it offered in this case. Ex. 1, 206-08; D.I. 147, 13-22. The ALJ adopted Quectel's proposals, finding the power levels must equal those "assigned by the base station." Ex. 1, 207-208. Here, the Court rejected those same

arguments as contrary to the specification. Ex. 2, 50:2–53:7. For "transceiver means," the ALJ held that the term is subject to 35 U.S.C. § 112(6) and that the structure is not limited to a transceiver but also requires an antenna. Ex. 1, 206. Here, the Court rejected those same arguments and held that the term is not subject to § 112(6). D.I. 206, 3. The ALJ relied on these now rejected constructions in finding the '271 patent not infringed. Ex. 1, 214-16, 234-35.

The situation is similar for the '935 patent. For "means for transmitting" and "transmitting," the ALJ did not agree with Philips' proposal ("outputting the group of data packets") and held that each term requires sending out a signal from the device. Ex. 1, 56-57. Here, the Court agreed that Philips' "outputting" proposal was consistent with the intrinsic record. D.I. 206, 2. For "queue" and "queue store," the ALJ agreed with Quectel's "distinct memory" proposals and held that the terms mean the same thing. Ex. 1, 38-40, 43. This Court did not agree with Quectel's "distinct memory" proposals and held that the terms have different meanings. D.I. 206, 4. As with the '271 patent, the ALJ relied on these rejected constructions in finding the '935 patent not infringed. Ex. 1, 73-77, 78.

### B. Any Relevance of the ALJ's Findings Is Substantially Outweighed by the Danger of Unfair Prejudice and Risk of Juror Confusion

The outcome of an ITC proceeding "is largely not relevant" in the district courts, and "to the extent it is minimally relevant, "the introduction of additional

proceedings needlessly cause jury confusion and waste time."[1] *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-cv-654, 2016 WL 4238769, at *3 (W.D. Mich. Jan. 28, 2016); *see also Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-MEH, 2022 WL 968974, at *6 (D. Colo. Mar. 30, 2022) (excluding expert testimony that mentioned ITC validity finding under Fed. R. Evid. 403). This Court commonly excludes mention of prior proceedings for the same reasons. *Orexo AB v. Actavis Elizabeth LLC*, 424 F. Supp. 3d 371, 375 (D. Del. 2019) (excluding prior litigation that involved different invalidity theories); *Personalized User Model, LLP v. Google Inc.*, No. 09-525-LPS, 2014 WL 807736, at * 3 (D. Del. Feb. 27, 2014) (excluding reexamination proceedings as the probative value would be "substantially outweighed by the risk of unfair prejudice and [] confusing the jury."); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-425-WCB, 2022 WL 2800911, at *1 (D. Del. June 27, 2022) (excluding inter partes reviews as "likely to confuse the jury").

Quectel seeks to introduce the ITC findings to persuade the jury to reach the same conclusion as the ALJ. *See* D.I. 233, Counterclaims ¶¶39, 41, 52. The jury <u>must</u> reach its decisions on the evidence and claim constructions before it, not erroneous findings of a different adjudicator. *See IOENGINE*, 2022 WL 280911, at *1.

---

[1] ITC decisions are not binding on district courts. *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996) ("[W]e hold that the ITC's prior decision cannot have claim preclusive effect[.]"); *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 851 F.2d 342, 344 (Fed. Cir. 1988).

/s/ *Robert M. Vrana*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

*Of Counsel*:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Thomas M. Relyea (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Dated: July 2, 2026

# EXHIBIT 1

**PUBLIC VERSION**

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C. 20436**

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN UMTS AND LTE CELLULAR COMMUNICATION MODULES AND PRODUCTS CONTAINING THE SAME** | **Inv. No. 337-TA-1240** |

# FINAL INITIAL DETERMINATION

**Administrative Law Judge David P. Shaw**

Pursuant to the notice of investigation, 86 Fed. Reg. 7305 (Jan. 27, 2021), this is the Initial Determination in *Certain UMTS and LTE Cellular Communication Modules and Products Containing the Same*, United States International Trade Commission Investigation No. 337-TA-1240.

It is held that a violation of section 337 (19 U.S.C. § 1337) has not occurred with respect to U.S. Patent No. 7,944,935; U.S. Patent No. 7,554,943; U.S. Patent No. 8,199,711; and U.S. Patent No. 7,831,271.

# TABLE OF CONTENTS


| | | | |
|---|---|---|---|
| I. | Background | | 1 |
| | A. | Institution of the Investigation; Procedural History | 1 |
| | B. | The Parties | 3 |
| | C. | Asserted Patents and Technological Background | 6 |
| | D. | The Accused Products | 8 |
| | E. | The Domestic Industry Products | 13 |
| II. | Jurisdiction and Importation | | 15 |
| III. | General Principles of Applicable Law | | 17 |
| IV. | United States Patent No. 7,944,935 | | 31 |
| | A. | Claim Construction | 33 |
| | B. | Infringement and Technical Prong | 57 |
| | C. | Patentability | 89 |
| | D. | Validity | 94 |
| V. | United States Patent Nos. 7,554,943 and 8,199,711 | | 121 |
| | A. | Claim Construction | 124 |
| | B. | Infringement and Technical Prong | 143 |
| | C. | Patentability | 166 |
| | D. | Validity | 169 |
| VI. | United States Patent No. 7,831,271 | | 194 |
| | A. | Claim Construction | 198 |
| | B. | Infringement and Technical Prong | 214 |

| | | |
|---|---|---|
| | C. Patentability | 236 |
| | D. Validity | 240 |
| VII. | Other Defenses | 266 |
| VIII. | Domestic Industry (Economic Prong) | 287 |
| IX. | Conclusions of Law | 317 |
| X. | Initial Determination on Violation | 319 |
| XI. | Order | 320 |

The following abbreviations may be used in this Initial Determination:

| | | |
|---|---|---|
| ALJ | - | Administrative Law Judge |
| CDX | - | Complainants' Demonstrative Exhibit |
| CPX | - | Complainants' Physical Exhibit |
| CX | - | Complainants' Exhibit |
| Dep. | - | Deposition |
| EDIS | - | Electronic Document Imaging System |
| JPX | - | Joint Physical Exhibit |
| JX | - | Joint Exhibit |
| P.H. | - | Prehearing |
| RDX | - | Respondents' Demonstrative Exhibit |
| RPX | - | Respondents' Physical Exhibit |
| RWS | - | Rebuttal Witness Statement |
| RX | - | Respondents' Exhibit |
| Tr. | - | Transcript |
| WS | - | Witness Statement |

experienced by data in each queue relative to a delay criterion for the respective queue," and distinguished the Abel prior art reference on the basis that it disclosed a token bucket procedure that transmits data by consuming credits accumulated by a queue.[15] *See* RX-3341C (Min RWS) at Q/A 32-35, 155-56; JX-0005.102-103 ('935 Patent Prosecution History); JX-0005.115-121. By making this amendment and argument, the applicants rejected any scope for delay covering adjusting the amount of data selected based on available credits/tokens. Thus, a POSA at the time of the '935 patent would understand the term "delay criterion" to mean "a predetermined duration of time for waiting in the respective queue," not an amount of credits as described in Abel. The applicants also distinguished the Hosein prior art reference on the basis that it disclosed changing the data rate of the queue (*i.e.,* throughput) rather than adapting the size of the portions within a transmission. *See* JX-0005.160-161 ('935 Patent Prosecution History); RX-3212 (Bims WS) at Q/A 78; RX-3341C (Min RWS) at Q/A 156.

Accordingly, a POSA at the time of the '935 patent would understand that in the context of the claims, specification, and prosecution history "delay experienced" refers to "wait time encountered" and "delay criterion" refers to "a predetermined duration of time for waiting in the respective queue" as proposed by the Staff and respondents.

### 3. "queue" (claim 1) / "queue store" (claim 9)

Below is a chart showing the parties' proposed claim constructions.

---

[15] Complainants' expert offered no opinions concerning the prosecution history of the '935 patent. *See* Brogioli Tr. 403.

| "queue" | | |
|---|---|---|
| **Complainants' Construction** | **Respondents' Construction** | **Staff's Construction** |
| "a collection of data packets in sequence" | "distinct memory for storing data packets in sequence" | Same as Respondents |
| **"queue store"** | | |
| **Complainants' Construction** | **Respondents' Construction** | **Staff's Construction** |
| "memory for storing data packets in sequence" | "distinct memory for storing data packets in sequence" | Same as Respondents |

Compls. Br. at 47; Resps. Br. at 29; Staff Br. at 23.

For the reasons discussed below, the administrative law judge has determined that the claim terms "queue" and "queue store" should be construed to mean "distinct memory for storing data packets in sequence."

Method claim 1 recites "operating a queue for each different priority of data packet," and apparatus claim 9 recites a means for "operating a queue store for each different priority of data packet." JX-0001 ('935 Patent) at claim 1, 9. The claims and specification use the terms "queue" and "queue store" interchangeably. *See* Brogioli Tr. 773-774; JX-0001 ('935 Patent) at claims 1, 9, Fig. 3 (step 210), 3:60-64.

Inasmuch as the claim language specifies a queue (or queue store) for storing data packets "for each different priority of data packet," it follows that distinct locations must exist for storing data packets having different priorities. *See* RX-3341C (Min RWS) at Q/A 84; RX-3212 (Bims WS) at Q/A 53. Figure 3, which illustrates the method of multiplexing, indicates "stor[ing] data packets in queues according to priority" at step

210. *See* JX-0001 ('935 Patent) at Fig. 3, 3:56-64. Thus, a POSA would interpret "queue" / "queue store" to mean a distinct memory for storing data packets in sequence. *See* JX-0001 ('935 Patent) at 3:60-61 ("one queue store for each priority level"); RX-3212 (Bims WS) at Q/A 53; RX-3341C (Min RWS) at Q/A 84.

The specification also confirms distinct queues/queue stores for data packets having different priorities. *See* RX-3212 (Bims WS) at Q/A 53; RX-3341C (Min RWS) at Q/A 84. For example, Figure 1 of the '935 patent, as described at 1:31-34, "shows queues 5 of MAC-d PDUs having different priorities"). *See* JX-0001 ('935 Patent) at Fig. 1. In addition, Figure 2, *id.* at 2:65-3:1, depicts the queue stores as separate memory locations, namely, "a plurality of queue stores 50 for containing queues and which may comprise a storage medium such as random access memory." *See* JX-0001 ('935 Patent), Fig.2, 2:65-3:1; RX-3212 (Bims WS) at Q/A 53; RX-3341C (Min RWS) at Q/A 15-19, 84.

The '935 patent does not disclose a single memory that houses all data packets, including those having different priority. Therefore, in the context of the '935 patent, a POSA would understand that the term "a queue" and "a queue store" as used in the asserted claims to mean "distinct memory for storing data packets in sequence." *See* RX-3212 (Bims WS) at Q/A 52-53; RX3341C (Min RWS) at Q/A 83-84.

During prosecution, the applicants argued that the asserted prior art did "not operate a queue for each different priority of data packets as required by claim 1."[16] *See* JX-0005. 71 ('935 Patent Prosecution History); JX-0005.90; RX-3212 (Bims WS) at Q/A 54; RX-3341C (Min RWS) at Q/A 24-25, 28-30, 85; *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

FIG. 9 PRIOR ART




Specifically, the examiner cited to Figure 9 of the Yamamoto reference (RX-0181), reproduced below. The examiner observed that Yamamoto taught "queuing, via FIFOs [first in/first out buffers] between the clients $1_{1\text{-}4}$ operating as a sender and "a router 2, for each different priority 1, 3, and 7 of data packet 1-7. JX-0005. 71 ('935 Patent Prosecution History); RX-3341C (Min RWS) at Q/A 29, 85; RX-3212 (Bims WS) at Q/A 54. In response, the applicants argued that the prior art did not show queues for each different priority but a single queue for all data packets regardless of the priority of the data packet:

> Yamamoto at Fig. 9 seems to illustrate three different priority levels for packets, e.g. priority level 7, priority level 3, and priority level 1.

[16] As noted, Philips's expert offered no opinions concerning the prosecution history of the '935 patent. Brogioli Tr. 403.

> However, **Yamamoto does not disclose operating a queue for each different priority level of data packets**. For example, Yamamoto does not operate **a queue** for priority level 7 data packets, **another queue** for priority level 3 packets, and **another queue** for priority 1 packets. Therefore, Yamamoto does not disclose operating a queue for each different priority of data packet as set forth in claim 1. Thus, claim 1 is not anticipated by Yamamoto.

JX-0005.90-91 ('935 Patent Prosecution History) (emphasis added); RX-3212 (Bims WS) at Q/A 54; RX-3341C (Min RWS) at Q/A 30, 85. The applicants expressly argued that a single memory including multiple priorities was not covered by the claims, whereas the claims required a distinct queue for each data packet priority. *See* RX-3341C (Min RWS) at Q/A 30, 85; JX-0005.90. Thus, based on the prosecution history, a POSA would understand the term "a queue" and "a queue store," as used in the asserted claims, to mean "distinct memory for storing data packets in sequence." *See* RX-3212 (Bims WS) at Q/A 54; RX-3341C (Min) at Q/A 30, 85.

Although the applicants' arguments resulting in disclaimer did not directly result in an allowance or fully persuade the examiner, disclaimer still applies as a matter of law. *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("a patentee's statements during prosecution, whether relied on by the Examiner or not, are relevant to claim interpretation"); *Seachange Intern., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1374 (Fed. Cir. 2005) (rejecting patentee's argument that since examiner did not rely on argument for patentability, argument should not serve to limit claim). Thus, the construction of this term must be consistent with the applicants' disclaimer of scope during prosecution. *Bell Atlantic Network Serv. v. Covad Comm'cns*, 262 F.3d 1258, 1269 (Fed. Cir. 2001) ("The prosecution history is considered to determine whether or

not there were any express representations made in obtaining the patent regarding the scope and meaning of the claims.").

Accordingly, the specification and prosecution history support the meaning of "queue" and "queue store" as meaning "distinct memory for storing data packets in sequence." Complainants' proposed constructions of "a queue store" as "memory for storing data packets in sequence" and "a queue" as "[a] collection of data packets in sequence" would permit a single queue to store all data packets regardless of different priorities, which is inconsistent with the intrinsic record. *See* RX-3212 (Bims WS) at Q/A 55; RX-3341C (Min RWS) at Q/A 86; Brogioli Tr. 731-732.

### 4. "means for operating a queue store for each different priority of data packet" (claim 9)

Below is a chart showing the parties' proposed claim constructions.

| Complainants' Construction | Respondents' Construction | Staff's Construction |
|---|---|---|
| Subject to 35 U.S.C. § 112, ¶ 6<br><br><u>Function</u>: operating a queue store<br><br><u>Structure</u>: one or more routing switches and memory and equivalents thereof (e.g., Figure 2 (items 30, 50)) | means plus function term under Section 112 ¶ 6<br><br><u>Function</u>: operating a queue store for each different priority of data packet<br><br><u>Structure</u>: microprocessor (110), input buffer (20), first routing switch (30), and bank 40 (memory), and equivalents thereof | Subject to 35 U.S.C. § 112, ¶ 6<br><br><u>Function</u>: same as Respondents<br><br><u>Structure</u>: same as Respondents |

Compls. Br. at 49; Resps. Br. at 33; Staff Br. at 28.

For the reasons discussed below, the administrative law judge has determined that the claim term "means for operating a queue store for each different priority of data

> 13) ***The size of the resource for each portion 90, 95 can be adapted to take into account the QoS currently being achieved for the data in each queue, for example dividing the resource in a way which gives more resource to the portion 90, 95 which is not meeting, or is furthest from meeting, any delay requirements***.

JX-0001 ('935 Patent), 4:5-5:15 (emphasis added); *see also id.*, Figure 3.

These are disclosures of assembling groups of data packets by populating first and second portions according to a first rule and second rule, respectively, and size of the memory (*i.e.*, resource) for each portion 90, 95 according to the delay experienced by data in each queue relative to a delay criterion for the respective queue (*i.e.*, more resource to the portion 90, 95 which is not meeting, or is furthest from meeting, any delay requirements.). This means-plus-function element is limited to these disclosed algorithms.[20]

### 8. "transmitting the group" (claim 1) / "means for transmitting the group" (claim 9)

Below is a chart showing the parties' proposed claim constructions.

[20] The specification also discloses an alternative method using a multiplexing apparatus 300 adapted to receive a signal indicative of a mix of first and second portions 90, 95, which may be adapted to set the size of the first and second portions 90, 95 in response to the signal. *See* JX-0001 ('935 Patent) at 5:25-46. However, this description is insufficient to find disclosure of an algorithm for performing the claimed function.

| **"transmitting the group" (claim 1)** | | |
|---|---|---|
| **Complainants' Construction** | **Respondents' Construction** | **Staff's Construction** |
| "outputting the group of data packets" | "sending the group of data packets over a network via an antenna" | "sending out the group of data packets" |
| **"means for transmitting the group" (claim 9)** | | |
| **Complainants' Construction** | **Respondents' Construction** | **Staff's Construction** |
| Subject to 35 U.S.C. § 112, ¶ 6<br><br><u>Function</u>: transmitting the group of data packets<br><br><u>Structure</u>: an output, and equivalents thereof (can be performed by a general purpose computer) | means plus function term under Section 112 ¶ 6<br><br><u>Function</u>: transmitting the group<br><br><u>Structure</u>: transceiver (310) having an antenna | Subject to 35 U.S.C. § 112, ¶ 6<br><br><u>Function</u>: transmitting the group<br><br><u>Structure</u>: transceiver (310) having an antenna, and equivalents thereof. |

Compls. Br. at 51; Resps. Br. at 42; Staff Br. at 35.

Complainants did not argue or submit an analysis of its proposed construction for these terms in their prehearing brief, and thus any such arguments are abandoned. *See* Ground Rule 7.c;[21] Compls. P.H. Br. at 130-203.

For the "means for transmitting …." element, the parties agree this is a means-plus-function term subject to 35 U.S.C. § 112, ¶ 6. The claim language recites that the function is "transmitting the group." JX-0001 ('935 Patent), claim 9. The claim recites, and the parties agree, that the group includes data packets (from the first portion and

[21] Complainants argued that the accused products satisfy this limitation, but they did not present an argument to support their proposed constructions for these terms. *See* Compls. P.H. Br. at 150, 157.

second portion). *Id.* The specification discloses that the structure for performing the function of transmitting data packets is transceiver 310, which transmits and receives data (*i.e.*, data packets) and acknowledgment signals:

> Referring to FIG. 4, there is illustrated a communication system comprising a communication terminal 410 for transmitting data and a communication terminal 400 for receiving the transmitted data. The communication terminal 410 for transmitting data comprises the apparatus for multiplexing 300 as described above with reference to FIG. 2 ***coupled to a transceiver 310 for transmitting data and receiving acknowledgements***, and a processor 320 for processing the received acknowledgements and delivering a signal on an output 330.
>
> The multiplexing apparatus 300 may be adapted to receive on an input 100, ***for example via the transceiver 310***, a ***signal*** indicative of a mix of first and second portions 90, 95, and may be adapted to set the size of the first and second portions 90, 95 in response to the signal. The multiplexing apparatus 300 may be adapted to receive on an input 100, for example via the transceiver 310, ***a signal*** indicative of how the data packets may be selected from the queue stores 50 to populate the group of data packets assembled in the first portion 90 and second portion 95 of the output buffer 80, and to adapt its operation in accordance with the signal. Such signals may be transmitted by the communication terminal 400 or another source.

JX-0001 ('935 Patent) at 5:24-46 (emphasis added).

In addition, Figure 4 of the '935 patent illustrates that the transceiver 310 includes an antenna. JX-0001 ('935 Patent), Figure 4. In the context of the '935 patent and this means-plus-function term, "transmit" refers to wireless transmission, which requires an antenna. A POSA would have also considered the antenna to be part of the structure for "means for transmitting." *Id.* Without the antenna shown in Figure 4, the transceiver would not be capable of transmitting data wirelessly. *Id.* While the '935 patent discloses an output 100 (JX-0001 ('935 patent) at 3:11-14), Figure 4 shows output 100 is what connects the multiplexing apparatus 300 of the terminal 410 to the transceiver 310 and

antenna. Merely sending data from a processor to a transceiver would not be considered "transmitting the data." A POSA would have understood that it is the transceiver 310 and specifically its antenna that transmits the group of data packets from the first communication terminal 410 to the second communication terminal 400 because data on line 100 has not yet been outputted from the communication terminal 410. *See* RX-3341C (Min RWS) at Q/A 207.

Accordingly, the administrative law judge has determined that the claim term "means for transmitting the group" should be construed as a means-plus-function limitation as proposed by respondents and the Staff.

With respect to the "transmitting the group" term in method claim 1 (not a means-plus-function term), there is no reason to limit the term to the disclosed structure. The parties agree that data packets are transmitted, but respondents' proposed construction requires that the data packets be sent "over a network via an antenna." Although the context of the '935 patent is wireless communication (UMTS), there is nothing in the claims or specification that expressly limits this term to wireless communications or "over a network."

Accordingly, the administrative law judge has determined that the claim term "transmitting the group" should be construed to mean "sending out the group of data packets."

### B. Infringement and Domestic Industry (Technical Prong) of the '935 Patent

As noted above, complainants assert independent method claim 1, and dependent method claims 2 and 3, and independent apparatus claim 9, and dependent apparatus

**iv. "queue" / "queue store" (Claim Limitations [1.2] / [9.2])**

As discussed above, a "queue" / "queue store" means a "distinct memory for storing data packets in sequence." However, Philips did not show that any of the accused products (or Philips's domestic industry products) meets the limitation of requiring "operating a queue for each different priority of data packet," *i.e.*, operating a distinct memory for each different priority level. *See* RX-3341C (Min RWS) at Q/A 83-90.

The 3GPP Specification at issue refers only to logical channels; however, these do not require specific hardware, but are a logical construct that transmits data between different protocols. *Id.* at Q/A 88. A logical channel, as the name suggests, is a channel, *i.e.*, a communication medium. *See* RX-3341C (Min RWS) at Q/A 88; Brogioli Tr. 401-402. This means a logical channel is used to transmit/receive data between the two end points of this medium. *See* CX-0131. 11 (3GPP TS 36.321 § 4.5.2); RX-3341C (Min RWS) at Q/A 88. A logical channel is not a distinct memory for storing data packets in sequence. *See* RX-3341C (Min RWS) at Q/A 88.

Similarly, when reporting the testing results, Dr. Brogioli considers a data radio bearer (DRB) to be a queue. However, these are channels that transfer (and do not necessarily store) data in a distinct memory, as required by the claim. *See* RX-3341C (Min RWS) at Q/A 91. Dr. Brogioli's testing does not show that limitations [1.2] / [9.2] are satisfied under any party's proposed construction. Dr. Brogioli's testing also does not show any data packet priority for data packets stored in the alleged queue or any claimed queues that serves data packets for each priority of received data packet as required by the claims. *See* RX-3341C (Min RWS) at Q/A 94-95 (discussing RDX-5023).

Nor has Philips shown that the modules have a distinct memory for storing data packets in sequence "for each different priority of data packet" as required. In fact, Step 3 of the logical channel prioritization procedure provides for multiple logical channels having the same priority, so there is not necessarily one queue for each priority level. *See* CX-0131.26 (3GPP TS 36.321 § 5.4.3.1) ("Logical channels configured with equal priority should be served equally."). *See also* RX-3341C (Min RWS) at Q/A 89; Brogioli Tr. 402. Dr. Min has testified that a more common and efficient way of organizing packets of differing priorities is in a linked list, where a single memory is used to store all received data packets regardless of their priorities. *See* RX-3341C (Min RWS) at Q/A 93-99. Dr. Brogioli did not present any evidence to demonstrate that distinct memories are necessarily used by the products at issue. *See* Brogioli Tr. 401.

Dr. Brogioli points to the optional buffer status reporting procedure described in CX-0131.27 (3GPP TS 36.321 § 5.4.5) to show that 3GPP specification compliance requires a collection of data packets in sequence. *See* CX-0011C (Brogioli WS) at Q/A 64, 100. The portion of the 3GPP specification at issue refers to a "buffer" (Brogioli Tr. 34), but a logical channel is not a buffer. A buffer is a memory or a region of memory for temporarily storing data. While a certain type of buffers (*i.e.*, FIFO buffer) may operate as a queue (Brogioli Tr. 394-395), not all buffers operate like a queue and store data in sequence. *See* Brogioli Tr. 395-396. A logical channel, in contrast, does not store data and, therefore, is not a buffer. *See* RX-3341C (Min RWS) at Q/A 88. Nor does the 3GPP Specification require a distinct buffer for each different priority of data packet, (RX-3341C (Min RWS) at Q/A 100-04), nor require that the buffer be a FIFO buffer and store data in sequence. *See* Brogioli Tr. 396-399. Further, Dr. Brogioli admitted that he

does not know how logical channels are implemented (*e.g.*, whether a FIFO buffer is used) and acknowledged that other buffers types could be used. *See* Brogioli Tr. 383-394, 395, 396-399.

Also, 3GPP TS 36.321 § 5.4.5 does not require a distinct buffer for each different priority of data packet nor does it require storing a collection of data packets in sequence. *See* RX-3341C (Min RWS) at Q/A 100. 3GPP TS 36.321 § 6.1.3.1 allows for data of different priority levels to be mixed together and stored in the same buffer, as part of a logical channel group. *See* RX-3341C (Min RWS) at Q/A 100-101; RDX-5024 (CX-0131.36 (3GPP TS 36.321 § 6.1.3.1)). Thus, there is not a one-to-one correlation between the buffer status reports and the different priorities for data in the logical channels. *See* RX-3341C (Min RWS) at Q/A 101; *see also* CX-0131.36 (3GPP TS 36.321 § 6.1.3.1); RX-2699.171 (3GPP TS 36.331 § 6.3.2).

In addition, the buffer status report procedure of the 36.321 standard does not prohibit storing data of different priority in the same memory, or in that manner, in the same buffer. This is because when the optional logical channel groups are not assigned, then the buffer status report would report a single value in "bytes" which represents the total amount of data that is buffered. *See* RX-3341C (Min RWS) at Q/A 103-04; RX-2699.171 (3GPP TS 36.331 § 6.3.2). Therefore, the 36.321 standard does not require a distinct buffer for each different priority of data packet.

The test results also do not indicate anything about whether the particular baseband processor implementation uses a distinct memory or another memory structure. *See* RX-3341C (Min RWS) at Q/A 91-92. Additionally, Dr. Brogioli provides no analysis or identification of any design specifications, source code, testimony, or other

information regarding the accused products that would enable him to reliably conclude that they contain "a queue for each different priority of data packet." *Id.* at Q/A 90. Specifically regarding claim element [9.2], Dr. Brogioli has not identified any of the hardware required by the "means for operating a queue store…." *See* RX-3341C (Min RWS) Q/A 191-98; *see also* Brogioli Tr. 388-389.

Dr. Brogioli has not reviewed any third party materials, such as source code or design specs, to determine how any third party hardware component functions. *See* RX-3341C (Min RWS) Q/A 63, 70, 74-75; *see also* Brogioli Tr. 388-389. Dr. Brogioli opines, "[c]ertainly, [the accused products and domestic industry products] include at least the equivalent of [the] routing switches [in the '935 patent] because the data packets must be routed into queues based on their priority so that they may be transmitted based on the Bj value of a particular queue," "[o]therwise, the [accused products and domestic industry products] would not be able to operate as provided by the standards." *See* CX-0011C (Brogioli WS) at Q/A 116. However, Dr. Brogioli has not shown that the standard requires operating different queue stores, under any party's construction, for different priority data or that the accused products or domestic industry products operate different queue stores for each different priority of data. *See* RX-3341C (Min RWS) at Q/A 195-96. As Dr. Min explained, a linked list would not satisfy this claim element. *See* RX-3341C (Min RWS) at Q/A 98, 197-98.

Finally, Philips has not shown infringement under the doctrine of equivalents. As explained by Dr. Min, if a linked list were used, all arriving data packets, regardless of their logical channel identities and priority levels are put into the same memory. The arriving data of different priorities would be stored in the memory one after another

without sorting or routing. All that is needed is to maintain the linked list of the data packets according to their logical channel identities and priority levels. *See* RX-3341C (Min RWS) at Q/A 98, 197-98.

**v. "receiving data packets" / "means for receiving data packets" (Claim Limitations [1.1] / [9.1])**

Philips has not established that either element [1.1] or [9.1] is met. Dr. Brogioli states that "[t]he baseband processor for each of the [Quectel/Thales/Telit/Philips] Modules receives these data packets through an input," but he has not identified information regarding any of the baseband processors. *See* CX-0011C (Brogioli WS) at Q/A 52; RX-3341C (Min RWS) at Q/A 82. Therefore, there is no basis to assume that the "input" is "where the data enters the module and goes to the baseband processor where it is processed in accordance with the standards before being output to a transceiver." *See* CX-0011C (Brogioli WS) Q/A 52; RX-3341C (Min RWS) at Q/A 82; *see also* Brogioli Tr. 403-405.

Dr. Brogioli's simulation testing is similarly insufficient as it just shows data packets allegedly being received from a base station emulator. *See* CX-0011C (Brogioli WS) at Q/A 54-55; RX-3341C (Min RWS) at Q/A 80-82. Dr. Brogioli further opines that the baseband processor processes data in accordance with a standard in the manner required by the claims. However, since there is no evidence that the baseband processors in the accused products or domestic industry products comply with any standard or satisfy this claim, there is a failure of proof. *See* RX-3341C (Min RWS) at Q/A 82. Specifically, there is no evidence that the baseband processor performs recited function as Dr. Brogioli alleges given the fact that he did not analyze any baseband processors to

reliably reach any conclusion about their operation. *See* RX-3341C (Min RWS) at Q/A 42, 46, 67; Brogioli Tr. 388-89.

Regarding claim element 9[a], at least input 10 of Figure 2 is part of the corresponding structure for the means for receiving data packets. *See* RX-3341C (Min RWS) at Q/A 189. However, as Dr. Brogioli has not reviewed any schematics of the baseband processors, he has not shown the products to include this element. *Id.* at Q/A 189-90.

**vi. "transmitting the group" / "means for transmitting." (Claim Limitations [1.4] and [9.4])**

Philips has not shown the step of "transmitting the group" or "means for transmitting."[25] *See* RX-3341C (Min RWS) at Q/A 180-86, 206-09. As explained by Dr. Min, the testing performed by Dr. Brogioli involved data packets that have not left the product at issue, for example, by an antenna. *Id.* at Q/A 183. Dr. Brogioli has not shown that, during testing, any data was output or sent out from any of the accused products or domestic industry products, or that any data was transmitted over a network. *Id.* Dr. Brogioli also admits that the accused modules do not include an "antenna" at the time of manufacture or sale. *See* CX-0011C (Brogioli WS) at Q/A 35.

**b. Dependent Claims 2-3, 10-11, and 17 of the '935 Patent**

As discussed above, Philips has not shown that the accused products practice independent claims 1 and 9. Thus, Philips cannot demonstrate that the accused products practice claims 2-3, which depend from claim 1 of the '935 patent, or claims 10-11 and

[25] Philips did not argue or submit an analysis of its proposed construction for "transmitting" in its prehearing brief, and thus, any such arguments are waived pursuant to Ground Rule 7.c. *See* Compls. P.H. Br. at 130-203.

### 3. **"transceiver means (38) for transmitting one or more first signals…" ('271 patent, claim 5)**

Below is a chart showing the parties' proposed claim constructions.

| Complainants' Construction | Respondents' Construction | Staff's Construction |
|---|---|---|
| Subject to 35 U.S.C. § 112, ¶ 6<br><br>Function: "transmission and reception of signals"<br><br>Structure: "a transceiver (38) and equivalents thereof"<br><br>(Can be performed by a general purpose computer) | means plus function term under Section 112 ¶ 6<br><br>Function: (1) transmitting one or more first signals (DPCCH, DPDCH) simultaneously at a specified maximum combined transmit power level (Pmax), (2) receiving signals, and (3) in response to a received signal, transmitting simultaneously with the one or more first signals (DPCCH, DPDCH) an additional one of a second signal (ACK or NACK) and a third signal (NACK or ACK)<br><br>Structure: a transceiver (38) and antenna (40), and equivalents thereof. | Subject to 35 U.S.C. § 112, ¶ 6<br><br>Function:<br><br>Same as Respondents<br><br>Structure:<br><br>Same as Respondents |

Compls. Br. at 186; Resps. Br. at 180; Staff Br. at 56-57.

For the reasons discussed below, the administrative law judge has determined that the claim term "transceiver means (38) for transmitting one or more first signals…" should be construed as a means-plus-function limitation as proposed by respondents and the Staff.

The parties agree this term is a means-plus-function term under § 112, ¶ 6. Respondents' and the Staff's proposed construction includes the full function recited by the claim and corresponding structure. Philips did not include any argument or analysis in support of its proposed construction for this term in its prehearing brief and therefore

waived its proposed construction under Ground Rule 7.c. *See* Compls. P.H. Br. at 76-130.

Inasmuch as "transceiver means" is only a portion of the claim term, a POSA would have understood that the complete claim element, "transceiver means (38) for transmitting one or more first signals (DPCCH, DPDCH) simultaneously at a specified maximum combined transmit power level ($P_{max}$), for receiving signals, and for, in response to a received signal, transmitting simultaneously with the one or more first signals (DPCCH, DPDCH) an additional one of a second signal (ACK or NACK) and a third signal (NACK or ACK)," describes the function performed by the "transceiver means." *See* RX-3212 (Bims WS) at Q/A 449; JX-0004 ('271 Patent) at 6:15-22. The claim language indicates that the transceiver means is for transmitting one or more first signals, then transmitting a second signal in response to a received signal. Thus, the function must encompass all of the limitations listed in the clause. *Aoyama*, 656 F.3d at 1296-97 ("The court must construe the function of a means-plus-function limitation to include the limitations contained in the claim language, and only those limitations."). A POSA would have recognized that the function stated in claim 5 for the transceiver means describes specific functionalities that are not found in a generic transceiver, and would thus have understood that "transmission and reception of signals," as proposed by Complaints' construction, would be inadequate to describe the complete function of the "transceiver means" stated in the claim. *See* RX-3212 (Bims WS) at Q/A 449-50.

There is no dispute that transceiver 38, depicted in Figure 1 of the '271 patent, is part of the structure for the transceiver means, which is consistent with the identification of "transceiver means (38)" in the claim. Given that the technology background of the

'271 patent is in mobile communications, and more specifically UMTS, a POSA would have also considered antenna 40, shown in Figure 1 as connected to transceiver 38, to be part of the structure for the transceiver means. *See* RX-3212 (Bims WS) at Q/A 451; JX-0004 ('271 Patent) at 1:5-10; Figure 1. Figure 1 also depicts wireless communication between the mobile station (MS) and base station (BS). Inasmuch as a transceiver not connected to an antenna would not be capable of transmitting or receiving wireless signals, a POSA would have understood that both the transceiver (38) and the antenna (40) must be part of the structure for performing the function of the claimed "transceiver means." *See* RX-3212 (Bims WS) at Q/A 451.

### 4. "second specified power level ($P_A$ or $P_N$)" / "third specified power level ($P_N$ or $P_A$)" / "specified maximum combined transmit power level ($P_{max}$)" ('271 Patent, claims 1, 5)

Below is a chart showing the parties' proposed claim constructions.

| "second specified power level ($P_A$ or $P_N$)" | | |
|---|---|---|
| **Complainants' Construction** | **Respondents' Construction** | **Staff's Construction** |
| Plain and ordinary meaning.<br><br>"The power level of ACK (PA) or NACK (PN)"[47] | "the power level of ACK (PA) or NACK (PN) assigned by the base station" | Same as Respondents |

[47] The parties agree that "ACK" means "a positive acknowledgment," and "NACK" means "a negative acknowledgment." *See* Joint Proposed Claim Construction Chart (EDIS Doc. ID No. 740301).

| **"third specified power level ($P_N$ or $P_A$)"** | | |
|---|---|---|
| **Complainants' Construction** | **Respondents' Construction** | **Staff's Construction** |
| Plain and ordinary meaning.<br><br>"The power level of the other of ACK (PA) or NACK (PN)" | "the power level of NACK (PN) or ACK (PA) assigned by the base station" | Same as Respondents |
| **"specified maximum combined transmit power level ($P_{max}$)"** | | |
| **Complainants' Construction** | **Respondents' Construction** | **Staff's Construction** |
| Plain and ordinary meaning.<br><br>("an allowable maximum power level") | "upper limit of the allowed communication station (MS) transmission power assigned by the base station" | Same as Respondents |

Compls. Br. at 186; Resps. Br. at 181; Staff Br. at 58.

For the reasons discussed below, the administrative law judge has determined that (1) the claim term "second specified power level ($P_A$ or $P_N$)" should be construed to mean "the power level of ACK (PA) or NACK (PN) assigned by the base station," (2) the claim term "third specified power level ($P_N$ or $P_A$)" should be construed to mean "the power level of NACK (PN) or ACK (PA) assigned by the base station," and (3) the claim term "specified maximum combined transmit power level ($P_{max}$)" should be construed to mean "upper limit of the allowed communication station (MS) transmission power assigned by the base station."

Based on the claim language, specification, and testimony from the named inventors of the '271 patent, these terms should be construed to mean that the base station

specifies the second and third specified power levels and the maximum combined power level. *See* RX-3212 (Bims WS) at Q/A 346-48, 374-78; RX-3214C (Akl RWS) at Q/A 63, 64. Each of the claims recite the modifier "specified" for power levels, the specification expressly states that the power levels for the ACK and NACK are "specified by the base station," which also "can specify the maximum power at which a mobile station can transmit," and Dr. Moulsley confirmed that these power levels are set by the network.[48] *See* JX-0004 ('271 Patent) at Abstract, 3:46-49, 2:45-47; JX-0024C (Moulsley Dep. Tr.) at 122, 123, 131-132; CX-2399 (Moulsley WS) at Q/A 12; RX-0056 (Moulsley Decl.) ¶ 5.

Claims 1 and 5 each recite the limitation "second specified power level" twice: (1) transmitting a second signal at a "second specified power level ($P_A$ or $P_N$)," (2) reducing the transmit power of one or more first signals by an amount correspond to the "second specified power level ($P_A$ or $P_N$)." *See* JX-0004 ('271 Patent) at 5:44-53, 6:29-38. Mr. Lanning's interpretation that the two recitations of the "second specified power level" within the same claim should be construed differently (Lanning Tr. 951-952),

[48] Complainants' expert, Mr. Lanning, also agreed that the second specified power level, third specified power level, and the maximum combined transmission power level are assigned by the base station. *See* CX-0012C (Lanning WS) at Q/A 31, 136, 142, 193; Lanning Tr. 993, 952-953. For example, with respect to the test reports he cites, Mr. Lanning testified that the "Second specified power level: PA," "Third specified power level: PN," and "Pmax" were "transmitted to the tested device from the base station emulator in the same way a UMTS base station (NodeB) sends them to the MS in an operating UMTS network." *See* CX-0012C (Lanning WS) at Q/A 136. Mr. Lanning also stated that "the maximum power level setting [is] specified by the serving base station." *See* CX-0012C (Lanning WS) at Q/A 31; Lanning Tr. 953; RX-3214C (Akl RWS) at Q/A 64; Akl Tr. 815.

third signal is transmitted at the same time as the one or more first signals, with each as defined in the claim. *See* RX-3212 (Bims WS) at Q/A 394.

### B. Infringement and Domestic Industry (Technical Prong) of the '271 Patent

As noted, complainants assert independent method claim 1, and dependent method claims 2-4, and independent apparatus claim 5, and dependent apparatus claims 6-8 of the '271 patent. *See* Joint Outline at 6; Staff Br. at 6.

#### 1. Direct Infringement

Philips's infringement and domestic industry technical prong allegations are based on the 3GPP specifications, including 3GPP TS 25.214 § 5.1.2.6 ("maximum and minimum power limits"). *See* CX-1087 (ETSI TS 125 214 v5.11.0 (2005-06)); CX-0012C (Lanning WS) at Q/A 32, 33, 51-54. Philips also relies on testing of various accused products and of Philips' DreamStation product (a domestic industry product) including a [redacted] Module, performed by a third party. *See* CX-0012C (Lanning WS) at Q/A 91-127. Dr. Lanning's testimony for the accused products and domestic industry products are the same and they are analyzed together. Therefore, the analysis below for each limitation applies to both the accused products and domestic industry products.

##### a. "wherein the reduction in transmit power of the one or more first signals (DPCCH, DPDCH) corresponds to the second specified power level (PA or PN)" (limitations [1.4] and [5.4])

The accused and domestic industry products do not meet limitations [1.4] and [5.4] as a result of their compliance with 3GPP TS 25.214 § 5.1.2.6. RX-3214C (Akl

RWS) at Q/A 53, 63-71. The '271 patent requires that the claimed "second specified power level," "third specified power level," and "specified maximum combined transmit power level" are power levels assigned, or "specified," by a base station. *See* JX-0004 ('271 Patent) at Abstract, 1:07-14, 3:46-49; RX-3214C (Akl RWS) at Q/A 17-24, 63-64; RDX-6009, RDX-6010; CX-0012C (Lanning WS) at ¶¶ 31, 136, 142, 193; Lanning Tr. 952-953, 993; RX-0056 (Moulsley Decl.) ¶ 5; JX-0024C (Moulsley Dep. Tr.) at 122, 123, 131-132. The '271 patent (JX-0004) and TS 25.214 § 5.1.2.6 (CX-1087) both address a situation where the total power level in an uplink transmission exceeds the maximum allowed value assigned by a base station, but they prescribe two fundamentally different solutions. *See* RX-3214C (Akl RWS) at Q/A 66-70; CX-1087.21-22 (3GPP TS 25.214 § 5.1.2.6); CX-1461.21-22 (3GPP TS 25.214 § 5.1.2.6).

The '271 patent describes a solution where the power level of "one or more first signals (DPCCH, DPDCH)" is reduced by the amount of power assigned by a base station for transmitting the ACK/NACK signal. *See* JX-0004 ('271 Patent) at 3:58-62, 4:03-07, 5:51-53, 6:36-38, Figures 3 and 4; RX-3214C (Akl RWS) at Q/A 25-31, 66-68; RX-0056 (Moulsley Decl.) ¶ 5; JX-0024C (Moulsley Dep. Tr.) at 87-88; RDX-6011 through 6015; Akl Tr. 815, 817. In contrast, TS 25.214 § 5.1.2.6 requires scaling the total transmit power if it would exceed the maximum allowed value, *i.e.*, applying a scaling factor to all signals in the uplink transmission, including the DPCCH, DPDCH, and HS-DPCCH (ACK/NACK signals). *See* CX-1087.21-22 (3GPP TS 25.214 § 5.1.2.6); CX-1461.21-22 (3GPP TS 25.214 § 5.1.2.6); RX-3214C (Akl RWS) at Q/A 69; RDX-6023; JX-0024C (Moulsley Dep. Tr.) at 60-61; Akl Tr. 823-824. The implementation of the '271 patent (JX-0004) of reducing the power of DPCCH and

DPDCH in an amount equal to the power level of the ACK or NACK specified by a base station is different from TS 25.214 § 5.1.2.6 (CX-1087) which calls for scaling of all signals. *See* RX-3214C (Akl RWS) at Q/A 70, 71 (describing RDX-6025); CX-0012C (Lanning WS) at Q/A 250.

Not only does the patent describe that the claimed "reduction" and the unclaimed "scaling" are performed by different components ("power control stage **34**" v. "scaling stage **36**"), the patent also describes them as distinct operations leading to different outcomes. With respect to the unclaimed "scaling" operation, the patent explains that "the result of the scaling process in accordance with the present invention may in fact be to increase the DPCCH (+DPDCH) transmit power." JX-0004 ('271 Patent) at 5:05-07. In contrast, the claimed "reduction" operation cannot lead to such an outcome because the transmit power of the DPDCH and DPCCH must be "reduced." *Id.* at 4:62-66. Further, as the named inventor explains, scaling requires the ratio among the scaled channels to remain constant as "the same scaling factors would be applied to … all the channels that the UE is transmitting." JX-0024C (Moulsley Dep. Tr. ) at 60-61. In contrast, the claimed power reduction imposes no such requirement, which is evident from the claim language, "reducing the transmit power of one or more first signals (DPCCH, DPDCH)," (*e.g.*, the reduction can be performed on DPCCH alone without affecting the DPDCH). JX-0004 ('271 Patent) at 5:51-52.

The evidence shows that the patentee likely understood the distinction between the unclaimed scaling operation (described in the "scaling stage **36**") and the claimed power reduction operation (described in the "power control stage **34**"). *Compare* JX-0024C (Moulsley Dep. Tr.) at 60-61 (discussing unclaimed scaling) *with id.* at 87-88

such as the baseband processor within the accused and domestic industry modules, and thus has not shown whether any of the accused and domestic industry products performs power reduction "in response to a received signal." *See* Compls. Br. at 200-04; RX-3214C (Akl RWS) at Q/A 79, 157.

None of the test reports cited by Mr. Lanning show that any tested device performed a power reduction triggered by the receipt of a signal. *See* RX-3214C (Akl RWS) at Q/A 158-59. While Mr. Lanning claims the tested module was receiving a signal from the base station emulator throughout the duration of the test, he does not provide any information as to whether the tested module performs logic to take an action in response to a received signal. *See* RX-3214C (Akl RWS) at Q/A 158. Further, as confirmed by Mr. Lanning, the test reports contain no information on whether any tested module performed a cyclic redundancy check (CRC), an indication of whether an ACK or NACK signal was transmitted in response to a received HSDPA packet under UMTS standard, or any information regarding what is contained in the transmissions to or from the tested modules. *See* RX-3214C (Akl RWS) at Q/A 159; Lanning Tr. 965; JX-0004 ('271 Patent) at 3:36-40; RDX-6056. Therefore, none of the test reports provide any information on whether any tested module performed "transmitting simultaneously… one of a second signal (ACK or NACK) at a respective second specified power level (PA or PN) and a third signal (NACK or ACK) at a respective third specified power level ($P_N$ or $P_A$)," in response to a received signal. *See* RX-3214C (Akl RWS) at Q/A 159.

**2. Indirect Infringement**

Philips did not prove that any respondent in this investigation indirectly infringes the asserted claims of the '271 patent. *See* RX-3214C (Akl RWS) at Q/A 9-16, 167-76.

There can be no indirect infringement without direct infringement. *Limelight Networks, Inc. v. Akamai Tech., Inc.*, 572 U.S. 915, 920-21 (2014). Thus, Philips cannot show any indirect infringement inasmuch as it has not shown that any of the accused Quectel, Thales, and Telit modules practice the asserted claims. *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) ("In order to prove [the underlying] direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit"); RX-3214C (Akl RWS) at Q/A 168.

Philips also did not present any evidence of alleged direct infringement where any of the accused modules were placed into an infringing configuration after importation into the United States by any purchaser. For example, none of the accused products includes an "antenna" at the time of manufacture or sale and cannot meet (1) "transceiver means for transmitting one or more signals" in claim 5 and its dependent claims, including the requirement of an antenna; and (2) "transmitting" in claims 1 and 5 and their dependent claims, including the requirements of sending over a network via an antenna. In particular, certain CalAmp products sold without an antenna do not infringe upon the asserted claims of the '271 patent because they lack structures or functionality that must be present to satisfy these limitations. *See* RX-3219C (Burrington WS) at Q/A 7-14; RX-3199C (list of CalAmp products lacking an internal antenna).

Both induced infringement and contributory infringement require proof that respondents knew the accused modules are "especially made or especially adapted for use in an infringement." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1363-64 (Fed. Cir. 2017); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632,

639-40 (2015). Mr. Lanning assumed that respondents "intend for their product to be used for data communications in a manner that infringes the asserted claims of the '271 patent," without identifying any information to support that assumption or consideration of the alleged direct infringement. Relying on certain marketing materials and data sheets indicating the accused products implement one or more 3GPP and/or Wi-Fi standards, Mr. Lanning opined that respondents are instructing purchasers to use the accused products to practice the asserted claims. As discussed above, standard compliance under these circumstances is insufficient to show infringement, and neither Philips nor Mr. Lanning provided any information showing that respondents instruct their customers to configure their products in a certain manner to satisfy the steps of the asserted claims. *See* RX-3214C (Akl RWS) at Q/A 169; *see also* Compls. Br. at 190-218.

Furthermore, the accused modules have substantial uses other than the alleged infringing use, which defeats a claim for contributory infringement and negates any alleged intent to induce infringement. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328-29 (Fed. Cir. 2009); RX-3214C (Akl RWS) at Q/A 170-76. First, as discussed above, the base station controls whether or not the second and third specified power levels are equal to, as opposed to exceeding, one another, thus the accused modules may be operated in a fashion where the specified power levels for the second and third signals are equal at a communications network's discretion. *See* RX-3214C (Akl RWS) at Q/A 170. Second, each of the accused Quectel, Thales, and Telit modules which Mr. Lanning addressed in his infringement opinions also support wireless communication on protocols other than the 3G UMTS, such as GSM, LTE, EDGE,

Pursuant to 19 C.F.R. § 210.42(h), this Initial Determination shall become the determination of the Commission unless a party files a petition for review pursuant to § 210.43(a) or the Commission, pursuant to § 210.44, orders on its own motion a review of the Initial Determination or certain issues herein.

## XI. Order

To expedite service of the public version of this document, the parties shall file a joint proposed public version, on the date and in the manner required by Order No. 8.

DPShaw

David P. Shaw
Administrative Law Judge

Issued: April 1, 2022

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KONINKLIJKE PHILIPS N.V., )
)
Plaintiff, )
) C.A. No. 20-1707-CFC
v. )
)
QUECTEL WIRELESS SOLUTIONS )
CO. LTD., )
)
Defendant. )
)
KONINKLIJKE PHILIPS N.V., )
)
Plaintiff, )
) C.A. No. 20-1701-CFC
v. )
)
QUECTEL WIRELESS SOLUTIONS )
CO. LTD., CALAMP CORP., )
XIRGO TECHNOLOGIES, LLC, )
LAIRD CONNECTIVITY, INC., )
)
Defendants. )

Tuesday, February 10, 2026
9:02 a.m.
Markman Hearing

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE COLM F. CONNOLLY
United States District Court Judge

APPEARANCES:

YOUNG CONAWAY STARGATT & TAYLOR
BY: ADAM W. POFF, ESQ.

-and-

FOLEY & LARDNER LLP
BY: ELEY O. THOMPSON, ESQ.
BY: KEVIN M. LITTMAN, ESQ.
BY: LUCAS L. SILVA, ESQ.

Counsel for the Plaintiff

FISH & RICHARDSON, P.C.
BY: WARREN K. MABEY, JR, ESQ.
BY: THOMAS H. REGER II, ESQ.
BY: LAWRENCE JARVIS, ESQ.
BY: TAE HONG, , ESQ.
BY: MOHAMMAD KAMELI, ESQ.
Counsel for the Defendants

\- - - - - - - - - -

P R O C E E D I N G S

(Proceedings commenced in the courtroom beginning at 9:02 a.m.)

**THE COURT:** Good morning. Please be seated. All right. Mr. Poff.

**MR. POFF:** Good morning, Your Honor. Adam Poff from Young Conaway on behalf of Philips. And with me from Foley & Lardner, Eley Thompson, Kevin Littman, and Lucas Silva. And with us from Philips, Kiran Patel.

**THE COURT:** All right. Good morning.

**MR. MABEY:** Good morning, Your Honor. Warren Mabey from Fish & Richardson on behalf of Quectel. With me today, Thomas Reger.

**MR. REGER:** Good morning, Your Honor.

**MR. MABEY:** Lawrence Jarvis.

**MR. JARVIS:** Good morning, Your Honor.

**MR. REGER:** Tae Hong, Mohammad Kameli, and our technical expert, Dr. Paul Min, is in the back.

**THE COURT:** All right. So let's start.

Let's get organized. All right. Why don't we start with the '271 patent.

**MR. THOMPSON:** Yes, Your Honor. All right.

Thank you, Your Honor. We'll talk about the '271 patent first. I believe the first item on your order for the '271 was Item Number 4, which is the "second specified power level."

**THE COURT:** Right. Although why don't we just go through, if you want, you don't have to, but if you want to give a brief intro to the patent and then why don't we just go through, in order, let's stop on each

**MR. THOMPSON:** Right.

**THE COURT:** And then the defendant does because the defendant wants me to construe the term as transmission power ($P_A$ or $P_N$) assigned by the base station.

The words "assigned" don't appear in the patent. And I'm not going to adopt what is, effectively, a limitation that the defendant is asking me to read into the claim.

We've discussed at length, and I agree with... actually, let me put it this way. I'm not so much sure I agree with Philips, that what the defendant is asking for reads out the embodiments because of the word "assigned."

I'm not even sure what it exactly means. I think, what I interpret the defendants, in effect, to say is that they are equating "assigned" with "specify."

Go ahead.

**MR. JARVIS:** Yes.

**THE COURT:** Right? I mean, that's really what you are doing, you agree.

**MR. JARVIS:** Yes.

**THE COURT:** And I think we also all agree that there's only, really, one embodiment in the patent and it's embodied in Figures 3, 4, and 5.

Do you agree with that?

**MR. JARVIS:** Yes.

**THE COURT:** And so do you, right?

**MR. THOMPSON:** Yes.

**THE COURT:** And the problem for the defendant is that that embodiment has the ratio which is necessarily part of the ultimate level determination. It does come from the base station. That's undisputed. But the problem for the defendants is, and it's the dispositive problem, is that there's nothing in the written description that says that it is the base station that uses that ratio to determine the power level, specify the power level. I'm not going to hear any more argument.

The written description is explicit that Figure 5 is depicting operations performed exclusively by the mobile station. And so the claim is silent as to what specifies the level, but if you read the claim in light of the disclosed embodiment, it's clear that the ultimate level is set by the mobile station, and it's set to a specified power level that is determined, in part, based on the ratio provided by the base station, but it can also and is also, according to the embodiment, performed by the mobile station using that information.

And as I read the patent in its entirety, there are occasions where the determination of a level or the setting of a level is performed by a base station, and some occasions, where it's performed by the mobile station. As I said, the claim is silent.

I found it significant that at Lines 52 to 54 of Column 5, the written description describes the method of Figure 5 in which, quote, "Block 43 denotes the mobile station determining the power levels for the ACK or NACK signal in the greater one of those two levels."

I found it significant that Block 54 of Figure 5 which, again, the patent is very explicit, is describing operations performed exclusively by the mobile station, reads, quote, "Determine which one of ACK, NACK needs higher power," unquote.

I agree, ultimately, that because of those descriptions, Quectel's construction would improperly read out the embodiment of Figure 5, which appears to be the only embodiment of the claimed method in Claim 1 and, also, it's the only method you've all just agreed to, that it's the only method, slash, apparatus disclosed in the patent. And it would be inappropriate, under the patent law, to read that embodiment out of the patent, so this I will not do.

You both told me I don't need to rely on extrinsic evidence. And so for the reasons I've just articulated and based on the questioning that I engaged in with counsel, those reasons are why I'm going to not construe the term and reject the, effectively, limitation imposed by the construction that the defendants asked me to adopt.

All right. Next term.

**MR. THOMPSON:** Yes, Your Honor. I would suggest that we continue discussing the '271 patent in the context of the power because we've been talking about that. That would be the combined transmit power level.

**THE COURT:** So hold on. You want to go to next...

**MR. THOMPSON:** It would be Item 6 on the Court's order.

**THE COURT:** Shuffling back and forth between here and chambers, I think I leave things on my desk, is the unfortunate thing. So hold on.

All right. What do you want to do next?

**MR. THOMPSON:** I am suggesting that we stick with power level discussion and go to Number 6, which is combined transmit power level.

**THE COURT:** Okay. Which is in your briefing Term F, right?

**THE COURT:** It's 5:15, so I am not going to let you. I think we're good.

Is there anything else I can resolve?

**MR. THOMPSON:** No. Thank you, Your Honor, for all your time.

**THE COURT:** All right. So you need to meet and confer about the discovery date. And then if you are going to file a motion, you need to file before the end of fact discovery.

And did I refer all discovery disputes in this case to somebody? Who did I refer them to?

I will take this particular motion, but you need to tell Burke's chambers that it will be direct to me. I am hoping I don't have to see it because if the loser looks unreasonable, they are going to regret it. I'm telling you that. That's the only thing I can say. So I hope I don't see this dispute.

That said, thank you very much for the helpful arguments. Have a good day.

(The proceedings concluded at 5:15 p.m.)

CERTIFICATE OF COURT REPORTER

I hereby certify that the foregoing is a true and

accurate transcript from my stenographic notes in the proceeding.

/s/ Bonnie R. Archer
Bonnie R. Archer, RPR, FCRR
Official Court Reporter
U.S. District Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>[redacted] |

**QUECTEL'S OPPOSITION TO**
**PHILIPS'S MOTION IN LIMINE NO. 1 TO EXCLUDE**
**CERTAIN FINDINGS FROM ITC INVESTIGATION NO. 337-TA-1240**

A U.S. government finding of a patent's non-infringement, invalidity, and unenforceability is relevant to a "common" patent case, especially because of damages valuing the patent's alleged strength and because of the defendant's supposedly "willful" intention to infringe. Here, there is the additional relevance of those findings going to defendant Quectel's claims of Philip's bad faith by ignoring those findings in contrast to its contractual obligations, and therefore breaching them. And it is important to note that Philips chose to not appeal those ITC findings. Philips's motion fails to address any of these points, and there are three separate reasons that the ITC findings are relevant to issues the jury must decide.

**First**, the ITC results are directly relevant to rebut Philips's allegation that Quectel (and each of its customer defendants) has willfully infringed its patents. Philips put Quectel's (and other's) state of mind at issue, pleading "willful and wanton" infringement and seeking treble damages. D.I. 218 (3d Compl.) at ¶¶ 47, 155, Prayer for Relief. Quectel's (and other's) successful ITC defense against Philips's claims—involving the same two patents asserted here—is squarely relevant to show Quectel (and its customers) is not an **intentional and deliberate** infringer. Quectel possesses the good faith belief that it does not infringe and that the asserted patents are invalid and unenforceable. D.I. 233 (3d Ans.) ¶ 19.

A neutral U.S. tribunal's determination—after a full evidentiary hearing—that these patents are not infringed is highly probative evidence that: (i) Quectel's

continued sales reflected a reasonable, good-faith belief rather than wanton disregard; and (ii) Quectel's actions **after** receiving the ITC decision do not demonstrate willful infringement. Indeed, this Court has allowed evidence regarding the **fact** that an asserted patent was found infringed at the ITC because "the ITC proceedings were relevant to [plaintiff's] claims and [defendant's] defenses." *Wirtgen Am., Inc. v. Caterpillar, Inc.*, No. 1:17-CV-00770-JDW, 2024 WL 4216057, *12 (D. Del. Sept. 17, 2024).; *see also id.* at 2024 WL 166833, *2 (D. Del. Jan. 16, 2024) ("The prior litigation before the ITC is relevant in a jury's determination of willfulness because the jury will measure Caterpillar's culpability against [its] knowledge ... at the time of the challenged conduct.") (internal quotation omitted). The Federal Circuit has taken the same view regarding prior verdicts. *Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 981 (Fed. Cir. 2019) (affirming admission of a prior verdict as relevant to willfulness and to defendant's equitable defenses); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1365-66 (Fed. Cir. 2006).

**Second**, the ITC findings are relevant to damages. There should be no question that a finding of non-infringement devalues a patent. And both the *Sprint* and *Applied Medical* cases cited above recognize that prior verdicts are admissible when relevant to damages issues. 760 F. App'x at 981; 435 F.3d at 1365-66. The same rationale applies here. Quectel's damages expert (Ms. Distler) confirms that

the ITC results are relevant to rebut Philips's framing of the hypothetical negotiation, which [redacted]. *See* Ex. B at ¶¶ 266-68. In contrast, Ms. Distler found the ITC results would have put **downward pressure** on a royalty rate arising from the hypothetical negotiation. *Id.* at 268. Further, Ms. Distler explained the ITC results provide [redacted]. Ex. B at ¶¶ 307-08.

**Third**, beyond the "common" patent case where such findings are relevant to willfulness and damages, defendant Quectel asserts breach of FRAND and good faith counterclaims against Philips for failing to address those findings in negotiations. D.I. 233 (Counterclaims) at ¶¶ 34-54. Philips has continually overvalued its patent portfolio during negotiations, as demonstrated by its handpicked strongest patents failing on infringement, validity, and enforceability at the ITC. *Id.* at ¶¶ 21-22, 39, 41, 52. Quectel also asserts Philips's has breached its FRAND obligations and duty to negotiate in good faith under French law based on Philips's using the lawsuits to pressure Quectel's customers, such as CalAMP and Xirgo. *See* D.I. 233 (Counterclaims) at ¶ 41; Ex. A at ¶¶ 95-98 (Quectel's expert explaining why such actions indicate bad faith under French law). The ITC results are thus relevant to Quectel's breach counterclaims.

For at least these reasons, Philips's MIL No. 1 should be denied.

Dated: July 10, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive

Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

# CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026**,** I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Beth Ann Swadley (No. 6331)<br>Parks Kingery (No. 7416)<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>bswadley@ycst.com<br>pkingery@ycst.com<br><br>Kevin M. Littman<br>Lucas I. Silva<br>Thomas Relyea<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Tel: (617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br>tom.relyea@foley.com<br><br>Alexis K. Juergens<br>FOLEY & LARDNER LLP<br>95 S State Street, Suite 2500<br>Salt Lake City, UT 84111<br>Tel: (801) 401-8900<br>ajuergens@foley.com<br><br>Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800 | Karen E. Keller (No. 4489)<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 298-0700<br>kkeller@shawkeller.com<br><br>***Attorney for Defendant Eagle Electronics Inc.***<br><br>Kenneth L. Dorsney (No. 3726)<br>Cortlan S. Hitch (No. 6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Blvd, Suite 100<br>Wilmington, DE 19803<br>Tel: (302) 888-6988<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>Kirk T. Bradley<br>Lauren Griffin<br>ALSTON & BIRD LLP<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203<br>Tel: (704) 444 -1030<br>kirk.bradley@alston.com<br>lauren.griffin@alston.com<br><br>Nicolette Nunez<br>ALSTON & BIRD LLP<br>1201 West Peachtree St., Suite 4900<br>Atlanta, GA 30309<br>Tel: (404) 881-7851<br>nicolette.nunez@alston.com |

| | |
|---|---|
| Chicago, IL 60654-5313<br>Tel: (312) 832-4359<br>ethompson@foley.com<br><br>Sarah E. Rieger<br>FOLEY & LARDNER LLP<br>777 E. Wisconsin Ave.<br>Milwaukee, WI 53202<br>Tel: (414) 271-2400<br>srieger@foley.com<br><br>***Attorneys for Plaintiff Koninklijke Philips N.V.*** | ***Attorneys for Defendant Xirgo Technologies, LLC***<br><br>John C. Phillips, Jr. (No. 110)<br>David A. Bilson (No. 4986)<br>PHILLIPS, MCLAUGHLIN & HALL, P.A.<br>1200 N. Broom St<br>Wilmington, DE 19806<br>Tel: (302) 655-4200<br>jcp@pmhdelaw.com<br>dab@pmhdelaw.com<br><br>J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606-3912<br>Tel: (312) 655-1500<br>aron.carnahan@huschblackwell.com<br><br>***Attorneys for Defendant Ezurio LLC f/k/a Laird Connectivity, Inc.***<br><br>Chad S.C. Stover (No. 4919)<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3474<br>chad.Stover@btlaw.com<br><br>Craig D. Leavell<br>BARNES & THORNBURG LLP<br>One N. Wacker Drive Suite 4400<br>Chicago, IL 60606-2833<br>Tel: (312) 357-1313<br>craig.leavell@btlaw.com<br><br>Eric J. Beste<br>BARNES & THORNBURG LLP<br>655 W. Broadway, Suite 1300 San |

| | |
|---|---|
| | Diego, CA 92101<br>Tel: (619) 321-5015<br>eric.beste@btlaw.com<br><br>***Attorneys for Defendant CalAmp Corp.*** |

Dated: July 10, 2026

FISH & RICHARDSON P.C.

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# EXHIBIT A

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

KONINKLIJKE PHILIPS N.V.,

Plaintiff,

v.

QUECTEL WIRELESS SOLUTIONS CO. LTD.,

Defendant.

C.A. No. 20-cv-1710-CFC

**JURY TRIAL DEMANDED**

**EXPERT REPORT OF PROFESSOR RÉMY ANTOINE LIBCHABER**

I declare under penalty of perjury under the laws of the United States of America that the statements contained in this report are true and correct.

Respectfully Submitted,

[redacted]

Date: April 2, 2026

Rémy Antoine Libchaber

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. EXPERT QUALIFICATIONS .......... 1

A. Background, Education and Experience .......... 1

B. Prior Expert Experience .......... 3

C. Compensation .......... 4

III. MATERIALS CONSIDERED .......... 5

IV. SUMMARY OF OPINIONS .......... 5

V. FRENCH LAW GOVERNS CONDUCT ASSOCIATED WITH THE ETSI IPR POLICY .......... 6

VI. PRINCIPLES OF CONTRACT FORMATION AND ENFORCEABILITY OF ETSI IPR DECLARATIONS .......... 7

VII. THE ETSI IPR POLICY AND TIMELY DISCLOSURE OF SEPS .......... 13

A. The Significance of Timely Disclosures .......... 13

B. The Consequences of Untimely Disclosures .......... 17

VIII. THE ROLE OF GOOD FAITH IN FRENCH CONTRACT LAW .......... 19

A. Principles Relating to Good Faith .......... 19

B. Examples of Conduct that Breach a Duty to Negotiate in Good Faith Under French Law .......... 24

C. Remedies Available for Breach of the Obligation of Good Faith and Breach of FRAND .......... 27

# I. INTRODUCTION

1. I, Professor Rémy Antoine Libchaber, of 12, rue François Millet, 75016 Paris, hereby declare as follows:

2. I have been retained by counsel for Quectel Wireless Solutions Co. Ltd ("Quectel") to provide expert testimony in connection with Philips's case against Quectel, C.A. NO. 1:20-cv-1710-CFC (the 1710 case), pending in the District of Delaware, on issues about French law, namely contract law which are governed by the laws of France. Although my opinions in this report are directed at the 1710 case, I reserve the right to rely on these same opinions in the separate matter filed by Philips against Quectel also pending in the District of Delaware, C.A. No. 20-cv-1707-CFC (the 1707 case).

3. I am competent to testify to the statements of fact made in this Declaration and Report based upon my personal knowledge. In forming my opinions, I have relied on my professional and academic experience and have considered the documents identified below.

# II. EXPERT QUALIFICATIONS

## A. Background, Education and Experience

4. I earned my Bachelor of Law at Paris X University (Nanterre) in 1984 and my degree in Private Law at Paris X University (Nanterre) in 1985, graduating with cum laude honours on both occasions. In 1986, I earned my Postgraduate Diploma in international private law and international commercial law at Paris 1 University (Panthéon-Sorbonne), which is linked for the purposes of this diploma to Paris XI (Sceaux). For that academic year, I was a principal teacher of Commercial Action at Lycée Le Rebours (Paris 13th) which covers commercial law and contracts.

5. After my Postgraduate Diploma, in 1987 I undertook my Ph.D. in private law under the direction of Professor Pierre Mayer at Paris 1. During my Ph.D. studies, I was a researcher,

### B. Examples of Conduct that Breach a Duty to Negotiate in Good Faith Under French Law

91. Under French law, whether conduct is indicative of good faith or bad faith is assessed based on the totality of the circumstances: the question is very fact sensitive. Nevertheless, certain actions may be indicative of bad faith under French law because they do not meet the required standard.

92. This is particularly accurate given that, within the ETSI framework, the parties must agree to FRAND licenses, meaning that three requirements are imposed by the acronym: the license must be Fair, Reasonable, and Non-discriminatory.

93. There are three areas in which the requirement of good faith can easily be disregarded during negotiations.

94. The principle of good faith in French law is not derived solely from Article 1104: the requirement is reiterated in certain specific circumstances to further emphasize its necessity. Thus, Article 1112 of the Civil Code states: "The initiation, conduct, and termination of pre-contractual negotiations are unrestricted. However, they must strictly comply with the requirements of good faith."[47]

95. Therefore, initiating litigation during the pendency of ongoing negotiations is quite clearly a reprehensible course of action. It indicates that the initiating party breached the duty to negotiate in good faith by trying to pressure the other party in an illicit way. Additional indications of bad faith may include prematurely bringing a lawsuit based on external considerations unrelated to the negotiation (e.g., contractual and/or financial incentives to bring a lawsuit) and attempting

[47] « L'initiative, le déroulement et la rupture des négociations précontractuelles sont libres. Ils doivent impérativement satisfaire aux exigences de la bonne foi ».

to apply pressure to a standards implementer's customers (e.g., by threatening a lawsuit against such customers).

96. In this context, it is worth noting Article 1141 of the Civil Code, which provides a clear indication of the French position regarding the filing of a lawsuit. As the article states, the misuse of a legal remedy can never be accepted.[48]

97. Consequently, the pursuit of a legal remedy that is not driven by any substantive objective but rather by the desire to gain an advantage in contract negotiations would most certainly be questionable in light of what is expected of a good-faith contractor.

98. This is particularly true where the relief requested by the party initiating litigation includes injunctive relief. It follows that a SEP owner's use of improperly-pursued litigation to pressure a standards implementer to accept an offered license rate is indicative of bad faith: the attitude lacks the required fairness and would weigh toward a determination of breach of the duty to negotiate in good faith.

99. In the same vein, concealment of (or refusal to provide) relevant information during license negotiations can be indicative of bad faith.

100. Once again, it is essential to refer to the provisions of the Civil Code, particularly Article 1112-1: "A party who is aware of information that is of decisive importance to the other party's consent must disclose it to the other party whenever the latter is legitimately unaware of such information or relies on the other party."[49] In paragraph 3, the article adds: "Information that

[48] Article 1141 of the Civil Code « La menace d'une voie de droit ne constitue pas une violence. Il en va autrement lorsque la voie de droit est détournée de son but ou lorsqu'elle est invoquée ou exercée pour obtenir un avantage manifestement excessif ».

[49] « Celle des parties qui connaît une information dont l'importance est déterminante pour le consentement de l'autre doit l'en informer dès lors que, légitimement, cette dernière ignore cette information ou fait confiance à son cocontractant ».

# EXHIBIT B

[redacted]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

---

**KONINKLIJKE PHILIPS N.V.,**

Plaintiff,

v.

**QUECTEL WIRELESS SOLUTIONS CO. LTD.,**

Defendant.

**Case No. 1:20-cv-01710**

---

# EXPERT REBUTTAL REPORT OF CARRIE L. DISTLER

Carrie L. Distler

**Submitted April 29, 2026**

[redacted]

## TABLE OF CONTENTS

**I. SCOPE OF ASSIGNMENT ... 1**

**II. PROFESSIONAL CREDENTIALS ... 3**

**III. INFORMATION CONSIDERED ... 5**

**IV. SUMMARY OF OPINIONS ... 7**

**A. Dr. Teece's FRAND Opinion ... 7**

**B. Dr. Teece's Reasonable Royalty Opinion for the Patents-in-Suit ... 8**

**V. CELLULAR COMMUNICATION AND IOT DEVICES ... 12**

**VI. PLAINTIFF: PHILIPS ... 12**

**A. The Patents-in-Suit ... 13**

1. U.S. Patent No. 7,944,935 ... 13
2. U.S. Patent No. 7,831,271 ... 14
3. Prior ITC Proceeding Involving the 1710 Patents-in-Suit ... 16

**B. Philips's Licensing of its Cellular SEP Portfolio ... 17**

1. Philips's licensing with handset manufacturers ... 18
2. Philips's licensing efforts with IoT module manufacturers ... 19

**VII. DEFENDANT: QUECTEL ... 32**

**C. Accused Products ... 35**

**D. Quectel's Licensing of Patent Pools ... 38**

**VIII. INTERACTIONS BETWEEN PHILIPS AND QUECTEL ... 40**

**A. Communications Between the Parties ... 40**

**B. Philips's Pre-Suit Offers to Quectel ... 45**

[redacted]

**C. Philips's Post-Suit Offers to Quectel ... 54**

**IX. DAMAGES FRAMEWORK ... 58**

**A. Reasonable Royalty Framework ... 58**

**B. FRAND Considerations for Standard Essential Patents .......... 65**

**C. Hypothetical Negotiation Date and Parties .......... 70**

**X. REBUTTAL OF PLAINTIFF'S PATENT DAMAGES CLAIMS .......... 70**

**A. Summary of Dr. Teece's Opinions .......... 71**

1. Dr. Teece's FRAND Opinion .......... 72
2. Dr. Teece's Damages Opinion .......... 78
3. Dr. Teece's Opinion on Harm to Philips's Licensing Program .......... 88

**B. Rebuttal of Dr. Teece's FRAND Opinion .......... 89**

[redacted]

**C. Rebuttal of Dr. Teece's Damages Opinion .......... 140**

[redacted]

**D. Rebuttal of Dr. Teece's Characterization of Quectel's Conduct and Claim of Alleged Harm to Philips's Licensing Program .......... 196**

[redacted]

**XI. CONCLUSIONS ........ 202**

**A. Dr. Teece's FRAND Opinion is flawed and grossly overstates the FRAND rate ........ 202**

**B. Dr. Teece's damages for the patents-in-suit is flawed and overstates a reasonable royalty 203**

**XII. SUPPLEMENTATION OF OPINIONS ........ 205**

[redacted]

[redacted]

[redacted]

---

[redacted].

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION IN LIMINE #1 TO EXCLUDE CERTAIN FINDINGS FROM ITC INVESTIGATION NO. 337-TA-1240**

As this Court observed at the September 9, 2025 hearing, "[i]f there are no FRAND counts in the 1710 case, and we are just litigating a patent case, then none of that would come in, and it's irrelevant what the ITC did." D.I. 58, 21:9-13. Quectel's argument that the ITC determination *may* be relevant to certain aspects of its defense is contrary to this Court's prior observation and, in any event, does not outweigh the likelihood of unfair prejudice and juror confusion. Quectel does not rebut the obvious prejudice and risk of confusion nor suggest how it should be limited at trial. First, as Quectel implicitly admits, the ITC determination can only, at most, speak to Quectel's subjective belief after the determination issued. *See* Opp., 1-2; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) ("[C]ulpability is … measured against the knowledge … at the time of the challenged conduct.").

Second, neither a hypothetical negotiation, nor the reasonableness of a licensing offer or counteroffer, can be based on *ex post* factors. *See Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, 7670 F. App'x 977, 981 (Fed. Cir. 2019); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1365-66 (Fed. Cir. 2006) (both upholding use of a prior verdict that preceded the hypothetical negotiation).

Finally, Quectel repeatedly cites unsupported allegations, rather than evidence, for why the determination is relevant to its counterclaims.

The ITC determination is prejudicial. The purported relevance is minimal. It should be excluded.

*/s/ Adam W. Poff*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

*Of Counsel*:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Thomas M. Relyea (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Dated: July 14, 2026

# EXHIBIT 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION IN LIMINE #2 TO EXCLUDE EXPERT TESTIMONY ARGUING CLAIM CONSTRUCTION OR EVIDENCE CONTRADICTING THIS COURT'S CLAIM CONSTRUCTIONS**

# TABLE OF CONTENTS

A. Experts May Not Argue Claim Construction to the Jury ................................1

B. Dr. Wicker Relies on Claim Constructions the Court Rejected......................1

1. "Specified Power Level" ('271 Patent")......................................................2

2. "Transmit" ('935 Patent")...........................................................................3

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cordis Corp. v. Boston Sci. Corp.*,
561 F.3d 1319 (Fed. Cir. 2009) ....................1

*Exergen Corp. v. Wal-Mart Stores Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ....................1

*Finjan, Inc. v. Secure Comput. Corp.*,
626 F.3d 1197 (2010)....................2, 3

*Intuitive Surgical, Inc. v. Auris Health*,
549 F. Supp. 3d 362 (D. Del. 2021)....................2, 3

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006) ....................1, 3

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)....................1

**Rules**

Federal Rules of Evidence 401 ....................3

Federal Rules of Evidence 402 ....................1, 3

Federal Rules of Evidence 403 ....................1, 3

Pursuant to Federal Rules of Evidence 402 and 403, the Court should exclude any testimony that argues claim construction to the jury or relies on a construction of a claim term that was rejected by the Court.

**A. Experts May Not Argue Claim Construction to the Jury**

Claim construction is a matter of law for the Court to decide. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). Even where the Court has not resolved every claim construction dispute before trial, that does not transform claim construction into a jury question. The "risk of confusing the jury is high when experts opine on claim construction." *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009). While experts may offer testimony on how a person of ordinary skill would apply the plain and ordinary meaning of a term, it is improper for an expert to analyze the intrinsic record—the patent specification and prosecution history—and offer opinions about what a disputed claim term means based on that record, as that is for the judge. *See id.*; Fed. R. Evid. 402, 403.

**B. Dr. Wicker Relies on Claim Constructions the Court Rejected**

A Court's claim construction findings are controlling and "no party may contradict" them. *Exergen Corp. v. Wal-Mart Stores Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Expert testimony based on an "impermissible claim construction" is properly excluded on the basis that it is "irrelevant" and "that the evidence could prejudice and confuse the jury." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d

1209, 1224 n.2 (Fed. Cir. 2006). Testimony that "attempt[s] to resurrect a claim construction that the district court already rejected," is properly excluded, even where the Court has not issued a construction. *Finjan, Inc. v. Secure Comput. Corp.*, 626 F.3d 1197, 1207 (2010). Indeed, testimony that attempts to relitigate claim construction to the jury is regularly excluded. *Intuitive Surgical, Inc. v. Auris Health*, 549 F. Supp. 3d 362, 369 (D. Del. 2021).

***1. "Specified Power Level" ('271 Patent")***

As an example, Dr. Wicker opines that the accused products do not transmit signals at a "specified power level" because "specified" means that the signal power must be specified by the base station. (Ex. 1, ¶¶ 67, 72, 73, 111, 112, 132, 140-143, 180, 202, 208-211, 234.) At the Markman hearing, the Court rejected Quectel's "specified by the base station" construction although it ultimately "decline[d] to construe" the term (D.I. 206 at 2). The Court explained that "there's nothing in the written description that says that it is the base station that uses that ratio to determine the power level, specify the power level. I'm not going to hear any more argument." (Ex. 2, at 51:10-14.)

This is analogous to *Intuitive Surgical, Inc. v. Auris Health*. There, the court rejected defendant's proposal that an "end effector" must manipulate body tissue. 549 F. Supp. 3d at 369. Nonetheless, defendant's expert opined that the accused product lacked an "end effector" because the relevant component was "designed to

stay away from surrounding tissue." *Id.* The court found the opinion improper because it sought to equate the court's construction with "a narrowed definition that the court rejected during claim construction." *Id.* Here, Dr. Wicker does the same, equating "specified power level" with a narrowed definition that this Court rejected. It would be improper for Quectel to re-litigate this issue during trial. Fed R. Evid 403; *Intuitive Surgical*, 549 F. Supp. 3d at 369; *Finjan*, 626 F.3d at 1207.[1]

***2. "Transmit" ('935 Patent")***

As an example for the '935 patent, Dr. Wicker asserts that the accused products do not "transmit" because they do not include an "over[-]a[-]network" or "over-the-air" transmission. (Ex. 3, 179:1-16; Ex. 4, ¶ 227). But the Court rejected Quectel's argument that "transmitting the group" must be over a network. (Ex. 2, at 182:18-24.); *see also* D.I. 206 at 2. Dr. Wicker's opinions rely on the very construction the Court rejected. Any evidence that asserts or relies on "transmitting the group" requiring an over-the-air or over-a-network aspect should be excluded as prejudicial and likely to confuse the jury. *Liquid Dynamics Corp.*, 449 F.3d at 1224 n.2; Fed. R. Evid. 401-403.[2]

[1] These are not the only terms for which Dr. Wicker improperly engages in claim construction. He also offers opinions concerning "one or more signals, simultaneously" and "control means." *See, e.g.,* Ex. 1, ¶¶ 110-16.

[2] As with the '271 patent, Quectel's experts offer other improper opinions. Dr. Wicker also offers opinions concerning "queue" (Ex. 4, ¶ 170; Ex. 3, at 154:15-25) which is contrary to the stipulated construction (D.I. 206 at 4), and Dr. Bims provides improper opinions on indefiniteness (Ex. 5, ¶¶ 87-112).

*Of Counsel*:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Thomas M. Relyea (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Dated: July 2, 2026

*/s/ Robert M. Vrana*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

# EXHIBIT 1

[redacted]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**REBUTTAL REPORT OF STEPHEN B. WICKER, PH.D.**
**REGARDING NONINFRINGEMENT OF U.S. PATENT NO. 7,831,271**

Dated: April 29, 2026

Dr. Stephen B. Wicker

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KONINKLIJKE PHILIPS N.V., Plaintiff, v. QUECTEL WIRELESS SOLUTIONS CO. LTD., Defendant. | ) | C.A. No. 20-1707-CFC |
| KONINKLIJKE PHILIPS N.V., Plaintiff, v. QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., Defendants. | ) | C.A. No. 20-1701-CFC |

Tuesday, February 10, 2026
9:02 a.m.
Markman Hearing

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE COLM F. CONNOLLY
United States District Court Judge

Do you agree with that?

**MR. JARVIS:** Yes.

**THE COURT:** And so do you, right?

**MR. THOMPSON:** Yes.

**THE COURT:** And the problem for the defendant is that that embodiment has the ratio which is necessarily part of the ultimate level determination. It does come from the base station. That's undisputed. But the problem for the defendants is, and it's the dispositive problem, is that there's nothing in the written description that says that it is the base station that uses that ratio to determine the power level, specify the power level. I'm not going to hear any more argument.

The written description is explicit that Figure 5 is depicting operations performed exclusively by the mobile station. And so the claim is silent as to what specifies the level, but if you read the claim in light of the disclosed embodiment, it's clear that the ultimate level is set by the mobile station, and it's set to a specified power level that is determined, in part, based on the ratio provided by the base station, but it can also and is also, according to the embodiment, performed by the mobile station using that information.

directed towards some sort of a internal transmission of information -- or, you know, I should internal, quote, transmission of information. That is nothing more than moving of data in a way that would be, you know, incongruous with the way that transmission is used in the art and everywhere in the patent.

Again, that is an area, too, where I think that Dr. Min could address any questions you have regarding the nature of this, you know, technology in this patent and what transmission means to a person of skill in the art, and that it certainly does not mean just moving around of data internally.

**THE COURT:** Okay. Thank you.

**MR. SILVA:** Can I briefly respond, Your Honor?

**THE COURT:** Not yet. We will take our last break, and then you can respond. But we'll give the court reporter a break, so we'll come back in ten minutes.

(Whereupon, a recess was taken.)

**THE COURT:** Have a seat. Okay. Go ahead.

**MR. SILVA:** Thank you, Your Honor. Lucas Silva for the plaintiff.

If I may just briefly respond to a couple of points that were just raised. Again, the claims are to the multiplexing apparatus, Your Honor, not the

communication terminal. And so counsel for Quectel, I believe, repeatedly stated that when the word "transmission" is used in the patent, it's talking about transmission out over a network. It's not.

When the word "transmission" is used in Figure 2, it explicitly says, "on an output 100."

Counsel also said that the claim includes a limitation received data packets. That's true, Claim 9 does include limitation means for receiving data packets. That's actually a term that was not in Your Honor's order, but it was briefed. For that term, Quectel agrees that the receiving happens on input 20. The multiplexing apparatus receives the data packets on an input. It transmits them on a output.

Counsel also quoted Column 5 of the patent and talked about the disclosure there. That was not something that was briefed, but that's talking about a separate input. There's input 10 here on Figure 2, and there's 100 which is output on Figure 2. But on Figure 4, it says, "the multiplexing apparatus may be adapted to receive on an input 100, for example, via the transceiver 310, a signal," and it goes on.

So the things that are going into the multiplexing apparatus in the patent, how it receives information is on an input.

**THE COURT:** Is the multiplexing apparatus separate from the receiver?

**MR. SILVA:** It is. The transceiver is coupled to the multiplexing apparatus, Your Honor.

**THE COURT:** Right. And, in fact, that's in Column 5, right? It speaks of a "communication terminal 410 for transmitting data comprises the apparatus for multiplexing 300," and then it says, "coupled to a transceiver 310 for transmitting the data." Right?

**MR. SILVA:** Correct.

**THE COURT:** But Claim 9 claims what?

**MR. SILVA:** Multiplexing apparatus, Your Honor.

**THE COURT:** And it comprises what? It's comprised of, among other things, a means for transmitting the group, right?

**MR. SILVA:** That's correct. And our position is transmitting it to the transceiver on that output. Which is consistent with what's stated there on Column 3, Line 9, "multiplexing apparatus" --

**THE COURT:** Right.

**MR. THOMPSON:** "transmits on output 100."

**THE COURT:** Yeah. All right. You know what I'm going to do? I'm going to go with...

I think the patent is kind of messy, in terms

of trying to figure out things. For instance, referring to 100 as an output, and yet, for instance, in Figure 2 on the right, in figure...

Well, in Figure 4, how does it refer to 100 as an output? An input? What?

**MR. SILVA:** It refers to it as an input when it's talking about receiving on that Line 100. Input/output, I think, would be a known sort of functionals. Input/output, it goes in both directions in the context of these systems I think would be how you would read that, the claim, or read the system, Your Honor.

**THE COURT:** Well, then...

**MR. SILVA:** Sends packets back and forth on 100.

**THE COURT:** Okay.

All right. Well, you can have a seat. Did you want to say anything else?

**MR. SILVA:** No, Your Honor.

**THE COURT:** Okay. You can have a seat.

**MR. MABEY:** Your Honor, may I have one --

**THE COURT:** I've got enough. Thank you.

Mr. Mabey, you can tell me one thing. Is the word "antenna" in the patent?

**MR. MABEY:** I don't know if the word is,

but --

**THE COURT:** Well, actually, why don't you find out.

**MR. MABEY:** I was going to direct you to the actual -- the description -- the figure showing the antenna.

**THE COURT:** Does it use the word "antenna" to describe it?

**MR. MABEY:** My colleague is the looking right now.

**THE COURT:** Thank you.

**MR. MABEY:** The word "antenna" does not appear.

**THE COURT:** Okay. All right. I'm not sure it's very principled what I'm about to do, in a sense, because I really, I think the patent is a mess, and it's really hard to come up with a coherent way of construing it, but I'm going to construe it the way Philips wants it construed, and that is that Transmitting the group means outputting the group.

Now, part of the reason I'm doing that, when I say it's not principled, let me be also clear. It's not like the defendants are pointing to anything in the patent that compels their construction.

The reason why I'm saying it's not principled

# EXHIBIT 3

Planet Depos
We Make It Happen™

[redacted]

# Transcript of Stephen Wicker

**Date:** June 2, 2026
**Case:** Koninklijke Philips N.V. -v- Quectel Wireless Solutions Co. Ltd., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

[redacted]


[redacted] 13:59:22
13:59:26
13:59:32
13:59:36
13:59:36
13:59:38
13:59:41
13:59:48
13:59:52
13:59:55
13:59:56
14:00:00
14:00:04
14:00:04
14:00:04
14:00:07
14:00:10
14:00:13
14:00:18
14:00:20
14:00:21
14:00:25
14:00:28
14:00:32
14:00:32

[redacted]


[redacted]

14:52:57
14:53:00
14:53:02
14:53:08
14:53:11
14:53:15
14:53:19
14:53:22
14:53:24
14:53:30
14:53:31
14:53:33
14:53:36
14:53:37
14:53:40
14:53:43
14:54:04
14:54:05
14:54:08
14:54:08
14:54:09
14:54:16
14:54:19
14:54:20
14:54:21

# EXHIBIT 4

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

# REBUTTAL REPORT OF STEPHEN B. WICKER, PH.D. REGARDING NONINFRINGEMENT OF U.S. PATENT NO. 7,944,935

Dated: May 4, 2026

Dr. Stephen B. Wicker

[redacted]

[redacted]

[redacted]

[redacted]

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, and LAIRD CONNECTIVITY, INC.,<br><br>Defendants. | C.A. No. 20-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**INVALIDITY EXPERT REPORT OF HARRY BIMS, PH.D.**

Dated: April 2, 2026

Submitted by: *[signature]*
Harry Bims, Ph.D.

### D. Indefiniteness

#### 1. "the size of the first and second portions is adapted according to the delay experienced by data in each queue relative to a delay criterion for the respective queue" (claims 1, 9)

87. Although the specification states that [t]he size of the resource for each portion 90, 95 can be adapted to take into account the QoS currently being achieved for the data in each queue, for example dividing the resource in a way which gives more resource to the portion 90, 95 which is not meeting, or is furthest from meeting, any delay requirement," *see* '935 patent at 5:10-15, the specification does not inform a POSA with reasonable certainty whether the "delay experienced by data in each queue" refers to the delay experienced by: [1] all of the data packets in every queue, regardless of whether the first or second rule selects data from the queue for inclusion in the first or second portion of the group; [2] all of the data packets in each queue from which the first or second rule may select data for inclusion in the first or second portion of a buffer; [3] all of the data packets in only the queues from which the first or second rule actually selects data packets for inclusion in the first or second portion of a buffer; or [4] only the data packets that are selected from the queues by the first or second rule for inclusion in the first or second portion of a buffer. The specification does not resolve this ambiguity. The claim term purports to require that portion sizes be adapted based on delay experienced "in each queue" relative to "a delay criterion for the respective

queue," but the specification's relevant disclosure — at 5:10-15 — describes adaptation based on whether a portion is "not meeting, or is furthest from meeting, any delay requirements" — a standard measured at the portion level, not the queue level. A POSA would not know how to translate a per-queue delay measurement into a portion-size adaptation decision where multiple queues may contribute to the same portion and where the two rules may draw from overlapping sets of queues.

88. A POSA would understand that the generic QoS delay requirement can be a predetermined average time for transmitting a packet or "the minimum time for the transmission of that packet," as confirmed by Mr. Bucknell. *See* Bucknell Dep. At 61:9-22, 62:4-12. The section of the specification describing QoS, *see* '935 patent at 5:10-15, thus refers to some form of comparison to threshold amounts of time. However, it is not clear to a POSA how a portion size can be made to meet a delay requirement. The specification lacks any description of algorithm, procedure, or mechanism by which the sizes of the first and second portions (90, 95) would be calculated, adjusted, or otherwise adapted to meet the QoS delay requirements of the queues 50, or even how such adaptation would be constrained by the overall size of the output buffer 80. The specification does not describe what happens when the size of the second portion is based on a change to the first portion, or vice versa. Specifically, the specification does not disclose whether the first and second portions are adapted jointly or independently, whether

there is a fixed total resource that constrains their combined size, or what algorithm governs the tradeoff between them when the delay criteria for queues contributing to the first portion conflict with the delay criteria for queues contributing to the second portion.

89. As illustrated in FIG. 2, there are six queues (50) but only two portions (90, 95). The queues (50) are distinct from the first and second portions (90, 95), and there is no one-to-one correlation between the queues (50) and the first and second portions (90, 95). Independent claims 1 and 9 recite that both the first rule and the second rule select from "one or more of the queues" when populating the first and second portions. The specification provides no explanation as to how to evaluate the "QoS currently being achieved for the data in each queue" in the event a portion has been populated with data with different QoS requirements or what happens when the first and second rules apply to overlapping queues.

**2. "means for assembling a group of data packets …." (claim 9)**

90. This is also a means-plus-function claim limitation, which requires identifying both the function and the corresponding structure associated with the "means for assembling …." (entire claim term reproduced in full in the table in paragraph 93).

91. A POSA would have understood the portion of the claim starting with "wherein the size of the first and second portions is adapted …" describes the functionality of the term "means for assembling a group …." The specification describes the functions of populating the group and adapting the size of the first and second portions of the group as both being functions that are performed by the same means element: "control means 110." '935 patent, at 3:16-55. Specifically, the specification describes "control means 110" as controlling routing of data via switches 60 and 70 to populate a first portion 90 and second portion 95 of an output buffer 80, and states that "[t]he control means 110 may adapt the size of the first portion 90 and the second portion 95." *See* '935 patent, at 3:16-55.

92. The specification does not indicate that the "means for transmitting the group" is what performs the function of adapting the size of the first portion 90 and the second portion 95. Therefore, a POSA would have understood that the "means for assembling a group of data packets," which performs the function of populating the first and second portions of the group, also performs the function of adapting "the size of the first and second portions according to the delay experienced by data in each queue relative to a delay criterion for the respective queue."

93. Additionally, the specification states that the control means 110 is a microprocessor. *See* '935 patent at 3:21-23. I understand that for

computer/processor based means-plus-function limitations, the specification must provide an algorithm for carrying out each of the claimed functions, and I am informed that the structure (algorithm) must be clearly linked to the function recited in the claim. However, the specification does not disclose an algorithm that is clearly linked to the function of "wherein the size of the first and second portions is adapted according to the delay experienced by data in each queue relative to a delay criterion for the respective queue." Therefore, it is my opinion that a POSA would not understand how to perform the function of adapting the size of the first and second portions according to the delay experienced by data in each queue relative to a delay criterion for the respective queue. Specifically, the specification does not disclose the following algorithmic steps that would be required to perform this function: (1) how to measure or calculate the delay experienced by data in each queue; (2) how to compare that measured delay to the delay criterion for the respective queue; (3) how to translate the result of that per-queue comparison into a specific portion-size decision; (4) how to resolve conflicts when multiple queues contribute to the same portion and have different delay criteria; or (5) how to prevent starvation of lower priority queues when the first portion size is expanded in response to delay criterion triggers. Each of these steps is essential to performing the claimed adaptation function, and each is absent from the specification.

94. I understand that Philips has not identified any corresponding structure for "wherein the size of the first and second portions is adapted according to the delay experienced by data in each queue relative to a delay criterion for the respective queue." Rather, Philips has construed this as having a "plain and ordinary meaning" of "a first portion of the group of data packets consists of data packets selected from one or more of the queue stores according to a first rule and a second portion of the group of data packets consists of data packets selected from one or more of the queue stores according to a second rule." Philips's proposed construction effectively reads the adaptation function out of the claim entirely, substituting a description of the selection rules for the adaptation requirement. This confirms that the specification provides no algorithm for performing the adaptation function — if such an algorithm existed and was clearly linked to the function, Philips would have identified it as corresponding structure rather than proposing a construction that eliminates the function.

95. Since every limitation in claim 9 recites "means for …," each such limitation is presumed to be a means-plus-function limitation. My understanding is that unless this presumption is rebutted, a means-plus-function limitation must be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. I am informed that Philips has not rebutted this presumption.

96. Therefore, it is my understanding that the function of "wherein the size of the first and second portions is adapted according to the delay experienced by data in each queue relative to a delay criterion for the respective queue" must also be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. Thus, a POSA would find that Philips proposed function and structure for "means for assembling …" is incomplete since it does not provide an identification of structure for the function of "wherein the size of the first and second portions is adapted according to the delay experienced by data in each queue relative to a delay criterion for the respective queue."

97. To the extent Philips relies on '935 patent at 5:1-9, it does not mention the claimed delay experienced by data. Rather, it discloses taking into account the "amount of data in each queue" and "QoS requirements." *See* '935 patent at 5:1-9. Thus, the specification does not disclose how to perform the function of adapting the size of the first and second portions according to the delay experienced by data in each queue relative to a delay criterion for the respective queue:

> 11) The size of the resource for each portion 90, 95 can be adapted to take into account the amount of data in each queue, for example dividing the resource in a way which is proportional to the amount of data in the relevant queues.

*See* '935 patent at 5:1-4.

> 12) The size of the resource for each portion 90, 95 can be adapted to take into account the QoS requirements of the data in each queue, for

> example dividing the resource in a way which gives more resource to the selection which has the strictest QoS requirements.

*See* '935 patent at 5:5-9.

98. Example 11 at column 5, lines 1-4 measures data quantity — the amount of data in each queue — not the wait time encountered by data relative to a per-queue delay threshold. Example 12 at column 5, lines 5-9 compares predetermined QoS service specifications to each other — not actual experienced delay to a per-queue criterion. Neither example constitutes an algorithm for the claimed adaptation function.

99. Column 5, lines 1-4 of the specification does not mention anything regarding "delay criterion." Although lines 5-9 references "QoS requirements," this section of the specification does not describe delay experienced by data in a queue but instead refers to comparing QoS requirements of the queues. Examples of well-known QoS requirements included guaranteed bit rates, which are minimum amounts of reserved resource bandwidth, and non-guaranteed bit rate, which does not guarantee any reservation of resource bandwidth. Therefore, dividing the resources in a way which gives more resources to the selection which has the strictest QoS requirements would include giving more resources to data with guaranteed bit rates than to data with non-guaranteed bit rates. This would also include dividing the resources to allow more resources to data with higher guaranteed bit rates than data with lower guaranteed bit rates. Neither situation

involves comparing the delay experienced by data in the queues relative to a delay criterion for the respective queues.

100. Another example of a QoS requirement is what Mr. Bucknell described as "the minimum time for the transmission of that packet." *See* Bucknell Dep. at 61:9-22, 62:4-12. A QoS ***delay*** requirement is a predetermined maximum duration of time by which a data packet should be transmitted. Therefore, a POSA would have understood the reference to the strictest QoS requirements as a comparison of a predetermined maximum duration of time for the first portion to a predetermined maximum duration of time for the second portion to see which predetermined maximum duration of time is lower. However, such a comparison does not involve a comparison of actual wait time encountered (delay experienced) by data in each queue. The distinction is critical: comparing two QoS specifications to each other tells a POSA which service class has stricter requirements, but it does not tell a POSA how much data has actually been waiting in each queue, whether that accumulated wait time has exceeded any per-queue threshold, or how to translate that comparison into a specific portion-size decision. The specification discloses none of these steps.

101. Column 5, lines 5:10-15, describes taking "into account the QoS currently being achieved for data in each queue" and provides the example of a

comparison to the QoS currently achieved for "portion 90, 95" to "any delay requirements":

> 13) The size of the resource for each portion 90, 95 can be adapted to take into account the QoS currently being achieved for the data in each queue, for example dividing the resource in a way which gives more resource to the portion 90, 95 which is not meeting, or is furthest from meeting, any delay requirements.

*See* '935 patent at 5:10-15. As Mr. Bucknell testified, a QoS delay requirement can be a predetermined average time for transmitting a packet or the minimum time for transmitting that packet. This section of the specification refers to some comparison to an unspecified threshold amount of time, with no explanation as to how the QoS currently being achieved by the first and second portions (90, 95) can be compared to the QoS delay requirements for each of the queues 50. Example 13 describes adaptation at the portion level — giving more resource to the portion "which is not meeting, or is furthest from meeting, any delay requirements" — not at the per-queue level as the claim requires. The claim's adaptation function requires measuring delay experienced by data "in each queue" relative to "a delay criterion for the respective queue" — a per-queue, not a per-portion, measurement. Example 13 collapses this per-queue measurement into a per-portion assessment without explaining how the per-queue measurements are aggregated, weighted, or otherwise processed to produce the per-portion

adaptation decision. This is the missing algorithmic step: a POSA would have no way to determine from example 13 alone how to translate per-queue delay measurements into a portion-size decision where one portion may be populated from multiple queues with distinct and potentially conflicting delay criteria.

102. Furthermore, this section of the specification, '935 patent at 5:10-15, refers to delay requirements of the first and second portions, not delay requirements of each queue. The queues (50) and the first and second portions (90, 95) are not the same thing. Nor is there necessarily a one-to-one correlation between the QoS delay requirements of the queues (50) and any delay requirements of the first and second portions (90, 95). Figure 2 of the specification, reproduced in paragraph 113 above, indicates six queues (50) but only two portions (90, 95). This structural mismatch means that a POSA cannot derive a per-queue adaptation algorithm from example 13's per-portion language without additional disclosure that the specification does not provide. The specification gives no instruction on how to map the delay criteria of six queues onto the sizing of two portions — the foundational computational step that any algorithm for this function would need to perform.

103. The independent claims recite that both the first rule and the second rule select from "one or more of the queues" when populating the first and second portions. The cited column 5, lines 10-15 of the specification does not explain how "QoS currently being achieved for the data in each queue" would be evaluated when less than all of the queues have data selected for inclusion in the first portion and second portion, or if a given portion were populated with data with different QoS requirements. Nor does this passage explain how per-queue delay measurements would be evaluated when the same queue contributes data packets to both the first and second portions under the first and second rules respectively. A POSA would have no way to determine from the specification how to evaluate per-queue delay in any of these scenarios, let alone how to translate such evaluation into a portion-size adaptation decision.

104. It is also unclear whether the "one or more of the queues according to a first rule" can overlap with the "one or more of the queues according to a second rule," or if there can be no overlap between the "one or more of the queues according to a first rule" and the "one or more of the queues according to a second rule." If there can be overlap, the specification does not explain how to evaluate the QoS currently being achieved by a given portion. The specification also does not describe what would happen if the first and second portion sizes are adjusted because both rules apply to overlapping queue(s), and as a result, the overlapping

queue contains the same data packet experiencing a delay that fails to meet the delay criterion.

105. This last scenario is particularly significant because starvation of low priority queues is precisely the problem the '935 patent identifies as the motivation for the invention. *See* '935 patent at 1:37-47. The specification's failure to disclose an algorithm that prevents this outcome when adapting portion sizes based on per-queue delay criteria means the specification has failed to provide corresponding structure for the very function that the inventors identified as central to their invention.The specification also fails to explain how to determine which of the first and second portion are furthest from meeting their QoS delay requirements, when each portion is comprised of data from multiple queues, or when data from the same queue are populated into both the first and second portion. The specification lacks any description of what happens if the first portion size is increased to the point where there is no room for the second portion in the output buffer 80, which would result in starvation of the low priority queues.

106. Column 3, lines 11-26 of the specification mostly discusses routing data packets using switches. Although this section of the specification refers to "[t]he control means 110 may also control the sizes of the first and second portions 90, 95," it does not describe how this is performed. The word "may" confirms that this is an optional requirement of the control means 110, yet it is lacking any

written description of the algorithm used to decide whether or not the sizes of the first and second portions are controlled by the control means 110, and lacking any written description of the algorithm in the control means 110 that performs the method of controlling the sizes of the first and second portions. this optional requirement. A POSA would recognize that a statement that the control means "may" perform a function is not equivalent to a disclosure of the structure — i.e., the algorithm — by which it performs that function. Column 3, lines 27-45 of the specification refers to selection criteria but does not describe adapting the sizes of the first and second portions (90, 95).

107. Column 3, lines 45-55 of the specification cited refers to adapting "sizes of the first and second portions," the '935 patent differentiates between sizing: [1] "according to the prevailing mix of priorities of the data packets stored in the bank 40;" [2] "*or* according to the amount of data in the queue stores 50;" [3] "*or* according to the delay experienced by data in each queue store 50 relative to a delay criterion for the respective queue;" [4] "*or* according to a received signal indicative of a mix of first and second portions." The language "relative to a delay criterion for the respective queue" does not modify any of the options other than option [3]. Instead, this language only modifies "according to the delay experienced by data in each queue store 50." It would not make sense to say "[t]he control means 110 may adapt the size of the first portion 90 and the second portion

95 according to the prevailing mix of priorities of the data packets stored in the bank 40 … relative to a delay criterion for the respective queue." Further, this section of the specification does not explain how to adapt the sizes of the first and second portions according to the delay experienced by data in each queue store 50 relative to a delay criterion for the respective queue.

108. Column 3, line 64 to column 4, line 8 of the does not describe adapting the size of the first portion 90 and the second portion 95. Rather, this section of the specification discusses selecting the highest priority data for the first portion 90 and selecting "data packets having a lower priority, or lower priorities" for the second portion 95.

109. Column 4, lines 8-12 of the specification also does not discuss adapting sizes of the first portion 90 and second portion 95. This section of the specification states that "[i]n general we can assume that the resources available for the first portion 90 and the second portion 95 are both known before the multiplexing operation is carried out, for example in terms of the number of PDU's which can be transmitted." While lines 12-17 of column 4 refers to adapting the sizes of the first portion 90 and second portion 95, this sentence does not discuss delay. Rather, this sentence simply states, "if the total available resource depends in any way on the outcome of the multiplexing, it may be necessary to consider the outcome of the multiplexing for a number of possible resource allocations and then

select one of them." Rather than disclosing a specific algorithm, the specification acknowledges that adaptation "may be necessary" and suggests that the implementer should "consider" multiple resource allocations and "select one of them," without disclosing how the decision on necessity is made.

110. Column 4, lines 18-35, 39-67 of the specification also does not describe adapting the size of the first portion 90 and the second portion 95. Although column 4, lines 36-38 of the specification states that "if the resource available for the first portion 90 is not fully used, then the unused resource can be made available for the second portion 95," this statement has nothing to do with adapting sizes based on delay experienced relative to a delay criterion. This passage describes a passive reallocation of unused resources — not an active adaptation of portion sizes based on delay experienced relative to a per-queue delay criterion.

111. Column 4, lines 12-17 of the specification states that "[i]n the case that the resources are not known exactly in advance, for example if the total available resource depends in any way on the outcome of the multiplexing, it may be necessary to consider the outcome of the multiplexing for a number of possible resource allocations and then select one of them." This statement does not, however, explain how to adapt the sizes of the first and second portions based on delay experienced relative to a delay criterion in a queue. This passage further

underscores the specification's failure: it acknowledges that portion-size determination may require iterating over multiple possible resource allocations, but provides no algorithm for generating those allocations, evaluating them, or selecting among them — and provides no connection to per-queue delay measurements or per-queue delay criteria.

112. For the reasons stated above, the specification does not disclose how to perform the function of adapting the size of the first and second portions according to the delay experienced by data in each queue relative to a delay criterion for the respective queue. Accordingly, the claim term "means for assembling …" is indefinite for lack of corresponding structure because a POSA would not have viewed the '935 patent as disclosing an algorithm that corresponds to and will perform all the recited functions of "means for assembling …"

### E. Lack of Written Description

#### 1. "one or more of the queues" / "one or more of the queue stores"

113. I understand that in order to satisfy the written description requirement, each element of the claimed invention must be actually or inherently disclosed in the specification, and it is not sufficient that a missing claim element may be obvious from the specification.

114. It is my opinion that the '935 patent lacks written description with respect to the claim limitations "one or more of the queues" in claim 1 and "one or

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

KONINKLIJKE PHILIPS N.V.,

Plaintiff,

v.

QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,

Defendants.

C.A. No. 20-cv-1710-CFC

[redacted]

**QUECTEL'S RESPONSE IN OPPOSITION TO
<u>PHILIPS'S MOTION IN LIMINE NO. 2</u>**

Philips incorrectly asserts that Dr. Wicker argues claim construction to the jury and relies on constructions the Court "rejected." He does neither. Dr. Wicker quotes this Court's constructions and applies them, offering the plain-and-ordinary-meaning application testimony that *Markman* permits. Philips's two "examples" prove the point: for the '935 patent, Dr. Wicker recites the Court's construction verbatim and distinguishes an internal chip-to-chip transfer from "transmission over the network" after Philips's own expert injected this into his infringement analysis (Ex. 1 at ¶¶ 46, 59; Ex. 2 at ¶ 35); and for the '271 patent, the Court *declined to construe* "specified power level," so there is no adopted construction to contradict.

Quectel does not dispute that claim construction is for the Court and that experts may not argue construction to the jury or contradict the Court's constructions. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996); *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Those rules bind Philips's experts equally, so any order should be reciprocal. But Philips's remaining authority does not support its motion: *Finjan* and *Intuitive Surgical* exclude only testimony that "attempt[s] to resurrect a claim construction that the district court already rejected." *Finjan, Inc. v. Secure Comput. Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010); *Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 369 (D. Del. 2021). The questions here are simply whether Dr. Wicker argues

construction and whether any construction was rejected. Both answers are no.

**Dr. Wicker applies the Court's constructions and does not contradict them.** Philips's lead example refutes its motion. The Court construed the '935 term "transmitting the group" to mean "outputting the group"—adopting Philips's proposal—and construed the § 112(6) structure as "an output and equivalents thereof." (D.I. 206 at 2.) Dr. Wicker acknowledges and applies the Court's construction. Contrary to Philip's assertion (Mot. at 3), Dr. Wicker does not require "over-the-air" or "over-a-network" transmission. That phrase entered the case through *Philips's* expert: Dr. Mahon opined that data is sent to the transceiver "for eventual transmission over the network" (Ex. 1 ¶ 59; Ex. 2 ¶ 35), and Dr. Wicker responded that Mahon's hedge concedes the point—"a preparatory step … is not the same as transmitting the group itself." (Ex. 3 ¶ 228.) Whether an internal transfer performs the construed step is a fact question for the jury, not a construction dispute. *See Cordis*, 561 F.3d at 1337. Philips may cross-examine but it may not exclude.

**The terms Philips identifies were either not construed, were reserved for later, or were stipulated.** Philips's '271 example fails at the outset as the Court *declined to construe* "second specified power level (Pa or Pn)." (D.I. 206 at 2.) The Court declined to *adopt* Quectel's "specified by the base station" proposal, but it adopted no competing construction. Instead, it left the term to its plain meaning for the jury. A term left to its plain meaning cannot be "contradicted," so *Finjan* and

*Intuitive Surgical* do not apply. Philips also overstates the ruling. The Court found only that nothing in the specification says "it is the base station that *uses that ratio*" to determine the level, while acknowledging the power ratio "does come from the base station" and is "necessarily part of the ultimate level determination" (D.I. 190 at 50–51.) Testimony describing the base station's role is thus consistent with the Court's remarks and should not be excluded.

Philips's footnote complaints fare no better. "Transmitting one or more first signals … simultaneously" was *reserved* for the Pretrial Conference, with a live indefiniteness hearing set. (D.I. 206 at 3; D.I. 190 at 87–89.) And "queue" and "queue store" were *stipulated* (D.I. 206 at 4); any perceived departure is a matter for cross, not a motion *in limine*. For any remaining deferred or not yet construed disputed terms, there can be no dispute on offering a contradictory opinion.

Notably, Philips did not move to *Daubert* any of these allegedly contradictory opinions. As shown in Quectel's summary judgment motion (D.I. 300), it is Philips that is ignoring the Court's construction of "delay experienced." Philips and their expert, Dr. Mahon, are trying to relitigate a construction that they lost by continuing to argue that their expressly rejected construction somehow meets the Court's adopted construction. Philips's MIL No. 2 should be denied. Any relief should be a single, reciprocal instruction binding *both* sides' experts to the Court's constructions and reserving the deferred terms for the Pretrial Conference.

Dated: July 10, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive

Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026**,** I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Beth Ann Swadley (No. 6331)<br>Parks Kingery (No. 7416)<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>bswadley@ycst.com<br>pkingery@ycst.com<br><br>Kevin M. Littman<br>Lucas I. Silva<br>Thomas Relyea<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Tel: (617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br>tom.relyea@foley.com<br><br>Alexis K. Juergens<br>FOLEY & LARDNER LLP<br>95 S State Street, Suite 2500<br>Salt Lake City, UT 84111<br>Tel: (801) 401-8900<br>ajuergens@foley.com<br><br>Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800 | Karen E. Keller (No. 4489)<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 298-0700<br>kkeller@shawkeller.com<br><br>***Attorney for Defendant Eagle Electronics Inc.***<br><br>Kenneth L. Dorsney (No. 3726)<br>Cortlan S. Hitch (No. 6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Blvd, Suite 100<br>Wilmington, DE 19803<br>Tel: (302) 888-6988<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>Kirk T. Bradley<br>Lauren Griffin<br>ALSTON & BIRD LLP<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203<br>Tel: (704) 444 -1030<br>kirk.bradley@alston.com<br>lauren.griffin@alston.com<br><br>Nicolette Nunez<br>ALSTON & BIRD LLP<br>1201 West Peachtree St., Suite 4900<br>Atlanta, GA 30309<br>Tel: (404) 881-7851<br>nicolette.nunez@alston.com |

| | |
|---|---|
| Chicago, IL 60654-5313<br>Tel: (312) 832-4359<br>ethompson@foley.com<br><br>Sarah E. Rieger<br>FOLEY & LARDNER LLP<br>777 E. Wisconsin Ave.<br>Milwaukee, WI 53202<br>Tel: (414) 271-2400<br>srieger@foley.com<br><br>***Attorneys for Plaintiff Koninklijke Philips N.V.*** | ***Attorneys for Defendant Xirgo Technologies, LLC***<br><br>John C. Phillips, Jr. (No. 110)<br>David A. Bilson (No. 4986)<br>PHILLIPS, MCLAUGHLIN & HALL, P.A.<br>1200 N. Broom St<br>Wilmington, DE 19806<br>Tel: (302) 655-4200<br>jcp@pmhdelaw.com<br>dab@pmhdelaw.com<br><br>J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606-3912<br>Tel: (312) 655-1500<br>aron.carnahan@huschblackwell.com<br><br>***Attorneys for Defendant Ezurio LLC f/k/a Laird Connectivity, Inc.***<br><br>Chad S.C. Stover (No. 4919)<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3474<br>chad.Stover@btlaw.com<br><br>Craig D. Leavell<br>BARNES & THORNBURG LLP<br>One N. Wacker Drive Suite 4400<br>Chicago, IL 60606-2833<br>Tel: (312) 357-1313<br>craig.leavell@btlaw.com<br><br>Eric J. Beste<br>BARNES & THORNBURG LLP<br>655 W. Broadway, Suite 1300 San |

| | |
|---|---|
| | Diego, CA 92101<br>Tel: (619) 321-5015<br>eric.beste@btlaw.com<br><br>***Attorneys for Defendant CalAmp Corp.*** |

Dated: July 10, 2026

FISH & RICHARDSON P.C.

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# EXHIBIT 1

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# EXHIBIT 2

[redacted]

[redacted]

[redacted]

[redacted]

# EXHIBIT 3

[redacted]

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**REBUTTAL REPORT OF STEPHEN B. WICKER, PH.D.**
**REGARDING NONINFRINGEMENT OF U.S. PATENT NO. 7,944,935**

Dated: May 4, 2026

______________________________
Dr. Stephen B. Wicker

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

# PLAINTIFF'S REPLY IN SUPPORT OF MOTION IN LIMINE #2 TO EXCLUDE EXPERT TESTIMONY ARGUING CLAIM CONSTRUCTION OR EVIDENCE CONTRADICTING THIS COURT'S CLAIM CONSTRUCTIONS

Quectel does not dispute the governing law, but only whether Dr. Wicker violates it. As previously indicated, he does.

**"Transmit" ('935 Patent).** Quectel calls Dr. Wicker's "over-a-network" opinion a mere response to Dr. Mahon's opinion. But at his deposition, when directly asked whether "transmitting the group" required "transmitting out over a network," he definitively answered: "Yes. Actually transmitted by the device." Mot. Ex. 3, 179:1–4. This is Quectel's own rejected construction (*see* D.I. 155 at 23) restated as Dr. Wicker's opinion, not the Court's construction (*see* D.I. 206 at 2).

**"Specified Power Level" ('271 Patent).** Quectel argues the Court merely "declined to construe," so there is nothing to contradict. But the Court did not simply decline—it rejected the premise underlying Quectel's proposal: "there's nothing in the written description that says that it is the base station that uses that ratio to determine the power level, specify the power level. I'm not going to hear any more argument." Mot. Ex. 2, 51:10–14. Despite this rejection, Dr. Wicker provides opinions directly contrary. *See* Ex. 1, ¶¶ 67, 72, 73, 111, 112, 132, 140-143, 180, 202, 208-211, 234. *Intuitive Surgical* controls: declining an affirmative construction does not revive the narrower reading already rejected. 549 F. Supp. 3d 362, 369 (D. Del. 2021).

A generic, reciprocal instruction will not cure this. Only exclusion will. The Court should grant Motion in Limine No. 2.

*Of Counsel*:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Thomas M. Relyea (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Dated: July 14, 2026

*/s/ Adam W. Poff*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

# EXHIBIT 17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION IN LIMINE #3 TO EXCLUDE OPINIONS OR ANALYSIS PROVIDED BY EXPERTS IN OTHER LITIGATIONS INVOLVING THE ASSERTED PATENTS**

# TABLE OF CONTENTS

A. Expert Evidence from the ITC Case Is Inadmissible Hearsay ........................1

B. The Danger of Unfair Prejudice Outweighs the Probative Value of Admitting this Evidence.........................................................................................................2

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Astrazeneca AB v. Zydus Pharmaceuticals (USA) Inc.*,
No. 1:18-cv-664-RGA (May 6, 2021, D. Del.) ....................................................1

*Blancha v. Raymark Indus.*,
972 F.2d 507 (3d Cir. 1992)..........................................................................3

*Kirk v. Raymark Indus., Inc.*,
61 F.3d 147 (3d Cir. 1995)............................................................................2

*Orexo AB v. Actavis Elizabeth LLC*,
424 F. Supp. 3d 371 (D. Del. 2019)...............................................................3

*Pernix Ireland Pain Dac v. Alvogen Malta Operations. Ltd.*,
316 F. Supp. 3d 816 (D. Del. 2018)...............................................................2

**Rules**

Fed. R. Civ. P. 26(a)(2)..............................................................................2, 3

Fed. R. Evid. 403 ......................................................................................1, 3

Fed. R. Evid. 801 ......................................................................................1, 2

Pursuant to Federal Rules of Evidence ("FRE") 801 and 403, the Court should exclude any testimony or argument concerning opinions or analysis provided by experts in other litigations involving the Asserted Patents.

For instance, Quectel has designated testimony of Philips' expert Dr. Brogioli from ITC Inv. No. 337-TA-1240 ("ITC Case") though he is not an expert in this case. As explained in MIL#1, the ITC Case involved different claim constructions and different evidence. Quectel's damages expert also relies on opinions of Mr. VanderVeen and Dr. Shampine, who were retained by Thales and Telit in the ITC Case and in separate litigation. Quectel never identified these experts in its disclosures, nor disclosed the testimony on which it intended to rely.

**A. Expert Evidence from the ITC Case Is Inadmissible Hearsay**

Dr. Brogioli's ITC testimony ("Brogioli Evidence") is inadmissible hearsay to which no exception applies. At the meet-and-confer, Quectel contended that this evidence constitutes a "party admission." That is incorrect.

In *Astrazeneca AB v. Zydus Pharmaceuticals (USA) Inc.*, No. 1:18-cv-664, plaintiff argued that expert testimony from another litigation should be admitted as an adoptive admission per FRE 801(d)(2)(B). Judge Andrews disagreed, holding that "sponsored expert testimony is not attributed to its sponsor, and it does not become an adoptive admission simply because the party advocates for its acceptance in a different case," and excluded the evidence. (Ex. 1 at 2).

The Brogioli Evidence is likewise inadmissible under FRE 801(d)(2)(C) & (D). Testimony from a previous trial by an expert is not admissible under FRE 801(d)(2)(C) because "an expert witness is not subject to the control of the party opponent with respect to consultation and testimony [they are] hired to give, [thus] the expert witness cannot be deemed an agent." *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995). Courts apply *Kirk* to FRE 801(d)(2)(D), finding its rationale "clearly broad enough to require that the same analysis apply" and that experts "ordinarily will not be deemed to be agents or employees of the party that retained them." *Pernix Ireland Pain Dac v. Alvogen Malta Operations Ltd.*, 316 F. Supp. 3d 816, 823 (D. Del. 2018).

Mr. VanderVeen's and Dr. Shampine's reports ("VanderVeen/ Shampine Evidence")[1] are even further removed. Neither expert was retained by Philips, but rather by Thales and Telit, who are not parties to this case. Their statements are undisclosed under Fed. R. Civ. P. 26(a)(2) and are hearsay with no applicable exception. *See also* D.I. 313, §§ III(E) & IV(E).

**B. The Danger of Unfair Prejudice Outweighs the Probative Value of Admitting this Evidence**

Even if the Court were to find the Brogioli or VanderVeen/Shampine Evidence non-hearsay and relevant, the probative value is substantially outweighed

[1] *See* D.I. 319-39 (Ex. 57), ¶¶210, 218, 222, 227-228, 233, and Table 4; D.I. 319-48 (Ex. 66), ¶¶128, 144, 158, 172-73, 195 Figures 21-22, and Table 2.

by the danger of unfair prejudice and juror confusion under Fed. R. Evid. 403.

"[C]ertain types of evidence are routinely excluded" under Rule 403, including "[e]vidence relating to previous litigations involving the parties." *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992). In *Orexo AB v. Actavis Elizabeth LLC*, this Court excluded a prior judicial ruling finding the same patent valid and infringed by a different drug, holding it would "unfairly prejudice the defendants" and confuse the jury, risking a "trial-within-a-trial" on collateral issues. 424 F. Supp. 3d 371, 375 (D. Del. 2019). The same concerns apply here, particularly because the ITC Case involved different claim constructions and the Brogioli Evidence concerns the disputed claim language. (*See e.g.*, Ex. 2)

The VanderVeen/Shampine Evidence is even more prejudicial and less probative. It was offered in support of non-parties. Quectel cites [redacted]

Finally, the prejudice is compounded by Quectel's failure to disclose this evidence as required by Fed. R. Civ. P. 26(a)(1)(A)(i) and 26(a)(2)(A). Quectel never disclosed these witnesses, depriving Philips of any opportunity to respond.

/s/ Adam W. Poff
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

*Of Counsel*:

Eley O. Thompson (*pro hac vice*)
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Thomas M. Relyea (*pro hac vice*)
Foley & Lardner LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
Foley & Lardner LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Dated: July 2, 2026

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA AB,<br><br>Plaintiff,<br><br>v.<br><br>ZYDUS PHARMACEUTICALS (USA) INC.,<br><br>Defendant. | : | Civil Action No. 1:18-cv-664-RGA |

ORDER ON MOTIONS IN LIMINE

In preparation for the pretrial conference scheduled for May 7, 2021, I rule on the four motions in limine presented in the proposed pretrial order.

PMIL. Plaintiff says Dr. Savic's supplemental expert report at ¶¶ 8-10 and 19-21 exceeded the scope permitted by the order allowing the supplemental report. Plaintiff also states that Dr. Savic is not qualified to offer the opinions in the last three paragraphs. (D.I. 136, Ex. P, at 217 of 444). Defendant's response is that the six paragraphs are responsive to Dr. Thisted's supplemental opinions, and that the last three paragraphs are within Dr. Savic's biostatistician expertise. (*Id*. at 269-71 of 444).

As for the first three paragraphs, they seem to be fairly basic background for what Dr. Savic says thereafter. As for the second three paragraphs, they seem to be responsive to what Dr. Thisted said in his supplemental report; I do not believe they are beyond Dr. Savic's expertise,

although Plaintiff can certainly cross-examine her about that. I do not see a violation of the relevant court order.[1] The motion in limine is **DENIED**.

DMIL #1. Defendant seeks to exclude testimony and evidence that relate to positions it and its experts took in relation to the patent-in-suit (as prior art) in District of New Jersey litigation involving other patents. (D.I. 136, Ex. Q, at 320 of 444). The evidence, which is described as trial transcripts, expert reports, invalidity contentions, proposed findings of fact and conclusions of law, and "support documents" (consisting altogether of about fourteen proposed exhibits) is asserted to be irrelevant, hearsay, and in any event excludable under Rule 403. (*Id.*). Plaintiff responds asserting that it seeks to use Defendant's "admissions." (*Id.* at 331 of 444). It argues that the expert testimony should be admitted as an adoptive admission or under the residual exception to the hearsay rule. (*Id.* at 333 of 444). It notes Defendant's focus on what the experts said in the prior litigation, and says the other items are conceded not to be hearsay and are not hearsay. (*Id.*).

I am not too concerned about relevancy and Rule 403, because I expect I can ignore the irrelevant and the "unfair prejudice." Hearsay, though, is an issue. It applies to the trial transcripts, expert reports, the court's findings of fact and conclusions of law, and perhaps to the "support documents," whatever they may be. On the other hand, invalidity contentions and proposed findings of facts and conclusions of law (PTX0154 & PTX0155) are statements of Defendant's authorized agents within the scope of their agency. They are admissions. I think the law is that sponsored expert testimony is not attributed to its sponsor, and it does not become an adoptive admission simply because the party advocates for its acceptance in a different case.

[1] I also note that Plaintiff had the opportunity to depose Dr. Savic after the supplemental report. (D.I. 136 at 224 of 444). Even if there were a violation of the court order, there would be no prejudice to Plaintiff.

The residual exception reference is an undeveloped throw-away argument. Thus, the motion in limine is **GRANTED** as to trial transcripts, expert reports, and the New Jersey court's opinion,[2] **DENIED** as to PTX0154 & PTX0155, and **DEFERRED** as to the "support documents," about which the parties should meet and confer to see if there remains a dispute about them. If there is, the parties should present the dispute in some format so that I can resolve it before trial.

DMIL #2. Defendant seeks to exclude evidence of reissue proceedings that were abandoned. (D.I. 136 at 352 of 444). On reply, Defendant emphasizes that it is seeking to preclude "argument," not evidence.[3] (*Id*. at 410 of 444).

It seems to me that what is or is not a persuasive argument to the court in a bench trial is something that can be addressed in the post-trial briefing. The motion in limine is **DENIED**.

DMIL #3. Defendant seeks to prevent one of Plaintiff's experts from telling the invention story[4] of WO '128, which appears to claim some C-glucosides. (D.I. 136 at 413 of 444). Defendant says it is irrelevant to obviousness (which it says concerns "the selection of dapagliflozin from the genus of C-glucosides"), or, if it is relevant, that it should be excluded under Rule 403 because it will confuse me as to what is or is not prior art. (*Id.* at 414-15 of 444). Plaintiff responds that what led up to WO '128 is relevant to non-obviousness including secondary considerations. (*Id.* at 433 of 444). Defendant replies that, since WO '128 is prior art,

[2] Simply because court opinions are published does not make the contents non-hearsay when the opinion is offered to prove what is said in the opinion is true.
[3] I note that Defendant literally did seek to "preclude Plaintiff from presenting evidence" in its motion. (D.I. 136 at 352 of 444).

[4] As a side note, I feel fairly confident that in more than fifty patent trials, I have not heard an "invention story" told by someone who was not an inventor. Perhaps the hearsay rules have something to do with that.

and the starting point for the invention story is the prior art, the invention story of WO '128 is irrelevant and a waste of time. (*Id.* at 439 of 444).

I tend to think that the invention story of WO '128 is generally not the invention story of the asserted patent, but that does not mean it is irrelevant. I expect Plaintiff's theory is something like, the story tends to show a problem that people were trying to solve, the difficulty in doing so, and that WO '128 was not a complete solution, with the inference that finding a complete solution was not so apparent. In that sense, some history may be relevant. In addition, at a broader level, the content and the teachings of the prior art are relevant, not just to obviousness, but perhaps also to enablement, which Defendant has on its laundry list of invalidity defenses. And I think, with the able advocacy of Defendant's counsel, I can probably avoid becoming confused about what is or is not prior art. Thus, the motion in limine will be **DENIED.**

IT IS SO ORDERED this 6th day of May 2021.

/s/ Richard G. Andrews
United States District Judge

# EXHIBIT 2

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

KONINKLIJKE PHILIPS N.V.,

Plaintiff,

v.

QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,

Defendants.

C.A. No. 20-cv-1710-CFC

[redacted]

**QUECTEL'S RESPONSE IN OPPOSITION TO
PHILIPS'S MOTION IN LIMINE NO. 3**

Philips asks this Court to suppress [redacted] concerning the same patent and same accused Quectel products at issue in this case. [redacted] in its pre-and-post-hearing briefing, and built its infringement and domestic-industry case on him at the International Trade Commission. Its own briefs submitted in the ITC invoked his analysis hundreds of times. Having lost on the '935 patent and declined to appeal, Philips now seeks to prevent Quectel from [redacted]. Rule 801 does not permit that result, and neither does Rule 403. MIL No. 3 also cannot be squared with what this Court already told the parties. At the *Markman* hearing, the Court addressed Philips' shifting positions between the ITC and this case on the record. The Court stated that Philips' conduct "bothers me," that "there's gamesmanship," and—critically—that "cross-examination at trial [may] take full advantage of any statements that Philips or an agent of Philips made in front of the ITC." The Court found that such use "seems to me admissible under the Rules of Evidence," and said: "I'm going to let it go." D.I. 190 at 125:19–126:3. [redacted] A party that quotes, endorses, and litigates to judgment on its expert's specific opinions has "manifested that it adopted or believed [them] to be true." Fed. R. Evid. 801(d)(2)(B).

[redacted] **sworn ITC testimony is admissible against Philips.** Because

[redacted]. A party that calls an expert to prove a fact adopts that expert's testimony on the point: "[I]f the party has called the expert as a witness … to prove a particular fact and the witness has so testified, the party will be held to have adopted the expert's testimony on that point as an admission." *Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*, 316 F. Supp. 3d 816, 824–25 (D. Del. 2018); Fed. R. Evid. 801(d)(2)(B). [redacted] Courts admit exactly this evidence: a party's own prior-litigation expert positions "are not hearsay. They are admissions." *Abstrax, Inc. v. Dell, Inc.*, 2009 WL 10677355, at *1 (E.D. Tex. Oct. 9, 2009) (denying a motion to exclude a party's prior-patent-litigation expert testimony); *see also* Fed. R. Evid. 801(d)(2)(B).

**Philips's own authorities confirm admission rather than bar it.** Philips's own authorities do not bar [redacted] testimony; they confirm it should come in. *Kirk* holds only that a retained expert is not automatically an "agent" under Rule 801(d)(2)(C)—a rationale extended to Rule 801(d)(2)(D). *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995); *Pernix*, 316 F. Supp. 3d at 823. It does not reach adoptive admissions under Rule 801(d)(2)(B), the ground Quectel invokes; as *Pernix* confirms, "[t]he *Kirk* decision does not address that issue." 316

F. Supp. 3d at 823. *Kirk* is also inapposite because it addressed an expert from "unrelated litigation," 61 F.3d at 164, whereas [redacted] testified about the same patent and accused products. *Astrazeneca*, Philips's cited exhibit, is no better for Philips, since the Court still admitted the party's own litigation positions as agency admissions. (Ex. 1 at 2-3.) In *Pernix*, the adoption theory failed only because the experts did not testify before the case settled, 316 F. Supp. 3d at 825. Here, [redacted]

Evidence "should be excluded under Rule 403 only sparingly," and "[t]he balance under the rule should be struck in favor of admissibility." *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992). *Blancha* is Philips's cited authority, and it reversed a decision that had treated expert testimony as excludable on Rule 403 grounds. [redacted], so it is highly probative, not collateral. Any difference in the claim constructions applied in the ITC goes to the weight of that testimony, not to its admissibility. In *Orexo*, this Court made clear the exclusion did not "prevent [Orexo] from bringing in evidence from [another] litigation." *Orexo AB v. Actavis Elizabeth LLC*, 424 F. Supp. 3d 371, 376 (D. Del. 2019). Quectel offers exactly that—prior-litigation evidence and Philips's own positions.

Finally, FRE 703 permits Quectel's expert to rely on [redacted]. It is not hearsay offered for its truth. The Court should deny MIL No. 3.

Dated: July 10, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive

Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

# CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026**,** I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Beth Ann Swadley (No. 6331)<br>Parks Kingery (No. 7416)<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>bswadley@ycst.com<br>pkingery@ycst.com<br><br>Kevin M. Littman<br>Lucas I. Silva<br>Thomas Relyea<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Tel: (617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br>tom.relyea@foley.com<br><br>Alexis K. Juergens<br>FOLEY & LARDNER LLP<br>95 S State Street, Suite 2500<br>Salt Lake City, UT 84111<br>Tel: (801) 401-8900<br>ajuergens@foley.com<br><br>Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800 | Karen E. Keller (No. 4489)<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 298-0700<br>kkeller@shawkeller.com<br><br>***Attorney for Defendant Eagle Electronics Inc.***<br><br>Kenneth L. Dorsney (No. 3726)<br>Cortlan S. Hitch (No. 6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Blvd, Suite 100<br>Wilmington, DE 19803<br>Tel: (302) 888-6988<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>Kirk T. Bradley<br>Lauren Griffin<br>ALSTON & BIRD LLP<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203<br>Tel: (704) 444 -1030<br>kirk.bradley@alston.com<br>lauren.griffin@alston.com<br><br>Nicolette Nunez<br>ALSTON & BIRD LLP<br>1201 West Peachtree St., Suite 4900<br>Atlanta, GA 30309<br>Tel: (404) 881-7851<br>nicolette.nunez@alston.com |

| | |
|---|---|
| Chicago, IL 60654-5313<br>Tel: (312) 832-4359<br>ethompson@foley.com<br><br>Sarah E. Rieger<br>FOLEY & LARDNER LLP<br>777 E. Wisconsin Ave.<br>Milwaukee, WI 53202<br>Tel: (414) 271-2400<br>srieger@foley.com<br><br>***Attorneys for Plaintiff Koninklijke Philips N.V.*** | ***Attorneys for Defendant Xirgo Technologies, LLC***<br><br>John C. Phillips, Jr. (No. 110)<br>David A. Bilson (No. 4986)<br>PHILLIPS, MCLAUGHLIN & HALL, P.A.<br>1200 N. Broom St<br>Wilmington, DE 19806<br>Tel: (302) 655-4200<br>jcp@pmhdelaw.com<br>dab@pmhdelaw.com<br><br>J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606-3912<br>Tel: (312) 655-1500<br>aron.carnahan@huschblackwell.com<br><br>***Attorneys for Defendant Ezurio LLC f/k/a Laird Connectivity, Inc.***<br><br>Chad S.C. Stover (No. 4919)<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3474<br>chad.Stover@btlaw.com<br><br>Craig D. Leavell<br>BARNES & THORNBURG LLP<br>One N. Wacker Drive Suite 4400<br>Chicago, IL 60606-2833<br>Tel: (312) 357-1313<br>craig.leavell@btlaw.com<br><br>Eric J. Beste<br>BARNES & THORNBURG LLP<br>655 W. Broadway, Suite 1300 San |

| | |
|---|---|
| | Diego, CA 92101<br>Tel: (619) 321-5015<br>eric.beste@btlaw.com<br><br>***Attorneys for Defendant CalAmp Corp.*** |

Dated: July 10, 2026

FISH & RICHARDSON P.C.

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION IN LIMINE #3 TO EXCLUDE OPINIONS OR ANALYSIS PROVIDED BY EXPERTS IN OTHER LITIGATIONS INVOLVING THE ASSERTED PATENTS**

***Astrazeneca* and *Pernix* foreclose Quectel's Argument.** Quectel claims [redacted] But *Astrazeneca* rejected this: "sponsored expert testimony is not attributed to its sponsor, and it does not become an adoptive admission simply because the party advocates for its acceptance in a different case." Mot. Ex. 1, at 2. Quectel's own cited exception proves the point: what the court admitted was the party's own filings, not expert testimony. The court excluded trial transcripts, expert reports, and witness statements (*id.* at 3), which are exactly what Quectel offers here. Further, *Pernix* does not support adoption. *Pernix* requires the proponent to show that the party *specifically* adopted each statement offered. Indeed, it rejected adoption where the party had designated the expert, served his reports, and offered him for deposition. 316 F. Supp. 3d 816, 825 (D. Del. 2018). That is far more than Quectel shows here.

**The Markman transcript.** Quectel relies on the Court's comment that cross-examining Philips with ITC statements "seems...admissible." But this did not address substantive admissibility under Rule 801(d)(2)(B). The Court never held that [redacted].

**Relatedness is irrelevant.** Quectel distinguishes *Kirk* and *Pernix* because [redacted] addressed the "same patent and accused products." But the agency rule turns on the party's control over the expert, not subject-matter overlap.

/s/ *Adam W. Poff*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

*Of Counsel*:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Thomas M. Relyea (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Dated: July 14, 2026

# EXHIBIT 18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>[redacted] |

# QUECTEL'S MOTION IN LIMINE NO. 1: PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT <u>REFERENCING THE CHINESE GOVERNMENT OR MILITARY</u>

In this United States patent infringement case, the conduct and policy of the Chinese government and military have no legal relevance to any claims. It would be unduly prejudicial and inflammatory to allow Philips to suggest that Quectel is a so-called Chinese military company. And it would create a trial-within-a-trial about the relevance and accuracy of that suggestion, which is **currently** the subject of separate litigation involving different U.S. laws and different record evidence. Philips should be precluded from introducing any evidence, testimony, or argument referencing China's government or military and Quectel's alleged ties to them.

## I. ARGUMENT

The Court should follow its typical practice precluding one party from misusing the nationality of another.[1] As this Court has recognized, a party's "'foreigner' status" can have "only marginal probative value, which is substantially outweighed by the prejudice that [the party] would suffer" if introduced at trial. *Dyson Tech. Ltd. v. Maytag Corp.*, No. 05-434 (GMS), 2007 WL 6599027, at *2 (D. Del. May 25, 2007); *see also Personalized User Model, L.L.P. v. Google Inc.*, No. 09-525-LPS, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014) (granting motion *in limine* excluding reference to a party "as a foreign company").

That maxim certainly holds true here. Quectel is currently involved in a

[1] Philips already agreed that [redacted] Ex. 1.

separate litigation about Quectel's alleged ties to the Chinese government and military. Ex. 2 at 1; Ex. 3 at 1; Ex. 4; *Quectel Wireless Sols. Co., Ltd. v. U.S. Dep't. of Def.*, No. 1:26-cv-01605-PLF, Dkt. 1 (D.D.C. May 11, 2026) (Ex. 5). Represented by different counsel, Quectel is vigorously working to prove it provides "purely civilian technology" and has no ties to the Chinese government or military. Allowing Philips to suggest otherwise here would force Quectel to then conduct a trial-within-a-trial about other U.S. laws and government processes, Quectel's compliance with those, and the full record from another pending litigation. This would prejudice Quectel and confuse the jury in this patent case.

Not only is it the subject of other pending litigation, but Quectel's identity as a Chinese company has no relevance to the claims at issue here, and therefore no place in this trial. *See* Fed. R. Evid. 401. That rationale applies with even greater force to references to the Chinese government and military, neither of which is a party to this case. *See United States v. Tao*, No. 19-20052-JAR, 2022 WL 252019, at *6-9 (D. Kan. Jan. 27, 2022) (granting motion *in limine* to exclude evidence and argument about "the Chinese governments or its goals"). Without any probative value, reference to Quectel's nationality or its alleged Chinese military ties can only serve to confuse the issues, mislead the jury, and unduly prejudice Quectel. Fed. R. Evid. 403. Indeed, such references are akin to other pejorative language this Court routinely excludes. *See, e.g.*, *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-

452-WCB, 2022 WL 2800911, at *3 (D. Del. June 27, 2022) (collecting cases).

Quectel's identity as a company based in China is not relevant to Quectel's counterclaims for **Philips's** breach of FRAND and failure to negotiate in good faith. Indeed, in discovery, Philips has not articulated any credible basis for introducing Quectel's foreign status in the context of licensing negotiations, let alone how that impacts Quectel's claims regarding Philips's behavior. After asking this Court to sever its own FRAND claims, Philips has no claims in this case regarding Quectel's negotiating behavior (whether or not supposedly related to the Chinese government).

Philips may also seek to offer the allegations of Quectel's Chinese military ties to explain Quectel's recent U.S. sales volumes, including wrongly alleging that Quectel uses another entity, Eagle Wireless Holdings, Inc. ("Eagle"), as its "onshoring" partner for "[c]ompanies in the U.S. that do not want to buy IoT modules from a Chinese company." D.I. 218 ¶ 52; *see generally id.* ¶¶ 17, 51-53. Again, the prejudicial nature of those allegations far outweighs any nominal probative value. And any reference to third party Eagle is irrelevant and will only serve to confuse the issues and further prejudice Quectel. Indeed, the Court already set a separate trial on Philips's claims against Eagle and Eagle's sales. D.I. 381.

## II. CONCLUSION

Quectel respectfully requests the Court grant its motion *in limine* No. 1.

Dated: July 2, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*

Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive

Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 732 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026**,** I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Beth Ann Swadley (No. 6331)<br>Parks Kingery (No. 7416)<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>bswadley@ycst.com<br>pkingery@ycst.com<br><br>Kevin M. Littman<br>Lucas I. Silva<br>Thomas Relyea<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Tel: (617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br>tom.relyea@foley.com<br><br>Alexis K. Juergens<br>FOLEY & LARDNER LLP<br>95 S State Street, Suite 2500<br>Salt Lake City, UT 84111<br>Tel: (801) 401-8900<br>ajuergens@foley.com<br><br>Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800 | Karen E. Keller (No. 4489)<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 298-0700<br>kkeller@shawkeller.com<br><br>***Attorney for Defendant Eagle Electronics Inc.***<br><br>Kenneth L. Dorsney (No. 3726)<br>Cortlan S. Hitch (No. 6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Blvd, Suite 100<br>Wilmington, DE 19803<br>Tel: (302) 888-6988<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>Kirk T. Bradley<br>Lauren Griffin<br>ALSTON & BIRD LLP<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203<br>Tel: (704) 444 -1030<br>kirk.bradley@alston.com<br>lauren.griffin@alston.com<br><br>Nicolette Nunez<br>ALSTON & BIRD LLP<br>1201 West Peachtree St., Suite 4900<br>Atlanta, GA 30309<br>Tel: (404) 881-7851<br>nicolette.nunez@alston.com |

| | |
|---|---|
| Chicago, IL 60654-5313<br>Tel: (312) 832-4359<br>ethompson@foley.com<br><br>Sarah E. Rieger<br>FOLEY & LARDNER LLP<br>777 E. Wisconsin Ave.<br>Milwaukee, WI 53202<br>Tel: (414) 271-2400<br>srieger@foley.com<br><br>***Attorneys for Plaintiff Koninklijke Philips N.V.*** | ***Attorneys for Defendant Xirgo Technologies, LLC***<br><br>John C. Phillips, Jr. (No. 110)<br>David A. Bilson (No. 4986)<br>PHILLIPS, MCLAUGHLIN & HALL, P.A.<br>1200 N. Broom St<br>Wilmington, DE 19806<br>Tel: (302) 655-4200<br>jcp@pmhdelaw.com<br>dab@pmhdelaw.com<br><br>J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606-3912<br>Tel: (312) 655-1500<br>aron.carnahan@huschblackwell.com<br><br>***Attorneys for Defendant Ezurio LLC f/k/a Laird Connectivity, Inc.***<br><br>Chad S.C. Stover (No. 4919)<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3474<br>chad.Stover@btlaw.com<br><br>Craig D. Leavell<br>BARNES & THORNBURG LLP<br>One N. Wacker Drive Suite 4400<br>Chicago, IL 60606-2833<br>Tel: (312) 357-1313<br>craig.leavell@btlaw.com<br><br>Eric J. Beste<br>BARNES & THORNBURG LLP<br>655 W. Broadway, Suite 1300 San |

| | |
|---|---|
| | Diego, CA 92101<br>Tel: (619) 321-5015<br>eric.beste@btlaw.com<br><br>***Attorneys for Defendant CalAmp Corp.*** |

Dated: July 2, 2026

FISH & RICHARDSON P.C.

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# EXHIBIT 1

**Subject:** Philips v. Quectel - Motions in Limine

**From:** Liz Ranks <ranks@fr.com>
**Sent:** Friday, June 26, 2026 5:05 PM
**To:** ajuergens <ajuergens@foley.com>; SERVICE - FR Quectel 1707-1710 Team <SERVICEFRQuectel17071710Team@fr.com>
**Cc:** BOST - F - Philips - Quectel-01710 <BOST-F-Philips-Quectel-01710@foley.com>; APOFF@ycst.com; RVrana@ycst.com; pkingery <pkingery@ycst.com>
**Subject:** RE: Philips v. Quectel - Motions in Limine

Alexis,

Regarding Philips's Proposed MIL #4, we agree to [redacted]

Regarding Quectel's Proposed MILs, our understanding from our call is the following:

1. [redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

4. [redacted]

Where the parties are in agreement, the parties agreed to include the language as a joint agreement in the PTO.

Regards,
Liz

Liz Ranks
FISH : Boston
617.368.2175

---

**From:** Juergens, Alexis K. <ajuergens@foley.com>
**Sent:** Friday, June 26, 2026 1:13 PM
**To:** SERVICE - FR Quectel 1707-1710 Team <SERVICEFRQuectel17071710Team@fr.com>; Liz Ranks <ranks@fr.com>
**Cc:** BOST - F - Philips - Quectel-01710 <BOST-F-Philips-Quectel-01710@foley.com>; APOFF@ycst.com;

RVrana@ycst.com; pkingery <pkingery@ycst.com>
**Subject:** RE: Philips v. Quectel - Motions in Limine

[This email originated outside of F&R.]

Counsel,

Thank you for the meet and confer regarding the proposed motions in limine. Per our discussions, Philips' understanding is as follows:

[redacted]

[redacted]

[redacted]

[redacted]

- [redacted]
  - [redacted]
  - [redacted]
  - [redacted]

[redacted]

[redacted].

With the forthcoming deadline to exchanging opening MILs, please let us know Quectel's position with regards to MIL 4 as soon as possible.

Best Regards,

**Alexis K. Juergens**
*Senior Counsel*

**Foley & Lardner LLP**
Phone 801.401.8902
View My Bio | Visit Foley.com | Follow us on LinkedIn | ajuergens@foley.com

FOLEY
FOLEY & LARDNER LLP

---

**From:** Juergens, Alexis K.
**Sent:** Wednesday, June 24, 2026 5:00 PM
**To:** SERVICE - FR Quectel 1707-1710 Team <servicefrquectel17071710team@fr.com>; Liz Ranks <ranks@fr.com>
**Cc:** BOST - F - Philips - Quectel-01710 <BOST-F-Philips-Quectel-01710@foley.com>; Poff, Adam <apoff@ycst.com>; Vrana, Robert <rvrana@ycst.com>; Kingery, Parks <pkingery@ycst.com>
**Subject:** Philips v. Quectel - Motions in Limine

Counsel,

Subject to the Parties' agreement regarding exchanging a list of Motions of Limine, below are Philips's proposed Motions in Limine. I have sent a calendar invite for Friday at 11:30 ET for our meet and confer:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

Best Regards,

**Alexis K. Juergens**
*Senior Counsel*

**Foley & Lardner LLP**
95 S State Street, Suite 2500, Salt Lake City, UT 84111
Phone 801.401.8902
View My Bio | Visit Foley.com | Follow us on LinkedIn | ajuergens@foley.com

FOLEY
FOLEY & LARDNER LLP

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

# EXHIBIT 2

**Entities Identified as Chinese Military Companies Operating in the United States in Accordance with Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283, Section 1260H, as amended (codified at 10 U.S.C. § 113, note))***

The Deputy Secretary of Defense has determined that the following entities qualify for designation as "Chinese military companies," are engaged in providing commercial services, manufacturing, producing, or exporting (as required by Section 1260H(g)(2)(B)(ii)), and operate directly or indirectly in the United States (as required by Section 1260H(a)) in accordance with section 1260H:

360 Security Technology Inc. (Qihoo 360)

- Qihoo 360 is directly and indirectly affiliated with the Ministry of Industry and Information Technology (MIIT) and the Ministry of State Security (Section 1260H(g)(2)(B)(i)(I)). Qihoo 360 is a military civil fusion contributor to the Chinese defense industrial base because it is affiliated with the MIIT and with MSS (Sections 1260H(g)(3)(B)(i) and (g)(3)(B)(iv)).

Aerospace CH UAV Co., Ltd (CH UAV)

- CH UAV is indirectly owned by the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC) and is directly affiliated with the People's Liberation Army (PLA) (Section 1260H(g)(2)(B)(i)(I)). CH UAV is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with the People's Liberation Army (PLA) (Section 1260H(g)(3)(B)(v)).

Aerosun Corporation (Aerosun)

- Aerosun is indirectly owned by the SASAC and is indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)).

Alibaba Group Holding Limited (Alibaba)

- Alibaba is indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)). Alibaba is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with MIIT (Section 1260H(g)(3)(B)(i)).

Autel Intelligent Technology Corp., Ltd. (Autel Technology)

- Autel Technology is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant" and because it is affiliated with MIIT (Sections 1260H(g)(3)(A) and (g)(3)(B)(i)).

Autel Robotics Co., Ltd. (Autel Robotics)

- Autel Robotics is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant" (Section 1260H(g)(3)(A)).

Aviation Industry Corporation of China Ltd. (AVIC)

Align Aerospace LLC
Avicopter PLC
AVIC Aerospace Systems Co., Ltd.
AVIC Airborne Systems Co., Ltd.
AVIC Asset Management Corporation Ltd.
AVIC Aviation High-Technology Company Limited (AVIC Aviation Hi-Tech)
AVIC Chengdu Aircraft Co., Ltd. (formerly Zhonghang Electronic Measuring Instruments Company Limited (ZEMIC))
AVIC Electromechanical Systems Co. Ltd.
AVIC Heavy Machinery Company Limited (AVIC Heavy Machinery)
AVIC JONHON Optronic Technology Co., Ltd. (AVIC Jonhon)
AVIC Shenyang Aircraft Company Limited (AVIC Shenyang)
AVIC Xi'an Aircraft Industry Group Company Ltd. (formerly Xi'an Aircraft Industry Group Co., Ltd.)
Changhe Aircraft Industries (Group) Co., Ltd.
Cirrus Design Corporation
Continental Aerospace Technologies, Inc.
Jiangxi Hongdu Aviation Industry Co., Ltd. (Hongdu Aviation)
Shenyang Aircraft Design Institute

- AVIC is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)). AVIC is a military-civil fusion contributors to the Chinese defense industrial base because it is affiliated with SASAC and State Administration of Science, Technology and Industry for National Defense (SASTIND) (Section 1260H(g)(3)(B)).

Baicells Technologies Co., Ltd. (Baicells)

- Baicells is indirectly affiliated with SASAC and MIIT (Section 1260H(g)(2)(B)(i)(I)). Baicells is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant" and because it is affiliated with MIIT (Sections 1260H(g)(3)(A) and (g)(3)(B)(i)).

Baidu, Inc. (Baidu)

- Baidu is indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)). Baidu is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with MIIT (Section 1260H(g)(3)(B)(i)).

Beijing Zhidao Chuangyu Information Technology Co., Ltd. (Knownsec)

- Knownsec is directly affiliated with MIIT and indirectly affiliated with SASAC and MIIT (Section 1260H(g)(2)(i)(I)). Knownsec is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant" and because it is affiliated with MIIT (Sections 1260H(g)(3)(A) and (g)(3)(B)(i)).

BGI Group

BGI Americas Corporation
BGI Genomics Co., Ltd. (BGI)
Complete Genomics, Inc.
Forensic Genomics International (FGI)
GBI Diagnostics, Inc.
Innomics Inc.
STOmics Americas Ltd.

- BGI Group is directly with the PLA and indirectly affiliated with MIIT and the PLA (Section 1260H(g)(2)(B)(i)(I)). BGI Group is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, research, and industrial efforts initiated, granted, or created by, or provided under, or related to the Chinese military planning apparatus, or in furtherance of Chinese military industrial planning objectives and because it is affiliated with MIIT and the PLA (Sections 1260H(g)(3)(A), (g)(3)(B)(i), and (g)(3)(B)(v)).

BOE Technology Group Company Limited (BOE)

- BOE is indirectly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)). BOE is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with the PLA and because it resides in a military-civil fusion enterprise zone (Sections 1260H(g)(3)(B)(v) and (g)(3)(E)).

BYD Company Limited (BYD)

- BYD is directly and indirectly affiliated with SASAC and is indirectly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)). BYD is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with MIIT and because it resides in or is affiliated with a military-civil fusion enterprise zone (Sections 1260H(g)(3)(B)(i) and (g)(3)(E)).

CALB Group Co., Ltd. (CALB)

- CALB is indirectly owned by SASAC and is directly and indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)).

CETC Cyberspace Security Technology Co., Ltd. (formerly Chen Du Westone Information Industry Co., Ltd.)

- CETC Cyberspace Security Technology Co., Ltd. is indirectly owned by SASAC and is directly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)).

CETC Digital Technology Co., Ltd. (formerly Shanghai East China Computer Co., Ltd.)

- CETC Digital Technology Co., Ltd. is indirectly owned by SASAC (Section 1260H(g)(2)(B)(i)(I)).

CETC Potevio Science & Technology Co., Ltd (formerly Guangzhou GCI Science & Technology Co., Ltd.)

- CETC Potevio Science & Technology Co., Ltd. is indirectly owned by SASAC (Section 1260H(g)(2)(B)(i)(I)).

ChangXin Memory Technologies, Inc. (CXMT)

- CXMT is directly affiliated with MIIT and indirectly affiliated with SASAC and MIIT (Section 1260H(g)(2)(B)(i)(I)).

Chengdu JOUAV Automation Tech Co., Ltd. (JOUAV)

- JOUAV is directly affiliated with MIIT and the PLA (Section 1260H(g)(2)(B)(i)(I)). JOUAV is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant;" it is affiliated with MIIT; it is affiliated with the PLA, and it resides in a military-civil fusion enterprise zone (Sections 1260H(g)(3)(A), (g)(3)(B)(i) and (v), and (g)(3)(E)).

Chengdu M&S Electronics Technology Co., Ltd. (M&S Electronics)

- M&S Electronics is indirectly affiliated with SASAC and SASTIND (Section 1260H(g)(2)(B)(i)(I)). M&S Electronics is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant" (Section 1260H(g)(3)(A)).

China Aerospace Science and Industry Corporation Limited (CASIC)

Addsino Co., Ltd.
Aerospace Precision Products Co., Ltd.
Aisino Corporation
China Aerospace Automotive Co., Ltd.

- CASIC is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)). CASIC is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with the PLA and SASTIND (Sections 1260H(g)(3)(B)(iii) and (v)).

China Cargo Airlines Co., Ltd. (CCA)

- CCA is indirectly owned by SASAC and it is indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)).

China Communications Construction Group (Limited) (CCCG)

CCCC Design and Consulting Group Co., Ltd.
CCCC First Harbor Engineering Bureau Co. Ltd.
CCCC Second Navigation Engineering Bureau Co., Ltd.
CCCC Third Navigation Engineering Bureau Co., Ltd.
China Airport Construction Group Corporation
China Communications Construction (USA) Co., Ltd.
China Communications Construction Company Limited (CCCC)
China Transportation Materials Co., Ltd.
John Holland Group Pty Ltd.
John Holland Services Pty Ltd.
Shanghai Zhenhua Shipping Co. Ltd.
ZPMC North America, Inc.

- CCCG is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China Construction Technology Co., Ltd. (CCTC)

- CCTC is directly controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China COSCO SHIPPING Corporation Limited (COSCO SHIPPING)

China Ocean Shipping Company Ltd.
COSCO SHIPPING (North America) Inc.
COSCO SHIPPING Logistics Supply Chain Co., Ltd.
Shanghai Ship and Shipping Research

- COSCO SHIPPING is directly owned and controlled by SASAC; it officially acts on behalf of the PLA; and it is indirectly affiliated with SASTIND (Section 1260H(g)(2)(B)(i)(I)). COSCO SHIPPING is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, research, and industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus, or in furtherance of Chinese military industrial planning objectives (Section 1260H(g)(3)(A)).

China Electronics Corporation (CEC)

China Information Security Research Institute
IRICO Group Company, Ltd.
Shenzhen CEC Blue Ocean Holdings Co., Ltd.
The 6th Research Institute of CEC

- CEC is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China Electronics Technology Group Corporation (CETC)
14th Research Institute of CETC
15th Research Institute of CETC
CETC Research Institute 32

- CETC is directly owned and controlled by SASAC, is directly affiliated with MIIT and SASTIND and it is indirectly affiliated with MIITand the PLA (Section 1260H(g)(2)(B)(i)(I)). CETC is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with MIIT, SASTIND, and the PLA (Sections 1260H(g)(3)(B)(i), (iii), and (v)).

China General Nuclear Power Corporation (CGN)

- CGN is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China International Marine Containers (Group) Co., Ltd. (CIMC)

- CIMC is indirectly owned by SASAC and is indirectly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)).

China Mobile Communications Group Co., Ltd. (China Mobile Comm)

Aspire Technologies (Shenzhen) Limited
China Mobile Hong Kong (BVI) Limited
China Mobile Limited (China Mobile)

- China Mobile Comm is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China National Chemical Corporation Ltd. (ChemChina)

- ChemChina is indirectly owned by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China National Chemical Engineering Group Corporation (CNCEC)

- CNCEC is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China National Nuclear Corporation (CNNC)

- CNNC is directly owned and controlled by SASAC and is affiliated with the PLA and SASTIND (Section 1260H(g)(2)(B)(i)(I)).

China National Offshore Oil Corporation (CNOOC)
China BlueChemical Limited

- CNOOC is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China North Industries Group Corporation Limited (Norinco Group)

China North Chemical Research Academy Group Co., Ltd.
Chinese Academy of Ordnance Science
Harbin First Machinery Group Ltd.
Inner Mongolia First Machinery Group Co., Ltd.
Kiekert USA Inc.
Merit Automotive Electronics Systems S.L.U
North Petroleum International Company Limited
Yunnan Yuanjin Optical Instrument Co., Ltd.

- Norinco Group is directly owned and controlled by SASAC and is directly affiliated with SASTIND and the PLA (Section 1260H(g)(2)(B)(i)(I)). Norinco Group is a military-civil

fusion contributor to the Chinese defense industrial base because it is affiliated with SASAC (Section 1260H(g)(3)(B)(ii)).

China South Industries Group Corporation (CSGC)

Baoding Tianwei Baobian Electric Co., Ltd.
Beijing Beiji Mechanical and Electrical Industry Co., Ltd.
Changan US R&D Center, Inc.
China South Industries Group Corporation No. 59 Research Institute Co., Ltd.
Heilongjiang Northern Tools Co., Ltd.
Sichuan Jian'an Industry Co., Ltd.

- CSGC is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China SpaceSat Co., Ltd. (China SpaceSat)

Aerospace Star Space Technology Application Co., Ltd.
Oriental Blue Sky Titanium Technology Co., Ltd.
Xi'an Aerospace Tianhua Data Technology Co., Ltd.

- China SpaceSat is indirectly owned by SASAC and is indirectly affiliated with the PLA (Section 1260H(g)(2)(B)(i)(I)).

China State Construction Engineering Corporation Limited (CSCEC)
China Construction America, Inc.

- CSCEC is indirectly owned by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China State Shipbuilding Corporation Limited (CSSC)

China Shipbuilding Trading Co., Ltd. (CSTC)

- CSSC is indirectly owned by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China Telecom Group Co., Ltd. (China Telecom)

China Telecom Corporation Limited
China Telecom Satellite Communications Co., Ltd.
New Guomai Digital Culture Co., Ltd.
Tianyi Cloud Technology Co., Ltd.
Zhongjie Communications Co., Ltd.

- China Telecom is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China Three Gorges Corporation (CTG)

- CTG is directly owned and controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

China United Network Communications Group Co., Ltd. (China Unicom)

Beijing Telecom Planning and Designing Institute Company Limited
China Unicom (BVI) Co., Ltd.
China Unicom (Hong Kong) Limited
China Unicom Group Corporation (BVI) Co., Ltd.
China United Network Communications Co., Ltd.

- China Unicom is directly controlled by SASAC (Section 1260H(g)(2)(B)(i)(I)).

CloudWalk Technology Co., Ltd. (CloudWalk)

- CloudWalk is indirectly owned by and indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)). CloudWalk is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a “Little Giant” (Section 1260H(g)(3)(A)).

Commercial Aircraft Corporation of China Limited (COMAC)

Beijing Aeronautical Science & Technology Research Institute
COMAC America Corporation
Shanghai Aircraft Design and Research Institute
Shanghai Aircraft Manufacturing Co., Ltd.

- COMAC is directly owned and controlled by SASAC and is directly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)).

Contemporary Amperex Technology Co., Ltd. (CATL)

- CATL is indirectly affiliated with MIIT and is directly and indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)).

CRRC Corporation Limited (CRRC)

- CRRC is indirectly owned by SASAC (Section 1260H(g)(2)(B)(i)(I)).

CSSC Offshore & Marine Engineering (Group) Company Limited (COMEC)

Guangzhou Wenchuan Heavy Industry Co., Ltd.
Huacheng (Tianjin) Ship Leasing Co., Ltd.

- COMEC is indirectly owned by SASAC and is directly affiliated with the PLA (Section 1260H(g)(2)(B)(i)(I)).

Dawning Information Industry Co., Ltd. (Sugon)

- Sugon is indirectly affiliated with MIIT, SASAC, and the PLA (Section 1260H(g)(2)(B)(i)(I)).

EVE Energy Co., Ltd.

- EVE Energy is directly and indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)). EVE Energy is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, research, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus, or in furtherance of Chinese military industrial planning objectives, through its selection as a "Single Champion" (Section 1260H(g)(3)(A)).

Global Tone Communication Technology Co., Ltd. (GTCOM)

GTCOM Technology Corporation (GTCOM-US)

- GTCOM is indirectly affiliated with SASAC and MIIT (Section 1260H(g)(2)(B)(i)(I)). GTCOM is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant" (Section 1260H(g)(3)(A)).

Guizhou Aviation Technical Development Co., Ltd. (Guizhou Aviation Tech)

- Guizhou Aviation Tech is indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)). Guizhou Aviation Tech is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designations as a "Little Giant" and a "Single Champion" (Section 1260H(g)(3)(A)).

Hangzhou Hikvision Digital Technology Co., Ltd. (Hikvision)

- Hikvision is indirectly owned by SASAC and is directly affiliated with the PLA (Section 1260H(g)(2)(B)(i)(I)). Hikvision is a military-civil fusion contributor to the Chinese defense industrial base because it receives funding from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Single Champion" (Section 1260H(g)(3)(A)).

Hangzhou Yushu Technology Co., Ltd. (Unitree)

- Unitree is indirectly owned by and indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)). Unitree is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant" (Section 1260H(g)(3)(A)).

Hesai Group (also known as Hesai Technology Co., Ltd.)

- Hesai Group is directly affiliated with MIIT and is indirectly affiliated with SASAC of the State Council and the PLA (Section 1260H(g)(2)(B)(i)(I)). Hesai Group is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant;" it is affiliated with the MIIT; and it resides in a military-civil fusion enterprise zone (Sections 1260H(g)(3)(A), (g)(3)(B)(i), and (g)(3)(E)).

Huawei Investment & Holding Co., Ltd. (Huawei Holding)
Huawei Technologies Co., Ltd. (Huawei)

- Huawei Holding is indirectly affiliated with SASAC and is directly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)).

Inspur Group Co., Ltd. (Inspur)

- Inspur is indirectly affiliated with MIIT and SASTIND (Section 1260H(g)(2)(B)(i)(I)). Inspur is a military-civil fusion contributor because it is affiliated with MIIT and SASAC (Sections 1260H(g)(3)(B)(i) and (g)(3)(B)(ii)).

JA Solar Technology Co., Ltd. (JA Solar)

- JA Solar is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Little Giant" and a "Single Champion" (Section 1260H(g)(3)(A)).

MGI Tech Co., Ltd. (MGI)

- MGI is directly affiliated with MIIT and indirectly affiliated with SASTIND and the PLA (Section 1260H(g)(2)(B)(i)(I)). MGI is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Single Champion" and because it is affiliated with MIIT (Sections 1260H(g)(3)(A) and (g)(3)(B)(i)).

NetPosa Technologies, Ltd. (NetPosa)

- NetPosa is directly and indirectly affiliated with the Chinese security forces and it is indirectly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)).

NIO, Inc.

- NIO is directly and indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)). NIO is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with MIIT (Section 1260H(g)(3)(B)(i)).

Novogene Company Limited (Novogene)

- Novogene is indirectly owned by SASAC and is indirectly affiliated with MIIT and the PLA (Section 1260H(g)(2)(B)(i)(I)).

Origincell Technology Co., Ltd. (Origincell)

- Origincell is indirectly affiliated with MIIT, SASAC, SASTIND, and the PLA (Section 1260H(g)(2)(B)(i)(I)).

Phenix Optical Company Limited (formerly Phoenix Optics Company Limited)

- Phenix Optical Company Limited is directly controlled by SASAC and is indirectly owned by SASAC (Section 1260H(g)(2)(B)(i)(I)).

Quectel Wireless Solutions Co., Ltd.

- Quectel is indirectly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)).

Robosense Technology Co., Ltd.

- RoboSense is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with the PLA (Section 1260H(g)(3)(B)(v)).

SDIC Intelligence (Xiamen) Information Co., Ltd.

Beijing Meiya Hongshu Technology Co., Ltd.
Xiamen Meiya Zhongmin Electronic Technology Co., Ltd.

- SDIC Intelligence is indirectly owned and controlled by SASAC and is indirectly affiliated with Chinese security forces, Chinese law enforcement, and MIIT (Section 1260H(g)(2)(B)(i)(I)).

Semiconductor Manufacturing International Corporation (SMIC)

Better Way Enterprises Limited
China IC Capital Co., Ltd.
Magnificent Tower Limited
Semiconductor Manufacturing International (Beijing) Corporation (SMIC Beijing)
Semiconductor Manufacturing International (Shenzhen) Corporation (SMIC Shenzhen)
Semiconductor Manufacturing International (Tianjin) Corporation (SMIC Tianjin)
Semiconductor Manufacturing North China (Beijing) Corporation
Semiconductor Manufacturing South China Corporation (SMIC South China)
SilTech Semiconductor Corporation
SMIC Holdings Limited (SMIC Holdings)
SMIC Semiconductor Manufacturing (Shanghai) Co., Ltd (SMIC Shanghai)
SMIC, Americas

- SMIC is indirectly owned by SASAC (Section 1260H(g)(2)(B)(i)(I)).

SenseTime Group, Inc. (SenseTime)

- SenseTime is indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)). SenseTime is a military-civil fusion contributor to the Chinese defense industrial base because it is affiliated with MIIT (Section 1260H(g)(3)(B)(i)).

Shanghai Yitu Network Technology Co., Ltd. (Yitu)

- Yitu is indirectly owned by SASAC and is indirectly affiliated with MIIT, SASAC, SASTIND, and the PLA (Section 1260H(g)(2)(B)(i)(I)).

Shenzhen DJI Technology Co., Ltd. (DJI)

Shenzhen Dajiang Baiwang Technology Co., Ltd.

- DJI is indirectly affiliated with SASAC and is directly affiliated with MIIT and the People's Armed Police (PAP) (Section 1260H(g)(2)(B)(i)(I)). DJI is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, research, and industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus, or in furtherance of Chinese military industrial planning objectives through multiple designations, such as a "Single Champion" designation; it is affiliated with MIIT, and it resides in or is affiliated with a military-civil fusion enterprise zone (Sections 1260H(g)(3)(A), (g)(3)(B)(i), and (g)(3)(E)).

Sinotrans & CSC Holdings Co., Ltd. (SinoTrans)

- Sinotrans is indirectly owned by SASAC and is directly affiliated with the PLA (Section 1260H(g)(2)(B)(i)(I)).

Tencent Holdings Limited (Tencent)

- Tencent is indirectly affiliated with the PLA (Section 1260H(g)(2)(B)(i)(I)).

Tianma Microelectronics Co., Ltd. (Tianma)

- Tianma is indirectly owned by SASAC (Section 1260H(g)(2)(B)(i)(I)). Tianma is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted or created by, or provided under, or related to, the Chinese military industrial planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Single Champion" (Section 1260H(g)(3)(A)).

TP-Link Technologies Co., Ltd. (TP-Link)

- TP-Link is directly affiliated with the PLA (Section 1260H(g)(2)(B)(i)(I)). TP-Link is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Single Champion" (Section 1260H(g)(3)(A)).

Trina Solar Co., Ltd. (Trina Solar)

- TrinaSolar is indirectly affiliated with SASAC (Section 1260H(g)(2)(B)(i)(I)). TrinaSolar is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance through science, technology, research or industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus or in furtherance of Chinese military industrial planning objectives through its designation as a "Single Champion" and it resides in a military-civil fusion enterprise zone (Sections 1260H(g)(3)(A) and (g)(3)(E)).

Wuhan Geosun Navigation Technology Co., Ltd. (Geosun)

- Geosun is indirectly affiliated with SASAC, SASTIND, and the PLA (Section 1260H(g)(2)(B)(i)(I)). Geosun is a military civil fusion contributor to the Chinese defense industrial base because it received a military production license (Section 1260H(g)(3)(F)).

WuXi AppTec Co., Ltd. (WuXi AppTec)

- WuXi AppTec is indirectly owned by SASAC and is indirectly affiliated with SASTIND and the PLA (Section 1260H(g)(2)(B)(i)(I)).

Yangtze Memory Technologies Co., Ltd. (YMTC)

- YMTC is indirectly owned by SASAC and is indirectly affiliated with MIIT and SASTIND (Section 1260H(g)(2)(B)(i)(I)).

Zhejiang Dahua Technology Co., Ltd. (Dahua)

Chengdu Dahua Wisdom Information Technology Co., Ltd.

- Dahua is indirectly owned by SASAC and is directly and indirectly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)).

Zhongji Innolight Co., Ltd. (Innolight)

- InnoLight is indirectly owned by SASAC and directly affiliated with MIIT (Section 1260H(g)(2)(B)(i)(I)).

* Subsidiaries Listed with Parent Companies

**The Following Previously Listed Entities Did Not Meet the Requirements of Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal 2021 (Public Law 116-283) Because They Do Not Operate Directly or Indirectly in the United States as Mandated by Section 1260H(a), as amended (codified at 10 U.S.C. § 113 note).**

Anhui Sun Create Electronics Co., Ltd.
China International Information Services Ltd.
China National Chemical Engineering Co., Ltd.
China Traffic Construction USA, Inc.
CNOOC China Limited (CNOOC China Ltd.)
CNOOC International Trading Co., Ltd. (CNOOC International Trading)
COSCO SHIPPING Finance Co., Ltd.
Costar Group Co., Ltd. (Costar)
GLARUN Technology Co., Ltd.
Taiji Computer Co., Ltd.

# EXHIBIT 3

# Quectel denies link to Chinese military and will fight Department of Defense Advisory Designation

**Vancouver, Canada, 7 January 2025** – Quectel Wireless Solutions, a global IoT solutions provider, today said it is prepared to defend itself and is open to full audits to get removed from the Pentagon's advisory 1260H list because it does not work with the military in any country, including China.

Quectel firmly believes that the U.S. Department of Defense made a mistake in placing it on the 1260H list. As a result, Quectel said it plans to contest its designation vigorously seeking its removal from the advisory list. The company does not engage in any work with military entities in any country, including China, and is not owned, controlled or affiliated with the Chinese military or any Chinese government body nor is it connected to the Chinese Ministry of Industry and Information Technology.

"We will take appropriate action to protect ourselves and our stakeholders. We are confident that we will be removed from the 1260H list," said Norbert Muhrer, President and CSO, Quectel. "Our products, which are designed only for civil and

commercial use cases, exceed industry standards and best practices in multiple security and compliance measures. We do not sell to military manufacturers anywhere."

The 1260H designation is not a sanctions list. No export controls are applied to designated companies. U.S. individuals and companies are not prohibited from doing business with companies on the 1260H list.

**About Quectel**

Quectel's passion for a smarter world drives us to accelerate IoT innovation. A highly customer-centric organization, we are a global IoT solutions provider backed by outstanding support and services. Our growing global team of 5,600 professionals sets the pace for innovation in cellular, GNSS, Wi-Fi and Bluetooth modules as well as antennas and services.

With regional offices and support across the globe, our international leadership is devoted to advancing IoT and helping build a smarter world. For more information, please visit: www.quectel.com, LinkedIn, Facebook, and X, or email media@quectel.com.

# EXHIBIT 4

# Quectel takes legal action challenging wrongful section 1260H designation

**Shanghai, 11 May 2026** – Quectel Wireless Solutions, today announced that it has filed legal action against the United States Department of Defense (DoD) in the United States District Court for the District of Columbia seeking judicial review and immediate relief from its wrongful designation under section 1260H of the National Defense Authorization Act for Fiscal Year 2021.

This action follows repeated efforts by Quectel to engage constructively with the DoD to correct significant factual and procedural errors underlying the designation and secure the company's removal from the 1260H list.

Quectel categorically rejects the basis for its inclusion on the Section 1260H list, as it is now and always has been a leading designer and manufacturer of purely civilian technology. Quectel has always operated with integrity, transparency and full compliance with the laws and regulations of every jurisdiction in which we do business.

**About Quectel**

Quectel's passion for a smarter world drives us to accelerate IoT innovation. A highly customer-centric organization, we are a global end-to-end IoT solutions provider backed by outstanding support and services.

With a worldwide team of over 5,800 professionals, we lead the way in delivering end-to-end IoT solutions, spanning cellular, GNSS, satellite, Wi-Fi and Bluetooth modules, high-performance antennas, value-added services and full turnkey offerings including ODM services and system integration.

With regional offices and support across the globe, our international leadership is devoted to advancing IoT and helping build a smarter world.

For more information, please visit: www.quectel.com or LinkedIn

Media contact: media@quectel.com

# EXHIBIT 5

**IN THE UNITED STATES**
**DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

QUECTEL WIRELESS SOLUTIONS CO., LTD.,

No. 8 Waipojing Road, Sijing Town, Songjiang District, Shanghai 201601, China

*Plaintiff*,

v.

UNITED STATES DEPARTMENT OF DEFENSE,

1400 Defense Pentagon
Washington, D.C. 20301

PETER HEGSETH, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF DEFENSE,

1000 Defense Pentagon
Washington, D.C. 20301

MICHAEL CADENAZZI, in his official capacity as ASSISTANT SECRETARY OF DEFENSE FOR INDUSTRIAL BASE POLICY,

3050 Defense Pentagon
Washington, D.C. 20301

*Defendants*.

Civil Action No. 1:26-cv-________

**COMPLAINT**

Plaintiff Quectel Wireless Solutions Co., Ltd. ("Quectel") brings this action against Defendants U.S. Department of Defense ("the Department"), Peter Hegseth, in his official capacity as Secretary of Defense, and Michael Cadenazzi, in his official capacity as Assistant Secretary of Defense for Industrial Base Policy, and alleges as follows:

**INTRODUCTION**

1. Founded in 2010, Quectel is a global provider of Internet of Things ("IoT") solutions and wireless technology. The company specializes in the design, development, and manufacture of cellular modules and antennas used in IoT devices like car infotainment systems and other "smart" connected electronics devices. Quectel is a global company with operations in the United States and around the world. It works closely with industry-leading Original Equipment Manufacturers ("OEM") and ecosystem partners. Quectel has not—and does not—support the Chinese military or the Chinese defense industrial base in any way. It designs and manufactures purely civilian technology that is used by people and enterprises around the world.

2. This action challenges the unlawful designation of Quectel as a "Chinese military company" ("CMC") pursuant to Section 1260H(a) of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 ("Section 1260H" and "FY2021 NDAA").[1] The January 7, 2025, designation of Quectel as a CMC (the "Designation") has caused and will continue to cause the company serious, irreparable, and unwarranted economic, reputational, and other harm. The Designation was made without any legitimate justification, without factual support for its allegations, and without any forewarning and opportunity to be heard. Moreover,

[1] Pub. L. No. 116-283, § 1260H(d)(1), 134 Stat. 3965 (2021) (as amended by National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118–159, §1346, 138 Stat. 2123 (2024)).

the Department has maintained the Designation despite being in possession of incontrovertible evidence contradicting the purported basis for its determination for over a year.

3. As soon as Quectel was designated, it acted to correct the Department's clear mistake. It availed itself of the Department's "reconsideration process"—which allows designated companies to provide the Department evidence supporting removal from the Section 1260H List[2]—that was announced at the same time as the Designation. Counsel for Quectel emailed the Department's newly established Section 1260H electronic mailbox and asked for the administrative record supporting the Designation. On February 4, 2025, Quectel received a summary report setting forth the basis for the Designation (the "Report"). The Department did not provide Quectel the full administrative record.

4. The Report—which is 13 pages in length but confines the purported basis for the Designation to only a few bulleted paragraphs—is replete with a wide-range of factual and legal errors. For instance, the Report misstates basic facts, such as the location of Quectel's headquarters and the identities of Quectel's business partners. It also relies on stale, unreliable, second- and third-hand sources, including a years-old *Newsweek* article, which relied, in turn, on even older, even more unreliable sources. One *Newsweek* source, in particular, was a consultant who Quectel has learned is affiliated with two think tanks that are financially supported ***by a Quectel competitor***.

5. As another example, the Report recites that Quectel received three "awards" as proof of an "affiliation" with the Chinese Ministry of Information and Industry Technology ("MIIT")—without any explanation for how or why these widely and commonly-received industry recognitions show any degree of "affiliation" with MIIT. These awards were given to Quectel as

[2] The Section 1260H List is sometimes referred to as the Chinese Military Companies List ("CMC List" or "the List"). Those terms will be used interchangeably herein.

long as *eight years* before the Designation and recognized the company's development of technology that could, for example, livestream sports and entertainment in high definition. The Report conspicuously does not (because it cannot) explain how those awards create any meaningful connection to MIIT or military-civil fusion.

6. Most of the errors could have (and should have) been caught by a cursory internet search.

7. A formal reconsideration request, submitted by Quectel to the Department on March 24, 2025, pointed out these clear and incontrovertible errors and was supported by a declaration from the company's founder and CEO. But, upon receiving this information, the Department did not correct its Report. Rather, it used the reconsideration request as an opportunity to conduct a wide-ranging and largely irrelevant investigation of Quectel—sending Quectel's counsel a series of follow-up questions, which, for the most part, had no connection to the basis set forth in the Report or the reconsideration request. Nevertheless, Quectel carefully investigated each of the questions and provided full, transparent answers.

8. In January 2026—almost ten months after Quectel's reconsideration petition was submitted—Quectel secured a meeting with the Department where it reiterated these points and demonstrated to the Department that its nearly year-long mistake was gravely harming Quectel and its business partners. The presentation was met with little more than silence. The Department provided Quectel with a pro forma assurance that its request was under review. The Department declined to engage with Quectel on the irrefutable facts that Quectel provided, which undermine the Designation, and declined to provide Quectel any timeline regarding when the Department expected to act on the reconsideration request.

9. On February 13, 2026, a pre-publication version of the Federal Register notice containing the Section 1260H List was posted online for approximately an hour before it was withdrawn (the "February 2026 Notice"). This pre-publication version of the List appeared to maintain Quectel on the Section 1260H List but appeared to alter the statutory justification for the listing.

10. On February 17, 2026, counsel for Quectel reached out to the Department to ascertain whether this publication meant that the reconsideration process was finally completed. On February 20, 2026, the Department again provided a pro forma statement that it was "still processing" the reconsideration request.

11. Recognizing that all pre-suit attempts to engage with the Department to date were met with inaction, on March 11, 2026, counsel for Quectel transmitted a letter, along with a proposed complaint, advising the Department of its intent to initiate litigation if Quectel was not removed from the Section 1260H List within 30 days. Counsel emphasized that the harm to Quectel and its business partners caused by the erroneous Designation—which Quectel predicted to the Department a year earlier—was growing, and urgent action by the Department was required.

12. On March 24, 2026, counsel for Quectel sent the Department an additional letter detailing one specific imminent harm affecting Quectel, its business partners, and a major U.S. industry, automobile manufacturing, as a direct consequence of the Designation. The letter explained that one of Quectel's key U.S.-based suppliers had expressed concerns regarding the Department's continued inaction with respect to the Designation and made the decision to terminate its relationship with Quectel. The letter further explained that this disruption would not only lead to significant lost revenue for Quectel, but that the impact would be felt by many downstream suppliers and manufacturers in the American automobile industry.

13. On April 15, 2026, counsel for Quectel contacted the Department to inquire whether the Department intended to respond to either letter. But, the Department, once again, met Quectel's requests for the most basic information about the Department's reconsideration process with little more than silence. The Department stated only that it could not determine when its review of Quectel's reconsideration request would be complete, or when the updated 1260H List would be published.

14. Quectel made its final, good faith attempt to engage with the Department in an April 22, 2026, letter. Quectel reiterated, again, that the basis for the listing is clearly insufficient, and that further delays would continue to harm the company—especially in view of the substantial damage the Designation was already causing. Quectel indicated that it intended to seek judicial relief but was also mindful that in virtually all prior litigation challenges to a Section 1260H listing, the Department changed the basis for the listing in the middle of the litigation—leading to months of additional delays, including the need to amend pleadings and refile briefs. Quectel stated that it wanted to avoid such an outcome and requested that the Department provide, at minimum, any new facts or bases that the Department was considering or a date certain by which it will finalize its determination. That request seemed particularly relevant, and reasonable, in conjunction with the apparently new listing basis set forth in the February 2026 Notice. Providing such information would allow Quectel to make an informed decision regarding if and when to seek judicial intervention. Nevertheless, the Department failed to respond to the letter beyond acknowledging its receipt.

15. Quectel gave the Department every opportunity to resolve its reconsideration request and remove the company from the 1260H List without resorting to litigation. Quectel has acknowledged—in multiple different communications—that it would be an unnecessary and

wasteful use of resources, for all parties, if Quectel were to initiate litigation only for the Department to later change the asserted basis for the Designation, as the February 2026 Notice (and the Department's conduct in other court challenges to CMC designations) suggests it may do.

16. Over a *year* has now passed since the reconsideration request was submitted. The Department has not given Quectel any sign that it will correct its clear errors and reverse the baseless Designation. Nor has it issued an updated version of the 1260H List in 2026 despite its statutory obligation to do so at least annually. These failures reveal that the Department's new "reconsideration process" is no process at all. Rather, it appears to be nothing more than an electronic mailbox from which the Department can send follow-up questions aimed at stalling and searching for alternative bases to support erroneous and harmful designations rather than meaningfully engaging with pending urgent removal requests. Quectel, thus, must turn to the Court to reverse the Department's baseless and costly Designation.

17. As discussed below, the Defendants' conduct was unlawful, and the Court should grant relief for four reasons. *First*, the Defendants' facially unreasonable designation of Quectel and its failure to remove the Designation violate the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, in numerous ways. *Second*, Defendants acted *ultra vires* and in excess of their statutory authority by designating Quectel as a CMC despite the total inapplicability to Quectel of the criteria for such designation under Section 1260H and the federal government's own pronouncements defining CMCs. *Third*, by failing to provide Quectel with notice of, or an opportunity to meaningfully challenge the basis for the Designation and by unfairly singling out Quectel from similarly situated companies, Defendants have deprived Quectel of their property and liberty rights without due process of law, in violation of the Fifth Amendment of the U.S. Constitution. *Fourth*, Section 1260H is unconstitutionally vague as applied to Quectel because it

fails to provide fair notice of what conduct may result in designation and permits arbitrary and inconsistent enforcement, in violation of the Fifth Amendment.

**JURISDICTION AND VENUE**

18. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the United States Constitution and the laws of the United States, including the APA, 5 U.S.C. § 551 *et seq*.

19. The Court has authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.; 5 U.S.C. § 702; and the Court's inherent equitable powers.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are agencies of the United States and officers or employees acting in their official capacities, and because a substantial part of the events or omissions giving rise to this action occurred in this District.

**PARTIES**

21. Quectel is an independent company that is traded on the Shanghai stock exchange. Quectel has operations all over the globe. It is currently headquartered in Shanghai, China.

22. Defendant U.S. Department of Defense is a Department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 551(1). On January 7, 2025, the Department of Defense published a list designating Quectel as a CMC under Section 1260H.

23. Defendant Peter Hegseth is the Secretary of Defense and is sued in his official capacity.

24. Defendant Michael Cadenazzi is the Assistant Secretary of Defense for Industrial Base Policy. In this role, he manages the process for the Department's placement of entities on the Section 1260H List and the process for the Department's removal of entities from the Section 1260H List. He is sued in his official capacity.

## LEGAL FRAMEWORK AND BACKGROUND

### A. Section 1260H Requires the Secretary of Defense to Identify and Publish a List of CMCs

25. Section 1260H of the National Defense Authorization Act for Fiscal Year 2021, which is operative here, directs the Secretary of Defense to identify Chinese military companies that operate directly or indirectly in the United States or any of its territories and possessions. *See* FY2021 NDAA § 1260H(a).

26. Section 1260H defines "Chinese military company" as any entity that is "(i)(I) directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party" or "(i)(II) identified as a military-civil fusion contributor to the Chinese defense industrial base;" and "(ii) engaged in providing commercial services, manufacturing, producing, or exporting." *See* FY2021 NDAA § 1260H(d)(1).

27. The term "military-civil fusion contributor" is defined to include (i) "entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus;" (ii) "*entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects*;" (iii) "entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology

and Industry for National Defense;" (iv) "any entities or subsidiaries defined as a 'defense enterprise' by the State Council of the People's Republic of China;" (v) "entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone;" (vi) entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification;" (vii) "entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China;" and (viii) "any other entities the Secretary of Defense determines is appropriate." *Id.* § 1260H(d)(2) (citation modified).[3]

28. Section 1260H provides no further criteria indicating how the "military-civil fusion contributor" must "contribute to the Chinese defense industrial base" for purposes of the statute.

29. The term "People's Liberation Army" is further defined as "the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate." *Id.* § 1260H(d)(3).

30. The Secretary of Defense is required to identify Chinese Military Companies "based on the most recent information available." *Id.* § 1260H(a).

---

[3] Section 1260H was amended most recently in 2025. These amendments, among other things, defined the term "affiliated with" and changed the definition of a "Chinese military company." However, the Designation was made before these amendments became effective, and so Quectel focuses on the language of Section 1260H that applied when the Department acted. But, as alleged herein, whether the Court considers the language of Section 1260H either pre- or post-amendment, the Department's designation of Quectel as a CMC was improper and unlawful.

31. The Secretary is required to provide a report to Congress, concurrently published in the Federal Register, of all entities he has identified as Chinese Military Companies on an annual basis. *Id.* § 1260H(b)(1)-(2). The Secretary is further required to make additions or deletions to the "most recent list submitted [to Congress]…[not less frequently than annually] based on the most recent information available."

32. Once this designation is made, the Secretary of Defense may reverse his determination that an entity is a CMC only after providing fifteen days written notice to the Congressional defense committees. Moreover, none of the funds appropriated under the Further Consolidated Appropriations Act 2024 (Pub. L. No. 118-47, 138 Stat. 460 (2024)) can be used by the Department of Defense to facilitate removing a company from the Section 1260H List.

**B. The Department's Reconsideration Process**

33. Consistent with its obligations to implement "reasonable procedures" that are "necessary to implement the provisions of [Section 1260]" (Section 1260H(e)) and contemporaneous with the Designation on January 7, 2025, the Department announced a reconsideration process in which entities included in the Section 1260H List can email the Department to seek reconsideration.

34. Requests for reconsideration must include: "(1) The listed entity's name and mailing address (including email address) and an authorized representative's name and mailing address (including email address) and (2) A statement indicating the entity's intent to request reconsideration of the Department's determination, including a detailed description with supporting evidence of why the listed entity should be removed from the 1260H List." Notice of Availability of Designation of Chinese Military Companies, 90 Fed. Reg. 1105-02 (Jan. 7, 2025).

35. The reconsideration process also allows entities to include "additional information such as arguments and evidence that establishes that an insufficient basis exists for the listing or

that the circumstances resulting in the listing no longer apply." *Id.* While the announcement does not provide a timeline for reconsideration, Section 1260H(e) requires the Department's reconsideration procedures to be "reasonable," which would include acting on requests in a reasonable time and manner.

36. In addition to this requirement, subsection (b)(3) of Section 1260H separately requires the Department to revise the List of entities that it provides to Congress based on the most recent information available—irrespective of whether a reconsideration request has been made—no less than annually.

**C. Purpose of the Section 1260H List**

37. Various legislators have stated that the Section 1260H List furthers the twin aims of: (1) monitoring companies allegedly working with China's military, and (2) preventing U.S. industry and supply-chains from both funding those companies and relying on those companies.[4]

38. Senator Kevin Cramer, who sits on the Senate Armed Services Committee, stated publicly that the intent is to make American and international companies aware of which companies are CMCs so they will "strategically decouple"—*i.e.*, stop doing business with them.[5]

39. Representative Andy Barr, member of the Subcommittee on National Security, Illicit Finance, and International Financial Institutions, stated during a hearing with the House Foreign Affairs Committee that the purpose of the Section 1260H List (alongside the Non-SDN

[4] *Combatting the Generational Challenge of CCP Aggression: Hearing Before the H. Comm. on Foreign Affs.*, 118th Cong. 2 (2023) (statement of Michael McCaul, Chairman, H. Comm. Foreign Affairs) ("[T]hese companies are military companies for the CCP, [a]nd both are listed on the entities list. If BIS continues to mindlessly greenlight sensitive technology sales, the CCP has proven they will use our own inventions against us.").

[5] Kevin Cramer, *Senator Cramer Discusses Border Security, Threat of TikTok, Inflation on Fox Business*, KEVIN CRAMER U.S. SENATOR FOR NORTH DAKOTA (Mar. 12, 2024), https://www.cramer.senate.gov/news/press-releases/senator-cramer-discusses-border-security-threat-of-tiktok-inflation-on-fox-business.

Chinese Military-Industrial Complex Companies List) is "to prevent American investors from financing entities tied to the CCP[,] or these Chinese military industrial complex firms that are still included in emerging growth Index funds either on U.S. exchanges or foreign stock exchanges, or even through private equity or credit investments."[6]

40. On September 30, 2020 (three months before the enactment of the FY2021 NDAA), House Republicans published the "China Task Force Report."[7] The report called for "[c]utting off material support of CCP military industrial base companies, including divestment from companies with ties to the CCP military."[8]

41. On December 18, 2025, several members of Congress sent a letter to Secretary Hegseth seeking the inclusion of additional companies on the Section 1260H List. The letter explained that listing entities on the Section 1260H List would "directly support Congress' intent that U.S. taxpayer funds not underwrite PRC military-industrial and internal-security or intelligence capabilities."[9]

**D. Ramifications of the Designation**

42. Section 1260H imposes serious consequences for entities included on the CMC List.

---

[6] *Combatting the Generational Challenge of CCP Aggression: Hearing Before the H. Comm. on Foreign Affs.*, 118th Cong. 57-58 (2023) (statement of Rep. Andy Barr).

[7] Michael McCaul, Chairman, U.S. House of Representatives, 116th Cong., *China Task Force Rep.* (2020).

[8] *Id.*

[9] *See* Letter from Members of Congress to Pete Hegseth, Secretary of Defense 1 (Dec. 18, 2025), https://chinaselectcommittee.house.gov/sites/evo-subsites/selectcommitteeontheccp.house.gov/files/evo-media-document/12.18.25-letter-to-dow-1260h-additions.pdf

43. As described above, the 1260H List is intended, at least in part, to "nam[e] and sham[e]"[10] the listed entities to put public pressure on these entities and all those who do business with them.

44. Moreover, Section 805 of the FY2024 NDAA contains two punitive prohibitions targeting entities included on the Section 1260H List, which will soon go into effect.[11] First, under Section 805(a)(1)(A), the Secretary of Defense may not "enter into, renew, or extend a contract for the procurement of goods, services, or technology" with an entity identified on the Section 1260H List, or an entity subject to the control of an entity identified on the Section 1260H List. *See* FY2024 NDAA § 805(a)(1)(A). This prohibition takes effect on June 30, 2026. *Id.* § 805(b). Second, under Section 805(a)(1)(B), the Secretary of Defense may not "enter into, renew, or extend a contract for the procurement of goods or services *that include goods or services produced or developed*" by an entity identified on the Section 1260H List, or an entity subject to the control of an entity identified on the Section 1260H List. *Id.* § 805(a)(1)(B) (emphasis added). This prohibition takes effect on June 30, 2027, *id.* § 805(b) and would not only apply to Quectel but would also apply to any entity that relies on Quectel's products and/or services.

45. Further, Section 536 of the Further Consolidated Appropriations Act of 2024 states that "[n]o Federal funds made available to the Department of Homeland Security may be used to

---

[10] Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021) ("Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237."), https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congressincorporates- defense-contributors.

[11] To implement these prohibitions, Section 805 directs the Department of Defense to amend the Defense Federal Acquisition Regulation Supplement ("DFARS") no later than one year after the enactment of FY2024 NDAA (*i.e.*, by Dec. 23, 2024) to implement prohibition (1)(A), and to amend the DFARS no later than 545 days after the enactment of FY2024 NDAA (*i.e.*, by June 19, 2025) to implement prohibition (1)(B). *See* National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805(a)(4), 137 Stat. 136 (2023) ("FY2024 NDAA").

enter into a procurement contract, memorandum of understanding, or cooperative agreement with, or make a grant to, or provide a loan or guarantee to, any entity identified under section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 ([Pub. L. No.] 116–283) or any subsidiary of such entity."

46. On March 21, 2024, during a hearing of the House Foreign Affairs Committee, then-Under Secretary of Commerce for Industry and Security Alan Estevez noted that the Bureau of Industry and Security ("BIS") generally has no interest in issuing licenses to export items to entities on the Section 1260H List, agreeing with the sentiments raised by a member of Congress during questioning.[12]

47. On February 26, 2026, certain members of Congress transmitted a letter to the Secretary of the U.S. Department of the Treasury encouraging the restriction of U.S. private investment in Quectel and numerous other Chinese companies by adding them to the Office of Foreign Assets Control ("OFAC") Non-SDN Chinese Military-Industrial Complex Companies List ("NS-CMIC List"). The letter's sole basis for such a restriction on Quectel was its designation as a CMC on the 1260H List.[13]

48. States have used and likely will continue to use the Section 1260H List in their own statutes to place onerous restrictions on companies like Quectel. For example, Utah Code 63L-13-

[12] *Countering China on the World Stage: Empowering American Businesses and Denying Chinese Military Our Technology: Hearing Before the H. Comm. on Foreign Affs.*, 118th Cong. (2024) (statement of Alan Estevez, Sec'y Com. for Indus. and Sec.) (confirming he was "really [not] interested in issuing licenses to do business with [CMC]s."), https://foreignaffairs.house.gov/committee-activity/hearings/countering-china-the-world-stage-empowering-american-businesses-and-denying-chinese-military-our-technology.

[13] *See* Letter from Members of Congress to Scott Bessent, Sec'y of the Treasury (Feb. 26, 2026), https://mcusercontent.com/e585eec970e20145fb02e3825/files/7a6ad5a2-d2cb-db21-59c6-a89fb52f653f/COINS_Implementation_Letter_02.26.2026.pdf.

201(2) states that restricted foreign entities, such as those on the Section 1260H List, are precluded from buying land in the state of Utah.

**E. Defendants' Earlier CCMC List**

49. The Department of Defense previously administered a "Communist Chinese military companies" list ("CCMC List"), under Section 1237 of the National Defense Authorization Act for Fiscal Year 1999 ("FY1999 NDAA").[14] Under Section 1237, to put a company on the CCMC List, the Department of Defense needed to establish that a person was either "owned or controlled by" or "affiliated with" the People's Liberation Army or a ministry of the government of the People's Republic of China, or was "owned or controlled by" an entity affiliated with the defense industrial base of the People's Republic of China. *See* Pub. L. No. 105-261, § 1237, 112 Stat. 2160.

50. As with the CMC List, the Department of Defense did not provide any explanation or factual basis for inclusion on the CCMC List, or disclose what administrative process, if any, it followed.

51. After the Department of Defense issued its fourth version of the CCMC List on January 14, 2021, several designated companies brought legal challenges in the U.S. District Court for the District of Columbia. Those plaintiffs alleged, among other causes of action, that the designations: (1) were arbitrary and capricious under the APA, 5 U.S.C. § 706(2); (2) were *ultra vires* and in excess of the Department's authority; and (3) violated the Due Process Clause of the Fifth Amendment.

[14] Strom Thurmond National Defense Authorization Act for Fiscal Year 1999, Pub. L. No. 105-261, 112 Stat. 1920 (1998).

52. In two of those cases, the U.S. District Court for the District of Columbia granted plaintiffs' motions for a preliminary injunction and motion for a temporary restraining order in early 2021. *See Xiaomi Corp. v. DOD*, Civ. A. No. 21-280 (RC), 2021 WL 950144, at *1 (D.D.C. Mar. 12, 2021); *Luokung Tech. Corp. v. DOD*, 538 F. Supp. 3d 174, 178 (D.D.C. 2021).[15] The court in *Xiaomi* notably concluded that the CCMC designation process "was deeply flawed and failed to adhere to several different [legal] requirements" and that the Department's conclusion was "plainly" not supported by substantial evidence. 2021 WL 950144, at *8.

53. The Biden administration decided on June 3, 2021, to effectively scrap the CCMC List.[16] To replace the CCMC List, the Biden administration: (1) established the OFAC, Non-SDN Chinese Military-Industrial Complex Companies List, creating a new Chinese military-industrial complex companies sanctions regime and (2) established a new list—the CMC List—pursuant to Section 1260H of the National Defense Authorization Act for Fiscal Year 2021, which suffers from the same (and additional) procedural defects as the CCMC List.

## FACTUAL ALLEGATIONS

### A. Quectel's Business

54. Quectel Wireless Solutions, founded in 2010, is a global provider of IoT solutions and wireless technology. Quectel specializes in the design, development, and manufacture of cellular modules and antennas, which serve as critical components in IoT applications.

[15] In the third case, *Gowin Semiconductor Corp., v. U.S. Department of Defense,* Gowin moved for voluntary dismissal after the Department delisted it, and all other previously designated entities, pursuant to E.O. 14032. No. 1:21-CV-01396 (RC), ECF No. 12 (D.D.C. June 25, 2021).

[16] Exec. Order No. 14032, 86 Fed. Reg. 30145, *Addressing the Threat from Securities. Investments. that Finance Certain Companies of the People's Republic of China* (June 3, 2021).

55. Quectel's IoT components have applications in many industries, including asset tracking, digital signage, commercial telematics, remote monitoring, telehealth, retail, and automotive.

56. Quectel maintains the highest industry standards of security and data privacy. Quectel's products, which are designed only for personal and commercial uses, exceed industry standards and best practices in security and compliance measures.

57. Quectel does not design, develop, or modify products for military end users or end uses. Quectel enforces a strict policy of always confirming whether a customer intends to use products incorporating its components for a military purpose. If Quectel has knowledge of military use, or if any customer refuses to certify non-military use, the company refuses to sell.

58. Quectel complies with all U.S. and international export control and sanctions laws. Quectel requires its distributors and resellers to abide by the same restrictions.

59. Since its founding, Quectel has been under the control of a private individual, Patrick Qian, who is the CEO and Chairman of Quectel's Board of Directors. Patrick Qian remains the largest shareholder of Quectel. All other shareholders have holdings below 10%.

60. Patrick Qian is a permanent resident of Australia.

61. Quectel is an independent company that is traded on the Shanghai stock exchange.

62. Quectel is not aware of having received any investment funding from any entity of the PRC government since the company's founding.

63. Quectel is not and has never been owned or controlled by the PRC government, by any regional or municipal Chinese government entity, or by any entity that is owned or controlled by any Chinese government entity.

64. Quectel has never been owned or controlled by the People's Liberation Army ("PLA") or by any entity that is owned or controlled by the PLA.

65. Quectel operates internationally. Quectel is currently headquartered in Shanghai, China, and has offices, regional teams, and technical support centers across the world.

66. The United States is one of Quectel's primary markets. Quectel works closely with leading OEMs and major U.S. cellular network operators.

**B. The Select Committee on the Chinese Communist Party Peddles Erroneous and Misleading Information about Quectel**

67. The United States House of Representatives Select Committee on the Strategic Competition Between the United States and the Chinese Communist Party ("the Select Committee") wrote a letter on January 3, 2024, to then-Defense Secretary Lloyd Austin and then-Treasury Secretary Janet Yellen "outlining new information on Quectel Wireless Solutions' problematic relationships with a civil-military fusion arm of the Chinese government."[17]

68. The Select Committee letter is filled with errors and is poorly sourced. For example, the letter incorrectly states that Quectel has "multiple affiliations with [MIIT]."[18] This is entirely inaccurate. As stated above, Quectel is an independent company with no ties to the PRC government.

69. The Select Committee letter further misstates that "Quectel supplies IoT modules for BeiDou, the PRC's GPS alternative."[19] This is incorrect.

---

[17] Press Release, The Select Comm. on the CCP, *Gallagher, Krishnamoorthi Urge Admin. to Blacklist Quectel as a 'Chinese Military Company'* (Jan. 4, 2024), https://selectcommitteeontheccp.house.gov/media/press-releases/gallagher-krishnamoorthi-urge-administration-blacklist-quectel-chinese.

[18] *Id.*

[19] *Id.*

70. The letter also provides false and hyperbolic concerns over security vulnerabilities that have no basis in fact.[20] To the contrary, as Quectel has disclosed publicly, its products were independently validated as substantially exceeding industry standards and best practices across multiple cybersecurity measures.[21]

71. Quectel's modules meet the stringent standards of regulatory and conformance bodies such as CE, Federal Communications Commission ("FCC"), the Green Climate Fund, the PCS Type Certification Review Board, Bluetooth® SIG, and the Wi-Fi Alliance. Quectel's modules have earned certifications from more than eighty leading operators worldwide. Quectel has achieved more than 200 FCC certifications in the last two years alone.

**C. Defendants Designate Quectel as a CMC**

72. On January 7, 2025, the Department released a list designating fifty-six companies (not counting subsidiaries) as CMCs, including Quectel.

73. On January 24, 2025, through counsel, Quectel requested a copy of the full administrative record, so that it could avail itself of the Department's reconsideration process that had also been announced on January 7.

74. On January 27, 2025, counsel for Quectel received an unsigned e-mail response from the Department's "Section 1260 Mailbox" indicating that the Department would provide a "courtesy copy" of the "rationale for including Quectel on the Section 1260H List." The Department indicated that it would not provide a copy of the full administrative record and directed Quectel to make a Freedom of Information Act ("FOIA") request.

---

[20] *Id.*

[21] Press Release, Quectel, *Quectel IoT modules get high security scores from cybersecurity expert Finite State; pioneering cybersecurity transparency program begins* (Sep. 26, 2023), https://www.quectel.com/news-and-pr/iot-modules-high-security-finite-state/.

75. On February 4, 2025, counsel for Quectel received a copy of the Department's Report, dated December 6, 2024.

76. The Report alleged that Quectel was a "military civil fusion contributor" because of its "affiliation with the Chinese Ministry of Industry and Information Technology (MIIT) in research partnerships and projects" and that it "contributes to the Chinese defense industrial base through its development of IoT products with GPS." (Report at 6). These assertions are plainly false and the result of a wholly unreasonable investigation. As discussed further below, the support for these conclusions was an amalgamation of dated, questionable internet sources that provided second and even third-hand accounts of supposed connections to the Chinese government, which even if accepted as true do not support the Report's bottom-line conclusions.

77. Defendants did not provide any prior notice to Plaintiff indicating that the Department was considering designating Quectel as a CMC prior to issuing the List on January 7, 2025. Quectel first learned of the Designation when the updated 1260H List was made public.

78. Notwithstanding the Designation, Quectel does not meet the statutory definition of a CMC. Quectel is not "owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party" nor is it a "military-civil fusion contributor" that "contributes to the Chinese defense industrial base" under the statute.[22]

**D. Quectel Attempts to Engage with the Department**

79. On March 24, 2025, counsel for Quectel submitted a letter to the Department requesting removal from the 1260H List pursuant to the Department's reconsideration process. In

[22] FY2021 NDAA § 1260H(d)(1).

the letter, Quectel outlined in detail the many factual errors contained in the Report and explained why the basis for the Designation was without legal or factual basis. Quectel supported each of its assertions with a declaration from its CEO, Patrick Qian. This correspondence provided the Department with the most current information available regarding Quectel's business and demonstrated that the Designation was erroneous and could not be supported.

80. On April 8, 2025, in response to its request for removal from the 1260H List, counsel for Quectel received follow-up questions from the Department that had virtually no relation to Quectel's reconsideration request or the Department's stated basis for the Designation. The Department's response failed to acknowledge the errors contained in its December 6, 2024, Report. On April 25, 2025, Quectel provided detailed responses to the Department's questions.

81. On May 16, 2025, Quectel requested a status update from the Department via email. On May 20, 2025, the Department responded that it was continuing to review the information, and that it would "endeavor to process the review of Quectel's reconsideration request expediently."

82. On June 2, 2025, counsel for Quectel followed up with the Department via phone. Counsel spoke with a Department attorney who could not provide any specific information about Quectel's reconsideration request despite the substantial amount of information provided by Quectel.

83. On June 4, 2025, counsel for Quectel received additional follow-up questions from the Department via email, which, again, went beyond the scope of the basis set forth in the Report.

84. On August 6, 2025, after careful investigation and review of voluminous corporate records, counsel for Quectel provided written answers to the Department's additional questions.

85. On August 11, 2025, the Department indicated that it was reviewing Quectel's responses and posed even more follow-up questions, which, again, required a substantial investigation for Quectel to respond.

86. On November 19, 2025, after a diligent investigation, counsel for Quectel provided written answers to the Department's questions of August 11, 2025.

87. Counsel for Quectel followed up with the Department via email on December 12, 2025, to request an opportunity to meet in person to get a status update and provide further information that demonstrated that the year-old Designation was premised on faulty information and was without legal basis.

88. Counsel met with the Department on January 13, 2026. During the meeting, counsel for Quectel provided further details that Quectel had uncovered that showed the substantial unreliability of the information on which the Department relied for the Designation, including additional information about a consultant affiliated with organizations paid by a Quectel competitor spreading a false narrative about Quectel's purported military ties. Counsel also explained that the Report's conclusions that Quectel is a military-civil fusion contributor and contributes to the Chinese defense industrial base rely on erroneous facts and legal principles. During the meeting, Department representatives declined to provide any additional information about Quectel's status and could only confirm that its nearly year-old reconsideration request was still being reviewed.

89. On February 13, 2026, a pre-publication version of a Federal Register notice with an updated Section 1260H List was made available for public inspection. That version of the List indicated that Quectel remained designated based on an asserted "indirect affiliation with MIIT."

At no point during the reconsideration process had the Department indicated to Quectel or its counsel that it was considering this alternative basis under the amended 2025 version of the statute.

90. Approximately one hour after the February 2026 Notice was posted, the revised Section 1260H List was withdrawn by the Department.

91. On February 17, 2026, counsel for Quectel inquired of the Department as to whether this meant that the reconsideration process had been completed. In response, on February 20, 2026, the Department continued to obfuscate. It stated:

> The Department is currently still processing Quectel's reconsideration request. It came to the attention of the Department that the 1260H list posted for public inspection on the Federal Register on February 13 may require updates based on the statutory requirement to review the most recent information available. The Department is consistently reviewing the most recent information available. The Department will publish an updated list in accordance with the statute to make additions or deletions as the Secretary deems appropriate.

92. On March 11, 2026, Quectel transmitted a letter along with a proposed complaint—advising the Department of its intent to initiate litigation if Quectel was not removed from the Section 1260H List within 30 days. Counsel emphasized that as Quectel waited to hear from the Department, it was suffering cascading damage, including the imminent loss of a major supplier, making the urgency of the request even greater.

93. On March 24, 2026, counsel for Quectel sent an additional letter detailing the specific and imminent harm affecting Quectel, its business partners, and American automobile manufacturing as a direct consequence of the Designation.

94. The March 24 letter explained that one of Quectel's U.S.-based suppliers had expressed concerns regarding the Department's continued inaction with respect to the Designation and made the decision to terminate its relationship with Quectel for flash memory products. The letter further explained that this disruption would not only lead to significant lost revenue for

Quectel, but that the impact would be felt by many downstream suppliers and manufacturers in the U.S. automobile manufacturing industry.

95. The Department failed to respond to either letter beyond acknowledging receipt. On April 15, 2026, counsel for Quectel contacted the Department by phone to understand whether the Department had any intention of responding. During that call, counsel reiterated Quectel's concerns regarding the adequacy of the reconsideration process, including the inefficiency and potential prejudice of filing suit before the Department finalized its position.

96. On April 17, 2026, the Department provided a short email response to the points raised by Quectel's counsel during the April 15 phone conversation. The Department stated only that it could not determine when its review would be complete or when the updated 1260H List would be published in the Federal Register.

97. In a final effort to avail itself of the Department's reconsideration process and avoid unnecessary litigation, Quectel sent a letter on April 22, 2026, notifying the Department that (1) any attempt to revise the basis for Quectel's listing would be erroneous and in violation of both Section 1260H and the APA, and (2) its failure to reasonably engage with Quectel deprived Quectel of a fair and reasonable process for the adjudication of its reconsideration request. Quectel requested that, no later than April 29, 2026, the Department provide, at a minimum, a date certain by which it will finalize its reconsideration determination, and identification of any current factual bases or statutory grounds on which the Department would rely so that Quectel may be heard before it had to resort to litigation.

98. The Department acknowledged receipt of Quectel's letter on April 23, 2026. Despite ample notice of Quectel's intention to file suit, the Department failed to respond by the April 29 deadline.

99. It has been over one year since the Designation and, despite being provided extensive information in response to the Department's multiple rounds of questions, the Department is "still processing" Quectel's request for removal.

100. These efforts to engage constructively with the Department to administratively resolve this dispute are consistent with Quectel's longstanding history of compliance with U.S. policy and cooperation with the U.S. government.

101. Quectel engaged with the Department in good faith. It availed itself of the reconsideration process that the Department established at the time of its Designation. Quectel provided detailed responses to request after request from the Department—incurring significant amounts of time and cost—even where most of those requests had no apparent connection to the basis set forth in the Report that was currently being "reconsidered."

102. The failure to promptly remove Quectel confirms that this process is nothing more than a bureaucratic fig leaf intended to convince this Court that the Department afforded Quectel due process. It most certainly has not.

103. The Department relied on stale, dubious, and at times facially erroneous sources to manufacture a listing basis that does not meet the legal requirements of the statute. It gave Quectel no opportunity to be heard before inflicting the injurious listing on it.

104. When Quectel then, in good faith, provided detailed information about how and why the listing was wrong, the Department did not immediately withdraw the erroneous Designation. Rather, the Department used the reconsideration process to further investigate Quectel *for months* in the hope of finding a new basis to maintain the Designation.

105. By its nature, the reconsideration process is, thus, woefully inadequate.

106. Quectel has no adequate available administrative remedy, and has exhausted its administrative remedies, informally and formally. Quectel is left with no choice but to file the instant lawsuit.

### E. The Report's Two Predicate Findings—Concerning MIIT "Affiliation" and GNSS Compatibility—Are Unsupported and Contrary to the Record

107. The Report states that Quectel is a CMC based on its finding that Quectel is a military-civil fusion contributor to the Chinese defense industrial base. That conclusion relies, in turn, on two predicate findings, each necessary to the Designation: (1) Quectel is a military-civil fusion contributor "because of its affiliation with MIIT through research partnerships and production projects," and MIIT providing Quectel "recognition and awards," (Report at 7 (citation omitted)); and (2) Quectel "contributes to the Chinese defense industrial base through its development of IoT products" because some of these products are compatible with BeiDou, China's Global Navigation Satellite System ("GNSS"). (Report at 6).

108. As discussed herein, each of these findings: (1) is plainly erroneous; (2) ignores easily ascertainable facts and information that undermine the accuracy of the finding; (3) is not accompanied by a sufficient explanation; (4) relies on dated, unreliable sources; (5) is not the result of a reasonable investigation; (6) is not supported by substantial evidence; and (7) relies on conduct that pre-dates the passage of Section 1260H. Additionally, when the Department was indisputably in possession of the most current information, which explained why its basis was incorrect, the Department failed to take Quectel off the 1260H List.

#### *a. The Single Champion Award and the Silver Award Do Not Create An Affiliation With MIIT*

109. The Report alleges that Quectel's receipt of two "awards"—the Manufacturing Single Champion Product award in 2019 and the Silver Award in 2017—evidence that Quectel is affiliated with MIIT through "research partnerships."

110. Critically, the Report does not explain how either of these awards actually create a "research partnership"—or any sort of "affiliation" for that matter—with MIIT. Indeed, the Report fails to provide the most basic description of what these awards are and how they have anything to do with military-civil fusion. Likewise, the Report fails to explain how awards granted six to eight years before the Designation create a *current* affiliation with MIIT, as required by Section 1260H.

111. The Department failed to provide an explanation because it either failed to investigate the true nature of these awards or it ignored public information that was easily ascertainable concerning each of the awards.

112. The Single Champion Award is awarded to companies that "focus[] on certain specific segmented product markets in the manufacturing industry for a long time, has international leading production technology and has a single product market share that ranks among the top in the world."[23] The Single Champion Award therefore simply recognizes companies that have mastered the manufacturing of a particular product and, as a result, are industry leaders.

113. The Single Champion Award is a purely honorary recognition of a company's success as a manufacturing company that does not, by itself, provide any monetary benefits.

114. The Single Champion Award is bestowed upon hundreds of companies in a wide array of industries—the vast majority of which do not operate in industries which are related to, or could be leveraged by, the Chinese military.[24]

---

[23] *See Single champion of manufacturing industry: Let enters. move from "market champion" to "innovation champion,"* JIE DRIVE (June 28, 2022) (citation modified), https://www.jiegroup.com/news/industry-information/zhi-zao-ye-dan-xiang-guan-jun-rang-qi-ye-cong-shi-chang-guan-jun-zou-xiang-chuang-xin-guan-jun.html.

[24] *See Notice of the two departments on the announcement of the fourth batch of mfg. single champion enters. (prods.) & the first batch of mfg. single champion enters. that passed the*

115. Relying on criteria related to market share, time in business, and product quality, the Single Champion Award spotlights these companies for other manufacturers who want to emulate these successful business models. It does not on its own confer or create a preferential or referral status for the recipients.

116. The award cannot be reasonably understood to be a "research partnership" or "project" or otherwise create any sort of "affiliation"—direct or indirect—with MIIT. Moreover, the award cannot be reasonably understood to be a reliable indicator of whether a company contributes to military-civil fusion and/or the Chinese defense industrial base.

117. The Silver Award for the "2017 World Internet of Things Expo New Technology and New Product Achievement" is a purely honorary recognition awarded to Quectel's NB-IoT module for creating efficiencies for residential areas and non-military industries.

118. Over one thousand domestic and foreign enterprises submitted projects for awards at the 2017 World Internet of Things Expo.[25] The collected projects involved smart city, smart agriculture, smart home and other fields, covering many new products and technologies such as smart terminals, smart hardware, smart applications, IoT development platforms and IoT communication—products aimed for commercial uses, and not for military uses or users.

119. After a multi-level review process, twelve projects won gold awards, twenty-four won silver awards, and thirty-six won "winning" awards. MIIT is merely the organizing entity and does not participate in the scoring, evaluation, and determination process. Independent experts and

---

*review*, MINISTRY OF INDUS. & INFO. TECH. OF THE PEOPLE'S REPUBLIC OF CHINA (Nov. 27, 2019), https://www.miit.gov.cn/zwgk/zcwj/wjfb/tg/art/2020/art_3609530342094681bc2137e2da816ebd.html (English Translation).

[25] *Beijing Sensor Maker BeeTech Wins Silver Award for New Product at 2017 World IoT Expo,* YICAI GLOBAL (Sep. 12, 2017), https://www2.yicaiglobal.com/news/beijing-sensor-maker-beetech-wins-silver-award-for-new-product-at-2017-world-iot-expo.

academics made the selections for the awards. Quectel was selected for the award "[a]fter public solicitation" and "expert review."[26]

120. The NB-IoT module Quectel created has been adopted by civil non-military customers globally, "including water meter manufacturers, parking equipment manufacturers, fire equipment manufacturers, tracker manufacturers, street light manufacturers, etc."[27] The NB-IoT module has no relevance for military uses or users. The article cited by the Report specifically emphasized that "smart" technology using the NB-IoT module has been successfully rolled out for a range of "*residential*" applications.[28]

121. The award cannot be reasonably understood to be a "research partnership" or "project" or otherwise create any sort of "affiliation"—direct or indirect—with MIIT. The award also cannot be reasonably understood to be a reliable marker of whether a company contributes to military-civil fusion or the Chinese defense industrial base.

122. All of the foregoing information concerning the Single Champion and Silver Awards was readily ascertainable to the Department at the time of the Designation. The Department either failed to reasonably investigate the nature and purpose of these awards or ignored clearly relevant information.

123. The receipt of the Single Champion Award and/or the Silver Award do not reasonably support the conclusion that "MIIT is affiliated with Quectel through research partnerships" or that Quectel is otherwise "affiliated with" MIIT under any reasonable definition of the term.

---

[26] *Quectel's NB-IoT module won the silver medal at the 2017 World Internet of Things Expo*, DVBCN (Sep. 12, 2017), http://www.dvbcn.com/2017/09/12-147314.html (English Translation).

[27] *Id*.

[28] *Id*.

124. In March 2025, Quectel provided the Department with this information in a reconsideration petition supported by a declaration from CEO Patrick Qian. Nevertheless, the Department has still refused to correct or retract this basis for the Designation. The petition and accompanying declaration are attached as Exhibit 1 and incorporated by reference herein.

125. Specifically, Mr. Qian attested to the fact that both the Single Champion Award and the Silver Award represent "purely honorary, non-monetary recognition of the company's success as a manufacturing company." (Qian Decl. ¶¶ 15, 18). Mr. Qian assured the Department that "MIIT did not direct, participate in, oversee, or otherwise participate in Quectel's development" of its cellular wireless communication model or its NB-IoT module, nor did it direct Quectel to undertake the design of either. (*Id*. ¶¶ 16, 19).

*b.* ***The Video Streaming Project and the Blooming Cup Do Not Create An Affiliation With MIIT***

126. The Report points to Quectel's alleged "work[] with the MIIT and the Chinese Academy of Information and Communications Technology (CAICT) to carry out testing cooperation and standard formulation, including the 2019 project, 'Application of 5G Technology in Ultra-HD Live Streaming Acquisition and Transmission System at Large-scale Event Sites'" (the "Video Streaming Project"). (Report at 7). It further notes that "Quectel won the Excellence Award for the project in the final of the 2nd "'Blooming Cup'" (the "Excellence Award"). (*Id.*).

127. The Report again fails to explain how this project or the Excellence Award create any sort of "research partnership" or other affiliation with MIIT. It fails to explain what the Video Streaming Project is and what role (or lack thereof) MIIT had in its development.

128. Quectel's contribution to the Video Streaming Project was use of its RM500Q 5G Sub-6GHz wireless communication module for ultra-HD video live streaming.

129. MIIT had no role in the Video Streaming Project. MIIT did not fund it, did not direct Quectel to undertake it, and did not oversee its implementation or process. The Project was developed in collaboration with an American livestreaming technology company, headquartered in California.

130. The Video Streaming Project has nothing to do with military-civil fusion. The project leveraged Quectel's 5G wireless communication network and integrated intelligent encoding and multiplexing technologies to ensure stable and reliable ultra-HD 4K video streaming and conduct ultra-HD video live streaming events, like concerts and sports, in various locations. This is wholly unrelated to any military end use applications.

131. Quectel and its partner submitted this work to the second Blooming Cup, an international competition that was co-hosted by the MIIT along with four other organizations and received the Excellence Award. No MIIT research partnerships or projects are created by or flow from an entity's receipt of the Excellence Award.

132. The Video Streaming Project was not intended for any sort of military application, and, the Report, accordingly, fails to provide any explanation whatsoever regarding how this project purportedly contributes to military-civil fusion or the Chinese defense industrial base.

133. Participation in the Video Streaming Project and receipt of the Excellence Award do not reasonably support the conclusion that "MIIT is affiliated with Quectel through research partnerships" or that Quectel is otherwise "affiliated with" MIIT.

134. The foregoing information concerning the Excellence Award and the Video Streaming Project was readily ascertainable to the Department at the time of the Designation. The Department either failed to reasonably investigate the nature and purpose of these awards or ignored clearly relevant information.

Case 1:20-cv-01605-JB Document 1-1 Filed 05/11/22 Page 945 of 1187

135. Quectel provided the Department with the foregoing information in its March 2025 reconsideration petition, which also was supported by the aforementioned declaration from CEO Patrick Qian. Nevertheless, the Department still has refused to correct or retract this basis for the Designation.

136. Specifically, Mr. Qian attested that "MIIT did not direct, participate in, oversee, or otherwise participate in Quectel's development of the Project nor did it direct Quectel to undertake the design or development of the technology used for the Project." (Qian Decl. ¶ 13). Mr. Qian was clear: "the Excellence Award did not provide Quectel any direct material benefits or connection to MIIT." (*Id.* ¶ 14).

c. ***The Department Has Not Established Quectel's Current Affiliation with MIIT Under Any Reasonable Definition of the Term***

137. "Affiliated" in this context should be understood to mean "effectively controlled by [MIIT] or associated with [MIIT] under common ownership or control." *Xiaomi Corp.* 2021 WL 950144, at *6, *7 (holding in an analogous context that "[t]he overwhelming weight of authority," including Department regulations, "supports this definition" (citing, *inter alia*, 32 C.F.R. § 232.3 ("Defense regulation stating that an 'affiliate' is any person that controls, is controlled by, or is under common control with another person."))).

138. The record here is devoid of any evidence that Quectel is "effectively controlled by" or "under common ownership" of the MIIT, or that any of Quectel's research or production projects are under "control" by the MIIT.

139. Alternatively, if "affiliation" is defined as a "close formal or informal association" with, or a "close relationship" with the MIIT, the facts available to the Department likewise do not support such a finding.

140. Indeed, the Report identifies no such close "relationship" or "association." It relies solely on Quectel's receipt of three purely honorary awards given to countless other companies—conduct that does not create any current connection to MIIT and cannot reasonably be construed as establishing "affiliation" under Section 1260H or the applicable case law.

141. Moreover, the three awards and the Video Streaming Project each occurred *seven to nine years ago*. Even if these activities arguably rendered Quectel "affiliated with" MIIT then (which they did not), they certainly do not create a present affiliation with MIIT, as the plain language of Section 1260H requires.[29]

*d.* ***Quectel Does Not Contribute to the Chinese Defense Industrial Base***

142. The Report further claims that "Quectel contributes to the Chinese defense industrial base through its development of IoT products, to include IoT products with GPS, which are used in military equipment." (Report at 6).

143. The Report conspicuously does not allege that Quectel products are actually used in military equipment. Rather, it alleges that the products are compatible with GPS and other GNSS, which, according to the Department, includes the Chinese GNSS known as BeiDou.

144. Quectel does not provide, design, develop or modify products for military end uses or military end users. Quectel develops modules to be used in civilian IoT products *only*.

[29] Section 1260H requires that the Secretary of Defense identify CMCs "based on the *most recent information available*," § 1260H(a) (emphasis added) and, moreover, obligates the Secretary to make "Ongoing Revisions" to the List "based on the latest information available." § 1260H(b)(3) (emphasis added). *See also* § 1260H(a) ("[S]hall identify each entity… [that] is *operating* directly or indirectly in the United States… *that is a* Chinese military company.") (emphasis added); § 1260H(d)(2) (defining military-civil fusion contributor as entities "receiving", "residing in", as opposed to using past tense); § 1260H(d)(1)(B) (A CMC "means an entity *that is*…")) (emphasis added). *See also SZ DJI Tech. Co. Ltd. v. DOD*, Civ. A. No. 24-2970(PLF), 2025 WL 2761210, at *3, *13 (D.D.C. Sep. 26, 2025).

145. Quectel's products do not have a "substantial military application" under any reasonable understanding of the term.

146. OEMs procure Quectel's generic "off-the-shelf" modules when designing terminal products for civilian uses. Quectel has robust policies that ensure that anyone, including OEMs, who procures its modules (and ultimately any end users) is not relying on Quectel's modules for military applications.

147. Once again, Quectel provided the Department with this information in its March 2025 reconsideration petition, which was supported by the declaration of CEO Patrick Qian. Nevertheless, the Department has still refused to correct or retract this basis for the Designation.

148. Specifically, Mr. Qian attested to the fact that "BeiDou is not a Quectel customer, and Quectel does not directly provide modules or any other technology used by BeiDou." (Qian Decl. ¶ 21 ). Rather, Quectel's modules incorporate third party GNSS chipsets…which are capable of leveraging" all GNSS systems. (*Id.*). Further, "[OEMs] procure Quectel's compatible generic 'off-the-shelf' modules when designing terminal products for civilian uses." (*Id.* ¶ 22). Mr. Qian also attested to Quectel's robust end use compliance program. (*Id.* ¶ 23).

149. The Department's conclusion that Quectel contributes to the Chinese defense industrial base because it manufactures generic components that *could* be used in certain terminal products that *could* be used with BeiDou (or any other GNSS) is not sufficiently explained and is unreasonable on its face.

150. Even assuming, *arguendo*, that Quectel's products ***can*** have both commercial and military applications, that fact alone is insufficient to establish that an entity contributes to the Chinese defense industrial base. *Hesai Tech. Co. v. DOD,* 792 F. Supp. 3d 22, 40 (D.D.C. 2025).

151. Indeed, the Department's Report does not contain any credible evidence of a substantial military application for Quectel's products.

152. Moreover, as Quectel has informed the Department, civilian-designed products necessarily operate on civilian frequency bands of the BeiDou network—reinforcing that there is no possible military application for the terminal products containing Quectel's modules.

*e.* ***The Report Consistently Relies on an Erroneous and Poorly Sourced Factual Record***

153. The Report contains a multitude of other material errors, which significantly undermine the credibility of the Department' investigation and the conclusions drawn therefrom. *Cf. Xiaomi Corp.*, 2021 WL 950144, at *5 (finding Department's errors "do not inspire confidence in the fastidiousness of the agency's decision-making process").

154. The Report relies heavily on a *Newsweek* article[30] that contains numerous, significant errors, as well as stale media reports that are over five years old and do not support the Report's claims or conclusions.

155. For example, the Report's description of Quectel's location and a groundbreaking ceremony in 2023 appears to be drawn from the *Newsweek* article, stating that Quectel's new headquarters are located "in in a state-sponsored special high-tech commercial and research and development (R&D) zone" and that attendance by government officials at the ceremony indicated "government backing of the project and the company." (Report at 4 (footnote omitted)). However, Quectel's new headquarters are located at the intersection of Sifeng Highway and Henggang Highway, Sijing Town, Songjiang District, land parcel number 26-02, a residential neighborhood

[30] *See* Shaun Waterman & Didi Kirsten Tatlow, *China's Plan to Rule the World of IOL Smart Devices, FCC Urged to Act*, NEWSWEEK (Aug. 8, 2023, 5:00 AM), https://www.newsweek.com/chinas-plan-rule-world-iot-smart-devices-fcc-urged-act-1817682.

not a government-sponsored high-tech zone. This information is readily available in the public domain. Further, the article's reckless leap of logic (echoed by the Report) that Quectel must have had government funding for the construction because local dignitaries attended the groundbreaking is baseless and wrong.

156. The *Newsweek* article also relies on second and third hand accounts which are stale, biased, and inaccurate, including, conclusions from an asserted "expert" who Quectel has come to learn, on information and belief, is affiliated with two think tanks financially supported by one of Quectel's competitors and has been consistently disseminating false and inaccurate information about Quectel for years.[31]

157. The Report further relies on a Counterpoint Research article,[32] also cited in the *Newsweek* article, when claiming "Quectel's 2022 annual report . . . acknowledged government backing of its technology." (Report at 5, n.13). The cited Counterpoint Research piece does not, however, include this quote, nor does it discuss Quectel's 2022 annual report.

---

[31] Quectel issued a cease-and-desist letter demanding that certain entities stop disseminating false and defamatory statements about Quectel regarding risks associated with its products' security and the company's purported connections to the Chinese government. *See* Press Release, QUECTEL, *Quectel issues Cease & Desist Letters to Telit Cinterion, Thales Grp., DBAY Advisors, Liberty Bell Project & Charles Parton in response to coordinated disinformation campaign against Quectel* (Jan. 5, 2026), https://www.quectel.com/news-and-pr/cease-and-desist-letters-false-defamatory-statements/.

[32] *Global Cellular IoT Module Shipments Jump 14% YoY in 2022 to Reach Highest Ever,* COUNTERPOINT RSCH. (Mar. 29, 2023), https://www.counterpointresearch.com/insights/global-cellular-iot-module-shipments-2022.

158. Footnote 21 of the Report refers to a 2019 article,[33] published in SOHU.COM, to suggest that Quectel "worked with MIIT" on the Video Streaming Project; however, the cited article merely notes that MIIT "guided" the competition to which the project was submitted.

159. These and other clear errors were communicated to the Department—in some cases on more than one occasion—during the reconsideration process. However, the Department has not corrected these errors and, on information and belief, has not taken any steps to further investigate the reliability of the sources cited in the Report.

160. The Department's reliance on such inaccurate information demonstrates that it failed to support the Designation with the kind of reasonable investigation demanded by law and has not acted on the latest information available.

161. Because the Department's conclusions as to Quectel "rest[] upon a factual premise that is unsupported by substantial evidence," the Department's Designation is arbitrary and capricious. *Ctr. for Auto Safety v. Fed. Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992) (citation omitted).

### F. The Department Failed to Remove Quectel's Designation Despite Being in Possession of the Latest Information

162. As illustrated above, the Department could have ascertained, easily on its own, that its findings concerning Quectel were erroneous before the Designation.

163. After receiving Quectel's reconsideration petition and the Qian Declaration (attached and incorporated herein as Exhibit 1) in March 2025, however, there can be no dispute that the Department was in possession of the latest information available—*i.e.,* information

[33] *Quectel won the Excellence Award in the final of the 2nd "Blooming Cup" 5G Application Competition*, SOHO, (Oct. 23, 2024), https://www.sohu.com/a/349059358682625 (English Translation).

demonstrating that Quectel is neither affiliated with MIIT nor does it contribute to the Chinese defense industrial base. Nevertheless, the Department has refused to act.

164. Quectel provided even more information to the Department concerning its business and associations in email correspondence from May through November 2025. This information was also shared with the Department during an in-person presentation in January 2026. Yet, the Department has still not removed Quectel from the Section 1260H List despite its express obligations under Section 1260H to act on designations based on the "latest information available."

165. It has now been over one year since Quectel submitted its reconsideration petition, yet the Department has not given Quectel any sign that it will correct its errors and remove the baseless Designation.

166. Also, Section 1260H(b)(3) *requires* the Department to make deletions from the CMC List "*based on the latest information available*." (Emphasis added). When an agency fails to take a discrete agency action that it is required to take, it violates both Section 1260H and the APA. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

**G. The Designation Goes Beyond the Ambit of Section 1260H**

167. It is clear that Congress did not intend to sweep a company like Quectel into the CMC regime.

168. The U.S. Department of State has outlined the threat posed by "military-civil fusion" to U.S. national security: "Military-Civil Fusion … is an aggressive, national strategy of the CCP. Its goal is to enable the PRC to develop the most technologically advanced military in the world."[34]

[34] *Military Civ. Fusion & the People's Republic of China*, U.S. DEP'T OF STATE (May 28, 2020), https://www.state.gov/wp-content/uploads/2020/05/What-is-MCF-One-Pager.pdf.

169. The U.S. Department of State has further explained that the United States should be concerned about Military-Civil Fusion because it:

> [T]hreatens the trust, transparency, reciprocity, and shared values that underpin international science and technology collaboration and fair global business practices. In a clandestine and non-transparent manner, the CCP is acquiring the intellectual property, key research, and technological advancements of the world's citizens, researchers, scholars, and private industry in order to advance military aims.[35]

170. There is no evidence that Quectel implicates these concerns *at all*.

171. The conduct set forth in Section 1260H(d)(2)(A)-(F) falls into two categories. The first category encompasses entities whose primary purpose is to operate as a militaristic arm of the State. These entities are essentially extensions of the Chinese military. *See, e.g.*, § 1260H(d)(2)(D) ("[E]ntities or subsidiaries defined as a 'defense enterprise' by the State Council of the People's Republic of China."), (E) ("Entities residing in or affiliated with a military-civil fusion enterprise zone . . . ."), (G) ("Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.").

172. The second category of entities in Section 1260H(d)(2) are those entities which, at their core, are commercial (as opposed to military) entities, but whose products can be leveraged by the Chinese military, and the Chinese government has provided the entity with some form of support to leverage those products. This includes Section 1260H(d)(2)(B). *See* § 1260H(d)(2)(A) ("knowingly receiving assistance" from the Chinese government or Chinese Communist Party through efforts "initiated under the Chinese military industrial planning apparatus"), (B) ("affiliated with the Chinese Ministry of Industry and Information Technology"), (C) ("receiving assistance, operational direction or policy guidance from the State Administration for Science,

[35] *Id.*

Technology and Industry for National Defense"), (E) ("receiving assistance from the Government of China through [a military-civil fusion] enterprise zone"), (F) ("awarded with receipt of military production licenses" from the Chinese government).

173. Quectel cannot reasonably be placed in either of those categories and therefore cannot "appropriate[ly]" be designated a military-civil fusion contributor. Quectel is a commercial entity which specializes in the design, development, and manufacture of cellular modules and antennas, which serve as critical components in IoT applications. The company neither operates as an extension of the Chinese military such that the entity is effectively indiscernible from the Chinese military, nor does it in any way supply or otherwise partner with the Chinese military. It also does not receive support from the Chinese government, in the form of research partnerships or projects, in exchange for access to any sort of dual-use technology. The three awards and Video Streaming Project are clearly not evidence of such support. Moreover, as described above, Quectel's IoT components are not used for, designed, for or otherwise intended for military applications, and Quectel maintains a robust compliance program to ensure its products are not used for any downstream military use.

174. In a report released by the Secretary of Defense, a "military-civil fusion contributor" was defined in a similar manner to include any entity that "connects the military and civilian sectors in a way that serves as a catalyst for innovation and economic development, yields an effective unity of effort in advancing dual-use technologies, especially those suited for 'intelligentized' warfare, and facilitates effective industrial mobilization during wartime." [36]

[36] DOD, Annual Report to Congress, *Military & Security Developments Involving The People's Republic Of China* at 28 (2023).

175. But, again, Quectel does not meet this definition. For the reasons described above, Quectel's IoT products cannot be said to "fus[e] China's defense industrial base to its civilian technology and industrial base," and Quectel's IoT products have not been used for "military applications or to more broadly advance military [science & technology]."[37] Quectel's technology is solely designed and intended for non-military uses, and Quectel requires that its products not be used for any military use downstream. No portion of Section 1260H(d)(2) provides authority for Defendants to identify Quectel as a "military-civil fusion contributor."

176. Further, to designate a company based on the winning of the three awards would ensnare a wide range of other companies that are likewise not CMCs. The Single Product Champion Award, for example, is given to companies in a wide array of industries, including nylon stretch yarn, manufacturing equipment, and power tool switches, confirming that it has nothing to do with contributing to military-civil fusion or China's defense industrial base.

**H. Quectel is Immediately and Irreparably Harmed as a Direct Result of the Erroneous Designation**

177. As a result of the Designation, Quectel has suffered significant and ongoing financial and reputational harm.

178. The Designation has significantly damaged Quectel's relationship with existing customers. Numerous long-time Quectel customers have expressed their concerns about engaging in continued business with Quectel due to its presence on the Section 1260H List. Some of these customers have even formally ended their business relationship, specifically citing to Quectel's designation as "a Chinese military company" as the reason, even though they are not legally required to do so. Some customers have further informed Quectel that, due to the Designation,

[37] *Id.* at 28, 31.

they have no plans to engage with Quectel in the future. Quectel's existing and potential customers have referred to the Section 1260H List as "the blacklist" in their correspondence with Quectel.

179. In particular, one of Quectel's key suppliers has made the significant decision to terminate its supplier relationship with Quectel for flash memory products, specifically citing the Section 1260H List and the Department's inaction on Quectel's reconsideration request as the reason why. The consequences of stopping shipment of flash memory have caused and will continue to cause substantial financial harm to Quectel."

180. Quectel's existing and potential customers are concerned by the Designation for good reason. As explained above, Section 1260H has been used to "nam[e] and sham[e]" companies and their business partners for supposedly supporting the Chinese military. In addition, by law, after June 30, 2027, the Secretary of Defense may not "enter into, renew, or extend a contract for the procurement of goods or services *that include goods or services produced or developed*" by an entity identified on the CMC List, or an entity subject to the control of an entity identified on the CMC List. *Id*. § 805(a)(1)(B) (emphasis added). Thus, Quectel's customers will be prohibited from entering into contracts with the Department of Defense if they provide goods or services that are sourced from or developed by Quectel.

181. The Designation also deprives Quectel of its right to bid on future contracts with the U.S. government. As FY2024 NDAA § 805(a)(1)(A) makes clear, the Department is automatically prohibited from engaging with Quectel on future contracts due to its presence on the 1260H List. More broadly, the Designation has imposed an unwarranted public stigma on Quectel and has exposed the company to an array of other potential regulatory restrictions in the United States.

## CLAIMS FOR RELIEF

### COUNT I: The Designation of Quectel as a CMC Violates the APA, 5 U.S.C. § 706(2)(A)-(C) (Against All Defendants)

182. Quectel realleges and incorporates by reference the allegations contained in the preceding paragraphs.

183. Each of the Defendants is subject to the requirements of the APA.

184. Defendants' designation of Quectel as a CMC constitutes final agency action that is reviewable by this Court and "for which there is no other adequate remedy." 5 U.S.C. § 704.

185. Quectel has no adequate or available administrative remedy; in the alternative, any further effort to obtain an administrative remedy would be futile.

186. The APA requires a reviewing court to set aside agency action that is (i) "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A); (ii) "contrary to constitutional right," *id.* § 706(2)(B) or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).

187. As explained in detail above, Defendants' designation of Quectel is arbitrary and capricious and in excess of statutory authority because:

a. Quectel's technologies and products cannot be said to contribute to the Chinese defense industrial base, as required by Section 1260H;

b. Quectel is not "affiliated with MIIT" and does not otherwise fit any of the categories listed by Section 1260H for qualifying as a "military-civil fusion contributor;"

c. The Department failed to examine the relevant, publicly available data, conduct a reasonable investigation to predicate the Designation, and

articulate a satisfactory explanation showing a rational connection between the facts found and the conclusion reached;

d. The Department relied on dated, second- and third-hand media and biased consultant materials while disregarding the "latest information available;"

e. The Department offered no comprehensible standard for, nor meaningful analysis of, how the asserted factual bases make Quectel a military-civil fusion contributor that contributes to the Chinese defense industrial base, and failed to explain why whatever standard it was applying justified designation of Quectel but not other similarly situated companies; and

f. The Department did not support the Designation with substantial evidence.

188. Defendants further violated the APA by applying new, previously unarticulated substantive criteria retroactively to years-old conduct that was lawful when undertaken. Every factual basis cited by the Department—three merely honorary awards from 2017–2019, a 2019 video-streaming project, and generic "GNSS compatibility"—predates the statute's operative criteria.

189. The Supreme Court has squarely held that "statutory grant[s] of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Nothing in Section 1260H remotely authorizes retroactive application of new standards to past conduct. In fact, the language of Section 1260H underscores Congress's forward-looking design: it requires the Secretary to act based on "the most recent information available." Retroactive reliance on stale, outdated facts directly contravenes this statutory command.

190. Finally, Defendants violated the APA by acting contrary to Quectel's constitutional rights as set forth in Counts V-VI, *infra.*

191. Defendants' unlawful acts are causing and will continue to cause irreparable harm to Plaintiff and third parties. Plaintiff has no adequate alternative to review under the APA.

**COUNT II: Defendants Failed to Observe the Procedures Required by Law In Designating Quectel as a CMC in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (Against All Defendants)**

192. Quectel realleges and incorporates by reference the allegations contained in the preceding paragraphs.

193. The APA requires the reviewing court to set aside agency action that is undertaken without observance of procedure required by law. 5 U.S.C. § 706(2)(D).

194. Defendants failed to observe procedures required by law in making the Designation, including by: (a) failing to undertake a reasonable investigation into the basis for the Designation; (b) failing to make a sufficient finding that Quectel is a "military-civil fusion contributor to the Chinese defense industrial base," (*see* Section 1260H(d)(1)(B)(i)(II)); (c) failing to make the Designation based on the latest information available; and (d) designating Quectel as a CMC in violation of its constitutional rights (*see* Counts V-VI, *infra*).

195. Defendants' unlawful acts are causing and will continue to cause irreparable harm to Quectel and third parties. Quectel has no adequate alternative to review under the APA.

### COUNT III: The Department Violated the Administrative Procedure Act, 5 U.S.C. § 706 (1) Because the Department Failed to or has Unreasonably Delayed Removing Quectel's Designation (Against All Defendants)

196. Quectel realleges and incorporates by reference the allegations contained in the preceding paragraphs.

197. 5 U.S.C. § 706(1) creates a cause of action to "compel agency action unlawfully withheld or unreasonably delayed." [C]laim[s] under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."[38]

198. Pursuant to Section 1260H and rulemaking by the Department, Defendants have a discrete duty under Section 1260H(a) to: (1) ensure designations are supported by "the most recent information available;" (2) act on reconsideration requests in a reasonable time and manner; and (3) make additions or deletions to the Section 1260H List and provide an updated version of the List to Congress on an annual basis.

199. Defendants have failed to carry out each of these discrete duties or, in the alternative, have unreasonably delayed in carrying each out.

200. Defendants have been in possession of "the most recent information available" showing that its basis for Quectel's Designation is erroneous since at least March 2025 when Quectel submitted its reconsideration request. Yet, Defendants have failed to remove Quectel's Chinese Military Company status despite having a statutory obligation to do so.

201. Alternatively, Defendants have unreasonably delayed removing Quectel's status in light of, *inter alia:* (1) Defendants' statutory obligation to act on the most recent information available; (2) Defendants' statutory obligation to update Congress no less than annually; (3) the

[38] *Norton*, 542 U.S. at 64 (alterations in original).

profound and existential harm a designation can have on a company and its business partners and (4) the Department's apparent efforts to announce the disposition of reconsideration petitions and new CMC designations at a time that is beneficial politically.

202. As explained above, Defendants' unreasonable delay is further evidenced by the lack of an identifiable rationale for the reconsideration process, and Department's failure to follow a rational and consistent approach to its reconsideration process. *First,* it appears the Department unreasonably prolongs the reconsideration process as a means of examining alternative bases for designating the company, rather than acknowledging that its stated basis is inaccurate or engaging with the designated company on the merits of its request. *Second,* while the Department has previously changed or rescinded designations on a one-off basis, on information and belief, the Department is withholding the disposition of Quectel's reconsideration request until after it finalizes its annual listing of all CMC entities to Congress. *Third,* the process also, almost invariably, requires a company to initiate litigation in order to get the Department to correct an erroneous designation. Indeed, in three of the four court challenges to CMC designations, the Department has *revised* its basis for designating during the proceedings—requiring the designated company, the Executive Branch, and the courts to needlessly expend resources challenging a determination that the Department could not defend. *See Advanced Micro-Fabrication Equip. Inc. China v. U.S. Dep't of Def.*, No. 24-cv-2357 (PLF) (D.D.C. Aug. 14, 2024); *Hesai Tech. Co. v. U.S. Dep't of Def.*, No. 24-cv-1381 (PLF) (D.D.C. May 13, 2024); *SZ DJI Tech. Co., Ltd. v. U.S. Dep't of Def.*, No. 24-cv-2970 (PLF) (D.D.C. Oct. 18, 2024). In two of those cases, Defendants provided an alternative basis for designating the company during the litigation, leading to even longer delays and requiring the company to essentially re-start its legal challenge to the designation. In its efforts to avoid litigation, Quectel identified this very problem given that the

withdrawn February 2026 Notice suggests the Department may be considering relying on different grounds to designate Quectel.

203. Additionally, under Section 555(b) of the APA, agencies must conclude matters presented to them in a reasonable time, yet Defendants have taken no action for over a year despite receiving indisputable evidence that Quectel does not meet the statutory criteria for designation. 5 U.S.C. § 555(b). Defendants have also failed to provide Quectel with any notice, explanation, or statement of reasons in response to its reconsideration request in violation of Section 555(e) of the APA. *Id.* § 555(e).

204. Defendants' failure to remove Quectel's Designation has caused, and will continue to cause, ongoing harm to Quectel. Quectel has no adequate alternative to review under the APA.

**COUNT IV: The Designation of Quectel as a CMC and Failure to Correct the Erroneous Designation Was *Ultra Vires*, in Excess of the Agency's Statutory Authority (Against All Defendants)**

205. Quectel realleges and incorporates by reference the allegations contained in the preceding paragraphs.

206. Section 1260H sets forth a specified and exclusive procedure for the Department of Defense to exercise its statutory authority to designate an entity as a CMC. As explained above, Defendants' designation of Quectel as a CMC exceeded the authority granted to the Department under the statute because Quectel does not qualify for such agency designation under the criteria set forth in Section 1260H, and the Department did not follow the statutorily mandated procedures for making the Designation. Moreover, Defendants failed to set forth an adequate basis for the Designation and, upon being presented the "latest information" concerning the factual basis for the Designation, Defendants failed to remove Quectel's Designation.

207. Furthermore, Section 1260H sets forth clear rules and procedures for the removal of a company's status as a CMC when the most recent information available demonstrates that it does not meet the statutory definition. As explained above, Defendants departed from these rules and procedures in myriad ways including, but not limited to, by: (a) withholding a decision for an indefinite period despite a complete record, (b) failing to substantively engage with the information submitted, (c) withholding resolution of a discrete and finalized reconsideration request until a broader list of designations can be finalized and transmitted to Congress; and/or (d) preserving the Designation by shifting or revising rationales only after a designated entity seeks judicial review. Administering the statute in this manner exceeds the authority Congress conferred and renders the required removal procedures illusory.

208. Defendants' original and continued designation of Quectel as a CMC was accordingly *ultra vires* and in excess of the Department's statutory authority.

209. Defendants' unlawful acts are causing and will continue to cause irreparable harm to Quectel and third parties.

**COUNT V: Section 1260H Violates the Fifth Amendment as Applied to Quectel (Against All Defendants)**

210. Quectel realleges and incorporates by reference the allegations contained in the preceding paragraphs.

211. The Fifth Amendment to the U.S. Constitution provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. At a minimum, the Due Process Clause of the Fifth Amendment requires notice and "an opportunity to be heard at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976).

212. Plaintiff Quectel, as a foreign entity that has established substantial connections to the United States, is entitled to the protections of the due process clause. For example, Quectel has operations in California, employs American workers, and has substantial business relationships with U.S. entities.

213. The Designation of Quectel as a CMC deprives Quectel of its property and liberty rights, including current and future revenue from its U.S. business partners, business relationships with U.S. suppliers, the ability to effectively operate its chosen business, the ability to contract with U.S. government agencies, the ability to contract with companies that want to do business with U.S. government agencies, as well as reputational and professional goodwill.

214. Defendants violated Quectel's due process rights both in connection with the original Designation and, independently, through the manner in which they have administered the reconsideration process as applied to Quectel.

215. Prior to making the Designation, the Department undertook a facially unreasonable investigation into Quectel's possible status as a CMC. It then failed to afford Quectel any notice or opportunity to respond to or be heard on the Designation despite the devastating effects an erroneous designation could have on a company like Quectel.

216. Moreover, in making the Designation, the Department relied on criteria that, even if it were to provide a valid basis for the Designation, could apply to countless entities not designated as a CMC. In singling out Quectel, the Department has failed to rely on a clear and discernable standard that affords companies fair notice of why the Department would opt to designate one particular company and not another.

217. After the Designation, the Department relied on a pretextual reconsideration process in order to search for a new basis to designate Quectel—rather than to actually *reconsider*

the current basis for the Designation. In doing so, the Department required Quectel to undertake substantial time and expense to respond to its requests—as Quectel continued to suffer under the Designation—while the Department had no intention of reversing course. The Department, again, failed to make a reasonable inquiry into the latest information available related to Quectel, including information provided to it as part of the reconsideration process and failed to give Quectel a meaningful opportunity to be heard.

218. As explained above, the Department's administration of the reconsideration process with respect to Quectel separately and further violated its due process because the Department (a) withheld its decision for an indefinite period despite a complete record that plainly demonstrated the Designation was in error; (b) failed to substantively engage with the information submitted or with Quectel's repeated requests for information concerning the reconsideration process; (c) withheld resolution of Quectel's discrete and finalized reconsideration request until a broader list of designations can be finalized and transmitted to Congress; and (d) required Quectel to initiate litigation in order to foster any meaningful agency action. A process that functions in this manner is not a genuine administrative remedy; it encourages waste of government, party, and judicial resources and deprives affected entities of fair process.

219. Attempting to preserve Quectel's Designation by re-listing on a new basis while reconsideration and judicial review of the original Designation are pending would not cure the due process violation. To the contrary, it would confirm that reconsideration operates only as a delaying mechanism rather than as a meaningful opportunity to be heard, thereby compounding the constitutional injury.

220. Defendants' singling-out of Quectel has also deprived Quectel of equal protection of the laws. Quectel's Designation as a CMC violates Quectel's right to equal protection because

Quectel has been treated differently than similarly situated companies. Defendants are not empowered to cherry-pick certain companies to add to the Section 1260H List and have failed to add other similarly situated Chinese companies to the Section 1260H List. For example, there are numerous other companies presented with the "Single Champion" Award or similar awards who do business in the United States and have not been designated a CMC.

221. Defendants' unlawful acts are causing and will continue to cause irreparable harm to Quectel and third parties.

**COUNT VI: Section 1260H is Void for Vagueness**
**(Against All Defendants)**

222. Quectel realleges and incorporates by reference the allegations contained in the preceding paragraphs.

223. As described above, Quectel is entitled to the protections of the due process clause.

224. The Due Process Clause requires that persons or entities must be given fair notice of conduct that is forbidden or required. If it does not, the statute is void-for-vagueness. Among other things, this doctrine ensures that those enforcing the law do not act in an arbitrary or discriminatory way. *See United States v. Lesh*, 107 F.4th 1239, 1249-50 (10th Cir. 2024). Section 1260H is unconstitutionally vague as applied to Quectel.

225. Section 1260H does not clearly define what it means for an entity to be "affiliated with" MIIT, nor does it articulate any intelligible standard for determining when an entity "contributes to the Chinese defense industrial base" as a "military-civil fusion contributor." As the D.C. Circuit has explained, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Lesh*, 107 F.4th at 1249 (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)). Here, the statute's undefined terms permitted

Defendants to apply shifting, standardless criteria to Quectel—treating honorary awards issued years earlier, a civilian 5G video-streaming project, and the routine commercial functionality of generic IoT modules as sufficient bases for designation, even though none of this conduct could have alerted Quectel that it risked being labeled a Chinese military company.

226. As applied to Quectel, Section 1260H therefore failed to provide fair notice of what conduct could result in designation and invited arbitrary, inconsistent enforcement. The statute's vague terms enabled Defendants to rely on inaccurate, outdated, and irrelevant information, and to treat Quectel differently than similarly situated commercial entities without any principled basis.

227. Defendants' unlawful acts are causing and will continue to cause irreparable harm to Quectel and third parties.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1. Declare the Designation arbitrary and capricious, *ultra vires*, and otherwise unlawful and set it aside;

2. Remand this matter to the Department of Defense with instructions to remove Quectel's Designation;

3. Declare that Defendants' failure to remove Quectel from the CMC List is action unlawfully withheld and/or unreasonably delayed;

4. Declare that Defendants violated Quectel's rights under the Due Process Clause of the Fifth Amendment and Article I of the U.S. Constitution;

5. Enjoin Defendants from taking any actions to enforce Section 1260H, including from continuing to identify Quectel as a CMC;

6. Issue an order vacating and setting aside the Designation, permanently enjoining Defendants from implementing or enforcing that Designation, and preserving the status quo;

7. Award Quectel its costs and reasonable attorney fees; and

8. Grant any further relief that this Court may deem just and proper.

DATED: May 11, 2026

*<u>/s/ Brian Fleming</u>*
Brian J. Fleming
Wendy Wysong
(*reactivation forthcoming*)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-8158
bfleming@steptoe.com
wwysong@steptoe.com

Michael G. Scavelli
(*pro hac vice* forthcoming)
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900
mscavelli@steptoe.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>JURY TRIAL DEMANDED<br><br>[redacted] |

**PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE NO. 1 REGARDING PRECLUSION OF EVIDENCE, TESTIMONY, OR ARGUMENT REFERENCING THE CHINESE GOVERNMENT OR MILITARY**

# TABLE OF CONTENTS

A. The Evidence is Relevant to the Parties' Claims and Counterclaims..........1

B. The Probative Value Substantially Outweighs Any Prejudice....................3

# TABLE OF AUTHORITIES

Page(s)

Cases

*Dyson Tech. Ltd. v. Maytag Corp.*,
No. 05-434 (GMS), 2007 WL 6599027 (D. Del. May 25, 2007)..........................3

*IOENGINE, LLC v. Paypal Holdings, Inc.*,
No. 18-452-WCB, 2022 WL 2800911 (D. Del. June 27, 2022)............................3

*Personalized User Model v. Google*,
No. 09-525-LPS, 2014 WL 807736 (D. Del. Feb. 27, 2014) ................................3

*United States v. Tao*,
No. 19-20052-JAR, 2022 WL 252019 (D. Kan. Jan. 27, 2022)............................3

Quectel's motion is overbroad. Philips agreed not to disparage China, the Chinese people, or Chinese companies, or make inflammatory references to the Chinese government or military. But Quectel's motion goes further, seeking to preclude any reference to Quectel's Chinese identity even where directly relevant to the claims in the case, including counterclaims Quectel itself asserted.

**A. The Evidence is Relevant to the Parties' Claims and Counterclaims**

Philips's Complaint alleges inducement and joint infringement by Quectel of Eagle. D.I. 218, ¶¶ 86-87, 121-122. The basis for such claims is established through evidence showing Eagle is Quectel's "onshoring partner" for "companies in the U.S. that do not want to buy IoT modules from a Chinese company" and that "Eagle was created to onshore production of infringing products of Quectel." *Id.* ¶¶ 17 and 52. Quectel established Eagle because its ability to conduct U.S. business is limited due to its designation as a Chinese military company. *See* Mot., Ex. 2. While Philips does not intend to malign China or Chinese companies, these facts are relevant to Philips's infringement claims. *See* D.I. 218, ¶¶ 64, 86.

The evidence is also relevant to Quectel's counterclaims. [redacted]. [redacted]

[redacted] Yet, Quectel's First Counterclaim alleges Philips "attempted to extract unfair and unreasonable royalty fees" (D.I. 233, Counterclaim ¶ 20), and its Second Counterclaim alleges Philips "improperly bas[ed] its alleged FRAND royalty rates on different products and standards untied to the IoT industry." (*Id.*, ¶ 51).

Quectel argues, "Philips has no claims in this case regarding Quectel's negotiating behavior." Mot. at 3. That is incorrect. In evaluating good or bad faith, the jury must understand the full negotiation context, including that Quectel set up an onshoring partner to increase U.S. sales while negotiations were ongoing, and that Quectel refuses to compensate Philips for infringement by its partner Eagle.

The facts also show that [redacted] (*See* Ex. 1, ¶¶ 150-154, Tbls 1, 2). The jury cannot evaluate whether Philips's offers were FRAND without understanding that [redacted]. Quectel also invoked its Chinese identity during the negotiations—[redacted] (*Id.*, ¶ 299(b); *see also* 259(c)). Dr. Teece opines that [redacted] (*Id.*, ¶ 299(b)). Even Quectel's own expert confirms that Quectel *itself* asked for

geographically differentiated rates—[redacted] (Ex. 2, ¶ 403). Quectel cannot exclude the category of evidence that it inserted into the negotiations.

**B. The Probative Value Substantially Outweighs Any Prejudice**

Probative value is high: the evidence shows that Philips acted in good faith while Quectel acted in bad faith. Prejudice is low: Philips does not seek to disparage China or Chinese companies, but to explain its infringement claims, show its offers ([redacted] were reasonable, and demonstrate that it negotiated in good faith. None of this requires a "trial-within-a-trial."

Quectel's authorities are inapposite. *IOENGINE, LLC v. Paypal Holdings, Inc.*, No. 18-452-WCB, 2022 WL 2800911, at *3 (D. Del. June 27, 2022) excluded references to plaintiff being a "troll," but the evidence here is not "pejorative," but directly relevant to Quectel's counterclaims. *Dyson Tech. Ltd. v. Maytag Corp.*, No. 05-434 (GMS), 2007 WL 6599027, at *2 (D. Del. May 25, 2007), and *Personalized User Model v. Google*, No. 09-525-LPS, 2014 WL 807736, at *4 (D. Del. Feb. 27, 2014), excluded nationality evidence with marginal probative value and no bearing on the merits. And *United States v. Tao*, No. 19-20052-JAR, 2022 WL 252019, at *6–9 (D. Kan. Jan. 27, 2022), was a criminal case where the Chinese government was irrelevant to the charges. Here, Quectel's own counterclaims make the China-specific licensing terms directly relevant. To the extent the Court has residual concern, a limiting instruction under Rule 105 would suffice.

/s/ *Adam W. Poff*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

*Of Counsel*:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Thomas M. Relyea (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Dated: July 10, 2026

# EXHIBIT 1

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# EXHIBIT 2

[redacted]

[redacted]

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

KONINKLIJKE PHILIPS N.V.,

Plaintiff,

v.

QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,

Defendants.

C.A. No. 20-cv-1710-CFC

[redacted]

**QUECTEL'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1: PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REFERENCING THE CHINESE GOVERNMENT OR MILITARY**

Philips's opposition fails to identify any issue or argument that cannot be presented without referencing the Chinese military or government, Quectel's alleged ties to them, or negatively using Quectel's identity as a Chinese company.

This Court already ruled that Eagle-specific issues "will be tried in a separate trial or trials to be conducted after the December 2026 trial in Civil Action No. 20-1707." D.I. 274. Philips has no legitimate reason for injecting Eagle into its trial with Quectel. Philips's disputed allegation that Eagle is relevant because Quectel's U.S. business is limited by its "designation as a Chinese military company" forces the parties to litigate that military designation, which remains contested in separate litigation. Opp. at 1. That is precisely the trial-within-a-trial Rule 403 forbids.

Philips's FRAND arguments do not justify admitting government or military evidence either. Opp. at 1-3. The proofs Philips [redacted] do not depend on Quectel's national identity and would apply equally to implementers based in the U.S. or elsewhere. They certainly lack any tie to the Chinese government or military. Philips can present its evidence without ever suggesting that Quectel is a Chinese military company. Indeed, Philips cites no case admitting a party's nationality, foreign government, or military ties under these circumstances, and no limiting instruction can cure the prejudice of asking a jury to accept a contested military designation still being litigated elsewhere. The Court should grant Quectel's motion *in limine* No. 1.

Dated: July 14, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive

Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

**WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 244 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026**,** I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Beth Ann Swadley (No. 6331)<br>Parks Kingery (No. 7416)<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>bswadley@ycst.com<br>pkingery@ycst.com<br><br>Kevin M. Littman<br>Lucas I. Silva<br>Thomas Relyea<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Tel: (617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br>tom.relyea@foley.com<br><br>Alexis K. Juergens<br>FOLEY & LARDNER LLP<br>95 S State Street, Suite 2500<br>Salt Lake City, UT 84111<br>Tel: (801) 401-8900<br>ajuergens@foley.com<br><br>Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800 | Karen E. Keller (No. 4489)<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 298-0700<br>kkeller@shawkeller.com<br><br>***Attorney for Defendant Eagle Electronics Inc.***<br><br>Kenneth L. Dorsney (No. 3726)<br>Cortlan S. Hitch (No. 6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Blvd, Suite 100<br>Wilmington, DE 19803<br>Tel: (302) 888-6988<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>Kirk T. Bradley<br>Lauren Griffin<br>ALSTON & BIRD LLP<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203<br>Tel: (704) 444 -1030<br>kirk.bradley@alston.com<br>lauren.griffin@alston.com<br><br>Nicolette Nunez<br>ALSTON & BIRD LLP<br>1201 West Peachtree St., Suite 4900<br>Atlanta, GA 30309<br>Tel: (404) 881-7851<br>nicolette.nunez@alston.com |

| | |
|---|---|
| Chicago, IL 60654-5313<br>Tel: (312) 832-4359<br>ethompson@foley.com<br><br>Sarah E. Rieger<br>FOLEY & LARDNER LLP<br>777 E. Wisconsin Ave.<br>Milwaukee, WI 53202<br>Tel: (414) 271-2400<br>srieger@foley.com<br><br>***Attorneys for Plaintiff Koninklijke Philips N.V.*** | ***Attorneys for Defendant Xirgo Technologies, LLC***<br><br>John C. Phillips, Jr. (No. 110)<br>David A. Bilson (No. 4986)<br>PHILLIPS, MCLAUGHLIN & HALL, P.A.<br>1200 N. Broom St<br>Wilmington, DE 19806<br>Tel: (302) 655-4200<br>jcp@pmhdelaw.com<br>dab@pmhdelaw.com<br><br>J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606-3912<br>Tel: (312) 655-1500<br>aron.carnahan@huschblackwell.com<br><br>***Attorneys for Defendant Ezurio LLC f/k/a Laird Connectivity, Inc.***<br><br>Chad S.C. Stover (No. 4919)<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3474<br>chad.Stover@btlaw.com<br><br>Craig D. Leavell<br>BARNES & THORNBURG LLP<br>One N. Wacker Drive Suite 4400<br>Chicago, IL 60606-2833<br>Tel: (312) 357-1313<br>craig.leavell@btlaw.com<br><br>Eric J. Beste<br>BARNES & THORNBURG LLP<br>655 W. Broadway, Suite 1300 San |

| | |
|---|---|
| | Diego, CA 92101<br>Tel: (619) 321-5015<br>eric.beste@btlaw.com<br><br>***Attorneys for Defendant CalAmp Corp.*** |

Dated: July 14, 2026

FISH & RICHARDSON P.C.

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# EXHIBIT 19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

KONINKLIJKE PHILIPS N.V.,

Plaintiff,

v.

QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,

Defendants.

C.A. No. 20-cv-1710-CFC

[redacted]

**QUECTEL'S MOTION IN LIMINE NO. 2:**
**PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING QUECTEL'S INTERNAL COMMUNICATIONS ABOUT ITS NEGOTIATION STRATEGY OR STATE OF MIND**

Especially because Philips severed its "FRAND" claims from this case, Philips should be precluded from introducing any evidence, testimony, or argument regarding Quectel's internal communications about its negotiation strategy or state of mind toward Philips. Quectel's subjective views and internal communications with its General Counsel (including those discussing plans to [redacted] and [redacted] or finding a meeting with Philips to have [redacted] and predicting that further contact from Philips would be [redacted] (*See, e.g.*, Ex. A–E)) are not relevant to any element of any of Philips's patent infringement claims, nor are they relevant to Quectel's counterclaims. As such, Philips's only goal would be to improperly confuse and distract the jury from the merits of infringement, invalidity, and Philips's breaches.

## I. ARGUMENT

Infringement turns on an objective comparison of the accused products to the asserted claims, not on what Quectel's employees internally thought about Philips. [redacted]. They have no tendency to make any fact of infringement more or less probable. Fed. R. Evid. 401. Nor could they show willfulness. Willfulness requires knowledge of the **specific** patent alleged to be infringed, not generalized awareness of a licensor's portfolio. *Dynamic Data Techs.*

*v. Google LLC*, No. 19-1529-CFC, 2020 WL 1285852, at *1–2 (D. Del. Mar. 18, 2020) (finding a letter listing approximately 400 patents in a portfolio would not support an allegation of pre-suit knowledge of patents-in-suit). The communications here [redacted] *See, e.g.,* Ex. A-D. And in any event, informal commentary about an unrelated dispute cannot establish the "egregious infringement behavior" *Halo* requires for willfulness, particularly where the ITC already found these same patents not infringed and unenforceable. *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 579 U.S. 93, 103-04 (2016).

The emails also do not bear on Quectel's counterclaims that Philips breached both its FRAND contract with ETSI and its duty to negotiate in good faith. Those claims turn on **Philips's** external conduct towards Quectel and the industry—its failure to license the two asserted patents, its refusal to disclose details regarding its licensing program, its belated ETSI disclosures, its litigation tactics—not on Quectel's internal commentary about Philips and Philips's obligations. To the extent Philips intends to argue the emails show Quectel's own bad faith, Philips has pled no such defense to Quectel's counterclaims, and cannot manufacture relevance for prejudicial character evidence on the eve of trial. In fact, Philips explicitly severed any claims relevant to Quectel's FRAND behavior from this case on September 30,

2025, saving them for the separate 1707 matter. *See* D.I. 67 at 3 (Philips's Motion to Sever) ("Here, the severing and consolidation of Philps's FRAND-related claims will promote judicial efficiency and facilitate the administration of justice pursuant to Fed. R. Civ. P. 21 and 42); D.I. 68 (Order granting Philips's Motion to Sever).

Ultimately, any emails or statements about Quectel's internal thinking should be excluded under Rule 403. Statements that Quectel should [redacted] and that negotiating with Philips is [redacted] and provides [redacted] are unfairly prejudicial: they invite a decision on an improper, emotional basis rather than the objective merits of infringement in this patent case. *See e.g.* Ex. A-D. No limiting instruction can cure that harm, and litigating the context behind years-old, internal statements between Quectel and its General Counsel would confuse the issues and waste trial time. Fed. R. Evid. 403.

Because these types of communications, as exemplified in Ex. A-D, lack any relevance or probative value and are unduly prejudicial, the Court should grant this motion.

Dated: July 2, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor

Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive
Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024

(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

**WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 646 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026**,** I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Beth Ann Swadley (No. 6331)<br>Parks Kingery (No. 7416)<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>bswadley@ycst.com<br>pkingery@ycst.com<br><br>Kevin M. Littman<br>Lucas I. Silva<br>Thomas Relyea<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Tel: (617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br>tom.relyea@foley.com<br><br>Alexis K. Juergens<br>FOLEY & LARDNER LLP<br>95 S State Street, Suite 2500<br>Salt Lake City, UT 84111<br>Tel: (801) 401-8900<br>ajuergens@foley.com<br><br>Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800 | Karen E. Keller (No. 4489)<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 298-0700<br>kkeller@shawkeller.com<br><br>***Attorney for Defendant Eagle Electronics Inc.***<br><br>Kenneth L. Dorsney (No. 3726)<br>Cortlan S. Hitch (No. 6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Blvd, Suite 100<br>Wilmington, DE 19803<br>Tel: (302) 888-6988<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>Kirk T. Bradley<br>Lauren Griffin<br>ALSTON & BIRD LLP<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203<br>Tel: (704) 444 -1030<br>kirk.bradley@alston.com<br>lauren.griffin@alston.com<br><br>Nicolette Nunez<br>ALSTON & BIRD LLP<br>1201 West Peachtree St., Suite 4900<br>Atlanta, GA 30309<br>Tel: (404) 881-7851<br>nicolette.nunez@alston.com |

| | |
|---|---|
| Chicago, IL 60654-5313<br>Tel: (312) 832-4359<br>ethompson@foley.com<br><br>Sarah E. Rieger<br>FOLEY & LARDNER LLP<br>777 E. Wisconsin Ave.<br>Milwaukee, WI 53202<br>Tel: (414) 271-2400<br>srieger@foley.com<br><br>***Attorneys for Plaintiff Koninklijke Philips N.V.*** | ***Attorneys for Defendant Xirgo Technologies, LLC***<br><br>John C. Phillips, Jr. (No. 110)<br>David A. Bilson (No. 4986)<br>PHILLIPS, MCLAUGHLIN & HALL, P.A.<br>1200 N. Broom St<br>Wilmington, DE 19806<br>Tel: (302) 655-4200<br>jcp@pmhdelaw.com<br>dab@pmhdelaw.com<br><br>J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606-3912<br>Tel: (312) 655-1500<br>aron.carnahan@huschblackwell.com<br><br>***Attorneys for Defendant Ezurio LLC f/k/a Laird Connectivity, Inc.***<br><br>Chad S.C. Stover (No. 4919)<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3474<br>chad.Stover@btlaw.com<br><br>Craig D. Leavell<br>BARNES & THORNBURG LLP<br>One N. Wacker Drive Suite 4400<br>Chicago, IL 60606-2833<br>Tel: (312) 357-1313<br>craig.leavell@btlaw.com<br><br>Eric J. Beste<br>BARNES & THORNBURG LLP |

| | |
|---|---|
| | 655 W. Broadway, Suite 1300 San Diego, CA 92101<br>Tel: (619) 321-5015<br>eric.beste@btlaw.com<br><br>***Attorneys for Defendant CalAmp Corp.*** |

Dated: July 2, 2026

FISH & RICHARDSON P.C.

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# Exhibit A

[redacted]

[redacted]

# Exhibit B

[redacted]

[redacted]

[redacted]

[redacted]

# Exhibit C

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# Exhibit D

[redacted]

[redacted]

[redacted]

[redacted]

# Exhibit E

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO QUECTEL'S MOTION IN LIMINE NO. 2 TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING QUECTEL'S INTERNAL COMMUNICATIONS ABOUT ITS NEGOTIATION STRATEGY OR STATE OF MIND**

# TABLE OF CONTENTS

I. ARGUMENT ..... 1

A. The Documents Are Relevant to Willfulness ..... 1

B. The Documents Rebut Quectel's Defense and Counterclaims ..... 3

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996) .......... 2

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) .......... 2

*Leonard v. Stemtech Health Servs., Inc.*,
981 F. Supp. 2d 273 (D. Del. 2013) .......... 1

*Purewick Corp. v. Sage Prods., LLC*,
666 F. Supp. 3d 419 (D. Del. 2023) .......... 2

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) .......... 2

Quectel is pursuing counterclaims for breach of FRAND and breach of duty to negotiate in good faith. D.I. 233, Affirmative Defenses ("AD") ¶28; Counterclaims ("CC") ¶¶39-44; D.I. 257. Quectel is also denying willful infringement and its efforts towards efficient infringement. Quectel's internal communications and actions in connection with FRAND are directly relevant to and undercut its breach claims. Further, these communications are directly relevant to willful infringement because they establish that Quectel intentionally prolonged its infringement without a license disregarding the asserted patent rights.

## I. ARGUMENT

As a threshold matter, Quectel's motion lacks the required specificity. Quectel seeks to exclude "any emails or statements about Quectel's internal thinking" (Mot. at 3) but only discusses 4-5 "exemplary" emails detailing its intentionally dilatory negotiation tactics. It is not clear why Quectel seeks to exclude any other documents. *See Leonard v. Stemtech Health Servs., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) ("the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded."); *id.* ("Evidentiary rulings [that] encompass broad classes of evidence[] should generally be deferred until trial ….").

### A. The Documents Are Relevant to Willfulness

Quectel alleges that because four specific emails [redacted], none of Quectel's internal communications should be introduced at trial.

Mot. at 1-2. However, [redacted] Quectel's internal communications demonstrate that, rather than address their infringement, their intent was to [redacted] dealing with the issue (Mot., Ex. A): [redacted] (Mot., Ex. B). Willful infringement has been found in instances where the defendant's behavior was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, [or] flagrant." *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016). Quectel's internal communications demonstrating their objective knowledge are therefore relevant to establishing willfulness.[1] *See Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 440 (D. Del. 2023) (noting

[1] Quectel also seeks to exclude its wrongful behavior on the basis of the ITC determination. However, the emails were sent years before the ITC case was filed. *Halo*, 579 U.S. at 105 ("culpability is generally measured against the knowledge of the actor at the time of the challenged conduct"). And "[p]roof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). Finally, the ITC determination is not binding upon nor relevant to this case. *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996).

willfulness, and the requisite notice, is a question of fact for the jury).

### B. The Documents Rebut Quectel's Defense and Counterclaims

Adjudication of the breach of FRAND and breach of the duty to negotiate in good faith counterclaims (and the affirmative defense based on those issues) requires consideration of not only Philips' actions, but also Quectel's. For instance, [redacted] As another example, despite alleging that Philips breached FRAND and negotiated in bad faith by seeking an injunction (*id.*, CC ¶¶43, 51), [redacted]

Evidence of Quectel's bad faith and delay during licensing negotiations is relevant to Quectel's assertion that Philips negotiated in bad faith, because both parties were negotiating and thus all facts concerning those negotiations are relevant. Quectel unfairly attempts to shield its own bad evidence from the negotiations, while relying on evidence of things Philips did during negotiations. This is improper. Ultimately, adjudicating Quectel's counterclaims and affirmative defense requires analysis of the entire negotiation history between the parties, not just Philips' actions in isolation. *See* Ex. 3, ¶¶43-46 (noting FRAND negotiation analysis requires looking at the actions of licensor and licensee).

*Of Counsel*:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Thomas M. Relyea (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Dated: July 10, 2026

*/s/ Adam W. Poff*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff*
*Koninklijke Philips N.V.*

# EXHIBIT 1

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# EXHIBIT 2

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# EXHIBIT 3

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>[redacted] |

**QUECTEL'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2: PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING QUECTEL'S INTERNAL COMMUNICATIONS ABOUT ITS NEGOTIATION STRATEGY OR STATE OF MIND**

Quectel's internal communications are not relevant to willfulness.

First, they are not evidence of knowledge. [redacted]; they are offered only for the prejudicial inference that Quectel is a supposedly bad actor.

Second, they are not evidence of egregious infringement. Statements about [redacted] A licensee may negotiate slowly and contest an aggressive demand; that is not the flagrant conduct *Halo* reserves for enhancement. *Purewick*'s observation, cited by Philips, that willfulness is a jury question, does not displace the Court's gatekeeping role under Rules 401 and 403, particularly where the evidence is irrelevant to the issues.

Philips's Opposition is silent to the fact the Court severed every claim analyzing Quectel's FRAND conduct at Philips's request. Having chosen a different case to litigate Quectel's actions, Philips cannot reintroduce it here. And Quectel's FRAND claims turn on Philips's behavior and the parties' discussions—not Quectel's private views to which Philips was not privy, and definitely not Quectel's internal strategy communications with its own General Counsel. Philips pled no bad-faith defense to the counterclaims and cannot be allowed to create one now.

Dated: July 14, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive

Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

**WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 236 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026**,** I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Beth Ann Swadley (No. 6331)<br>Parks Kingery (No. 7416)<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>bswadley@ycst.com<br>pkingery@ycst.com<br><br>Kevin M. Littman<br>Lucas I. Silva<br>Thomas Relyea<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Tel: (617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br>tom.relyea@foley.com<br><br>Alexis K. Juergens<br>FOLEY & LARDNER LLP<br>95 S State Street, Suite 2500<br>Salt Lake City, UT 84111<br>Tel: (801) 401-8900<br>ajuergens@foley.com<br><br>Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800 | Karen E. Keller (No. 4489)<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 298-0700<br>kkeller@shawkeller.com<br><br>***Attorney for Defendant Eagle Electronics Inc.***<br><br>Kenneth L. Dorsney (No. 3726)<br>Cortlan S. Hitch (No. 6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Blvd, Suite 100<br>Wilmington, DE 19803<br>Tel: (302) 888-6988<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>Kirk T. Bradley<br>Lauren Griffin<br>ALSTON & BIRD LLP<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203<br>Tel: (704) 444 -1030<br>kirk.bradley@alston.com<br>lauren.griffin@alston.com<br><br>Nicolette Nunez<br>ALSTON & BIRD LLP<br>1201 West Peachtree St., Suite 4900<br>Atlanta, GA 30309<br>Tel: (404) 881-7851<br>nicolette.nunez@alston.com |

| | |
|---|---|
| Chicago, IL 60654-5313<br>Tel: (312) 832-4359<br>ethompson@foley.com<br><br>Sarah E. Rieger<br>FOLEY & LARDNER LLP<br>777 E. Wisconsin Ave.<br>Milwaukee, WI 53202<br>Tel: (414) 271-2400<br>srieger@foley.com<br><br>***Attorneys for Plaintiff Koninklijke Philips N.V.*** | ***Attorneys for Defendant Xirgo Technologies, LLC***<br><br>John C. Phillips, Jr. (No. 110)<br>David A. Bilson (No. 4986)<br>PHILLIPS, MCLAUGHLIN & HALL, P.A.<br>1200 N. Broom St<br>Wilmington, DE 19806<br>Tel: (302) 655-4200<br>jcp@pmhdelaw.com<br>dab@pmhdelaw.com<br><br>J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606-3912<br>Tel: (312) 655-1500<br>aron.carnahan@huschblackwell.com<br><br>***Attorneys for Defendant Ezurio LLC f/k/a Laird Connectivity, Inc.***<br><br>Chad S.C. Stover (No. 4919)<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3474<br>chad.Stover@btlaw.com<br><br>Craig D. Leavell<br>BARNES & THORNBURG LLP<br>One N. Wacker Drive Suite 4400<br>Chicago, IL 60606-2833<br>Tel: (312) 357-1313<br>craig.leavell@btlaw.com<br><br>Eric J. Beste<br>BARNES & THORNBURG LLP |

| | |
|---|---|
| | 655 W. Broadway, Suite 1300 San Diego, CA 92101<br>Tel: (619) 321-5015<br>eric.beste@btlaw.com<br><br>***Attorneys for Defendant CalAmp Corp.*** |

Dated: July 14, 2026

FISH & RICHARDSON P.C.

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# EXHIBIT 20

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

KONINKLIJKE PHILIPS N.V.,

Plaintiff,

v.

QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,

Defendants.

C.A. No. 20-cv-1710-CFC

[redacted]

**QUECTEL'S MOTION IN LIMINE NO. 3:
PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING
QUECTEL'S ALLEGED USE OF PHILIPS'S PATENT PORTFOLIO**

Quectel respectfully moves *in limine* to preclude Philips from suggesting that Quectel uses, practices, or otherwise benefits from patents within Philips's broader patent portfolio that are not asserted in this case. At the outset, there has never been a finding by any court in the world that Quectel infringes a Philips patent. And here, Philips does not even offer any expert analysis or opinions that Quectel practices unasserted patents. Such a suggestion therefore has no probative value both because it is irrelevant to the patent infringement issues before the jury and could mislead the jury into thinking that Quectel uses dozens or hundreds of Philips patents without any finding or supporting evidence.

## I. ARGUMENT

Permitting Philips to suggest to the jury—without any expert analysis or evidentiary basis—that Quectel benefits from Philips's portfolio writ large would inject unfair prejudice and confuse the jury regarding the only patents actually at issue in this case: the two patents-in-suit.

**First**, Philips has offered no expert analysis or opinion arguing that Quectel uses any unasserted patent from Philips's portfolio. Specifically, Philips's technical experts did not set forth any analysis, or patent claim mapping, to argue that Quectel's products practice any unasserted Philips patent. As such, Philips should not be permitted to invite the jury to infer broader "use" of Philips's portfolio from the mere fact that Philips's fact witnesses and/or attorneys vaguely

allege such use at trial. *See Deere & Co. v. AGCO Corp.*, 659 F. Supp. 3d 418, 448-49 (D. Del. Mar. 28, 2023) (declining to permit cross examination regarding an unasserted patent to avoid a "mini trial [about whether] [t]his patent not asserted in this case covers the accused products").

**Second**, merely alleging that its portfolio of declared patents are "standard essential" is not enough. Philips's expert [redacted][1] Indeed, Philips declaring a patent to ETSI as "standard essential" only means that Philips believes the patent "may be or may become" essential, not that it actually is essential. And any such actually-essential patents may be directed to optional or conditional features that Quectel may not practice.

**Third**, there is no other evidence, including from a foreign court, suggesting that Quectel practices or uses any unasserted Philips patent. To the contrary, the only evidence is that Quectel does **not use** unasserted patents. No Philips's patent has ever been adjudicated against Quectel, except for at the ITC which found that Quectel did **not infringe** any of the four patents asserted there. *See generally* Dkt.

[1] Questions such as what standard is covered by the "essential" patents 2G? 3G? And what products are covered by that "essential" patent. Cell towers? Phones?

233. And Quectel further invalidated several other leading Philips patents through IPRs, and invalid patents cannot be infringed.

**Fourth**, Quectel's alleged practice of unasserted patents is irrelevant to any issue the jury must decide. *See* Fed. R. Evid. 401, 402. Evidence or argument referencing Philips's broader portfolio would not make any fact of consequence to the infringement or validity of the patents-in-suit more or less probable and is of no consequence to determining this action, running afoul of Fed. R. Evid. 401. It would instead invite the jury to speculate about Quectel's possible infringement of patents that are not at issue, are not subject to claim construction, which may not even be in the U.S., and for which no infringement contentions or expert reports have been exchanged.

Any reference to the unasserted portfolio also threatens to mislead the jury into believing that the scope of this case is broader than the discrete patents-in-suit, effectively allowing Philips to argue infringement (or some lesser, undefined notion of patent "use") without ever having to prove it claim-by-claim, element-by-element, as required by law. The risk of confusion and unfair prejudice from such an end-run around the procedural safeguards of patent litigation substantially outweighs any relevance such evidence might have. Fed. R. Evid. 403.

## II. CONCLUSION

Quectel respectfully requests the Court grant MIL #3.

Dated: July 2, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*

Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive

Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

# WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 715 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026**,** I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Beth Ann Swadley (No. 6331)<br>Parks Kingery (No. 7416)<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>bswadley@ycst.com<br>pkingery@ycst.com<br><br>Kevin M. Littman<br>Lucas I. Silva<br>Thomas Relyea<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Tel: (617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br>tom.relyea@foley.com<br><br>Alexis K. Juergens<br>FOLEY & LARDNER LLP<br>95 S State Street, Suite 2500<br>Salt Lake City, UT 84111<br>Tel: (801) 401-8900<br>ajuergens@foley.com<br><br>Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800 | Karen E. Keller (No. 4489)<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 298-0700<br>kkeller@shawkeller.com<br><br>***Attorney for Defendant Eagle Electronics Inc.***<br><br>Kenneth L. Dorsney (No. 3726)<br>Cortlan S. Hitch (No. 6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Blvd, Suite 100<br>Wilmington, DE 19803<br>Tel: (302) 888-6988<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>Kirk T. Bradley<br>Lauren Griffin<br>ALSTON & BIRD LLP<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203<br>Tel: (704) 444-1030<br>kirk.bradley@alston.com<br>lauren.griffin@alston.com<br><br>Nicolette Nunez<br>ALSTON & BIRD LLP<br>1201 West Peachtree St., Suite 4900<br>Atlanta, GA 30309<br>Tel: (404) 881-7851<br>nicolette.nunez@alston.com |

Chicago, IL 60654-5313
Tel: (312) 832-4359
ethompson@foley.com

Sarah E. Rieger
FOLEY & LARDNER LLP
777 E. Wisconsin Ave.
Milwaukee, WI 53202
Tel: (414) 271-2400
srieger@foley.com

***Attorneys for Plaintiff Koninklijke Philips N.V.***

***Attorneys for Defendant Xirgo Technologies, LLC***

John C. Phillips, Jr. (No. 110)
David A. Bilson (No. 4986)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 N. Broom St
Wilmington, DE 19806
Tel: (302) 655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

J. Aron Carnahan
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606-3912
Tel: (312) 655-1500
aron.carnahan@huschblackwell.com

***Attorneys for Defendant Ezurio LLC f/k/a Laird Connectivity, Inc.***

Chad S.C. Stover (No. 4919)
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Tel: (302) 300-3474
chad.Stover@btlaw.com

Craig D. Leavell
BARNES & THORNBURG LLP
One N. Wacker Drive Suite 4400
Chicago, IL 60606-2833
Tel: (312) 357-1313
craig.leavell@btlaw.com

Eric J. Beste
BARNES & THORNBURG LLP

| | |
|---|---|
| | 655 W. Broadway, Suite 1300 San Diego, CA 92101<br>Tel: (619) 321-5015<br>eric.beste@btlaw.com<br><br>***Attorneys for Defendant CalAmp Corp.*** |

Dated: July 2, 2026

FISH & RICHARDSON P.C.

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

# EXHIBIT 1

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC., and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>JURY TRIAL DEMANDED |

**KONINKLIJKE PHILIPS N.V.'S OPPOSITION TO QUECTEL'S MOTION *IN LIMINE* NO. 3 REGARDING QUECTEL'S ALLEGED USE OF PHILIPS' PATENT PORTFOLIO**

# TABLE OF CONTENTS

A. Philips' Portfolios Are Central to Damages and Quectel's Breach Claim ......1

B. There Is No Unfair Prejudice or Risk of Confusion.......................................3

# TABLE OF AUTHORITIES

Page(s)

Cases

*Evolved Wireless, LLC v. Apple Inc.*,
No. 15-542-JFB-SRF, 2019 WL 1100471 (D. Del. Mar. 7, 2019) ........................2

*Leonard v. Stemtech Health Sciences, Inc.*,
981 F.Supp.2d 273 (D. Del. 2013)..........................................................................1

Philips respectfully requests that the Court deny Quectel's Motion *in Limine* No. 3. Prior licensing of Philips' portfolio is not only directly responsive to Quectel's claims that Philips breached FRAND obligations, but it is also central to damages and the history of Philips' licensing activities in this field. Quectel's theory that the jury will somehow misuse the evidence is pure speculation. Meanwhile, its absence would materially prejudice Philips by making its patents appear to exist in a vacuum.

Quectel's request is fatally unclear. Quectel first asks to preclude Philips from "suggesting that Quectel uses, practices, or otherwise benefits from patents within Philips' broader patent portfolio that are not asserted in this case." Mot. at 1. However, Quectel later says "[e]vidence or argument ***referencing Philips's broader portfolio***" is irrelevant, and "***[a]ny reference*** to the unasserted portfolio" may mislead a jury. Mot. at 3 (emphasis added). Quectel has not clearly told Philips or the Court what it seeks to preclude. Its Motion should be denied for that reason alone.

**A. Philips' Portfolios Are Central to Damages and Quectel's Breach Claim**

"Evidence should not be excluded pursuant to a motion in limine, unless it is clearly inadmissible on all potential grounds." *Leonard v. Stemtech Health Sciences, Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013). "The movant bears the burden of demonstrating that the evidence is inadmissable on any relevant ground . . . ." *Id.*

[redacted]

[redacted] Philips' damages expert, Mr. Teece, uses [redacted]. *See, e.g.*, Ex. A, ¶53. [redacted]. *Id.*, ¶¶ 54-61, 247-280. He analyzes the value of the Asserted Patents in relation to their portfolios. *Id.* He marshals evidence from Philips' and Quectel's discussions of Philips' portfolios during the relevant timeframe. *Id.*, ¶¶ 259-260, 293-297. If Quectel seeks to preclude all reference to Philips' portfolios, then its Motion should be denied as an improper backdoor challenge to the admissibility of Mr. Teece's damages analysis. *See, e.g.*, *Evolved Wireless, LLC v. Apple Inc.*, No. 15-542-JFB-SRF, 2019 WL 1100471, at *6 (D. Del. Mar. 7, 2019) (denying *Daubert* motions disguised as motions in limine).

[redacted] are also central to Quectel's counterclaim for breach of contract and, necessarily, to Philips' defense. Quectel alleges that "Philips never made a FRAND offer for these patents as part of its larger portfolio." D.I. 233, ¶ 39. Indeed, the core opinion of Quectel's expert, Ms. Distler, is that Philips' offers of portfolio licenses to Quectel were not on FRAND terms. *See, e.g.*, Ex. B, ¶ 92 [redacted] *see also id.*, ¶¶ 13, 208. Quectel cannot put Philips' patent portfolios at issue in its

counterclaim, reserve for itself the ability to discuss them at trial, yet deny Philips that right. That would be tantamount to denying Philips the right to defend itself.

**B. There Is No Unfair Prejudice or Risk of Confusion**

Quectel's arguments for exclusion baselessly assume Philips will try to prove Quectel infringes *unasserted* patents, or that a jury might infer this, even though the strength of the portfolio is relevant to FRAND. Quectel argues Philips lacks evidence of infringement of unasserted patents, that some portfolio patents may not be standard-essential, that no court has found infringement of unasserted patents, and that practicing unasserted patents is irrelevant. Mot. at 1-3. None of these is a basis for exclusion. Philips will not argue that it is entitled to damages for unasserted patents. There will be no "mini-trial" about unasserted patents as Quectel suggests. Mot. at 2. On the other hand, Philips would be prejudiced by being prevented from informing the jury that others have licensed the Asserted Patents as part of Philips' portfolios.

If Quectel is concerned the jury may consider Philips' portfolios for improper purposes, (a) that problem is partly of Quectel's own making given its counterclaims asserting that Philips' portfolio licensing was not FRAND, and (b) to the extent needed, judicial instruction, not exclusion, is the proper way to eliminate any risk that the jury might award damages beyond the two Asserted Patents.

For the foregoing reasons, Quectel's Motion should be denied.

*Of Counsel*:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Thomas M. Relyea (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
(801) 401-8900
ajuergens@foley.com

Kimberly K. Dodd (*pro hac vice*)
Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
kdodd@foley.com
srieger@foley.com

Dated: July 10, 2026

*/s/ Adam W. Poff*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

# EXHIBIT A

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# EXHIBIT B

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. and EAGLE ELECTRONICS, INC.,<br><br>Defendants. | C.A. No. 20-cv-1710-CFC<br><br>[redacted] |

**QUECTEL'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 3: PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING QUECTEL'S ALLEGED USE OF PHILIPS'S PATENT PORTFOLIO**

Philips's opposition largely addresses arguments Quectel did not raise. Motion *in limine* No. 3, as set forth in the title and first sentence, seeks to preclude Philips from suggesting that Quectel uses, practices, or otherwise benefits from unasserted Philips patents. Quectel does not seek to exclude [redacted]. The bulk of Philips's opposition—[redacted]—is a non sequitur to what Quectel's motion seeks.

What Quectel **does** seek to preclude is Philips suggesting to the jury—without a single claim chart, expert opinion, or adjudicated finding—that Quectel's products use, practice, or otherwise benefit from the dozens or hundreds of unasserted patents in Philips's broader portfolio. It is undisputed there is no opinion or alleged evidence of Quectel using Philips's technology beyond the two asserted patents, thus making it improper to invite the jury to infer sweeping portfolio-wide infringement. *Deere & Co. v. AGCO Corp.*, 659 F. Supp. 3d 418, 448–49 (D. Del. 2023).

Philips concedes it "will not argue that it is entitled to damages for unasserted patents" (Opp. at 3), but this does not address whether Philips will suggest that Quectel **uses** Philips's patent portfolio or that Quectel requires a portfolio license. Philips's argument that a curative instruction is proper (Opp. at 3) also misses the point because Philips should not be allowed to suggest Quectel infringes unasserted patents when Philips has no legal or evidentiary support.

Dated: July 14, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence R. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive

Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 237 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026**,** I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Beth Ann Swadley (No. 6331)<br>Parks Kingery (No. 7416)<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>bswadley@ycst.com<br>pkingery@ycst.com<br><br>Kevin M. Littman<br>Lucas I. Silva<br>Thomas Relyea<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Tel: (617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com<br>tom.relyea@foley.com<br><br>Alexis K. Juergens<br>FOLEY & LARDNER LLP<br>95 S State Street, Suite 2500<br>Salt Lake City, UT 84111<br>Tel: (801) 401-8900<br>ajuergens@foley.com<br><br>Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800 | Karen E. Keller (No. 4489)<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 298-0700<br>kkeller@shawkeller.com<br><br>***Attorney for Defendant Eagle Electronics Inc.***<br><br>Kenneth L. Dorsney (No. 3726)<br>Cortlan S. Hitch (No. 6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Blvd, Suite 100<br>Wilmington, DE 19803<br>Tel: (302) 888-6988<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>Kirk T. Bradley<br>Lauren Griffin<br>ALSTON & BIRD LLP<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203<br>Tel: (704) 444-1030<br>kirk.bradley@alston.com<br>lauren.griffin@alston.com<br><br>Nicolette Nunez<br>ALSTON & BIRD LLP<br>1201 West Peachtree St., Suite 4900<br>Atlanta, GA 30309<br>Tel: (404) 881-7851<br>nicolette.nunez@alston.com |

| | |
|---|---|
| Chicago, IL 60654-5313<br>Tel: (312) 832-4359<br>ethompson@foley.com<br><br>Sarah E. Rieger<br>FOLEY & LARDNER LLP<br>777 E. Wisconsin Ave.<br>Milwaukee, WI 53202<br>Tel: (414) 271-2400<br>srieger@foley.com<br><br>***Attorneys for Plaintiff Koninklijke Philips N.V.*** | ***Attorneys for Defendant Xirgo Technologies, LLC***<br><br>John C. Phillips, Jr. (No. 110)<br>David A. Bilson (No. 4986)<br>PHILLIPS, MCLAUGHLIN & HALL, P.A.<br>1200 N. Broom St<br>Wilmington, DE 19806<br>Tel: (302) 655-4200<br>jcp@pmhdelaw.com<br>dab@pmhdelaw.com<br><br>J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606-3912<br>Tel: (312) 655-1500<br>aron.carnahan@huschblackwell.com<br><br>***Attorneys for Defendant Ezurio LLC f/k/a Laird Connectivity, Inc.***<br><br>Chad S.C. Stover (No. 4919)<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3474<br>chad.Stover@btlaw.com<br><br>Craig D. Leavell<br>BARNES & THORNBURG LLP<br>One N. Wacker Drive Suite 4400<br>Chicago, IL 60606-2833<br>Tel: (312) 357-1313<br>craig.leavell@btlaw.com<br><br>Eric J. Beste<br>BARNES & THORNBURG LLP |

| | |
|---|---|
| | 655 W. Broadway, Suite 1300 San Diego, CA 92101<br>Tel: (619) 321-5015<br>eric.beste@btlaw.com<br><br>***Attorneys for Defendant CalAmp Corp.*** |

Dated: July 14, 2026

FISH & RICHARDSON P.C.

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)